UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SCOTT D. DALESANDRO and DIANE          :
NOONAN, on behalf of themselves and    :
others,                                :
                                       :
          Plaintiffs,                  :
                                       :          Case No. C-1-01 109
          vs.                          :
                                       :          Judge Sandra S. Beckwith
INTERNATIONAL PAPER COMPANY,           :
                                       :
          Defendant.                   :
_____:

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES,
INTEREST, AND INCENTIVE AWARDS**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF RESPONSE ......................................................... 1

II.   PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED IN WHOLE
      OR IN SIGNIFICANT PART ......................................................................................... 2

      A.    Standard for Entitlement to Attorneys' Fees Under ERISA ........................... 2

            29 U.S.C. § 1132 ................................................................................................ 2

            Schwartz v. Gregori,
            160 F.3d 1116, 1119 (6th Cir. 1998) ................................................................. 3

            Secretary of Labor v. King,
            775 F.2d 666, 669 (6th Cir. 1985) .................................................................... 3

            Garber v. Provident Life and Accident Insur. Co.,
            1999 U.S. App. LEXIS 11280 *14-15 (6th Cir. 1999) ....................................... 3

      B.    Plaintiffs May Not Recover Fees Incurred While Exhausting the Administrative
            Claims Procedure .......................................................................................... 4

            29 U.S.C. § 1132(g) ........................................................................................... 4

            Anderson v. Procter & Gamble Co.,
            220 F.3d 449, 456 (6th Cir. 2000) .................................................................. 4,5

            Cann v. Carpenters' Pension Trust Fund for Northern California,
            989 F.2d 313, 315 (9th Cir. 1993) .................................................................. 4,5

            Rego v. Westvaco Corp.,
            319 F.3d 140, 150 (4th Cir. 2003) .................................................................. 5,6

            Peterson v. Continental Cas. Co.,
            282 F.3d 112, 121 (2nd Cir. 2002) ................................................................... 5

            Warren v. Cochran,
            257 F.Supp.2d 321 (D. Maine 2003) ................................................................. 5

            Baxter v. C.A. Muer Corp.,
            941 F.2s 451 (6th Cir. 1991) ............................................................................ 6

      C.    Plaintiffs' Requested Fees Are Not Reasonable ............................................. 7

            Hensley v. Eckerhart,
            461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983) ..................................... 7

            Wooldridge v. Marlene Indus. Corp.,
            898 F.2d 1169, 1176-77 (6th Cir. 1990) ............................................................ 7

            Garber v. Provident Life and Accident Insur. Co.,
            1999 U.S. App. LEXIS 11280, at * 15-16 (6th Cir. 1999) ................................. 7

# TABLE OF CONTENTS
(continued)

Page

1.   **Plaintiff Counsel's Hourly Rates Are Excessive in Comparison to the Rates
     of Competent Counsel in this Venue** ................................................................. 8

     Blum v. Stenson,
     465 U.S. 886, 895 n. 11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984) ................................. 8

     Hadix v. Johnson,
     65 F.3d 532, 536 (6th Cir. 1995) (citing Blum, 465 U.S. at 896 n.11) ............................. 8

     Coulter v. State of Tennessee,
     805 F.2d 146, 148-49 (6th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987)) ..................... 8

     Tinch v. City of Dayton,
     199 F. Supp. 2d 758 (S.D. Ohio 2002) (*quoting* Coulter, 805 F.2d at 149) ............. 8,9,11

     Granzeier v. Middleton,
     173 F.3d 568 (6th Cir. 1999) ................................................................. 9

     Ursic v. Bethlehem Mines,
     719 F.2d 670, 677 (3rd Cir. 1983) ................................................................. 11

2.   **Plaintiff Counsels' Practice of Charging Time in Fifteen Minutes
     Increments Does Not Comport With Standard Billing Practices** ........................... 12

     Reed v. Rhodes,
     179 F.3d 453, 470 (6th Cir. 1999) ................................................................. 12

     Anglo-Danish Fibre Indus., Ltd. V. Columbian Rope Co.,
     2003 U.S. Dist. LEXIS 10386 *26 (W.D. Tenn. 2003) ................................................... 12

3.   **Plaintiff Counsels' Hourly Rates Are Excessive for the Level of Work
     Performed** ................................................................................................. 12

     EEOC v. Anglin,
     2003 U.S. Dist. LEXIS 12852 *12 (M.D. Fla. 2003) ................................................... 12

     Ursic v. Bethlehem Mines,
     719 F.2d 670, 677 (3rd Cir. 1983) ................................................................. 13,14

     Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,
     478 U.S. 546, 554, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986) ....................................... 13

     Microsoft Corp. v. United Computer Svcs. of N.J.,
     216 F. Supp. 2d 383, 392 (D.N.J. 2002) ................................................................. 14

     Harman v. Lyphomed, Inc.,
     734 F. Supp. 294, 296 (N.D. Ill. 1990) ................................................................. 14

4.   **Plaintiff Counsels' Billing Entries Are Duplicative and Redundant** ....................... 14

     Anglo-Danish Fibre Indus., Ltd. V. Columbian Rope Co.,
     2003 U.S. Dist. LEXIS 10386 *19 (W.D. Tenn. 2003) ................................................... 15

**TABLE OF CONTENTS**
(continued)

Page

Black v. Lojac Enterps.,
1997 U.S. App. LEXIS 17205 (6th Cir. 1997) ............................................. 15

Coulter v. State of Tenn.,
805 F.2d 146, 152 (6th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987) ........................... 15

Hudson v. Reno,
130 F.3d 1193, 1209 (6th Cir. 1997) .............................................. 15

5.     **Fees Billed by Attorney Myron Wolf Should Be Disallowed As Redundant, Duplicative, and Unnecessary** ...................................................................... 16

6.     **Plaintiff Counsels' Time Entries Should Be Denied to the Extent They Are Too Vague to Determine Reasonableness** ................................................ 17

Wooldridge v. Marlene Indus. Corp.,
898 F.2d 1169, 1176-77 (6th Cir. 1990) .............................................. 17

Anglo-Danish Fibre Indus., Ltd. V. Columbian Rope Co.,
2003 U.S. Dist. LEXIS 10386 *19 (W.D. Tenn. 2003) ..................................... 17

Black v. Lojac Enterps.,
1997 U.S. App. LEXIS 17205 *9-10 (6th Cir. .1997) ............................................. 17, 18

Hensley v. Eckerhart,
461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed. 2d 40 (1983) ......................................... 18

7.     **Plaintiffs' Counsel May Not Recover Fees Incurred for Unnecessary Discovery Disputes** .............................................................................. 18

University Hosp. of Cleveland v. Emerson Elec. Co.,
202 F.3d 839, 845 (6th Cir. 2000) .............................................. 18

Schey v. UNUM Life Ins. Co.,
145 F. Supp. 2d 919, 921 (N.D. Ohio 2001) ................................................. 18

Gerwen v. Guarantee Mutual Life Co.,
214 F.3d 1041 (9th Cir. 2000) .............................................. 19

8.     **Plaintiffs' Attorneys' Fees Incurred to Prepare the Fee Petition is Excessive** ........ 19

Anderson v. Procter & Gamble Co.,
220 F.3d 449, 456 (6th Cir. 2000) .............................................. 20

Cann v. Carpenters' Pension Trust Fund for Northern California,
989 F.2d 313, 315 (9th Cir. 1993) .............................................. 20

Rego v. Westvaco Corp.,
319 F.3d 140, 150 (4th Cir. 2003) .............................................. 20

Peterson v. Continental Cas. Co.,
282 F.3d 112, 121 (2nd Cir. 2002) .............................................. 20

**TABLE OF CONTENTS**
(continued)

Page

Coulter v. Tennessee,
805 F.2d 146, 151 (6th Cir. 1986) ................................................................. 20

Moore v. Crestwood Local School Dist.,
804 F. Supp. 960, 968-969 (N.D. Ohio 1992) ............................................... 20

**D.    Plaintiffs' Counsel Is Not Entitled to a Multiplier** ................................ 21

Hensley v. Eckerhart,
461 U.S. 424, 434, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983) ................... 21,22

Blum v. Stenson,
465 U.S. 886, 889, 104 S. Ct 1541, 79 L. Ed. 2d 891 (1984) ................... 21,23

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (I),
478 U.S. 546, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986) ........................... 21,22

Johnson v. Georgia Highway Express, Inc.,
488 F.2d 714 (5th Cir. 1974) ........................................................................ 21

Perotti v. Seiter,
935 F.2d 761 (6th Cir. 1991) ........................................................................ 21

City of Burlington v. Dague,
505 U.S. 557, 559, 567, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992) ......... 22-25

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (II),
483 U.S. 711, 727, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987) ................... 22,23

Drennan v. General Motors Corp.,
977 F.2d 246, 254 (6th Cir. 1992) ............................................................... 23

Murphy v. Reliance Standard Life Insur. Co.,
247 F.3d 1313, 1315-16 (11th Cir. 2001) ................................................... 23

Tinch v. City of Dayton,
199 F. Supp. 2d 758, 766-67 (S.D. Ohio 2002) ........................................... 23

Davis v. The Mutual Life Insurance Co. of New York,
6 F.3d 367, 381 (6th Cir. 1993) ................................................................... 23

Bowling v. Pfizer, Inc.,
922 F. Supp. 1261 (S.D. Ohio 1996) ........................................................... 24

In Re Sulzer Hip Prosthesis, Ex. 11 to Pls' Motion ...................................... 24

Brotherton v. Cleveland,
141 F.Supp.2d 907 (S.D. Ohio 2001) ........................................................... 24

Cook v. Niedert,
142 F.3d 1004 (7th Cir. 1998) ................................................................... 24,25

**TABLE OF CONTENTS**
(continued)

Page

Florin v. Nationsbank of Georgia, N.A.,
34 F.3d 560 (7th Cir. 1994) ................................................... 24,25

In Re: Southern Ohio Correctional Facility,
173 F.R.D. 205 (S.D. Ohio 1997)............................................... 24

Rawlings v. Prudential-Bache Properties, Inc.,
9 F.3d 513 (1993) ................................................................ 24

E.      **Plaintiff's Are Not Entitled to Recovery for All Expenses Submitted** ...................................... 25

Tinch v. City of Dayton,
199 F. Supp. 2d 758, 770 (S.D. Ohio 2002) .................................. 25

28 U.S.C. § 1920 ................................................................ 25

F.      **Proposal for Reduction in Requested Attorneys' Fees and Expenses** ...................................... 26

III.   **PLAINTIFFS' REQUEST FOR PREJUDGMENT INTEREST IS PREMISED UPON INACCURATE LEGAL STANDARDS**................................................................ 27

Drennan v. General Motors Corp.,
977 F.2d 246, 253 (6th Cir. 1992), *reh'g denied, cert. denied*, 508 U.S. 940
(1993) ............................................................................ 27

Caffey v. Unum Life Insurance Co.,
302 F.3d 576, 585 (6th Cir. 2002) ............................................. 27

Ford v. Uniroyal Pension Plan,
154 F.3d 613, 619 (6th Cir. 1998) ............................................. 27

EEOC v. Wooster Brush Co. Employees Relief Ass'n.,
727 F.2d 566, 579 (6th Cir. 1984) ............................................. 27

28 U.S.C. § 1961 .............................................................27-28

IV.    **CLASS REPRESENTATIVES DALESANDRO AND NOONAN ARE NOT ENTITLED TO AN INCENTIVE AWARD UNDER ERISA**................................................................ 29

Mertens v. Hewitt Assocs.,
508 U.S. 248, 254-55, 256, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)......................... 29

Great-West Life & Annuity Insur. Co.,
534 U.S. 204, 210, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002) ........................................ 29

Caffey v. Unum Life Insur. Co.,
302 F.3d 576 (6th Cir. 2002) ................................................... 30

Kerr v. Vatterott & Co.,
184 F.3d 938, 944-45 (8th Cir. 1999) ......................................... 30

V.     **CONCLUSION**................................................................ 30

# I.    INTRODUCTION AND SUMMARY OF RESPONSE

Defendant International Paper opposes Plaintiffs' motion for attorneys' fees, expenses, interest and incentive awards, and respectfully requests the Court to deny the requested awards. Plaintiffs' requests should be denied or reduced substantially for the following reasons:

1.    ERISA, 29 U.S.C. § 1132(g), does not permit plaintiffs to recover fees or expenses incurred while exhausting the ERISA administrative claims procedure.

2.    Plaintiffs' counsels' hourly billable rates are excessive in comparison to the rates of competent counsel in this venue and in light of the level of work performed at these rates.

3.    The number of compensable hours claimed by plaintiffs must be reduced because of plaintiffs' counsels' deficient time-keeping practices, including billing time in fifteen-minute increments, providing insufficient descriptions of the work performed, block billing numerous tasks under one time entry, and billing for unnecessary duplication of work and internal attorney conferences.

4.    The number of compensable hours claimed by plaintiffs must be reduced because plaintiffs' counsel expended unnecessary time pursuing positions on issues contrary to established Sixth Circuit authority, including positions taken on the duty to exhaust the claims procedure, discovery of matters outside the administrative record, the standard of review, and other issues.

5.    The number of compensable hours claimed by plaintiffs must be reduced because plaintiffs' counsel expended excessive and unnecessary time preparing their attorneys' fee petition and supporting documentation.

6.    The number of compensable hours claimed with respect to co-counsel Myron Wolf must be reduced because Mr. Wolf performed little or no substantive or necessary work on this action and is not entitled to attorneys' fees or expenses.

7.    Plaintiffs' counsel are not entitled to or deserving of a multiplier or enhancement of the lodestar attorneys' fees.

8.    Plaintiffs' counsel are not entitled to recover all of the expenses submitted because the descriptions are insufficient to support they were necessarily incurred in pursuit of this action, and to the extent they do not constitute "fees" and "costs" under ERISA.  29 U.S.C. § 1132(g).

9.    Should the Court award prejudgment interest, Plaintiffs are not entitled to a determination of the interest rate by the standard requested.

10.    The class representatives are not entitled to incentive awards under ERISA's remedial provisions.

## II.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED IN WHOLE OR IN SIGNIFICANT PART

### A.    <u>Standard for Entitlement to Attorneys' Fees Under ERISA</u>

Section 502 of ERISA, 29 U.S.C. § 1132, provides that "in any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and cost of action to either party."  29 U.S.C. § 1132(g)(1).  Before exercising this discretion under a fee-shifting statute, the district court must examine five factors:

1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award of attorneys' fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting the fees sought to confer a benefit on all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and 5) the relative merits of the parties' positions.[1]  Schwartz v. Gregori, 160 F.3d 1116, 1119 (6th Cir. 1998), *citing* Secretary of Labor v. King, 775 F.2d 666, 669 (6th Cir. 1985).

In this case, the Plan Administrator denied severance to employees who did not lose employment as a result of the sale, but had the opportunity to continue work in the same facility, in the same position, at the same salary.  The Administrator determined that awarding severance in these circumstances would be a windfall inconsistent with the language and intent of the plan. The Administrator also found that severance benefits were not owed to persons who failed to file timely claims in accordance with the express limitation period defined in the Plan. The Administrator's denial was based on a good faith, reasoned, written analysis of plan language guided by plan counsel.

Although the Court ultimately concluded that the Administrator's interpretation of the plan language on these points was not reasonable, there was no bad faith in this process. International Paper has always contended that the case turned on the Court's interpretation of the Plan language and did not oppose class certification.  In fact, the Court decided the case on the specific language of the Plan, not on any novel principle of ERISA.  For this reason, this action will likely have no deterrent effect on other persons.  Garber v. Provident Life and Accident

---

[1]  International Paper does not contest its financial ability to satisfy a reasonable award of attorneys' fees, nor does it dispute that Plaintiffs seek in this action to confer a benefit on many of the Plan participants.

Insur. Co., 1999 U.S. App. LEXIS 11280 *14-15 (6th Cir. 1999) affirmed the district court's

denial of attorneys' fees, agreeing that defendant's *unreasonable* interpretation of policy

language in denying coverage of claim was not in *bad faith*, that the case was unique, and that no

general deterrence would be served by awarding attorneys' fees.  (Decision is attached as Ex. 1)

Whether or not attorneys' fees are warranted is a matter for this Court's discretion. [2]

**B.    Plaintiffs May Not Recover Fees or Expenses Incurred While Exhausting the ERISA Administrative Claims Procedure**

Even if the Court determines that attorney fees should be awarded against International

Paper, ERISA Section 502, 29 U.S.C. § 1132(g) does not permit parties to recover attorneys'

fees for legal work performed during the administrative exhaustion phase of a benefits

proceeding.  Anderson v. Procter & Gamble Co., 220 F.3d 449, 456 (6th Cir. 2000)("[A]lthough

Anderson's benefit claims were meritorious and the fee award she requests is reasonable, the

district court did not err in granting summary judgment for Procter & Gamble because ERISA

does not authorize recovery of attorneys' fees for work performed during the administrative

exhaustion phase of a benefits proceeding.")  The Sixth Circuit found persuasive the Ninth

Circuit's decision in Cann v. Carpenters' Pension Trust Fund for Northern California, 989 F.2d

313, 315 (9th Cir. 1993) that the opening phrase of § 1132(g) "in any action" limits recovery to

fees incurred during "litigation in court".  Accordingly, a total of $107,906.38 ($101,673.75 in

fees for Murdock Goldenberg Schneider & Groh + $4950 in fees for Myron Wolf + $1268.40 in

---

[2]  Plaintiffs' Motion also includes a request for additional attorneys' fees to be paid out of the total severance funds due, as a result of this Court's March 20, 2003 Order, under the Champion International Paper Corporation Reorganization Policy #828.  This request does not implicate any additional amounts requested or due from International Paper above actual Policy #828 benefits, but instead are requested to be deducted pro rata from the recovery of individual class members.  Defendant notes, however, that the attorneys' fees and expenses requested are excessive for the same reasons set forth herein.

expenses incurred by MGSG + $14.23 in expenses incurred by Wolf)[3] should be deducted from Plaintiff counsels' Summary of Billable Hours and Costs for fees incurred during this time period.

All four circuit Courts of Appeal to consider this issue have concluded that "ERISA attorney's fees [are] categorically unavailable for expenses incurred while exhausting administrative remedies." Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003); see also Peterson v. Continental Cas. Co., 282 F.3d 112, 121 (2d Cir. 2002)[4] ; Anderson v. Procter & Gamble Co., supra; Cann v. Carpenters' Pension Trust Fund for N. Cal., supra.  See also Warren v. Cochran, 257 F.Supp. 2d 321 (D. Maine 2003).  In light of the unambiguous authority that legal fees cannot be recovered for exhausting administrative remedies, it is remarkable that plaintiffs' brief does not discuss this issue.

In the instant case, plaintiffs filed their initial Complaint in this action on February 22, 2001 (Docket Entry #1) without even initiating the Plan's administrative remedies as required by ERISA.  Consequently, on March 19, 2001, International Paper moved to stay the proceedings pending plaintiffs' exhaustion of their administrative remedies, which plaintiffs opposed. (Docket Entry #10.)  The Court properly granted International Paper's motion on April 27, 2001. (Docket Entry # 13.)  After exhausting the Plan's administrative remedies, on December 10, 2001, plaintiffs moved to lift the Court's stay, without opposition.  (See Docket Entry # 14.)  The

---

[3] Murdock Goldenberg billed a total of 319.75 hours during this time period.  The total dollar amount for the firm was determined by multiplying the hours billed by the billable hourly rate for each person with a billing entry during this period.  Mr. Wolf billed 18 hours during this period which was multiplied by his requested billable hourly rate of $275.

[4]  The Second Circuit followed the Sixth and Ninth's Circuits on this point by vacating an award of attorneys' fees and costs incurred in exhausting the initial administrative process.  Peterson v. Continental Casualty Company, supra, 282 F.3d at 118-120.   The Court permitted an award of attorneys' fees for legal fees incurred following remand to the administrative process.  The plaintiff in Peterson had exhausted the administrative process before filing suit, and the Court held that no attorneys' fees could be awarded for exhausting the administrative record in the initial phase of the process.

Court granted Plaintiff's motion on January 14, 2002, and set the scheduling order for this action. (See Docket Entry # 19.)

Plaintiffs are not entitled to recovery of any attorneys' fees incurred between March 19, 2001 and January 14, 2002. It is well-established in this Circuit that exhaustion of administrative remedies is a prerequisite to seeking judicial review of ERISA benefit claims. Baxter v. C.A. Muer Corp., 941 F.2d 451 (6th Cir. 1991). The fact that plaintiffs in the instant case improperly filed suit before exhausting the administrative process and opposed a motion requiring them to exhaust cannot justify an award of attorneys' fees for attorneys fees incurred in opposing their duty to exhaust and in carrying out their duty to exhaust. See Rego v. Westvaco Corp. supra. Permitting recovery of attorneys in these circumstances would reward plaintiffs for failing to follow clear law that the ERISA administrative processes must be exhausted before a suit for benefit claims are filed.

In Rego v. Westvaco Corp., the Court of Appeals considered the specific circumstance of a plaintiff who files suit before exhausting administrative remedies. The Court had no difficulty concluding that "we agree with our sister circuits that have held ERISA attorney's fees to be categorically unavailable for expenses incurred while exhausting administrative remedies." 319 F.3d at150. The clear language of ERISA would be thwarted if plaintiffs could obtain attorneys fees for the administrative process by virtue of filing suit before exhausting that process.

Because this Court ruled on the administrative record and found no need for remand to the administrative process, this case has no post-remand administrative attorneys fees of the type awarded by the court in Peterson. All attorneys fees incurred in exhausting the administrative process must be denied under the unequivocal holdings of the Sixth Circuit and three other Circuit Courts of Appeal.

Consequently, Plaintiffs' fees incurred to respond to Defendant's motion to stay the proceedings and to lift the stay subsequent to exhaustion should be disallowed.

### C.    Plaintiffs' Requested Fees Are Not Reasonable

If the Court concludes that attorneys' fees should be assessed against International Paper, such fees must be calculated using the "lodestar" method of calculation, *i.e.*, determining a reasonable fee based on a *reasonable hourly rate* and a *reasonable number of hours* of service. *See* Hensley v. Eckerhart, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). The party seeking an award of fees must submit evidence supporting the hours worked and rates claimed. Attorneys must "maintain billing time records that are sufficiently detailed to enable the courts to review the reasonableness of the hours expended." Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1176-77 (6th Cir. 1990). Plaintiff counsels' billing records are insufficient in many respects, and the requested fees are unreasonable in significant part. Therefore, if the Court determines Plaintiffs are entitled to an award, these fees should be significantly reduced for the reasons set forth below.

In addition, this is not a case resolving any significant legal question regarding ERISA. Indeed, this Court rejected several of plaintiffs' argument concerning ERISA, such as the standard of review, the obligation to exhaust the plan claims procedure, and the role of the administrator's record. At the end, this case involved only interpretation of specific policy language under a single severance plan. Such a case does not merit the excessive fees sought by plaintiffs' counsel. *See* Garber v. Provident Life and Accident Insur. Co., 1999 U.S. App. LEXIS 11280, at * 15-16 (6th Cir. 1999) (Ex. 1).

1.    **Plaintiff Counsel's Hourly Rates Are Excessive in Comparison to the Rates of Competent Counsel in this Venue**

The Supreme Court has recognized the "community market rule" as the proper way to determine a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 895 n. 11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984). In applying the community market rule, the courts look to rates for similar services in the community by attorneys with reasonably comparable skills, experience, and reputation. Hadix v. Johnson, 65 F.3d 532, 536 (6th Cir. 1995) (citing Blum, 465 U.S. at 896 n.11). Hourly rates should not exceed what is necessary to encourage competent lawyers within the relevant community to undertake legal representation. Id. (*citing* Coulter v. State of Tennessee, 805 F.2d 146, 148-49 (6th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987)). Accordingly, under fee shifting statutes, "a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate." Tinch v. City of Dayton, 199 F. Supp. 2d 758 (S.D. Ohio 2002) (*quoting* Coulter, 805 F.2d at 149).

The Summary of Billable Hours and Costs submitted by Plaintiffs' counsel seeks the following hourly rates for the attorneys' involved in this action:[5]

1)  Theresa Groh - $325 – 18 years in practice[6]

---

[5] Plaintiffs also seek recovery for fees incurred by paralegal Stephanie Vaaler at the rate of $85 an hour. Defendant objects to this hourly billable rate on the grounds that no evidence has been provided in support of its reasonableness. The Declarations submitted by counsel in this action, as well as Declarations by Mssrs. Wayne and Stich, Exhibits 4 and 5 to Plaintiffs' motion, address only their opinion on the reasonableness of the attorneys' fees submitted, and do not address the hourly rate of Ms. Vaaler.

[6] Years of practice are calculated based upon the year each attorney stated in his or her Declaration that he or she graduated from law school, but may be less if the individual did not practice during the entire period since graduation, but such absence is not reflected in the Declaration. See Declarations of Goldenberg, Naylor, and McGrath attached to Notice of Filing Declarations in Support of Plaintiffs' Motion for Attorney Fees ("Notice of Filing"), and Declarations of Groh, Murdock and Wolf attached as Exhibits 1, 2, 3 to the Motion for Attorneys' Fees, Interest, Expenses, and Incentive Awards ("Pls.' Motion for Fees").

    2) John Murdock - $300 – 9 years in practice

    3) Myron Wolf - $275 – 28 years in practice

    4) Jeffrey Goldenberg - $275 – 9 years in practice

    5) Todd B. Naylor - $200 – 6 years in practice

    6) V. Brandon McGrath - $150 – 4 years in practice

These hourly rates are significantly higher than those of attorneys with reasonably comparable skills, experience, and reputation in their community, and are higher than necessary to encourage lawyers within the community to undertake legal representation. This is evident from a review of the results of a survey published by the Ohio State Bar Association (OSBA) in the Fall of 2001.[7] (See attached Exhibit 2.) This is also confirmed by the affidavit of attorney Jack Fuchs, an experienced ERISA litigator in Cincinnati. (See attached Exhibit 3.)

    The majority of Plaintiffs' counsel are members of a firm of approximately six attorneys located in Cincinnati, Ohio. Mr. Wolf is the founding partner of his three-attorney firm located in Hamilton, Ohio, a suburb outside of Cincinnati. The OSBA survey, conducted during the same time frame Plaintiffs initiated this action, establishes that the median hourly billing rate for downtown Cincinnati was $186, and for suburban Cincinnati was $138, with a mean hourly billing rate of $152. (Ex. 2, p., 18.)[8] Only hourly billing rates at the 95th percentile or better were over $300. (Id.) The survey also established that the hourly billing rates increased in downtown at a rate of approximately 8.0 percent per year, and 3.3 percent in the suburbs. (Id.) Analysis which included the entire Greater Cincinnati Area established that the median and mean

---

[7] The unreasonableness of the rates requested by MGSG attorneys Groh, Murdock, and Goldenberg is also evident in comparison to that requested by Mr. Wolf, a 28-year veteran of the practice of law.

[8] See also, Tinch v. City of Dayton, 199 F. Supp. 2d 758, 766 (S.D. Ohio 2002) (rejecting request for hourly billing rate of $250, even though it represented attorneys' customary billing rate, and holding "that $150 is an appropriate hourly rate, which would encourage competent counsel to represent individuals such as the Plaintiffs in this litigation."); Granzeier v. Middleton, 173 F.3d 568 (6th Cir. 1999) (affirming district court's reduction of hourly rate from $165 to $110 to reflect prevailing rate in local Covington legal market rather than the Cincinnati rate sought by attorney.)

hourly billing rate at this time was $175.  (Ex. 2, p. 27.)  A more detailed breakdown of hourly

billing rates by the size of firm, years of practice, and primary field of law, established the

following average[9] and premium[10] hourly rates for attorneys or firms with similar characteristics

to that of Plaintiffs' counsel:

- For an attorney in a firm of 6-20 attorneys = average rate of $150 - $157, with a premium rate up to $267

- For an attorney with more than 25 years of practice = average rate of $150 - $168, with a premium rate up to $310

- For an attorney with 16-25 years of practice = average rate of $150 - $165, with a premium rate up to $270

- For an attorney with 11-15 years of practice = average rate of $147 - $150, with a premium rate up to $251

- For an attorney with 6-10 years of practice = average rate of $138 - $144, with a premium rate up to $239

- For an attorney in general civil trial practice = average rate of $155 - $168, with a premium rate up to $275

- For a partner in a firm with 2-7 partners = average rate of $150 - $154, with a premium rate up to $250

- For an associate in a firm with 2-7 partners = average rate of $127 - $136, with a premium rate up to $203

(Ex. 2, p. 17.)  The survey also reflects that since 1994, hourly billable rates in these categories

have increased at a rate between 2.9 to 4.8 percent per year, or approximately $5-$10 a year.[11]

---

[9] The "average" rates indicate the range reflected in the median and mean hourly billable rates for each category.

[10] The "premium" rates reflect the rate for the 95th percentile or top billing rate in the survey for each category.

[11] This estimate was reached by multiplying the lowest and highest rates shown by an average increase of 3.5 percent.

Plaintiffs' counsel are, without substantiation or justification, seeking premium rates that exceed even the highest rates in the community for that period of time.  They are also inexplicably seeking rates that exceed that of Jack Fuchs, a partner in a national law firm with twenty years of experience, and significant experience and expertise in ERISA litigation.  (See Ex. 3.)  Under fee shifting statutes, Defendant should only be required to pay what "competent and experienced lawyers in the region normally receive."  Tinch v. City of Dayton, 199 F. Supp. 2d 758 (S.D. Ohio 2002) (quoting Coulter, 805 F.2d at 149).  Taking into consideration an increase in hourly billable rates in the two-year period since the OSBA survey, using the average rates at the 75th percentile, which takes into account the specialized nature of ERISA practice, and adjusting for where the attorneys fall in the range for years of practice, reasonable hourly rates for Plaintiffs' counsel in this action are approximately:  $215 for Ms. Groh,[12] $215 for Mr. Wolf, $190 for Mssrs. Murdock and Goldenberg, $165 for Mr. Naylor, and $150 for Mr. McGrath.[13]  Should the Court award attorneys' fees to Plaintiffs in this action, Defendant requests that fees for Plaintiffs' counsel be reduced accordingly.

---

[12] Plaintiffs assert in support of their motion for attorneys' fees that this case demanded the "demonstration of a sophisticated understanding and knowledge of the statutory scheme, regulations, and interpretive case law" of ERISA by counsel in order to succeed.  (Pls.' Motion for Fees at p. 8, para. 3.) Plaintiffs' counsel cannot command a higher rate based on a sophisticated understanding of ERISA while their lack of knowledge that plaintiffs must exhaust administrative remedies before filing suit and the significant amount of initial research conducted in this case clearly exhibits they did not have the knowledge or experience warranting a higher fee.  Defendants should not be required to pay for Plaintiff counsels' learning curve at these inflated hourly rates.  See Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3rd Cir. 1983) ("A fee applicant cannot demand a high hourly rate – which is based on his or her experience, reputation, and a presumed familiarity with the applicable law – and then run up an inordinate amount of time researching that same law.")

[13] Because Mr. McGrath's reasonable hourly rate equates to that billed, Defendant does not object to this rate, but only to specific time entries addressed herein.

2.    **Plaintiff Counsels' Practice of Charging Time in Fifteen Minutes Increments Does Not Comport With Standard Billing Practices**

Plaintiffs' counsel have billed all time entries in fifteen minute (.25) increments.  This billing method does not comport with the standard, widely-accepted practice of accounting for billable hours in either six-minute or ten-minute intervals, <u>Reed v. Rhodes</u>, 179 F.3d 453, 470 (6th Cir. 1999), and creates the perception that counsel are "padding" their time by rounding up to high billable increments.  <u>Anglo-Danish Fibre Indus., Ltd. V. Columbian Rope Co.</u>, 2003 U.S. Dist. LEXIS 10386 *26 (W.D. Tenn. 2003) (attached as Ex. 4.)  Their time should accordingly be reduced by an across-the-board percentage to compensate for this inappropriate billing practice.[14]  <u>Id.</u>

3.    **Plaintiff Counsels' Hourly Rates Are Excessive for the Level of Work Performed**

In addition to seeking hourly rates that exceed those typically charged by comparable counsel in the community, and rounding time increments up by inappropriate amounts, Plaintiffs seek reimbursement for approximately eighty-eight percent of the total hours billed at a premium partner rate that could and should have been performed by associates or paralegals at a lower hourly billable rate.  A review of Ms. Groh's, Mr. Murdock's, and Mr. Goldenberg's billing entries evidences that a significant portion of their billed time was for legal research, a task customarily performed by associates and not requiring a higher level of expertise or experience. *See* <u>EEOC v. Anglin</u>, 2003 U.S. Dist. LEXIS 12852 *12 (M.D. Fla. 2003) (holding research of case law is a task for an associate or paralegal and should be billed at an associate or paralegal

---

[14] Plaintiffs' counsel assert they omitted time that was less than 15 minutes, (see Pls' Motion for Fees, Ex. 1, ¶ 11 and Ex. 2, ¶ 9), but this does not resolve the issue of billing all time that was 15 minutes or more in large increments that does not account for unused time within these billed blocks.  In addition, because Plaintiff billed their time in 15-minute increments, it is difficult to understand what entries were omitted as less than 15 minutes, which would be zero under their billing methods.

rate, not at a partner rate) (Ex. 5) (citing <u>Ursic v. Bethlehem Mines</u>, 719 F.2d 670, 677 (3rd Cir.

1983)). They each also billed time for drafting discovery requests, motions, and responses to

motions,[15] also tasks customarily performed by associates.

As Ms. Groh states in her Declaration in support of the fee application, "[t]wo associate

attorneys, Brandon McGrath and Todd Naylor, and one paralegal, Stephanie Valer, all worked

with me and under my supervision on this case as members of Murdock Goldenberg Schneider

& Groh LPA during the times indicated in Exhibit 1 hereto."[16]  (Pls. Motion for Fees, Ex. 1, ¶ 5.)

As set forth above, Plaintiff seeks a billable hourly rate for Mr. McGrath at $150, Mr. Naylor at

$200, and Ms. Vaaler at $85, significantly lower than the $325, $300, and $275 an hour sought

for Ms. Groh and Mssrs. Murdock and Goldenberg respectively.  (See Pls.' Motion for Fees, Ex.

1 to Ex. 1.)  Despite the apparent availability of these associates and paralegal to perform work at

more reasonable hourly rates, the associates billed a total of 48.5 hours between them, and the

paralegal billed 148.75 hours, compared to Ms. Groh's 993.75 hours and Mr. Murdock's 403.25

hours.  The hourly billable rate for this work should therefore be reduced to a reasonable

associate hourly rate, or reduced by an across-the-board percentage.  *See* <u>Pennsylvania v.</u>

<u>Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 554, 106 S. Ct. 3088, 92 L. Ed.

2d 439 (1986) (noting the district court's reduction in requested hourly rates and use of three

---

[15] Much of the time billed for drafting discovery and motions was billed by both Ms. Groh and Mr.
Murdock.  It appears from the entry descriptions that these entries are duplicative and redundant, as
opposed to review of one's work by the other.  (See Defendant's objections to individual entries attached
as Exhibit 6.)  This time should also be reduced for such unnecessary duplication.

[16] The Declaration submitted by Brandon McGrath, attached to Plaintiffs' Notice of Filing, states he
worked for Murdock, Goldenberg, Schneider & Groh L.P.A. (MGSG) until September 2001.  Todd
Naylor states in his Declaration that he started working for the firm in February 2003.  There is no
indication that Ms. Groh and Mr. Murdock had an associate assisting them with this case in 2002.
Because their hourly billable rates are excessive for this geographic area and for their level of expertise,
however, the rates should be reduced accordingly, especially for this lower-level work, whether or not
they had associate assistance during 2002.

separate hourly rates in making its award: $100 for the "most difficult" work; $65 for work that could have been done "by an attorney working at the associate level;" and $25 for work "which required little or no legal ability"); Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3rd Cir. 1983) (reducing hourly rates because "Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."); Microsoft Corp. v. United Computer Svcs. of N.J., 216 F. Supp. 2d 383, 392 (D.N.J. 2002) (holding Defendant should not be asked to pay for plaintiff's decision to assign routine tasks of research and drafting to partners of firm, and disallowing all such time); Harman v. Lyphomed, Inc., 734 F. Supp. 294, 296 (N.D. Ill. 1990) (finding lodestar significantly overstated, among other reasons, because a disproportionate amount of work was performed by partners and associates with higher billing rates).

### 4. Plaintiff Counsels' Billing Entries Are Duplicative and Redundant

Not only did Plaintiffs' counsel request fees higher than customary in the region and have partners performing hours of legal research at these excessive fees, but they also had two and three partners performing the same or overlapping work at the same time, and up to four billing attorneys in "conferences" on numerous occasions. A cursory review of Plaintiff counsels' billing entries shows duplicative and redundant entries for three to four attorneys performing the same task and conducting conferences among themselves for which all billed for their participation.[17] For example, on February 16, February 17, and February 19, 2001 all three

---

[17] Declarations of Theresa Groh and John Murdock in support of their fees state that they "omitted most of what was a considerable amount of time conference with my partners, associates in my firm, and co-counsel, Myron Wolf." (See Ex. 1, ¶ 11 and Ex. 2, ¶ 9 to Pl.'s Motion.) A majority of entries by both Ms. Groh and Mr. Murdock contain time entries for conferences with each other, and several entries contain time entries for conferences with co-counsel, and other counsel and staff within their firm. It therefore does not appear that this is an accurate representation. In addition, because Plaintiffs' counsel "block-billed" these conferences within large blocks of time containing other tasks, it is impossible to tell how much time was expended conferencing as opposed to completing other tasks contained within the

partners, Groh billing at $325 a hour, Murdock billing at $300 an hour, and Goldenberg billing at $275, billed for researching ERISA and conferencing with each other for three to twelve hours during the day.  On February 17, 18, and 19th, a fourth attorney, Brandon McGrath also added to this list for four to eight hours a day at $150 an hour.  On February 20th and 21st, Groh, Murdock, and McGrath billed eight to twelve hours each to research, draft the Complaint, draft discovery and conference with each other.  Similarly, on March 20th, 22nd, and 23rd, Groh and Murdock each billed five and a half to ten hours each day to review Defendant's answer and motion to stay, conference with each other, and research exhaustion issues.  Plaintiff counsels' billing entries are replete with these duplications and excessive billing for internal conferences, and should be reduced accordingly.  Anglo-Danish Fibre Indus., Ltd. V. Columbian Rope Co., 2003 U.S. Dist. LEXIS 10386 *19 (W.D. Tenn. 2003) (the district court should exclude from the initial fee calculation hours that were not "reasonably expended," including hours that are excessive, redundant, or otherwise unnecessary)[18] (Ex. 4) (citing Black v. Lojac Enterps., 1997 U.S. App. LEXIS 17205 (6th Cir. 1997) (Ex. 7.)  "A court may deny compensation for redundant records on an item-by-item basis, Coulter, 805 F.2d at 152, or on an across-the-board percentage basis, Hudson v. Reno, 130 F.3d 1193, 1209 (6th Cir. 1997)."  Id. at *22.  Attached as Exhibit 6 is a replication of Plaintiff's time entries and individual, specific objections to these entries.[19]

---

same billing entry.  Plaintiffs are not entitled to any deference or presumption in these entries, and they should be reduced for duplication and excessive billing.

[18] In Anglo-Danish Fibre Indust., the Court held that when multiple attorneys billed for overlapping conferences or redundant research, review or drafting, that it would allow the full reasonable hourly rate for the attorney billing at the highest rate, one-half the reasonable rate for the second attorney, and no remuneration for more than two attorneys in a meeting, call or conference or performing redundant work. 2003 U.S. Dist LEXIS 10386 at *23-24.  Defendant believes this approach to be reasonable, so long as the hourly rate utilized is reduced to a reasonable rate, rather than accepted at the rate requested.

[19] Defendant has summarily addressed herein categories of fees that should be denied, as well as objections to the hourly billable rates requested by Plaintiffs' counsel.  The attached Exhibit supplements these categories with specific objections to individual line entries submitted by Plaintiffs' counsel.

5.    **Fees Billed by Attorney Myron Wolf Should Be Disallowed As Redundant, Duplicative, and Unnecessary**

A cursory review of Mr. Wolf's Billing Statement, submitted as a supplement to Plaintiff's original Motion, makes evident that Mr. Wolf had no substantive involvement in this case, and that his fees are excessive and unwarranted.  In January 2001, Mr. Wolf met with the initiating plaintiffs in this action, reviewed the severance agreement package, and by early February 2001, referred the plaintiffs to Theresa Groh at Murdock Goldenberg Schneider & Groh.  (See Notice of Filing, Time and Billing Statement of Myron A. Wolf, pp. 1-2, and Pls.' Motion for Fees, Ex. 3, ¶ 5.)  Following this referral, Mr. Wolf performed no substantive or contributory work on this case.

Except for one entry to draft an affidavit (3/28/01-03/30/01), each of Mr. Wolf's entries consist *solely* of receiving and reviewing pleadings prepared by other counsel in this matter, and conferences with Ms. Groh.  Mr. Wolf's entries include half an hour of time to review one and two-page documents that would take a minute or two to peruse, and an hour to two hours to review pleadings that could easily be digested in much less time.  Mr. Wolf's billing records make clear he did not draft, revise or edit any of the pleadings submitted by the plaintiffs, did not prepare any responses to defendant's pleadings, and did not conduct any research to assist in doing so.  Neither Mr. Wolf nor Ms. Groh identified the topic of any of their conferences.  It is therefore impossible to determine if Mr. Wolf contributed any substantive or necessary assistance during these conversations.  His billing entries are duplicative of work performed by other attorneys handling the case, unnecessary to its prosecution, vague, and excessive.  His

---

Defendant respectfully requests the Court consider these additional objections for the reduction of the lodestar to the reasonable and recoverable number of hours expended in this action.

16

request for fees totaling $20,693.75 should therefore be denied in its entirety, excepting a reasonable allowance of time for an initial consultation with the class representatives.

Defendant also objects to Mr. Wolf's request for reimbursement of expenses for $14.23 for Airborne Express on 05/01/01. There is no indication of the reason for this expense, and no obvious justification for fees for overnight delivery in an action in which plaintiffs, their counsel, and the court are all in the same location.

**6.      Plaintiff Counsels' Time Entries Should Be Denied to the Extent They Are Too Vague to Determine Reasonableness**

Attorneys must "maintain billing time records that are sufficiently detailed to enable the courts to review the reasonableness of the hours expended." Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1176-77 (6th Cir. 1990). Where records are ambiguous, courts should not apply any presumption in favor of the party seeking the fee. Id. at 1176. To the contrary, entries that are vague or ambiguous do not merit an award. Anglo-Danish Fibre Indus., Ltd. V. Columbian Rope Co., 2003 U.S. Dist. LEXIS 10386 *19 (W.D. Tenn. 2003) (Ex. 4) (*citing* Black v. Lojac Enterps., 1997 U.S. App. LEXIS 17205 (6th Cir. 1997) (Ex. 7.)). "Billing entries for conferences, memoranda, voicemail, emails, and letters, when the billing entries do not identify the subject matter of the communication, are too vague to show whether the hours expended are reasonable." Id. at *20.

Many of Plaintiff counsels' time entries suffer from this deficiency. (See objections noted in Ex. 6 attached hereto.) There are numerous entries for "research" without any explanation of the topic, as well as numerous "conferences" without any explanation of what was discussed. (*See, e.g.*: 02/16/01 Conference with TLG and JSG, research ERISA, 9.25 hours; 02/16/01 Research and conference with JCM and TLG, 5 hours; 02/17/01 Research and fact investigation, conferences with JCM, VBM, and JSG, 12 hours; 02/18/01 Research and fact

investigation; conferences with TLG and VBM, 12.75 hours; 02/26/01.)  These deficiencies exist

throughout  Plaintiff counsels' billing records, and prevent an assessment of the reasonableness

of the time expended.  (See Ex. 6 for objections to line-item entries.)  Because Plaintiffs have

failed to establish the reasonableness of the time billed, recovery of attorneys' fees for this time

should be denied.  *See* Black v. Lojac Enterps., 1997 U.S. App. LEXIS 17205 *9-10 (6th Cir.

1997) (declining to award fees for activities such as "research," "pick-up," "revised form," and

"office conference," when the activities were not more specifically identified.)

     Similarly, Plaintiffs' counsel have "block billed" their time, including numerous tasks

under the same time entry.  (See objections noted in Ex. 6.)  This billing practice also prevents an

assessment of the reasonableness of the time expended on each task within the block.  Because

documentation of these hours is inadequate, the court should reduce the award accordingly.

Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed. 2d 40 (1983).

     **7.**    **Plaintiffs' Counsel May Not Recover Fees Incurred for Unnecessary
Discovery Disputes**

     Plaintiff expended a significant amount of time and fees drafting discovery and preparing

two motions to compel discovery objected to by Defendant.  Plaintiffs' motions (Document Nos.

27 and 28) were denied as moot upon the granting of Plaintiffs' Motion for Judgment.  (03/20/03

Amended Order at p. 29.)  Plaintiff sought through this discovery to obtain documents and

information that were not part of the administrative record below and thus were not pertinent or

relevant to this action.  University Hosp. of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 845

(6th Cir. 2000) (the reviewing court considers "only the materials available to the [plan

administrator], and not any depositions, affidavits, or similar litigated-related materials); Schey

v. UNUM Life Ins. Co., 145 F. Supp. 2d 919, 921 (N.D. Ohio 2001) (a district court ordinarily

limits its review to the evidence contained in the administrative record).  Plaintiff is not entitled

to recover attorneys' fees or expenses incurred in these superfluous efforts.  *See* <u>Gerwen v.</u>
<u>Guarantee Mutual Life Co.</u>, 214 F.3d 1041 (9th Cir. 2000) (affirming subtraction of hours billed
for discovery sought because evidence outside the record was neither admissible not necessary to
litigate the case).  Accordingly, time submitted by Plaintiffs' counsel for these unnecessary
efforts should be subtracted from the lodestar attorneys' fees.  (See objections noted in Ex. 6.)

       **8.**    **Plaintiffs' Attorneys' Fees Incurred to Prepare the Fee Petition is**
                **Excessive**

Counsel for Plaintiff expended 145 hours of time and $ 36,925 in preparing the
application for attorneys' fees and supporting memorandum.  Utilizing an average 40-hour
workweek, this encompasses over three and half weeks dedicated solely to the compilation of
fees, expenses, and the motion in support in recovery of these amounts.  Of these 145 hours, Ms.
Groh expended 101.5 hours, totaling $32,987.50 of the fees incurred.  Plaintiffs' are not entitled
to reimbursement for this excessive amount.

As discussed above, Ms. Groh's predominance in the significant research put into this
issue is unwarranted and not compensable at her billing rate.  This research could have and
should have been handled by a less experienced associate on this matter.  Instead, the fee
summary attributes only eight (8) hours of research or participation by Mr. Naylor on this
issue.[20]  In addition, some assumption must be made that a law firm that touts itself as handling
mass tort litigation on a regular basis has compiled such petitions previously, and would not have
to expend this amount of time and research in preparation of the instant application.

Moreover, Plaintiffs claim attorneys fees for legal work performed while exhausting
ERISA administrative procedure.  Minimal research should have shown Plaintiffs that such fees
are not recoverable under the clear holdings of the Sixth Circuit and all three other Circuit Courts

who have considered the issue. *See* <u>Anderson</u>, *supra*; <u>Rego</u>, *supra*; <u>Peterson</u>, *supra*; and <u>Cann</u>, *supra*.

In any event, Plaintiffs, as a matter of law, are not entitled to recover more than three percent (3%) of their total hours billed in compensation for preparation of the fee application. <u>Coulter v. Tennessee</u>, 805 F.2d 146, 151 (6th Cir. 1986) (announcing a general rule that attorney fee hours in seeking attorney fees in lodestar cases are allowed, but only up to 3 percent of the total hours billed in obtaining relief); <u>Moore v. Crestwood Local School Dist.</u>, 804 F. Supp. 960, 968-969 (N.D. Ohio 1992) (following <u>Coulter</u> three percent rule). Three percent of the total hours submitted by Plaintiffs' counsel, 1683.5 hours, is 50.5 hours. Plaintiffs' recovery, however, should be capped at three percent of the reasonable hours allowed by the Court following the lodestar analysis and necessary reductions, not at the total hours submitted. In light of the necessary reduction in hours for the administrative proceedings (319.75 hours), Mr. Wolf's time (approximately 70.0 hours), and the duplication of hours by several attorneys, and the reduction in the hourly rate for low-level work performed by Ms. Groh, including her primary role in research for and preparation of the fee application, significantly fewer hours and/or a lower billable/blended rate should be utilized in this allowance.

---

[20] Mr. Naylor began working for the firm in February 2003, and was working there throughout the period the fee petition was prepared.

### D.     Plaintiff Counsel Is Not Entitled to a Multiplier

After a determination of the "lodestar" attorney's fee, which is presumed to be the reasonable fee to which counsel is entitled, the Supreme Court has recognized that other considerations may lead the district court to adjust the fee upward or downward.  *See* Hensley v. Eckerhart, 461 U.S. 424, 434, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983); Blum v. Stenson, 465 U.S. 886, 889, 104 S. Ct 1541, 79 L. Ed. 2d 891 (1984); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (I), 478 U.S. 546, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986). These considerations have been significantly limited over the years, however, and enhancements are generally disfavored in fee-shifting cases absent exceptional circumstances.  Delaware Valley (I), 478 U.S. at 566.

The Supreme Court noted in its decision in Hensley that a district court may consider the factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), pronounced by the Fifth Circuit and adopted by many courts in reasonable fee determinations, and emphasized by the Plaintiffs in support of their fee application (see Pls' Motion at pp. 6-11), in determining whether to adjust the lodestar fee upward or downward.  The Court noted, however, that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."  Hensley, 461 U.S. at 434.

The Court further limited the use of the Johnson factors in Blum v. Stenson, holding the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably reflected in the lodestar amount, and thus *cannot serve* as independent bases for increasing the basic fee award.  465 U.S. 886, 898-900 (1984).  (Emphasis added).  *In accord,* Perotti v. Seiter, 935 F.2d 761 (6th Cir. 1991) (remanding case awarding 2.0 multiplier to district court for

reconsideration because <u>Blum</u> made clear "exceptional results, high caliber of representation, and the difficulties presented by particular facts of the case . . . are not proper predicates for a multiplier").

In <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u> (I), the Court further limited the circumstances under which an enhancement to the lodestar fee could be made:

> [W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests.  Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance.  In short, the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.

478 U.S. 546, 566, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986).  The Court therefore held that "[a]lthough upward adjustments of the lodestar figure are still permissible, [*citing* <u>Blum</u>, 465 U.S. at 901], such modifications are proper only in certain '*rare*' and '*exceptional*' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." 478 U.S. 546, 565 (1986) (emphasis added).

In <u>City of Burlington v. Dague</u>, the Supreme Court addressed whether a court, in determining an award of fees under the Solid Waste Disposal Act or the Federal Water Pollution Control Act, could enhance the fee award above the "lodestar" amount in order to reflect the fact that a party's attorneys were retained on a contingent fee basis, and also answered this question in the negative.  505 U.S. 557, 559, 567, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992) (adopting the plurality opinion in <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u> (II), 483 U.S. 711, 727, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987) that "multipliers or other enhancement

of a reasonable lodestar fee to compensate for assuming the risk of loss is impermissible under the usual fee-shifting statutes"). The Court reasoned that "an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar." 505 U.S. at 562. The Court noted that the fee-shifting provision under these statutes "is similar to that of many other federal fee-shifting statutes," and that "our case law construing what is a 'reasonable' fee applies uniformly to all of them." 505 U.S. at 562. Accordingly, the Supreme Court's holding applies to the similar fee-shifting provision under ERISA, and prohibits an enhancement of the plaintiff's requested fee award based on the contingent nature of the action. Id. at 567. See Drennan v. General Motors Corp., 977 F.2d 246, 254 (6th Cir. 1992) (holding attorney fee award invalid to the extent enhanced for contingency under ERISA, and reversing and remanding for findings of fact and statement of reasons); Murphy v. Reliance Standard Life Insur. Co., 247 F.3d 1313, 1315-16 (11th Cir. 2001) (holding decision in Dague "applies with equal force to actions brought under ERISA"). See also, Tinch v. City of Dayton, 199 F. Supp. 2d 758, 766-67 (S.D. Ohio 2002) (plaintiff's request for an enhancement of the lodestar to reflect the contingent nature of the litigation and the quality of counsel's representation foreclosed by City of Burlington v. Dague and Blum v. Stenson).

The Sixth Circuit subsequently held in Davis v. The Mutual Life Insurance Co. of New York that the same reasoning applied by the Supreme Court in City of Burlington applies to a request for fee enhancement based on the disproportionate effect that a piece of litigation has on a small law practice. 6 F.3d 367, 381 (6th Cir. 1993). The Court noted that because "attention detracted from other matters is devoted to the matter at hand, this factor is already reflected in

the lodestar in the number of hours expended" and does not justify the use of a multiplier.[21]  Id.
at 382.

The foregoing cases clearly foreclose the justifications offered by Plaintiffs in support of
enhancement of the lodestar by a 1.5 multiplier.[22]  (See Pls' Motion for Fees at pp. 6-12).  In
addition, the cases cited by Plaintiff in support of the request for a multiplier are inapplicable to a
determination of fees in this case.  (See Bowling v. Pfizer, Inc., 922 F. Supp. 1261 (S.D. Ohio
1996); In Re Sulzer Hip Prosthesis, Ex. 11 to Pls' Motion; Brotherton v. Cleveland, 141 F. Supp.
2d 907 (S.D. Ohio 2001); Cook v. Niedert, 142 F.3d 1004 (7th Cir. 1998); Florin v. Nationsbank
of Georgia, N.A., 34 F.3d 560 (7th Cir. 1994); In Re: Southern Ohio Correctional Facility, 173
F.R.D. 205 (S.D. Ohio 1997) (citing Rawlings v. Prudential-Bache Proprties, Inc., 9 F.3d 513
(1993)), cited at pages 12-15 of their motion.)  None of these cases relate to the determination of
a reasonable attorney's fee under a fee-shifting statute.  Instead, each of these cases relate to the
payment of fees by the Class out of a common fund established by settlement for the benefit of
the Class.  Courts apply different standards to a common fund fee determination than to statutory
fee-shifting provisions.  See e.g., Brotherton, 141 F. Supp. 2d at 910 ("Determining an award of
attorneys' fees in a common fund requires that the court consider factors which are not present in
statutory fee shifting cases") (citing Rawlings, 9 F.3d at 516); Florin, 34 F.3d at 563 (in ERISA
common fund cases, the award of attorneys' fees is made pursuant to the principles of equity, not

---

[21] The Sixth Circuit in Davis also overruled Fite v. First Tenn. Prod. Credit Assoc., 861 F.2d 884  (6th Cir.
1988) and cases subsequent to Delaware Valley that continued to allow the contingent nature of a fee to
justify an increase in the lodestar as inconsistent with City of Burlington.  6 F.3d at 382.

[22] The Court in Davis further noted that "at least four Justices of the Supreme Court have concluded that,
as a general rule, courts should not enhance lodestars by more than one third."  Davis v. The Mutual Life
Insurance Co. of New York, 6 F.3d 367, 381 (6th Cir. 1993) (citing Pennsylvania v. Delaware Valley
Citizens' Council for Clean Air, 483 U.S. 711, 730, 97 L. Ed. 2d 585, 107 S. Ct. 3078 (1987) (plurality
opinion of White, J.))

ERISA's fee-shifting provision); <u>Cook</u>, 142 F.3d at 1015 (distinguishing policy considerations set forth in <u>Dague</u> for fee-shifting provisions from fee determinations in common fund cases).

The courts in these cases also recognized that the Supreme Court's decision in <u>City of Burlington</u> prohibits consideration of a multiplier for the contingency of a case under fee-shifting statutes, but held that this decision does not necessarily preclude its consideration in a common fund case. *See, e.g.* <u>Florin</u>, 34 F.3d at 563-63. Therefore, while the Court may consider this factor with regard to the fee obligations of the Class to their counsel, it may not consider this factor with regard to any fee obligations of Defendant to the Class.

Because each of the factors addressed by Plaintiffs in support of a multiplier are already reflected in the lodestar, and they have provided no allowable justification for an enhancement of the lodestar attorneys' fee under the ERISA fee-shifting provision, their request for a multiplier should be rejected.

### E.    Plaintiff's Are Not Entitled to Recovery for All Expenses Submitted

As set forth above, Plaintiff's expenses incurred during the administrative exhaustion phase should be disallowed. In addition to this reduction, Plaintiffs' photocopying expenses should be significantly reduced because they have provided no explanation of what was copied, and have thus failed to establish these copies were "necessarily obtained for use in the case," and because the per page copying costs are excessive and should be reduced to the standard five (5) cents per page.[23] <u>Tinch v. City of Dayton</u>, 199 F. Supp. 2d 758, 770 (S.D. Ohio 2002); 28 U.S.C. § 1920. Additional costs not allowed under 28 U.S.C. § 1920 should also be rejected, including mileage and travel expenses for attorneys to Hamilton, Ohio ($80.52), facsimile costs ($53.40), postage and federal express charges ($203.68), long distance telephone charges ($15.28),

---

[23] This is especially true of Plaintiffs' "excess copy charges" totaling $238.60 that provide no explanation for the amount charged or the documents copied.

parking, and meals.  Id. at 771.  Long distance telephone charges should also be disallowed because these entries lack any description of the callers involved, and thus Plaintiffs have not supported the relation of these expenses to the case.  Plaintiffs' charge for Burke Rosen & Associates in the amount of $500.00 should also be rejected because there is no explanation of the service provided for this fee.

### F.   Proposal for Reduction in Requested Attorneys' Fees and Expenses

Plaintiffs' seek a total of $733,809.39 in attorneys' fees, and $5325.40 in expenses.  For all of the reasons set forth above, Defendant respectfully requests that the Court deny Plaintiffs' motion for attorneys' fees and expenses or, in the alternative, disallow or reduce the fees and expenses as follows:

| Proposed Calculation of Reasonable Fees and Expenses | Hours | Fees |
|---|---|---|
| Plaintiff's Total Requested Fees and Expenses | 1683.5 | $739,134.79 |
| Reject Plaintiffs' request for a 1.5 multiplier to the total fees billed, and begin the lodestar fee determination with the claimed hours expended and hourly rates charged, 1683.5 hours, in the amount of $489,206.25 + expenses of $5325.40. | 1683.5 | - $244,603.14<br>$494,531.65 |
| Disallow fees and expenses incurred during the exhaustion of ERISA administrative remedies, and deduct $107,906.38 from the lodestar rate for these unrecoverable fees and expenses | -337.75<br>1346 | -107,906.38<br>$386,625.27 |
| Disallow fees billed by Myron Wolf except for a reasonable fee for initial consultation with Plaintiffs ($20,693.75 - $4950 (already deducted above for fees incurred during administrative period) = $15,743.75 – $825 allowance for initial conference with plaintiffs ($275/hr. x 3 hours) = reduction of $14,918.75 | -54.25<br>1291.75 | -$14,918.75<br>$371,706.52 |
| Reduce Plaintiff counsels' hourly rates to a reasonable rate, reduce hourly rates across the board, and/or use reasonable blended rate to account for level of work performed, such as extensive research, discovery, drafting, and preparation of fee petition performed at partner rate rather than associate rate.  Proposed rate is to use a $200 an hour reasonable blended rate times the allowable billed hours = $258,350.  Difference between billed | 1291.75<br>x $200/hr | -$113,374.27<br>$258,332.25 |

amount at excessive hourly rates and reasonable blended rate = deduction of $113,374.27.

| | | |
|---|---|---|
| Disallow or reduce time billed for vagueness, block billing, redundancy, duplication, excessiveness, etc.  Recommend fifteen percent across the board reduction. | -193.76 1097.99 | -$38,752.00 $219,580.25 |
| Cap the fees incurred in Plaintiffs' preparation of the fee application to 3 percent of the total hours allowed (1097.99 x .03 = 32.94 hours deducted from 145 hours billed = deduction of 112.06 hours) | -112.06 985.93 | -$22,412.00 $197,168.25 |
| Subtract nonrecoverable expenses ($1798.70 excess copying fees, $53.40 facsimile, $203.68 postage, $80.52 mileage, $15.28 long distance, $14.91 legal research, $500.00 Burke Rosen &Associates = $2666.49) | | -$2666.49 $194,501.76 |

Defendant accordingly requests that should the Court award attorneys' fees and expenses to Plaintiffs in this action, that the award by limited to approximately $194,501.76 for the reasons set forth above.

## III.    PLAINTIFFS' REQUEST FOR PREJUDGMENT INTEREST IS PREMISED UPON INACCURATE LEGAL STANDARDS

The decision to grant pre-judgment interest lies within the sound discretion of the Court, as does the determination of the pre-judgment interest rate.  *See* Drennan v. General Motors Corp., 977 F.2d 246, 253 (6th Cir. 1992), *reh'g denied, cert. denied*, 508 U.S. 940 (1993); Caffey v. Unum Life Insurance Co., 302 F.3d 576, 585 (6th Cir. 2002); Ford v. Uniroyal Pension Plan, 154 F.3d 613, 619 (6th Cir. 1998) (citing EEOC v. Wooster Brush Co. Employees Relief Ass'n., 727 F.2d 566, 579 (6th Cir. 1984)).  As Plaintiffs stated, (Pl's Motion at p. 24), the Sixth Circuit has held that the statutory post-judgment framework set forth in 28 U.S.C. § 1961 is a reasonable method for calculating a pre-judgment interest award.  Uniroyal Pension Plan, 154 F.3d 613 (citing Wooster Brush Co., 727 F.2d at 579).  The standard cited by Plaintiffs, however, is incorrect under current law.  The method for calculating the interest rate allowed on judgments

entered in district courts pursuant to 28 U.S.C. § 1961 changed effective December 21, 2000, and currently states in relevant part that:

> Such interest shall be calculated *from the date of the entry of the judgment*, at a rate equal to the *weekly average 1-year constant maturity Treasury yield*, as published by the Board of Governors of the Federal Reserve System, *for the calendar week preceding the date of judgment*.

29 U.S.C. § 1961(a) (emphasis added).  Plaintiffs' request for the interest rate to be calculated from the coupon issue yield equivalent for the last auction of fifty-two week United States treasury bills settled prior to February 17, 2001 should accordingly be rejected.

Judgment has not yet been entered in this case.  The applicable rates under the current standard can be found at: http://www.federalreserve.gov/releases/h15.  Accordingly, should the Court decide to award prejudgment interest, the Court should look to the appropriate prejudgment interest rate based on interest rates in effect at the time of judgment or an average rate over the period when such severance would have been paid.

Plaintiffs request that prejudgment interest be applied from the date of their termination from employment with International Paper on February 17, 2001.  Under Severance Policy #828, Section 11, however, Plaintiffs were required to file a claim requesting severance benefits, and the Plan Administrator was allowed a total of sixty days, thirty for initial review and thirty on administrative appeal, in which to make a determination on the claim.  Because Plaintiffs failed to pursue their claims through the appropriate administrative channels, the Court stayed the proceedings in this action pending exhaustion of these efforts.  Any prejudgment interest should therefore begin to accrue no earlier than June 26, 2001, sixty days following entry of the Court's April 27, 2001 Order staying the action until Plaintiffs exhausted administrative procedures. Plaintiffs' request that interest be applied from February 17, 2001 should be rejected, because

Plaintiffs' claim for denial of benefits under ERISA had not accrued until Plaintiffs exhausted their administrative remedies.

In conclusion, if the Court determines that an award of prejudgment interest is appropriate, such interest should accrue at a date no earlier than June 26, 2001, at an interest rate equal to the weekly average 1-year constant maturity Treasury yield in effect at the time of judgment or some average of rates in effect between June 26, 2001 and the date of judgment.

## IV.    CLASS REPRESENTATIVES DALESANDRO AND NOONAN ARE NOT ENTITLED TO AN INCENTIVE AWARD UNDER ERISA

Plaintiffs' Motion also includes a request for an incentive award of $10,000 each for the two class representatives, Scott Dalesandro and Diane Noonan, to be paid out of the total severance payment fund.  This request does not implicate any additional amounts requested or due from International Paper above actual Policy #828 benefits, but instead are amounts to be deducted pro rata from the recovery of individual class members.  Defendant respectfully submits that incentive awards are not recoverable under ERISA in light of the Supreme Court's interpretations of ERISA's equitable remedial provisions.

ERISA § 502(a)(3) permits plan participants to bring civil actions to obtain "appropriate equitable relief" to redress violations of the statute or a plan.  The Supreme Court has held that the text of ERISA leaves no doubt that Congress intended "equitable relief" to include only those types of relief that were typically available in equity, such as injunction, mandamus, and restitution.  Mertens v. Hewitt Assocs., 508 U.S. 248, 254-55, 256, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993); Great-West Life & Annuity Insur. Co., 534 U.S. 204, 210, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002).  The incentive awards requested by Plaintiffs cannot be construed as any type of relief typically available in equity.  Instead, what Plaintiffs seek is money damages - compensation for time expended in pursuit of this action on their own behalf and the behalf of

others in the class.  The Supreme Court in Mertens made clear that money damages, "the classic

form of *legal* relief," are precluded by ERISA's remedial provisions.  Id. at 255 (emphasis in

original).  Plaintiffs in Mertens sought "monetary relief for all losses their plan sustained as a

result of the alleged breach of fiduciary duties," relief that the Supreme Court held could only be

considered compensatory damages unrecoverable under ERISA.  Id. at 255.  The incentive

awards sought by the class representatives are no different than the legal relief sought by the

Plaintiffs in Mertens, and should be rejected.[24]  *See also* Caffey v. Unum Life Insur. Co., 302

F.3d 576 (6th Cir. 2002) (ERISA does not permit recovery for consequential losses experienced

as a result of Unums' failure to perform under the Plan); Kerr v. Vatterott & Co., 184 F.3d 938,

944-45 (8th Cir. 1999) (compensatory damages, which focus on the plaintiff's losses and seek to

recover in money the value of the harm done to him, are not recoverable under § 1132(a)(3)).

## V.    CONCLUSION

Plaintiffs request for attorneys' fees, expenses, prejudgment interest, and incentive

awards should be denied or reduced in significant portion for the reasons set forth above.

Respectfully submitted,

INTERNATIONAL PAPER CO.

By: _____
      Of Counsel

**COUNSEL FOR DEFENDANT
INTERNATIONAL PAPER CO.**

---

[24] Should the Court ultimately determine an incentive award is recoverable and appropriate in this action,
Defendant believes the incentive award requested to be excessive in light of the time expended by the
class representatives and disproportionate to the average amounts due class members under Policy #828.

Michael A. Roberts (OH Bar No. 0047129)
Graydon Head & Ritchey, LLP
1900 5th 3rd Center
511 Walnut Street
Cincinnati, Ohio 45202
(513) 629-2799


W. Carter Younger (VSB 01147)
(Admitted Pro Hac Vice)
James P. McElligott, Jr. (VSB 014109)
(Admitted Pro Hac Vice)
McGuireWoods LLP
One James Center
Richmond, VA  23219
(804) 775-4363


## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of September 2003, a true and complete copy of this document was delivered via first class mail to Counsel for Plaintiff, Theresa L. Groh, Esq., and John C. Murdock at Murdock, Goldenberg, Schneider & Groh, L.P.A., 700 Walnut Street, Suite 400, Cincinnati, Ohio, 45202.


_____


#386565