# Exhibit 1

Service: **Get by LEXSEE®**
Citation: **1999 us app lexis 11280**

*1999 U.S. App. LEXIS 11280, \*; 22 E.B.C. 1090*

DONOVAN L. GARBER, Plaintiff-Appellee/Cross-Appellant, v. PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant-Appellant/Cross-Appellee.

Nos. 98-3043, 98-3046

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

1999 U.S. App. LEXIS 11280; 22 E.B.C. 1090

May 27, 1999, Filed

**NOTICE: [\*1]** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 206 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 206 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 1999 U.S. App. LEXIS 21114.

**PRIOR HISTORY:** On Appeal from the United States District Court for the Northern District of Ohio. 96-01766. Dowd, Jr. 12-1-97.

**DISPOSITION:** Judgment of the district court in favor of Plaintiff and the denial of Plaintiff's attorney's fees affirmed. Denial of prejudgment interest reversed. Case remanded to the district court for an order consistent with this opinion.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant insurer appealed an order of the United States District Court for the Northern District of Ohio, entering judgment for plaintiff, the father of the insured, on plaintiff's action for accidental death benefits under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq.

**OVERVIEW:** The son of plaintiff was approved to use a business flight to pursue a side trip. The son was insured against accidental death under his employer's group policy with defendant insurer. The crash of the airplane killed the son, and defendant refused payment. Plaintiff sued for coverage under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq. The district court entered judgment for plaintiff but denied the recovery of attorneys' fees and prejudgment interest. On appeal, the court affirmed the judgment for plaintiff. Defendant abused its discretion in determining that no coverage existed because the policy's language supported the reasonable conclusion that the son was "on business" when he died and was thus covered. The son was not "on vacation" because his official time off had not yet begun when he died. The court affirmed the denial of attorney's fees because defendant did not deny the claim in bad faith. The court also reversed the denial of prejudgment interest because a finding of bad faith was not necessary to award such interest to plaintiff.

**OUTCOME:** The court affirmed the judgment for plaintiff because the policy could be interpreted as covering plaintiff's son. The court affirmed the denial of attorney's fees as defendant insurer was not guilty of bad faith, reversed the denial of a prejudgment

interest award because defendant's incorrect refusal to pay warranted such an award, and remanded.

**CORE TERMS:** trip, vacation, prejudgment interest, coverage, travel, flight, fiduciary, policyholder, administrator, deferential, scheduled, discretionary authority, plan administrator, beneficiary, furthering, evening, duty, fly, conflict of interest, abuse-of-discretion, eligibility, heightened, construe, withheld, airport, abandoned, arranged, bonafide, morning, abused

### LexisNexis (TM) HEADNOTES - Core Concepts - ✦ Hide Concepts

Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review 🔍
*HN1*⏽The reviewing court reviews the findings of fact made after a bench trial for clear error.  More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies 🔍
*HN2*⏽A denial of benefits challenged under 29 U.S.C.S. § 1132(a)(1)(B) must be reviewed under a de novo standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which cases a deferential standard of review is appropriate.  More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies 🔍
*HN3*⏽If a benefit plan does give the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, courts review the denial of benefits under the abuse of discretion or arbitrary and capricious standard. A plan administrator's decision is not arbitrary or capricious if it is rational in light of the plan's provisions.  More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies 🔍
*HN4*⏽Reduced deference to the plan administrator may be appropriate where the fiduciary or administrator has a conflict of interest, among other situations, where claims decisions are made by an insurer who is paying claims out of its own assets. In such cases, a heightened abuse-of-discretion standard is appropriate, which can amount to a "reasonable and correct" or "reasonable and made in good faith" standard.  More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Usual & Ordinary Meaning 🔍
*HN5*⏽Where an insurer does not define a term in the policy, the court is left to interpret the term according to its plain meaning, in an ordinary and popular sense.  More Like This Headnote

Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies 🔍
*HN6*⏽In an action to recover benefits under the Employee Retirement Income Security Act (ERISA) by a participant, beneficiary, or fiduciary, under 29 U.S.C.S. § 1132(g) (1), the court in its discretion may allow a reasonable attorney's fee to either party. The district court must consider five factors in deciding whether to award attorney's fees: the degree of the opposing party's culpability or bad faith; the opposing party's ability to satisfy an award of attorney's fees; the deterrent effect of an award on other persons under similar circumstances; whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and the relative merits of the parties' positions. No single factor is determinative.  More Like This Headnote

HN7 ⚡ Generally, the beneficiaries of pension plans have a right to prejudgment interest on benefits wrongly withheld. To be "wrongful," payments need not have been withheld in bad faith. It is sufficient that they were incorrectly withheld. Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award.  More Like This Headnote

**COUNSEL:** For DONOVAN L. GARBER, Plaintiff - Appellee, Cross-Appellant (98-3043, 98-3046): Marshall I. Nurenberg, Kathleen J. St. John, Nurenberg, Plevin, Heller & McCarthy, Cleveland, OH.

For PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant - Appellant, Cross-Appellee (98-3043, 98-3046): Robert D. Anderle, Porter, Wright, Morris & Arthur, Cleveland, OH.

For PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant - Appellant, Cross-Appellee (98-3043, 98-3046): Joseph M. Rimac, Bannan, Green, Smith, Frank & Rimac, **[*2]** San Francisco, CA.

**JUDGES:** Before: BOGGS, CLAY, and GODBOLD, * Circuit Judges.

* The Honorable John C. Godbold, United States Circuit Judge for the Eleventh Circuit, sitting by designation.

**OPINION:** PER CURIAM. Plaintiff's son, Dr. David Garber, an engineer for Northrop Grumman Corporation in California, flew to Chicago on business. With Northrop's permission, he scheduled his return flight to California through Pittsburgh and Akron-Canton, to allow a surprise weekend visit with his parents in Canton, Ohio. He was insured for $ 300,000 against accidental death while travelling on business under Northrop's group travel accident insurance, issued by Provident Life and Accident Insurance Company. Garber was killed when his flight from Chicago to Pittsburgh crashed near the Pittsburgh airport. A.C. Newman and Company, the claims administrator for Provident, declined to pay Garber's accidental death benefits. Plaintiff, the named beneficiary under the travel insurance policy, appealed the decision. Provident, as claims review fiduciary, reviewed the decision and again denied payment. Plaintiff sued Provident in district court under the Employee Retirement Income Security Act ("ERISA"), **[*3]** 29 U.S.C. § 1001 *et seq.* Following a bench trial, the district court held that Provident acted arbitrarily and capriciously in reading the policy to exclude coverage, and entered a $ 300,000 judgment for Plaintiff. Provident appeals the judgment of the district court. Plaintiff cross-appeals the denial of attorney's fees and pre-judgment interest. We affirm the judgment for Plaintiff and the denial of attorney's fees, and reverse the denial of prejudgment interest.

**I**

Garber was covered by "Hazard 12" of the Provident policy, "24-Hour All Risk Accident Protection--Business Only," which provides in pertinent part that:

Coverage will apply to any injury sustained by an Employee when on Business for the Policyholder during any bonafide trip.

Coverage for such trip begins on the later of when an Employee leaves his or her

place of residence or place of regular employment for the purpose of going on such trip.

Coverage ends on the earlier of when an Employee returns to his or her place of residence or place of regular employment.

. . . .

Definition

The term "when on Business for the Policyholder" means furthering the business of the policyholder. This does not include **[\*4]** an injury sustained during the course of travel to and from work, leave of absence or vacation.

On Wednesday, September 7, 1994, Garber and several other Northrop employees flew from California to Chicago to attend a business conference scheduled for Thursday, September 8. Northrop arranged for two nights of lodging in Chicago, September 7 and 8. The group was scheduled to fly back to California on Friday, September 9. Before leaving California, Garber arranged instead to fly from Chicago to Ohio on Friday, visit his parents over the weekend, and return to California on Sunday, September 11. Northrop approved Garber's plan, which actually saved the company $ 107.40 in air fare. Knowing that Garber was going to depart Chicago for Ohio at 7:44 a.m. on Friday, September 9, Northrop intended to charge him only one-half day of vacation on Friday.

The conference ended earlier than expected on Thursday, so, rather than stay overnight in Chicago, Garber arranged to fly through Pittsburgh to Akron-Canton on Thursday evening, September 8. Garber's flight to Pittsburgh, US Air flight 427, crashed near the Pittsburgh airport at approximately 7:00 p.m. that evening. Affidavits from Northrop **[\*5]** headquarters employees one year later state that (1) "from the point he left the conference meetings in Chicago, [Garber] was on personal time," not company time; (2) because the conference ended early, the employees "were expected to fly back to Los Angeles Thursday night after work hours and to be back at their desks Friday morning;" and (3) having left Chicago on Thursday evening, Garber would have been charged for a full day of vacation on Friday, September 9. The record does not indicate whether Garber's colleagues in fact returned to California on Thursday or waited for their scheduled flights on Friday.

As the claims administrators for Provident, Newman received a series of documents from Northrop concerning Garber, the travel insurance policy, and a separate employer-related life insurance policy (not at issue in this case). The proof-of-death form submitted by Northrop for the life insurance policy stated that Garber had died "off duty." The district court found as a matter of fact that the "distinction between whether Dr. Garber was on duty or off duty at the time of his death has no relevance" to the travel policy.

## II

*HN1*We review the findings of fact made after **[\*6]** a bench trial for clear error, and the court's legal conclusions *de novo. Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 938 (6th Cir. 1997). *HN2*"[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) must be reviewed under a *de novo* standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which cases a deferential standard of review is appropriate." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 102, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989). *HN3*If the plan does give the plan administrator or fiduciary discretionary authority

Get a Document - by Citation - 22 E.B.C. 1090
Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 6 of 181
Page 5 of 8

to determine eligibility for benefits or to construe the plan's terms, courts review the denial benefits under the "abuse of discretion" or "arbitrary and capricious" standard. _Miller v. Metropolitan Life Ins. Co._, 925 F.2d 979, 983 (6th Cir. 1991). A plan administrator's decision is not arbitrary or capricious if it is rational in light of the plan's provisions. _See id._ at 984; _Daniel v. Eaton Corp._, 839 F.2d 263, 267 (6th Cir 1988).

## A. Insurance Coverage

The travel policy provides that "the party hearing the appeal **[*7]** has the discretionary authority to interpret the Plan and the Policy and to determine eligibility for benefits." The district court was correct that this clear grant of discretionary authority requires that the decision of the fiduciary be reviewed under the deferential "abuse of discretion" standard. _HN4_ Reduced deference may be appropriate where the fiduciary or administrator has a conflict of interest--among other situations, where "claims decisions are made by an insurer who is paying claims out of its own assets." JAMES F. JORDEN, ET AL., HANDBOOK ON ERISA LITIGATION § 4.04[C] at 4--44 (1992); _see Brown v. Blue Cross and Blue Shield of Alabama_, 898 F.2d 1556 (11th Cir. 1990); _Miller v. Metropolitan Life Ins. Co._, 925 F.2d 979, 984--85 (6th Cir. 1991) (considering the insurance company's conflict of interest in its analysis). In such cases, a "heightened" abuse-of-discretion standard is appropriate, which can amount to a "reasonable and correct" or "reasonable and made in good faith" standard. _See_ JORDEN, _supra, ibid._

The district court rejected Plaintiff's argument that a "heightened" abuse-of-discretion standard should be used, on the ground that Newman, the plan **[*8]** administrator, had no conflict of interest. The district court, therefore, reached its decision to overturn the decision of the plan fiduciary even though it applied the most deferential standard available.

Full deference may not be appropriate in the case before this court. According to the record on appeal, Plaintiff first heard from Newman, the plan administrator, in a letter from Charles Beach, executive vice president of Newman, dated November 30, 1994. This letter indicates that "should _the Provident_ need more time to conduct its investigation and/or to arrive at its claims decision, we will certainly keep you informed." n1 (Emphasis added). The initial denial of payment was communicated in Beach's next letter, dated December 14, 1994. Beach's third communication, dated March 9, 1995, "acknowledged Plaintiff's appeal of _Provident's_ initial decision to deny this claim." (Emphasis added). The appeal was denied in a letter from Beach dated April 11, 1995, which stated: "you appealed _Provident's_ initial decision . . . . The claims review fiduciary [i.e., Provident] has now thoroughly reviewed the matter on appeal . . . . _Provident_ renders its decision after appeal **[*9]** as follows." (Emphasis added). According to Beach's letters, it appears that Provident made both decisions. If so, a "heightened abuse-of-discretion" standard of review would be appropriate. We need not decide which standard to apply because we agree with the district court that, even giving Provident the full benefit of the deferential standard, its decision must be reversed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The logo on A.C. Newman's stationery identifies the company as "insurance correspondents."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Provident invited the problem at issue here with poor draftsmanship. Hazard 12 is written as broad, portal-to-portal business-trip accident coverage with restrictions that appear to be afterthoughts tacked on at the end. Plainly, the drafters did not contemplate (certainly, they did not clearly articulate) the possibility of side trips during a business trip. Provident would

have this court interpret the "when on business" clause very restrictively.

This type of interpretation has some support in the text of the policy. The opening paragraph of **[*10]** Hazard 12 states that "coverage will apply to any injury sustained by an Employee *when* on Business for the Policyholder *during* any bonafide trip." (Emphasis added). Hazard 12 defines "when on Business for the Policyholder" to mean "[while] furthering the business of the policyholder," and excludes injuries sustained during the course of travel to and from work, leave of absence or vacation. "*When* on business *during* a trip" seems to allow for the possibility that there are times when one is *not* "on business" during a bonafide business trip. "Furthering the business of the policyholder" is not difficult to understand, nor is it facially ambiguous. An employee is "furthering the business" of the policyholder when he is doing what his employer sent him to do.

Presumably, however, any interpretation that parses a workday into time "on business" and time "not on business" must make allowances for certain digressions--daydreaming during a conference presentation, visiting the restroom, running out to the parking lot to roll the windows of the rental car up, a brief personal phone call in the middle of the afternoon, stopping at a bookstore after lunch, eating supper, **[*11]** and sleeping, to name just a few. The question is whether the language in Hazard 12, together with common intuition, can make a distinction between these digressions and Garber's flight to Pittsburgh. The difficulty is the fineness of the line that must be drawn. What if, for example, instead of travelling away from California and returning two or three days later than his colleagues, Garber simply scheduled a layover flight rather than a direct flight to give himself an hour to meet a friend for drinks at the Denver airport? We hold that any interpretation of the policy that requires such a fine line to be drawn is not a reasonable interpretation. On any reasonable interpretation of the language in Northrop's policy, an employee is generally "on business" if he started a business trip and has not returned to his home or workplace--just as the "coverage . . . begins" and "coverage ends" language of the policy clearly states.

Alternatively, Provident argues that Garber is specifically excluded from coverage if he was on vacation or leave at the time of the crash. *HN5* Provident did not define either of these terms in the policy, so this court is left to interpret the terms of the policy **[*12]** "according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (*en banc*). The district court properly found that the ordinary and popular sense of "vacation" does not include Garber's Thursday-evening flight. Further, the district court correctly concluded that neither the travel authority form nor the statements that Garber was "off duty" are relevant to the determination of whether he was on vacation.

An employee might abandon a business trip before returning home--for example, to spend a week skiing in Europe--in which case the vacation exclusion would cancel the business travel coverage, at least until the employee resumed his travel home from the location at which he abandoned the business trip. But that is not this case. Had he reached Canton, Garber might have abandoned the business trip for the day or two that he would have been visiting his parents, and he might have been on vacation. But his vacation could not have started until his official time off began on Friday morning. Garber had not abandoned the business trip at 7:00 Thursday evening.

Because (1) the language of the policy cannot credibly **[*13]** draw the fine distinction necessary between an employee's "on business" and "not on business" time while he is on a business trip, (2) the plain meaning of "vacation" does not cover the travel portion Garber's side trip, certainly not until his official time off began on Friday morning, and (3) the vague and ambiguous language used by Provident is not a reasonable way to restrict a broad, portal-to-portal business travel provision, the district court was correct to conclude that Provident's determination denying coverage was unreasonable. Even by the very deferential standard employed by the district court, Plaintiff is entitled to prevail. The judgment of the

district court in favor of Plaintiff is AFFIRMED.

## B. Attorney's Fees

$^{HN6}$In an action to recover ERISA benefits by a participant, beneficiary, or fiduciary, "the court in its discretion may allow a reasonable attorney's fee . . . to either party." 29 U.S.C. § 1132(g)(1). This Circuit requires the district court to consider five factors in deciding whether to award attorney's fees: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; **[*14]** (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. _Schwartz v. Gregori_, 160 F.3d 1116, 1119 (6th Cir. 1998) (citing _Secretary of Dep't of Labor v. King_, 775 F.2d 666, 669 (6th Cir. 1985)). No single factor is determinative. _Ibid._ (citing _Wells v. United States Steel_, 76 F.3d 731, 736 (6th Cir. 1996).

Plaintiff argues that the district court abused its discretion by not recognizing Provident's bad faith in denying the claim. However, the district court held merely that Provident's interpretation of the contract was _unreasonable_, not that Provident acted in bad faith. The court specifically stated that "there is an absence of bad faith" and refused to declare that there was no basis for Provident's position. We agree with the district court that Provident's claims were neither frivolous nor pursued in bad faith.

Second, Plaintiff argues that awarding attorney's fees

> will send a message to **[*15]** insurance companies and their designated claims administrators that just because courts have interpreted ERISA to permit the drafters of ERISA plans to claim for themselves broad interpretative discretion does not mean that they can draft mystifying policy language then conveniently construe it to involve hidden limitations nowhere expressed on the policy's face.

Br. of Plaintiff-Appellee/Cross-Appellant at 35. That may be so, although there seem to be other, market forces that are better suited to ensure this. n2 There is no evidence that Provident intentionally drafted the Hazard 12 coverage in such a way that it could later capitalize on its obfuscation. The district court was correct that this case is unique and that no general deterrence would be served by awarding attorney's fees.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 In the words of Sam Goldwyn, "If you want to send a message, use Western Union."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finally, Plaintiff argues that this case resolves a significant legal question involving ERISA, holding that side trips are not vacations. **[*16]** But this is not a legal issue involving -it is simply a decision interpreting specific, badly-drafted policy language. Again, Plaintiff has not shown that the district court abused its discretion.

The district court's decision denying attorney's fees is AFFIRMED.

## C. Prejudgment Interest

Plaintiff argues that he should receive prejudgment interest because, under *Wells v. United States Steel & Carnegie Pension Fund*, 76 F.3d 731, 737 (6th Cir. 1996), the claim was liquidated and Provident wrongfully withheld payment. The district court held that Provident did not act in bad faith and was, therefore, not liable for prejudgment interest.

Plaintiff's claim involves a fixed and agreed insurance benefit, a paradigm of liquidated damages. *HN7* "Generally, the beneficiaries of pension plans have a right to prejudgment interest on benefits wrongly withheld." *Wells*, 76 F.3d at 737. To be "wrongful" under *Wells*, payments need not have been withheld in bad faith. It is sufficient that they were *incorrectly* withheld. "Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award." **[*17]** *Id.* at 738 (quoting *Tiemeyer v. Community Mut. Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir.), *cert. denied*, 511 U.S. 1005, 128 L. Ed. 2d 48, 114 S. Ct. 1371 (1993) (quoting *Drennan v. General Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992), *cert. denied*, 508 U.S. 940, 124 L. Ed. 2d 639, 113 S. Ct. 2416 (1993))). Because of the "general ERISA policy favoring awards of prejudgment interest to plaintiffs when a pension fund wrongfully withholds benefits," 76 F.3d at 737, and the fact that bad faith is not a prerequisite to the recovery of prejudgment interest, we hold that the district court applied incorrect law to Plaintiff's prejudgment interest claim and, therefore, abused its discretion. We REVERSE the decision of the district court in this respect.

## III

The judgment of the district court in favor of Plaintiff and the denial of Plaintiff's attorney's fees are affirmed. The denial of prejudgment interest is reversed. The case is remanded to the district court for an order consistent with this opinion.

Service: **Get by LEXSEE®**
Citation: **1999 us app lexis 11280**
View: Full
Date/Time: Monday, September 15, 2003 - 11:40 AM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# Exhibit 2

T H E   O H I O   S T A T E   B A R   A S S O C I A T I O N



OSBA

2001
Desktop
Reference
on the
Economics
of Law
Practice
in Ohio

Fall 2001

On behalf of the Solo, Small Firm & General Practice Section of the Ohio State Bar Association, we are pleased to present the findings of the **2001 Economics of Law Practice Survey** conducted in the Second Quarter of this year. The data was then analyzed and collated over the summer.

The **2001 Desktop Reference on the Economics of Law Practice in Ohio** is designed to consolidate survey findings in a convenient and usable format. This is a unique document—one which you will be able to refer to with confidence in the future. Whether you are a sole practitioner or a principal in a large firm, and regardless of the geographic location of your practice, this Reference provides the most timely data on the economics of law practice in Ohio and the fiscal state of attorneys statewide.

We thank the willingness of the hundreds of Ohio Attorneys to "get involved" by responding to the Survey Request they received this past spring. Their prompt, candid responses have allowed the database to be credible for your reference use.

To obtain additional copies of this valuable Practice Reference Source, contact the Ohio State Bar Association, P.O. Box 16562, Columbus, Ohio 43216-6562 at 1-800-282-6556. The cost of the Reference Survey is $25.00 to members of the Solo, Small Firm and General Practice Section and $40.00 to all others.

For assistance in interpreting the information presented, you may contact Dr. Lawrence Stiffman of the Applied Statistics Laboratory in Ann Arbor, Michigan at (734) 996-0262 or by e-mail: aslinfo@aol.com.

Thomas Letson, Jr.
Chair
Solo, Small Firm and General Practice Section
Ohio State Bar Association

# Introduction

**Objectives**

This past spring, the Survey Subcommittee of the Solo, Small Firm and General Practice Section of the Ohio State Bar Association fielded the fourth state wide legal economics poll of the OSBA membership. An initial survey, conducted in 1990, provided baseline information, followed by updates in 1994 and 1998. The objective of the 2001 survey is to observe changes on the relative status of its members' hourly billing rates and practices, incomes law office overhead and management practices, and work week time allocations.

The following elements of the legal services marketplace are included:

- Current membership demographics and geographic distribution
- Sentiment on trends in the supply of, and demand for, legal services
- Attorney net income arrayed by tenure, specialization, occupation, location, firm size, gender and work style
- Prevailing hourly billing rates for attorneys and legal assistants
- Allocation of hours in the average work week
- Compensation to associates, legal assistants and secretaries by experience
- Other overhead expenses and practice management indicators
- Use of office automation products and services

When compared across the state's regional markets and over time, this information assists Ohio attorneys in developing their professional activities to provide more effective and efficient legal services.

The Solo, Small Firm and General Practice Section receives many requests from attorneys for help in establishing assigned counsel fees, and for help in cases involving judicial determination of attorney fees. This report has been prepared to also address these requests and to consolidate the most recently available data in useful and usable formats.

**Methods**

A 37-question confidential survey instrument was mailed during May and June 2001 to a stratified random sample of 6,486 active, in-state Ohio State Bar Association (hereinafter OSBA) members and to all members of the Solo, Small Firm and General Practice Section. A proportionate representation of members was thus obtained covering all urban, suburban and rural areas throughout Ohio.

The Applied Statistics Laboratory (ASL), of Ann Arbor, Michigan, received and tabulated about 900 responses suitable for analysis and publication in this Report. These returns represent a response rate of 12% (which is consistent with similar studies throughout the country). All returned questionnaires are maintained at the ASL offices while the raw data is resident on computer (SPSS) files maintained by ASL. As the survey was confidential, no identification of respondents was obtained or retained. All exhibits in this Report present aggregated data to further assure respondent confidentiality.

**A Review of Statistical Terms**

To help interpret the information in this report, here is a brief discussion of measures of central tendency (median and mean) and measures of dispersion or spread (percentiles and ranges).

| **Measures of Central Tendency** | The mean (also called the average or arithmetic average) is calculated by adding the values of all responses, then dividing by the number of responses. |
|---|---|

**Example:** Three responses — 3, 1, and 2 — are reported. The average is calculated by adding their values (1 + 2 + 3 = 6), then dividing by the number of responses (3). Thus, the average value for this distribution of responses is 6 ÷ 3 = 2.

The median is the middle value of a series (distribution) of values which is initially rank-ordered (from low to high, or vice-versa). By definition, half the values are greater and half are less than the median. Another term for the median is the 50th percentile.

**Example:** Three responses — 30, 1, and 2 — are reported. The median is the middle number in the order of distribution (1, 2, 30) or 2. The average or mean value of this distribution is 33 ÷ 3 = 11. Use of the median as a statistic for central tendency reduces the effect of "outliers" (extremely high or low values, such as 30), while the average does not.

Median and mean values are utilized throughout this report to measure central tendency.

**Measures of Dispersion**

The median, as stated above, represents the middle value of a distribution of responses. It is also termed the 50th percentile. Three additional percentile values are used to reveal dispersion of a particular series (distribution) of values. These are the:

- 25th percentile (also called the lower quartile). One-fourth of the values is less and three-fourths are more than this value.

- 75th percentile (also called the upper quartile). Three fourths of the values are less and one-fourth is more than this value.

- 95th percentile (also called the upper quartile). Ninety-five percent of the values are less and five percent are more than this value.

**Economic Regions Defined**

Sixteen geographic areas were included on the questionnaire to denote office location. Some exhibits in this Report include all sixteen areas, while most display fewer, collapsed regions to maintain a reasonable number of observations for reporting findings. Regions are defined as follows:



| Region | Geographic Areas Included |
|---|---|
| Greater Cleveland | Downtown only/Suburban (Cuyahoga County) |
| Greater Cincinnati | Downtown only/Suburban areas |
| Greater Columbus | Downtown only/Suburban areas |
| Dayton | |
| Northeast Region | Canton, Akron, Youngstown and northeastern cities |
| Northwest Region | Toledo and northwestern cities |
| Southern Region | Includes Southeast, Southwest and Central Regions excluding cities named above |

Introduction

---

**Interpretation of Findings**

Caution should be exercised interpreting data when only a small number of responses are available. This is due to the strong influence of a few "outliers" which might distort reality. In such cases, readers are advised to "group up" to a larger geographic area or job classification, where appropriate.

Personnel planning and decision-making include many personal factors not covered in surveys of this scope, nature or intent. However, this Report provides as wide a range of values as possible which can help in initiating sound and equitable compensation and budgeting policies.

---

**Sentiment on Economic Conditions**

The economic circumstances surrounding the practice of law can be perceived against the past and the future. "Economic sentiment" perceptions provide insight as "leading indicators" on the future performance of the economy or an industry, such as legal services. Appendices H-K provide a full array of perceptions on the supply and demand of legal services and on current economic conditions compared with 2000 and expected in 2002.

Most respondents (57%) perceive no changes in economic conditions between 2000 and 2001, increasing to 61% who perceive no change in 2002. Attorneys are more optimistic about next year's economic climate than last year's. About 17% feel current conditions are better compared with 2000 and 19% feel that conditions will be better in 2002 than in 2001. While 26% of all respondents feel economic circumstances this year are worse than last year, only 20% feel next year's economic conditions will be worse.

About 47% of respondents feel there are too many lawyers in the community in which they practice. Reported demand for legal services partially reflects this over supply as 15% of respondents report having insufficient workloads to keep busy. However, 59% report that the quantity of their legal work is "all they can handle," and 27% report "having more work than they prefer." By comparison, in 1998, 57% reported too many lawyers in their community and 13% reported insufficient workloads to keep busy.

Refer to Appendices H–K for distributions of these sentiment indicators by respondents' office location, years in practice, practice classification and organization size.

# 2000 Net Income
# of OSBA Attorneys

**Introduction**

While many factors interact to influence the level of attorney income, clues to explain variation can be derived from analyzing seven factors addressed in this survey, including:

- Legal occupation or practice classification
- Specialization
- Tenure (years in practice)
- Size of firm or organization (measured by number of attorneys) and workstyle habits full- vs. part-time
- Office location (geographic area where law office is located)
- Gender and work style habits (full- versus part-time work status)

Each factor is discussed in the remainder of this Section. Net income is defined on the questionnaire as "net income before taxes derived from all legal work." Reported incomes reflect 2000, 1997 and 1993 and values as the surveys were fielded in the spring and summer of 2001, 1998 and 1994 respectively.

**Legal Occupation**

Exhibit 1 summarizes 2000 net income of attorneys by 11 legal occupation or practice classifications. As discussed previously, this and subsequent exhibits providing distribution data offer five values—the average, and the 25th, 50th (Median), 75th and 95th percentiles.

For example, 25% of all house counsel earn $56,750 or less, half earn less than $90,000, while half earn more than $90,000, and 25% earn more than $136,250, and 5% earn more than $301,400. Average net income reported by house counsel was $112,673.

The 2000 median net income for all OSBA respondent attorneys (hereinafter OSBA attorneys or attorneys) is $75,000 which is 15.4% higher than the 1997 reported level of $65,000. The average annual rate of increase over this eight year period is 5% which is at or slightly above the average annual inflation rate (for urban wage earners) during the same period.

Exhibit 2 reveals income clustering among ten occupational categories. Not surprisingly, while incomes do cluster when legal occupation is considered, there is still a large spread among the categories reflecting many different forms and styles of practice.

Attorney Net Income

Exhibit 1    **2000 Net Income by Legal Classification, OSBA Attorneys**

| Legal Classification | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| Sole practitioner | 243 | $30,000 | $54,500 | $74,097 | $101,500 | $215,600 |
| Sole practitioner with 1 or more associates | 44 | 59,500 | 100,000 | 141,750 | 148,125 | 487,500 |
| Sole practitioner sharing space | 65 | 41,750 | 71,500 | 85,828 | 105,500 | 525,000 |
| Partner in firm with 2–7 partners | 160 | 66,250 | 100,000 | 121,959 | 137,750 | 319,200 |
| Partner in firm with 8 or more partners | 85 | 111,500 | 175,000 | 203,405 | 255,000 | 590,000 |
| Associate in firm with 2–7 partners | 63 | 42,000 | 52,000 | 61,651 | 70,000 | 191,200 |
| Associate in firm with 8 or more partners | 61 | 58,750 | 70,000 | 80,402 | 93,500 | 128,750 |
| Judge | 17 | 57,333 | 70,000 | 74,426 | 100,000 | 103,000 |
| City/State/County government | 57 | 37,875 | 50,000 | 53,607 | 69,250 | 88,800 |
| House Counsel | 61 | 56,750 | 90,000 | 112,673 | 136,250 | 301,400 |
| Counsel with legal aid/legal service agency | 17 | 39,500 | 45,000 | 49,353 | 70,000 | 80,000 |
| All attorneys | 892 | $45,000 | $75,000 | $99,247 | $120,000 | $274,667 |

*Value by Percentile header spans 25th, Median, Mean (Avg.), 75th, 95th columns.*

Exhibit 2    **Percent Distributions of 2000 Net Income by Legal Occupation, OSBA Attorneys**

| Net Income ($) | All Attorneys | Sole Pract. | Sole Pract. w/Assoc. | Space Sharer | Assoc. w/ 2–7 Part. | Assoc. w/ 8+ Part. | Partner w/ 2–7 Part. | Partner w/ 8+ Part. | House Counsel | City/State Gov't. | Legal Aid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| less than $30,000 | 11.2 | 26.2 | 6.8 | 17.2 | 1.6 | – | 7.9 | – | – | – | 5.9 |
| 30,000–45,999 | 14.5 | 15.9 | 9.1 | 12.5 | 39.3 | 7.1 | 6.0 | – | 5.5 | 39.3 | 52.9 |
| 46,000–55,999 | 9.3 | 9.0 | – | – | 19.7 | 14.3 | 3.3 | – | 16.4 | 23.2 | 11.8 |
| 56,000–65,999 | 8.7 | 4.7 | 13.6 | 10.9 | 13.1 | 17.9 | 7.9 | – | 10.9 | 7.1 | 11.8 |
| 66,000–75,999 | 8.3 | 7.7 | – | 17.2 | 6.6 | 10.7 | 6.6 | – | 9.1 | 14.3 | 11.8 |
| 76,000–85,999 | 8.1 | 6.9 | 6.8 | 7.8 | 4.9 | 21.4 | 10.6 | – | 5.5 | 5.4 | 5.9 |
| 86,000–95,999 | 3.6 | 1.7 | 6.8 | – | – | 7.1 | 4.0 | – | 7.3 | – | – |
| 96,000–115,999 | 10.6 | 6.9 | 11.4 | 10.9 | – | 12.5 | 17.9 | 12.7 | 14.5 | – | – |
| 116,000–135,999 | 7.0 | 8.2 | 11.4 | 6.3 | – | – | 11.3 | 6.3 | 7.3 | – | – |
| 136,000–155,999 | 5.0 | 4.3 | 11.4 | 4.7 | – | – | 6.6 | 8.9 | 9.1 | – | – |
| 156,000–175,999 | 2.7 | 1.7 | – | – | – | – | 2.6 | 10.1 | – | – | – |
| 176,000–199,999 | 1.3 | 1.7 | – | – | – | – | – | 5.1 | 9.0 | – | – |
| 200,000–249,999 | 3.4 | – | – | – | – | – | 4.6 | 17.7 | – | – | – |
| 250,000–299,999 | 2.4 | 2.1 | – | – | – | – | – | 11.4 | – | – | – |
| 300,000 or more | 4.0 | 1.7 | 11.4 | – | – | – | 6.6 | 13.9 | – | – | – |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

**Legal Specialization**  Attorneys were asked to select from a list of various fields of law which provided their highest source of income during 2000. Exhibit 3 distributes 2000 net incomes of 892 respondents by the primary field of law generating the most income. Exhibit 4 considers the subset (N=721) of "private practitioners only." The 2000 median net income of private practitioners is 6.7% higher than net income of all attorneys.

Exhibit 3  **2000 Net Income by Primary Field of Law, OSBA Attorneys**

| Primary Field of Law | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| Administrative Law | 8 | $80,500 | $100,500 | $174,000 | $229,500 | $600,000 |
| Bankruptcy | 24 | 49,750 | 90,250 | 110,833 | 181,250 | 295,000 |
| Collections | 22 | 38,000 | 52,000 | 75,127 | 130,000 | 286,500 |
| Corporate/Business Law | 72 | 44,500 | 100,000 | 109,731 | 151,500 | 350,000 |
| Criminal (Public Defendant) | 19 | 31,250 | 44,000 | 47,408 | 65,000 | 140,000 |
| Criminal (Private Defendant) | 16 | 61,000 | 90,000 | 105,133 | 191,500 | 318,000 |
| Criminal (Prosecutor) | 17 | 40,000 | 60,000 | 60,941 | 94,000 | 100,000 |
| Domestic Relations (Family Law) | 81 | 29,000 | 49,333 | 59,398 | 78,000 | 195,000 |
| Environmental/Natural Resources Law | 7 | 73,750 | 148,000 | 111,500 | 169,250 | 173,000 |
| General Practice | 35 | 39,750 | 59,500 | 60,219 | 79,500 | 142,150 |
| Health and Hospital Law | 11 | 60,000 | 102,000 | 174,222 | 304,500 | 500,000 |
| Intellectual Property | 11 | 57,500 | 125,000 | 120,091 | 258,000 | 306,000 |
| Labor Law (Defendant) | 24 | 58,750 | 82,750 | 116,250 | 186,750 | 392,250 |
| Labor Law (Plaintiff) | 12 | 44,500 | 69,500 | 182,000 | 664,750 | 1,054,000 |
| Municipal/Public Entity Law | 17 | 68,000 | 82,000 | 93,441 | 115,000 | 235,000 |
| Product Liability | 6 | 85,500 | 133,500 | 124,500 | 170,000 | 242,000 |
| Personal Injury (Defendant) | 36 | 65000 | 106,667 | 138,743 | 150,500 | 532,000 |
| Personal Injury (Plaintiff) | 63 | 74,750 | 117,500 | 154,733 | 175,000 | 955,000 |
| Real Property Law | 61 | 43,500 | 79,167 | 93,580 | 121,250 | 215,600 |
| Securities Law | 5 | 53,000 | 125,000 | 95,500 | 182,500 | 240,000 |
| Taxation | 18 | 52,500 | 100,000 | 150,733 | 272,500 | 700,000 |
| Trial Practice (General Civil) | 38 | 49,167 | 75,000 | 106,371 | 137,500 | 392,000 |
| Trial Practice (Commercial) | 17 | 45,000 | 83,000 | 87,941 | 120,000 | 300,000 |
| Wills/Estates/Probate | 162 | 42,875 | 70,000 | 85,450 | 112,250 | 256,250 |
| Workers' Compensation | 22 | 45,500 | 87,250 | 94,909 | 146,000 | 243,500 |
| Other Fields of Law | 57 | 46,667 | 75,000 | 94,792 | 130,000 | 244,400 |
| All Private Practitioners | 892 | $45,000 | $75,000 | $99,247 | $120,000 | $274,667 |

Value by Percentile header spans the 25th, Median, Mean (Avg.), 75th, and 95th columns.

Attorney Net Income

| | | Exhibit 4 | **2000 Net Income by Primary Field of Law, OSBA Private Practitioners Only** | | |

| Primary Field of Law | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | **25th** | **Median** | **Mean (Avg.)** | **75th** | **95th** |
| Bankruptcy | 23 | $52,000 | $93,500 | $113,522 | $187,500 | $296,000 |
| Collections | 18 | 38,000 | 60,000 | 82,215 | 133,000 | 300,000 |
| Corporate/Business Law | 59 | 41,500 | 94,000 | 102,309 | 146,500 | 252,000 |
| Criminal (Public Defendant) | 12 | 28,000 | 38,500 | 35,167 | 51,250 | 70,000 |
| Criminal (Private Defendant) | 12 | 74,500 | 104,000 | 128,727 | 259,000 | 318,000 |
| Domestic Relations (Family Law) | 68 | 25,000 | 51,500 | 61,488 | 80,250 | 226,100 |
| Environmental/Natural Resources Law | 4 | 75,000 | 170,500 | 117,750 | 171,750 | 173,000 |
| General Practice | 31 | 35,875 | 60,500 | 61,679 | 81,250 | 159,950 |
| Health and Hospital Law | 6 | 102,000 | 334,000 | 262,200 | 417,000 | 500,000 |
| Intellectual Property | 9 | 60,000 | 170,000 | 126,778 | 205,000 | 306,000 |
| Labor Law (Defendant) | 17 | 75,000 | 108,000 | 132,853 | 200,000 | 405,000 |
| Labor Law (Plaintiff) | 12 | 44,500 | 69,500 | 182,000 | 664,750 | 1,054,000 |
| Municipal/Public Entity Law | 11 | 79,000 | 110,000 | 107,455 | 192,500 | 235,000 |
| Product Liability | 5 | 82,000 | 121,000 | 120,200 | 181,500 | 242,000 |
| Personal Injury (Defendant) | 31 | 81,500 | 110,000 | 147,548 | 158,000 | 574,000 |
| Personal Injury (Plaintiff) | 62 | 74,750 | 117,500 | 154,733 | 175,000 | 955,000 |
| Real Property Law | 52 | 41,000 | 76,667 | 91,330 | 117,500 | 242,000 |
| Taxation | 12 | 57,500 | 174,000 | 189,300 | 593,750 | 700,000 |
| Trial Practice (General Civil) | 33 | 53,875 | 89,500 | 116,733 | 147,917 | 419,500 |
| Trial Practice (Commercial) | 16 | 44,583 | 84,500 | 90,000 | 133,750 | 300,000 |
| Wills/Estates/Probate | 152 | 43,750 | 71,500 | 86,947 | 120,250 | 195,750 |
| Workers' Compensation | 21 | 44,000 | 87,500 | 95,476 | 148,000 | 245,700 |
| Other Fields of Law | 37 | 48,750 | 80,000 | 105,086 | 162,500 | 271,000 |
| All Private Practitioners | 721 | $45,000 | $80,000 | $104,277 | $125,125 | $287,250 |

| Years in Practice | Exhibits 5 and 6 relate reported 2000 net income to the number of years in practice for all attorneys and for private practitioners. Income is directly correlated with experience. Exhibit 7 displays median 2000 net income for 11 legal occupations by years in practice. |
|---|---|

**Exhibit 5    2000 Net Income by Years in Practice, OSBA Attorneys**

| Years in Practice | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | 25th | Median | Mean (Avg.) | 75th | 95th |
| 5 or less | 145 | $35,417 | $47,000 | $52,779 | $65,750 | $108,250 |
| 6–10 | 96 | 45,000 | 64,500 | 71,797 | 97,250 | 169,591 |
| 11–15 | 107 | 49,750 | 77,250 | 91,992 | 108,750 | 297,583 |
| 16–25 | 264 | 51,308 | 89,500 | 118,884 | 146,125 | 351,050 |
| more than 25 | 274 | 51,833 | 90,000 | 117,874 | 139,833 | 320,900 |
| All Attorneys | 892 | $45,000 | $75,000 | $99,247 | $120,000 | $274,667 |

**Exhibit 6    2000 Net Income by Years in Practice, OSBA Private Practitioners Only**

| Years in Practice | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| Years in Practice | | 25th | Median | Mean (Avg.) | 75th | 95th |
| 5 or less | 105 | $37,500 | $51,000 | $55,165 | $72,375 | $109,700 |
| 6–10 | 72 | 43,000 | 66,000 | 74,875 | 102,000 | 204,618 |
| 11–15 | 79 | 46,500 | 80,000 | 97,813 | 119,125 | 320,750 |
| 16–25 | 216 | 50,100 | 99,333 | 123,588 | 152,000 | 353,800 |
| more than 25 | 245 | 50,375 | 90,000 | 118,693 | 143,500 | 328,500 |
| All Private Practitioners | 721 | $45,000 | $80,000 | $104,277 | $125,125 | $287,250 |

**Exhibit 7    2000 Median Net Income by Years in Practice and Legal Occupation, OSBA Attorneys**

| Years in Practice | Sole Pract. | Sole Pract. w/Assoc. | Space Sharer | Part. w/ 2–7 Part. | Part. w/ 8+ Part. | Assoc w/ 2–7 Part. | Assoc w/ 8+ Part. | Judge | Local Gov't. | House Counsel | Legal Aid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 or less | $25,000 | – | $41,000 | $50,000 | – | $48,000 | $63,000 | – | $37,000 | $55,000 | $39,000 |
| 6–10 | 45,000 | 83,500 | 75,000 | 61,500 | – | 62,000 | 74,000 | – | 51,500 | 71,000 | – |
| 11–15 | 47,000 | 129,000 | 69,500 | 90,000 | 120,000 | 37,800 | 80,000 | – | 50,000 | 94,000 | – |
| 16–25 | 59,000 | 100,000 | 70,000 | 110,000 | 220,000 | 70,000 | – | 94,500 | 67,000 | 140,000 | 70,000 |
| more than 25 | 69,000 | 93,500 | 79,500 | 100,000 | 163,000 | – | 81,500 | 97,250 | 64,000 | 125,000 | – |
| All Attorneys | $54,000 | $100,000 | $71,500 | $100,000 | $175,000 | $52,000 | $70,000 | $70,000 | $50,000 | $90,000 | $45,000 |

Attorney Net Income

| **Size of Firm or Organization and Work Status (Full- *vs.* Part-Time)** | Exhibits 8 and 9 display 2000 net income for all attorneys and private practitioners by organization size (measured as the total number of attorneys reported in the firm or organization). The larger the organization, the higher the net income reported. Associate income clusters around the 25% percentile value and partner income around the higher percentile values for any given size category. Refer to Exhibit 23 for associate salaries by firm size category. |

Exhibit 8  **2000 Net Income by Size of Firm or Organization, OSBA Attorneys**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| **Size of Organization (# of Attorneys)** | | | | | | |
| 1 | 263 | $31,500 | $58,667 | $73,814 | $100,000 | $192,000 |
| 2–5 | 235 | 45,500 | 75,000 | 101,006 | 119,833 | 300,000 |
| 6–20 | 157 | 52,750 | 81,000 | 114,172 | 129,750 | 300,900 |
| more than 20 | 157 | 66,250 | 94,333 | 139,648 | 174,125 | 478,750 |
| All Attorneys | 892 | 45,000 | 75,000 | 99,247 | 120,000 | 274,667 |
| **Full-Time Only** | | | | | | |
| 1 | 218 | $40,000 | $69,000 | $83,458 | $110,000 | $204,200 |
| 2–5 | 218 | 49,500 | 76,500 | 102,893 | 121,725 | 300,000 |
| 6–20 | 149 | 53,250 | 84,250 | 116,428 | 135,250 | 303,300 |
| more than 20 | 152 | 68,250 | 95,500 | 140,572 | 174,125 | 479,750 |
| All Full-Time Attorneys | 799 | $50,000 | $79,833 | $104,999 | $124,500 | $275,500 |

Exhibit 9  **2000 Net Income by Size of Firm, OSBA Private Practitioners Only**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| **Size of Firm (# of Attorneys)** | | | | | | |
| 1 | 239 | $30,000 | $55,000 | $74,543 | $101,000 | $197,000 |
| 2–5 | 194 | 51,683 | 80,000 | 108,409 | 128,000 | 310,000 |
| 6–20 | 118 | 56,500 | 90,000 | 121,265 | 138,500 | 549,100 |
| more than 20 | 119 | 80,000 | 111,500 | 157,977 | 206,250 | 484,500 |
| All Attorneys | 721 | 45,000 | 80,000 | 104,277 | 125,125 | 287,250 |
| **Full-Time Only** | | | | | | |
| 1 | 201 | $40,000 | $69,000 | $84,554 | $114,000 | $219,900 |
| 2–5 | 184 | 53,000 | 80,000 | 108,698 | 127,333 | 300,000 |
| 6–20 | 112 | 58,000 | 94,000 | 123,491 | 140,000 | 591,400 |
| more than 20 | 115 | 81,000 | 113,000 | 158,767 | 205,000 | 486,000 |
| All Full-Time Attorneys | 653 | $50,000 | $81,000 | $110,458 | $130,000 | $299,000 |

**Office Location**   Exhibit 10 distributes 2000 attorney net income by office location. The same distribution for "private practitioners only" is shown as Exhibit 11. Exhibit 12 compares eight-year and average annual growth in net income since 1993 for all attorneys.

Exhibit 13 displays median 2000 net income of 10 legal occupation categories within each of seven office locations.

Exhibit 10   **2000 Net Income by Office Location, OSBA Attorneys**

| Office Location | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| Greater Cleveland | 140 | $50,000 | $90,000 | $110,078 | $147,667 | $342,000 |
| Greater Cincinnati | 95 | 62,250 | 87,000 | 116,566 | 140,000 | 350,900 |
| Greater Columbus | 170 | 45,750 | 80,000 | 112,535 | 131,667 | 354,800 |
| Greater Dayton | 47 | 48,125 | 67,500 | 98,821 | 97,813 | 286,400 |
| Northeast Region | 185 | 37,750 | 61,030 | 89,644 | 102,750 | 289,500 |
| Northwest Region | 110 | 45,500 | 76,000 | 86,937 | 118,000 | 230,000 |
| Southern Region | 139 | 43,750 | 74,333 | 83,101 | 109,167 | 182,250 |
| | | | | | | |
| **Office Location Detailed** | | | | | | |
| Cleveland (Downtown) | 80 | $60,500 | $103,500 | $133,351 | $157,500 | $559,750 |
| Cleveland (Suburban) | 60 | 39,000 | 59,333 | 78,764 | 128,000 | 201,200 |
| Cincinnati (Downtown) | 70 | 65,250 | 97,000 | 129,856 | 199,375 | 431,500 |
| Cincinnati (Suburban) | 25 | 42,000 | 73,333 | 81,480 | 138,667 | 149,700 |
| Columbus (Downtown) | 105 | 53,000 | 88,000 | 131,985 | 168,000 | 500,000 |
| Columbus (Suburban) | 65 | 36,500 | 66,500 | 82,105 | 106,667 | 331,750 |
| Dayton | 47 | 48,125 | 67,500 | 98,821 | 97,813 | 286,400 |
| Canton | 17 | 31,000 | 55,000 | 66,329 | 135,000 | 200,000 |
| Akron | 47 | 42,250 | 72,500 | 129,387 | 171,091 | 600,000 |
| Toledo | 56 | 45,250 | 73,500 | 91,315 | 143,000 | 263,750 |
| Youngstown | 14 | 49,000 | 100,000 | 90,462 | 135,000 | 150,000 |
| Northeast Region | 107 | 34,375 | 59,167 | 76,538 | 95,417 | 304,250 |
| Northwest Region | 54 | 48,000 | 78,667 | 82,476 | 115,000 | 176,000 |
| Southeast Region | 43 | 46,000 | 76,000 | 80,527 | 125,000 | 175,500 |
| Southwest Region | 62 | 43,125 | 71,500 | 85,195 | 117,500 | 487,500 |
| Central Region | 34 | 42,250 | 86,250 | 82,281 | 110,625 | 185,200 |
| All Attorneys | 892 | $45,000 | $75,000 | $99,247 | $120,000 | $274,667 |

Attorney Net Income

| Exhibit 11 | **2000 Net Income by Office Location, OSBA Private Practitioners Only** | | | | |
|---|---|---|---|---|---|
| | | | | Value by Percentile | |
| | **N** | **25th** | **Median** | **Mean (Avg.)** | **75th** | **95th** |
| **Office Location** | | | | | | |
| Greater Cleveland | 116 | $48,500 | $94,000 | $111,907 | $148,250 | $436,500 |
| Greater Cincinnati | 80 | 61,125 | 92,500 | 119,730 | 149,250 | 366,500 |
| Greater Columbus | 134 | 45,000 | 85,500 | 120,194 | 150,000 | 361,000 |
| Greater Dayton | 38 | 46,500 | 69,000 | 105,882 | 119,500 | 325,700 |
| Northeast Region | 146 | 38,500 | 69,167 | 96,576 | 108,750 | 317,000 |
| Northwest Region | 94 | 47,500 | 77,500 | 89,394 | 129,625 | 263,750 |
| Southern Region | 109 | 44,000 | 80,000 | 87,424 | 120,000 | 236,600 |
| **Office Location Detailed** | | | | | | |
| Cleveland (Downtown) | 70 | 60,000 | 108,000 | 136,985 | 175,000 | 634,000 |
| Cleveland (Suburban) | 46 | 39,000 | 58,667 | 74,000 | 115,500 | 194,600 |
| Cincinnati (Downtown) | 56 | 64,833 | 103,000 | 137,740 | 225,250 | 332,700 |
| Cincinnati (Suburban) | 24 | 40,500 | 72,500 | 80,708 | 138,833 | 149,750 |
| Columbus (Downtown) | 78 | 60,250 | 105,500 | 146,953 | 187,500 | 583,100 |
| Columbus (Suburban) | 56 | 35,500 | 71,667 | 84,191 | 108,667 | 293,000 |
| Dayton | 38 | 46,500 | 69,000 | 105,882 | 119,500 | 325,700 |
| Canton | 12 | 27,700 | 72,500 | 73,467 | 167,000 | 200,000 |
| Akron | 38 | 42,250 | 78,500 | 134,501 | 180,773 | 745,000 |
| Toledo | 48 | 48,500 | 78,333 | 97,696 | 149,500 | 269,750 |
| Youngstown | 10 | 83,000 | 130,000 | 106,222 | – | 150,000 |
| Northeast Region | 86 | 34,500 | 65,000 | 82,422 | 100,000 | 411,000 |
| Northwest Region | 46 | 45,750 | 77,250 | 81,092 | 119,500 | 183,000 |
| Southeast Region | 34 | 53,750 | 81,000 | 86,783 | 131,750 | 177,250 |
| Southwest Region | 52 | 43,500 | 75,000 | 89,149 | 125,000 | 216,500 |
| Central Region | 23 | 41,250 | 87,500 | 84,455 | 117,750 | 241,050 |
| All Private Practitioners | 721 | $45,000 | $80,000 | $104,277 | $125,125 | $287,250 |

| Exhibit 12 | **Change in Attorney Net Income, 1993–2000, by Office Location, All OSBA Attorneys** | | | | | | |
|---|---|---|---|---|---|---|---|
| Office Location | 2000 N | 2000 Median | 1997 N | 1997 Median | 1993 N | 1993 Median | % Change Since 1993 | Avg. Annual % Change |
| Greater Cleveland | 140 | $90,000 | 150 | $74,250 | 184 | $73,250 | 22.9 | 3.3 |
| Greater Cincinnati | 95 | 87,000 | 85 | 80,000 | 113 | 70,000 | 24.3 | 3.5 |
| Greater Columbus | 170 | 80,000 | 145 | 65,000 | 176 | 67,500 | 18.5 | 2.6 |
| Greater Dayton | 47 | 67,500 | 50 | 82,500 | 59 | 52,000 | 29.8 | 4.3 |
| Northeast Region | 185 | 61,030 | 170 | 56,500 | 201 | 60,000 | 1.7 | 0.2 |
| Northwest Region | 110 | 76,000 | 137 | 60,000 | 121 | 63,000 | 20.6 | 2.9 |
| Southern Region | 139 | 74,333 | 127 | 70,000 | 132 | 59,000 | 26.0 | 3.7 |
| **Office Location Detailed** | | | | | | | |
| Cleveland (Downtown) | 80 | $103,500 | 96 | $80,000 | 124 | $80,000 | 29.4 | 4.2 |
| Cleveland (Suburban) | 60 | 59,333 | 54 | 54,500 | 60 | 50,000 | 18.7 | 2.7 |
| Cincinnati (Downtown) | 70 | 97,000 | 61 | 82,000 | 88 | 68,500 | 41.6 | 5.9 |
| Cincinnati (Suburban) | 25 | 73,333 | 24 | 47,500 | 25 | 70,000 | 4.8 | 0.7 |
| Columbus (Downtown) | 105 | 88,000 | 103 | 70,000 | 143 | 70,000 | 25.7 | 3.7 |
| Columbus (Suburban) | 65 | 66,500 | 42 | 47,500 | 33 | 52,000 | 27.9 | 4.0 |
| Dayton | 47 | 67,500 | 50 | 82,500 | 59 | 52,000 | 29.8 | 4.3 |
| Canton | 17 | 55,000 | 20 | 63,500 | 27 | 50,000 | 10.0 | 1.4 |
| Akron | 47 | 72,500 | 33 | 59,000 | 54 | 65,500 | 10.7 | 1.5 |
| Toledo | 56 | 73,500 | 61 | 63,000 | 58 | 70,000 | 5.0 | 0.7 |
| Youngstown | 14 | 100,000 | 17 | 76,000 | 19 | 60,000 | 66.7 | 9.5 |
| Northeast Region | 107 | 59,167 | 100 | 51,000 | 101 | 60,000 | −1.4 | −0.2 |
| Northwest Region | 54 | 78,667 | 76 | 50,500 | 63 | 53,000 | 48.4 | 6.9 |
| Southeast Region | 43 | 76,000 | 39 | 62,000 | 56 | 56,500 | 34.5 | 4.9 |
| Southwest Region | 62 | 71,500 | 56 | 81,000 | 51 | 66,000 | 8.3 | 1.2 |
| Central Region | 34 | 86,250 | 32 | 59,000 | 25 | 54,000 | 59.7 | 8.5 |
| All Attorneys | 892 | $75,000 | 868 | $65,000 | 986 | $65,000 | 15.4 | 2.2 |

| Exhibit 13 | **2000 Median Net Income by Legal Occupation and Office Location, All OSBA Attorneys** | | | | | | |
|---|---|---|---|---|---|---|---|
| Legal Occupation | Greater Cleveland | Greater Cincinnati | Greater Columbus | Dayton | Northeast Region | Northwest Region | Southern Region |
| Sole practitioner | $50,000 | $69,000 | $70,000 | $45,000 | $41,000 | $64,000 | $75,500 |
| Sole practitioner with 1 or more assoc. | 60,000 | 120,000 | 140,000 | 60,000 | 96,500 | 60,000 | 112,500 |
| Sole practitioner sharing space | 100,000 | 75,000 | 45,000 | 80,000 | 70,000 | 75,000 | 68,500 |
| Partner in firm with 2–7 partners | 120,000 | 111,500 | 87,500 | 103,000 | 82,000 | 107,500 | 98,500 |
| Partner in firm with 8 or more partners | 175,000 | 200,000 | 210,000 | 235,000 | 134,000 | 161,500 | 80,000 |
| Assoc. in firm with 2–7 partners | 64,000 | 65,000 | 44,000 | 71,000 | 52,000 | 46,500 | 42,000 |
| Assoc. in firm with 8 or more partners | 103,000 | 63,000 | 80,000 | 64,000 | 67,000 | 74,000 | – |
| City/State/County government | – | – | 58,000 | 50,000 | 36,000 | 50,000 | 45,000 |
| House counsel | 98,000 | 105,000 | 60,000 | – | 77,500 | 97,500 | 95,000 |
| Legal aid | – | – | – | – | 46,500 | 44,000 | – |

Attorney Net Income

---

**Gender and Practice Style**

Exhibit 14 compares median 2000 income by years in practice and gender. A "gender gap" is defined as the percent difference in median values between male and female attorneys expressed as "cents on the dollar a female earns compared with a male counterpart." The overall gap, considering all males and all females (as well as all full-time males and females) is 61 cents on the dollar, unchanged from 1997, which is down from 46% in 1989.

For attorneys in practice five years or less, there is a much smaller gap. In this group, for all attorneys, females earn 90 cents on the dollar, and private practitioners, 94 cents.

Approximately 91% of all respondents work full-time. Exhibit 15 displays median 1997 net income by their gender, work status and by years in practice. The following reasons are reported for those working part-time: "other businesses" (27%) "approaching retirement" (27%), "family considerations" (33%), and "economic necessity" (15%).

---

Exhibit 14    **2000 Median Net Income by Gender and Years in Bar, All OSBA Attorneys and Private Practitioners Only**

| Years in Practice | All | All OSBA Attorneys Males | Females | Gap | All | Private Practitioners Only Males | Females | Gap |
|---|---|---|---|---|---|---|---|---|
| 5 or less | $47,000 | $50,000 | $45,000 | 90 | $50,000 | $53,000 | $50,000 | 94 |
| Number of Respondents | 145 | 79 | 65 | | 105 | 63 | 41 | |
| 6–10 | 64,000 | 68,500 | 48,000 | 70 | 66,000 | 78,000 | 42,000 | 54 |
| | 96 | 65 | 31 | | 72 | 49 | 23 | |
| 11–15 | 76,500 | 86,000 | 60,000 | 70 | 80,000 | 86,000 | 65,000 | 76 |
| | 107 | 69 | 38 | | 79 | 55 | 24 | |
| 16–25 | 89,000 | 100,000 | 51,500 | 52 | 100,000 | 103,000 | 46,500 | 45 |
| | 264 | 206 | 55 | | 216 | 175 | 38 | |
| more than 25 | 90,000 | 90,000 | 75,000 | 83 | 90,000 | 90,000 | 105,000 | 117 |
| | 274 | 267 | 6 | | 245 | 240 | 4 | |
| All Respondents | $75,000 | $82,000 | $50,000 | 61 | 80,000 | 85,000 | 50,000 | 59 |
| Number of Respondents | 892 | 688 | 195 | | 721 | 584 | 130 | |

---

Exhibit 15    **2000 Median Net Income by Gender, Workstatus and Years in Bar, All OSBA Attorneys and Private Practitioners Only**

| Years in Practice | All Attorneys Full-time Males | Full-time Females | Part-time Males | Part-time Females | Private Practitioners Only Full-time Males | Full-time Females | Part-time Males | Part-time Females |
|---|---|---|---|---|---|---|---|---|
| 5 or less | $50,000 | $45,000 | $23,000 | $30,000 | $54,500 | $50,000 | – | $29,000 |
| Number of Respondents | 75 | 57 | 4 | 8 | 61 | 36 | – | 5 |
| 6–10 | 70,000 | 55,000 | – | 25,000 | 78,000 | 55,000 | – | 20,000 |
| | 63 | 25 | – | 6 | 49 | 18 | – | 5 |
| 11–15 | 86,000 | 64,000 | – | 56,500 | 87,000 | 69,000 | – | 41,000 |
| | 67 | 32 | – | 6 | 54 | 20 | – | 4 |
| 16–25 | 100,000 | 62,000 | 27,500 | 30,000 | 110,000 | 60,000 | 27,500 | 25,500 |
| | 198 | 43 | 6 | 11 | 168 | 29 | 6 | 8 |
| more than 25 | 100,000 | 75,000 | 31,000 | – | 100,000 | 105,000 | 21,000 | – |
| | 233 | 5 | 34 | – | 213 | 4 | 27 | – |
| All Respondents | $85,000 | $55,000 | $31,000 | $30,000 | $90,000 | $55,000 | $22,000 | $25,500 |
| Number of Respondents | 638 | 162 | 48 | 32 | 547 | 107 | 36 | 22 |

---

# CLIENT BILLING PRACTICES AND 2001 RATES OF OSBA ATTORNEYS

| **Patterns and Practices** | Eighty-six percent of private practitioners claim to have a standard or usual hourly rate which is applied as a guide, starting point or basis for fee computation. The median 2001 hourly billing rate for all respondents is $150.00 per hour, a 20% increase since 1998. |

Fifty-six percent of private practitioners always keep time records, 40% usually or sometimes keep time records, while only 4% do not. Given the dominating importance of time, the following is the distribution of time tracking units utilized by respondents, comparing 2001 with previous responses:

| Tracking Unit (in minutes) | 1990 | 1994 | 1998 | 2001 |
| --- | --- | --- | --- | --- |
| 6 | 31% | 55% | 61% | 62% |
| 10 | 23 | 7 | 8 | 9 |
| 15 | 38 | 32 | 25 | 22 |
| 30 | 3 | 4 | 2 | 2 |
| None | 5 | 2 | 4 | 5 |

About 62% of respondents track and record time at six minute (0.1 hour) intervals and 22% track at 15 minute intervals. Respondents vary as to their charging clients for time spent on telephone calls as follows:

| Practice | 1990 | 1994 | 1998 | 2001 |
| --- | --- | --- | --- | --- |
| Always | 27% | 23% | 20% | 20% |
| Usually | 47 | 42 | 45 | 43 |
| Sometimes | 20 | 29 | 30 | 30 |
| Never | 6 | 6 | 5 | 7 |

While hourly billing rates are not static, the frequency of updating rates has decreased since 1990:

| Months Since Rate Change | 1990 | 1994 | 1998 | 2001 |
| --- | --- | --- | --- | --- |
| 0–6 | 31% | 25% | 24% | 24% |
| 7–11 | 20 | 14 | 14 | 15 |
| 12–24 | 31 | 32 | 31 | 33 |
| More than 24 | 18 | 29 | 32 | 28 |

The percent change from the last previous rate increase has also diminished as follows:

| Percent Increase | 1990 | 1994 | 1998 | 2001 |
| --- | --- | --- | --- | --- |
| 5% or less | 20% | 28% | 25% | 22% |
| 6–10 | 44 | 39 | 38 | 38 |
| 11–19 | 22 | 17 | 19 | 20 |
| 20% or more | 14 | 16 | 18 | 20 |

Billing Practices and Rates

The level of uncollectables is decreasing since 1998. The following distribution summarizes changes since 1990 in the extent of reported uncollectable billings:

| Percentage of Uncollectables | 1990 | 1994 | 1998 | 2001 |
|---|---|---|---|---|
| 2% or less | 33% | 31% | 33% | 37% |
| 3–8% | 35 | 30 | 32 | 30 |
| 9–12% | 20 | 23 | 20 | 18 |
| More than 12% | 12 | 16 | 16 | 15 |

Most attorneys never add a service charge to a delinquent account, as follows:

| Frequency of adding service charge | 1990 | 1994 | 1998 | 2001 |
|---|---|---|---|---|
| Always | 2% | 3% | 6% | 7% |
| Usually | 4 | 5 | 7 | 8 |
| Sometimes | 14 | 17 | 16 | 15 |
| Never | 80 | 75 | 70 | 70 |

**Attorney Hourly Billing Rates**

While many interacting factors affect the setting and application of hourly billing rates, Exhibits 16 and 17 summarize five discrete factors and provide the percent change in hourly billing rates since 1994 for each element:

- Size of firm
- Years in practice
- Primary Field of Law
- Legal Classification
- Office location

Exhibit 16    **Distributions of 2001 Hourly Billing Rates By Selected Variables and Changes Since 1994, OSBA Private Practitioners**

| Size of Firm (# of Attorneys) | N 1988 | 25th | Median | Mean | 75th | 95th | N 1998 | Median 1998 | % chg '98–'01 | N 1994 | Median 1994 | % chg '94–'01 | % chg Avg Ann |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 239 | $112 | $125 | $139 | $152 | $216 | 266 | $120 | 4 | 160 | $100 | 25.0 | 3.6 |
| 2–5 | 194 | 125 | 150 | 148 | 175 | 218 | 188 | 125 | 20 | 238 | 100 | 50.0 | 7.1 |
| 6–20 | 118 | 125 | 150 | 157 | 190 | 267 | 111 | 125 | 20 | 172 | 125 | 20.0 | 2.9 |
| more than 20 | 119 | 148 | 193 | 205 | 255 | 360 | 126 | 150 | 28 | 165 | 155 | 24.2 | 3.5 |
| **Years in Practice** | | | | | | | | | | | | | |
| 5 or less | 105 | $100 | $125 | $123 | $135 | $192 | 112 | $100 | 25 | 143 | $100 | 25.0 | 3.6 |
| 6–10 | 72 | 120 | 138 | 144 | 174 | 239 | 89 | 120 | 15 | 114 | 108 | 27.3 | 3.9 |
| 11–15 | 79 | 125 | 150 | 147 | 175 | 251 | 96 | 125 | 20 | 113 | 120 | 25.0 | 3.6 |
| 16–25 | 216 | 125 | 150 | 165 | 200 | 270 | 243 | 130 | 15 | 197 | 125 | 20.0 | 2.9 |
| more than 25 | 245 | 125 | 150 | 168 | 200 | 310 | 171 | 130 | 15 | 168 | 125 | 20.0 | 2.9 |
| **Primary Field of Law** | | | | | | | | | | | | | |
| Bankruptcy | 23 | $130 | $167 | $160 | $189 | $247 | 16 | $125 | 33 | 22 | $125 | 33.3 | 4.8 |
| Collections | 18 | 118 | 125 | 132 | 150 | 190 | 13 | 115 | 9 | 18 | 100 | 25.0 | 3.6 |
| Corporate/Business Law | 59 | 127 | 175 | 173 | 206 | 272 | 67 | 150 | 17 | 53 | 145 | 20.7 | 3.0 |
| Criminal Law (Public Def.) | 12 | 80 | 113 | 110 | 138 | 150 | 23 | 100 | 13 | 32 | 100 | 12.5 | 1.8 |
| Criminal Law (Private Def.) | 12 | 127 | 158 | 164 | 258 | 260 | 18 | 100 | 58 | NA | NA | NA | NA |
| Dom. Relations/Family Law | 68 | 114 | 150 | 150 | 175 | 289 | 61 | 125 | 20 | 52 | 100 | 50.0 | 7.1 |
| Environ./Natural Res. Law | 4 | 168 | 203 | 181 | 211 | 220 | 7 | 140 | 45 | 12 | 138 | 46.7 | 6.7 |
| General Practice | 31 | 118 | 147 | 147 | 169 | 286 | 53 | 115 | 28 | 63 | 100 | 46.7 | 6.7 |
| Health and Hospital Law | 6 | 169 | 290 | 234 | 331 | 350 | 6 | 138 | 110 | 23 | 135 | 114.8 | 16.4 |
| Pat., Trdmk. & Intell. Prop. | 9 | 119 | 181 | 169 | 200 | 250 | 8 | 155 | 17 | 13 | 145 | 25.0 | 3.6 |
| Labor Law (Defense) | 17 | 125 | 165 | 161 | 205 | 280 | 20 | 158 | 4 | 23 | 135 | 22.2 | 3.2 |
| Labor Law (Plaintiff) | 12 | 118 | 180 | 173 | 258 | 260 | 9 | 125 | 44 | NA | NA | NA | NA |
| Municipal/Public Entity Law | 11 | 128 | 148 | 145 | 201 | 210 | 10 | 125 | 18 | 10 | 150 | –1.7 | –0.2 |
| Product Liability | 5 | 123 | 175 | 135 | 156 | 180 | NA | NA | NA | NA | NA | NA | NA |
| Personal Injury (Defense) | 31 | 103 | 140 | 138 | 173 | 209 | 38 | 100 | 40 | 40 | 87 | 60.9 | 8.7 |
| Personal Injury (Plaintiff) | 62 | 125 | 150 | 155 | 175 | 250 | 58 | 125 | 20 | 77 | 100 | 50.0 | 7.1 |
| Real Property Law | 52 | 117 | 133 | 155 | 186 | 308 | 33 | 125 | 6 | 73 | 100 | 32.5 | 4.6 |
| Taxation | 12 | 169 | 220 | 223 | 345 | 510 | 13 | 125 | 76 | 14 | 125 | 76.0 | 10.9 |
| Trial Practice (General Civil) | 33 | 130 | 155 | 168 | 208 | 275 | 27 | 148 | 5 | 48 | 132 | 17.4 | 2.5 |
| Trial Practice (Commercial) | 16 | 136 | 168 | 177 | 267 | 315 | 13 | 150 | 12 | NA | NA | NA | NA |
| Wills/Estates/Probate | 152 | 120 | 128 | 142 | 164 | 217 | 134 | 125 | 2 | 119 | 100 | 27.5 | 3.9 |
| Workers' Compensation | 21 | 117 | 135 | 142 | 175 | 200 | 25 | 140 | –4 | 11 | 130 | 3.8 | 0.5 |
| Other Fields of Law | 37 | 140 | 187 | 187 | 242 | 355 | 33 | 125 | 49 | 37 | 125 | 49.3 | 7.0 |
| **Legal Classification** | | | | | | | | | | | | | |
| Sole practitioner | 243 | $100 | $125 | $138 | $150 | $219 | 228 | $110 | 14 | 164 | $100 | 25.0 | 3.6 |
| Sole pract. w/1 or more assoc. | 44 | 136 | 163 | 161 | 175 | 200 | 38 | 125 | 30 | 47 | 125 | 30.0 | 4.3 |
| Sole pract. sharing space | 65 | 125 | 150 | 148 | 175 | 294 | 78 | 125 | 20 | 75 | 100 | 50.0 | 7.1 |
| Part. in firm w/2–7 part. | 160 | 125 | 150 | 154 | 180 | 250 | 142 | 125 | 20 | 192 | 115 | 30.4 | 4.3 |
| Part. in firm w/8 or more part. | 85 | 180 | 210 | 224 | 270 | 390 | 97 | 175 | 20 | 115 | 175 | 20.0 | 2.9 |
| Assoc. in firm w/2–7 part. | 63 | 100 | 127 | 136 | 150 | 203 | 47 | 115 | 10 | 82 | 95 | 33.3 | 4.8 |
| Assoc. in firm w/8 or more part. | 61 | 125 | 146 | 157 | 180 | 261 | 49 | 125 | 17 | 89 | 110 | 32.6 | 4.7 |
| All attorneys | 721 | $125 | $150 | $156 | $180 | $258 | 716 | $125 | 20 | 764 | $110 | 36.4 | 5.2 |

Billing Practices and Rates

Exhibit 17    **Distributions of 2001 Hourly Billing Rates By Office Location, OSBA Private Practitioners**

| Office Location | N 2001 | 25th | Median | Mean | 75th | 95th | N 1998 | Median 1998 | % chg '98–'01 | % chg Avg Ann |
|---|---|---|---|---|---|---|---|---|---|---|
| Greater Cleveland | 116 | $125 | $165 | $177 | $200 | $370 | 118 | $150 | 10.0 | 3.3 |
| Greater Cincinnati | 80 | 125 | 175 | 175 | 200 | 316 | 72 | 150 | 16.7 | 5.6 |
| Greater Columbus | 134 | 136 | 174 | 178 | 200 | 314 | 104 | 149 | 16.9 | 5.6 |
| Greater Dayton | 38 | 141 | 165 | 165 | 189 | 250 | 37 | 140 | 17.9 | 6.0 |
| Northeast Region | 146 | 115 | 126 | 139 | 150 | 230 | 145 | 110 | 14.4 | 4.8 |
| Northwest Region | 94 | 100 | 125 | 133 | 150 | 217 | 118 | 100 | 25.0 | 8.3 |
| Southern Region | 109 | 115 | 125 | 133 | 150 | 197 | 118 | 110 | 13.6 | 4.5 |
| **Office Location Detailed** | | | | | | | | | | |
| Cleveland (Downtown) | 70 | $145 | $175 | $195 | $241 | $373 | 73 | $150 | 16.7 | 5.6 |
| Cleveland (Suburban) | 46 | 125 | 150 | 150 | 177 | 238 | 45 | 125 | 20.0 | 6.7 |
| Cincinnati (Downtown) | 56 | 143 | 186 | 186 | 221 | 293 | 53 | 150 | 23.9 | 8.0 |
| Cincinnati (Suburban) | 24 | 125 | 138 | 152 | 173 | 310 | 19 | 125 | 10.0 | 3.3 |
| Columbus (Downtown) | 78 | 139 | 184 | 190 | 240 | 337 | 70 | 150 | 22.8 | 7.6 |
| Columbus (Suburban) | 56 | 125 | 150 | 161 | 194 | 250 | 34 | 138 | 8.7 | 2.9 |
| Dayton | 38 | 141 | 165 | 165 | 189 | 250 | 37 | 140 | 17.9 | 6.0 |
| Canton | 12 | 113 | 138 | 140 | 189 | 200 | 18 | 120 | 14.6 | 4.9 |
| Akron | 38 | 125 | 150 | 155 | 181 | 280 | 28 | 125 | 20.0 | 6.7 |
| Toledo | 48 | 125 | 148 | 151 | 180 | 219 | 56 | 125 | 18.7 | 6.2 |
| Youngstown | 10 | 109 | 124 | 126 | 169 | 175 | 16 | 113 | 9.9 | 3.3 |
| Northeast Region | 86 | 106 | 125 | 133 | 150 | 195 | 83 | 100 | 25.0 | 8.3 |
| Northwest Region | 46 | 99 | 100 | 113 | 128 | 172 | 62 | 95 | 5.3 | 1.8 |
| Southeast Region | 34 | 111 | 125 | 129 | 150 | 194 | 36 | 108 | 15.7 | 5.2 |
| Southwest Region | 52 | 120 | 147 | 138 | 150 | 197 | 52 | 123 | 19.2 | 6.4 |
| Central Region | 23 | 114 | 125 | 127 | 150 | 194 | 30 | 103 | 21.4 | 7.1 |
| All Attorneys | 721 | $125 | $150 | $156 | $180 | $258 | 716 | $125 | 20.0 | 6.7 |

**Work Week Time Allocation**  Numerous activities consume an attorney's work week. Exhibit 18 summarizes ranges of time (measured in hours per week) across these activities. The median values for 2001 total hours worked is 47 with billable hours consuming 35 hours.

Exhibit 18    **Profile of Work Week Components in Hours, OSBA Attorneys, 2001**

| Work Week Component (in Hours) | N | 25th | Median | Mean | 75th | 95th |
|---|---|---|---|---|---|---|
| Billable Hours for Legal Work | | | | | | |
| Based on Hourly Rate | 537 | 15 | 25 | 50 | 35 | 45 |
| Based on Flat Rate | 307 | 5 | 10 | 15 | 20 | 40 |
| Based on Contingency work | 257 | 5 | 10 | 16 | 23 | 50 |
| Total Hours for Chargeable Legal Work | 809 | 30 | 35 | 37 | 40 | 45 |
| **Other Hours** | | | | | | |
| Office Administration | 728 | 3 | 5 | 6 | 10 | 15 |
| Marketing Activities | 390 | 1 | 2 | 5 | 5 | 10 |
| Unbilled Community/Public Service | 531 | 2 | 3 | 5 | 5 | 15 |
| Nonlegal employment/personal investments | 338 | 2 | 4 | 7 | 5 | 30 |
| Total Hours in Workweek | 854 | 40 | 47 | 50 | 55 | 70 |
| **Other Hours/Year** | | | | | | |
| Continuing Legal Education | 683 | 12 | 16 | 20 | 24 | 40 |
| Unbilled (Pro Bono) Legal Work | 466 | 10 | 25 | 50 | 50 | 200 |

Header note: Value by Percentile (spanning 25th, Median, Mean, 75th, 95th)

**Hourly Billing Rates for Associates & Legal Assistants**  Exhibit 19 distributes 2001 median hourly billing rates for associates and legal assistants by years of experience and by office location. Exhibit 20 tracks changes since 1994. For firms employing legal assistants, the following pattern is reported with respect to client billing:

| Client Billing Pattern for Legal Assistants | 1990 | 1994 | 1998 | 2001 |
|---|---|---|---|---|
| Included in attorney's hourly rate | 26% | 22% | 26% | 36% |
| Time Basis | 59 | 69 | 55 | 61 |
| Self-developed fee schedule | 8 | 4 | 11 | 2 |
| Other system | 6 | 5 | 8 | 1 |

Most firms (69%) do not employ legal assistants. For those that do, the distribution of the number employed per firm follows:

| Number of Legal Assistants Employed (FTEs) | 1990 | 1994 | 1998 | 2001 |
|---|---|---|---|---|
| None | 65% | 60% | 70% | 69% |
| 1 | 18 | 18 | 17 | 22 |
| 2 | 6 | 7 | 5 | 5 |
| 3 | 4 | 3 | 1 | 1 |
| 4–6 | 3 | 5 | 4 | – |
| 7–10 | 2 | 2 | 1 | 1 |
| More than 10 | 2 | 5 | 2 | 3 |

The larger firms have shown the most growth in employing legal assistants.

Billing Practices and Rates

| Exhibit 19 | **2001 Median Hourly Billing Rates, Associates and Legal Assistants by Office Location, Ohio Law Firms** |

| Associates | Firms | All Areas | Greater Cleveland | Greater Cincinnati | Greater Columbus | Dayton | Northeast Region | Northwest Region | Southern Region |
|---|---|---|---|---|---|---|---|---|---|
| New hires without experience | 48 | $110 | $113 | $110 | $125 | $115 | $90 | $75 | $98 |
| With at least 3 years experience | 38 | 125 | 115 | 120 | 130 | 145 | 100 | 135 | $100 |
| With at least 5 years experience | 34 | 125 | 120 | 125 | 150 | 175 | 110 | 100 | $120 |
| With at least 10 years experience | 34 | 128 | 138 | 175 | 175 | 200 | 125 | 100 | $123 |
| **Legal Assistants (Paralegals)** | | | | | | | | | |
| New hires without experience | 36 | $50 | $85 | $54 | $65 | $70 | $43 | $45 | $50 |
| With at least 3 years experience | 23 | 60 | 90 | 85 | 92 | 85 | 45 | 60 | $48 |
| With at least 5 years experience | 28 | 73 | – | 50 | 75 | 95 | 50 | 60 | $73 |
| With at least 10 years experience | 42 | 59 | 61 | 65 | 85 | 95 | 55 | 45 | $43 |

| Exhibit 20 | **Median Hourly Billing Rates, Associates and Legal Assistants by Office Location, 1994–2001, Ohio Law Firms** |

| Associates | Firms 2001 | Median rates 2001 | Firms 1998 | Median rates 1998 | Firms 1994 | Median rates 1994 | % change since 1994 | % change avg ann |
|---|---|---|---|---|---|---|---|---|
| New hires without experience | 48 | $110 | 56 | $95 | 80 | $80 | 37.5 | 5.4 |
| With at least 3 years experience | 38 | 125 | 47 | 110 | 83 | 95 | 31.6 | 4.5 |
| With at least 5 years experience | 34 | 125 | 50 | 115 | 71 | 100 | 25.0 | 3.6 |
| With at least 10 years experience | 34 | 128 | 38 | 145 | 46 | 125 | 2.4 | 0.3 |
| **Legal Assistants (Paralegals)** | | | | | | | | |
| New hires without experience | 36 | $50 | 43 | $50 | 56 | $45 | 11.1 | 1.6 |
| With at least 3 years experience | 23 | 60 | 32 | 60 | 54 | 50 | 20.0 | 2.9 |
| With at least 5 years experience | 28 | 73 | 35 | 50 | 61 | 50 | 46.0 | 6.6 |
| With at least 10 years experience | 42 | 59 | 34 | 63 | 49 | 50 | 18.0 | 2.6 |

# Aspects of Law Office Management of OSBA Attorneys

| | |
|---|---|
| **Introduction** | This section summarizes additional aspects of law office management in Ohio: |

- 2000 law office overhead expenses per attorney compared against gross receipts per attorney
- 2001 salary levels paid associates, legal assistants and secretaries
- Marketing and advertising practices

| | |
|---|---|
| **Overhead Expenses and Gross Receipts per Attorney** | More than 350 respondents, representing sole practitioners and firms, provided financial information on current operating expenses per attorney and gross revenues per attorney. Exhibits 21 and 22 summarize five categories of 2000 overhead expenses against gross receipts by firm size and office location. Changes since 1993 are included on Exhibit 21. |

Exhibit 21 **2000 Operating Expenses and Gross Receipts per Attorney by Firm Size, Ohio Law Firms**

| Expenditures per Attorney | Median Values by Size of Firm | | | | All firms 2000 | All firms 1997 | All firms 1993 | % change avg ann |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2–5 | 6–20 | >20 | | | | |
| Non-legal salaries | $26,000 | $30,000 | $24,500 | $35,000 | $27,000 | $20,000 | $20,000 | 5.0 |
| Rent/phone/utilities | 10,000 | 10,000 | 12,000 | 16,300 | 10,000 | 9,508 | 9,000 | 1.6 |
| All other expenses | 15,000 | 20,000 | 15,500 | 39,238 | 15,000 | 12,646 | 10,000 | 7.1 |
| Total expenses | $44,600 | $61,100 | $47,130 | $101,500 | $50,000 | $41,000 | $40,000 | 3.6 |
| Gross receipts per attorney | $108,000 | $150,000 | $157,500 | $220,000 | $125,000 | $104,000 | $104,000 | 2.9 |
| Ratio of expenditures to receipts | 0.41 | 0.41 | 0.30 | 0.46 | 0.40 | 0.39 | 0.38 | – |
| Number of responses | 186 | 118 | 35 | 14 | 353 | 369 | 337 | – |

Exhibit 22 **2000 Operating Expenses and Gross Receipts per Attorney by Office Location, Ohio Law Firms**

| Expenditures per Attorney | Median Values for Offices by Geographic Location | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Greater Cleveland | Greater Cincinnati | Greater Columbus | Dayton | Northeast Region | Northwest Region | Southern Region | All Firms 2000 |
| Non-legal salaries | $23,000 | $27,648 | $27,000 | $32,500 | $25,000 | $20,000 | $30,000 | $27,000 |
| Rent/phone/utilities | 10,000 | 10,000 | 15,000 | 12,000 | 9,000 | 10,200 | 10,000 | 10,000 |
| All other expenses | 16,000 | 12,333 | 16,350 | 26,500 | 15,000 | 10,000 | 20,000 | 15,000 |
| Total expenses | 34,630 | 45,500 | 56,550 | 70,000 | 46,000 | 40,000 | 71,000 | 50,000 |
| Gross receipts per attorney | $122,500 | $137,000 | $142,000 | $140,000 | $110,000 | 120,000 | 147,500 | 125,000 |
| Ratio of expenditures to receipts | 0.28 | 0.33 | 0.40 | 0.50 | 0.42 | 0.33 | 0.48 | 0.40 |
| Number of responses | 46 | 35 | 57 | 21 | 96 | 49 | 68 | 372 |

Law Office Management

---

| **Starting and Current Salary Levels** | Exhibit 23 displays 2001 annual median salary levels for four categories of associates, legal assistants and secretaries by firm size. The percent increase in median salaries since 1994 is also shown. The full distribution of these salary levels by office location is appended (Appendices A-G). |

---

Exhibit 23    **2001 Annual Median Salaries of Associates, Legal assistants and Secretaries by Size of Firm, Ohio Law Firms**

| Category | # of Firms | Size of Firm 1 | 2–5 | 6–20 | >20 | All 2001 | All 1998 | All 1994 | % change since 1994 | % change avg. ann. |
|---|---|---|---|---|---|---|---|---|---|---|
| **Associates** | | | | | | | | | | |
| New hires without experience | 47 | – | $32,000 | $40,000 | $67,500 | $35,000 | $31,000 | $30,000 | 16.7 | 2.4 |
| New hires with experience | 45 | – | 40,000 | 50,000 | 67,500 | 50,000 | 42,777 | 40,000 | 25.0 | 3.6 |
| With 5 years experience | 39 | – | 42,000 | 60,000 | 77,500 | 58,000 | 50,000 | 50,000 | 16.0 | 2.3 |
| With 10 years experience | 34 | – | 63,000 | 70,000 | 125,000 | 68,500 | 70,085 | 62,500 | 9.6 | 1.4 |
| **Legal Assistants (Paralegals)** | | | | | | | | | | |
| New hires without experience | 35 | 18,000 | 25,000 | 26,000 | – | 25,000 | 23,250 | 19,000 | 31.6 | 4.5 |
| New hires with experience | 30 | 18,000 | 26,280 | 32,000 | 33,000 | 29,560 | 26,600 | 22,000 | 34.4 | 4.9 |
| With 5 years experience | 29 | 26,000 | 28,500 | 35,000 | 33,500 | 30,000 | 29,300 | 25,000 | 20.0 | 2.9 |
| With 10 years experience | 44 | 30,000 | 37,500 | 38,000 | 45,000 | 37,750 | 36,000 | 30,000 | 25.8 | 3.7 |
| **Secretaries** | | | | | | | | | | |
| New hires without experience | 84 | 20,900 | 20,000 | 22,000 | 20,060 | 21,000 | 22,000 | 15,000 | 40.0 | 5.7 |
| New hires with experience | 84 | 20,500 | 22,250 | 27,500 | 27,500 | 23,000 | 25,000 | 17,000 | 35.3 | 5.0 |
| With 5 years experience | 86 | 21,500 | 24,950 | 30,000 | 27,500 | 25,000 | 28,000 | 20,000 | 25.0 | 3.6 |
| With 10 years experience | 142 | 25,000 | 28,000 | 32,000 | 34,000 | 28,000 | 32,000 | 22,000 | 27.3 | 6.8 |

---

| **Marketing Practices** | Sixty-eight percent of respondents market and advertise their services through a variety of devices, compared with 61% in 1998 and 54% in 1994: |

| Marketing Device Used | 1990 | 1994 | 1998 | 2001 |
|---|---|---|---|---|
| Yellow Pages Block Display | 72% | 61% | 59% | 56% |
| Newspaper Ad | NA | 14 | 16 | 11 |
| Firm Brochure | 28 | 34 | 22 | 27 |
| Newspapers/Periodicals | 20 | 17 | 18 | 20 |
| Public Relations Firms | 3 | 6 | 3 | 5 |
| Firm Development Plans/Marketing | 12 | 18 | 12 | 13 |
| Radio/Television Ads | 3 | 7 | 7 | 4 |
| Seminars | 22 | 33 | 24 | 23 |
| Client Surveys | 5 | NA | NA | NA |
| Client Newsletter (Prepared In-house) | NA | 8 | 18 | 22 |
| Client Newsletter (Prepared by Outside Firm) | NA | 5 | NA | NA |
| Web Page | NA | NA | 14 | 34 |
| Listing in Legal Directory | NA | NA | 59 | 66 |

---

**On-Line Services**    Exhibit 24 summarizes spending for on-line services. This and subsequent exhibits distribute responses by both firm size and practice setting. Spending increases with firm size. Between 20% and 30% of respondents use free services only. Exhibit 25 summarizes frequency of use for on-line services with more frequent usage among respondents in larger firms. Preferred tools and applications are summarized by the top three choices of respondents as Exhibit 26.

Exhibit 24    **Frequency Distributions on Spending for On-Line Services, Ohio Attorneys by Organization Size and Practice Setting, 2001**

| | Size of Organization | | | | | Practice Setting | | |
|---|---|---|---|---|---|---|---|---|
| Category | 1 | 2–5 | 6–20 | >20 | All Organi- zations | Private Practice | House Counsel | Govt. |
| Use Free Service | 38.3% | 24.9% | 10.8% | 6.3% | 26.4% | 25.2% | 21.3% | 30.4% |
| <$195 | 17.8 | 10.1 | 2.7 | | 10.6 | 11.7 | 4.3 | 4.3 |
| $196–$2,000 | 28.9 | 31.3 | 16.2 | | 23.1 | 24.6 | 19.1 | 15.2 |
| $2,000–5,000 | 12.3 | 18.9 | 16.2 | 1.0 | 13.2 | 13.8 | 8.5 | 15.2 |
| $5,000–10,000 | 2.0 | 9.7 | 18.9 | 6.3 | 7.5 | 7.1 | 8.5 | 8.7 |
| $10,000–25,000 | | 3.7 | 19.8 | 14.6 | 6.5 | 5.6 | 12.8 | 13.0 |
| $25,000–50,000 | 0.8 | 0.9 | 9.0 | 10.4 | 3.5 | 3.7 | 6.4 | |
| >$50,000 | | 0.5 | 6.3 | 61.5 | 9.2 | 8.3 | 19.1 | 13.0 |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

Exhibit 25    **Frequency Distributions on Usage of On-Line Services, Ohio Attorneys by Organization Size and Practice Setting, 2001**

| | Size of Organization | | | | | Practice Setting | | |
|---|---|---|---|---|---|---|---|---|
| Category | 1 | 2–5 | 6–20 | >20 | All Organi- zations | Private Practice | House Counsel | Govt. |
| Daily | 15.9% | 19.4% | 28.8% | 21.7% | 20.1% | 17.3% | 25.0% | 33.3% |
| Weekly | 34.9 | 37.1 | 28.8 | 39.5 | 34.4 | 35.8 | 26.7 | 33.3 |
| Bi-Weekly | 11.2 | 11.6 | 10.3 | 8.9 | 11.0 | 10.8 | 11.7 | 10.7 |
| Monthly | 14.7 | 16.4 | 17.9 | 16.6 | 16.7 | 16.4 | 28.3 | 12.0 |
| Never | 23.3 | 15.5 | 14.1 | 13.4 | 17.7 | 19.7 | 8.3 | 10.7 |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

Exhibit 26    **Preferences for On-Line Research Tools by Product/Service, Ohio Attorneys, 2001**

| | First Choice | | Second Choice | | Third Choice | |
|---|---|---|---|---|---|---|
| Tool | N | % of Total | N | % of Total | N | % of Total |
| Casemaster | 129 | 41.0% | 90 | 36.3% | 21 | 24.4% |
| West | 77 | 24.4 | 49 | 19.8 | 17 | 19.8 |
| Lexis/Nexis | 66 | 21.0 | 31 | 12.5 | 12 | 14.0 |
| Anderson | 27 | 8.6 | 44 | 17.7 | 16 | 18.6 |
| Other | 16 | 5.1 | 30 | 12.1 | 19 | 22.1 |
| Lois | 0 | 0.0 | 4 | 1.6 | 1 | 1.2 |
| Total | 315 | 100% | 248 | 100% | 86 | 100% |

Law Office Management

**Hardware and Software Systems and Applications**

Exhibit 27 ranks the frequency of use of various support services and applications, both hardware and software. The classic products and services dominate. Exhibit 28 ranks PC installs by brand name with "other" including Macs and other PC brands and clones. Exhibit 29 enumerates reasons offered on problems associated with adapting and using new technologies. Time is mentioned alone or in combination with other factors 64% of the time, cost 46% of the time and training 54% of the time.

Exhibit 27 **Percent Using Support Systems and Applications, Ohio Attorneys by Organization Size and Practice Setting, 2001**

| Category | Size of Organization | | | | All Organizations | Practice Setting | | |
| | 1 | 2–5 | 6–20 | >20 | | Private Practice | House Counsel | Govt. |
|---|---|---|---|---|---|---|---|---|
| Time and Billing | 48.7% | 56.2% | 59.2% | 63.7% | 55.8% | 63.0% | 16.4% | 5.0% |
| Accounting | 49.8 | 54.5 | 55.4 | 53.5 | 53.0 | 58.7 | 27.9 | 5.0 |
| Calendering | 40.7 | 49.8 | 63.7 | 66.9 | 52.8 | 52.0 | 55.7 | 38.8 |
| Client Info | 39.5 | 43.8 | 43.9 | 44.6 | 42.6 | 46.3 | 21.3 | 17.5 |
| CD-Rom Research | 31.6 | 38.3 | 46.5 | 47.8 | 39.5 | 39.4 | 39.3 | 30.0 |
| Scanner for Text | 27.4 | 29.4 | 32.5 | 42.0 | 31.8 | 32.6 | 29.5 | 15.0 |
| Case Management | 22.1 | 29.8 | 29.3 | 42.0 | 29.6 | 28.8 | 24.6 | 31.3 |
| Conflict Checking | 14.4 | 23.4 | 31.8 | 52.9 | 27.8 | 30.9 | 3.3 | 3.8 |
| Scanner for Images | 21.7 | 23.8 | 22.9 | 36.3 | 25.4 | 25.0 | 32.8 | 12.5 |
| Personal Digital Assistant | 12.9 | 18.3 | 16.6 | 22.3 | 17.0 | 17.2 | 16.4 | 6.3 |
| Trial Presentations | 9.5 | 8.1 | 10.8 | 30.6 | 13.4 | 14.1 | 4.9 | 8.8 |
| On Line CLE Courses | 9.9 | 6.0 | 8.9 | 12.7 | 9.1 | 8.9 | 18.0 | 3.8 |
| Voice Recognition | 5.3 | 7.2 | 2.5 | 2.5 | 4.8 | 6.0 | – | 1.3 |
| Remote Depositions | 1.5 | 1.3 | 0.6 | 5.7 | 2.1 | 2.2 | 3.3 | – |

Exhibit 28 **Frequency Distributions on PC Brand in Use, Ohio Attorneys by Organization Size and Practice Setting, 2001**

| Category | Size of Organization | | | | All Organizations | Practice Setting | | |
| | 1 | 2–5 | 6–20 | >20 | | Private Practice | House Counsel | Govt. |
|---|---|---|---|---|---|---|---|---|
| Other | 43.4% | 37.7% | 33.8% | 18.3% | 35.1% | 37.7% | 24.1% | 21.4% |
| Compaq | 14.8 | 15.7 | 22.1 | 25.4 | 18.3 | 15.4 | 29.3 | 37.1 |
| Dell | 13.9 | 20.6 | 13.1 | 29.6 | 17.9 | 18.3 | 15.5 | 15.7 |
| Gateway | 13.1 | 12.6 | 16.6 | 16.9 | 14.7 | 15.4 | 5.2 | 15.7 |
| IBM | 10.2 | 10.8 | 11.7 | 7.0 | 10.7 | 9.7 | 19.0 | 10.0 |
| Toshiba | 2.0 | 1.8 | 2.1 | 2.1 | 2.0 | 1.8 | 6.9 | – |
| Micron | 2.5 | 0.9 | 0.7 | 0.7 | 1.3 | 1.7 | – | – |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

Exhibit 29    **Frequency Distributions on Problems Adapting to and Using New Technology, Ohio Attorneys, 2001**

| Problem Mix | Size of Organization | | | | All Organizations | Practice Setting | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2–5 | 6–20 | >20 | | Private Practice | House Counsel | Govt. |
| Lack of Time | 15.5% | 18.7% | 11.4% | 19.3% | 16.4% | 16.8% | 13.7% | 8.9% |
| Cost | 13.7 | 8.9 | 6.8 | 13.4 | 12.6 | 10.0 | 13.7 | 19.6 |
| Lack of Training | 8.0 | 10.8 | 14.4 | 8.4 | 10.7 | 9.5 | 13.7 | 19.6 |
| Vendor Problems | 1.3 | 3.0 | 0.8 | 2.5 | 10.7 | 2.0 | 3.9 | – |
| Management Disinterest | 1.3 | 2.0 | 4.5 | 2.5 | 10.5 | 2.0 | 7.8 | 7.1 |
| Lack of Time and Cost | 12.8 | 11.3 | 6.1 | 10.9 | 7.3 | 10.5 | 7.8 | 12.5 |
| Lack of Time and Training | 15.5 | 11.3 | 12.1 | 10.9 | 4.1 | 13.6 | 9.8 | 7.1 |
| Lack of Time and Vendor Problems | 2.2 | 2.0 | 1.5 | – | 3.4 | 1.7 | 2.0 | – |
| Lack of Time and Management Disinterest | 1.3 | 0.5 | 1.5 | – | 3.4 | 1.0 | – | – |
| Lack of Time, Training and Cost | 8.0 | 6.4 | 9.1 | 6.7 | 2.7 | 7.0 | 9.8 | 7.1 |
| Lack of Time, Training, Cost and Vendor Problems | 5.3 | 4.4 | 3.0 | – | 2.5 | 3.8 | – | – |
| All Factors | 1.3 | 3.4 | 2.3 | 2.5 | 2.1 | 2.7 | 2.0 | – |
| Lack of Training and Cost | 2.2 | 5.4 | 4.5 | 3.4 | 1.9 | 4.2 | 2.0 | 5.4 |
| Lack of Training and Vendor Problems | 1.8 | 0.5 | 2.3 | 2.5 | 1.5 | 1.8 | – | – |
| Cost & Management Disinterest | 0.9 | 0.5 | 2.3 | 1.7 | 1.5 | 1.0 | 2.0 | 1.8 |
| Lack of Training and Vendor Problems | 0.4 | 1.0 | – | 0.8 | 1.5 | 0.8 | – | – |
| Lack of Training and Management Disinterest | 0.4 | 0.5 | 2.3 | 1.7 | 1.4 | 0.8 | 2.0 | 1.8 |
| Lack of Time, Training and Management Disinterest | 4.4 | 3.9 | 2.3 | 2.5 | 1.1 | 3.7 | – | 1.8 |
| Lack of Time, Cost and Vendor Problems | 1.8 | 1.0 | 2.3 | 1.7 | 1.0 | 1.7 | 2.0 | – |
| All Factors Except Vendor Problems | – | 1.0 | 4.5 | 5.0 | 0.8 | 2.0 | 2.0 | 1.8 |
| Cost, Lack of Training and Vendor Problems | 0.9 | 0.5 | 3.8 | 0.8 | 0.7 | 1.5 | 2.0 | – |
| Other Combinations | 0.9 | 3 | 2.3 | 2.5 | 2.3 | 2 | 3.9 | 5.4 |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

Summary Data Displays

| Appendix A | Statistical Profile of OSBA Attorneys, Greater Cleveland Area | | | | | |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| **Income & Hourly Billing Rate** | **N** | **25th** | **Median** | **Mean (Avg.)** | **75th** | **95th** |
| 2000 Net Income (All Respondents) | 140 | $50,000 | $90,000 | $110,078 | $147,667 | $342,000 |
| 2000 Net Income (Private Practitioners Only) | 116 | $48,500 | $94,000 | $111,907 | $148,250 | $436,500 |
| 2001 Hourly Billing Rate | 116 | $125 | $165 | $177 | $200 | $370 |
| **Work Week** | | | | | | |
| **Hours in the Work Week and Year** | | | | | | |
| Total billable hours | 136 | 27 | 35 | 35 | 43 | 57 |
| Based on hourly rate | 92 | 15 | 27 | 26 | 35 | 56 |
| Based on flat rate | 39 | 5 | 10 | 14 | 20 | 50 |
| Based on contingency work | 38 | 7 | 15 | 21 | 40 | 48 |
| Office Administration | 122 | 3 | 5 | 6 | 10 | 18 |
| Marketing Activities | 77 | 2 | 3 | 4 | 5 | 20 |
| Non-billable community/public service | 85 | 2 | 3 | 4 | 5 | 11 |
| Non-legal employment/personal investments | 52 | 1 | 2 | 7 | 6 | 34 |
| Total Hours in Work Week | 138 | 40 | 47 | 48 | 58 | 73 |
| CLE Hours/Year | 107 | 12 | 15 | 18 | 24 | 36 |
| Unbilled (Pro Bono) Hours/Year | 71 | 14 | 30 | 64 | 77 | 506 |
| **Annual Salaries (Spring 2001)** | | | | | | |
| **Associates** | | | | | | |
| New hires without experience | – | – | – | – | – | – |
| With 3 years experience | 4 | $48,750 | $57,500 | $53,750 | $60,000 | $60,000 |
| With 5 years experience | 7 | 44,250 | 57,500 | 54,571 | 65,000 | 70,000 |
| With 10 years experience | 5 | 67,000 | 110,000 | 94,000 | 120,000 | 120,000 |
| **Legal Assistants (Paralegals)** | | | | | | |
| New hires without experience | 6 | 17,750 | 23,500 | 21,500 | 25,750 | 280,000 |
| With 3 years experience | – | – | – | – | – | – |
| With 5 years experience | – | – | – | – | – | – |
| With 10 years experience | 6 | 43,875 | 49,500 | 47,583 | 53,750 | 65,000 |
| **Secretaries** | | | | | | |
| New hires without experience | 7 | 22,530 | 26,000 | 24,437 | 28,000 | 32,000 |
| With 3 years experience | 12 | 19,500 | 26,000 | 23,417 | 29,250 | 30,000 |
| With 5 years experience | 9 | 27,500 | 31,333 | 29,667 | 33,500 | 35,000 |
| With 10 years experience | 17 | 22,000 | 34,333 | 29,096 | 36,000 | 40,000 |

| Appendix B | **Statistical Profile of OSBA Attorneys, Greater Cincinnatti Area** | | | | | |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| **Income & Hourly Billing Rate** | **N** | **25th** | **Median** | **Mean (Avg.)** | **75th** | **95th** |
| 2000 Net Income (All Respondents) | 95 | $62,250 | $87,000 | $116,566 | $140,000 | $350,900 |
| 2000 Net Income (Private Practitioners Only) | 80 | $61,125 | $92,500 | $119,730 | $149,250 | $366,500 |
| 2001 Hourly Billing Rate | 80 | $125 | $175 | $175 | $200 | $316 |
| **Work Week** | | | | | | |
| **Hours in the Work Week and Year** | | | | | | |
| Total billable hours | 90 | 29 | 35 | 52 | 45 | 67 |
| Based on hourly rate | 57 | 15 | 25 | 50 | 35 | 46 |
| Based on flat rate | 29 | 5 | 10 | 17 | 27 | 58 |
| Based on contingency work | 30 | 4 | 16 | 18 | 29 | 65 |
| Office Administration | 81 | 2 | 5 | 6 | 6 | 22 |
| Marketing Activities | 47 | 1 | 3 | 14 | 7 | 32 |
| Non-billable community/public service | 51 | 1 | 3 | 7 | 6 | 20 |
| Non-legal employment/personal investments | 38 | 2 | 4 | 6 | 9 | 25 |
| Total Hours in Work Week | 94 | 40 | 47 | 70 | 55 | 79 |
| CLE Hours/Year | 71 | 12 | 17 | 21 | 24 | 85 |
| Unbilled (Pro Bono) Hours/Year | 50 | 10 | 19 | 30 | 46 | 100 |
| **Annual Salaries (Spring 2001)** | | | | | | |
| **Associates** | | | | | | |
| New hires without experience | 6 | $30,000 | $36,500 | $40,500 | $48,500 | $80,000 |
| With 3 years experience | 9 | 42,000 | 50,000 | 51,556 | 63,500 | 85,000 |
| With 5 years experience | 5 | 54,000 | 65,000 | 64,800 | 80,000 | 95,000 |
| With 10 years experience | – | – | – | – | – | – |
| **Legal Assistants (Paralegals)** | | | | | | |
| New hires without experience | 5 | 25,000 | 26,000 | 26,300 | 28,000 | 30,000 |
| With 3 years experience | 4 | 31,500 | 37,500 | 34,250 | 38,750 | 40,000 |
| With 5 years experience | – | – | – | – | – | – |
| With 10 years experience | – | – | – | – | – | – |
| **Secretaries** | | | | | | |
| New hires without experience | 4 | 23,750 | 32,000 | 27,250 | 35,000 | 38,000 |
| With 3 years experience | 6 | 25,250 | 27,500 | 27,167 | 28,500 | 30,000 |
| With 5 years experience | 8 | 28,500 | 30,000 | 29,125 | 30,750 | 32,000 |
| With 10 years experience | 11 | 31,000 | 33,667 | 32,323 | 38,000 | 40,000 |

Summary Data Displays

Appendix C    **Statistical Profile of OSBA Attorneys, Greater Columbus Area**

| Income & Hourly Billing Rate | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| 2000 Net Income (All Respondents) | 170 | $45,750 | $80,000 | $112,535 | $131,667 | $354,800 |
| 2000 Net Income (Private Practitioners Only) | 134 | $45,000 | $85,500 | $120,194 | $150,000 | $361,000 |
| 2001 Hourly Billing Rate | 134 | $136 | $174 | $178 | $200 | $314 |

**Work Week**

**Hours in the Work Week and Year**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| Total billable hours | 156 | 27 | 35 | 35 | 40 | 57 |
| Based on hourly rate | 102 | 18 | 25 | 141 | 35 | 54 |
| Based on flat rate | 43 | 5 | 10 | 14 | 20 | 48 |
| Based on contingency work | 36 | 5 | 9 | 17 | 35 | 51 |
| Office Administration | 144 | 4 | 5 | 8 | 10 | 20 |
| Marketing Activities | 85 | 1 | 2 | 4 | 5 | 10 |
| Non-billable community/public service | 102 | 2 | 3 | 6 | 5 | 28 |
| Non-legal employment/personal investments | 59 | 2 | 5 | 8 | 10 | 68 |
| Total Hours in Work Week | 165 | 40 | 48 | 49 | 57 | 79 |
| CLE Hours/Year | 132 | 12 | 15 | 17 | 20 | 34 |
| Unbilled (Pro Bono) Hours/Year | 87 | 12 | 27 | 43 | 50 | 163 |

**Annual Salaries (Spring 2001)**

**Associates**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | 15 | $35,833 | $45,000 | $50,600 | $82,500 | $90,000 |
| With 3 years experience | 15 | 39,500 | 48,333 | 53,000 | 80,000 | 100,000 |
| With 5 years experience | 9 | 58,000 | 60,000 | 70,333 | 92,500 | 125,000 |
| With 10 years experience | 11 | 63,750 | 80,000 | 93,182 | 125,000 | 180,000 |

**Legal Assistants (Paralegals)**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | 6 | 19,000 | 28,000 | 26,667 | 31,250 | 35,000 |
| With 3 years experience | 8 | 28,500 | 33,500 | 30,500 | 34,750 | 36,000 |
| With 5 years experience | 8 | 35,250 | 41,000 | 51,125 | 44,250 | 48,000 |
| With 10 years experience | 12 | 34,917 | 41,000 | 40,333 | 45,750 | 48,000 |

**Secretaries**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | 19 | 20,500 | 24,333 | 22,632 | 31,000 | 37,500 |
| With 3 years experience | 17 | 25,000 | 30,000 | 29,029 | 34,000 | 36,000 |
| With 5 years experience | 11 | 29,000 | 34,500 | 31,909 | 35,833 | 36,000 |
| With 10 years experience | 21 | 29,000 | 34,333 | 34,000 | 38,500 | 59,000 |

Appendix D    **Statistical Profile of OSBA Attorneys, Greater Dayton Area**

| Income & Hourly Billing Rate | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| 2000 Net Income (All Respondents) | 47 | $48,125 | $67,500 | $98,821 | $97,813 | $286,400 |
| 2000 Net Income (Private Practitioners Only) | 38 | $46,500 | $69,000 | $105,882 | $119,500 | $325,700 |
| 2001 Hourly Billing Rate | 38 | $141 | $165 | $165 | $189 | $250 |

**Work Week**

**Hours in the Work Week and Year**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| Total billable hours | 44 | 30 | 36 | 36 | 44 | 54 |
| Based on hourly rate | 29 | 15 | 28 | 27 | 39 | 48 |
| Based on flat rate | 15 | 7 | 20 | 17 | 32 | 40 |
| Based on contingency work | 13 | 4 | 5 | 12 | 28 | 30 |
| Office Administration | 40 | 3 | 5 | 6 | 9 | 20 |
| Marketing Activities | 27 | 1 | 4 | 4 | 5 | 9 |
| Non-billable community/public service | 31 | 2 | 3 | 4 | 7 | 9 |
| Non-legal employment/personal investments | 22 | 1 | 3 | 5 | 7 | 36 |
| Total Hours in Work Week | 46 | 38 | 46 | 46 | 58 | 66 |
| CLE Hours/Year | 36 | 12 | 15 | 25 | 28 | 122 |
| Unbilled (Pro Bono) Hours/Year | 30 | 10 | 20 | 45 | 58 | 263 |

**Annual Salaries (Spring 2001)**

**Associates**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | – | – | – | – | – | – |
| With 3 years experience | – | – | – | – | – | – |
| With 5 years experience | – | – | – | – | – | – |
| With 10 years experience | – | – | – | – | – | – |

**Legal Assistants (Paralegals)**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | – | – | – | – | – | – |
| With 3 years experience | – | – | – | – | – | – |
| With 5 years experience | – | – | – | – | – | – |
| With 10 years experience | 4 | $37,875 | $48,750 | $43,250 | $49,375 | $50,000 |

**Secretaries**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | 7 | 20,530 | 24,000 | 24,151 | 29,000 | 35,000 |
| With 3 years experience | 5 | 21,000 | 24,000 | 24,400 | 29,500 | 35,000 |
| With 5 years experience | 5 | 22,000 | 26,000 | 26,400 | 33,000 | 40,000 |
| With 10 years experience | 5 | 25,000 | 30,000 | 31,600 | 40,000 | 50,000 |

Summary Data Displays

Appendix E **Statistical Profile of OSBA Attorneys, Northeast Region (Canton, Akron, Youngstown and Northeastern Cities)**

| Income & Hourly Billing Rate | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| 2000 Net Income (All Respondents) | 185 | $37,750 | $61,030 | $89,644 | $102,750 | $289,500 |
| 2000 Net Income (Private Practitioners Only) | 146 | $38,500 | $69,167 | $96,576 | $108,750 | $317,000 |
| 2001 Hourly Billing Rate | 146 | $115 | $126 | $139 | $150 | $230 |

**Work Week**

**Hours in the Work Week and Year**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| Total billable hours | 161 | 30 | 35 | 36 | 40 | 60 |
| Based on hourly rate | 111 | 15 | 21 | 26 | 31 | 57 |
| Based on flat rate | 76 | 5 | 10 | 13 | 17 | 40 |
| Based on contingency work | 65 | 5 | 10 | 16 | 25 | 58 |
| Office Administration | 138 | 2 | 5 | 6 | 8 | 17 |
| Marketing Activities | 62 | 1 | 2 | 3 | 5 | 10 |
| Non-billable community/public service | 106 | 2 | 3 | 5 | 5 | 20 |
| Non-legal employment/personal investments | 70 | 2 | 4 | 7 | 7 | 45 |
| Total Hours in Work Week | 176 | 40 | 45 | 47 | 55 | 71 |
| CLE Hours/Year | 143 | 12 | 18 | 21 | 24 | 59 |
| Unbilled (Pro Bono) Hours/Year | 96 | 15 | 26 | 59 | 95 | 301 |

**Annual Salaries (Spring 2001)**

**Associates**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | 10 | $23,500 | $32,500 | $31,262 | $47,500 | $50,000 |
| With 3 years experience | 9 | 35,000 | 50,000 | 50,757 | 72,900 | 90,000 |
| With 5 years experience | 7 | 32,500 | 55,000 | 48,571 | 75,000 | 80,000 |
| With 10 years experience | 6 | 62,750 | 95,000 | 83,833 | 105,000 | 120,000 |

**Legal Assistants (Paralegals)**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | 9 | 17,667 | 20,000 | 20,833 | 25,000 | 30,000 |
| With 3 years experience | 7 | 19,500 | 26,000 | 24,303 | 29,120 | 38,000 |
| With 5 years experience | 8 | 21,750 | 25,500 | 30,220 | 29,000 | 75,000 |
| With 10 years experience | 7 | 23,500 | 28,000 | 29,286 | 30,000 | 50,000 |

**Secretaries**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | 19 | 14,500 | 18,000 | 18,348 | 24,553 | 32,000 |
| With 3 years experience | 16 | 17,500 | 20,750 | 21,170 | 24,625 | 44,000 |
| With 5 years experience | 26 | 19,125 | 22,250 | 22,498 | 25,875 | 39,138 |
| With 10 years experience | 37 | 20,000 | 25,000 | 25,271 | 30,000 | 44,450 |

Appendix F    **Statistical Profile of OSBA Attorneys, Northwest Region (Toledo and Northwestern Cities)**

| Income & Hourly Billing Rate | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| 2000 Net Income (All Respondents) | 110 | $45,500 | $76,000 | $86,937 | $118,000 | $230,000 |
| 2000 Net Income (Private Practitioners Only) | 94 | $47,500 | $77,500 | $89,394 | $129,625 | $263,750 |
| 2001 Hourly Billing Rate | 94 | $100 | $125 | $133 | $150 | $217 |

**Work Week**

**Hours in the Work Week and Year**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| Total billable hours | 99 | 30 | 33 | 35 | 41 | 58 |
| Based on hourly rate | 67 | 10 | 20 | 22 | 31 | 44 |
| Based on flat rate | 40 | 7 | 13 | 15 | 22 | 40 |
| Based on contingency work | 36 | 5 | 10 | 15 | 24 | 50 |
| Office Administration | 91 | 2 | 4 | 5 | 10 | 16 |
| Marketing Activities | 39 | 1 | 2 | 3 | 5 | 8 |
| Non-billable community/public service | 69 | 2 | 3 | 5 | 5 | 30 |
| Non-legal employment/personal investments | 46 | 1 | 3 | 6 | 5 | 30 |
| Total Hours in Work Week | 106 | 40 | 45 | 46 | 52 | 70 |
| CLE Hours/Year | 85 | 14 | 20 | 20 | 25 | 37 |
| Unbilled (Pro Bono) Hours/Year | 57 | 10 | 30 | 48 | 52 | 205 |

**Annual Salaries (Spring 2001)**

**Associates**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | – | – | – | – | – | – |
| With 3 years experience | – | – | – | – | – | – |
| With 5 years experience | – | – | – | – | – | – |
| With 10 years experience | – | – | – | – | – | – |

**Legal Assistants (Paralegals)**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | – | – | – | – | – | – |
| With 3 years experience | – | – | – | – | – | – |
| With 5 years experience | – | – | – | – | – | – |
| With 10 years experience | 4 | $33,750 | $42,950 | $37,725 | $44,425 | $45,900 |

**Secretaries**

| | N | 25th | Median | Mean (Avg.) | 75th | 95th |
|---|---|---|---|---|---|---|
| New hires without experience | 9 | 13,000 | 16,000 | 14,778 | 17,500 | 24,000 |
| With 3 years experience | 10 | 14,809 | 19,925 | 18,578 | 23,250 | 26,000 |
| With 5 years experience | 12 | 19,790 | 24,667 | 23,672 | 30,000 | 30,000 |
| With 10 years experience | 18 | 20,750 | 26,150 | 24,685 | 30,000 | 34,000 |

Summary Data Displays

| Appendix G | **Statistical Profile of OSBA Attorneys, Southern Region (Southeast, Southwest and Central Regions)** | | | | | |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| **Income & Hourly Billing Rate** | **N** | **25th** | **Median** | **Mean (Avg.)** | **75th** | **95th** |
| 2000 Net Income (All Respondents) | 139 | $43,750 | $74,333 | $83,101 | $109,167 | $182,250 |
| 2000 Net Income (Private Practitioners Only) | 109 | $44,000 | $80,000 | $87,424 | $120,000 | $236,600 |
| 2001 Hourly Billing Rate | 109 | $115 | $125 | $133 | $150 | $197 |
| **Work Week** | | | | | | |
| **Hours in the Work Week and Year** | | | | | | |
| Total billable hours | 120 | 27 | 35 | 35 | 41 | 57 |
| Based on hourly rate | 76 | 15 | 20 | 24 | 30 | 63 |
| Based on flat rate | 65 | 5 | 15 | 18 | 30 | 44 |
| Based on contingency work | 39 | 4 | 5 | 9 | 15 | 35 |
| Office Administration | 110 | 2 | 5 | 6 | 8 | 18 |
| Marketing Activities | 51 | 1 | 1 | 3 | 5 | 10 |
| Non-billable community/public service | 86 | 2 | 3 | 4 | 5 | 18 |
| Non-legal employment/personal investments | 51 | 1 | 4 | 7 | 9 | 10 |
| Total Hours in Work Week | 126 | 40 | 48 | 47 | 54 | 68 |
| CLE Hours/Year | 108 | 12 | 22 | 22 | 25 | 48 |
| Unbilled (Pro Bono) Hours/Year | 74 | 18 | 29 | 54 | 52 | 373 |
| **Annual Salaries (Spring 2001)** | | | | | | |
| **Associates** | | | | | | |
| New hires without experience | 8 | $29,825 | $34,500 | $68,325 | $38,750 | $315,000 |
| With 3 years experience | 4 | 33,750 | 50,000 | 41,250 | 52,500 | 55,000 |
| With 5 years experience | 5 | 45,000 | 65,000 | 59,000 | 75,000 | 75,000 |
| With 10 years experience | 6 | 45,250 | 49,750 | 49,667 | 53,750 | 65,000 |
| **Legal Assistants (Paralegals)** | | | | | | |
| New hires without experience | 4 | 26,670 | 29,000 | 27,390 | 29,500 | 30,000 |
| With 3 years experience | 4 | 17,000 | 30,780 | 23,890 | 32,390 | 34,000 |
| With 5 years experience | 5 | 25,000 | 30,500 | 28,108 | 33,250 | 36,000 |
| With 10 years experience | 8 | 26,125 | 33,500 | 31,188 | 37,250 | 40,000 |
| **Secretaries** | | | | | | |
| New hires without experience | 17 | 15,667 | 20,800 | 18,842 | 24,000 | 25,000 |
| With 3 years experience | 16 | 16,750 | 19,500 | 20,313 | 24,750 | 28,000 |
| With 5 years experience | 17 | 19,333 | 23,267 | 22,024 | 27,000 | 30,000 |
| With 10 years experience | 33 | 22,500 | 26,667 | 27,020 | 30,000 | 41,800 |

Appendix H     **Perceptions on the Current Economic Circumstance of Law Practice in Ohio, June 2001**

| | N | Compared to last year, the economic circumstances of law are: | | |
| | | Better | Worse | Same |
|---|---|---|---|---|
| All Attorneys | 852 | 16.9% | 26.0% | 57.2% |
| Cleveland (Downtown) | 75 | 13.9 | 35.4 | 50.6 |
| Cleveland (Suburban) | 58 | 13.6 | 37.3 | 49.2 |
| Cincinnati (Downtown) | 68 | 21.7 | 29.0 | 49.3 |
| Cincinnati (Suburban) | 25 | 16.0 | 28.0 | 56.0 |
| Columbus (Downtown) | 100 | 11.9 | 28.7 | 59.4 |
| Columbus (Suburban) | 62 | 27.4 | 12.9 | 59.7 |
| Dayton | 45 | 6.4 | 31.9 | 61.7 |
| Canton | 15 | 23.5 | 29.4 | 47.1 |
| Akron | 45 | 19.0 | 31.0 | 50.0 |
| Toledo | 56 | 19.6 | 23.2 | 57.1 |
| Youngstown | 14 | 14.3 | 14.3 | 71.4 |
| Northeast Region | 107 | 15.2 | 31.4 | 53.3 |
| Northwest Region | 52 | 11.3 | 15.1 | 73.6 |
| Southeast Region | 40 | 28.2 | 15.4 | 56.4 |
| Southwest Region | 59 | 16.7 | 20.0 | 63.3 |
| Central Region | 31 | 18.2 | 9.1 | 72.7 |
| **Organization Size (# of Attorneys)** | | | | |
| 1 | 260 | 18.1 | 22.3 | 59.6 |
| 2–5 | 229 | 21.4 | 25.8 | 52.8 |
| 6–20 | 153 | 14.4 | 24.8 | 60.8 |
| more than 20 | 150 | 12.0 | 32.7 | 55.3 |
| **Years In Practice** | | | | |
| 5 or less | 137 | 21.9 | 20.4 | 57.7 |
| 6–10 | 94 | 22.3 | 24.5 | 53.2 |
| 11–15 | 103 | 21.4 | 22.3 | 56.3 |
| 16–25 | 258 | 16.3 | 29.1 | 54.7 |
| more than 25 | 269 | 11.2 | 27.5 | 61.3 |
| **Legal Classification** | | | | |
| Sole practitioner | 242 | 16.9 | 23.6 | 59.5 |
| Sole practitioner with 1 or more associates | 43 | 41.9 | 23.3 | 34.9 |
| Sole practitioner sharing space | 64 | 14.1 | 40.6 | 45.3 |
| Partner in firm with 2–7 partners | 158 | 20.3 | 20.3 | 59.5 |
| Partner in firm with 8 or more partners | 85 | 11.8 | 34.1 | 54.1 |
| Associate in firm with 2–7 partners | 60 | 18.3 | 26.7 | 55.0 |
| Associate in firm with 8 or more partners | 59 | 11.9 | 35.6 | 52.5 |
| City/State/County | 54 | 33.3 | 33.3 | 33.3 |
| House counsel | 56 | 14.3 | 21.4 | 64.3 |
| Counsel with legal aid/legal service agency | 14 | – | 21.4 | 78.6 |

Summary Data Displays

| | | | Next year, the economic circumstances of law will be: | | |
|---|---|---|---|---|
| | **N** | **Better** | **Worse** | **Same** |
| All Attorneys | 852 | 18.9% | 19.7% | 61.4% |
| Cleveland (Downtown) | 75 | 20.0 | 21.3 | 58.7 |
| Cleveland (Suburban) | 58 | 20.7 | 27.6 | 51.7 |
| Cincinnati (Downtown) | 68 | 13.2 | 25.0 | 61.8 |
| Cincinnati (Suburban) | 25 | 16.0 | 20.0 | 64.0 |
| Columbus (Downtown) | 100 | 18.0 | 24.0 | 58.0 |
| Columbus (Suburban) | 62 | 24.2 | 9.7 | 66.1 |
| Dayton | 45 | 13.3 | 24.4 | 62.2 |
| Canton | 15 | 26.7 | 33.3 | 40.0 |
| Akron | 45 | 17.8 | 31.1 | 51.1 |
| Toledo | 56 | 21.4 | 16.1 | 62.5 |
| Youngstown | 14 | 7.1 | 14.3 | 78.6 |
| Northeast Region | 107 | 17.8 | 23.4 | 58.9 |
| Northwest Region | 52 | 19.2 | 17.3 | 63.5 |
| Southeast Region | 40 | 25.0 | 5.0 | 70.0 |
| Southwest Region | 59 | 18.6 | 6.8 | 74.6 |
| Central Region | 31 | 22.6 | 12.9 | 64.5 |
| **Organization Size (# of Attorneys)** | | | | |
| 1 | 255 | 22.7 | 16.9 | 60.4 |
| 2–5 | 229 | 19.7 | 18.8 | 61.6 |
| 6–20 | 151 | 17.9 | 19.9 | 62.3 |
| more than 20 | 149 | 16.1 | 23.5 | 60.4 |
| **Years In Practice** | | | | |
| 5 or less | 134 | 26.1 | 14.2 | 59.7 |
| 6–10 | 91 | 18.7 | 17.6 | 63.7 |
| 11–15 | 106 | 16.0 | 20.8 | 63.2 |
| 16–25 | 256 | 17.6 | 23.4 | 59.0 |
| more than 25 | 265 | 17.4 | 18.9 | 63.8 |
| **Legal Classification** | | | | |
| Sole practitioner | 237 | 21.9 | 18.6 | 59.5 |
| Sole practitioner with 1 or more associates | 44 | 34.1 | 20.5 | 45.5 |
| Sole practitioner sharing space | 65 | 16.9 | 24.6 | 58.5 |
| Partner in firm with 2–7 partners | 158 | 19.0 | 17.1 | 63.9 |
| Partner in firm with 8 or more partners | 85 | 17.6 | 23.5 | 58.8 |
| Associate in firm with 2–7 partners | 61 | 18.0 | 16.4 | 65.6 |
| Associate in firm with 8 or more partners | 56 | 23.2 | 25.0 | 51.8 |
| City/State/County | 52 | 15.4 | 11.5 | 73.1 |
| House counsel | 55 | 9.1 | 25.5 | 65.5 |
| Counsel with legal aid/legal service agency | 15 | 6.7 | 13.3 | 80.0 |

Appendix I    **Perceptions on Future Economic Conditions of Law Practice in Ohio, June 2001**

| Appendix J | | **Perceptions on the Current Supply of Lawyers In Ohio, June 2001** | | |
|---|---|---|---|---|
| | | The number of lawyers in the community in which I practice is: | | |
| | **N** | **About right** | **Too many** | **Too few** |
| All Attorneys | 869 | 50.5% | 47.3% | 2.3% |
| Cleveland (Downtown) | 79 | 35.4 | 63.3 | 1.3 |
| Cleveland (Suburban) | 59 | 39.0 | 61.0 | – |
| Cincinnati (Downtown) | 68 | 30.9 | 67.6 | 1.5 |
| Cincinnati (Suburban) | 25 | 60.0 | 36.0 | 4.0 |
| Columbus (Downtown) | 101 | 45.5 | 53.5 | 1.0 |
| Columbus (Suburban) | 61 | 59.0 | 39.3 | 1.6 |
| Dayton | 47 | 31.9 | 68.1 | – |
| Canton | 17 | 47.1 | 52.9 | – |
| Akron | 46 | 41.3 | 58.7 | – |
| Toledo | 56 | 44.6 | 55.4 | – |
| Youngstown | 14 | 28.6 | 71.4 | – |
| Northeast Region | 106 | 65.1 | 31.1 | 3.8 |
| Northwest Region | 52 | 69.2 | 28.8 | 1.9 |
| Southeast Region | 43 | 65.1 | 20.9 | 14.0 |
| Southwest Region | 61 | 65.6 | 31.1 | 3.3 |
| Central Region | 34 | 73.5 | 20.6 | 5.9 |
| **Organization Size (# of Attorneys)** | | | | |
| 1 | 260 | 50.8 | 46.5 | 2.7 |
| 2–5 | 231 | 54.1 | 43.3 | 2.6 |
| 6–20 | 154 | 51.3 | 48.1 | 0.6 |
| more than 20 | 154 | 46.8 | 50.6 | 2.6 |
| **Years In Practice** | | | | |
| 5 or less | 140 | 66.4 | 32.1 | 1.4 |
| 6–10 | 95 | 54.7 | 43.2 | 2.1 |
| 11–15 | 106 | 57.5 | 38.7 | 3.8 |
| 16–25 | 257 | 47.1 | 49.4 | 3.5 |
| more than 25 | 271 | 41.7 | 57.2 | 1.1 |
| **Legal Classification** | | | | |
| Sole practitioner | 241 | 50.2 | 46.9 | 2.9 |
| Sole practitioner with 1 or more associates | 43 | 53.5 | 46.5 | – |
| Sole practitioner sharing space | 65 | 47.7 | 52.3 | – |
| Partner in firm with 2–7 partners | 158 | 48.1 | 47.5 | 4.4 |
| Partner in firm with 8 or more partners | 84 | 35.7 | 64.3 | – |
| Associate in firm with 2–7 partners | 62 | 59.7 | 40.3 | – |
| Associate in firm with 8 or more partners | 59 | 57.6 | 42.4 | – |
| City/State/County | 56 | 53.5 | 46.5 | – |
| House counsel | 58 | 48.1 | 47.5 | 4.4 |
| Counsel with legal aid/legal service agency | 17 | 35.7 | 64.3 | – |

Summary Data Displays

| | Appendix K | **Perceptions on the Current Demand for Legal Services in Ohio, June 2001** | | |
|---|---|---|---|---|

| | | The quantity of my legal work is: | | |
|---|---|---|---|---|
| | **N** | **Insufficient** | **All I can handle** | **More than I prefer** |
| All Attorneys | 872 | 14.8% | 58.6% | 26.6% |
| Cleveland (Downtown) | 79 | 20.3 | 55.7 | 24.1 |
| Cleveland (Suburban) | 60 | 30.0 | 43.3 | 26.7 |
| Cincinnati (Downtown) | 70 | 17.1 | 58.6 | 24.3 |
| Cincinnati (Suburban) | 24 | 25.0 | 54.2 | 20.8 |
| Columbus (Downtown) | 103 | 13.6 | 63.1 | 23.3 |
| Columbus (Suburban) | 63 | 9.5 | 61.9 | 28.6 |
| Dayton | 46 | 15.2 | 65.2 | 19.6 |
| Canton | 17 | 29.4 | 47.1 | 23.5 |
| Akron | 46 | 13.0 | 63.0 | 23.9 |
| Toledo | 56 | 19.6 | 62.5 | 17.9 |
| Youngstown | 14 | – | 71.4 | 28.6 |
| Northeast Region | 106 | 15.1 | 58.5 | 26.4 |
| Northwest Region | 53 | 3.8 | 67.9 | 28.3 |
| Southeast Region | 41 | 9.8 | 46.3 | 43.9 |
| Southwest Region | 60 | 11.7 | 58.3 | 30.0 |
| Central Region | 34 | – | 52.9 | 47.1 |
| **Organization Size (# of Attorneys)** | | | | |
| 1 | 257 | 22.6 | 53.7 | 23.7 |
| 2–5 | 233 | 10.3 | 60.1 | 29.6 |
| 6–20 | 156 | 10.9 | 62.2 | 26.9 |
| more than 20 | 156 | 11.5 | 63.5 | 25.0 |
| **Years In Practice** | | | | |
| 5 or less | 143 | 14.0 | 65.0 | 21.0 |
| 6–10 | 92 | 13.0 | 64.1 | 22.8 |
| 11–15 | 107 | 14.0 | 55.1 | 30.8 |
| 16–25 | 261 | 11.1 | 57.9 | 31.0 |
| more than 25 | 268 | 19.8 | 54.9 | 25.4 |
| **Legal Classification** | | | | |
| Sole practitioner | 241 | 22.8 | 51.9 | 25.3 |
| Sole practitioner with 1 or more associates | 43 | 7.0 | 55.8 | 37.2 |
| Sole practitioner sharing space | 65 | 21.5 | 58.5 | 20.0 |
| Partner in firm with 2–7 partners | 159 | 8.8 | 57.9 | 33.3 |
| Partner in firm with 8 or more partners | 84 | 14.3 | 61.9 | 23.8 |
| Associate in firm with 2–7 partners | 62 | 14.5 | 66.1 | 19.4 |
| Associate in firm with 8 or more partners | 61 | 6.6 | 72.1 | 21.3 |
| City/State/County | 57 | 21.1 | 56.1 | 22.8 |
| House counsel | 59 | 3.4 | 57.6 | 39.0 |
| Counsel with legal aid/legal service agency | 16 | 6.3 | 50.0 | 43.8 |

# Exhibit 3
# FUCHS AFFIDAVIT

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **SCOTT D. DALESANDRO, *et al.*,**<br>**On behalf of themselves and all**<br>**others similarly situated,** | ) <br> ) <br> ) <br> ) | **Case No. C-1-01-109** <br><br> **Judge Sandra S. Beckwith** |
| **Plaintiff,** | ) <br> ) | **AFFIDAVIT OF JACK F. FUCHS,** |
| **vs.** | ) <br> ) | **ESQ.** |
| **THE INTERNATIONAL PAPER**<br>**COMPANY,** | ) <br> ) | |
| **Defendants.** | ) | |

State of Ohio )
) ss:
County of Hamilton )

I, Jack F. Fuchs, Esq., after first being duly sworn upon my oath, state as follows:

1.       I make this affidavit upon personal knowledge. I am a partner with the law firm

of Thompson Hine LLP. Thompson Hine LLP is a national law firm. Thompson Hine LLP has

approximately 360 attorneys with offices in Brussels, Belgium, Cincinnati, Cleveland, Columbus

and Dayton, Ohio, and Washington, D.C.

2.       I received my B.A. from the University of Chicago in 1974, my M.A. from the

University of Cincinnati in 1976, and my J.D. from the University of Cincinnati Law School in

1982. While in law school, I was an articles editor of the University of Cincinnati Law Review

and a member of the Order of the Coif.

3.       Upon graduating from law school, I clerked for the late Honorable John W. Peck

of the United States Court of Appeals for the Sixth Circuit.

4.       I am licensed to practice law in the state of Ohio and the Commonwealth of

Kentucky. I am admitted to practice in the United States District Courts for the Southern and

Northern Districts of Ohio, the Eastern and Western Districts of Kentucky, and the Southern

District of Indiana.  I am admitted to practice in the United States Courts of Appeals for the First,

Third, Fourth, Fifth and Sixth Circuits.  I have appeared *pro hac vice* in numerous other courts

including *inter alia* the Arkansas Supreme Court, the New Jersey Court of Appeals, the United

States District Courts for the Middle and Western Districts of Pennsylvania and the District of

Maryland, and the United States Bankruptcy Courts for the District of Columbia and the District

of Maryland.  I have been qualified to testify as an expert on attorney fees and on settlements in

both state and federal courts.  I am rated *av* by Martindale-Hubble and have been cited in *Who's

Who in America* and *Who's Who in American Law*.

5.       I concentrate my practice on commercial litigation, with an emphasis on fiduciary

issues including employee benefits litigation.  From 1989 through 1996, I was a member of the

Blue Chip Savings Bank board of directors and from 1991 through 1996 a member of its ESOP

committee.

6.       Among my publications is *Federalizing State Law Tort & Contract Claims: The

Scope of ERISA Preemption*, 39 Fed. Bar News & J. 582 (1992).  Among the seminars that I

have given are:

a.       *ERISA Claims and Litigation in Ohio*, Lorman (Nov. 10, 2000);

b.       *Life After Great-West: Subrogation in ERISA Actions*, Kentucky CLE (KATA
         May 29, 2002);

c.       *Who Is the Client?* Sixteenth Annual Cincinnati Employee Benefits IRS
         Conference (June 2003); and,

d.       *Litigation Issues for Planners and Advisors*, International Association of
         Financial Planners (Feb. 4, 1994).

7.    I have handled numerous litigations involving issues arising under the Employee

Retirement Income Security Act of 1974, as amended ("ERISA").  The following is a partial list

of ERISA cases in which I have appeared as counsel:

a.    *Varhola v. Doe*, 820 F.2d 809 (6th Cir. 1987) (successful defense of plan trustees on ERISA interference and breach of fiduciary duty class claims)

b.    *Hardy v. Midland Enterprises, Inc.*, 66 Fed. Appx. 535, 2003 U.S. App. LEXIS 8426 (6th Cir. Apr. 30, 2003) (affirming summary judgment for client on ERISA retiree health claims), *aff'g*, C-1-00-455 (S.D. Ohio Oct. 15, 2001)

c.    *Washburn v. UNUM Life Ins. Co.*, 2000 U.S. App. LEXIS 6481 (6th Cir. 2000) (affirmance of judgment for client on ERISA claims), *aff'g*, 43 F. Supp. 2d 848 (S.D. Ohio 1998) (summary judgment for fiduciary on ERISA § 510 claim)

d.    *Torello v. UNUM Life Ins. Co.*, 1999 U.S. App. LEXIS 32228 (6th Cir. 1999) (affirmance of judgment for client on ERISA claims involving issues of late notice), *rehearing & rehearing en banc denied*, (6th Cir. 2000)

e.    *Tolton v. Ohio Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1994) (affirmance of defense judgment for managed mental health care company and providers on claims of malpractice and wrongful denial of benefits under ERISA preemption analysis), *aff'g*, 854 F. Supp. 505 (N.D. Ohio 1993) (summary judgment for managed mental health care client)

f.    *Metropolitan Life Ins. Co. v. Cronenwett*, 162 F. Supp. 2d 889 (S.D. Ohio 2001) (dismissal of client fiduciary in ERISA action)

g.    *Shepherd v. Babcock & Wilcox Co.*, C-3-98-391 (S.D. Ohio 2001) (dismissal via nominal settlement of action filed on behalf of putative classes for alleged violations of ERISA § 510 involving retiree benefits upon reduction in force at Department of Energy facility; no class certified)

h.    *Berner v. The Little Tikes Co.*, No. 1:CV-99-0679 (M.D. Pa. 2000) (denial of motion to certify class and grant of motion to dismiss ERISA class claim in action against client arising from closure of plant)

i.    *Mitchell v. First UNUM Life Ins. Co.*, 65 F. Supp. 2d 686 (S.D. Ohio 1998) (summary judgment on ERISA fiduciary duty and benefits claims for client fiduciary)

j.    *Kentucky Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755 (W.D. Ky. 1998) (partial summary judgment

for client on class action tobacco, including ERISA, claims which ultimately led to voluntary dismissal by plaintiffs)

k.   *Kunath v. Academy of Medicine*, No. 93-49 (E.D. Ky. 1995) (dismissal of class action claims against client insurer in ERISA case)

l.   *Stozich v. Tower Place Ltd. Partnership*, No. C-1-93-509 (S.D. Ohio Mar. 11, 1994) (recognizing undersigned as "competent class counsel" in action removed to district court under ERISA that involved challenge to state prevailing wage law)

m.   *Campensa v. Blue Cross & Blue Shield of Northern Ohio*, Case No. 1:92CV0230 (N.D. Ohio 1993) (summary judgment for client on ERISA preemption grounds)

n.   *Chao v. RADAC Corp.*, No. 2000-52 (E.D. Ky. 2002) (settled DOL claims of ERISA breach of fiduciary duty with express denial of liability in settlement agreement filed with court and no expense paid by defendants out of pocket)

o.   *Brown v. Long Term Disability Plan*, No. C-3-98-252 (S.D. Ohio 1999) (granting partial summary judgment for plan on ERISA disability benefits claim filed)

o.   *Triplett v. Blue Cross & Blue Shield of Missouri*, No. 1:92-cv-00741 (S.D. Ohio 1993) (granting summary judgment on bulk of ERISA benefits claims).

Among the ERISA cases in which I am currently counsel of record are *Clevenger v. Dillard's Department Stores, Inc.*, No.C-1-02-588 (S.D. Ohio) (trial counsel for defendants in ERISA putative class action, which is currently stayed pending remand to administrator due to failure of plaintiff's counsel to exhaust administrative remedies), *Kurtz v. Broadwing Inc.*, No. C-1-02-0857 (S.D. Ohio) (trial counsel for directed trustee in multiple putative ERISA class actions awaiting on ruling on consolidation), *Anderson v. The Cincinnati Gas & Elec. Co.*, No. C-1-02-160 (S.D. Ohio) (trial counsel for defendant in ERISA § 510 claim), and *Henry v. UNUM Life Ins. Co.*, No. C-2-02-9222 (S.D. Ohio) (trial counsel for claims administrator in ERISA § 502(a)(1)(B) claim).

8.   I previously have been retained to provide expert testimony relating to fees in ERISA litigation.  In *Solutia Inc. v. Forsberg*, 3:98cv237 RV\SMN (N.D. Fla. 2002), I was

retained on behalf of Solutia in an ERISA retiree health class action to review the fees of class

counsel and to provide an independent opinion regarding the propriety of the fees claimed.

Additionally, I have counseled clients regarding the termination of benefit plans and the

amendment of plans prior to the sale of a company's division or plant.  From these and other

ERISA-related representations, I am familiar with the fees charged by counsel engaged in

ERISA litigation on both a local and a national basis.

9.    In addition to the ERISA cases identified above, I have handled a number of other

class actions or actions that were sought to be certified as class actions.  Among these cases are

the following:

a.    *Carr v. Countrymark Cooperative, Inc.*, No. C2-96-1246, 1998 U.S. Dist. LEXIS 23000 (S.D. Ohio 1998)

b.    *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (1990)

c.    *Bell v. Straight, Inc.*, 707 F. Supp 325 (S.D. Ohio 1989)

d.    *Harris v. Alexander Grant & Co.*, 61 Ohio App. 3d 172, 572 N.E.2d 226 (1990).

In *Bell*, I was appointed plaintiffs' class counsel with Gerald Simmons, Esq. to pursue recovery

in a *cy pres* action.  In *Harris*, I was appointed class counsel to represent a defendant class of

partners of an accounting firm.  In *Carr*, I was lead defense counsel in an action that ultimately

was not certified as a class.  In the *WPPSS* class litigation, I represented a defendant that was

ultimately dismissed.

10.    My preferred rate is the ordinary rate (without a discount) that I charge to clients

in ERISA actions.  Certain clients, usually insurance companies in ERISA benefits actions, have

received a discount from my preferred rates. My preferred rate (*i.e.*, my ordinary rate without a

discount) for handling ERISA cases in 2001 was $245.00 per hour.  My preferred rate (*i.e.*, my

ordinary rate without a discount) for handling ERISA cases in 2002 was $250.00 per hour.   My current preferred rate (*i.e.*, my ordinary rate without a discount) for handling ERISA cases is $260.00 per hour.  I am charging $260.00 for my time in reviewing materials and preparing this affidavit.

11.    I have reviewed Plaintiffs' Motion for Attorney Fees, Expenses, Interest and Incentive Awards (with appendices) filed in the lawsuit captioned as *Dalesandro v. The International Paper Co.*, Case No. C-1-01-109 (S.D. Ohio).  I have also reviewed a draft of Defendant's Response.

12.    Based on my review of the *Dalesandro* materials listed above, my knowledge of my own rates and those of other ERISA litigators, and my years of experience as an ERISA litigator, it is my opinion that a reasonable hourly rate in this locale for a litigator having fifteen (15) or more years of ERISA litigation experience and representing one of the parties in *Dalesandro* would be in the range of $250 per hour in 2001, *i.e.*, from $225 to $275 per hour.  It is further my opinion that the reasonable hourly rate in subsequent years would increase by from $5.00 to $15.00 per year.

12.    Based on my review of the *Dalesandro* materials listed above, my knowledge of my own rates and those of other litigators in the field, and my years of experience as an ERISA litigator, it is my opinion that a reasonable hourly rate in this locale for a litigator having between eight (8) and ten (10) years of ERISA litigation experience and representing one of the parties in *Dalesandro* would be in the range of $200 per hour in 2001, *i.e*, from $175 to $225 per hour.  It is further my opinion that the reasonable hourly rate in subsequent years would increase by from $5.00 to $15.00 per year.

14.    Based on my review of the *Dalesandro* materials listed above, my knowledge of my own rates and those of other litigators in the field, and my years of experience as an ERISA litigator, it is my opinion that the hourly rates requested by plaintiffs' counsel are neither fair nor reasonable.  It is my opinion that the rates requested by plaintiffs' counsel are particularly excessive if, as appears from my review of the matters handled by plaintiffs' counsel in the Pacer database for the Southern District of Ohio, plaintiffs' counsel lacked significant prior ERISA litigation experience.

15.    Based on my review of the *Dalesandro* materials listed above, my knowledge of my own rates and those of other litigators in the field, and my years of experience as an ERISA litigator, it is my opinion that the hours charged by plaintiffs' counsel, and for which plaintiffs' counsel seeks recovery, are neither fair nor reasonable; rather, it is my opinion that those hours are excessive.

17.    Based upon my review of the *Dalesandro* materials listed above, and my years of experience as an ERISA litigator, it is my opinion that numerous attorneys and law firms, including attorneys and firms throughout the Midwest, could have provided thorough, effective, and proper representation to the plaintiffs in the *Dalesandro* litigation at hourly rates similar to mine.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____

Jack F. Fuchs

Subscribed and sworn to before me this 16th day of September, 2003.

_____

Notary Public

GERALD W SIMMONS, Attorney at Law
Notary Public, State of Ohio
My Commission has no expiration date
Section 147.03 R. C.

# Exhibit 4

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 1 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 57 of 181

Service:  **Get by LEXSEE®**
Citation:  **2003 us dist lexis 10386**

*2003 U.S. Dist. LEXIS 10386, \**

ANGLO-DANISH FIBRE INDUSTRIES, LTD., and CEMFIBER A/S, Plaintiffs, vs. COLUMBIAN ROPE CO., Defendant.

CASE NO: 01-2133-G/V

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

2003 U.S. Dist. LEXIS 10386

January 28, 2003, Decided
January 28, 2003, Filed; January 30, 2003, Entered

**DISPOSITION:  [\*1]**  Plaintiffs awarded attorney fees and denied award of expenses.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff patentees brought a patent infringement action against defendant alleged infringers regarding their sale of certain concrete-fiber products. Following a settlement agreement between the parties, the patentees requested attorney fees and expenses pursuant to 35 U.S.C.S. § 285.

**OVERVIEW:** The alleged infringer objected to the amount requested by the patentees for attorney fees and expenses claiming that the hourly rates requested by the patentees were excessive, and the patentees failed to substantiate a reasonable hourly rate for this community, that it did not agree to pay expenses, and that the patentees' request included excessive charges and charges for unnecessary work. The court initially held that it would apply the prevailing hourly rate in the venue where the case was tried, and that the patentees failed to meet their burden of showing that their requested rates for their law firm's partners were in line with that prevailing hourly rate. The court then held that the patentees were entitled to reasonable attorney fees except for time spent on issues for which the patentees withdrew their requests for compensation, for descriptions that were too vague for assessment of the reasonableness of hours expended in association with them, and for billing entries that were excessive or redundant. The court finally held that an award of reasonable expenses was not appropriate because the fee award was made pursuant to the parties' settlement agreement.

**OUTCOME:** The patentees' request for attorney fees was granted with certain reductions. The patentees' request for expenses was denied.

**CORE TERMS:** billing, settlement agreement, expended, vague, hourly rate, preparing, partner, excessive, billed, increment, compensable, hourly, phase, spent, settlement, padding, time spent, lodestar, email, memorandum, paralegal, minutes, patent infringement, mixed, reasonable attorney, work performed, total amount, disproportionate, reasonableness, reduction

### LexisNexis (TM) HEADNOTES - Core Concepts - ♦ Hide Concepts

Patent Law > Remedies > Costs & Attorney Fees
*HN1* ⊥ 35 U.S.C.S. § 285 governs attorney fees in a patent infringement

case.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
*HN2* In deciding what is a reasonable attorney fee, the starting point is the
determination of the lodestar amount, which is calculated by multiplying the
number of reasonable hours expended by a reasonable hourly rate for legal
services.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
*HN3* Under the lodestar method, a starting point for calculating attorney fees is the
determination of a reasonable hourly rate.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
*HN4* The United States Supreme Court recognizes the community market rule as the
proper way to determine a reasonable hourly rate for attorney fees. The community
market rule has the principal virtue of being the easiest way to cope with the
inherently problematic task of ascertaining a reasonable fee in a situation where
wide variations in skill and reputation render the usual laws of supply and demand
largely inappropriate. In applying the community market rule, the court looks to
rates for similar services in the community by attorneys with reasonably
comparable skills. The burden is on the fee applicant to produce satisfactory
evidence, in addition to the attorney's own affidavits, that the requested rates are
in line with those prevailing in the community.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
*HN5* It is within the court's discretion to calculate attorney fees based on a prevailing
hourly rate in the venue where the case is tried.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
*HN6* Once the court has determined the appropriate hourly rate for attorney fee
purposes, the court must then determine what number of hours were reasonable.
The lodestar method of calculation does not solve the problem of excessive hours.
It is within the court's discretion to reduce the total hours if they seem
unreasonable. The question is not whether a party prevailed on a particular motion,
nor whether, in hindsight, the time expended was strictly necessary to obtain relief
achieved; instead, the question is whether a reasonable attorney would believe the
work to be reasonably expended in pursuit of success at the time when the work
was performed.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
*HN7* Three very different kinds of issues can arise concerning excessive hours for
attorney fee purposes: (1) factual questions about whether the lawyer actually
worked the hours claimed or is padding the account; (2) legal questions about
whether the work performed is sufficiently related to the points on which the client
prevailed as to be compensable; (3) mixed questions about whether the lawyer
used poor judgment in spending too many hours on some part of the case or by
unnecessarily duplicating the work of co-counsel.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review
*HN8* A court's determination on the factual issues concerning excessive hours for
attorney fee purposes will be upheld unless it is clearly erroneous. A court's
determination on the legal issues, i.e., questions of compensability, are reviewed
for error. A court's determination on the mixed issues, i.e., questions of judgment,

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 3 of 66

Case 4:01-cv-00409-SBB    Document 49-2    Filed 09/16/2003    Page 59 of 181

will be upheld unless the court's interpretation of the profession's reasonable billing practices was arbitrary or irrational. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
HN9 The applicant for attorney fees has the burden of demonstrating the reasonableness of hours, and the opposing party has the burden of producing evidence against this reasonableness. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
HN10 Allegations against the reasonableness of attorney fees unsupported by evidence cannot justify a favorable ruling. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
HN11 The total hours spent preparing an attorney fee application are capped at three percent of the hours in the main case when the issue is submitted on the papers without a trial. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees
HN12 Attorney fees include all services in the preparation for and performance of legal services related to the suit. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees
HN13 The United States Supreme Court holds that attorneys' work, even if performed outside the traditional litigation context, is compensable as long as it is necessary to the attainment of adequate relief for the client. A reasonable amount of pre-suit investigation and client communication is necessary before a competent attorney can identify the alleged wrong, identify which of his client's rights were infringed, and craft an appropriate claim for relief. Accordingly, pre-suit hours are compensable to the extent that they reflect reasonable billing judgment. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
HN14 Attorneys must maintain billing time records that are sufficiently detailed to enable the courts to review the reasonableness of the hours expended. Where records are ambiguous, courts should not apply any presumption in favor of the party seeking the fee. To the contrary, entries that provide little guidance in ascertaining the purpose of the work during the time claimed do not merit an award. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
HN15 The court should exclude from its attorney fee calculation hours that are excessive, redundant, or otherwise unnecessary. A court may deny compensation for redundant records on an item-by-item basis, or on an across-the-board percentage basis. A court denying compensation for excessive hours, i.e., time disproportionate to the tasks, must identify the hours and state why they are being reduced. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
HN16 For purposes of determining a reasonable attorney fee, interoffice conferences are the type of inefficiency and duplication of services that may occur in cases where more than one attorney is used. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 4 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 60 of 181

*HN17* For purposes of determining a reasonable attorney fee, naturally it is within the profession's reasonable billing practice for a partner to guide a less experienced attorney in a task. However, in a complex matter a more experienced attorney could perform the work in less time than an inexperienced attorney. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount 🔖

*HN18* For purposes of determining a reasonable attorney fee, when the allegation is that attorneys spent too much time on a particular task, the inquiry is whether they complied with the reasonable billing practices of the profession. This requires a fair assessment of the needs of the particular case. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount 🔖

*HN19* For purposes of determining a reasonable attorney fee, the court looks with disfavor on minimum billing increments because they result in padding of time and do not accurately reflect the actual time required to perform a particular service. Padding hours demonstrates lack of billing judgment, and hours may be cut for padding. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount 🔖

*HN20* For purposes of determining a reasonable attorney fee, using less experienced attorneys at a lower hourly rate actually may increase the total number of hours expended depending on the efficiency of the younger attorneys. Excessive hours are a particular problem when firms use legal research to train relatively new associates. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount 🔖

*HN21* For purposes of determining a reasonable attorney fee, after determining the lodestar amount, the court in its discretion may adjust the award upward or downward to assess a reasonable award. The most important factor is the results obtained. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Litigation Costs 🔖
Civil Procedure > Costs & Attorney Fees > Attorney Fees 🔖

*HN22* An award of attorney fees made pursuant to statute may include reasonable expenses. More Like This Headnote


**COUNSEL:** For ANGLO-DANISH FIBRE INDUSTRIES, LTD., CEMFIBER A/S, plaintiffs: John C. Speer, Esq., BAKER DONELSON BEARMAN & CALDWELL, Memphis, TN.

For ANGLO-DANISH FIBRE INDUSTRIES, LTD., CEMFIBER A/S, plaintiffs: John E. Slaughter, David A. Harlow, MOORE & VAN ALLEN, Durham, NC.

For ANGLO-DANISH FIBRE INDUSTRIES, LTD., plaintiff: Ted E Corvette, MOORE & VAN ALLEN, PLLC, Durham, NC.

For COLUMBIAN ROPE CO., defendant: Alexander W. Wellford, Jr., Esq., HUMPHREYS DUNLAP WELLFORD ACUFF & STANTON, P.C., Memphis, TN.

For COLUMBIAN ROPE CO., defendant: Rahul Karnani, Dale Lischer, SMITH GAMBRELL & RUSSELL, LLP, Atlanta, GA.

DIANE VESCOVO, miscellaneous, Pro se, Memphis, TN.

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 61 of 181

Page 5 of 66

For COLUMBIAN ROPE CO., counter-claimant: Alexander W. Wellford, Jr., Esq., HUMPHREYS DUNLAP WELLFORD ACUFF & STANTON, P.C., Memphis, TN.

For ANGLO-DANISH FIBRE INDUSTRIES, LTD., CEMFIBER A/S, counter-defendants: John C. Speer, Esq., BAKER DONELSON BEARMAN & CALDWELL, Memphis, TN.

For ANGLO-DANISH FIBRE INDUSTRIES, LTD., CEMFIBER A/S, counter-defendants: **[*2]** John E. Slaughter, David A. Harlow, MOORE & VAN ALLEN, Durham, NC.

For ANGLO-DANISH FIBRE INDUSTRIES, LTD., counter-defendant: Ted E Corvette, MOORE & VAN ALLEN, PLLC, Durham, NC.

**JUDGES:** DIANE K. VESCOVO, UNITED STATES MAGISTRATE JUDGE. JULIA S. GIBBONS, UNITED STATES CIRCUIT JUDGE (Sitting by Designation).

**OPINIONBY:** DIANE K. VESCOVO

**OPINION:** ORDER ON PLAINTIFFS' REQUEST FOR ATTORNEY FEES

Before the court is the request of the plaintiffs, Anglo-Danish Fibre Industries, Ltd. and Cemfiber A/S, for attorney fees and expenses pursuant to 35 U.S.C. § 285 as the prevailing party in a patent infringement case. The request was referred to the United States Magistrate Judge for determination. For the reasons that follow, it is determined that a reasonable award of attorney fees is $ 66,707.66.

BACKGROUND

The plaintiffs commenced this action for patent infringement on February 22, 2001, against the defendant, Columbian Rope Company. In their complaint, the plaintiffs alleged that Columbian Rope infringed two or more claims of U.S. Patent No. 5,399,195 (the '195 patent) by the sale of certain concrete-fiber products, particularly Columbian Rope's Super-76-Crack Reducer. By **[*3]** October 31, 2001, some eight months later, a settlement was reached. Various disputes about the settlement agreement arose. All were resolved except the question of whether the settlement agreement would bind Columbian Rope's successors in interest. This dispute led to a motion by Columbian Rope to enforce the settlement agreement. The issue was resolved by the court's ruling of June 21, 2002, granting Columbian Rope's motion to enforce the October 2001 settlement agreement.

As part of the settlement agreement, Columbian Rope agreed to pay the plaintiffs' reasonable attorney fees "in lieu of damages for past infringement." The agreement further provided the magistrate judge would determine the amount of reasonable attorney fees based on written submissions of the parties. Pursuant to the settlement agreement, an interlocutory consent judgment of validity and infringement, including an injunction against future manufacture and sale of infringing products or fibers, was entered on November 18, 2002, and the plaintiffs' application for reasonable attorney fees was referred to the United States Magistrate Judge for determination.

ANALYSIS

The plaintiffs initially sought an award **[*4]** of attorney fees in the amount of $ 111,777.00 and an award of expenses in the amount of $ 11,522.30, for a total of $ 123,299.30. n1 Mem. in Supp. of Its Application for Payment of Reasonable Att'y Fees at 15-16.) In their reply memorandum, the plaintiffs have reduced their request to a total amount of $ 98,450.68 after making certain adjustments. (Pls. Reply Mem. at 19.) In support of their application for attorney fees and expenses, the plaintiffs submitted the declarations of their

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 6 of 66

Case 2:01-cv-02910-SHM    Document 49-2    Filed 09/16/2003    Page 62 of 181

attorneys, Ted E. Corvette, a member of the Durham, North Carolina law firm of Moore & Van Allen PLLC (MVA), and Matthew Witsil, an associate at MVA, along with MVA's billing statement detailing the work performed by MVA in connection with this case, and the affidavit of John C. Speer, a partner in the Memphis law firm of Baker, Donelson Bearman & Caldwell, who served as co-counsel for the plaintiffs, along with Baker Donelson's billing statements.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 See, however, the plaintiffs' memorandum where they request a total of $ 127,727, (Pls.' Mem. in Supp. of Its Application for Payment of Reasonable Att'y Fees at 5), and the plaintiffs' reply memorandum, where the total amount of fee and expense requests is $ 123,127, (Pls.' Reply Mem. at 1.). The reason for the discrepancy is unclear.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*5]**

Columbian Rope objects to the amount requested by the plaintiffs for fees and expenses on the grounds that (1) the hourly rates requested by the plaintiffs are excessive, and the plaintiffs have failed to substantiate a reasonable hourly rate for this community; (2) Columbian Rope did not agree to pay expenses; and (3) the plaintiffs' request includes excessive charges and charges for unnecessary work. Columbian Rope asks the court to reduce the plaintiffs' request by approximately 75% to $ 31,698.90. (Def.'s Resp. to Pls.' Mot. and Application for Payment of Reasonable Att'y Fees at 19.)

A. Calculation of Lodestar Amount

*HN1* Section 285 of Title 35 governs attorney fees in a patent infringement case. It provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. However, this fee award is made pursuant to settlement rather than an "exceptional case" clause.

The Supreme Court in *Hensley v. Eckhart,* 461 U.S. 424 (1983) laid out general standards to follow in making awards of attorney fees under fee shifting statutes. *HN2* In deciding what is a reasonable fee, the starting point **[*6]** is the determination of the "lodestar" amount, which is calculated by multiplying the number of reasonable hours expended by a reasonable hourly rate for legal services. Id. at 433.

1. Reasonable Hourly Rate

*HN3* Under the lodestar method, a starting point for calculating fees is the determination of a reasonable hourly rate. The plaintiffs seek fees based on an hourly rate that varies according to each attorney's experience and qualifications. Columbian Rope objects to the plaintiffs' requested hourly rates for many MVA members (partners) as excessive and unreasonable, although it does not object to the MVA associates' rates.

*HN4* The Supreme Court has recognized the community market rule as the proper way to determine a reasonable hourly rate. *Blum v. Stenson,* 465 U.S. 886, 895, n.11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984). The community market rule has the principal virtue of being the easiest way to cope with the "inherently problematic" task of ascertaining a reasonable fee in a situation where "wide variations in skill and reputation render the usual laws of supply and demand largely inappropriate ...." *Hadix v. Johnson,* 65 F.3d 532, 536 (6th Cir. 1995).* **[*7]** In applying the community market rule, the court looks to rates for similar services in the community by attorneys with reasonably comparable skills. See id. "The

burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community ...." *Blum,* 465 U.S. at 895 n.11. Evidence may include affidavits of other attorneys, case precedents, and fee studies. *See* Ottis v. Shalala,1994 U.S. Dist. LEXIS 16325, *18 (S.D. Mich. October 20, 1994).

The first inquiry is which "prevailing community rate" should apply: that of MVA's location in Durham, North Carolina, or that of the venue in the Western District of Tennessee. The court finds that Western Tennessee provides the prevailing rate, because that is where the case would have been tried. See, e.g., *Horace v. Pontiac,* 624 F.2d 765, 770 (6th Cir. 1980) and *Louisville Black Police Officers Org., Inc. v. Louisville,* 700 F.2d 268, 277-78 (6th Cir. 1982) (holding, in both cases, that **HN5** it was within the court's discretion to calculate fees based **[*8]** on prevailing hourly rate in the venue where the case was tried).

The plaintiff offers no extrinsic proof as to the current market rate for intellectual property attorneys in the Memphis community. It relies solely on affidavits provided by the MVA intellectual property attorneys and by its local counsel, Memphis attorney John C. Speer. Columbian Rope counters with a 2001 "Report of Economic Survey" by the American Intellectual Property Law Association Law Practice Management Committee (the "AIPLA") that shows high, low, median, and average market rates in the United States by geographic area. (Def.'s Resp. to Pls.' Mot. and App. for Payment of Reas. Att'y Fees at Ex. A.) Tennessee falls into the "Other Central" geographic category, while North Carolina falls into the "Southeast Metro" category. According to the AIPLA survey, the average hourly rate for partners in the 75th percentile, the highest percentile reported, in the "Other Central" category was $ 250 for the year 2000, the latest year for which survey results are available. In addition, the Speer affidavit indicates that the prevailing rate in the Western District of Tennessee for a partner in the largest law firm in Memphis **[*9]** with 30 years' experience is $ 275, rather than the $ 300-320 that the plaintiffs seek for a partner in North Carolina with similar experience. The court finds therefore that the plaintiffs have not met their burden of showing that their requested rates for MVA partners are in line with those prevailing in the Western District of Tennessee. *See Blum,* 465 U.S. at 895 n.11.

Accordingly, taking into consideration the Speer affidavit, the AIPLA survey, and the attorney profiles submitted by the plaintiffs, the court concludes that the following are average reasonable hourly rates for each of the MVA partners during the time period they represented the plaintiffs:

| Name | Experience | MVA Title and Requested Hourly Rate | AIPLA Equivalent Title and Hourly Rate | Reasonable Hourly Rate |
|------|-----------|-----------------|-----------------|-----------------|
| Cohen | Admitted 1989 | MVA Member $ 205-220 | Partner $ 195/hour (25th percentile) | $ 195/hour |
| Corvette | Admitted 1973 | MVA Member $ 265-270 | Partner $ 250/hour (75th percentile) | $ 275/hour n2 |
| Harlow | Admitted 1968; Admitted | MVA Member $ 300-320 | Partner $ 250/hour (75th | $ 275/hour |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 64 of 181   Page 8 of 66

| | USPTO | | percentile) | |
|---|---|---|---|---|
| Johnston | Admitted 1992; Admitted USPTO | MVA Member $ 205-220 | Partner $ 195/hour (25th percentile) | $ 195/hour |

**[*10]**

Because Columbian Rope does not object to the AIPLA's average calculation of $ 160 per hour for associates, that rate is applied to all associates. Similarly, because Columbian Rope does not object to a paralegal rate of $ 80 per hour, that rate will be used for MVA paralegal time. Baker, Donelson attorneys and paralegals will be compensated at the rates established by the Speer affidavit.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The court finds $ 275 to be a reasonable hourly rate for Corvette even though the rate is slightly higher than the rate actually billed by Corvette.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

2. Reasonable Hours Expended

*HN6* Once the court has determined the appropriate hourly rate, the court must then determine what number of hours were reasonable. "The 'lodestar' method of calculation ... does not solve the problem of excessive hours." *Coulter v. Tennessee,* 805 F.2d 146, 150 (6th Cir. 1986). It is within the court's discretion to reduce the total hours if they seem unreasonable. The question is not whether a party prevailed on a particular **[*11]** motion, nor whether, in hindsight, the time expended was strictly necessary to obtain relief achieved; instead, the question is whether a reasonable attorney would believe the work to be reasonably expended in pursuit of success at the time when the work was performed. *Wooldridge v. Marlene Industries Corporation,* 898 F.2d 1169, 1177 (6th Cir. 1990); *accord Northcross v. Board of Education,* 611 F.2d 624, 636 (6th Cir. 1980).

> *HN7* Three very different kinds of issues can arise concerning excessive hours:
> (1) factual questions about whether the lawyer actually worked the hours claimed or is padding the account; (2) legal questions about whether the work performed is sufficiently related to the points on which the client prevailed as to be compensable; (3) mixed questions about whether the lawyer used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel.

*Coulter,* 805 F.2d at 150-51. *HN8* A court's determination on the factual issues will be upheld unless it is clearly erroneous. *Id.* at 151. A court's determination on the legal issues, i.e., questions **[*12]** of compensability, are reviewed for error. *Id.* A court's determination on the mixed issues, i.e., questions of judgment, will be upheld unless the court's interpretation of the profession's reasonable billing practices was arbitrary or irrational. *Id.* at 151, 152.

Columbian Rope challenges the total hours expended by the plaintiffs' attorneys on several grounds. The compensability issues are as follow: (1) whether the plaintiffs are entitled to fees attributed to "W.R. Grace" license issues, i.e., whether "W.R. Grace" issues were within

the scope of this litigation; (2) whether the plaintiffs are entitled to fees attributed to time spent after February 14, 2002, all of it allegedly spent "attempting to repudiate the settlement agreement"; (3) whether the plaintiffs are entitled to fees attributed to time spent preparing this fee application, which Columbian Rope alleges is "totally deficient" in supporting the reasonableness of the plaintiffs' attorney fees; (4) whether the plaintiffs are entitled to professional fees that accrued before the lawsuit was filed; and (5) whether certain billing entries, such as "file work" or "follow-up," are too vague to demonstrate **[*13]** the nature of the work for purposes of determining whether the time was reasonably expended.

In addition, Columbian Rope raises two issues concerning the plaintiffs' billing judgment: (1) whether certain billing items are redundant, with several attorneys billing for the same substantive work, and (2) whether time spent on some items was disproportionate to the work performed.

*HN9* The applicant for attorney fees has the burden of demonstrating the reasonableness of hours, and the opposing party has the burden of producing evidence against this reasonableness. *See Blum,* 465 U.S. at 897; *Hensley,* 461 U.S. at 437. MVA, the applicant, relies on its billing statements and the declarations of its attorneys. In opposition, Columbian Rope has submitted a twenty-nine page item-by-item review of MVA's billing statements. The court now adopts the following analysis on each of Columbian Rope's compensability issues, and accordingly adjusts MVA's time records. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 A detailed summary of MVA's records, showing the reductions and the reasoning therefor, is attached as an Appendix to this ruling.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*14]**

a. Compensability of "W.R. Grace" License Issues

Columbian Rope alleges that "W.R. Grace" license issues are unrelated to this litigation, but adduces no evidence to support that claim. *HN10* Allegations unsupported by evidence cannot justify a favorable ruling. *See United States v. Crescent Amusement Co.,* 323 U.S. 173, 184-85, 89 L. Ed. 160, 65 S. Ct. 254 (1944) (holding that factual findings "must stand or fall depending on whether they are supported by evidence"); *Anderson v. Bessemer City,* 470 U.S. 564, 573-75, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1984) (discussing the role of evidence in the "clearly erroneous" standard of appellate review). Nevertheless, the plaintiffs have withdrawn their requests for compensation on all "W.R. Grace" issues. (Pls.' Reply Mem. at 16.) Therefore, time spent on "W.R. Grace" license issues is not compensable.

b. Compensability of Time Spent after February 14, 2002

Columbian Rope alleges that this time was spent "attempting to repudiate the settlement agreement," and that it is outside the scope of this litigation. Columbian Rope adduces no evidence to support this allegation, nor to support its characterization **[*15]** of the plaintiffs' activities. Especially in light of the parties' extreme difficulty in determining whether a settlement agreement existed in the first place, let alone the terms thereof, *see, e.g.,* Order Granting Defendant's Motion to Enforce Settlement Agreement, *Anglo-Danish Fibre Industries, Ltd. v. Columbian Rope Fiber,* Civil Case No. 01-2133GV (W.D. Tenn., June 21, 2002), the court is not persuaded that Columbian Rope has met its burden of proving that these charges are unreasonable. Therefore, the time spent after February 14, 2002, is compensable to the extent that it reflects reasonable billing judgment.

c. Compensability of Time Spent Preparing Fee Application

Columbian Rope alleges that, because the plaintiffs' fee application is "totally deficient" and the time spent preparing it is not documented, fees associated with the fee application are not compensable. (Def.'s Resp. to Pls.' Mot. and Application for Payment of Reasonable Att'y Fees at 16.) The court disagrees. Time spent preparing the fee application is compensable to the extent that it reflects reasonable billing judgment. _Coulter,_ 805 F.2d at 151. The fee application provides hourly **[*16]** rates for each attorney and the hours expended by each attorney, for the case in chief as well as the fee application. (Pls.' Mem. in Supp. of Its Application for Payment of Reasonably Att'y Fees, Ex. B, Dec. of Ted E. Corvette at 5.) In addition, the plaintiffs have included in their reply brief a detailed analysis of services performed. (Pls.' Reply Brief, Ex. 1.) This information is sufficient to enable the court to calculate a lodestar amount.

Columbian Rope correctly observes, however, that _HN11_ the total hours spent preparing a fee application are capped at three percent (3%) "of the hours in the main case when the issue is submitted on the papers without a trial." _Coulter,_ 805 F.2d at 151. Because the court finds that the plaintiffs expended 287.74 reasonable hours in the main case, only 8.63 hours are compensable in association with fee agreement preparation.

Four attorneys worked on the fee application: approximately 50% of the reasonable hours were incurred by two associates at $ 160 per hour. Approximately 50% of the reasonable hours were incurred by two partners at $ 275 per hour. The 8.63 hours are divided proportionally, resulting in a limit of $ 1,877.52 **[*17]** for preparing the fee application subject to reasonable billing judgment.

d. Compensability of Fees Accrued before Filing

Columbian Rope alleges that the plaintiffs are not entitled to professional fees that accrued before the complaint was filed. (Def.'s Resp. to Pls.' Mot. and Application for Payment of Reasonable Att'y Fees at 16.) The plaintiffs cite _Central Soya Co., Inc. v. Geo. A. Hormel and Co.,_ 723 F.2d 1573, 1577 (Fed. Cir. 1983) for the proposition that _HN12_ attorney fees include all services "in the preparation for and performance of legal services related to the suit." _HN13_ The Supreme Court has held that attorneys' work, even if performed outside the traditional litigation context, is compensable as long as it is "necessary to the attainment of adequate relief for [the] client." _Pennsylvania v. Delaware Valley Citizens' Coun. for Clean Air,_ 478 U.S. 546, 558, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986). n4 A reasonable amount of pre-suit investigation and client communication is necessary before a competent attorney can identify the alleged wrong, identify which of his client's rights were infringed, and craft an appropriate claim for relief. **[*18]** Accordingly, pre-suit hours are compensable to the extent that they reflect reasonable billing judgment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 Because this fee award is made pursuant to settlement rather than statute, this court follows the _Delaware Valley_ standard. See _Knop v. Johnson,_ 700 F. Supp. 1457, 1465 (W.D. Mich. 1988) (discussing the role of "fairness and equity" in a fee award determination for amicus curiae). Had the parties sought fees pursuant to 35 U.S.C. § 285, the result would be governed by statutory precedent instead. Compare, for example, _Anderson v. P&G,_ 220 F.3d 449, 455-456 (6th Cir. 2000) (declining to award fees under ERISA statute when claim settled during administrative proceedings) with _Hanrahan v. Hampton,_ 446 U.S. 754, 756-757, 64 L. Ed. 2d 670, 100 S. Ct. 1987 (1980) (approving the award of fees to civil rights plaintiffs who "vindicate rights" without "formally obtaining relief").

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386   Page 67 of 181

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 67 of 81

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

e. Compensability of Vague Billing Entries

Columbian **[*19]** Rope argues that many of the plaintiffs' billing records are too vague for the court to tell whether the time was reasonably expended. (Def.'s Resp. to Pls.' Mot. and Application for Payment of Reasonable Att'y Fees at 15-16.) Specifically, Columbian Rope challenges the plaintiffs' claim to reimbursement for billing entries such as "file work," and "follow-up," as well as billing entries where the plaintiffs recorded that they "received a voicemail, drafted a memorandum, or conversed with another attorney without identifying the substance of their communications." *(Id.)*

**HN14** Attorneys must "maintain billing time records that are sufficiently detailed to enable the courts to review the reasonableness of the hours expended." *Wooldridge,* 898 F.2d at 1176-1177. Where records are ambiguous, courts should not apply any presumption in favor of the party seeking the fee. Id. at 1176. To the contrary, entries that "provide little guidance in ascertaining the purpose of the work during the time claimed do not merit an award." *Black v. Lojac Enterps.,* 1997 U.S. App. LEXIS 17205 (6th Cir. 1997). *See also Reed v. Rhodes,* 934 F. Supp. 1492, 1520 (N.D. Ohio 1996) **[*20]** (refusing to evaluate the merits of vague time records).

The court has reviewed MVA's time records and agrees with Columbian Rope that the following descriptions are too vague for the court to assess the reasonableness of hours expended in association with them:

i. "File Work," "Work in File," or "Work On"

"File Work," "Work in File," and "Work On," without more, is too vague to show whether the hours expended are reasonable. *See Wooldridge,* 898 F.2d at 1176-1177 (declining to assess claims for "general services"). These billing entries are noncompensable.

ii. "Follow-Up," "Monitor Status," "Check Status," or "Check On"

Without any accompanying description of the tasks performed (e.g., a call, email, or office conference), these descriptions are too vague to show whether the hours expended are reasonable. *See Black v. Lojac Enterps.,* 1997 U.S. App. LEXIS 17205, *9-10 (6th Cir. 1997) (declining to award fees for activities such as "research," "pick-up," "revised form," and "office conference" when the activities were not more specifically identified). On the same principle, time entries for "receipt of" information or communications, without **[*21]** more, are too vague to merit an award.

iii. Conferences, Memoranda, Emails, Voicemails, Letters

Billing entries for conferences, memoranda, voicemail, emails, and letters, when the billing entries do not identify the subject matter of the communication, are too vague to show whether the hours expended are reasonable. *See Black,* 1997 U.S. App. LEXIS 17205, *9-10 (declining to award fees for "time entries [that] failed to even identify the general subject matter involved"). Under the same reasoning, "instruct associate," without more, is also too vague for the court to determine whether the hours spent on that activity were reasonably expended.

In this case, some of the vague entries discussed above stand alone. Others are mixed with non-vague billing entries. The plaintiff has not given the court any guidance about the proportional division of a mixed entry. Accordingly, the court strikes vague portions of mixed

entries on a straight percentage basis, e.g., if four activities are listed and one is too vague to merit an award of fees, the overall time for that entry is reduced by one-quarter.

f. Billing Judgment and Excessive Hours

Columbian Rope claims **[*22]** that, in an exercise of poor billing judgment, multiple attorneys recorded duplicate time for performing identical work and also, in many cases, recorded more time than the tasks reasonably required. (Def.'s Resp. to Pls.' Mot. and Application for Payment of Reasonable Att'y Fees at 15.) After reviewing the MVA billing records, the court agrees.

*HN15* The court should exclude from its calculation hours that are "excessive, redundant, or otherwise unnecessary." _Hensley,_ 461 U.S. at 433; _Northcross,_ 611 F.2d 624; _Singer v. Machining Bd. of Mental Retardation,_ 519 F.2d 748 (6th Cir. 1975). A court may deny compensation for redundant records on an item-by-item basis, _Coulter,_ 805 F.2d at 152, or on an across-the-board percentage basis, _Hudson v. Reno,_ 130 F.3d 1193, 1209 (6th Cir. 1997). A court denying compensation for excessive hours, i.e., time disproportionate to the tasks, must identify the hours and state why they are being reduced. _Northcross,_ 611 F.2d at 637. These rules apply to the following time entries:

i. Redundant Meetings, Calls, and Conferences

*HN16* Interoffice conferences **[*23]** are the type of "'inefficiency and duplication of services' that may occur in cases where more than one attorney is used." _Schultz v. Amick,_ 955 F. Supp. 1087, 1115 (N.D. Iowa 1997) (internal citation omitted). When multiple attorneys have billed for overlapping meetings, calls, or conferences, the court will permit full reasonable hourly remuneration for the attorney billing at the highest rate. One additional attorney, billing at an equal or lower rate, will be entitled to one-half his reasonable hourly remuneration. The calculation will be made by reducing his time by one-half of the overlapping hours. More than two attorneys' hours in a meeting, call, or conference are non-compensable.

ii. Redundant Research, Review, or Drafting

These duplications most often appear in partner/associate pairs. n5 *HN17* Naturally it is within the profession's reasonable billing practice for a partner to guide a less experienced attorney in a task. However, "in a complex matter ... a more experienced attorney could perform the work in less time than an inexperienced attorney." _Ottis,_ 1994 U.S. Dist. LEXIS 16325 at n.1. Accordingly, the court will permit full reasonable **[*24]** hourly remuneration for the attorney who is billing at the highest rate, one-half the reasonable hourly enumeration for the attorney who is billing at the lower hourly rate, and no remuneration for additional attorneys performing redundant work.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 Examples of duplicate activities billed separately by each attorney include the following:

12/05/2000 - Review and analysis of letter from Columbian Rope counsel by both Harlow and Witsil.

01/29/2001 - Review, instruction, and analysis of discovery rules by both Harlow and Slaughter.

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 69 of 181

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 69 of 66

03/29/2001 - Review of Columbian's motion to extend time by both Harlow and Slaughter.

04/25/2001 - Review and analysis of Columbian's answer and counterclaim by both Harlow and Slaughter.

05/21/2001 - Review of court notice by both Harlow and Slaughter.

06/07/2001 - Review of court scheduling notice by Harlow, Corvette, and Slaughter.

07/23/2001 - Review of court scheduling order by Harlow, Corvette, and Slaughter.

08/15/2001 - Review of correspondence and enclosures by both Harlow and Witsil.

08/21-23/2001 - Review of file history on client patent by both Harlow and Witsil.

09/10/2001 - Revisions to draft letter by both Harlow and Witsil.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*25]**

In addition, on December 11, 2000 and again on December 13, 2000, MVA's paralegal performed the same work twice, that is, printing out Columbian Rope's entire website. (Def.'s Resp. to Pls.' Mot. and Application for Payment of Reasonable Att'y Fees at 15.) Because the plaintiffs submitted no justification for the duplication, the December 11, 2000 entry is stricken.

iii. Excessive Hours

*HN18* When the allegation is that attorneys spent too much time on a particular task, the inquiry is whether they complied with the reasonable billing practices of the profession. *Coulter,* 805 F.2d at 151. This requires a fair assessment of the needs of the particular case. *Id.* at 152.

MVA, in its memorandum, divides the underlying case into five "phases," which assists the court in assessing the needs of the case. n6 In addition, the court assesses the propriety of MVA's hours spent preparing this application for fees. After careful review of the billing records, the court finds that a number of billing entries are disproportionate to the tasks at hand.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Phase 1 (June-August 2000) is characterized as an "investigation phase leading up to the cease and desist letter." Phase 2 (September-December 2000) is characterized as an "initial negotiation phase leading up to the preparation of a complaint." Phase 3 (January-February 2001) is characterized as a period "leading up to the filing of" the complaint. Phase 4 (March-June 2001) is identified as the "pleadings phase," from the complaint's filing through the defendant's reply, and both parties' initial Rule 26 disclosures. Phase 5 covers July 2001 through February 2002 and includes the settlement agreement signed on November 18,

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB Document 49-2 Filed 09/16/2003 Page 70 of 181 Page 14 of 66

2002.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*26]**

First, MVA, in its original Application for Fees, apparently used a minimum billing increment of two-tenths of an hour (.20), with additional increments of one-tenth of an hour (.10) added thereafter. *HN19* The court looks with disfavor on minimum billing increments because they result in padding of time and do not accurately reflect the actual time required to perform a particular service. Padding hours demonstrates lack of billing judgment, and hours may be cut for padding. See *Northcross,* 611 F.2d at 636. Review of the originally submitted billing records showed 38 records (eleven percent of the total records) composed solely of the .20 minimum increment. Another 56 records (sixteen percent of the total records) were composed solely of the .20 minimum increment plus another tenth of an hour.

Because most of these entries reflect brief office conferences, voicemails, and emails, the court finds these records reflect significant padding. Many already have been struck as vague. Those that remain now are reduced by 50% each to compensate for padding. This reduction affects 16 of the .20 increment entries and 30 of the .30 increment entries, for a total reduction of 7.15 **[\*27]** hours. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 MVA "wrote down" several of these entries in Exhibit 1 of its Reply Memorandum. Because these changes tend to be in line with the court's own adjustment for padding--e.g., several .20 increments submitted in the original Application for Fees were "written down" by MVA to .10 increments in the Reply Memorandum--the court relies on the original exhibits.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Next, MVA reports significant associate attorney time spent on legal research projects. For example, MVA reported at least nine associate hours in November and December 2000 spent on seeking analogous cases for direct and contributory patent infringement. MVA reported at least 20 associate hours in January and February 2001 researching patent infringement remedies. MVA also reported over 13 associate hours researching legal standards for the fee application. *HN20* "Using less experienced attorneys at a lower hourly rate actually may increase the total number of hours expended ... depending on the efficiency of the younger attorneys." *Ottis,* 1994 U.S. Dist. LEXIS 16325 **[\*28]** at n.l. Excessive hours are a particular problem when firms use legal research to train relatively new associates. *Id.*

In this case, litigation was in the earliest stages, and the case was resolved through settlement. None of the researched issues appears particularly novel for a firm that regularly practices intellectual property litigation. Accordingly, the court finds that the research time for these three issues is excessive and reduces the associates' research time on these projects by 50%.

Next, in November and December, 2002, MVA billed 26.7 partner-level hours for Corvette's work and 1.6 partner-level hours for Harlow's work drafting and revising documents associated with the plaintiffs' fee application, in addition to 24.9 hours of associates' time. The total amount of attorney fees sought by the plaintiffs for preparing the fee application is $ 12,423. n8 The fee application consists of a sixteen-page memorandum, time statement printouts, pre-printed attorney profiles, and two attorney declarations that summarize the printout information. The court simply does not see how experienced partners in a law firm could reasonably spend over 28 hours preparing this application, **[\*29]** especially when

supplied with three days' worth of associate research and a full set of billing printouts. Accordingly, Corvette's 26.7 hours are reduced by 75% to 6.68 hours. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 In its Reply Memorandum, MVA reduced its request for time on preparing the Application for Fees to 52.2 total hours and its request for fees to $ 12,423. (Pls.' Reply Mem. in Supp. of its App. for Payment of Reas. Att'y Fees at 2-3, Ex. 1.) These calculations reflect that revised request.

n9 The fee petition is also subject to the 3% cap discussed supra at p. 11. Even after the hours claimed are reduced for excessive billing, the total amount of fees attributable to preparing the fee petition still exceed the 3% cap. Accordingly, the total amount of the award for attorney fees for preparing the fee petition is $ 1,877.52.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finally, a review of MVA's remaining time entries show many that are simply disproportionate to the work performed. For example:

On July 25, 2002, MVA billed 3.10 hours (190 minutes) for a telephone conference, **[*30]** cover letter, and packaging of samples for laboratory testing.

On July 28, 2001, MVA billed .40 hours (24 minutes) for responding to an email and canceling a flight reservation.

On August 7, 2001, MVA billed .40 hours (24 minutes) for a telephone call to the lab to check the status of sample testing.

On September 20, 2000, MVA billed 1.20 hours (80 minutes) for reading a website, leaving a voicemail, and sending an email.

On September 24, 2000, MVA billed 1.10 hours (70 minutes) for checking two online databases and comparing the results.

On February 20, 2001, MVA billed 1.30 hours (80 minutes) for drafting a pro hac vice motion and order, which are usually one-page documents.

These items are difficult to calculate on a line-item basis, because MVA's multiple attorneys are billing at different rates and likely have different levels of experience, skill, and efficiency. In lieu of a line-by-line reduction, therefore, the court reduces the total reasonable fees by 5%, for a total of $ 3,235.88, in recognition of disproportionate entries not otherwise adjusted.

B. Adjustment of the Lodestar Amount

HN21 After determining the lodestar amount, the court in its discretion may **[*31]** adjust

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 72 of 181

Page 16 of 66

the award upward or downward to assess a reasonable award. *Hensley,* 461 U.S. at 434. The most important factor is the "results obtained." *Id.* Because this case was resolved through settlement, in which both sides were represented by counsel and in which both sides participated, the court finds that a discretionary lodestar adjustment is inappropriate.

C. Expenses

Columbian Rope denies an obligation to pay the plaintiffs' out-of-pocket expenses. (Def.'s Resp. to Pls.' Mot. and Application for Payment of Reasonable Attorney Fees at 18.) Although HN22 an award of attorney fees made pursuant to statute may include reasonable expenses, *see, e.g., Central Soya,* 723 F.2d at 1578, the court finds no such award is appropriate in this case. Here, the fee award is made pursuant to an agreement, not necessarily pursuant to a statute. During the negotiation of the settlement agreement, the parties were represented by competent litigators. Counsel for plaintiffs knew that they had incurred expenses on the file and had an itemized list available to them, as demonstrated by the billing records provided to the court. The parties had ample opportunity **[*32]** to explicitly provide for payment of expenses in their settlement agreement during the prolonged negotiations over settlement terms. They did not do so. The parties' settlement agreement simply provides for "attorney fees." It does not provide for "attorney fees and expenses," and it is unclear from the letters supporting the settlement agreement that either party contemplated payment of expenses. *See* Order Granting Defendant's Motion to Enforce Settlement Agreement, *Anglo-Danish Fibre Industries, Ltd. v. Columbian Rope Fiber,* Civil Case No. 01-2133GV (W.D. Tenn., June 21, 2002) (declaring the terms of the settlement agreement); Def.'s Reply Brief in Supp. of Mot. to Enforce the Settlement Agreement at Exs. 1-5, *Anglo-Danish Fibre Industries, Ltd. v. Columbian Rope Fiber,* Civil Case No. 01-2133GV (W.D. Tenn., June 21, 2002) (containing the letters with settlement terms referenced in the June 21, 2002 Order). Accordingly, the award of expenses is denied with one exception. The plaintiffs have included the attorney fees incurred by Baker, Donelson as an expense item. Baker, Donelson's attorney fees will be reimbursed, but the actual out-of-pocket expenses incurred by Baker,  **[*33]** Donelson. will not be reimbursed.

CONCLUSION

For the foregoing reasons, the plaintiff is awarded a total of $ 66,707.66 in reasonable attorney fees and $ 0 in expenses. Specific reductions in hours are listed on an appendix attached to this ruling.

IT IS SO ORDERED this 28th day of January, 2003.

DIANE K. VESCOVO

UNITED STATES MAGISTRATE JUDGE

JUDGMENT IN A CIVIL CASE - FILED 03 FEB 11; entered 2/11/03

**DECISION BY COURT.** This action came to consideration before the Court. The issues have been considered and a decision has been rendered.

**IT IS SO ORDERED AND ADJUDGED that in accordance with the Order on Plaintiffs' Request for Attorney Fees entered on January 30, 2003, judgment is hereby entered for the plaintiffs, Anglo-Danish Fibre Industries, Ltd. and Cemfiber A/S, and awarded a total of $ 66,707.66 in attorney fees and $ 0 in expenses.**

**APPROVED:**

**JULIA S. GIBBONS**

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 17 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 73 of 181

**UNITED STATES CIRCUIT JUDGE**
**(Sitting by Designation)**

ATTACHMENT

| Dates of Service | Atty. | Description of Services | Billed Hours |
|---|---|---|---|
| 06/15/2000 | DAH | Memo to Linsner | 0.30 |
| 06/15/2000 | DAH | File work | 0.30 |
| 06/30/2000 | DAH | Voicemail to Linsner | 0.20 |
| 07/05/2000 | DAH | Voicemail from Linsner. Email to Linsner | 0.30 |
| 07/24/2000 | DAH | Voicemail from W.R. Grace; telephone conference with Michael from W.R. Grace; file work; outline chain of possession formalities | 0.80 |
| 07/25/2000 | DAH | Receipt of samples re potential infringement by Columbian Rope: outline tasks regarding testing of fiber and potential cease and desist letter; file work | 1.00 |
| 07/25/2000 | MWI | Columbian fibers--Office conference with Harlow; phone conference with Vitarelli of MAS labs to get quote for samples; preparing ltr and sending samples to MAS labs. | 3.10 |
| 07/28/2000 | DAH | Receipt of information on infringer; instruct associate | 0.30 |
| 08/07/2000 | MWI | Call to MAS Laboratories to check status of sample being tested | 0.40 |
| 08/17/2000 | MWI | Completion of draft cease and desist letter and report summary for Harlow | 0.50 |
| 08/16/2000 | MWI | Review of test report on samples and comparison with fiber patent. Phone conference with Viterelli of Material Analytical Services lab to discuss the test and return of the sample in original packaging. Preparation of draft cease and desist letter for Harlow. | 2.80 |
| 08/16/2000 | MGJ | Review fax from Mitchell re expiration of patent and respond with date of expiration. | 0.30 |
| 08/24/2000 | DAH | Follow-up on status of test results. | 0.30 |
| 08/25/2000 | DAH | Review independent analysis report; | |

| Date | Initials | Description | Hours |
|---|---|---|---|
| | | desist letter; letter to Linsner | 0.80 |
| 08/29/2000 | DAH | Receipt of further instructions; finalize cease and desist ltr and send out; file work; ltr to Linsner | 1.00 |
| 09/18/2000 | DAH | Check for any response to cease and desist letter; exchange of email with Linsner; analysis re future action. Check on location of infringing company; instruct associate on follow-up matters. | 0.80 |
| 09/18/2000 | MWI | Office conference with Harlow. Review of file to identify sales locations. | 1.00 |
| 09/19/2000 | DAH | Further analysis; memo to Linsner re options. | 1.00 |
| 09/20/2000 | DAH | Analysis; instruct associate on follow-up. Follow-up. File work | 0.90 |
| 09/20/2000 | MWI | Review of Columbian Rope products on web page. Phone call to President Stephen Ludt, to whom the cease and desist letter was sent; left voice mail. Email summaries to Harlow. | 1.20 |
| 09/22/2000 | DAH | File work | 0.30 |
| 09/25/2000 | DAH | Follow-up on Columbian Rope. | 0.20 |
| 09/25/2000 | MWI | Phone conference with Ludt of Columbian Rope; he requested we provide a copy of the patent to him, as we offered. Drafted facsimile to him. | 0.80 |
| 09/28/2000 | MWI | Phone call from Bob Weilacher of Smith Gambrell in Wash. D.C., patent attys for Columbian Rope | 0.40 |
| 09/28/2000 | DAH | Review report on patent counsel for Columbian Rope; email to Craig Linsner | 0.40 |
| 10/13/2000 | DAH | File work | 0.20 |
| 10/16/2000 | DAH | Office conference with Witsil re Columbian Rope; email to Linsner | 0.40 |
| 10/16/2000 | MWI | Office conference with Harlow. Phone conference with Weilacher, checking status of response to cease and desist letter. | 0.50 |
| 10/18/2000 | MWI | Email correspondence with Harlow re ADFIL's ownership of the fiber patent | 0.20 |
| 10/19/2000 | MWI | Email correspondence to counsel for Columbian Rope responding to his | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386                                    Page 19 of 66

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 75 of 181

| Date | Initials | Description | Hours |
|---|---|---|---|
| | | assignee named on the patent and ADFIL. | 0.20 |
| 10/24/2000 | DAH | Review emails re Columbian Rope. Inquiry from Irwin Mitchell re US Patent # 5,399,195, check USPTO database; instruct associate | 0.80 |
| 10/24/2000 | SDT | Search dialog database 345 for Pat. NO. 53199195; Review database search results; review USPTO database search results; Office conference re differences in database search results; Perform secondary search in Dialog database 653 for Patent No. 53199195; Prepare e-mail response to foreign counsel summarizing database search results and explaining inconsistency with USPTO website; fax Dialog database results to Irwin Mitchell | 1.10 |
| 10/25/2000 | DAH | Office conference with Matt Witsil | 0.20 |
| 10/25/2000 | MWI | Email correspondence with Anneliese Aulton of Irwin Mitchell requesting information on the relationship between Adfil, Danaklon, and Cemfiber | 0.20 |
| 11/01/2000 | DAH | Monitor situation with Columbian Rope | 0.20 |
| 11/01/2000 | MWI | Email correspondence with counsel for Columbian Rope. | 0.40 |
| 11/06/2000 | MWI | Office conference and email correspondence with Harlow re status of response from Columbian Rope counsel to cease and desist letter. | 0.40 |
| 11/06/2000 | DAH | Exchange email with Linsner; review status and emails with counsel for Columbian Rope; analysis of Columbian Rope website and its products. Analysis re status and strategy; memo to Linsner re same | 2.80 |
| 11/09/2000 | DAH | Follow-up and email. | 0.30 |
| 11/10/2000 | DAH | File work. | 0.20 |
| 11/17/2000 | DAH | Telephone conference with Linsner; file Work | 0.40 |
| 11/17/2000 | MWI | Email correspondence with Harlow summarizing status and discussing | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 76 of 181

Page 20 of 66

| | | | |
|---|---|---|---|
| 11/20/2000 | MWI | Office conference with Harlow. Preparation of chronology of contact w/ Columbian Rope and their atty for his use. | 1.00 |
| 11/20/2000 | DAH | Review timeline of prior communications with counsel for Columbian rope; analysis re steps to be taken; check on potential local counsel for bringing suit in Mississippi. Review website; email to potential local counsel. Analysis re venue issues | 2.20 |
| 11/21/2000 | MWI | Office conference with Harlow re letter to counsel for Columbian Rope. | 0.40 |
| 11/21/2000 | ABC | Conference regarding issues of venue and jurisdiction for filing complaint | 0.50 |
| 11/21/2000 | DAH | Review patent claims and engineering test report on product. Further review and analysis of Columbian Rope website and their products and specifications; prepare and send "drop dead" letter to counsel for Columbian Rope. Telephone conference with ADFIL offices; analysis of potential jurisdictions for bringing a patent infringement against Columbian Rope; preparation and sending of analysis memorandum to Linsner re products and infringement. | 6.00 |
| 11/22/2000 | DAH | Office conference with Ted Corvette re selection of venue for patent infringement lawsuit | 0.30 |
| 11/22/2000 | DAH | Review credit report on Columbian Rope; prepare and send memo on same; check further on jurisdiction and venue; memo for Linsner re patent marking | 2.00 |
| 11/22/2000 | DAH | Order credit report on Columbian Rope; check on potential local counsel for Memphis; telephone conference with Robert Walker. Telephone conference with ADFIL office; further emails to Linsner; further review of product specification sheets for Columbian | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 21

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 77 of 181

| | | | |
|---|---|---|---|
| 11/27/2000 | MWI | Office conference with Harlow re potential for infringement of multiple Columbian Rope products | 0.40 |
| 11/27/2000 | DAH | Exchange of emails with Linsner re several issues; further analysis of Multi-Plus product; file work re documents. Pull document; review patent license agreement with W.R. Grace; review supply agreement with W.R. Grace & Co.; email memo to Macklin; further analysis re Multi-plus product; email memo to Linsner re same. | 4.60 |
| 11/28/2000 | TEC | Office conference with Harlow re venue and jurisdiction issues | 0.30 |
| 11/28/2000 | DAH | Email to Linsner; review claims of '195 patent re method claims, product claims, and product by process claims. Work on logistical issues, office conference with Ted Corvette re same. Further exchange of email with Macklin and Polterick re product testing and re patent marking; review fax of patent marking on bags. | 3.20 |
| 11/29/2000 | ABC | Review and revise nonwaiver agreement for Columbian Rope counsel. | 0.30 |
| 11/29/2000 | TEC | Office conferences with Harlow and Witsil re waiver of privilege by Columbian Rope attys. | 0.80 |
| 11/29/2000 | MWI | Phone cell from Weilacher, counsel for Columbian Rope. Email to Harlow, with draft of provisions for nonwaiver of attorney-client privilege requested by Weilacher. Office conference with Corvette. Response to Weilacher asking for him to provide details of what he wants. | 1.40 |
| 11/29/2000 | DAH | Work on draft complaint; logistics; respond to call from counsel for Columbian Rope. | 3.20 |
| 11/30/2000 | DAH | Analysis re potential for contributory infringement and inducing infringement; instruct associate on issues for research on infringement | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 78 of 181

Page 22 of 66

| Date | Initials | Description | Hours |
|------|----------|-------------|-------|
| | | review VE holdings case; email exchange with counsel. | 2.60 |
| 11/30/2000 | MWI | | |
| | | Office conference w/Harlow. Research for cases w/ respect to direct infringement, contributory infringement that are factually analogous to the infringement by Columbian Rope. | 5.60 |
| 12/01/2000 | TEC | Work on patent infringement file organization with Harlow and Rosenblatt-Farrell. | 0.40 |
| 12/01/2000 | MWI | Drafting email memorandum to Harlow re multiple bases for infringement by Columbian Rope. | 1.60 |
| 12/01/2000 | DAH | Review research memo on direct infringement issues; email re same; analysis re prior infringers on fiber count issue; documents re same. | 2.60 |
| 12/04/2000 | DAH | Follow-up on counsel for Columbian Rope. Review memo on contributory infringement and inducing infringement; office conference with associate re same | 0.80 |
| 12/04/2000 | MWI | Drafting analysis on contributory infringement and active inducement of infringement. Office conference w/ Harlow discussing same. | 3.60 |
| 12/04/2000 | NFR* | Review file and subdivide infringement matters. | 6.50 |
| 12/05/2000 | DAH | Review response from counsel for Columbian rope; analysis of same; review analysis by associate re test results and patent claims. | 1.00 |
| 12/05/2000 | MWI | Review and analysis of letter from Weilacher, atty for Smith. Gambrell, re Columbian Rope's bases for asserting non-infringement. | 2.90 |
| 12/06/2000 | MWI | | |
| | | Office conference with Harlow re his direction for preparation of a response letter and a memo analyzing Columbian rope's points in ltr from counsel. Beginning on letter and memorandum. | 0.40 |
| 12/06/2000 | DAH | Outline response to counsel for Columbian Rope; office conference w/ | |

| 12/06/2000 | NFR | Finish reviewing file and subdividing infringement matters; Create reference chart for Harlow | 1.50 |
| 12/08/2000 | DAH | Review and revise letter to counsel for Columbian Rope; review analysis of memo on infringement issues; email to Linsner; additional email | 2.20 |
| 12/08/2000 | MWI | Completion of letter and memorandum with analysis in response to letter asserting non-infringement from Columbian Rope counsel dated Dec.. 5th. Phone conference with Harlow. | 4.40 |
| 12/11/2000 | MWI | Phone conference w/Harlow re revisions to cease and desist letter. Preparing email to Harlow. | 0.50 |
| 12/11/2000 | NFR | Office conference with Harlow re web-site; Print out complete Columbian Fiber website (www.fibersource.org); Prepare affidavit. | 1.00 |
| 12/11/2000 | DAH | Telephone conference with Linsner; instruct paralegal on affidavit re Super 76 product et al. Further substantive revisions to cease and desist letter; finalize letter and sent to counsel for Columbian Rope | 2.60 |
| 12/13/2000 | NFR | Office conference with Harlow regarding affidavits and web-site print out; Revise affidavit from December 11; Office conference with information technology specialist regarding print quality; Print out complete Columbian fiber source website (www.fibersource.org) and prepare additional affiavits. | 2.10 |
| 12/13/2000 | DAH | Further analysis re strategy for negotiating w/counsel. Voice mail to counsel for Columbian Rope. Review draft affidavit of paralegal and instruct re revisions; telephone conference with counsel for Columbian Rope; memo to Linsner. | 2.70 |
| 12/14/2000 | DAH | File work | 0.40 |
| 12/15/2000 | DAH | File work. | 0.20 |
| 01/03/2001 | MWI | Office conference with Harlow discussing lack of response from | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 80 of 181

Page 24 of 66

|            |     |                                                                                                                                                                                                                                                                          |      |
|------------|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
|            |     | of complaint.                                                                                                                                                                                                                                                             | 0.20 |
| 01/03/2001 | JES | Office conference with Harlow re background on the patent infringement and drafting complaint.                                                                                                                                                                            | 0.80 |
| 01/03/2001 | DAH | Analysis; office conference with Witsil; memo to Linsner. Outline issues for drafting of complaint; office conference with Slaughter.                                                                                                                                      | 2.60 |
| 01/04/2001 | DAH | Review memo on ADFIL domain name; check website office; conference with Slaughter re draft complaint; email to Linsner.                                                                                                                                                    | 0.80 |
| 01/05/2001 | DAH | Review of first draft of complaint; analysis; office conference with Slaughter re draft complaint. File work.                                                                                                                                                             | 1.60 |
| 01/05/2001 | JES | Review of correspondence with opposing counsel and further review of the files; work on complaint; office conference with Harlow re complaint and infringement issues.                                                                                                     | 5.20 |
| 01/05/2001 | JES | Review of sample complaint, patent at issue, and Columbian Rope website; familiarize with the files; draft complaint.                                                                                                                                                     | 7.30 |
| 01/08/2001 | SDT | IP due diligence search of online database for Patent; Office conference re search results.                                                                                                                                                                               | 0.60 |
| 01/08/2001 | DAH | Voice mail form Linsner; return call; email to Linsner. Prepare for telephone call to counsel for Columbian Rope; telephone conference with Weilacher; review memorandum.                                                                                                  | 1.40 |
| 01/08/2001 | JES | Review of memo and correspondence related to case background; work on complaint; review of VE holding case re patent infringement and venue; office conferences with Thomas re corporate status and chain of title dialog search for the patent at issue; review of materials related to lost profits damages calculations in patent infringement suits. | 6.50 |
| 01/09/2001 | DAH | Telephone conference with Linsner;                                                                                                                                                                                                                                        |      |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB Document 49-2 Filed 09/16/2003 Page 81 of 181

Page 25 of 66

| 01/12/2001 | DAH | Telephone conference with Linsner re filing of patent infringement lawsuit. | 0.40 |
| 01/12/2001 | JES | Further work on complaint, including creating two additional versions, one with ADFIL and Cemfiber as plaintiffs, and one with ADFIL, Cemfiber and W.R. Grace as plaintiffs | 1.80 |
| 01/15/2001 | DAH | Telephone conference with James Love re patent litigation; file work. | 0.70 |
| 01/16/2001 | DAH | Analysis re options on complaint. | 0.30 |
| 01/16/2001 | JES | Review of past correspondence by Witsil related to cease and desist letters and response by opposing counsel; revisions to complaints. | 0.50 |
| 01/19/2001 | DAH | Review and revise draft complaint; instruct associate; check on local counsel; telephone conference with Baker DONELSON law firm; letter to Linsner. Office conference with associate re W.R. Grace; further revisions to draft. | 2.40 |
| 01/19/2001 | JES | Additional updates to Complaints; research and draft memo re standing in patent infringement issues, including exclusive licensee issues | 3.50 |
| 01/22/2001 | DAH | Review memorandum re joining of W.R. Grace as exclusive licensee as co-plaintiff in lawsuit; office conference with associate re same. Analysis re exclusive license. | 0.80 |
| 01/22/2001 | JES | Review of license to W.R. Grace to examine standing issues and determine allocations of damage awards; research and update on memo re standing for licensees. | 1.50 |
| 01/24/2001 | DAH | File work. Memo to Linsner. | 0.60 |
| 01/25/2001 | DAH | Telephone conference with Linsner. | 0.30 |
| 01/29/2001 | JES | Review Western District of Tennessee Local Rules and Federal Rules of Civil Procedure, focusing on discovery issues such as deadlines and initial disclosures required; office conference with Harlow re discovery and on researching memo re damage theories and standards for obtaining treble damages and attorney | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16366                    Page 20 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 82 of 181

| 01/29/2001 | DAH | File work; check re local counsel; email; voicemail to John Speer; letter to John Speer re draft complaint and input. Instruct associate re local discovery rules; further revisions to draft complaint; analysis; assessment of damages and attorney fees. Further analysis re potential for preliminary injunction and/or partial summary judgment on liability. | 3.00 |
|---|---|---|---|
| 01/30/2001 | DAH | Voicemail from John Speer. Telephone conference with John Speer; memorandum to associate. File work. | 0.90 |
| 01/30/2001 | JES | Research and draft memo on patent infringement damages remedies, including damages theories and standards for increased damages and attorney's fees. | 4.80 |
| 01/31/2001 | JES | Research and draft memo on patent infringement damages remedies, including damages theories and standards for increased damages and attorney's fees. | 3.20 |
| 02/01/2001 | JES | Further research and draft memo on patent infringement damages remedies, including damages theories and standards for increased damages and attorney's fees. | 2.70 |
| 02/02/2001 | JES | Research and draft memo on patent infringement damages remedies, Including damages theories and Standards for increased damages and attorney's fees. | 6.00 |
| 02/05/2001 | JES | Research and draft memo on patent infringement damages remedies. including lost profits, established royalties, and reasonable royalties, and standards for increased damages and attorney's fees; further review of AIPLA article on damages. | 3.30 |
| 02/07/2001 | DAH | Review changes to draft Complaint proposed by local counsel; review proposed engagement letter from local counsel; letter to Linsner; letter to John | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16580    Page 27 of 60

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 83 of 181

| | | | |
|---|---|---|---|
| 02/14/2001 | DAH | Exchange of email on W.R. Grace situation. | 0.30 |
| 02/15/2001 | JES | Office conference with Harlow re proceeding with Complaint against Columbian Rope without W.R. Grace as plaintiff; locate marked up Complaint to revise for filing | 0.20 |
| 02/15/2001 | DAH | Instruct associate regarding revisions to the Complaint; review and analysis of memorandum on damages and attorney fees. | 1.00 |
| 02/16/2001 | JES | Office conference with Harlow re damages issues, specifically notice requirements and theories of recovery, and to assemble letter to client for information on profit margin and how to best determine from infringer their amount of infringing sales. | 0.30 |
| 02/16/2001 | DAH | Work on damages issues and instruct associate on clarifying research on these issues. | 0.50 |
| 02/19/2001 | JES | Work on additional updates to complaint and review of license agreement with Grace; work on getting pro hac vice information. | 1.20 |
| 02/19/2001 | DAH | Review draft complaint; email to Linsner. Review license agreement and supply agreement re rights and obligations re patent infringer; voice mail message to counsel fro W. R. Grace. Review patent claims and read same against the complaint; make final revisions; telephone conference with John Speer re filing and service; instruct associate on motion pro hac vice. | 2.20 |
| 02/20/2001 | DAH | Memo to local counsel; exchange of email on motion to admit pro hac vice. | 0.40 |
| 02/20/2001 | JES | Obtain information on motion to appear pro hac vice and provide to Harlow; review sample Motion and order for pr | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 84 of 181

Page 28 of 66

|            |     |                                                                                                                                                                                                                                                                                              |      |
|------------|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
|            |     | admit pro hac vice and related orders                                                                                                                                                                                                                                                         | 1.30 |
| 02/21/2001 | JES | Review correspondence from local Counsel; provide local counsel with complaint exhibit.                                                                                                                                                                                                       | 0.20 |
| 02/21/2001 | DAH | Follow-up on complaint. File work.                                                                                                                                                                                                                                                            | 0.70 |
| 02/22/2001 | DAH | Voice mail message from counsel for Columbian Rope.                                                                                                                                                                                                                                           | 0.30 |
| 02/22/2001 | JES | Work on letter to ADFIL for information related to their business operations and on how we can structure questions to get information from the infringer on damages; further research on issues of lost profits and notice for willful infringement.                                            | 2.90 |
| 02/23/2001 | DAH | Voicemail message to counsel for Columbian Rope. Review supplemental memo on constructive notice and damages issues. File work.                                                                                                                                                                | 1.30 |
| 02/26/2001 | DAH | Email update to local counsel; email update to James Love; email update to Linsner. File work.                                                                                                                                                                                                | 1.30 |
| 02/28/2001 | DAH | Review pleading; letter to Linsner; email to check status of summons.                                                                                                                                                                                                                         | 0.40 |
| 03/05/2001 | DAH | Email to local counsel regarding discovery issues.                                                                                                                                                                                                                                            | 0.30 |
| 03/06/2001 | JES | Office conference with Harlow re Rule 26 disclosures, research on judge's patent decisions, and motions for pro hac vice; update of motions for pro hac vice.                                                                                                                                   | 0.30 |
| 03/06/2001 | DAH | Voice mail from John Speer; voicemail to John Speer; email to Linsner; extensive telephone conference with John Speer re Judge Gibbons, Rule 26(f) conference, discovery and local rules. Instruct associate on pro hac vice motions, survey of Judge Gibbons decisions in patent matters, and preparations for Rule 26(f) disclosures | 2.40 |
| 03/07/2001 | JES | Review of information for TN counsel related to Judge Gibbons' Rule 26 disclosures; research on Judge Gibbons' case decisions.                                                                                                                                                                 | 2.60 |
| 03/08/2001 | DAH | Office conference with associate                                                                                                                                                                                                                                                              | 0.20 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16560                Page 29 of 60

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 85 of 181

| Date | Initials | Description | Hours |
|---|---|---|---|
| | | paralegal; finish and send motions for pro hac vice. | 0.30 |
| 03/12/2001 | DAH | Exchange of email on service of defendant; report to Linsner re service of complaint and status. | 0.50 |
| 03/12/2001 | JES | Review correspondence re service and motions for pro hac vice; obtain info on certificates of good standing for pro hac vice; review of TN local rules on initial attorney conference and initial disclosures; work on letter to client re additional info to calculate damages caused by defendant; correspondence to Harlow re patent case handled by Judge Gibbons, the judge assigned in the present case. | 3.20 |
| 03/16/2001 | DAH | Update on service of the Complaint and Summons. | 0.20 |
| 03/26/2001 | DAH | Exchange of emails re extension of time; exchange of emails re opposing counsel; check out opposing counsel | 0.80 |
| 03/28/2001 | DAH | Letter to Linsner | 0.30 |
| 03/29/2001 | JES | Review opposition's Motion and related materials to extend time; file organization. | 0.30 |
| 03/29/2001 | DAH | Review defendant's Motion to extend Time and its supporting documents; research new defense counsel for Columbian Rope | 0.60 |
| 04/03/2001 | DAH | Review order extending time signed by Judge Gibbons; docket time for answer; check background on Judge Gibbons. | 0.50 |
| 04/05/2001 | DAH | Telephone conference with Linsner re status | 0.30 |
| 04/06/2001 | DAH | Review additional fillings. | 0.30 |
| 04/15/2001 | DAH | Analysis re status, opportunity for settlement and strategies therefore; file work. | 1.40 |
| 04/16/2001 | DAH | Further analysis regarding timing. | 0.40 |
| 04/23/2001 | DAH | File work; letter to Linsner. | 0.30 |
| 04/24/2001 | DAH | Exchange of email re status, expected answer, etc. | 0.20 |
| 04/24/2001 | JES | Telephone conference with Harbinson re Columbian Rope's Answer and | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 86 of 181

Page 30 of 66

| Date | Initials | Description | Hours |
|------|----------|-------------|-------|
| | | Counterclaim. | 0.50 |
| 04/25/2001 | JES | Work on reply to Counterclaim | 2.40 |
| 04/25/2001 | DAH | Review email notice; review and analysis of answer and counterclaim filed by Columbian Rope; letter to Linsner; prepare draft of reply to counterclaim; letter to local counsel in Memphis. | 3.20 |
| 05/04/2001 | JES | Office conference with Harlow re changes to reply to Counterclaim; revise reply. | 1.00 |
| 05/04/2001 | DAH | Revisions to draft Reply to Counterclaim; office conference with Slaughter re same | 1.20 |
| 05/07/2001 | DAH | Final revisions to draft Reply to Counterclaim | 1.10 |
| 05/10/2001 | DAH | File work | 0.30 |
| 05/11/2001 | JES | Telephone conference with Harbinson w/ local counsel in TN re Reply to Counterclaim; review and input revisions made by Speer, TN local counsel. | 1.00 |
| 05/14/2001 | DAH | Review and approve final changes to reply to Counterclaim; instruct associate re same. Follow-up | 0.60 |
| 05/14/2001 | JES | Review of FRCP filing deadlines; final review and submission to TN local counsel of Reply to Counterclaim; follow-up to verify filing. | 0.60 |
| 05/14/2001 | DAH | Analysis; file work; office conference with Ted Corvette | 0.80 |
| 05/18/2001 | TEC | Office Conference with Harlow re pro hac vice admission in ADFIL v. Columbian Rope infringement action in Memphis; office conference with Slaughter re preparation of pro hac vice forms. | 0.30 |
| 05/18/2001 | JES | Prepare Motion and Order Pro Hac Vice for Mr. Corvette | 0.40 |
| 05/21/2001 | DAH | Review scheduling order from the Judge; letter to Linsner re same. | 0.30 |
| 05/21/2001 | JES | Review of Court's Notice of Setting Scheduling Conference and review of rules related to 26abl disclosures, 26f conferences and 16b conferences | 0.40 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386                    Page 31 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 87 of 181

| Date | | Description | Hours |
|---|---|---|---|
| | | correspondence w/ Harlow re docketing matters related to Order setting Scheduling conference. | 0.50 |
| 05/29/2001 | DAH | Office conference with Slaughter re Rule 26(f) disclosures etc., telephone Conference with counsel for Columbian Rope re upcoming scheduling Conference w. Judge, re discovery parameters, and re opportunities for settlement; office conference w/Corvette re pretrial conference issues. Email Linsner and to update on status and settlement discussions with counsel for Columbian Rope. | 1.30 |
| 05/29/2001 | TEC | Office conference with Slaughter preparing for Rule 26(a)(1) conference; telephone conference with Speer in Memphis re initial attorneys conference and docket status. | 2.00 |
| 05/29/2001 | JES | Work on Rule 26 (a) (1) disclosures; office conference with Mr. Corvette re scheduling conference and other case issues. | 5.90 |
| 05/30/2001 | DAH | Office conference with Ted Corvette re discovery period, etc. Analysis re timing of potential Markman hearing. | 0.50 |
| 05/30/2001 | TEC | Work on draft rule (f) Order; Rule 26(f) telephone conference with Dale Lischer attorney for Columbian Rope Company; office conference w/ Slaughter re Rule 26(f) certification. | 2.60 |
| 05/30/2001 | JES | Work on Rule 26(a)(1) disclosures; telephone conference with Corvette and Lischer re 26f conference and scheduling; work on 26f conference report. | 7.10 |
| 05/31/2001 | TEC | Review and respond to email from Slaughter re Rule 26(f) certification; office conference with Harlow re W.R. Grace developments and Polymer Group Inc.; research regarding PGI. | 0.90 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 88 of 181

Page 32 of 66

| Date | Initials | Description | Hours |
|---|---|---|---|
| 05/31/2001 | DAH | Review Rule 26 (f) report. Telephone conference with Linsner; analysis re developments re PGI and W.R. Grace; office conference with Corvette; preliminary check for website. | 1.50 |
| 05/31/2001 | JES | Work on Rule 26 (a) (1) disclosures. | 1.70 |
| 06/01/2001 | DAH | File work. Review document | 0.50 |
| 06/04/2001 | ABC | Conference re Rule 26 initial disclosures | 0.10 |
| 06/04/2001 | DAH | Office conference with Corvette about Rule 26(f)/Scheduling conference | 0.30 |
| 06/04/2001 | TEC | Work on Pro Hac Vice motion; office conference with Harlow; office conference with Slaughter and Cohen re Rule 26(a) disclosures; office conference with Harlow re Rule 2b initial attorneys' conference | 0.80 |
| 06/04/2001 | JES | Work on Corvette's Motion Pro Hac Vice; work on Rule 26al disclosures; office conference w/ Corvette and Cohen re 26al disclosures | 3.50 |
| 06/05/2001 | TEC | Research and planning to attend Rule 26(f) conference on June 13, 2001; office conference w/ Slaughter re same; office conference w/Harlow | 0.50 |
| 06/05/2001 | DAH | Office conference w/Corvette; analysis; Memorandum to file. | 0.80 |
| 06/06/2001 | MTR | Research for Ted Corvette re Polymer Group, Inc. | 1.20 |
| 06/06/2001 | TEC | Office conference with Harlow re 26(f) conference; telephone call to Speer; research regarding PGI | 1.50 |
| 06/06/2001 | DAH | Work on pre-trial matters; consideration of witnesses and evidence; analysis and preparation for preliminary pretrial; office conference w/ Ted Corvette re all of the above; preliminary review of Materials on Polymer Group, Inc. Run conflict check on Polymer Group. | 2.00 |
| 06/06/2001 | JES | Office conference w/ Harlow and | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 89 of 181

Page 33 of 66

| Date | Atty | Description | Hours |
|---|---|---|---|
| | | 16b conference, and legal strategy, ; work on Rule 26al disclosures. | 2.50 |
| 06/07/2001 | JES | Final revisions to Rule 26al disclosures; review notice changing 16b conference date. | 0.30 |
| 06/07/2001 | DAH | Follow-up on scheduling conference matters; further analysis of Polymer Group materials. | 0.80 |
| 06/07/2001 | TEC | Review scheduling conference order from Judge Gibbons; telephone conference w/ Ms. Flagg, scheduling case officer in Judge Gibbons district; telephone call to Speer; email to Speer re change in date for scheduling conference | 1.00 |
| 06/08/2001 | JES | Deal w/ service of Rule 26a 1 disclosures: provide license agreement Materials to Harlow; review correspondence by Corvette re Rule 16(b) conference | 0.20 |
| 06/08/2001 | TEC | Review and respond to email from John Speer re Rule 16 conference, scheduling and order; cancel flight reservation to Memphis on 6/12/01 due to Judge Gibbons' rescheduling of conference. | 0.40 |
| 06/08/2001 | DAH | Scheduling matters; analysis; memorandum to Linsner on numerous issues related to Columbian Rope and Polymer Group. Letter to Linsner. Review patent licensee w/ W.R. Grace; revise memorandum | 2.00 |
| 06/10/2001 | DAH | Review document | 0.20 |
| 06/11/2001 | DAH | Telephone conference w/ Linsner re WR Grace and agreements, etc.; check further on Polymer Group. Analysis re simultaneous pursuit of other options pending lapse of license and supply agreements. | 1.40 |
| 06/12/2001 | JES | Review local counsel correspondence re report of parties meeting and Rule 26al disclosures; review opposing counsel Motions Pro Hac Vice | 0.40 |
| 06/13/2001 | JES | Review Defendant's Rule 26al disclosures. | 0.20 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386     Page 34 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003     Page 90 of 181

| Date | Initials | Description | Hours |
|------|----------|-------------|-------|
| 06/18/2001 | DAH | Review and analysis of Patent License Agreement; review and analysis of Supply Agreement; outline analysis. | 1.20 |
| 06/20/2001 | TEC | Review and sign Pro Hac Vice motion for Columbian Rope case in Tennessee; review invoices from Baker Donelson in Memphis; office conference re same. | 0.30 |
| 06/28/2001 | DAH | Additional check on Polymer Group. Further analysis on several issues including WR agreements; prepare and send memorandum to Linsner re same. | 2.40 |
| 06/29/2001 | TEC | Telephone call to Kamani re Rule 26(f) schedule changes. | 0.20 |
| 06/29/2001 | DAH | Exchange of email; office conference w/ Corvette; prepare draft notification letter to WR Grace; related further analysis of Patent license and of Supply agreement. Revise draft letter | 1.50 |
| 07/02/2001 | TEC | Office conference w/ Harlow re issues arising out of WR Grace patent license. | 0.50 |
| 07/02/2001 | DAH | Voicemail message to counsel for Columbian Rope re follow-up on settlement discussions; voice mail message from counsel for Columbian Rope. File work; further analysis re patent license; office conference w./ Corvette; memo to the file; forward same to Linsner. | 1.60 |
| 07/03/2001 | TEC | Review email from Harlow to Linsner re WR Grace patent license provisions. | 0.20 |
| 07/06/2001 | DAH | Telephone conference w/Linsner re patent license issues w/ WR Grace. | 0.30 |
| 07/06/2001 | TEC | Telephone conference w/Kamani, attorney for Columbian Rope re revisions to Rule 26 schedule; office conference w/Slaughter re same; second telephone conference w/Kamani re schedule change approval and email Slaughter re same. | 0.80 |

| | | | |
|---|---|---|---:|
| | | Review draft 16(b) scheduling Order, correspondence w/ Speer and Harbison re 16(b) scheduling order issues. | 1.00 |
| 07/08/2001 | DAH | File work. Review document | 0.30 |
| 07/09/2001 | JES | Office conference w/ Corvette re handling Markman hearings and Markman hearing research. | 1.20 |
| 07/09/2001 | TEC | Telephone conference with Speer re Rule 26(f) hearing with Judge Gibbons on 7/11/01; office conference w/ Harlow re settlement discussions, Markman hearing schedule and preparation for hearing. | 1.80 |
| 07/09/2001 | DAH | Analysis and outline of approach to counsel for Columbian Rope re any potential for settlement; lengthy telephone conference w/ counsel for Columbian Rope re same. Office conference w/ Corvette re timing of Markman hearing. Further analysis re Markman issues. | 2.00 |
| 07/10/2001 | DAH | Prepare memorandum on settlement discussions; preparation for preliminary pre-trial with the judge; office conference w/ Ted Corvette re settlement discussions; email memorandum to Linsner. File work. | 2.40 |
| 07/10/2001 | TEC | Prepare for Rule 26 hearing; office conference w/ Harlow re settlement possibilities; review proposed scheduling order. | 2.60 |
| 07/11/2001 | TEC | Office conference w/ Harlow; scheduling conference w/ Gibbons by Telephone w/ Harlow. | 0.50 |
| 07/11/2001 | DAH | Analysis re Markman hearing; preparation for conference call; conference call w/ Judge Gibbons re pre-trial and scheduling issues. | 1.60 |
| 07/16/2001 | TEC | Review and approve invoices from Baker, Donelson; work in file. | 0.40 |
| 07/23/2001 | JES | Review Scheduling Order and Status Conference Order | 0.30 |
| 07/23/2001 | TEC | Review scheduling orders from Judge Gibbons; work in file scheduling docket dates w/ secretary. | 0.30 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 92 of 181   Page 36 of 66

| | | | |
|---|---|---|---|
| | | Gibbons; review Notice of Setting; letter to Linsner re Scheduling Conference and status. | 0.60 |
| 07/25/2001 | TEC | Office conference w/ Harlow re potential settlement; review email from Harlow to Linsner | 0.50 |
| 07/25/2001 | DAH | Telephone conference w/ counsel for Columbian Rope re potential settlement of the matter: check on attorneys fees and costs expended so far; report to Linsner re settlement developments. | 1.60 |
| 07/27/2001 | DAH | Analysis re WR Grace license situation | 0.30 |
| 07/30/2001 | DAH | Email from Linsner | 0.20 |
| 07/30/2001 | TEC | Office conference w/ Harlow re WR Grace License provisions | 0.20 |
| 08/02/2001 | DAH | Follow-up on Polymer Group. | 0.30 |
| 08/06/2001 | DAH | Memorandum to Linsner. | 0.40 |
| 08/07/2001 | DAH | File work. | 0.30 |
| 08/13/2001 | MWI | Office conference w/ Harlow re: alternative product design around proposed by Columbian Rope. | 0.30 |
| 08/13/2001 | DAH | Telephone conference w/ attorney for Columbian Rope re settlement proposal. Analysis re settlement proposal; instruct associate re acrylic fiber issue; check w/ accounting. | 1.10 |
| 08/14/2001 | MWI | Review of file re: design around product proposed by Columbian Rope, as described by Harlow. | 0.70 |
| 08/15/2001 | MWI | Office conference w/ Harlow, Initial review of letter from opposing counsel w/ proposal for revisions to product. | 0.40 |
| 08/15/2001 | DAH | Telephone conference w/ Linsner re Columbian Rope proposal; letter to Linsner; preliminary review of materials forwarded by counsel for Columbian Rope. | 0.80 |
| 08/16/2001 | MWI | Review of references provided by Columbian Rope's attorney in proposal to design around the ADFIL patent. | 1.40 |

| | | proposed fiber composition in view of claim language. | 0.30 |
|---|---|---|---|
| 08/20/2001 | MWI | Office conference w/ Harlow. Review of US Patent and Trademark office file history of ADFIL's patent w/ respect to materials claimed and cited art. | 4.30 |
| 08/20/2001 | DAH | First level review of patent in light of prior art and defendant's proposal on acrylic fiber; telephone conference w/ Linsner; office conference w/associate re patent file history re acrylic; office conference w/ Corvette re WR Grace. Analysis of prior art acrylic fiber U.S. Patent and EPO patent application; review of relevant organic chemistry materials and U.S. Patent file history materials. Analysis; preparation of memorandum re issues relating to acrylic fibers. | 5.40 |
| 08/21/2001 | MWI | Office conference w/ Harlow. Selection of relevant portions of US File History for his review. | 1.50 |
| 08/21/2001 | DAH | Further analysis; email to Linsner. Analysis re 30mm parameter; office conference w/associate re 30 mm parameter and re file history. Check on technical background of counsel for Columbian Rope; review ADFIL claims on 30 mm length parameter; exchange of email with Linsner. | 2.20 |
| 08/22/2001 | DAH | Exchange of email w/ Linsner on patent limitations issues. Read relevant documents from U.S. File history; analysis of mechanical specification issues on length and diameter. Office conference w/ Witsil re issues on length and diameter; email to Linsner; review relevant documents in EPO file history; analysis of same w/ particular reference to polyolefin issue on acrylic. | 4.40 |
| 08/22/2001 | MWI | Review of file history of US Patent and EPO opposition proceeding. Office | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 94 of 181

Page 38 of 66

| | | w/ Harlow. Preparation of memorandum re; design-arounds proposed by Columbian Rope. | 7.40 |
|---|---|---|---|
| 08/23/2001 | DAH | | |
| | | Review ADFIL U.S. Patent as issued with particular reference to the chemical character of the fibers claimed; office conference w/ associate re file history issues. Prepare for telephone conference; extensive telephone conference w/ counsel for Columbian Rope re acrylic proposal; further review of physical parameters of cited patent; office conference w/ associate re physical parameters. | 3.40 |
| 08/23/2001 | MWI | | |
| | | Research of US file history for surrender of length greater than 30 mm in prosection (none found). Office conferences w/ Harlow. Preparation and completion of draft memorandum re: Columbian Rope's proposal to avoid infringement and settle suit. | 9.40 |
| 08/24/2001 | MWI | | |
| | | Office conference w/ Harlow and revisions finalizing memorandum re: Columbian Rope's settlement proposal. | 1.20 |
| 08/24/2001 | DAH | Review and analysis of memorandum on Columbian Rope proposal including analysis of "acrylic" patent. Office conference w/ associate re analysis memorandum. | 1.40 |
| 08/27/2001 | DAH | File work. | 0.30 |
| 08/28/2001 | DAH | Review revised memorandum on response to Columbian Rope proposal; office conference w/ associate re same and re preparation of draft response to Columbian Rope. | 0.80 |
| 08/29/2001 | DAH | Review memorandum in final form and send to Linsner; email to Linsner re status of response. | 0.60 |
| 08/30/2001 | DAH | Review basic cement/concrete technology. | 1.50 |
| 08/31/2001 | DAH | Voice mail message from Linsner; return call. Exchange of telephone | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 95 of 181

Page 39 of 66

| Date | Initials | Description | Hours |
|---|---|---|---|
| 09/04/2001 | DAH | Check on draft response. Review and note revisions to draft letter responding to counsel for Columbian Rope. | 1.00 |
| 09/04/2001 | MWI | Preparation of draft response to counsel for Columbian Rope, rejecting proposed design arounds and suggesting alternative terms. | 3.40 |
| 09/05/2001 | DAH | Revisions to reply letter to counsel for Columbian Rope. | 1.20 |
| 09/10/2001 | MWI | Office conference w/ Harlow. Discussion and revision to text of draft letter to Columbian rope's counsel. | 0.80 |
| 09/10/2001 | DAH | Further revisions to draft letter to counsel for Columbian Rope; email same to Linsner for comment. Telephone conference w. Linsner re negotiations. | 1.50 |
| 09/11/2001 | DAH | Check chemical engineering handbook and other texts re "polyolefin" issue. Exchange of email w/ Linsner; telephone conference w/ counsel for Columbian Rope; office conference w/ Corvette; final review of letter and send same to counsel for Columbian Rope. | 1.50 |
| 09/12/2001 | DAH | Further investigation as to acrylic being a polyolefin derivative, e.g. being made from nitrogen reaction with propylene. | 1.20 |
| 09/13/2001 | MWI | Research for patents issued disclosing the manufacture of acrylonitrile from olefin, therefore showing that acrylonitrile comprises at least a derivative of olefin and would literally infringe the ADFIL patent. Preparation of transmittal to Harlow. | 1.70 |
| 09/14/2001 | DAH | Organize documents. Revise letter and send out draft for comment. Review US Patents No. 3,960,925, No. 5,235,088 and No. 4,333,741 all regarding deriving acrylonitrile from propylene et al; prepare letter to counsel for | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 96 of 181

Page 40 of 66

| Date | Initials | Description | Hours |
|------|----------|-------------|-------|
| 09/17/2001 | TEC | Office conference w/ Harlow re settlement strategics w/ Columbian Rope. | 1.00 |
| 09/17/2001 | DAH | Telephone conference w/ counsel for Columbian Rope. Receipt of and review of counterproposal on settlement; extensive analysis of same including options to counter offer; voice mail message to counsel for Columbian Rope; file work; prepare and email memorandum to Linsner. | 3.30 |
| 09/18/2001 | TEC | Office conference w/ Harlow re settlement discussions. | 0.30 |
| 09/18/2001 | DAH | Analysis re structure of our counter offer; telephone message to Linsner; prepare and email memorandum to Linsner re settlement offer and potential responses. | 1.60 |
| 09/20/2001 | DAH | Voice mail message from Linsner; email to Linsner. | 0.30 |
| 09/21/2001 | DAH | File work; voicemail message from Carter; telephone conference with | |
| 09/25/2001 | DAH | Carter re settlement values; analysis. | 0.80 |
| 09/25/2001 | DAH | Analysis on response; prepare draft response letter to Columbian Rope on settlement proposal. | 1.60 |
| 09/26/2001 | DAH | Review comments. | 0.40 |
| 09/26/2001 | TEC | Review letter to Lischer and email to Harlow re same. | 0.50 |
| 09/26/2001 | MWI | Preparation of comments to Harlow on draft letter summarizing settlement position to Columbian Rope. | 0.80 |
| 09/27/2001 | DAH | Integrate revisions to response. | 0.40 |
| 09/28/2001 | TEC | Office conference w/ Harlow re settlement strategies. | 0.30 |
| 09/28/2001 | DAH | Office conference w/ Corvette re lawsuit; finalize letter to counsel for Columbian Rope. | 0.80 |
| 10/01/2001 | DAH | Voicemail message from counsel for Columbian Rope; telephone conference w/ office of our local counsel in Memphis; telephone conference w/ counsel for Columbian Rope re settlement proposal; report on same to Linsner. | 0.80 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16586    Page 41 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 97 of 181

| | | | |
|---|---|---|---|
| | | re settlement issues and re consideration of attorneys fees by Judge Gibbons. Exchange of email w/ Linsner re settlement progress. | 0.50 |
| 10/10/2001 | DAH | Review counteroffer letter from counsel for Columbian Rope; Analysis of same; read reported case cited to me by counsel; memorandum to Linsner re counteroffer. | 0.80 |
| 10/15/2001 | DAH | Email to Linsner regarding latest settlement proposal. | 0.20 |
| 10/16/2001 | DAH | Attempts to reach Linsner; email to Carter. Exchange of email w/ Linsner re settlement issues. | 0.60 |
| 10/17/2001 | DAH | Draft response letter to counsel for Columbian Rope.0.40 | |
| 10/19/2001 | DAH | Revise, finalize and send letter to counsel for Columbian Rope Co.0.50 | |
| 10/22/2001 | DAH | Review additional instructions from Linsner.0.20 | |
| 10/24/2001 | DAH | File work.0.30 | |
| 10/26/2001 | TEC | Work in file.0.30 | |
| 10/29/2001 | TEC | | |
| | | Office conference w/ Harlow re settlement agreement draft; review email from Harlow; begin work on draft settlement agreement.0.80 | |
| 10/29/2001 | DAH | Review status; telephone conference w/ attorney for Columbian Rope re settlement; office conference w/ Corvette re preparation of documents; email memorandum to Linsner to report settlement; letter to counsel for Columbian Rope. | 1.30 |
| 10/30/2001 | TEC | Work on draft settlement agreement. | 2.20 |
| 10/31/2001 | DAH | Review email from Linsner; office Conference w/ Corvette re settlement documents. | 0.40 |
| 10/31/2001 | TEC | Work on ADFIL settlement agreement and final judgment; review letter from Harlow to Lischer. | 4.50 |
| 11/05/2001 | DAH | Draft settlement agreement; review revisions and make suggestions for revisions; office conference w/ Corvette re same. | 0.50 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16906                    Page 42 of 68

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 98 of 181

| Date | Initials | Description | Hours |
|---|---|---|---|
| 11/06/2001 | SDT | Office conference w/ IP partner re Settlement Agreement and need for Patent Transfer; conduct database search (USPTO. Delphion and Dialog) for status of ownership history; Revise Cemfiber ownership history; Revise Settlement Agreement for revisions marked by IP Partner; Prepare correspondence to IP Partner re changes made. | 1.10 |
| 11/06/2001 | TEC | Office correspondence w/ Harlow re draft settlement agreement; office conference w. Thomas re US Patent and Trademark Office search for assignment of '195 patent; review '195 patent ownership assignment from USPTO database. | 1.30 |
| 11/08/2001 | SDT | Conference with IP Partner re ordering US Patent Copy; review USPTO website for instructions on ordering copy of patent; telephone conference with USPTO re ordering patent copy. | 0.50 |
| 11/08/2001 | DAH | Office conference w/Corvette re form of consent judgment. Email from Linsner; check status on draft documents; reply to Linsner re status. | 0.60 |
| 11/08/2001 | TEC | Review and revise draft settlement agreement, Final Order and supporting documents to sent to Linsner and Speers. | 1.70 |
| 11/09/2001 | TEC | Review email form Speer re Settlement Agreement and Final Order; review email from Carter. | 0.30 |
| 11/09/2001 | DAH | Office conference w/ Corvette re hearing on attorneys fees. File work; review email on documents from local counsel; Analysis; exchange of email. | 0.90 |
| 11/12/2001 | SDT | Review original copy of US Patent ordered and received from USPTO and charge related fees to appropriate account for credit card charges. | 0.20 |
| 11/12/2001 | DAH | Note case on attorneys fees and advise Corvette of same; email to Linsner and Carter. | 0.60 |
| 11/14/2001 | TEC | Office conference w/ Harlow; review | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 43 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 99 of 181

| | | | |
|---|---|---|---|
| 11/16/2001 | DAH | Memorandum to Corvette. | 0.20 |
| 11/19/2001 | DAH | Office conference w/ Corvette re settlement documents. | 0.20 |
| 11/19/2001 | TEC | Review email from Speer re changes to Final Judgment and proposed settlement agreement; office conference w/ Harlow; telephone call to Speer's office; work in file. | 1.30 |
| 11/20/2001 | DAH | Analysis regarding choice of Magistrates for hearing on attorneys fees. | 0.30 |
| 11/20/2001 | TEC | Telephone conference w/ Speer re joint/separate agreed to order to refer attorneys fee issue to Magistrate; office conference w/ Harlow; email to Harlow re reference to Magistrate for attorneys fee determination. | 1.00 |
| 11/23/2001 | DAH | exchange of email with Linsner | 0.20 |
| 11/27/2001 | DAH | Office conference w/ Corvette re reference to US Magistrate. | 0.20 |
| 11/27/2001 | TEC | Review email from Harlow to Linsner and from Speer re motion for referral; office conference w/ Harlow. | 0.50 |
| 11/28/2001 | TEC | Review and revise proposed Settlement Agreement and Final Judgment in light of Speer's conversation with Judge Gibbon's case manager; draft joint motion; draft letter to Liseher. | 1.80 |
| 11/29/2001 | TEC | Work in file; email to Harlow. | 0.30 |
| 12/04/2001 | DAH | Memorandum to local counsel re settlement documents. | 0.30 |
| 12/05/2001 | TEC | Office conference w/ Harlow re ownership of '195 patent. | 0.30 |
| 12/05/2001 | DAH | Review drafts and make follow-up telephone call to counsel for Columbian Rope in an effort to move things to closure. Telephone conference w/counsel for Columbian Rope re documents; email to Linsner re counteroffer on the attorney fees. | 1.00 |
| 12/07/2001 | DAH | Exchange email w/ Linsner re counteroffer on attorney fees. | 0.20 |
| 12/11/2001 | DAH | Review comments from local counsel re form of the motion. | 0.30 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 100 of 181

Page 44 of 66

| | | Settlement Agreement; office conference w/ Harlow re same. | 0.30 |
|---|---|---|---|
| 12/14/2001 | DAH | Telephone conference w/ counsel for Columbian Rope. | 0.20 |
| 12/18/2001 | DAH | File work. | 0.20 |
| 01/08/2002 | DAH | Telephone conference w/ Linsner. Voice mail message to counsel for Columbian Rope. | 0.40 |
| 01/11/2002 | DAH | Receipt of and preliminary review of counter proposal on documents from counsel for Columbian Rope. | 0.40 |
| 01/15/2002 | DAH | Review and approve invoice from local counsel; review and annotate proposed changes to the Settlement Agreement and Consent Judgment; outline issues for resolution. | 1.40 |
| 01/16/2002 | DAH | Analysis and memorandum to the file re changes to settlement agreement/order proposed by counsel for Columbian Rope. | 0.80 |
| 01/17/2002 | TEC | Review and revise Settlement Agreement, Interlocutory Consent Judgment, Final Consent Judgment and review Harlow's analysis. | 2.40 |
| 01/18/2002 | DAH | Review additional analysis of proposed changes. | 0.40 |
| 01/23/2002 | DAH | File work. | 0.20 |
| 01/25/2002 | TEC | Office conference w/ Harlow re Columbian Rope's suggested revision to settlement documents. | 0.60 |
| 01/25/2002 | DAH | Further analysis of proposals from counsel for Columbian; memorandum to Linsner re same. | 1.40 |
| 01/28/2002 | DAH | Voice mail message from Linsner; telephone conference w/ Linsner re wording of agreements and related issues; memorandum to file re same; review suggested revisions form local counsel; review and approve invoice from local counsel. | 0.80 |
| 02/06/2002 | JES | Research and draft memo on patent infringement damages remedies, including damages theories and standards for increased damages and attorney's fees. | 6.40 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386                    Page 45 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 101 of 181

| | | | |
|---|---|---|---|
| | | and order. | 0.30 |
| 02/14/2002 | TEC | Review Lischer's proposed revisions to Settlement Agreement and Consent Order; telephone call to Lischer; left message. | 0.40 |
| 02/14/2002 | DAH | Telephone conference with Linsner re termination of WR Grace exclusivity, etc. Review WR Grace documents. | 0.50 |
| 02/15/2002 | DAH | File Work. Telephone conference w/ Linsner. | 0.40 |
| 02/19/2002 | DAH | exchange of emails w/ Local counsel. | 0.30 |
| 02/19/2002 | TEC | Review notes for telephone conference w/ Lischer. | 0.30 |
| 02/20/2002 | DAH | Office conference w/ Corvette re negotiations. | 0.40 |
| 02/20/2002 | TEC | Telephone conference w/ Lischer; office conference w/ Harlow re settlement agreement. | 0.60 |
| 02/22/2002 | DAH | Telephone conference w/ Linsner re sales of assets to PGI; review draft letter to Lischer; brief discussion w/ Corvette. | 0.40 |
| 02/22/2002 | TEC | Draft letter to Lischer; office conference w/ Harlow re same; review and finalize letter to Lischer. | 1.80 |
| 02/26/2002 | TEC | Telephone conference w. Lischer re remaining substantive issues in Settlement Agreement; email regarding same to Harlow. | 0.50 |
| 02/28/2002 | TEC | Review willfulness research re exceptional case standard for attorneys fees, etc. | 0.40 |
| 12/07/2003 | MWI | Drafting response letter to Columbian Rope and memorandum on analysis | 4.00 |
| 11/27/2002 | TEC | Assemble invoices and materials to prepare ADFIL's application for attorney's fees; office conference with Mr. Harlow regarding same | 1.00 |
| 12/03/2002 | DAH | Office conference with Ted Corvette/ analysis regarding preparation of petition and supporting documentation, affidavit, etc. | 0.60 |
| 12/08/2002 | MWI | Research for and preparation of declaration regarding chain of custody | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 102 of 181   Page 46 of 66

| 12/12/2002 | TEC | Work on AFDIL's application for reasonable attorney fees; office conference with Mr. Slaughter regarding research on standard for attorney fees | 6.30 |
|---|---|---|---|
| 12/12/2002 | JES | Office conference with Mr. Corvette regarding attorney's fees submission; review Settlement Agreement, Interlocutory Consent Judgment, and Order of Reference; research and work on memo for attorney's fees submission | 8.40 |
| 12/13/2002 | TEC | Work on application for attorney fees; office conference with Ms. Childers regarding Schedule for 5 phases of case; draft motion and application for attorney fees; review Mr. Slaughter's memorandum and research regarding Lodestar standard for attorney fee determination; begin work on memorandum insupport of application | 2.80 |
| 12/13/2002 | JES | Research and work on memo for attorney's fees submission | 5.00 |
| 12/15/2002 | TEC | Work on Affidavit in Support of Application for Attorney Fees; work on Statement of Facts for memorandum in support of application for attorney fees | 3.50 |
| 12/16/2002 | DAH | Work on preparation of attorney fees submission | 0.60 |
| 12/16/2002 | TEC | Office conference with Mr. Slaughter regarding research on standards for attorney fees application; office conference with Mr. Witsil regarding Declaration and exhibits; draft memorandum in support of application for attorney fees | 9.70 |
| 12/16/2002 | MWI | Office conferences with Mr. Corvette. Revisions to affidavit as directed by Mr. Corvette to incorporate material to which he refers in his statement of facts. | 3.10 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16500    Page 44 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 103 of 181

|  |  |  |
|---|---|---|
| | application for attorney fees; draft Declaration regarding MVA invoices paid by client and biographies and standard hourly rates for attorneys on case. | 7.50 |
| 12/17/2002  MWI | Making revisions to my affidavit and reviewing new Appendices | 0.30 |
| 12/18/2002  TEC | Telephone conference with Mr. Starnes regarding revisions to Memorandum in Support of Application for Reasonable Attorney Fees; email to Mr. Stames regarding same. | 0.30 |

[*34]

| Dates of Service | Court's Reason for Adjustment | Reasonable Hours | Reasonable Rate | Adjusted Lodestar |
|---|---|---|---|---|
| 06/15/2000 | | | | |
| | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 06/15/2000 | | | | |
| | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 06/30/2000 | | | | |
| | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 07/05/2000 | | | | |
| | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 07/24/2000 | | | | |
| | 1) 2 of 5 entries conceded to be noncompensable; reduce by 40%; 2) 1 of 2 remaining entries vague; reduce by an additional 50% | 0.24 | $ 275.00 | $ 66.00 |
| 07/25/2000 | | | | |
| | 2 of 3 entries are vague; reduce by 66% | 0.33 | $ 275.00 | $ 90.75 |
| 07/25/2000 | | | | |
| | 1) 1 of 3 entries is vague; reduce by 33% and 2) reduce by additional .075 hours for overlap with DAH | 1.97 | $ 160.00 | $ 315.36 |
| 07/28/2000 | | | | |
| | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 08/07/2000 | | | | |
| | | 0.40 | $ 160.00 | $ 64.00 |
| 08/17/2000 | | | | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 48 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 104 of 181

|            |                                            |      |          |          |
|------------|--------------------------------------------|------|----------|----------|
|            |                                            | 0.50 | $ 160.00 | $ 80.00  |
| 08/16/2000 |                                            |      |          |          |
|            |                                            | 2.80 | $ 160.00 | $ 448.00 |
| 08/16/2000 |                                            |      |          |          |
|            | Reduce by 50% for padding                  | 0.15 | $ 195.00 | $ 29.25  |
| 08/24/2000 |                                            |      |          |          |
|            | Noncompensable - Vague                     | 0.00 | $ 275.00 | $ 0.00   |
| 08/25/2000 |                                            |      |          |          |
|            | 2 of 4 entries are vague; reduce by 50%    | 0.40 | $ 275.00 | $ 110.00 |
| 08/29/2000 |                                            |      |          |          |
|            | 3 of 4 entries are vague; reduce by 75%    | 0.25 | $ 275.00 | $ 68.75  |
| 09/18/2000 |                                            |      |          |          |
|            | 4 of 5 entries are vague; reduce by 80%    | 0.16 | $ 275.00 | $ 44.00  |
| 09/18/2000 |                                            |      |          |          |
|            | 1 of 2 entries is vague; reduce by 50%     | 0.50 | $ 160.00 | $ 80.00  |
| 09/19/2000 |                                            |      |          |          |
|            | 1 of 2 entries is vague; reduce by 50%     | 0.50 | $ 275.00 | $ 137.50 |
| 09/20/2000 |                                            |      |          |          |
|            | Noncompensable - Vague                     | 0.00 | $ 275.00 | $ 0.00   |
| 09/20/2000 |                                            |      |          |          |
|            |                                            | 1.20 | $ 160.00 | $ 192.00 |
| 09/22/2000 |                                            |      |          |          |
|            | Noncompensable - Vague                     | 0.00 | $ 275.00 | $ 0.00   |
| 09/25/2000 |                                            |      |          |          |
|            | Noncompensable - Vague                     | 0.00 | $ 275.00 | $ 0.00   |
| 09/25/2000 |                                            |      |          |          |
|            |                                            | 0.80 | $ 160.00 | $ 128.00 |
| 09/28/2000 |                                            |      |          |          |
|            | Noncompensable - Vague                     | 0.00 | $ 160.00 | $ 0.00   |
| 09/28/2000 |                                            |      |          |          |
|            | 1 of 2 entries is vague; reduce by 50%     | 0.20 | $ 275.00 | $ 55.00  |
| 10/13/2000 |                                            |      |          |          |
|            | Noncompensable - Vague                     | 0.00 | $ 275.00 | $ 0.00   |
| 10/16/2000 |                                            |      |          |          |
|            | Noncompensable - Vague                     | 0.00 | $ 275.00 | $ 0.00   |
| 10/16/2000 |                                            |      |          |          |
|            | 1 of 2 entries is vague; reduce by 50%     | 0.25 | $ 160.00 | $ 40.00  |
| 10/18/2000 |                                            |      |          |          |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 49 of 66

Case 1:01-cv-00709-SSB    Document 49-12    Filed 09/16/2003    Page 105 of 181

| Date | Note | Hours | Rate | Amount |
|---|---|---|---|---|
| 10/19/2000 | Reduce by 50% for padding | 0.10 | $ 160.00 | $ 16.00 |
| 10/24/2000 | 3 of 4 entries are vague; reduce by 75% | 0.20 | $ 275.00 | $ 55.00 |
| 10/24/2000 | | 1.10 | $ 160.00 | $ 176.00 |
| 10/25/2000 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 10/25/2000 | Reduce by 50% for padding | 0.10 | $ 160.00 | $ 16.00 |
| 11/01/2000 | Reduce by 50% for padding | 0.10 | $ 275.00 | $ 27.50 |
| 11/01/2000 | Noncompensable - Vague | 0.00 | $ 160.00 | $ 0.00 |
| 11/06/2000 | | 0.40 | $ 160.00 | $ 64.00 |
| 11/06/2000 | 1 of 5 entries is vague; reduce by 20% | 2.24 | $ 275.00 | $ 616.00 |
| 11/09/2000 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 11/10/2000 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 11/17/2000 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 11/17/2000 | | 0.50 | $ 160.00 | $ 80.00 |
| 11/20/2000 | 1 of 2 entries is vague; reduce by 50% | 0.50 | $ 160.00 | $ 80.00 |
| 11/20/2000 | 1 of 5 entries is vague; reduce by 20% | 1.76 | $ 275.00 | $ 484.00 |
| 11/21/2000 | | 0.40 | $ 160.00 | $ 64.00 |
| 11/21/2000 | | 0.50 | $ 195.00 | $ 97.50 |
| 11/21/2000 | | 6.00 | $ 275.00 | $ 1,650.00 |
| 11/22/2000 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 11/22/2000 | 1 of 4 entries is vague; reduce by 25% | 1.50 | $ 275.00 | $ 412.50 |

| Date | Note | Hours | Rate | Amount |
|---|---|---|---|---|
| 11/27/2000 | 2 of 6 entries are vague; reduce by 33% | 1.98 | $275.00 | $544.50 |
| 11/27/2000 | | 0.40 | $160.00 | $64.00 |
| 11/28/2000 | 1) Plaintiff concedes reduction of 2 hours for W.R. Grace issues; and 2) 4 of 7 remaining entries are vague; reduce remaining time by 57% | 1.12 | $275.00 | $307.45 |
| 11/28/2000 | Reduce by .15 hours for overlap with DAH | 0.15 | $275.00 | $41.25 |
| 11/29/2000 | 1 of 6 entries is vague; reduce by 17% | 2.66 | $275.00 | $730.40 |
| 11/29/2000 | Reduce by 50% for padding | 0.15 | $195.00 | $29.25 |
| 11/29/2000 | | 0.80 | $275.00 | $220.00 |
| 11/29/2000 | 1) 1 of 4 entries is vague; reduce by 25% and 2) reduce by additional .40 hours for overlap with TEC | 0.65 | $160.00 | $104.00 |
| 11/30/2000 | | 3.20 | $275.00 | $880.00 |
| 11/30/2000 | 2 of 5 entries are vague; reduce by 40% | 1.56 | $275.00 | $429.00 |
| 12/01/2000 | 1) 1 of 2 entries is vague; reduce by 50%; 2) additional reduction of .26 hours for overlap with DAH; and 3) reduce remainder by 50% for excessive hours | 1.27 | $160.00 | $203.20 |
| 12/01/2000 | | 0.40 | $275.00 | $110.00 |
| | Reduce by 50% for excessive hours | 0.80 | $160.00 | $128.00 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10380    Page 51 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 107 of 181

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 12/01/2000 | | 2.60 | $ 275.00 | $ 715.00 |
| 12/04/2000 | 1 of 3 entries is vague; reduce by 33% | 0.53 | $ 275.00 | $ 145.20 |
| 12/04/2000 | 1) Reduce by .27 hours for overlap with DAH and 2) reduce remainder by 50% for excessive hours | 1.67 | $ 160.00 | $ 266.40 |
| 12/04/2000 | Reduce by .20 hours for overlap with TEC | 6.30 | $ 80.00 | $ 504.00 |
| 12/05/2000 | | 1.00 | $ 275.00 | $ 275.00 |
| 12/05/2000 | 1) Reduce by 50% for duplicate billing with DAH and 2) reduce remainder by 50% for excessive hours | 0.73 | $ 160.00 | $ 116.00 |
| 12/06/2000 | Reduce by .17 hours for overlap with DAH | 0.23 | $ 160.00 | $ 36.80 |
| 12/06/2000 | 2 of 3 entries are vague; reduce by 66% | 0.33 | $ 275.00 | $ 90.75 |
| 12/06/2000 | | 1.50 | $ 80.00 | $ 120.00 |
| 12/08/2000 | 2 of 4 entries are vague; reduce by 50% | 1.10 | $ 275.00 | $ 302.50 |
| 12/08/2000 | 1) 1 of 2 entries is vague; reduce by 50% and 2) reduce remainder by 50% for excessive hours | 1.10 | $ 160.00 | $ 176.00 |
| 12/11/2000 | 1 of 2 entries is vague; reduce by 50% | 0.25 | $ 160.00 | $ 40.00 |
| 12/11/2000 | Noncompensable - duplicate of 12/13/2000 | 0.00 | $ 80.00 | $ 0.00 |
| 12/11/2000 | 1 of 4 entries is vague; reduce by 25% | 1.95 | $ 275.00 | $ 536.25 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 52 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 108 of 181

|  |  |  |  |  |
|---|---|---|---|---|
|  | Reduce by .54 hours for overlap with DAH | 1.56 | $ 80.00 | $ 124.80 |
| 12/13/2000 | 2 of 5 entries are vague; reduce by 40% | 1.62 | $ 275.00 | $ 445.50 |
| 12/14/2000 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 12/15/2000 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 01/03/2001 | Conference allowed because DAH conference hours Stricken for vagueness, but reduce by 50% for padding. | 0.10 | $ 160.00 | $ 16.00 |
| 01/03/2001 | Conference allowed because DAH conference hours stricken for vagueness | 0.80 | $ 160.00 | $ 128.00 |
| 01/03/2001 | 4 of 5 entries are vague; reduce by 80% | 0.52 | $ 275.00 | $ 143.00 |
| 01/04/2001 | 2 of 4 entries are vague; reduce by 50% | 0.40 | $ 275.00 | $ 110.00 |
| 01/05/2001 | 2 of 4 entries are vague; reduce by 50% | 0.80 | $ 275.00 | $ 220.00 |
| 01/05/2001 | Reduce by .40 hours for overlap with DAH | 4.80 | $ 160.00 | $ 768.00 |
| 01/05/2001 | 1 of 3 entries is vague; by 33% | 4.82 | $ 160.00 | $ 770.88 |
| 01/08/2001 | Reduce by .30 hours for overlap with JES | 0.30 | $ 160.00 | $ 48.00 |
| 01/08/2001 | 3 of 6 entries are vague; reduce by 50% | 0.70 | $ 275.00 | $ 192.50 |
| 01/08/2001 |  | 6.50 | $ 160.00 | $ 1,040.00 |
| 01/09/2001 | Noncompensable - Vague | 0.80 | $ 275.00 | $ 220.00 |
| 01/12/2001 |  | 0.40 | $ 275.00 | $ 110.00 |
| 01/12/2001 | Plaintiff concedes reduction of .90 for W.R. Grace issues | 0.90 | $ 160.00 | $ 144.00 |
| 01/15/2001 | 1 of 2 entries is vague; reduce |  |  |  |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16500    Page 99 of 00

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 109 of 181

| Date | Description | Hours | Rate | Amount |
|------|-------------|-------|------|--------|
| 01/16/2001 | | | | |
| | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 01/16/2001 | | 0.50 | $ 160.00 | $ 80.00 |
| 01/19/2001 | | | | |
| | 1) Plaintiff concedes reduction by 1.00 hours for W.R. Grace issues; 2) 4 of 6 remaining entries are vague; reduce by 66% | 0.46 | $ 275.00 | $ 127.05 |
| 01/19/2001 | | 3.50 | $ 160.00 | $ 560.00 |
| 01/22/2001 | | | | |
| | Plaintiff concedes reduction of .80 for W.R. Grace Issues | 0.00 | $ 275.00 | $ 0.00 |
| 01/22/2001 | | | | |
| | Plaintiff concedes reduction of 1.50 for W.R. Grace Issues | 0.00 | $ 160.00 | $ 0.00 |
| 01/24/2001 | | | | |
| | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 01/25/2001 | | | | |
| | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 01/29/2001 | | | | |
| | 1) Reduce by .13 hours for overlap with DAH and 2) reduce by additional 50% for duplicate billing with DAH | 0.54 | $ 160.00 | $ 85.60 |
| 01/29/2001 | | | | |
| | 5 of 11 entries are vague; reduce by 45% | 1.65 | $ 275.00 | $ 453.75 |
| 01/30/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 01/30/2001 | | | | |
| | Reduce by 50% for excessive hours | 2.40 | $ 160.00 | $ 384.00 |
| 01/31/2001 | | | | |
| | Reduce by 50% for excessive hours | 1.60 | $ 160.00 | $ 256.00 |
| 02/01/2001 | | | | |
| | Reduce by 50% for excessive hours | 1.35 | $ 160.00 | $ 216.00 |
| 02/02/2001 | | | | |
| | Reduce by 50% for excessive hours | 3.00 | $ 160.00 | $ 480.00 |
| 02/05/2001 | | | | |
| | Reduce by 50% for excessive hours | 1.65 | $ 160.00 | $ 264.00 |
| 02/07/2001 | | | | |

Get a Document - by Citations - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00409-SSB    Document 49-12    Filed 09/16/2003    Page 110 of 181

Page 54 of 66

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| | reduce by 50% | 0.50 | $ 275.00 | $ 137.50 |
| 02/14/2001 | Plaintiff concedes noncompensable W.R. Grace | 0.00 | $ 275.00 | $ 0.00 |
| 02/15/2001 | Plaintiff concedes noncompensable W.R. Grace | 0.00 | $ 160.00 | $ 0.00 |
| 02/15/2001 | | 1.00 | $ 275.00 | $ 275.00 |
| 02/16/2001 | Reduce by .25 hours for overlap with DAH | 0.05 | $ 160.00 | $ 8.00 |
| 02/16/2001 | 1 of 2 entries is vague; reduce by 50% | 0.25 | $ 275.00 | $ 68.75 |
| 02/19/2001 | Plaintiff concedes reduction to .60 for noncompensable W.R. Grace issue. Remaining entry is vague - noncompensable. | 0.00 | $ 160.00 | $ 0.00 |
| 02/19/2001 | 1) Plaintiff concedes reduction to 1.50 for noncompensable W.R. Grace issues, and 2) 1 of 7 remaining entries is vague; reduce by 14% | 1.29 | $ 275.00 | $ 354.75 |
| 02/20/2001 | 1 of 2 entries is vague; reduce by 50% | 0.20 | $ 275.00 | $ 55.00 |
| 02/20/2001 | 1 of 3 entries is vague; reduce by 33% | 0.86 | $ 160.00 | $ 137.28 |
| 02/21/2001 | Reduce by 50% for padding | 0.10 | $ 160.00 | $ 16.00 |
| 02/21/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 02/22/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 02/22/2001 | | 2.90 | $ 160.00 | $ 464.00 |
| 02/23/2001 | 1 of 3 entries is vague; reduce by 33% | 0.86 | $ 275.00 | $ 235.95 |
| 02/26/2001 | 1 of 4 entries is vague; reduce by 25% | 0.98 | $ 275.00 | $ 268.13 |
| 02/28/2001 | 1 of 3 entries is vague; reduce by 33% | 0.26 | $ 275.00 | $ 72.60 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386                                    Page 55 of 66

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 111 of 181

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 03/06/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 03/06/2001 | Reduce by .30 hours for DAH overlap | 0.00 | $ 160.00 | $ 0.00 |
| 03/07/2001 | 3 of 5 entries are vague; reduce by 60% | 0.96 | $ 275.00 | $ 264.00 |
|  |  | 2.60 | $ 160.00 | $ 416.00 |
| 03/08/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 03/08/2001 | Reduce by 50% for padding | 0.15 | $ 160.00 | $ 24.00 |
| 03/12/2001 |  | 0.50 | $ 275.00 | $ 137.50 |
| 03/12/2001 |  | 3.20 | $ 160.00 | $ 512.00 |
| 03/16/2001 | Reduce by 50% for padding | 0.10 | $ 275.00 | $ 27.50 |
| 03/26/2001 | 1 of 3 entries is vague; reduce by 33% | 0.53 | $ 275.00 | $ 145.20 |
| 03/28/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 03/29/2001 | Reduce by 50% for duplicate billing with DAH | 0.15 | $ 160.00 | $ 24.00 |
| 03/29/2001 |  | 0.60 | $ 275.00 | $ 165.00 |
| 04/03/2001 | 1 of 3 entries is vague; reduce by 33% | 0.33 | $ 275.00 | $ 90.75 |
| 04/05/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 04/06/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 04/15/2001 | 1 of 2 entries is vague; reduce by 50% | 0.70 | $ 275.00 | $ 192.50 |
| 04/16/2001 |  | 0.40 | $ 275.00 | $ 110.00 |
| 04/23/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 04/24/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 04/24/2001 | Reduce by 50% for duplicate billing with DAH | 0.25 | $ 160.00 | $ 40.00 |
| 04/25/2001 |  | 2.40 | $ 160.00 | $ 384.00 |
| 04/25/2001 | 2 of 5 entries are vague; reduce by 40% | 1.92 | $ 275.00 | $ 528.00 |
| 05/04/2001 | Reduce by .30 hours for |  |  |  |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 56 of 66

Case 1:01-cv-00109-SSB   Document 49-2   Filed 09/16/2003   Page 112 of 181

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 05/04/2001 | | 1.20 | $ 275.00 | $ 330.00 |
| 05/07/2001 | | 1.10 | $ 275.00 | $ 302.50 |
| 05/10/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 05/11/2001 | | 1.00 | $ 160.00 | $ 160.00 |
| 05/14/2001 | 1 of 3 entries is vague; reduce by 33% | 0.40 | $ 275.00 | $ 108.90 |
| 05/14/2001 | | 0.60 | $ 160.00 | $ 96.00 |
| 05/14/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 05/18/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 05/18/2001 | | 0.40 | $ 160.00 | $ 64.00 |
| 05/21/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 05/21/2001 | Reduce by 50% for duplicate billing with DAH | 0.20 | $ 160.00 | $ 32.00 |
| 05/22/2001 | Reduce by .16 hours for overlap with DAH | 0.34 | $ 160.00 | $ 54.40 |
| 05/29/2001 | | 1.30 | $ 275.00 | $ 357.50 |
| 05/29/2001 | | 2.00 | $ 275.00 | $ 550.00 |
| 05/29/2001 | Reduce by .50 hours for overlap with TEC | 5.40 | $ 160.00 | $ 864.00 |
| 05/30/2001 | | 0.50 | $ 275.00 | $ 137.50 |
| 05/30/2001 | | 2.60 | $ 275.00 | $ 715.00 |
| 05/30/2001 | Reduce by .43 hours for overlap with TEC | 6.67 | $ 160.00 | $ 1,067.20 |
| 05/31/2001 | Conference time allowed because DAH time stricken as vague, but 1 of 3 issues Plaintiffs concedes is noncompensable W.R. Grace. Reduce by 33%. | 0.30 | $ 275.00 | $ 81.68 |
| 05/31/2001 | 1) 3 of 5 entries are vague; reduce by 60%; 2) 1 of 2 reminaing entries is noncompensable W.R. Grace; reduce remainder by 50% | 0.30 | $ 275.00 | $ 82.50 |
| 05/31/2001 | | 1.70 | $ 160.00 | $ 272.00 |
| 06/01/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16580    Page 97 of 98

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 113 of 181

|            |                                                                                                     |      |          |          |
| ---------- | --------------------------------------------------------------------------------------------------- | ---- | -------- | -------- |
|            |                                                                                                     | 0.10 | $ 195.00 | $ 19.50  |
| 06/04/2001 | Reduce by 50% for padding                                                                           | 0.15 | $ 275.00 | $ 41.25  |
| 06/04/2001 |                                                                                                     |      |          |          |
|            | 1 of 4 entries is vague; reduce by 25%                                                              | 0.60 | $ 275.00 | $ 165.00 |
| 06/04/2001 |                                                                                                     |      |          |          |
|            | Conference time allowed because TEC time stricken as vague                                          | 3.50 | $ 160.00 | $ 560.00 |
| 06/05/2001 |                                                                                                     |      |          |          |
|            | 1 of 3 entries is vague; reduce by 33%                                                              | 0.33 | $ 275.00 | $ 90.75  |
| 06/05/2001 |                                                                                                     |      |          |          |
|            | Noncompensable - Vague                                                                              | 0.00 | $ 275.00 | $ 0.00   |
| 06/06/2001 |                                                                                                     | 1.20 | $ 160.00 | $ 192.00 |
| 06/06/2001 |                                                                                                     |      |          |          |
|            | 1) 1 of 3 entries is vague; reduce by 33% and 2) reduce by additional .15 hours for DAH overlap     | 0.84 | $ 275.00 | $ 231.00 |
| 06/06/2001 |                                                                                                     | 2.00 | $ 275.00 | $ 550.00 |
| 06/06/2001 |                                                                                                     |      |          |          |
|            | Reduced by 1.25 hours for overlap with DAH and TEC                                                  | 1.25 | $ 160.00 | $ 200.00 |
| 06/07/2001 |                                                                                                     |      |          |          |
|            | Reduce by 100% for duplicate billing with DAH and TEC                                               | 0.00 | $ 160.00 | $ 0.00   |
| 06/07/2001 |                                                                                                     |      |          |          |
|            | 1 of 2 entries is vague; reduce by 50%                                                              | 0.40 | $ 275.00 | $ 110.00 |
| 06/07/2001 |                                                                                                     |      |          |          |
|            | 1) 1 of 4 entries is vague; reduce by 25%; 2) Reduce by additional 25% for duplicate billing with DAH and JES | 0.50 | $ 275.00 | $ 137.50 |
| 06/08/2001 |                                                                                                     |      |          |          |
|            | 1 of 3 entries is vague; reduce by 33%                                                              | 0.13 | $ 160.00 | $ 21.12  |
| 06/08/2001 |                                                                                                     | 0.40 | $ 275.00 | $ 110.00 |
| 06/08/2001 |                                                                                                     |      |          |          |
|            | 1) Plaintiff concedes reduction to .60 for noncompensable W.R. Grace issues; 2) 3 of 4 remaining   |      |          |          |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386    Page 58 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 114 of 181

|  |  |  |  |  |
|---|---|---|---|---|
|  | 75% | 0.15 | $ 275.00 | $ 41.25 |
| 06/10/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 06/11/2001 | Plaintiff concedes reduction to 0.00 for noncompensable W.R. Grace | 0.00 | $ 275.00 | $ 0.00 |
| 06/12/2001 |  | 0.40 | $ 160.00 | $ 64.00 |
| 06/13/2001 | Reduce by 50% for padding | 0.10 | $ 160.00 | $ 16.00 |
| 06/14/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 06/18/2001 |  | 1.20 | $ 275.00 | $ 330.00 |
| 06/20/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 06/28/2001 | 1 of 3 entries is vague; reduce by 33% | 1.58 | $ 275.00 | $ 435.00 |
| 06/29/2001 | Reduce by 50% for padding | 0.10 | $ 275.00 | $ 27.50 |
| 06/29/2001 | Plaintiff concedes reduction to 0.00 for noncompensable W.R. Grace | 0.00 | $ 275.00 | $ 0.00 |
| 07/02/2001 | Plaintiff concedes reduction to 0.00 for noncompensable W.R. Grace | 0.00 | $ 275.00 | $ 0.00 |
| 07/02/2001 | 3 of 7 entries are vague; reduce by 42% | 0.93 | $ 275.00 | $ 255.20 |
| 07/03/2001 | Plaintiff concedes reduction to W.R. Grace | 0.00 for noncompensable 0.00 | $ 275.00 | $ 0.00 |
| 07/06/2001 | Plaintiff concedes reduction to 0.00 for noncompensable W.R. Grace | 0.00 | $ 275.00 | $ 0.00 |
| 07/06/2001 |  | 0.80 | $ 275.00 | $ 220.00 |
| 07/06/2001 |  | 1.00 | $ 160.00 | $ 160.00 |
| 07/08/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 07/09/2001 |  | 1.20 | $ 160.00 | $ 192.00 |
| 07/09/2001 | Reduced by .125 horus for overlap with DAH | 1.68 | $ 275.00 | $ 460.63 |
| 07/09/2001 |  | 2.00 | $ 275.00 | $ 550.00 |
| 07/10/2001 | 2 of 5 entries are vague; reduce by 40% | 1.44 | $ 275.00 | $ 396.00 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16986   Page 99 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 115 of 181

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 07/10/2001 | | | | |
| | Reduced by .24 hours for DAH overlap | 2.36 | $ 275.00 | $ 649.00 |
| 07/11/2001 | | | | |
| | 1 of 2 entries is vague; reduce by 50% | 0.25 | $ 275.00 | $ 68.75 |
| 07/11/2001 | | 1.60 | $ 275.00 | $ 440.00 |
| 07/16/2001 | | 0.40 | $ 275.00 | $ 110.00 |
| 07/23/2001 | | | | |
| | Reduce by 50% for duplicate billing with DAH | 0.15 | $ 160.00 | $ 24.00 |
| 07/23/2001 | | | | |
| | Reduce by 50% for duplicate billing with DAH | 0.15 | $ 275.00 | $ 41.25 |
| 07/23/2001 | | 0.60 | $ 275.00 | $ 165.00 |
| 07/25/2001 | | 0.50 | $ 275.00 | $ 137.50 |
| 07/25/2001 | | | | |
| | 1 of 3 entries is vague; reduce by 33% | 1.06 | $ 275.00 | $ 290.40 |
| 07/27/2001 | | | | |
| | Plaintiff concedes reduction to 0.00 for noncompensable W.R. Grace | 0.00 | $ 275.00 | $ 0.00 |
| 07/30/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 07/30/2001 | | | | |
| | Plaintiff concedes reduction to 0.00 for noncompensable W.R. Grace | 0.00 | $ 275.00 | $ 0.00 |
| 08/02/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 08/06/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 08/07/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 08/13/2001 | | | | |
| | Reduce by .14 hours for DAH overlap | 0.16 | $ 160.00 | $ 25.60 |
| 08/13/2001 | | | | |
| | 1 of 4 entries is vague; reduce by 25% | 0.83 | $ 275.00 | $ 226.88 |
| 08/14/2001 | | 0.70 | $ 160.00 | $ 112.00 |
| 08/15/2001 | | | | |
| | Reduce by 50% for duplicate billing with DAH | 0.20 | $ 160.00 | $ 32.00 |
| 08/15/2001 | | | | |
| | 1 of 3 entries is vague; reduce by 33% | 0.53 | $ 275.00 | $ 145.20 |
| 08/16/2001 | | 1.40 | $ 160.00 | $ 224.00 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16580    Page 66 of 66

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 116 of 181

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| | Reduced by .15 hours for overlap with DAH | 0.15 | $ 195.00 | $ 29.25 |
| 08/20/2001 | 1 of 2 entries is vague; reduce by 50% | 2.15 | $ 160.00 | $ 344.00 |
| 08/20/2001 | 1) 2 of 8 entries are vague; reduce by 25%; 2) one entry is non-compensable W.R. Grace; reduce by 12.5% | 3.38 | $ 275.00 | $ 928.13 |
| 08/21/2001 | 1 of 2 entries is vague; reduce by 50% | 0.75 | $ 160.00 | $ 120.00 |
| 08/21/2001 | 4 of 7 entries are vague; reduce by 57% | 0.95 | $ 275.00 | $ 260.15 |
| 08/22/2001 | | 4.40 | $ 275.00 | $ 1,210.00 |
| 08/22/2001 | 1) 1 of 3 entries is vague; reduce by 33%; 2) reduce by additional .50 hours for duplicate billing with DAH | 4.38 | $ 160.00 | $ 701.44 |
| 08/23/2001 | | 3.40 | $ 275.00 | $ 935.00 |
| 08/23/2001 | 1 of 3 entries is vague; reduce by 33% | 6.20 | $ 160.00 | $ 992.64 |
| 08/24/2001 | Reduce by .35 hours for overlap with DAH | 0.85 | $ 160.00 | $ 136.00 |
| 08/24/2001 | | 1.40 | $ 275.00 | $ 385.00 |
| 08/27/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 08/28/2001 | | 0.80 | $ 275.00 | $ 220.00 |
| 08/29/2001 | | 0.60 | $ 275.00 | $ 165.00 |
| 08/30/2001 | | 1.50 | $ 275.00 | $ 412.50 |
| 08/31/2001 | 1 of 3 entries is vague; reduce by 33% | 0.33 | $ 275.00 | $ 90.75 |
| 09/04/2001 | 1 of 2 entries is vague; reduce by 50% | 0.50 | $ 275.00 | $ 137.50 |
| 09/04/2001 | | 3.40 | $ 160.00 | $ 544.00 |
| 09/05/2001 | | 1.20 | $ 275.00 | $ 330.00 |
| 09/10/2001 | Reduce by 50% for duplicate billing with DAH | 0.40 | $ 160.00 | $ 64.00 |

| 09/11/2001 | | | | |
|---|---|---|---|---|
| | 3 of 5 entries are vague; reduce by 60% | 0.60 | $ 275.00 | $ 165.00 |
| 09/12/2001 | | 1.20 | $ 275.00 | $ 330.00 |
| 09/13/2001 | | 1.70 | $ 160.00 | $ 272.00 |
| 09/14/2001 | | 3.80 | $ 275.00 | $ 1,045.00 |
| 09/17/2001 | | 1.00 | $ 275.00 | $ 275.00 |
| 09/17/2001 | 4 of 6 entries are vague; reduce by 60% | 1.32 | $ 275.00 | $ 363.00 |
| 09/18/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 09/18/2001 | 1 of 3 entries is vague; reduce by 33% | 1.06 | $ 275.00 | $ 290.40 |
| 09/20/2001 | Noncompensable -- Vague | 0.00 | $ 275.00 | $ 0.00 |
| 09/21/2001 | 2 of 4 entries are vague; | | | |
| 09/25/2001 | reduce by 50% | 0.40 | $ 275.00 | $ 110.00 |
| 09/25/2001 | | 1.60 | $ 275.00 | $ 440.00 |
| 09/26/2001 | Noncompensable -- Vague | 0.00 | $ 275.00 | $ 0.00 |
| 09/26/2001 | | 0.50 | $ 275.00 | $ 137.50 |
| 09/26/2001 | | 0.80 | $ 160.00 | $ 128.00 |
| 09/27/2001 | | 0.40 | $ 275.00 | $ 110.00 |
| 09/28/2001 | Reduce by .20 hours for overlap with DAH | 0.10 | $ 275.00 | $ 27.50 |
| 09/28/2001 | | 0.80 | $ 275.00 | $ 220.00 |
| 10/01/2001 | 1 of 4 entries is vague; reduce by 25% | 0.60 | $ 275.00 | $ 165.00 |
| 10/02/2001 | | 0.50 | $ 275.00 | $ 137.50 |
| 10/10/2001 | | 0.80 | $ 275.00 | $ 220.00 |
| 10/15/2001 | Reduce by 50% for padding | 0.10 | $ 275.00 | $ 27.50 |
| 10/16/2001 | 2 of 3 entries are vague; reduce by 66% | 0.20 | $ 275.00 | $ 54.45 |
| 10/17/2001 | | 0.40 | $ 275.00 | $ 110.00 |
| 10/19/2001 | | 0.50 | $ 275.00 | $ 137.50 |
| 10/22/2001 | Reduce by 50% for padding | 0.10 | $ 275.00 | $ 27.50 |
| 10/24/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 10/26/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 10/29/2001 | 1) 1 of 3 entries is vague; reduce by 33% and 2) Reduce by additional .13 hours for | | | |

| | | | | |
|---|---|---|---|---|
| 10/29/2001 | | | | |
| | 1 of 5 entries is vague; reduce by 20% | 1.04 | $ 275.00 | $ 286.00 |
| 10/30/2001 | | 2.20 | $ 275.00 | $ 605.00 |
| 10/31/2001 | | | | |
| | 1 of 2 entries is vague; reduce by 50% | 0.20 | $ 275.00 | $ 55.00 |
| 10/31/2001 | | 4.50 | $ 275.00 | $ 1,237.50 |
| 11/05/2001 | | | | |
| | Reduce by 50% for duplicate billing with TEC | 0.25 | $ 275.00 | $ 68.75 |
| 11/06/2001 | Reduce by 50% for padding | 0.10 | $ 275.00 | $ 27.50 |
| 11/06/2001 | | | | |
| | Reduce by .22 hours for TEC overlap | 0.88 | $ 160.00 | $ 140.80 |
| 11/06/2001 | | | | |
| | Reduce by .16 hours for DAH overlap | 1.14 | $ 275.00 | $ 313.50 |
| 11/08/2001 | | 0.50 | $ 160.00 | $ 80.00 |
| 11/08/2001 | | | | |
| | 2 of 4 entries is vague; reduce by 50% | 0.30 | $ 275.00 | $ 82.50 |
| 11/08/2001 | | 1.70 | $ 275.00 | $ 467.50 |
| 11/09/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 11/09/2001 | 3 of 5 entries are vague; reduce by 60% | 0.36 | $ 275.00 | $ 99.00 |
| 11/12/2001 | | | | |
| | Reduce by 50% for padding | 0.10 | $ 160.00 | $ 16.00 |
| 11/12/2001 | | | | |
| | 1 of 2 entries is vague; reduce by 50% | 0.30 | $ 275.00 | $ 82.50 |
| 11/14/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 11/16/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 11/19/2001 | Reduce by 50% for padding | 0.10 | $ 275.00 | $ 27.50 |
| 11/19/2001 | | | | |
| | 3 of 4 entries are vague; reduce by 75% | 0.33 | $ 275.00 | $ 89.38 |
| 11/20/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 11/20/2001 | | | | |
| | 1 of 4 entries is vague; reduce by 25% | 0.75 | $ 275.00 | $ 206.25 |
| 11/23/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 11/27/2001 | | | | |
| | Reduce by 50% for padding | 0.10 | $ 275.00 | $ 27.50 |
| 11/27/2001 | | | | |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 16980    Page 03 of 00

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 119 of 181

|  |  | | | |
|---|---|---|---|---|
|  | by 50% | 0.25 | $ 275.00 | $ 68.75 |
| 11/28/2001 |  | 1.80 | $ 275.00 | $ 495.00 |
| 11/29/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 12/04/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 12/05/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 12/05/2001 |  | 1.00 | $ 275.00 | $ 275.00 |
| 12/07/2001 | Reduce by 50% for padding | 0.10 | $ 275.00 | $ 27.50 |
| 12/11/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 12/11/2001 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 12/14/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 12/18/2001 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 01/08/2002 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 01/11/2002 |  | 0.40 | $ 275.00 | $ 110.00 |
| 01/15/2002 |  | 1.40 | $ 275.00 | $ 385.00 |
| 01/16/2002 |  | 0.80 | $ 275.00 | $ 220.00 |
| 01/17/2002 |  | 2.40 | $ 275.00 | $ 660.00 |
| 01/18/2002 |  | 0.40 | $ 275.00 | $ 110.00 |
| 01/23/2002 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 01/25/2002 |  | 0.60 | $ 275.00 | $ 165.00 |
| 01/25/2002 |  | 1.40 | $ 275.00 | $ 385.00 |
| 01/28/2002 |  | 0.80 | $ 275.00 | $ 220.00 |
| 02/06/2002 |  | 6.40 | $ 160.00 | $ 1,024.00 |
| 02/08/2002 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 02/14/2002 |  | 0.40 | $ 275.00 | $ 110.00 |
| 02/14/2002 |  |  |  |  |
|  | Plaintiff concedes reduction to 0.00 for noncompensable W.R. Grace | 0.00 | $ 275.00 | $ 0.00 |
| 02/15/2002 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 02/19/2002 | Noncompensable - Vague | 0.00 | $ 275.00 | $ 0.00 |
| 02/19/2002 | Reduce by 50% for padding | 0.15 | $ 275.00 | $ 41.25 |
| 02/20/2002 |  | 0.40 | $ 275.00 | $ 110.00 |
| 02/20/2002 |  |  |  |  |
|  | 1) 1 of 2 entries is vague; reduce by 50% and 2) reduce by additional .20 hours for overlap with DAH | 0.10 | $ 275.00 | $ 27.50 |
| 02/22/2002 |  |  |  |  |
|  | 1 of 3 entries is vague; reduce by 33% | 0.26 | $ 275.00 | $ 72.60 |
| 02/22/2002 |  | 1.80 | $ 275.00 | $ 495.00 |
| 02/26/2002 |  | 0.50 | $ 275.00 | $ 137.50 |
| 02/28/2002 |  |  |  |  |
|  | Plaintiff concedes noncompensable | 0.00 | $ 275.00 | $ 0.00 |

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 120 of 181    Page 64 of 66

| 11/27/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 275.00 | See Order |
| 12/03/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 160.00 | See Order |
| 12/08/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 160.00 | See Order |
| 12/12/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 275.00 | See Order |
| 12/12/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 160.00 | See Order |
| 12/13/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 275.00 | See Order |
| 12/13/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 160.00 | See Order |
| 12/15/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 275.00 | See Order |
| 12/16/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 275.00 | See Order |
| 12/16/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 275.00 | See Order |
| 12/16/2002 | | | | |
| | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 160.00 | See Order |
| 12/17/2002 | | | | |

Get a Document - by Citations - 2003 U.S. Dist. LEXIS 10386

Case 1:01-cv-00409-SSB   Document 49-2   Filed 09/16/2003   Page 121 of 181

Page 65 of 66

|  |  |  |  |  |
|---|---|---|---|---|
| | submitted in Pls.' Reply Memorandum | See Order | $ 275.00 | See Order |
| 12/17/2002 | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 160.00 | See Order |
| 12/18/2002 | Fee application time submitted in Pls.' Reply Memorandum | See Order | $ 275.00 | See Order |

**[*35]**

| Original Billed Hours | 474.60 | Reasonable Hours (excluding fee application) | 287.74 | Reasonable Fees for case in-chief $ 62,840.02 |
|---|---|---|---|---|
| | | Reasonable Fees for preparing fee Application (Capped at 3% of MVA's reasonable hours with 50% payable at $ 160/hour and 50% payable at $ 275/hour) | | $ 1,877.52 |
| | | | Reasonable Fees Subtotal | $ 64,717.54 |
| | | Reduction for Disproportionate hours not Otherwise iternized (5% of Reasonable Fees) | | ($ 3,235.88) |
| | | Award for Baker, Donelson Attorney Fees Submitted as MVAExpenses * | | $ 5,226.00 |
| | | | Reasonable Fees Total | $ 66,707.66 |

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

* According to Speer, the plaintiffs have incurred legal fees from Baker Donelson from April, 2001through February, 2002 in the amount of $ 5,226.00. (Pls.' Mem. in Supp. of Its App. for Payment Of Reas Att'y Fees, Ex. C, Speer Aff., at para. 3.) Because it appears that Baker, Donelson has not included fees attributable to work performed prior to April, 2001 or after February, 2002, this amount has not been reduced for Baker, Donelson's billing of paralegal time at $ 100 and $ 110 per hour rather than the $ 80 per hour approved for MVA' s reasonable paralegal time.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Service:  **Get by LEXSEE®**
Citation:  **2003 us dist lexis 10386**
View:  Full
Date/Time:  Monday, September 15, 2003 - 11:41 AM EDT

* Signal Legend:
⬤ -  Warning: Negative treatment is indicated
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
🅐 -  Citing Refs. With Analysis Available
🅘 -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# Exhibit 5

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 124 of 181

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 12852**

*2003 U.S. Dist. LEXIS 12852, \*; 84 Empl. Prac. Dec. (CCH) P41,405*

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, and ANTONIO ANGLIN, Intervenor, v. ENTERPRISE LEASING COMPANY, INC., Defendant.

Case No. 8:00-cv-2012-T-24EAJ

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

2003 U.S. Dist. LEXIS 12852; 84 Empl. Prac. Dec. (CCH) P41,405

May 13, 2003, Decided
May 13, 2003, Filed

**DISPOSITION:** **[\*1]** Intervenor's Motion for Attorney's Fees GRANTED IN PART.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Following trial of an action brought by plaintiff Equal Employment Opportunity Commission (EEOC), intervenor's attorney applied for attorney's fees. In response, defendant argued that the fee request needed to be reduced, the hourly rate was too high, the fees did not bear a relationship to the intervenor's overall success, and the hours claimed were duplicative, unnecessary, and excessive.

**OVERVIEW:** In considering the motion, the court found that a more reasonable rate was $ 200.00 not $ 300.00 per hour, based on the prevailing market rate for an attorney of similar experience in that geographic area, the complexity of the case, and the applicant's customary billing rate. The applicant did not meet his burden of proving that he was entitled to any reimbursement for hours billed prior to the EEOC having filed the lawsuit except for hours spent preparing the motion for intervention. The court disallowed any hours billed for participating in discovery or other proceedings other than filing the motion before the date that intervention was granted. The court reduced the billing rate for hours that should have been performed by an associate or paralegal. There were tasks that were excessively billed for work that was not a distinct, unique, and substantial contribution to the work already being performed by the EEOC. The court also excluded time spent pursuing unsuccessful disputes. Although the court found that the hourly rate was too high and the hours spent were excessive, the court did not find that the lodestar should be further reduced.

**OUTCOME:** The court granted in part the intervenor's motion for attorney's fees by awarding an amount less than that requested.

**CORE TERMS:** billed, phase, spent, lodestar, motion to intervene, time spent, preparing, summary judgment, hourly rate, intervene, deposition, paralegal, sheets, hrs, pretrial conference, discovery, reply, block-billed, fee award, preparation, expended, drafting, revise, unsuccessful, pretrial statement, law clerk, intervenor, excessive, lawsuit, correspondence

### LexisNexis (TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

Civil Procedure > Costs & Attorney Fees > Attorney Fees 🔄

Get a Document - by Citation - 84 Empl. Prac. Dec. (CCH) P41,405

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 125 of 181    Page 2 of 14

*HN1* A court employs a three-step process to evaluate a motion for attorney's fees. First, the court must determine whether the movant is a "prevailing party." Second, the court must calculate the lodestar, which is the number of reasonable hours spent working on the case multiplied by a reasonable hourly rate. Third, the court must determine whether an adjustment to the lodestar is necessary. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN2* The lodestar is the number of reasonable hours spent working on the case multiplied by a reasonable hourly rate. The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN3* To calculate the lodestar, a court must determine the reasonable hourly rate to be charged by the attorney working on this case. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The movant bears the burden of producing evidence of the prevailing market rate, and such evidence may consist of opinion evidence by other attorneys. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN4* A fee applicant's customary billing rate for his hourly fee-paying clients ordinarily is the best evidence of his market rate. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN5* A court may use its discretion and expertise to determine the appropriate hourly rate. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN6* Fee applicants must exercise billing judgment, which means that they must exclude from their fee applications excessive, redundant, or otherwise unnecessary hours. Thus, fee applicants must exclude hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel. This means that the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically be done. Exclusions for unnecessary or excessive time expended is left to the discretion of the court. A court should deduct unnecessary or redundant hours and time spent on discrete and unsuccessful claims. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN7* Research of case law and rules for intervention is a task for an associate or paralegal and should be billed at an associate or paralegal rate, not at a partner rate. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN8* A fee applicant cannot demand a high hourly rate -- which is based on his or her experience, reputation, and a presumed familiarity with the applicable law -- and then run up an inordinate amount of time researching that same law. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn. More Like This Headnote

Get a Document - by Citation - 84 Empl. Prac. Dec. (CCH) P41,405    Page 3 of 14

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 126 of 181

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN9* ⚓ An attorney seeking fees should maintain records that clearly delineate the time spent on different claims, and the general subject matter of the time entries ought to be set forth with sufficient particularity so that the court can assess the time claimed for each activity. A district court should use a "task-by-task" examination of hours billed, and imprecise "block-billing" severely limits a court's review. More Like This Headnote

Civil Procedure > Joinder of Claims & Parties > Intervention

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN10* ⚓ A fee applicant, as the attorney for an intervenor, has the burden of proving not just that he was very active, but that his work constituted a distinct, unique, and substantial contribution to the strength of the plaintiff's position. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN11* ⚓ In determining the number of hours reasonably expended in a fee application, courts deduct time spent on discrete and unsuccessful claims. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN12* ⚓ Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Furthermore, it is not necessarily significant that a prevailing plaintiff did not receive all the relief requested, if the relief obtained justified the expenditure of attorney time. However, a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. More Like This Headnote

**COUNSEL:** For Equal Employment Opportunity Commission, PLAINTIFF: C Gregory Stewart, Michael J Farrell, Delner Franklin-Thomas, M Teresa Rodriguez, Gwendolyn Y Reams, Equal Employment Opportunity Commission, Miami, FL USA.

For Equal Employment Opportunity Commission, PLAINTIFF: Pauline Terrelonge, Equal Employment Opportunity Commission, Tampa, FL USA.

For Enterprise Leasing Company of Florida DBA Enterprise Rent-A-Car, DEFENDANT: Peter W Zinober, Danielle R May, Luisette Gierbolini, Zinober & McCrea, PA, Tampa, FL USA.

For Antonio Anglin, Intervenor-PLAINTIFF: Mitchell Dean Franks, Neil A Roddenbery, Gray, Harris, Robinson, Lane, Trohn, Lakeland, FL USA.

**JUDGES:** SUSAN C. BUCKLEW, United States District Judge.

**OPINIONBY:** SUSAN C. BUCKLEW

**OPINION: ORDER**

This cause comes before the Court on Intervenor's Motion for Attorney's Fees (Doc. No. 179). Defendant filed a response in opposition to this motion (Doc. No. 188). Intervenor filed a reply to Defendant's response in opposition (Doc. No. 194) to which Defendant filed a surreply (Doc. No. 200). Plaintiff also filed a reply in opposition to Defendant's response **[*2]** (Doc. No. 203).

**I. Procedural Background**

Get a Document - by Citations 84 Empl. Prac. Dec. (CCH) P41,405

Case 1:01-cv-00409-SSB   Document 49-2   Filed 09/16/2003   Page 127 of 181

Page 4 of 14

In the motion for attorney's fees, Intervenor Antonio Anglin's attorney, Mitchell Franks, asserts that he and his staff spent a total of 989.5 hours in the prosecution of Anglin's claims (Doc. No. 179, P 4). Of the 989.5 hours, 19.9 hours were expended by a law clerk and 56.0 hours were expended by a paralegal (Doc. No. 179, P 8). The rates charged for work performed by the law clerk and paralegal were $ 65.00 per hour and $ 55.00 per hour, respectively. Consequently, the total amount billed for the services of the law clerk and paralegal together was $ 4,373.50. Defendant does not contest this amount.

The remainder of the hours billed to Anglin consist of 913.6 hours billed by Franks at a rate of $ 300.00 per hour. In the motion, Franks explained that these hours reflected three phases of the litigation (Doc. No. 179, p.5-6). According to Franks, 23.2 hours were billed in Phase One, which spanned from the date that Franks was retained (August 10, 1999) until the date that the EEOC filed the lawsuit (September 28, 2000) (Doc. No. 179, p. 5). Franks states that he billed Anglin for 70 hours of work during Phase Two, which lasted **[*3]** from the date that the EEOC filed the lawsuit (September 28, 2000) until the date that Anglin moved to intervene in the lawsuit (May 2, 2001) n1 (Doc. No. 179, p. 5-6). Franks billed the remainder of his hours in Phase Three, which stretches from the date that Anglin moved to intervene in the lawsuit (May 2, 2001) until the filing of the instant motion (Doc. No. 179, p. 6).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 According to the Court record, Anglin actually filed his motion to intervene on May 4, 2001 (Doc. No. 20).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In Defendant's response to the motion for attorney's fees, Defendant argues that Franks' fee request should be reduced. Defendant contends that Franks' hourly rate of $ 300.00 is too high; that the amount of attorney's fees requested does not bear a relationship to Anglin's overall success; and that the actual hours expended were duplicative, unnecessary, and excessive.

## II. Intervenor's Motion for Attorney's Fees

*HN1* The Court employs a three-step process to evaluate Plaintiff's motion for attorney's fees. See Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000). **[*4]** First, the Court must determine whether Plaintiff is a "prevailing party." See id. Second, the Court must calculate the lodestar, which is the number of reasonable hours spent working on the case multiplied by a reasonable hourly rate. See id. Third, the Court must determine whether an adjustment to the lodestar is necessary. See id. In the instant case, Defendant does not contest Anglin's status as a prevailing party. Rather, Defendant's opposition revolves around the calculation of the lodestar. Specifically, Defendant contends that the hourly rate Franks requests is too high and that the total hours expended are excessive.

## A. Calculating the Lodestar

*HN2* The lodestar is the number of reasonable hours spent working on the case multiplied by a reasonable hourly rate. See ACLU of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988)(citation omitted). Accordingly, the Court will address each element of the lodestar below. **[*5]**

## 1. Reasonable Hourly Rate

*HN3* To calculate the lodestar, the Court must determine the reasonable hourly rate to be charged by the attorney working on this case. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299 (citation omitted). Franks bears the burden of producing evidence of the prevailing market rate, and such evidence may consist of opinion evidence by other attorneys. See id.

Franks is requesting a fee award for work performed during three phases of this case. For this work, Franks requests an hourly rate of $ 300.00 per hour. In support of this rate, Franks has provided opinion evidence by two attorneys who state that this hourly rate is the reasonable market rate for attorneys with similar skill and experience in the Tampa Bay area (Doc. No. 182, Linesch Aff.; Doc. No. 183, Brush Aff.).

Defendant objects to these hourly rates as being too high. The principal basis for Defendant's objection is that this case was a simple, single plaintiff/single defendant employment discrimination case. The Court agrees with **[\*6]** Defendant that the case was not particularly complex. The case did not go to trial and did not present complex legal issues. Further, Franks was not the lead counsel in this case. In fact, his client did not even file his motion to intervene in the case until over seven months after the EEOC filed its complaint against Defendant.

Moreover, the Court notes that the rate that Franks is seeking in his motion is $ 50.00 higher than the highest rate that he seeks from his fee-paying clients. *HN4* A fee applicant's customary billing rate for his hourly fee-paying clients "ordinarily is the best evidence of his market rate." Lambert v. Fulton Co., 151 F. Supp. 2d 1364, 1373 (N.D. Ga. 2000), aff'd, 253 F.3d 588 (11th Cir. 2001), cert. denied, 536 U.S. 906, 122 S. Ct. 2361, 153 L. Ed. 2d 182 (2002). In Franks' affidavit, he states that he charges his fee-paying clients between $ 125.00 and $ 250.00 per hour for labor and employment law matters (Doc. No. 179, Exh. A, Aff. of Mitchell Franks, p. 8).

*HN5* The Court may use its discretion and expertise to determine the appropriate hourly rate. See Scelta v. Delicatessen Support Services, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002). **[\*7]** Upon review of the case law and affidavits in support of and in opposition to the motion for attorney's fees, the Court finds that a more reasonable rate is $ 200.00 per hour, based on the prevailing market rate for an attorney of similar experience in the greater Tampa Bay area, the complexity of the case, and Franks' customary billing rate.

## 2. Reasonable Hours Expended

Next, the Court must determine the number of reasonable hours expended by Franks while working on this case. *HN6* "Fee applicants must exercise . . . 'billing judgment,'" which means that "they must exclude from their fee applications 'excessive, redundant, or otherwise unnecessary [hours].'" Barnes, 168 F.3d at 428 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)). Thus, fee applicants must exclude hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*." Norman, 836 F.2d at 1301 (emphasis in original). This means that "the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably **[\*8]** billed and not the least time in which it might theoretically be done." Id. at 1306. Exclusions for unnecessary or excessive time expended is left to the discretion of the court. See id. at 1301. A court should deduct unnecessary or redundant hours and time spent on discrete and unsuccessful claims. See Duckworth v. Whisenant, 97 F.3d 1393, 1397 (11th Cir. 1996).

Get a Document - by Citation - 84 Empl. Prac. Dec. (CCH) P41,405    Page 6 of 14

Case 1:01-cv-00409-SSB    Document 49-2    Filed 09/16/2003    Page 129 of 181

Franks claims that he should recover fees from Defendant for a total of 913.6 hours of work. Specifically, Franks states that he billed 23.2 hours during Phase One, 70 hours during Phase Two, and the remaining hours during Phase Three. The Court will separately address each phase of the case.

a. Phase One: August 10, 1999 -- September 28, 2000 n2

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Franks incorrectly states that the EEOC filed suit on September 27, 2000 (Doc. No. 179, p. 5). The EEOC filed its complaint in this Court against Defendant on September 28, 2000 (Doc. No. 1).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Phase One spans from the date that Anglin retained Franks (August 10, 1999) **[*9]** until the date that the EEOC filed its complaint against Defendant (September 28, 2000). Franks claims he spent a total of 22.2 hours working on the case during this time period. n3 According to Franks' motion, this time encompassed the following: conciliation and settlement discussions with Anglin, the EEOC and Defendant; preparing discovery; review and assembly of documents produced during investigative phase; discussions with the EEOC attorneys; and drafting the EEOC complaint (Doc. No. 179, p. 5). Having reviewed Franks' motion and time entries for Phase One, the Court finds that Franks has not met his burden of proving that he should be entitled to any reimbursement by Defendant for hours billed prior to the EEOC filing the lawsuit. Accordingly, the Court finds that the lodestar amount for Phase One equals $ 0.00.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The Court notes that Franks claims a total of 23.2 hours spent during this time period. Upon review of Franks' time sheets, however, the Court finds that Franks spent a total of 22.2 hours.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*10]**

b. Phase Two: September 28, 2000 -- May 2, 2001

According to Franks, Phase Two stretches from the date that the EEOC filed its complaint against Defendant (September 28, 2000) until the date that Anglin moved this Court to allow him to intervene in the action (May 2, 2001). Upon review of the record, the Court notes that Franks actually filed Anglin's motion to intervene on May 4, 2001. Further, the Court notes that while Anglin may have moved to intervene on May 4, 2001, the Court did not permit Anglin to intervene until October 2, 2001. Consequently, more appropriate parameters for this phase are September 28, 2000 and October 2, 2001. Nevertheless, the Court will examine the hours billed by Franks in this phase within the confines of the dates he provided. For Phase Two of this case, Franks billed a total of 70.0 hours. In Franks motion for attorney's fees, Franks claims that he spent these hours, "representing Mr. Anglin at his two depositions, drafting and submitting discovery for use by the EEOC, participating in discovery directed toward the EEOC and Mr. Anglin, consulting with the EEOC on discovery matters, deposition and other issues, attendance at depositions and drafting **[*11]** Mr. Anglin's Motion to Intervene and Complaint." (Doc. No. 179, p. 6).

Regarding all time entries in Phase Two, the Court finds that Franks has not met his burden of proving that he is entitled to reimbursement from Defendant for hours spent during this time period on any tasks other than those spent preparing Anglin's motion for intervention. Reviewing Franks' time entries, the Court finds that Franks' first entry referencing a potential motion to intervene was documented on April 23, 2001. In this entry, Franks stated that he spent 0.5 hours "Reviewing file for Motion to Intervene" (Doc. No. 179, Exh. B, p. 5). Thus, Franks may recover any fees charged between April 23, 2001 and May 2, 2001 for time spent preparing the motion to intervene. However, Franks is not entitled to reimbursement for the following time entries during this time frame: 0.3 hours on 4.27/01; 0.8 hours on 4/30/01; and 2.8 hours and 2.3 hours on 5/1/01 (Doc. No. 179, Exh. B, p. 5-6). While these entries occurred during the time in which Franks was preparing Anglin's motion to intervene, they do not in any way relate to Anglin's motion to intervene.

Also, the Court notes that the entries for 4/24/01 and 4/25/01 are **[*12]** block-billed such that only part of the entry (and thus time) was spent on the motion to intervene. n4 The 4/24/01 entry states that Franks spent 2.5 hours reviewing correspondence, having a telephone conference with P. Zinober, and researching cases and rules regarding intervention (Doc. No. 179, Exh. B, p. 5). The Court will reduce these 2.5 hours by 50% such that Franks may be reimbursed for 1.25 hours for researching cases and rules regarding intervention. The Court notes, however, that while Franks may be reimbursed for this research, his rate is reduced to $ 100 per hour for this research. *HN7* Research of case law and rules for intervention is a task for an associate or paralegal and should be billed at an associate or paralegal rate, not at a partner rate. See Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983)("*HN8* A fee applicant cannot demand a high hourly rate -- which is based on his or her experience, reputation, and a presumed familiarity with the applicable law -- and then run up an inordinate amount of time researching that same law . . . Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo **[*13]** should not charge Sistine Chapel rates for painting a farmer's barn.").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 *HN9* An attorney seeking fees in an action such as this one should maintain records that clearly delineate the time spent on different claims, and "the general subject matter of the time entries ought to be set forth with sufficient particularity so that the court can assess the time claimed for each activity." Barnes, 168 F.3d at 427. A district court should use a "task-by-task" examination of hours billed, and imprecise "block-billing" severely limits a court's review. See id. at 429. Franks "block-billed" many of his time entries. Block-billing makes it very difficult for a court to determine the specific amount of time spent by an attorney on each task. Thus, the Court has had to use its discretion throughout this Order to properly apportion the time spent on each task within a single time entry.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Lastly, the 4/25/01 entry states that Franks spent 0.9 hours reviewing correspondence, revising the motion to **[*14]** intervene and complaint, and drafting correspondence. Of these three tasks, Franks may be reimbursed for his time spent revising the motion to intervene and complaint. Consequently, the Court will allow Franks to recover the $ 200 per hour billable rate for 0.3 hours of the 0.9 hours documented in this time entry. Thus, the Court finds that the lodestar amount for Phase Two is $ 805.00. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

Get a Document - by Citation - 34 Empl. Prac. Dec. (CCH) P14,405

Case 1:01-cv-00409-SSB   Document 49-2   Filed 09/16/2003   Page 131 of 181

Page 8 of 14

n5 The Court arrived at this amount from the sum of the following entries at the following rates: 0.5 hours at $ 200/hour on 4/23/01; 1.25 hours at $ 100/hour on 4/24/2001; 1.6 hours at $ 200/hour on 4/24/01; 0.3 hours at $ 200/hour on 4/25/01; 0.3 hours at $ 200/hour on 4/26/01; and 0.4 hours at $ 200/hour on 5/1/01; and 0.3 hours at $ 200/hour on 5/2/02.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

c. Phase Three: May 2, 2001 -- November 21, 2002

Phase Three covers the time after Anglin moved to intervene through the filing of Franks' motion for attorney's fees. Again, the Court notes that although Anglin actually filed a motion to intervene on May 4, 2001, the Court **[\*15]** did not permit Anglin to intervene until October 2, 2001. Consequently, Anglin was not a party to the case until October 2, 2001. Thus, Franks is not entitled to recover from Defendant for any hours billed prior to October 2, 2001 for such tasks as participating in discovery or any other proceeding of the litigation other than activity that related to the motion to intervene. n6 The Court will separately address the hours billed by Franks prior to and after October 2, 2001.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n6 This determination is consistent with the EEOC's understanding of Anglin and Franks' participation prior to intervention as expressed in a motion that the EEOC filed with this Court on August 16, 2001. In that motion, an emergency motion to extend the dates in the case management and scheduling order, the EEOC stated, "Mr. Anglin, by and through his attorney, Mitchell Franks, Esq., has moved for Intervenor status in this case, but his motion has not yet been granted and, as such, is not yet entitled to participate in the discovery and other litigation proceedings in this case." (Doc. No. 42, p. 3).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*16]**

1. Part One of Phase Three: May 2, 2001 -- October 1, 2001

During the five months while Anglin's motion to intervene was pending before the Court, Franks billed a total of 153.9 hours. For the reasons stated below Franks may recover fees from Defendant for 21.15 hours that he billed during these five months. As previously stated, prior to the October 2, 2001 Order, Anglin was not a party to this action. Consequently, Anglin as a non-party was not permitted to participate in discovery or other aspects of the litigation. Therefore, it naturally follows that this Court should not require Defendant to reimburse Franks for time that he spent on these matters in which he was not permitted to participate. Accordingly, Franks may only recover fees for hours spent in relation to Anglin's pending motion to intervene.

Reviewing Franks time entries during this time frame, the Court finds that Franks may recover attorney's fees for the following entries: n7 2.2 hours on 5/24/01; 0.5 hours on 5/29/01; 2.0 hours and 0.5 hours on 5/31/01; 2.0 hours on 6/4/01; 1.4 hours and 0.9 hours on 6/6/01; 0.6 hours and 0.70 hours on 6/7/01; 0.15 hours on 6/18/01; 0.3 hours on 6/25/01; 0.2 hours on 7/11/01; **[\*17]** 0.8 hours on 9/13/01; 0.3 hours on 9/14/01; 0.1 hours on 9/18/01; 0.15 hours on 9/19/01; 0.5 hours and 0.6 hours on 9/24/01; 4.2 hours on 9/25/01; and 2.0 hours and 2.1 hours on 9/26/01. (Doc. No. 179, Exh. B, p. 7-11). Thus, Franks time entries reflect that he may recover attorney's fees for a total of 22.2 hours that he spent on this case during this first part of Phase Three (the period of time prior to this Court granting Anglin's motion to intervene).

Get a Document - by Citations - 84 Empl. Prac. Dec. (CCH) P41,405

Case 1:01-cv-00409-SSB    Document 49-2    Filed 09/16/2003    Page 132 of 181    Page 9 of 14

However, Franks may not recover fees at the $ 200 per hour billable rate for the entire 22.2 hours. Of these time entries for which Franks may recover attorney's fees from Defendant, some entries contain work which would have been more appropriate for an associate and thus should be billed at an associate rate of $ 100 per hour. See Ursic, 719 F.2d at 677. Those entries that should be billed at a lower rate are the following: 1.5 hours on 5/24/01 for "research and review for Reply to Defendant's Response"; 2.0 hours on 5/31/01 for "read and review for reply to Defendant's response; draft Motion for Leave to File Reply; draft Reply"; 2.0 hours on 6/4/01 for "receive and review Barger deposition for use in Reply"; **[*18]** 1.4 hours on 6/6/01 for "Revise and edit Reply; read Barger deposition for page citations"; 0.6 hours on 6/6/01 for "draft Affidavit for FCHR"; 0.6 hours on 9/24/01 for "read cases for hearing on intervention"; 2.1 hours on 9/25/01 for "research and read cases, statutes, and rules." (Doc. No. 179, Exh. B, p. 7-11). Therefore, a total of 10.2 hours should be billed at a rate of $ 100.00 per hour and a total of 12.0 hours should be billed at a rate of $ 200.00 per hour. Accordingly, the lodestar amount for the first part of Phase Three is $ 3,420.00.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Since many of these entries are block-billed the Court has been forced to use its to adjust the time spent by Franks to reflect only the time spent in regards to the motion to intervene.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

2. Part Two of Phase Three: October 2, 2001 -- November 21, 2002

In an Order dated October 2, 2001, this Court granted Anglin's motion to intervene. At that late stage in the litigation, Anglin became a party to the suit. Franks claims that throughout the litigation, **[*19]** and during this final phase in particular, he was very active and worked very closely with the attorneys for the EEOC. According to Franks' time sheets, he billed a total of 667.5 hours during this final period. n8 *HN10* As the intervenor's attorney, Franks has the burden of proving not just that he was very active, but that his work constituted a distinct, unique, and substantial contribution to the strength of the EEOC's position. See Barnes, 168 F.3d at 432. After reviewing Franks' time sheets, the Court finds that the hours billed in part two of Phase Three should be reduced for the following reasons: tasks for which Franks excessively billed, pursuit of an unsuccessful discovery dispute, and tasks which should have been delegated to a paralegal or a less-experienced associate.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 The Court notes that during this period Becky Perkins, a paralegal, and Ashley Calhoun, a law clerk, billed 55.0 hours and 19.9 hours respectively. Since the Defendant does not contest these hours, the Court will not address these entries.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*20]**

*Excessively Billed*

In reviewing Franks' time sheets, there are tasks where the Court finds that Franks excessively billed for work that was not a distinct, unique, and substantial contribution to the work already being performed by the EEOC. The Court will separately address each of those

tasks.

The first task relates to preparation for a response to summary judgment. Approximately three months after Anglin became a party to the suit, Defendant filed its motion for summary judgment as to the claims originally asserted by the EEOC (Doc. No. 78, filed January 15, 2002). Reviewing this motion for summary judgment, it is clear to the Court that this motion was not directed at the claims recently asserted by Anglin. Indeed, the first paragraph of the motion states that Defendant "moves for summary judgment in it favor and against plaintiff the Equal Employment Opportunity Commission." (Doc. No. 78, p. 1). Nevertheless, Franks billed 81.6 hours preparing for a response to this motion which was not directed at his client and for which he never filed a response. n9 Moreover, the Court notes that, of these 81.6 hours, 31.5 hours were billed before Defendant even filed the January 15, 2002 motion **[\*21]** for summary judgment. The Court finds that these 81.6 hours are not reasonable and should be deducted from Franks' fee award.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 The Court first notes that many of the entries in which Franks has included time spent preparing for the first summary judgment motion are block-billed. Thus, the Court in its discretion has determined that the time spent by Franks "preparing" for Defendant's first summary judgment motion is represented in the following entries: 0.4 hours on 12/13/01; 2.0 hours on 12/14/01; 2.0 hours on 12/17/01; 1.9 hours on 12/19/01; 1.5 hours on 12/24/01; 4.9 hours on 12/27/01; 4.2 hours on 12/28/01; 5.0 hours on 1/2/02; 3.8 hours on 1/4/02; 2.7 hours on 1/14/02; 3.1 hours on 1/15/02; 3.3 hours on 1/16/02; 3.6 hours on 1/17/02; 4.1 hours on 1/18/02; 3.1 hours on 1/21/02; 2.6 hours on 1/22/02; 3.3 hours on 1/23/02; 3.2 hours on 1/24/02; 2.9 hours and 0.2 hours on 1/25/02; 3.2 hours on 1/28/02; 0.6 hours and 2.4 hours on 1/29/02; 2.9 hours on 1/30/02; 0.3 hours and 2.5 hours on 2/1/02; 3.0 hours on 2/4/02; 2.7 hours on 2/5/02; 0.4 hours and 3.1 hours on 2/6/02; 2.5 hours on 2/7/02; and 0.2 hours on 2/11/02.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*22]**

On February 15, 2002, Franks again started billing his client again for time spent in preparation for response to a motion for summary judgment that had yet to be filed. By May 6, 2002, the date upon which Defendant filed a motion for summary judgment on Anglin's claims (Doc. No. 138), Franks had already billed 27.0 hours of time for preparation for a response to Defendant's motion for summary judgment on Anglin's claims. n10 The Court finds that this is not reasonable and that Franks should not be permitted to recover the attorney fees from Defendant for these 27.0 hours.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n10 These entries include: 1.3 hours on 2/15/02; 2.1 hours on 2/19/02; 2.1 hours on 2/28/02; 1.4 hours on 3/1/02; 1.0 hours and 1.2 hours on 3/11/02; 2.0 hours on 3/13/02; 2.2 hours on 3/20/02; 2.7 hours on 3/22/02; 2.8 hours on 4/15/02; 3.5 hours on 4/19/02; 1.7 hours on 5/1/02; and 3.0 hours on 5/6/02.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Another task for which Franks excessively billed is the preparation of the pretrial statement and preparation for the pretrial conference. **[\*23]** The pretrial conference was held on August 16, 2002. Two months prior to the hearing, Franks commenced preparing the pretrial

Get a Document - by Citation - 84 Empl. Prac. Dec. (CCH) P41,405

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 134 of 181

Page 11 of 14

statement and preparing for the pretrial conference. In reviewing Franks' time sheets, the Court finds that Franks spent 114.5 hours preparing the pretrial statement and preparing for the pretrial conference. n11 Because Franks' entries are vague, it is not clear to the Court what Franks spent 114.5 hours reading and reviewing. The Court finds that 114.5 hours is an unreasonable amount of hours to spend on drafting a pretrial statement and preparing for the pretrial conference for a single plaintiff/single defendant case in which the EEOC was lead counsel. Rather, the Court finds 15 hours to be a reasonable amount of time for an attorney to spend on preparing a pretrial statement and preparing for a pretrial conference for a case of this level of complexity. Therefore, the Court finds that Franks may recover attorney's fees for 15 hours of the 114.5 hours he billed for these pretrial tasks.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Again, because Franks block-billed in many of his time entries, the Court had to use its discretion in determining how many hours within each entry could actually be attributed to Franks' pretrial stipulation and pretrial conference preparation. The Court found that the following entries represented the time spent by Franks performing these pretrial tasks: 2.2 hours on 6/19/02; 3.0 hours on 6/24/02; 3.0 hours on 6/25/02; 3.1 hours on 6/26/02; 3.0 hours on 6/27/02; 6.3 hours on 7/1/02; 5.6 hours on 7/2/02; 2.1 hours on 7/3/02; 5.8 hours on 7/5/02; 4.7 hours on 7/8/02; 4.0 hours on 7/9/02; 5.4 hours on 7/10/02; 1.6 hours on 7/11/02; 3.5 hours on 7/16/02; 1.8 hours on 7/18/02; 3.0 hours on 7/19/02; 5.3 hours on 7/23/02; 2.4 hours on 7/29/02; 2.9 hours on 7/30/02; 1.25 hours on 7/31/02; 3.0 hours on 8/6/02; 5.3 hours on 8/7/02; 4.6 hours on 8/8/02; 6.9 hours on 8/9/02; 3.6 hours on 8/10/02; 2.0 hours on 8/11/02; 5.0 hours on 8/12/02; 1.8 hours and 3.0 hours on 8/13/02; 3.0 hours on 8/14/02; and 6.0 hours on 8/15/02.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*24]**

Lastly, the Court finds that Franks excessively billed for a conference on November 14, 2002 with D. Linesch regarding attorney's fees. Franks traveled from Lakeland to Palm Harbor for this conference and billed for this travel time. An attorney fee affidavit could have been secured by telephone. Accordingly, Franks may not recover for 3.0 hours of the 6.6 hours billed in Franks' time entry on 11/14/02.

*Unsuccessful Disputes*

The Court may also exclude from a fee award any time spent pursuing unsuccessful disputes. HN11 In determining the number of hours reasonably expended, courts deduct time spent on discrete and unsuccessful claims. See Texas State Teachers Ass'n v. Garland Ind. Sch. Dist., 489 U.S. 782, 103 L. Ed. 2d 866, 109 S. Ct. 1486 (1989); Hensley, 461 U.S. at 434. In Defendant's response to Franks' motion for attorney's fees, Defendant asserts that Franks' fee award should be reduced so that it does not reflect any time he spent on the unsuccessful attempt to avoid Rule 26 disclosures. The Court agrees. Upon reviewing Franks' time sheets, the Court finds that Franks billed 48.05 hours on the Rule 26 disclosures issue. n12 Defendant should **[*25]** not be made to compensate Franks for this time.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 Again, the Court notes that Franks block-billed many of these entries. The Court, in its discretion, has determined that the following entries reflect the time spent by Franks on the unsuccessful Rule 26 disclosures issue: 0.3 hours on 1/14/02; 2.4 hours on 2/12/02; 0.5 hours and 0.3 hours on 2/14/02; 1.2 hours on 2/25/02; 0.2 hours on 2/26/02; 0.4 hours and 0.2 hours on 2/27/02; 1.4 hours on 3/25/02; 0.7 hours on 4/1/02; 3.8 hours on 4/2/02; 1.3

Get a Document - by Citation - 84 Empl. Prac. Dec. (CCH) P41,405    Page 12 of 14

Case 1:01-cv-00409-SSB    Document 49-2    Filed 09/16/2003    Page 135 of 181

hours on 4/9/02; 0.4 hours on 4/15/02; 0.3 hours on 4/16/02; 2.4 hours on 4/17/02; 1.0 hours on 4/18/02; 0.6 hours and 2.8 hours on 4/22/02; 0.1 hours on 4/23/02; 0.2 hours on 4/24/02; 0.7 hours on 5/28/02; 1.6 hours on 6/6/02; 0.8 hours on 6/10/02; 0.7 hours on 6/12/02; 2.3 hours on 7/22/02; 0.3 hours on 7/23/02; 0.5 hours on 7/24/02; 3.2 hours on 7/25/02; 6.8 hours and 3.0 hours on 7/26/02; 3.2 hours on 7/29/02; 1.25 hours on 7/31/02; 1.0 hours on 8/2/02; 2.0 hours on 8/5/02; and 0.2 hours on 8/6/02.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

*Associate or* **[\*26]** *Paralegal Work*

Lastly, 87.3 hours of the remaining time in part two of Phase Three must be discounted to reflect that these hours were spent performing tasks that should have been delegated to an associate or paralegal. These entries consist of such tasks as reviewing documents, drafting documents, and researching case law. n13 Thus, the fee award shall reflect that these 87.3 hours should be billed at $ 100.00 per hour for a lodestar amount of $ 8,730.00


- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n13 These tasks are reflected in the following entries: 0.2 hours on 10/29/01 for "Execute Subpoenas (2) for serving"; 1.0 hours on 12/11/01 for "Read recent cases re: discrimination, damages and punitive damages; draft correspondence to T. Rodriguez re: same"; 1.0 hours on 12/13/01 "Receive and review Order dated December 10, 2001 (26 pages)"; 2.1 hours on 2/19/02 for "Research and read recent cases re: pretext and race discrimination"; 6.3 hours on 3/19/02 for "Review pleading file for response to Defendant's motion for a New Case Management Order; draft and revise Plaintiff's opposition to Defendant's Motion"; 3.3 hours on 3/26/02 for "Research cases, read and review or response to motion re: Defendant's motion"; 3.3 hours on 3/27/02 for "Read and review Federal Rules of Evidence and cases re: summaries and exhibits"; 3.3 hours on 4/29/02 for "Review cases re: Title VII and FCRA interface and damages"; 3.7 hours on 4/30/02 for "Research and read cases re: damages; read and review for motions"; 1.7 hours on 5/1/02 for "Read deposition of Drew Akers"; 0.3 hours and 3.5 hours on 5/15/02 for "Receive and review recent case settled by Enterprise on race/promotions" and "Read documents and depositions for response to Defendant's Motion for Summary Judgment"; 3.4 hours on 5/16/02 for "Read documents, depositions and cases for response to Defendant's Motion for Summary Judgment"; 2.2 hours on 5/17/02 for "read documents, cases for response to Defendant's Motion for Summary Judgment"; 6.7 hours on 5/20/02 for "Read and review documents, depositions and exhibits for response to Defendant's Motion for Summary Judgment"; 6.0 hours on 5/22/02 for "Draft response to Motion for Summary Judgment; draft Statement of Facts; research and read cases re: response to MSJ"; 3.5 hours 5/23/02 for "Research and read re: cases for response; revise and edit motions"; 4.0 hours on 5/24/02 for "Research, read, review and revise Response to Motion"; 4.1 hours on 8/19/02 for "Draft Proposed Jury Instructions, Verdict Form and Voir Dire; continue draft Mediation Statement"; 1.3 hours on 8/20/02 for "Continue draft of Mediation Statement"; 1.0 hours on 8/27/02 for "read cases re: attorneys' fees"; 1.6 hours on 8/28/02 for "Research and read cases re: attorneys' fees"; 1.8 hours on 8/30/02 for "read cases re: attorneys' fees";, 4.3 hours on 9/20/02 for "Review and edit time sheets re: attorneys' fees; read cases re: attorneys' fees"; 3.0 hours on 9/23/02 for "read cases re: attorneys' fees"; 1.8 hours on 9/24/02 for "Revise and edit time sheets"; 2.7 hours on 10/1/02 for "Assemble and review materials in support of attorneys' fees requested by P. Zinober"; 2.3 hours on 11/11/02 for "Read and review for motion for fees; telephone conference with Attorney General's Office re: rate in Tampa"; 1.9 hours on 11/18/02 for "Read cases re: attorneys' fees"; 2.0 hours on 11/19/02 for "Research and read re: attorneys' fees"; 2.0 hours and 2.0 hours on 11/20/02 for "Research affidavit testimony of P. Zinober; review Zinober affidavit filed in Middle District case" and "Continue research and

reading attorneys' fees cases for Motion for fees" (Doc. No. 179, Exh. B, p. 12-29).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*27]**

In sum, the final lodestar for part two of Phase Three of the litigation is $ 72,940.00. n14

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n14 667.5 hrs -- (81.6 hrs + 27.0 hrs + 99.5 hrs + 3.0 hrs + 48.05 hrs + 87.3 hrs) = 321.05 hrs (321.05 hours x $ 200.00/hour) + (87.3 hours x $ 100.00/hour) = $ 72,940.00

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

d. Total Resulting Lodestar Amount

Based on the above, the Court finds that the resulting lodestar amount is $ 77,165.00 as summarized in the following table:

| Phase of Litigation | Actual Hours | Less Unreasonable Hours | Remaining Hours | Billing Rate | Reasonable Fees |
|---|---|---|---|---|---|
| Phase One | 22.2 | 22.2 | 0 | n/a | n/a |
| Phase Two | 70.0 | 65.35 | 3.4 | $ 200.00 | $ 680.00 |
| | | | 1.25 | $ 100.00 | $ 125.00 |
| Phase Three, Part One | 153.9 | 131.7 | 12.0 | $ 200.00 | $ 2,400.00 |
| | | | 10.2 | $ 100.00 | $ 1,020.00 |
| Phase Three, Part Two | 667.5 | 259.15 | 321.05 | $ 200.00 | $ 64,210.00 |
| | | | 87.3 | $ 100.00 | $ 8,730.00 |
| Lodestar Amount | | | | | $ 77,165.00 |

## 2. Adjustment to the Lodestar

After the Court calculates the lodestar, **[*28]**  the Court must determine whether an adjustment to the lodestar is necessary. *HN12* "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435. Furthermore, it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested[,] . . . if the relief obtained justified the expenditure of attorney time. Id. at 435 n.11. However, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 440.

Although the Court finds that Franks' hourly rate was too high and his hours spent were excessive, the Court does not find that the lodestar should be further reduced. Therefore, Franks is awarded attorney's fees in the amount of $ 77,165.00, as outlined above.

## IV. Conclusion

Get a Document - by Citation - 84 Empl. Prac. Dec. (CCH) P41,405    Page 14 of 14

Case 1:01-cv-00109-SSB    Document 49-2    Filed 09/16/2003    Page 137 of 181

Accordingly, it os ORDERED AND ADJUDGED that Intervenor's Motion for Attorney's Fees (Doc. No. 179) is **GRANTED IN PART**. Intervenor is hereby awarded $ 81,538.50. This total award is the sum of $ 77,165.00 for work performed by Mitchell Franks, Esq. and $ 4,373.50 **[*29]** for the services of a paralegal and a law clerk.

DONE AND ORDERED in Tampa, Florida this 13th day of May, 2003.

SUSAN C. BUCKLEW

United States District Judge


Service:   **Get by LEXSEE®**
Citation:  **2003 U.S. Dist. LEXIS 12852**
View:      Full
Date/Time: Monday, September 15, 2003 - 11:42 AM EDT


About LexisNexis | Terms and Conditions


Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# Exhibit 6

**DEFENDANT'S OBJECTIONS TO PLAINTIFF COUNSELS' TIME ENTRIES**

| DATE | ATTY/PARA | TIME | DESCRIPTION | OBJECTION |
|------|-----------|------|-------------|-----------|
| 02/08/01 | Theresa L. Groh | 1.0 | Phone conference with M. Wolf; review fax; research ERISA | Vague – no topic of conference and insufficient explanation of "research"; block billing without itemization of tasks |
| 02/09/01 | Theresa L. Groh | 3.0 | Phone conference with M. Wolf; review file materials; research ERISA | Vague – no topic of conference and insufficient explanation of research; block billing |
| 02/16/01 | Theresa L. Groh | 12.0 | Prep for, travel and meet with M. Wolf and potential clients re: case; conference with J. Murdock and J. Goldenberg; research ERISA; fact investigation | Vague – no topic of conference and insufficient explanation of research and "fact investigation"; block billing |
| 02/16/01 | John C. Murdock | 9.25 | Conference with T. Groh and J. Goldenberg; research ERISA | Vague – no topic of conference and insufficient explanation of research; duplicative of Groh and Goldenberg time on same date |
| 02/16/01 | Jeffrey S. Goldenberg | 5.0 | Research and conference with J. Murdock and T. Groh | Vague, duplicative, and block billing; billing for three partners in conferences and three partners conducting overlapping/duplicative research |
| 02/17/01 | John C. Murdock | 11.0 | Research ERISA case law; review of fact investigation for due diligence before filing; conferences with T. Groh, B. McGrath and J. Goldenberg | Vague – no topic of conferences and insufficient explanation of research; excessive billing for conference with four attorneys; block billing |
| 02/17/01 | Theresa L. Groh | 12.0 | Research and fact investigation; conferences with J. Murdock, B. McGrath and J. Goldenberg | Vague – no topic of research or conferences or explanation of fact investigation; duplicative of above entry; excessive billing for conference with four attorneys; block billing |
| 02/17/01 | Jeffrey S. Goldenberg | 6.0 | Conferences with T. Groh, J. Murdock and B. McGrath; research | Vague – no topic of conferences or research; block billing; excessive billing for attorneys in conference; |

| | | | | duplication/redundancy of above entries on same date. |
|---|---|---|---|---|
| 02/17/01 | V. Brandon McGrath | 4.0 | Research ERISA; conferences with T. Groh, J. Murdock and J. Goldenberg | Vague – no topic of conferences and insufficient explanation of research; block billing; excessive billing for attorneys in conference; duplication/redundancy of above entries on same date. |
| 02/18/01 | John C. Murdock | 12.75 | Research and fact investigation; conferences with T. Groh and B. McGrath | Vague – no topic of research or conferences and insufficient explanation of fact investigation; excessive billing attorneys in conferences/duplication; block billing |
| 02/18/01 | Theresa L. Groh | 14.0 | Research and fact investigation; conferences with J. Murdock and B. McGrath | Vague – no topic of research or conferences or explanation of fact investigation; excessive billing attorneys/duplication; block billing. |
| 02/18/01 | V. Brandon McGrath | 6.0 | Research ERISA; conferences with J. Murdock and T. Groh | Vague – no topic of conferences, insufficient explanation of research; excessive billing attorneys/duplication; block billing. |
| 02/19/01 | John C. Murdock | 10.5 | Research and draft complaint; conferences with T. Groh, B. McGrath and J. Goldenberg | Vague – no topic of research or conferences; excessive billing attorneys; block billing. |
| 02/19/01 | Theresa L. Groh | 12.0 | Research and draft complaint; conferences with J. Murdock, B. McGrath and J. Goldenberg | Vague – no topic of research or conferences; excessive billing attorneys in conferences; block billing; duplication of work. |
| 02/19/01 | Jeffrey S. Goldenberg | 3.0 | Conferences with J. Murdock, T. Groh and B. McGrath | Vague – no topic of conferences; excessive billing for conferences attended by four attorneys. |
| 02/19/01 | V. Brandon McGrath | 8.0 | Research ERISA; conferences with J. Murdock, T. Groh and J. Goldenberg | Vague – insufficient explanation of research, no topic of conferences; excessive billing for conferences attended by four attorneys; block billing. |

| 02/20/01 | John C. Murdock | 10.75 | Research and draft complaint; conferences with T. Groh and B. McGrath | Vague – no topic of research of conferences; excessive billing for conferences attended by three attorneys; block billing |
|---|---|---|---|---|
| 02/20/01 | Theresa L. Groh | 12.0 | Research and draft complaint; conferences with J. Murdock and B. McGrath | Vague – no topic of research or conferences; excessive billing attorneys; duplication/redundancy in tasks performed; block billing |
| 02/20/01 | V. Brandon McGrath | 8.0 | Research ERISA; conferences with J. Murdock and T. Groh | Vague – insufficient explanation of research; no topic of conferences; excessive billing attorneys in conferences; block billing |
| 02/21/01 | John C. Murdock | 12.25 | Review/revise Complaint; draft Class Representatives Rights and Responsibilities; draft Plaintiffs' First Set of Document Requests; draft memo to B. McGrath re: discovery; conferences with T. Groh | Duplication/redundancy in work performed by other attorneys; no topic of conferences; block billing |
| 02/21/01 | Theresa L. Groh | 14.0 | Draft complaint; review J. Murdock memo to B. McGrath re: discovery; conferences with J. Murdock; prepare for and meet with clients | Duplication/redundancy in work performed by other attorneys; vague - no topic of conferences; block billing |
| 02/21/01 | V. Brandon McGrath | 4.0 | Research and draft discovery | Vague – no topic of research; duplication of tasks/redundancy |
| 02/22/01 | John C. Murdock | 6.5 | Prepare Civil Cover Sheet and attachment to same; edit/revise Complaint; conferences with T. Groh | Vague – no topic of conferences; duplication of tasks/redundancy; excessive billing attorneys |
| 02/22/01 | Theresa L. Groh | 10.0 | Draft, revise and finalize Complaint; conference with J. Murdock; phone conference with clients | Vague – no topic of conferences; duplication of tasks/redundancy; excessive billing attorneys |
| 02/22/01 | V. Brandon McGrath | 2.5 | Research ERISA | Vague – insufficient explanation of research |
| 02/23/01 | John C. Murdock | .25 | Draft letter to Wolf | Vague – no subject of letter |
| 02/23/01 | Theresa L. Groh | 5.5 | Phone conferences and letters to clients re: Complaint and strategy; organize files; outlined discovery; phone conference with M. Wolf | Vague – no topic of conference with M. Wolf; duplication/redundancy in discovery billing; partner billing time for "organizing files"; block billing |
| 02/26/01 | Theresa L. Groh | 2.5 | Phone conference with clients; outline issues and | Vague – no topic of conference; |

3

| | | | organize research files | partner billing time for organizing files; block billing |
|---|---|---|---|---|
| 02/28/01 | Theresa L. Groh | .25 | Phone conference with clients | Vague – no topic of conference |
| 03/01/01 | Theresa L. Groh | .25 | Draft Noonan and Dalesandro letter | Vague – no subject of letter |
| 03/01/01 | John C. Murdock | .25 | Review and edit T. Groh Noonan and Dalesandro letter | Vague – no subject of letter |
| 03/12/01 | Theresa L. Groh | .25 | Phone conference with clients | Vague – no topic of conference |
| 03/15/01 | Theresa L. Groh | .5 | Phone conference with clients | Vague – no topic of conference |
| 03/20/01 | John C. Murdock | 6.25 | Review Defendant's motion to stay; review Defendant's Answer; phone conference with client; draft and edit Dalesandro affidavit re: stay motion; conference with T. Groh | Vague – no topic of conferences; block billing; nonrecoverable time for administrative exhaustion; |
| 03/20/01 | Theresa L. Groh | 8.0 | Review Defendant's motion to stay; review Defendant's Answer; conference with J. Murdock re: client affidavit; research stay issues | Duplicative/redundant billing; nonrecoverable time for administrative exhaustion; block billing |
| 03/21/01 | Theresa L. Groh | 5.5 | Draft letter to Wolf re: enclosures, status, strategy; phone conference with clients; research stay issues | Vague – no topic of conference; block billing; nonrecoverable time for administrative exhaustion |
| 03/22/01 | John C. Murdock | 7.75 | Review Defendant's motion to stay; conference with T. Groh; research exhaustion issues; draft/edit/review of memo opposing motion to stay; letter to Roberts | Vague – no topic of conference and no subject of letter; excessive/duplicative/redundant billing; nonrecoverable time for administrative exhaustion; block billing |
| 03/22/01 | Theresa L. Groh | 10.0 | Review Defendant's motion to stay; conference with J. Murdock; research exhaustion issues; draft/edit/review of memo opposing motion to stay | Vague – no topic of conference; excessive/duplicative/redundant billing; nonrecoverable time for administrative exhaustion; block billing |
| 03/23/01 | John C. Murdock | 5.5 | Review Defendant's motion to stay; conference with T. Groh; research exhaustion issues; draft/edit/review of memo opposing motion to stay | Vague – no topic of conference; excessive/duplicative/redundant billing; nonrecoverable time for administrative exhaustion; block billing |
| 03/23/01 | Theresa L. Groh | 6.5 | Review Defendant's motion to stay; conference with J. Murdock; research exhaustion issues; draft/edit/review of memo opposing motion to stay | Vague – no topic of conference; excessive/duplicative/redundant billing; nonrecoverable time for administrative exhaustion; block billing |
| 03/29/01 | Theresa L. Groh | 2.5 | Phone conferences with M. Wolf and witness; | Vague – no topic of conferences; |

| | | | | |
|---|---|---|---|---|
| | | | draft Peters affidavit; phone conference with clients | nonrecoverable time for administrative exhaustion; block billing |
| 03/30/01 | Theresa L. Groh | .75 | Draft letter to Wolf re: Peters affidavit; conference with J. Murdock re: client affidavit | Nonrecoverable time for administrative exhaustion; block billing |
| 03/03/01 | John C. Murdock | 1.5 | Phone conference with client; draft and edit Noonan affidavit re: stay motion; conference with T. Groh | Vague – no topic of conferences; nonrecoverable time for administrative exhaustion; block billing |
| 04/04/01 | Theresa L. Groh | 4.0 | Review Wolf fax; research; draft and review memorandum in opposition to motion to stay; conference with J. Murdock | Vague – no topic of fax, research, or conference; nonrecoverable time for administrative exhaustion; block billing |
| 04/04/01 | John C. Murdock | 3.5 | Research; draft and review memorandum in opposition to motion to stay; conference with T. Groh | Vague – no topic of research or conference; excessive/duplicative /redundant billing; nonrecoverable time for administrative exhaustion; block billing |
| 04/05/01 | Theresa L. Groh | 4.0 | Research, draft and review memorandum in opposition to motion to stay; conference with J. Murdock | Vague – no topic of research or conference; excessive/duplicative /redundant billing; nonrecoverable time for administrative exhaustion; block billing |
| 04/05/01 | John C. Murdock | 2.5 | Research, draft and review memorandum in opposition to motion to stay; conference with T. Groh | Vague – no topic of research or conference; excessive/duplicative /redundant billing; nonrecoverable time for administrative exhaustion; block billing |
| 04/06/01 | Theresa L. Groh | 6.0 | Research, draft and review memorandum in opposition to motion to stay; conference with J. Murdock | Vague – no topic of research or conference; excessive/duplicative /redundant billing; nonrecoverable time for administrative exhaustion; block billing |
| 04/06/01 | John C. Murdock | 1.5 | Research, draft and review memorandum in opposition to motion to stay; conference with T. Groh | Vague – no topic of research or conference; excessive/duplicative /redundant billing; nonrecoverable time for administrative exhaustion; block billing |
| 04/09/01 | Theresa L. Groh | 7.0 | Review Defendant's motion to stay; conference | Vague – no subject of conference; |

| | | | with J. Murdock; research exhaustion issues; finalize memo opposing motion to stay | insufficient description of research; excessive/duplicative /redundant billing for research and drafting of response to motion; nonrecoverable time for administrative exhaustion; block billing |
|---|---|---|---|---|
| 04/09/01 | John C. Murdock | 6.5 | Review Defendant's motion to stay; conference with T. Groh; research exhaustion issues; finalize memo opposing motion to stay | Vague – no topic of conference; insufficient description of research; excessive/duplicative /redundant billing for research and drafting of response to motion; nonrecoverable time for administrative exhaustion; block billing |
| 04/10/01 | Theresa L. Groh | .5 | Phone conference with clients | Vague – no topic of conference; nonrecoverable time for administrative exhaustion |
| 04/12/01 | Theresa L. Groh | .75 | Conference with J. Murdock | Vague – no topic of conference; nonrecoverable time for administrative exhaustion |
| 04/12/01 | John C. Murdock | .75 | Conference with T. Groh re: stay issues | Excessive/duplicative billing for conferences between attorneys; nonrecoverable time for administrative exhaustion |
| 04/16/01 | Theresa L. Groh | .5 | Draft Noonan and Dalesandro letter re: status | Nonrecoverable time for administrative exhaustion |
| 04/17/01 | Theresa L. Groh | .5 | Draft letters to employees and Dalesandro re: status and enclosures | Nonrecoverable time for administrative exhaustion |
| 04/17/01 | John C. Murdock | .25 | Draft and edit employee letter | Nonrecoverable time for administrative exhaustion |
| 04/23/01 | Theresa L. Groh | 3.5 | Review Defendant's Reply in Support of Motion to Stay and correspondence re: same; conference with J. Murdock; research same; draft letter to Wolf re: enclosed pleadings and case status; phone conference with clients | Vague – no topic of conferences; excessive/duplicate billing for conferences between attorneys; nonrecoverable time for administrative exhaustion; block billing |
| 04/23/01 | John C. Murdock | 1.5 | Review Defendant's Reply in Support of Motion to Stay and correspondence re: same; | Vague – no topic of conferences; nonrecoverable time for administrative |

| | | | | |
|---|---|---|---|---|
| | | | conference with T. Groh | exhaustion; excessive/duplicative time for attorney conferences; block billing |
| 04/24/01 | Theresa L. Groh | .5 | Draft Betz, Noonan and Dalesandro letter re: status | Nonrecoverable time for administrative exhaustion |
| 04/26/01 | Theresa L. Groh | .75 | Draft and edit letter to witness | Nonrecoverable time for administrative exhaustion; vague – no subject of letter |
| 04/27/01 | Theresa L. Groh | 3.0 | Review Order Granting Motion to Stay; conference with J. Murdock; phone conference with clients re: same; phone conference with M. Wolf re: same; review files | Nonrecoverable time for administrative exhaustion Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; Block billing |
| 04/27/01 | John C. Murdock | 1.5 | Review Order Granting Motion to Stay; status/strategy conference with T. Groh | Nonrecoverable time for administrative exhaustion Excessive/duplicative billing for conferences between attorneys; excessive/duplicate billing for same work by two attorneys; Vague – no topic of conference; Block billing |
| 04/30/01 | Theresa L. Groh | 7.0 | Phone conference with clients; phone conference with M. Wolf; review Wolf fax; meet with witness; notes re: meeting with witness | Nonrecoverable time for administrative exhaustion Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference – and excessive meeting time; Block billing |
| 05/01/01 | Theresa L. Groh | 2.0 | Draft Noonan and Dalesandro letter re: status; notes to file re: meeting with witness and strategy | Nonrecoverable time for administrative exhaustion; Block billing |
| 05/17/01 | Theresa L. Groh | .25 | Phone conference with clients | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference |
| 05/18/01 | Theresa L. Groh | .75 | Phone conference with clients; phone conference with M. Wolf | Nonrecoverable time for administrative exhaustion; Vague – no topic of conferences; duplicative billing for attorney conferences; block billing |

| 05/22/01 | Theresa L. Groh | 1.5 | Draft letter to Dalesandro re: enclosure; draft form letter to former IP employees | Nonrecoverable time for administrative exhaustion |
|---|---|---|---|---|
| 05/24/01 | Theresa L. Groh | .25 | Phone conference with clients | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference |
| 05/28/01 | Theresa L. Groh | 2.5 | Research and draft discovery requests; review evidence and notes re: same | Nonrecoverable time for administrative exhaustion; vague – no topic of research |
| 05/29/01 | Theresa L. Groh | 4.0 | Research and draft discovery requests; review evidence and notes re: same | Nonrecoverable time for administrative exhaustion; vague – no topic of research |
| 05/30/01 | Theresa L. Groh | 7.0 | Research and draft discovery requests; review evidence and notes re: same | Nonrecoverable time for administrative exhaustion; vague – no topic of research |
| 05/31/01 | Theresa L. Groh | 4.0 | Research and draft discovery requests; review evidence and notes re: same | Nonrecoverable time for administrative exhaustion; vague – no topic of research; excessive billing for drafting discovery |
| 06/01/01 | Theresa L. Groh | 2.5 | Research and draft discovery requests; review evidence and notes re: same | Nonrecoverable time for administrative exhaustion; vague – no topic of research; excessive billing for drafting discovery |
| 06/02/01 | Theresa L. Groh | 7.0 | Research and outline legal standard for appeal to district court; research and outline discovery issues; research and draft discovery requests; review evidence and notes re: same | Nonrecoverable time for administrative exhaustion; vague – no topic of research; excessive billing for drafting discovery; block billing |
| 06/04/01 | Theresa L. Groh | 10.0 | Phone conference with clients; review objections, responses and documents produced in response to discovery requests; research and draft discovery requests; review evidence and notes re: same; letter to M. Wolf | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference and no topic of research; excessive billing for drafting/reviewing discovery; block billing |
| 06/05/01 | Theresa L. Groh | 8.5 | Draft letter to witness; draft Roberts letter re: Request for Documents/Records and evidence issue; draft letter to Warner re: request for documents, records and info; review objections, | Nonrecoverable time for administrative exhaustion; duplicative/excessive billing for same tasks; block billing |

| | | | responses and documents produced in response to discovery requests; research and draft discovery requests; review evidence and notes re: same | |
|---|---|---|---|---|
| 06/06/01 | Theresa L. Groh | .5 | Draft letter to Wolf re: case status; review objections, responses and documents produced in response to discovery requests | Nonrecoverable time for administrative exhaustion; duplicative billing for same tasks |
| 06/12/01 | Theresa L. Groh | 1.5 | Phone conference with witness | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference; excessive/ duplicative billing by two attorneys |
| 06/12/01 | John C. Murdock | 1.5 | Phone conference with witness | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference; excessive/ duplicative billing by two attorneys |
| 06/13/01 | Theresa L. Groh | .5 | Emails from/to Cooper re: retention and status of case | Nonrecoverable time for administrative exhaustion |
| 06/14/01 | Theresa L. Groh | .75 | Draft Class Representatives Rights/Responsibilities re: Cooper; letter to Cooper re: same | Nonrecoverable time for administrative exhaustion |
| 06/18/01 | Theresa L. Groh | .75 | Draft letter to Warner re: request for information | Nonrecoverable time for administrative exhaustion |
| 06/19/01 | Theresa L. Groh | 1.0 | Draft letter to Warner re: request; review fax from Warner re: response to request | Nonrecoverable time for administrative exhaustion |
| 06/20/01 | Theresa L. Groh | 2.5 | Draft Roberts letter re: evidence issue; draft Warner letter re: request for documents/information; phone conference with clients | Nonrecoverable time for administrative exhaustion; excessive/duplicative billing to draft letter; block billing |
| 06/25/01 | Theresa L. Groh | .25 | Review Roberts letter re: evidence concern | Nonrecoverable time for administrative exhaustion |
| 07/02/01 | Theresa L. Groh | .25 | Draft letter to Florio and Warner re: extension | Nonrecoverable time for administrative exhaustion |
| 07/05/01 | Theresa L. Groh | 4.0 | Meet with clients | Nonrecoverable time for administrative exhaustion; Vague – no topic of meeting; excessive meeting time absent explanation/description |

9

| 07/06/01 | Theresa L. Groh | 3.0 | Review 07/06/01 letter from Warner re: extension; draft fee agreements for new clients and prepare for meeting | Nonrecoverable time for administrative exhaustion; Vague – no explanation of preparation needed for meeting or topic of meeting; Block billing |
|---|---|---|---|---|
| 07/09/01 | Theresa L. Groh | 5.5 | Prepare for and meet with additional clients and employees | Nonrecoverable time for administrative exhaustion; Vague – insufficient explanation of preparation needed and no topic of meeting; excessive meeting time absent explanation/description |
| 07/12/01 | Theresa L. Groh | 1.25 | Draft letter to Florio, Warner and Karre re: extension; phone conference with clients | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference |
| 07/30/01 | Theresa L. Groh | 2.0 | Review 07/30/01 letter from Warner re: response to 06/05/01 request;  notes to file re: same | Nonrecoverable time for administrative exhaustion |
| 08/02/01 | Theresa L. Groh | 1.0 | Phone conference with clients | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference; excessive time for conferencing |
| 08/03/01 | Theresa L. Groh | 6.0 | Draft letter to Florio and Warner re: request for full production of documents/information (case law cited); research and outline legal issues for appeal to district court | Nonrecoverable time for administrative exhaustion; nonrecoverable time for unnecessary / irrelevant discovery; block billing |
| 08/10/01 | Theresa L. Groh | .5 | Review Warner 08/10/01 letter re: request for additional information | Nonrecoverable time for administrative exhaustion |
| 08/17/01 | Theresa L. Groh | 1.0 | Draft letter to Warner re: request for information with supporting argument; letter to M. Wolf | Nonrecoverable time for administrative exhaustion; Vague – no topic of letter; Block billing |
| 08/22/01 | Theresa L. Groh | .75 | Review letter from Warner re: obligation of Plan Administrator | Nonrecoverable time for administrative exhaustion; excess billing time for review |
| 08/28/01 | Theresa L. Groh | 5.0 | Research legal issues re: appeal to district court | Nonrecoverable time for administrative exhaustion |
| 09/06/01 | Stephanie Vaaler | .25 | Phone conference with courthouse re: status of ERISA pleadings | Nonrecoverable time for administrative exhaustion |

| 09/07/01 | Theresa L. Groh | 1.0 | Phone conference with clients | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference; |
|---|---|---|---|---|
| 09/10/01 | Theresa L. Groh | .5 | Draft letter to Florio, Warner and Karre re: extension for appeal | Nonrecoverable time for administrative exhaustion |
| 09/18/01 | Theresa L. Groh | 1.0 | Review letter from Warner re: 30 day extension and request for information/materials; phone conference with clients; phone conference with M. Wolf | Nonrecoverable time for administrative exhaustion; Vague – no topic of conferences; duplicative / excessive attorney conferences; block billing |
| 09/25/01 | Theresa L. Groh | 1.5 | Draft Index to Administrative Appeal (binder) | Nonrecoverable time for administrative exhaustion; noncompensable clerical work |
| 10/04/01 | Theresa L. Groh | 7.0 | Draft letter to Warner/Florio re: Assets Purchase Agreement; research and outline legal issues for appeal to district court; letter to M. Wolf | Nonrecoverable time for administrative exhaustion; Block billing |
| 10/05/01 | Theresa L. Groh | .75 | Meeting with S. Vaaler re: distribution of affidavits; fax letter to M. Wolf; email to clients re: affidavits | Nonrecoverable time for administrative exhaustion |
| 10/05/01 | Stephanie Vaaler | 1.0 | Meeting with T. Groh re: distribution of affidavits; phone conference with clients re: email correspondence; update client files | Nonrecoverable time for administrative exhaustion; duplicative / excessive billing time for conferences; Block billing |
| 10/08/01 | Theresa L. Groh | 7.0 | Email to S. Vaaler re: email addresses; draft affidavits of clients and employees; phone conferences with same | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference; Block billing |
| 10/08/01 | Stephanie Vaaler | .50 | Phone conferences with clients re: email correspondence; emails to T. Groh re: same | Nonrecoverable time for administrative exhaustion |
| 10/10/01 | Theresa L. Groh | 11.0 | Organize and assemble exhibits and index re: support for claim of benefits; draft affidavits for Theobald, Smith, Noonan, Knobeloch, Keating, Johnson, Hobbs, Cooper, Dempsey, Dalesandro; phone conferences with same re: affidavits; draft appeal of denial of benefits | Nonrecoverable time for administrative exhaustion; noncompensable time for clerical work; Block billing |
| 10/11/01 | Theresa L. Groh | 12.0 | Review Warner letter re: response to request for documents; phone conferences with clients re: | Nonrecoverable time for administrative exhaustion; vague – no |

| | | | affidavits; draft appeal of denial of benefits; phone conference with M. Wolf | topic of conference; excessive / duplicative billing for attorney conferences; block billing |
|---|---|---|---|---|
| 10/12/01 | Theresa L. Groh | 12.0 | Finalize exhibits and arguments in support of claims for benefits; draft appeal of denial of benefits | Nonrecoverable time for administrative exhaustion; Block billing |
| 10/13/01 | Theresa L. Groh | 6.0 | Draft appeal of denial of benefits | Nonrecoverable time for administrative exhaustion |
| 10/14/01 | Theresa L. Groh | 10.0 | Draft appeal of denial of benefits | Nonrecoverable time for administrative exhaustion |
| 10/15/01 | Theresa L. Groh | 7.0 | Finalize 26 page letter to P. Karre re: appeal | Nonrecoverable time for administrative exhaustion |
| 10/15/01 | Stephanie Vaaler | 1.75 | Travel to Spitzfaden; bind brief | Nonrecoverable time for administrative exhaustion; clerical nonbillable/noncompensable time and noncompensable travel time; no explanation of travel; block billing |
| 10/17/01 | Stephanie Vaaler | .50 | File affidavits | Nonrecoverable time for administrative exhaustion; clerical nonbillable/noncompensable  time |
| 10/22/01 | Theresa L. Groh | .75 | Review letter of S. Cooper re: electronic correspondence; phone conference with clients | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference; Block billing |
| 11/05/01 | Theresa L. Groh | .50 | Phone conference with clients | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference |
| 11/06/01 | Theresa L. Groh | 6.0 | Draft witness affidavit; draft appeal letter | Nonrecoverable time for administrative exhaustion; Block billing |
| 12/07/01 | Theresa L. Groh | 5.0 | Draft and revise Motion to Lift Stay; review letter of P. Karre re: denial of appeal; phone conference with clients | Nonrecoverable time for administrative exhaustion; Vague – no topic of conference; Block billing |
| 12/07/01 | John C. Murdock | 2.75 | Revise Motion to Lift Stay | Nonrecoverable time for administrative exhaustion |
| 12/10/01 | Theresa L. Groh | 9.0 | Revise Motion to Lift Stay; client letter and Roberts letter (Motion to Lift Stay); draft client | Nonrecoverable time for administrative exhaustion; Block |

| | | | | |
|---|---|---|---|---|
| | | | letter re: denial of appeal decision; draft discovery requests | billing |
| 12/11/01 | Theresa L. Groh | 2.0 | Conference with J. Murdock re: Court hearing and conference re: lifting the stay and strategy; phone conference with clients | Nonrecoverable time for administrative exhaustion Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference with clients; Block billing |
| 12/11/01 | John C. Murdock | 1.50 | Conference with T. Groh re: Court hearing and conference re: lifting the stay and strategy | Nonrecoverable time for administrative exhaustion Excessive/duplicative billing for conferences between attorneys |
| 01/11/02 | Theresa L. Groh | 5.0 | Prepare for and attend conference and hearing on motion to lift stay; conference with J. Murdock; phone conference with clients | Nonrecoverable time for administrative exhaustion Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; Block billing |
| 01/11/02 | John C. Murdock | 3.25 | Prepare for and attend conference and hearing on motion to lift stay; conference with T. Groh | Nonrecoverable time for administrative exhaustion Excessive/duplicative billing for conferences between attorneys; Excessive / duplicate billing for attendance of two attorneys at hearing; Vague – no topic of conference; Block billing |
| 01/14/02 | Stephanie Vaaler | .25 | Conference with T. Groh re: IP employee project | Nonrecoverable time for administrative exhaustion |
| 01/14/02 | Theresa L. Groh | 2.0 | Conference with S. Vaaler re: IP employee project; review Court Order granting Plaintiffs' Motion to Lift Stay and calendar settings; conference with J. Murdock; phone conference with clients | Nonrecoverable time for administrative exhaustion Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference with J. Murdock or clients; Block billing |
| 01/14/02 | John C. Murdock | 1.0 | Review Court Order granting Plaintiffs' Motion to Lift Stay and calendar settings; conference with | Nonrecoverable time for administrative exhaustion |

| | | | T. Groh | Excessive/duplicative billing for conferences between attorneys; excessive/duplicative billing for same tasks; Vague – no topic of conference; Block billing |
|---|---|---|---|---|
| 01/15/02 | Stephanie Vaaler | 2.0 | Draft table of employee profiles | |
| 01/16/02 | Stephanie Vaaler | 4.0 | Draft table of employee profiles | |
| 01/22/02 | Theresa L. Groh | 5.0 | Review 01/21/02 Younger letter re: ERISA and 6th Circuit procedures; research | Vague – no description/topic of research; Block billing |
| 01/23/02 | Theresa L. Groh | 5.0 | Research issues to submit to Court | Vague – no description/topic of research |
| 01/24/02 | Theresa L. Groh | 7.0 | Research issues to submit to Court | Vague – no description/topic of research |
| 02/13/02 | Theresa L. Groh | .50 | Review 02/13/02 Younger letter re: class issues | |
| 03/04/02 | John C. Murdock | 4.50 | Research; draft and edit Plaintiffs' Informal Interrogatories and Document Requests re: Class Certification | Vague – no description/topic of research; Block billing |
| 03/15/02 | Theresa L. Groh | 2.50 | Draft Younger letter outlining areas of dispute; phone conference with clients | Vague – no topic of conference; block billing |
| 03/28/02 | John C. Murdock | 2.0 | Draft/revise/edit Younger letter re: discovery and class certification | Excessive/duplicative billing by two partners for same task |
| 04/11/02 | John C. Murdock | .50 | Review Younger letter re: issue involving exhausted administrative remedies | Excessive review time |
| 04/12/02 | John C. Murdock | 5.75 | Draft and edit Agreed Entry re: Class Certification issues; class issues research analysis; draft Younger letter re: position on claims procedure; research same | Block billing |
| 04/12/02 | Stephanie Vaaler | .50 | Court filing; Agreed Entry | Nonbillable/noncompensable clerical time |
| 04/25/02 | Theresa L. Groh | 2.50 | Draft and edit Younger letter re: court conference; class definition and discovery issues | Block billing |
| 04/30/02 | Theresa L. Groh | 3.50 | Review 04/30/02 Younger letter re: informal discovery requests and attached protective order; conference with John Murdock; phone conference with clients | Excessive/duplicative billing for conferences between attorneys and redundant/excessive review by two attorneys; Vague – no topic of conferences; Block billing |

14

| 04/30/02 | John C. Murdock | 1.50 | Review Younger letter re: informal discovery requests and attached protective order; conference with TLG | Excessive/duplicative billing for conferences between attorneys and redundant/excessive review by two attorneys; Vague – no topic of conference; Block billing |
|---|---|---|---|---|
| 05/01/02 | John C. Murdock | 8.50 | Draft Plaintiffs' Interrogatories and Document Requests Directed to Class Action Certification; edit Plaintiffs' Interrogatories and Requests Related to Merits; draft Younger letter re: class member issue and discovery; prepare for Court conference | Vague – no explanation of preparation; Block billing |
| 05/01/02 | Theresa L. Groh | 10.0 | Draft Plaintiffs' Interrogatories and Document Requests Direct to the Merits; edit the discovery related to class certification; letter to Younger re: merits discovery; prepare for Court conference | Excessive/duplicate time billed by two partners for same tasks; vague - no explanation of preparation; Block billing |
| 05/02/02 | John C. Murdock | 4.25 | Draft and edit McElligott letter re: discovery objections; prepare for and attend Court conference | Vague – no explanation of preparation; excessive time billed; Block billing |
| 05/02/02 | Theresa L. Groh | 7.50 | Revise, finalize and serve all discovery requests related to merits and class certification; prepare for and attend Court conference | Vague – no explanation of preparation; excessive time billed; Block billing |
| 05/10/02 | Theresa L. Groh | 2.50 | Review Protective Order; conference with JCM re: same; draft letter to Roberts re: enclosed Agreed Protective Order | Excessive/duplicative billing for conferences between attorneys; Block billing |
| 05/10/02 | John C. Murdock | 2.0 | Conference with T. Groh re: Protective Order; review same | Excessive/duplicative billing for conferences between attorneys |
| 05/17/02 | Theresa L. Groh | 2.50 | Review Roberts letter and enclosed IP Objections to Pls' Disc. Req. Related to Merits; phone conference with clients | Vague – no topic of conference; Block billing |
| 05/20/02 | Theresa L. Groh | 2.50 | Meeting with S. Vaaler re: administrative record indexing project; phone conference with Doggett re: witnesses, evidence and legal issues | Block billing |
| 05/20/02 | Stephanie Vaaler | 7.0 | Meeting with T. Groh re: administrative record indexing project; retrieve; review and index administrative record | Excessive/duplicate time billed for meeting; Block billing |
| 05/21/02 | Theresa L. Groh | 6.0 | Draft Doggett letter; review Roberts letter and | Nonrecoverable time for pursuit of |

| | | | enclosed class issue discovery objectives; draft Motion to Compel Discovery | unnecessary and irrelevant discovery and motion; Block billing |
|---|---|---|---|---|
| 05/22/02 | Theresa L. Groh | 7.0 | Edit Motion to Compel Discovery; draft affidavit of T. Groh and J. Murdock; draft subpoena Schedule A | Nonrecoverable time for pursuit of unnecessary and irrelevant discovery and motion; Block billing |
| 05/23/02 | Theresa L. Groh | 4.0 | Draft witness affidavits; draft and edit Lechner letter re: Smart Papers subpoena; phone conference with clients | Vague – no topic of conference; Block billing |
| 05/23/02 | John C. Murdock | 1.0 | Draft subpoena schedule | |
| 05/23/02 | Stephanie Vaaler | .25 | Edit index to administrative record | Noncompensable clerical work |
| 06/03/02 | Theresa L. Groh | 1.0 | Review letter of Miraglia and enclosed responses to Def. to Pl's Discovery Requests | |
| 06/05/02 | Theresa L. Groh | 1.0 | Review Lechner letter re: objections of Smart Papers | Excessive review time. |
| 06/06/02 | Theresa L. Groh | .50 | Review letter of Younger re: IP's position on Smart's objections | |
| 06/07/02 | Theresa L. Groh | 4.50 | Review Administrative Record | |
| 06/08/02 | Theresa L. Groh | 8.0 | Review Administrative Record; review Defendant's Motion for Judgment on Administrative Record | Block billing. |
| 06/09/02 | Theresa L. Groh | 10.0 | Review Administrative Record; research | Vague – no description/topic of research; excessive review time; Block billing |
| 06/11/02 | Theresa L. Groh | 11.0 | Review Defendant's Motion for Judgment on Administrative Record; research | Vague – no description/topic of research; Block billing |
| 06/11/02 | John C. Murdock | 8.50 | Review Defendant's Motion for Judgment on Administrative Record; research | Vague and excessive/duplicative billing for undefined research and review of motion; Block billing |
| 06/12/02 | Theresa L. Groh | 14.0 | Review Defendant's Motion for Judgment on Administrative Record; conference with JCM re: same; research | Vague and excessive/duplicative billing for undefined research and review of motion and attorney conferences; Block billing |
| 06/12/02 | John C. Murdock | 7.25 | Review Defendant's Motion for Judgment on Administrative Record; conference with T. Groh re: same | Excessive/duplicative billing for attorney conferences and review time; Block billing |
| 06/13/02 | John C. Murdock | 6.0 | Review/analyze Defendant's Motion for Judgment | Vague and excessive/duplicative |

| | | | | |
|---|---|---|---|---|
| | | | on Administrative Record; follow up research | billing for undefined research and review of motion; Block billing |
| 06/13/02 | Theresa L. Groh | 12.0 | Meeting with S. Vaaler re: research and organization of Administrative Record; research re: Defendant's Motion for Judgment | Vague and excessive/duplicative billing for undefined research and review of motion and conferences; Block billing |
| 06/13/02 | Stephanie Vaaler | 3.0 | Meeting with T. Groh re: research and organization of Administrative Record; research | Vague and excessive/duplicative billing for undefined research and conferences; Block billing |
| 06/14/02 | Stephanie Vaaler | 3.0 | Research | Vague – no description/topic of research conducted |
| 06/14/02 | Theresa L. Groh | 12.0 | Research re: Defendant's Motion for Judgment | Vague – insufficient description/topic of research conducted |
| 06/15/02 | Theresa L. Groh | 12.0 | Research re: Defendant's Motion for Judgment; conference with J. Murdock | Excessive/duplicative billing for conferences between attorneys and for same/overlapping tasks performed; Vague – no topic of conference and insufficient description/topic of research conducted; Block billing |
| 06/15/02 | John C. Murdock | 12.0 | Conference with T. Groh re: research and motion for judgment; review/analysis of Defendant's Motion for Judgment | Excessive/duplicative billing for conferences between attorneys and for same/overlapping tasks performed; excessive time billed for review/ analysis of motion; Block billing |
| 06/16/02 | John C. Murdock | 4.50 | Review/analysis of Defendant's Motion for Judgment on Administrative Record; with follow up research | Vague and excessive/duplicative/ redundant billing for undefined research and review of motion |
| 06/18/02 | John C. Murdock | 4.25 | Meeting with S. Vaaler re: review of administrative record; draft letter to Roberts re: evidence issue; review of administrative record | Excessive/duplicate billing by two attorneys and paralegal for same tasks; Block billing |
| 06/18/02 | Stephanie Vaaler | 5.0 | Conference with J. Murdock re: review of administrative record; review administrative record and prepare chart | Excessive/duplicate billing for conferences; Block billing |
| 06/18/02 | Theresa L. Groh | 14.0 | Research issues re: Defendant's Motion for Judgment; Plaintiffs' entitlement to judgment; Plaintiffs' entitlement to discovery; phone | Vague – insufficient description of research conducted; excessive billing for overlapping tasks; Block billing |

| | | | conference with clients and other employees; draft affidavits; phone conference with clients | |
|---|---|---|---|---|
| 06/19/02 | Theresa L. Groh | 14.0 | Draft client letter re: case status (IP Motion, Motion to Compel, Opp. Memo); research issues re: Defendant's Motion for Judgment, Plaintiffs' entitlement to judgment; Plaintiffs' entitlement to discovery; phone conferences with clients and other employees; draft affidavits | Vague – no topic of conferences; insufficient description of research conducted; Block billing |
| 06/19/02 | Stephanie Vaaler | 8.0 | Review administrative record and prepare chart | Excessive/duplicative billing |
| 06/20/02 | Stephanie Vaaler | 7.50 | Review administrative record and prepare chart; pull relevant documents re: administrative record | Excessive/duplicative billing |
| 06/20/02 | Theresa L. Groh | 11.0 | Research issues re: Defendant's Motion for Judgment, Plaintiffs' entitlement to judgment; Plaintiffs' entitlement to discovery; phone conferences with clients and other employees; draft affidavits | Vague – no topic of conferences; insufficient description of research conducted; excessive billing for conferences in absence of explanation; Block billing |
| 06/21/02 | Stephanie Vaaler | .50 | Conference with C. Pence re: charts | Vague – insufficient description. |
| 06/21/02 | Theresa L. Groh | 12.0 | Research issues re: Defendant's Motion for Judgment; Plaintiff's entitlement to judgment; Plaintiffs' entitlement to discovery; phone conferences with clients and other employees; draft affidavits | Vague – no topic of conferences; insufficient description of research conducted; excessive billing for conferences in absence of explanation; Block billing. |
| 06/24/02 | Theresa L. Groh | .50 | Email to employee re: status | |
| 06/25/02 | Theresa L. Groh | 12.0 | Research issues re: Defendant's Motion for Judgment, Plaintiffs' entitlement to judgment; Plaintiffs' entitlement to discovery; phone conferences with clients and other employees; draft affidavits | Vague – no topic of conference; insufficient description of research conducted; duplicative/redundant/ entries; block billing |
| 06/26/02 | Theresa L. Groh | 14.0 | Draft Motion for Extension and Entry re: same; letter to Roberts re: same; research issues re: Defendant's Motion for Judgment, Plaintiffs' entitlement to judgment; Plaintiffs' entitlement to discovery; phone conferences with clients and other employees; draft affidavits; conference with J. Murdock re: class certification research and brief sections and strategy | Excessive/duplicative billing for conferences between attorneys; insufficient description of research conducted; duplicative/redundant entries; Block billing |

| 06/26/02 | John C. Murdock | 9.50 | Draft correspondence to Roberts re: Joint Motion; research regarding Plaintiffs' Motion for Class Certification; conference with T. Groh re: class certification research and brief sections and strategy | Excessive/duplicative billing for conferences between attorneys; Block billing |
|---|---|---|---|---|
| 06/27/02 | Theresa L. Groh | 1.50 | Correspondence to Younger/McElligott; phone conference with witness re: affidavit | Block billing. |
| 06/27/02 | John C. Murdock | 8.75 | Draft Dalesandro affidavit re: class representative; continued research/analysis for motion to certify class | Block billing; insufficient description of duplicative entry for research/analysis. |
| 06/28/02 | Theresa L. Groh | 3.0 | Draft witness affidavit; phone conferences with witness re: same | Vague – no subject/explanation of affidavit |
| 06/28/02 | John C. Murdock | 9.25 | Revise exhibits (charts) prepared by S. Vaaler; administrative record review; draft Noonan affidavit in support of designation as class representative | Vague/duplicative entry for "administrative record review;" Block billing |
| 06/29/02 | John C. Murdock | 10.50 | Edit Bales and Beecher affidavits; research and draft Plaintiffs' Motion for Class Certification; conference with T. Groh re: class certification research and brief sections and strategy | Excessive/duplicative billing for conferences between attorneys; insufficient explanation of research; Block billing |
| 06/29/02 | Theresa L. Groh | 13.0 | Research issues re: Defendant's Motion for Judgment, Plaintiffs' entitlement to judgment; Plaintiffs' entitlement to discovery; phone conference with clients and other employees; draft affidavits; conference with J. Murdock re: class certification research and brief sections and strategy | Excessive/duplicative billing for conferences between attorneys; duplicative/redundant/excessive time entries by two partners for same tasks; Block billing |
| 06/30/02 | Theresa L. Groh | 14.0 | Research issues re: Defendant's Motion for Judgment, Plaintiffs' entitlement to judgment; Plaintiffs' entitlement to discovery; phone conferences with clients and other employees; draft affidavits; conference with J. Murdock re: class certification research and brief sections and strategy | Excessive/duplicative billing for conferences between attorneys; insufficient description of research conducted; vague – no topic of conferences with clients; excessive/unwarranted conferences absent explanation; Block billing |
| 06/30/02 | John C. Murdock | 11.50 | Draft, and supplemental research, Plaintiffs' Motion for Class Certification; conference with T. | Excessive/duplicative billing for conferences between attorneys; |

| | | | | |
|---|---|---|---|---|
| | | | Groh re: class certification research and brief sections and strategy | insufficient description of research conducted; Block billing |
| 07/01/02 | Theresa L. Groh | 12.0 | Prepare cover for Plaintiffs' Exhibits in Support of Motion to Compel; research issues re: Defendant's Motion for Judgment, Plaintiffs' entitlement to judgment; Plaintiffs' entitlement to discovery; phone conferences with clients and other employees; draft affidavits; conference with J. Murdock re: class certification research and brief sections and strategy | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conferences with clients; nonrecoverable time for irrelevant discovery and motion to compel same; duplicative/redundant / excessive time entries for same work performed; Block billing |
| 07/01/02 | John C. Murdock | 7.25 | Meeting with S. Vaaler re: exhibit (charts) revisions and review of same; continued draft (and supplemental research) of Plaintiffs' Motion for Class Certification; conference with T. Groh re: class certification research and brief sections and strategy | Excessive/duplicative billing for conferences between attorneys and duplicative/redundant / excessive time entries for same work performed; nonrecoverable time for irrelevant discovery and motion to compel same; Block billing |
| 07/01/02 | Stephanie Vaaler | 7.0 | Meeting with J. Murdock re: project involving revision of charts; revise charts for J. Murdock; review brief and prepare index of cases; prepare exhibit book for brief | Duplicative/excessive billing for conferences; Block billing |
| 07/02/02 | Theresa L. Groh | 12.0 | Draft Opposition to Judgment Motion; research issues re: Defendant's Motion for Judgment, Plaintiffs' entitlement to judgment; Plaintiffs' entitlement to discovery; phone conferences with clients and other employees; draft affidavits; conference with J. Murdock re: class certification research and brief sections and strategy | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conferences with clients; nonrecoverable time for irrelevant discovery and motion to compel same; duplicative/redundant / excessive time entries for same work performed; Block billing |
| 07/02/02 | John C. Murdock | 10.5 | Assist in draft/edit Opposition to Judgment Motion; research and final edits to Plaintiffs' Motion for Class Certification; conference with T. Groh re: class certification research and brief sections and strategy | Excessive/duplicative billing for conferences between attorneys; Block billing |
| 07/02/02 | Stephanie Vaaler | 7.50 | Prepare pleadings; review brief for cases and prepare list of cases (by section); auto-cited | |

| 07/03/02 | Theresa L. Groh | 14.0 | Draft client letter re: case development; draft Noonan/Dalesandro letter re: same; draft and edit witness letter re: same; prepare Compel Merits insert; prepare Motion to Compel Production (by Smart Papers) Pursuant to Subpoena; prepare Motion to Compel Discovery Related to Merits; draft Groh affidavit; draft letter to Younger/McElligott, Roberts re: enclosures and Cross-Motion; Lechner letter re: enclosed Motion to Compel | Nonrecoverable time for irrelevant discovery and motion to compel same; Block billing |
|---|---|---|---|---|
| 07/03/02 | Stephanie Vaaler | 7.50 | Copy and bind brief and exhibits; prepare index of JCM cases, auto-cited cases; file brief; hand deliver copy to Graydon, Head | Block billing; clerical nonbillable work |
| 07/08/02 | Theresa L. Groh | 1.0 | Draft letter to Miraglia re: Motion to Compel; phone conference with clients | Nonrecoverable time for irrelevant discovery and motion to compel same; Block billing; Vague – no topic of conference |
| 07/15/02 | Stephanie Vaaler | 1.50 | Copy cases; draft indices and organize binder of cited cases | Clerical nonbillable work |
| 07/16/02 | Stephanie Vaaler | 3.50 | Copy cases; draft indices and organize binder of cited cases | Clerical nonbillable work; excessive time billed |
| 07/23/02 | Theresa L. Groh | 3.0 | Review Roberts 07/23/02 letter w/attached Supplement to Admin. Record; IP's Response to Plaintiffs' Motion to Compel; IP's Reply to Pls' Memo. In Opp. | Nonrecoverable time for motion to compel irrelevant discovery; Block billing |
| 07/24/02 | Theresa L. Groh | 9.0 | Review Defendant's Supplement to the Administrative Record; review Defendant's Response to Motion to Compel Discovery Related to the Merits; conference with J. Murdock; review and research Defendant's Opposition to Plaintiffs' Motion for Judgment | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; nonrecoverable time for motion to compel irrelevant discovery; Block billing |
| 07/24/02 | John C. Murdock | 3.25 | Review Defendant's Response to Plaintiffs' Motion to Compel Discovery Related to Class Certification; strategy conference with TLG | Excessive/duplicative billing for conferences between attorneys;duplicative/excessive billing for same task; nonrecoverable time for motion to compel irrelevant discovery; |

| | | | | Vague – insufficient description of topic of conference; Block billing |
|---|---|---|---|---|
| 07/25/02 | Theresa L. Groh | 11.0 | Review Defendant's Supplement to the Administrative Record; review Defendant's Response to Motion to Compel Discovery Related to the Merits; conference with J. Murdock; review and research Defendant's Opposition to Plaintiffs' Motion for Judgment | *Duplicate of 07/24/02 billing entries; Excessive/duplicative billing for same tasks and for conferences between attorneys; nonrecoverable time for motion to compel irrelevant discovery; Vague – no topic of conference; Block billing |
| 07/25/02 | John C. Murdock | 7.25 | Review/analysis of Defendant's reply/opposition memorandum; conference with T. Groh | Excessive/duplicative billing for conferences between attorneys and same tasks performed by both; excessive/redundant time for review of brief; Vague – no topic of conference; Block billing |
| 07/25/02 | Stephanie Vaaler | 4.0 | Pull cases cited in Defendant's motions; organize binder of Defendant's cited cases | |
| 07/26/02 | Theresa L. Groh | 10.0 | Review and research Defendant's Opposition to Plaintiffs' Motion for Judgment | Duplicative/excessive/redundant billing for tasks; vague – insufficient description of research. |
| 07/26/02 | John C. Murdock | 6.50 | Research/draft analysis and review of Administrative Record for Reply Memorandum in Support of Plaintiffs' Motion for Judgment | |
| 07/27/02 | Theresa L. Groh | 12.0 | Research, draft and revise Reply Memorandum in Support of Plaintiffs' Motion for Judgment; Plaintiffs' Motion to Compel | Nonrecoverable time for motion to compel irrelevant discovery; block billing. |
| 07/28/02 | Theresa L. Groh | 14.0 | Research, draft and revise Reply Memorandum in Support of Plaintiffs' Motion for Judgment; Plaintiffs' Motion to Compel | Nonrecoverable time for motion to compel irrelevant discovery; block billing. |
| 07/30/02 | Theresa L. Groh | 14.0 | Review Hollingsworth letter with enclosed Non-Party Smart Papers Memo in Opposition to Plaintiffs' Motion to Compel | Nonrecoverable time for motion to compel irrelevant discovery. |
| 08/02/02 | Theresa L. Groh | 14.0 | Research, draft and revise Reply Memorandum in Support of Plaintiffs' Motion for Judgment; Plaintiffs' Motion to Compel | Nonrecoverable time for motion to compel irrelevant discovery; duplicative/excessive billing time for tasks; block billing. |

| 08/03/02 | Theresa L. Groh | 12.0 | Research, draft and revise Reply Memorandum in Support of Plaintiffs' Motion for Judgment; Plaintiffs' Motion to Compel | Nonrecoverable time for motion to compel irrelevant discovery; duplicative/excessive billing time for tasks; block billing. |
| --- | --- | --- | --- | --- |
| 08/03/02 | John C. Murdock | 7.50 | Research/analysis for draft of Reply Memorandum in Support of Class Certification | |
| 08/04/02 | Theresa L. Groh | 12.0 | Research, draft and revise Reply Memorandum in Support of Plaintiffs' Motion for Judgment; Plaintiffs' Motion to Compel | Nonrecoverable time for motion to compel irrelevant discovery; duplicative/excessive billing time for tasks; block billing. |
| 08/04/02 | John C. Murdock | 5.75 | Research and assisting in drafting Reply Memorandum in Support of Plaintiffs' Motion for Judgment; research and draft Reply Memorandum in Support of Class Certification | |
| 08/06/02 | Theresa L. Groh | 13.0 | Research, draft and revise Reply Memorandum in Support of Plaintiffs' Motion for Judgment, Plaintiffs' Motion to Compel | Nonrecoverable time for motion to compel irrelevant discovery; duplicative/excessive billing time for tasks; block billing. |
| 08/06/02 | Stephanie Vaaler | 1.50 | Pull cases off LEXIS | Vague – insufficient description of task |
| 08/06/02 | John C. Murdock | 7.25 | Research and draft Reply Memorandum in Support of Class Certification | |
| 08/07/02 | Theresa L. Groh | 10.0 | Research, draft and revise Reply Memorandum in Support of Plaintiffs' Motion for Judgment, Plaintiffs' Motion to Compel; conference with J. Murdock re: Reply Memorandum in Support of Class Certification | Excessive/duplicative billing for conferences between attorneys; excessive/duplicative time billed for overlapping tasks; Block billing |
| 08/07/02 | John C. Murdock | 12.0 | Research and draft Reply Memorandum in Support of Class Certification; conference with T. Groh re: same | Excessive/duplicative billing for conferences between attorneys; vague – insufficient description of research; Block billing |
| 08/07/02 | Stephanie Vaaler | .50 | Copy/prep Motion to Compel for filing; prepare exhibit tabs | Noncompensable clerical work. |
| 08/08/02 | John C. Murdock | 10.25 | Draft Reply in Support of Plaintiffs' Motion for Class Certification; conference with T. Groh; assist in edit/revision of Reply Memorandum in Support of Plaintiffs' Motion for Judgment; | Excessive/duplicative billing for conferences between attorneys; nonrecoverable time for motion to compel irrelevant discovery; Block |

| | | | Plaintiffs' Motion to Compel | billing |
|---|---|---|---|---|
| 08/08/02 | Theresa L. Groh | 8.0 | Research, draft and revise Reply Memorandum in Support of Plaintiffs' Motion for Judgment, Plaintiffs' Motion to Compel; conference with J. Murdock re: Reply Memorandum in Support of Class Certification | Excessive/duplicative billing for conferences between attorneys; nonrecoverable time for motion to compel irrelevant discovery; excessive/duplicative billing for overlapping tasks; Block billing |
| 08/09/02 | Theresa L. Groh | 9.0 | Letter to Roberts, Younger/McElligott; research, draft and revise Reply Memorandum in Support of Plaintiffs' Motion for Judgment, Plaintiffs' Motion to Compel; conference with J. Murdock re: Reply Memorandum in Support of Class Certification; phone conference with clients | Excessive/duplicative billing for conferences between attorneys and redundant/overlapping tasks; vague – no description of research conducted; Block billing |
| 08/09/02 | John C. Murdock | 6.75 | Draft/edit Reply in Support of Plaintiffs' Motion for Class Certification; draft Reply in Support of Motion to Compel re: Merits; conference with T. Groh | Excessive/duplicative billing for conferences between attorneys; unrecoverable time for motion to compel irrelevant discovery; Block billing |
| 08/09/02 | Stephanie Vaaler | 4.0 | Copy and tab exhibits; shepardize cases; pull cases; LEXIS; review record for citations; revise index to administrative record | Copying/tabbing is clerical non-billable work. |
| 08/12/02 | Theresa L. Groh | 1.0 | Meeting with S. Vaaler; update clients re: status; letter to M. Wolf | Vague – no topic of meeting; no subject of letter to co-counsel; Block billing |
| 08/12/02 | Stephanie Vaaler | 1.50 | Meeting with T. Groh; update clients; draft correspondence to clients re: recent filings; copy enclosures; prepare mailing re: same | Vague – no topic of meeting; nonbillable clerical work; Block billing |
| 08/13/02 | Theresa L. Groh | .25 | Review/edit S. Vaaler draft of correspondence to clients | |
| 08/14/02 | Stephanie Vaaler | .50 | Revise letter to clients per T. Groh instructions; prepare mailing | Clerical non-billable work |
| 09/04/02 | Theresa L. Groh | .25 | Meeting with S. Vaaler re: pleadings binder | |
| 09/04/02 | Stephanie Vaaler | 2.0 | Meeting with T. Groh re: pleadings binder; prepare pleadings binder | Duplicative/excessive billing for conferences; clerical nonbillable work |
| 09/09/02 | Stephanie Vaaler | .50 | Meeting with J. Murdock re: binder; prepare binder | Duplicative/excessive billing for conferences; clerical nonbillable work |

| 10/18/02 | Theresa L. Groh | .50 | Phone conference with clients | Vague – no topic of conference |
|---|---|---|---|---|
| 11/25/02 | Theresa L. Groh | 3.0 | Review Roberts letter with attached IP Motion to Supplement Motion for Judgment on Administrative Record; conference with J. Murdock; research | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; no description of research conducted; Block billing |
| 11/25/02 | John C. Murdock | 2.50 | Review/analysis of IP Motion to Supplement Motion for Judgment on Administrative Record; conference with T. Groh | Excessive/duplicative billing for conferences between attorneys and for review of motion; Vague – no topic of conference; Block billing |
| 11/27/02 | Theresa L. Groh | 3.0 | Research and draft opposition to motion to supplement | Vague – no description of research conducted |
| 12/02/02 | Theresa L. Groh | 3.0 | Research and draft opposition to motion to supplement | Vague – no description of research conducted |
| 12/03/02 | John C. Murdock | 2.0 | Review and revise Opposition Supplement; conference with T. Groh | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; Block billing |
| 12/03/02 | Theresa L. Groh | 3.0 | Conference with J. Murdock; finalize opposition to motion to supplement | Excessive/duplicative billing for conferences between attorneys and overlapping tasks; Vague – no topic of conference; Block billing |
| 12/03/02 | Stephanie Vaaler | 1.0 | USDC Court filing; Memorandum in Opposition; hand delivery to Michael Roberts | Clerical non-billable work |
| 12/04/02 | Theresa L. Groh | .75 | Younger/McElligott correspondence; phone conference with clients | Vague – no subject of correspondence |
| 01/07/03 | Theresa L. Groh | .25 | Email to SV re: file review | Clerical non-billable work |
| 01/07/03 | Stephanie Vaaler | .25 | File review for letter to clients; Email to T. Groh re: same | Clerical non-billable work |
| 01/09/03 | Theresa L. Groh | .50 | Phone conference with clients | Vague – no topic of conference; |
| 01/28/03 | Theresa L. Groh | .50 | Draft letter to clients re: status | |
| 01/29/03 | Theresa L. Groh | .50 | Revise letter to clients re: status | |
| 02/05/03 | Theresa L. Groh | 6.50 | Review Miraglia letter re: T. Groh attendance at A. Johnson depo.; draft letter to Miraglia and McElligott re: A. Johnson depo.; phone conference with defense counsel re: same; | Excessive/duplicative billing for conferences between internal attorneys; Vague – no topic of conferences; Block billing |

| | | | conference with J. Murdock; phone conference with Doggett; research re: same | |
|---|---|---|---|---|
| 02/05/03 | John C. Murdock | 1.50 | Draft and edit letter to McGuire Woods re: Johnson deposition; conference with T. Groh | Excessive/duplicative billing for conferences between internal attorneys and duplicative/overlapping tasks; Vague – no topic of conferences; Block billing |
| 02/06/03 | Theresa L. Groh | 4.0 | Prepare for and participation in conference with Court; conference with J. Murdock re: same | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference and no description of preparation; Block billing |
| 02/06/03 | John C. Murdock | 3.0 | Conference with T. Groh; prepare for and participate in Court conference | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference and no description of preparation; excessive/billing for attendance at conference by two partners; Block billing |
| 02/07/03 | Theresa L. Groh | .50 | Phone conference with clients | Vague – no topic of conference |
| 02/10/03 | Theresa L. Groh | .50 | Review Court Order re: Johnson depo | Excessive review time. |
| 02/11/03 | Theresa L. Groh | .25 | Draft letter to Miraglia re: Johnson transcript | |
| 03/18/03 | Theresa L. Groh | 3.0 | Client letter (Order Granting Class Certification); review Court Order granting Plaintiffs' Motion for Class Certification and Motion for Judgment; conference with J. Murdock; phone conference with clients | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conferences; Block billing |
| 03/18/03 | John C. Murdock | 2.50 | Review/analysis of Court Order granting Plaintiffs' Motion for Class Certification and Motion for Judgment; conference with T. Groh | Excessive/duplicative billing for conferences between attorneys and for same tasks performed by two billing attorneys; Vague – no topic of conference; Block billing |
| 03/19/03 | Theresa L. Groh | .50 | Phone conference with M. Wolf; review materials from M. Wolf | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference or materials reviewed |

| 03/20/03 | Theresa L. Groh | .50 | Phone conference with clients | Vague – no topic of conference |
|---|---|---|---|---|
| 03/21/03 | Theresa L. Groh | .25 | Review Amended Order | |
| 03/24/03 | Theresa L. Groh | .25 | Phone conference with clients | Vague – no topic of conference |
| 03/25/03 | Theresa L. Groh | .50 | Draft letter to Noonan and Dalesandro with enclosed lists | |
| 03/26/03 | Todd B. Naylor | 8.0 | Research re: Decision; draft and edit memo re: same | Vague – insufficient description of research and reason therefore |
| 03/28/03 | Stephanie Vaaler | .25 | Review newspaper for article related to Decision | Noncompensable time |
| 04/01/03 | Theresa L. Groh | 4.0 | Research re: attorneys fees | |
| 04/02/03 | Theresa L. Groh | 1.0 | Phone conference with clients; conference with J. Murdock | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; Block billing |
| 04/02/03 | John C. Murdock | .50 | Conference with T. Groh | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; |
| 04/23/03 | Theresa L. Groh | 1.0 | Review Miraglia letter with attached chart "Potential Severance Benefits" | |
| 04/23/03 | Todd B. Naylor | 8.0 | Research and memo re: prejudgment interest | |
| 04/24/03 | John C. Murdock | .25 | Discussion with S. Vaaler re: damages project | |
| 04/24/03 | Stephanie Vaaler | 1.0 | Discussion with J. Murdock re: damages; calculate same | |
| 04/24/03 | Theresa L. Groh | 2.0 | Outline issues for Final Judgment Entry; phone conference with J. McElligott | |
| 04/29/03 | Theresa L. Groh | .50 | Phone conference with clients | Vague – no topic of conference; |
| 05/12/03 | John C. Murdock | 7.25 | Research into class notice issues in preparation to draft final notice | |
| 05/13/03 | John C. Murdock | 7.25 | Draft/edit proposed notice; research into proposed class certification judgment language | |
| 05/15/03 | Theresa L. Groh | 5.0 | Draft outline of Motion for Final Judgment Entry; draft Notice Concerning Rights | |
| 05/16/03 | John C. Murdock | 2.50 | Draft/edit Younger letter re: Final Judgment Entry | |
| 05/19/03 | Theresa L. Groh | 1.50 | Phone conference with J. McElligott and C. Younger; phone conference with clients | Vague – no topic of conferences; |
| 05/19/03 | John C. Murdock | 8.75 | Draft, edit and research re: proposed entry language for Court Rule 23(b)(2) certification; | Excessive billing time for task; Block billing; insufficient description of |

| | | | conference with T. Groh re: same; draft correspondence to opposing counsel; prepare for conference with opposing counsel | preparation for conference |
|---|---|---|---|---|
| 05/21/03 | Theresa L. Groh | 2.0 | Conference with J. Murdock re: proposed entry language for court for Rule 23(b)(2) certification; review J. Murdock letter to Younger with attached proposed entry language | Excessive billing time for conference and review of letter. |
| 05/22/03 | Theresa L. Groh | 7.50 | Conference with J. Murdock re: judgment issues and settlement; phone conference with opposing counsel; research fees and interest issues | Excessive/duplicative billing for conferences between internal attorneys; Block billing |
| 05/22/03 | John C. Murdock | 4.0 | Conference with T. Groh re: judgment issues and settlement; preparation for phone conference; phone conference re: final judgment with opposing counsel with follow-up | Excessive/duplicative billing for conferences between internal attorneys; insufficient explanation of preparation for conference; excessive/duplicative billing for same tasks for two attorneys; Block billing |
| 05/23/03 | Theresa L. Groh | .75 | Draft McElligott letter outlining outcome of phone conference and assigned responsibilities | |
| 05/30/03 | Theresa L. Groh | 2.0 | Prepare for phone conference with defense counsel re: outstanding issues for final judgment entry; conference with J. Murdock; phone conference with McElligott re: final judgment issues | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference with J. Murdock; no description of preparation for conference; Block billing |
| 05/30/03 | John C. Murdock | 2.50 | Prepare for phone conference with defense counsel re: outstanding issues for final judgment entry; conference with T. Groh | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference with T. Groh; unnecessary duplication of tasks by two partners; no description of preparation for conference; Block billing |
| 06/12/03 | Theresa L. Groh | .50 | Phone conference with clients | Vague – no topic of conference |
| 06/20/03 | Theresa L. Groh | 2.0 | Prepare for phone conference; phone conference with Judge Beckwith re: Final Judgment Entry and briefing schedule | Vague – no explanation of preparation; Block billing |
| 06/20/03 | John C. Murdock | 5.25 | Prepare for phone conference; phone conference with Judge Beckwith re: Final Judgment Entry | Vague – no explanation of preparation; unnecessary duplication |

| | | | and briefing schedule; detailed review of IP proposed notice and draft Exhibit A for notice | of tasks by two partners; Block billing |
|---|---|---|---|---|
| 06/30/03 | Theresa L. Groh | .50 | Meet with C. Pence and S. Vaaler re: fee application | |
| 06/30/03 | Stephanie Vaaler | 3.50 | Meeting with T. Groh and C. Pence re: motion for attorney fees; meeting with C. Pence re: same; preparation and review of hours in preparation for motion for attorney fees | Block billing |
| 07/01/03 | Stephanie Vaaler | 5.75 | Preparation and review of hours in preparation for motion for attorney fees | |
| 07/02/03 | Theresa L. Groh | 2.0 | Revised Notice; conference with J. Murdock; letter to M. Wolf | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; Block billing |
| 07/02/03 | John C. Murdock | 2.25 | Draft Proposed Notice; conference with T. Groh | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; Block billing |
| 07/02/03 | Stephanie Vaaler | 6.0 | Preparation and review of hours in preparation for motion for attorney fees | |
| 07/03/03 | Stephanie Vaaler | 6.0 | Preparation and review of hours in preparation for motion for attorney fees; retrieved transcript from court reporter | |
| 07/07/03 | John C. Murdock | 3.50 | Draft, revise and finalize Proposed Notice; conference with T. Groh; draft correspondence to James McElligott enclosing final Class Notice and Exhibit A's as proposed by Plaintiffs | Excessive/duplicative billing for conferences between attorneys; excessive billing time for drafting of notice; Vague – no topic of conference; Block billing |
| 07/07/03 | Theresa L. Groh | 2.0 | Review Proposed Notice submitted to Court; conference with J. Murdock | Excessive/duplicative billing for conferences between attorneys; redundant/excessive billing time for review of proposed notice; Vague – no topic of conference; Block billing |
| 07/07/03 | Stephanie Vaaler | 6.25 | Preparation and review of hours in preparation for motion for attorney fees | |
| 07/08/03 | John C. Murdock | 6.75 | Draft, revise and finalize Proposed Notice | Excessive/duplicative billing for |

| | | | submission to the Court; review Defendant's submission of Proposed Notice; conference with T. Groh; phone conference with Mike Roberts re: Proposed Notice filings | conferences between attorneys; Vague – no topic of conference with T. Groh; excessive/duplicative billing time for drafting/finalizing of notice on July 7, 2003; Block billing |
|---|---|---|---|---|
| 07/08/03 | Theresa L. Groh | 2.0 | Review Proposed Notice submitted to Court; conference with J. Murdock | Duplicate/redundant/excessive billing entry same as July 7, 2003 entry; Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; Block billing |
| 07/08/03 | Stephanie Vaaler | 3.75 | Travel to Sixth Circuit Law Library to pull/copy ALR case; reviewed file for current addresses of IP employees; phone conference with Don Trusty re: skip tracing services; online research re: same | Noncompensable travel time; Block billing |
| 07/09/03 | John C. Murdock | 3.50 | Conference with T. Groh; cross-check International Paper's Exhibit A's to be served with Proposed Class Notice; draft correspondence to Jay McElligott re: same; conference with S. Vaaler re: notice project | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference with T. Groh; Block billing |
| 07/09/03 | Theresa L. Groh | 9.0 | Review Defendant's submission of Proposed Notice; conference with J. Murdock; research attorney fees, interest and final judgment entry issues | Excessive/duplicative billing for conferences between attorneys; Vague – no topic of conference; excessive billing time for attorneys' fees research and petition; Block billing |
| 07/09/03 | Stephanie Vaaler | 4.0 | Meeting with J. Murdock re: notice project; phone conferences with locator services; reviewed Plaintiffs' submission of proposed class action notice and prepared outline re: notice projects; reviewed and cross-checked proposed Exhibit A's against chart re: benefits | Block billing; duplicative billing for conferences. |
| 07/10/03 | Theresa L. Groh | 10.0 | Phone conference with clients; research attorney fees, interest and final judgment entry issues | Vague – no topic of conference; Block billing. |
| 07/10/03 | Stephanie Vaaler | 6.50 | Preparation of tracking chart re: status of notice; E-mail to C. Pence re: McElligott letter | Excessive, unnecessary billing time. |

| 07/11/03 | Theresa L. Groh | 10.0 | Review time entries and prepare application for attorney fees | |
| 07/14/03 | Theresa L. Groh | 11.50 | Review time entries and prepare application for attorney fees; research fee issues; conference with S. Vaaler | Vague – no topic of conference; excessive billing time for fee application and research; Block billing |
| 07/14/03 | Stephanie Vaaler | 2.0 | Edit outline re: notice; phone conference with locator services; discussion with T. Groh re: same; reviewed Banks files re: notice | Excessive/duplifrom billing time for conferences; Block billing |
| 07/15/03 | Theresa L. Groh | 12.0 | Review time entries and prepare application for attorney fees; research fee issues | Excessive billing time for fee application and research; Block billing |
| 07/15/03 | Stephanie Vaaler | 5.25 | Prepare attachments to notice; review demos of various online database systems; review pricing list re: same; phone conferences with services re: pricing; performed address searches; E-mails to database providers | Block billing |
| 07/16/03 | Stephanie Vaaler | 1.0 | Research; locator services | |
| 07/18/03 | Theresa L. Groh | .50 | Phone conference with clients | Vague – no topic of conference |
| 07/21/03 | Theresa L. Groh | 13.0 | Research attorney fees, interest and final judgment entry issues; review of International Paper Retirement Plan #001 | Excessive billing time for fee application and research; Block billing |
| 07/22/03 | Theresa L. Groh | 1.0 | Phone conference with M. Wolf; research fee issues; conference with J. Murdock re: International Paper Retirement Plan #001 | Excessive/dupliform billing for conferences between attorneys; Vague – no topic of conference with M. Wolf; Block billing |
| 07/22/03 | John C. Murdock | 6.50 | Conference with S. Vaaler re: discrepancies in analysis of International Paper's proposed Exhibit A's for Class Notice when cross-checked against earlier discovery produced by International Paper regarding the identification of class members; detailed review of International Paper Retirement Plan #001 for verification of International Paper representations regarding Flex Six for Notice; conference with T. Groh regarding same | Excessive/dupliform billing for conferences; duplication of tasks by billing partners; Block billing |
| 07/22/03 | Stephanie Vaaler | 2.50 | Review T. Groh e-mail re: class member address; e-mail to class member; updated address chart; phone conference with Locate Plus; file review; | Block billing |

| | | | omitted names of IP employees; meeting with J. Murdock re: same | |
|---|---|---|---|---|
| 07/23/03 | John C. Murdock | 2.25 | Draft/edit/review correspondence to James McElligott concerning International Paper's failure to address issues regarding missing Exhibit A's for Class Notice (based upon prior July 10, 2003 correspondence to International Paper); conference with S. Vaaler re: Exhibit A cross-check issues | Block billing |
| 07/23/03 | Stephanie Vaaler | .50 | Travel to Freking & Betz to obtain package of materials; conference with J. Murdock re: Exhibit A | Noncompensable/unnecessary travel/clerical time; excessive/duplicative billing for conferences |
| 07/24/03 | Theresa L. Groh | 8.0 | Phone conference with clients; research attorney fees, interest and final judgment entry issues | Vague – no topic of conference; Excessive billing time for fee application and research; Block billing |
| 07/25/03 | Theresa L. Groh | 10.0 | Research and draft Motion for Entry of Judgment and for fees, interest and costs; review time entries re: same | Excessive billing time for fee application and research |
| 07/28/03 | Stephanie Vaaler | 2.0 | Telephone conference with class member and e-mail re: status; e-mail to T. Groh re: same; copied notice enclosure; phone conference with First Data re: agreement; proof notice list against mailing list with C. Pence | Nonbillable clerical time; Block billing |
| 07/30/03 | Theresa L. Groh | 9.0 | Phone conference with witnesses re: Declarations; conferences with S. Vaaler re: package for witnesses; draft Declarations; conference with J. Murdock re: same; review time entries; research attorney fees | Excessive billing time for fee application and research; excessive/duplicative time for conferences; Block billing |
| 07/30/03 | Stephanie Vaaler | 2.75 | Edit chart re: status of class notice; research re: previous efforts to exercise due diligence re: notice; phone conversations/e-mail with database services re: due diligence issue | Block billing |
| 07/31/03 | Theresa L. Groh | 11.50 | Phone conference with witnesses re: Declarations; phone conferences with M. Wolf; conference with J. Murdock re: motion and | Excessive billing time for fee application and research; excessive/duplicative time for attorney |

| | | | research; revise Declarations; research fees and interest | conferences; Block billing |
|---|---|---|---|---|
| 07/31/03 | Stephanie Vaaler | 2.0 | Drafted letter to Rick Wayne; prepared enclosures | Excessive billing time for fee application and research |

#385107

# Exhibit 7

Service: **Get by LEXSEE®**
Citation: **1997 us app lexis 17205**

*1997 U.S. App. LEXIS 17205, \**

HOYTE R. BLACK, SR., Individually and as Administrator for the Estate of Dorothy M. Black, Deceased, Plaintiff-Appellant, v. LOJAC ENTERPRISES, INC., Defendant-Appellee.

NO. 96-5654

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

1997 U.S. App. LEXIS 17205

July 2, 1997, FILED

**NOTICE: [\*1]** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 117 F.3d 1420, 1997 U.S. App. LEXIS 24098.

**PRIOR HISTORY:** On Appeal from the United States District Court for the Middle District of Tennessee. 91-01043. Echols. 4-2-96.

**DISPOSITION:** AFFIRMED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee, individually and as administer of deceased's estate, appealed the order of the United States District Court for the Middle District of Tennessee, which awarded only a portion of the attorney's fees sought by the employee as the prevailing party in his employment discrimination action. The deceased's claim, under the Employee Retirement Income Security Act had been bifurcated and was voluntarily dismissed without prejudice.

**OVERVIEW:** Because the attorney's fee application and documentation was "woefully inadequate," the district court required the employee to provide a more detailed accounting before it rendered an award. The employee contested the district court's failure to state a lodestar figure and in making various deductions. The court affirmed the district court's judgment. The court found, inter alia, that (1) where the calculations of the fee award were on sound legal ground, such that they were based on the lodestar and specific deductions, there was no need to require the actual figures to be set out; (2) it was proper to deduct amounts for documented time entries that failed to even identify the general subject matter involved; (3) the employee was not a prevailing party on the ERISA claim, such that no fee was awarded, because the claim was voluntarily dismissed and it was not the employee's claim; (4) it was proper to deny fees for the "shoddy nature" of the first application; (5) fees for efforts that were unfounded were properly denied; and (6) it was proper to reduce the fee award on the basis of the employee's limited success where the employer was found not to have "willfully discriminated."

**OUTCOME:** The court affirmed the district court's judgment, which awarded only a portion of the attorney's fees sought by the employee as the prevailing party in his employment discrimination action against the employer.

**CORE TERMS:** age discrimination, spent, time spent, documentation, calculation, prevailing party, expended, motion to compel, new trial, additur, fee award, lodestar, reasonableness, amount claimed, fee-shifting, excluding, abuse of discretion, properly denied, amounts claimed, amount of time, post-trial, general subject, hourly rate, arriving, clerk, reasonable fee, jury verdict, fee request, proportionality, quantification

### LexisNexis (TM) HEADNOTES - Core Concepts - ♦ Hide Concepts

Civil Procedure > Costs & Attorney Fees > Attorney Fees 🗝ALL
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount 🗝ALL
Civil Procedure > Appeals > Standards of Review > Abuse of Discretion 🗝ALL
Constitutional Law > Civil Rights Enforcement > Costs & Attorney Fees 🗝ALL
Civil Procedure > Appeals > Standards of Review > Standards Generally 🗝ALL
**HN1**⬇Analytical guidelines govern a determination of attorney's fees under prevailing party fee-shifting provisions, generally including that of 29 U.S.C.S. § 216(b) of the Fair Labor Standards Act. Under § 216(b), incorporated into the age discrimination context by 29 U.S.C.S. § 626(b) of the Age Discrimination in Employment Act, 29 U.S.C.S. §§ 621-634, attorney's fees are mandatory but in an amount to be determined by the district court. Such a determination is within the sound discretion of the district court although it is required to provide a concise but clear explanation for the award. The appellate court's review of the application of the analytical guideline analysis is for abuse of discretion.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees 🗝ALL
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount 🗝ALL
Legal Ethics > Client Relations > Attorney Fees 🗝ALL
Constitutional Law > Civil Rights Enforcement > Costs & Attorney Fees 🗝ALL
**HN2**⬇The starting point in determining a reasonable attorney's fee award is the calculation of the "lodestar," that is, the number of hours reasonably expended on the litigation as a whole multiplied by a reasonable hourly rate.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees 🗝ALL
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount 🗝ALL
Constitutional Law > Civil Rights Enforcement > Costs & Attorney Fees 🗝ALL
Civil Procedure > Appeals > Standards of Review > Standards Generally 🗝ALL
**HN3**⬇Where the attorney fee award calculations of the district court are on sound legal ground, the appellate court can discern no useful purpose in requiring the actual figures to be set out.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees 🗝ALL
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount 🗝ALL
Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review 🗝ALL
Evidence > Procedural Considerations > Inferences & Presumptions 🗝ALL
Civil Procedure > Appeals > Standards of Review > Standards Generally 🗝ALL
**HN4**⬇Under the system of three-tier review applicable when reviewing a determination on the reasonableness of hours requested, we review the district court's decision as to the adequacy of documentation for clear error. The party seeking the fee award bears the burden of supplying the district court with adequate documentation. The

fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
Civil Procedure > Appeals > Standards of Review > De Novo Review
Constitutional Law > Civil Rights Enforcement > Costs & Attorney Fees
HN5 The appellate court reviews de novo whether the district court erred in excluding time from an attorney's fee award because the time was unrelated to the claims on which the party prevailed. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
Constitutional Law > Civil Rights Enforcement > Costs & Attorney Fees
HN6 The attorney's fee provision, 29 U.S.C.S. § 216(b) of the Fair Labor Standards Act, provides: The court shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. 29 U.S.C.S. § 216(b). More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
Constitutional Law > Civil Rights Enforcement > Costs & Attorney Fees
HN7 Time spent preparing an application for attorney's fees is normally recoverable. More Like This Headnote

Civil Procedure > Relief From Judgment > Additurs & Remittiturs
HN8 Additur is forbidden in federal court as an increase by the court of something never in the verdict. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
Civil Procedure > Relief From Judgment > Additurs & Remittiturs
Constitutional Law > Civil Rights Enforcement > Costs & Attorney Fees
HN9 Where the district court correctly finds the post-trial motions to be unfounded efforts to enhance a low damage award, attorney fees for such services are properly denied. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
Constitutional Law > Civil Rights Enforcement > Costs & Attorney Fees
Civil Procedure > Appeals > Costs & Attorney Fees
HN10 Recovery for the additional time spent on appeal may be had where the appellant prevailing party is successful in his assignments of error on appeal. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount
Constitutional Law > Civil Rights Enforcement > Costs & Attorney Fees
HN11 Although it is true that there is no strict rule of proportionality, a district court is vested with broad discretion to reduce an attorney's fee award based upon the "results obtained" by the prevailing party. There is no precise rule or formula for

making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.  More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees 🔙ALL
Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount 🔙ALL
Constitutional Law > Civil Rights Enforcement > Costs & Attorney Fees 🔙ALL

HN12⬆ The amount of the attorney's fee award must be determined on the facts of each case.  More Like This Headnote

**COUNSEL:** For HOYT R. BLACK, SR., individually and as Administrator for the Estate of Dorothy M. Black, Plaintiff - Appellant: M. Reid Estes, Jr., David P. Canas, Stewart, Estes & Donnell, Nashville, TN.

For LOJAC ENTERPRISES, INCORPORATED, Defendant - Appellee: John P. Branham, Donald Capparella, Branham & Day, Nashville, TN.

**JUDGES:** Before: SILER and COLE, Circuit Judges; HOOD, District Judge. *

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**OPINIONBY:** JOSEPH M. HOOD

**OPINION: JOSEPH M. HOOD, District Judge.** In this employment discrimination action, the plaintiff-appellant, Hoyte R. Black, appeals the decision of the district court awarding only a portion **[*2]** of the attorney's fees Black sought under the applicable fee-shifting provisions. Black claims that the district court erred in failing to state a lodestar figure and in making various deductions from that unstated figure in arriving at Black's fee award. We affirm.

**I.**

Hoyte R. Black was a heavy equipment mechanic for Lojac Enterprises, Inc., beginning his employment in March of 1986. In December of 1990, Lojac instituted a seasonal layoff leaving Black and many other employees without work. In time, a "substantially younger" employee whom Black had been training was recalled to work while Black was not.

Claiming unlawful age discrimination, Black filed this action against Lojac pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34, and the Tennessee Human Rights Act (THRA), Tenn Code Ann. §§ 4-21-101 to 4-21-903. Black's wife, Dorothy M. Black, joined in the action claiming violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, in that her husband had allegedly been discharged in order to deprive them of medical benefits under the company plan.

After four years of pre-trial litigation, Black's age discrimination **[*3]** claims were tried to a jury. Upon Black's motions, the ERISA claim had been bifurcated and was eventually voluntarily dismissed without prejudice. As to the age discrimination claims, the jury found that age was a determining factor in Lojac's decision to not recall Black and awarded him $ 16,000 in damages, excluding front pay. Even so, the jury concluded that Lojac had not "willfully discriminated" against Black because of his age. Neither Black nor Lojac appealed this judgment.

Following the jury verdict, Black moved the district court to amend the judgment by additur or, in the alternative, to grant a new trial on the issue of damages only. The district court summarily denied the motion to amend judgment by additur in light of the broad rule of _Dimick v. Schiedt_, 293 U.S. 474, 486-87, 79 L. Ed. 603, 55 S. Ct. 296 (1935). Finding no error and, moreover, no prejudice in the trial proceedings, the district court also denied the motion for a new trial.

As a prevailing party, Black filed a bill of costs with the clerk of court along with supporting documentation claiming $ 7,407.48. Lojac filed objections to the bill of costs. Of the amount claimed, the clerk of court taxed **[*4]** $ 3,778.05 against Lojac.

Pursuant to the fee-shifting provisions of the ADEA, 29 U.S.C. § 216(b), and the THRA, Tenn. Code Ann. § 4-21-306(a)(7), Black filed an application for attorney's fees in the amount of $ 181,022.75. Accompanying his application, Black filed affidavits summarizing the services counsel had provided and in support of the reasonableness of the fee request. Lojac objected to the fees claimed maintaining that there was insufficient explanation for the amount of time Black's counsel claimed to have spent on the case. In response, Black filed a motion to compel Lojac to disclose statements of its own counsel's services arguing that this would serve as a useful benchmark to show the fees claimed were in fact reasonable.

The district court was less than satisfied with Black's attorney's fees application. Finding the documentation presented to be "woefully inadequate," ruling on the question was reserved until Black provided a more detailed account of the time counsel had spent on the matter. The court noted that Black had provided no explanation of his services in his application for fees; rather, Black's counsel had merely totaled the number of hours spent on the **[*5]** case by attorneys, paralegals, and runners from 1991 to 1995. Further, the court denied Black's motion to compel production of Lojac's statement of services stating that Lojac should not be required to produce "the very sort of information which Plaintiff's counsel neglected to provide this court [in support of his application for fees]." J.A. at 334.

In an effort to have his fee application considered and to remedy the documentary lacuna, Black filed under seal, and later provided to Lojac, a more detailed statement of services. Besides more detail, Black increased the amount sought from $ 181,022.75 to $ 193,282.34.

After examining the revised statement of services, the district court awarded Black $ 25,424.12. In arriving at this sum, the district court made it clear that it was beginning the analysis with the lodestar, multiplying the number of hours expended by the hourly rate. It then subtracted for the following: (1) the time for which there was inadequate documentation; (2) the time spent working on the ERISA claim; (3) the time spent working on the initial attorney's fees application; (4) the time spent working on Black's motion for additur and the motion for a new trial **[*6]** on damages; and (5) costs already awarded by the clerk of court. Finally, the court further reduced the resulting figure to take account of limited success achieved in the litigation. Black filed a timely notice of appeal.

## II.

In _Hensley v. Eckerhart_, 461 U.S. 424, 433 n.7, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983), the Court set forth **HN1** analytical guidelines which govern a determination of attorney's fees under prevailing party fee-shifting provisions generally including that of the Fair Labor Standards Act, 29 U.S.C. § 216(b). _See also, United Slate, Tile and Composition Roofers v. G & M Roofing and Sheet Metal Co., Inc._, 732 F.2d 495, 502 (6th Cir. 1984). Under § 216(b), incorporated into the age discrimination context by § 626(b), attorney's fees are mandatory but in an amount to be determined by the district court. _United Slate_, 732 F.2d at 501. Such a determination is within the sound discretion of the district court although it is required to provide a "concise but clear explanation" for the award. _Hensley_, 461 U.S. at 437. Our review of the application of the _Hensley_ analysis is for abuse of discretion. _Wayne v. Village of_

*Sebring*, 36 F.3d **[*7]** 517, 531-32 (6th Cir. 1994) (citation omitted).

As pointed out by the district court, *HN2* the starting point in determining a reasonable fee award is the calculation of the "lodestar," that is, "the number of hours reasonably expended on the litigation [as a whole] multiplied by a reasonable hourly rate." *Wayne*, 36 F.3d at 531. Black rightly has no dispute with this fundamental principle. Rather, Black contends the district court abused its discretion by failing to specifically state its mathematical calculations for the lodestar or the specific figures it subtracted for each deduction. In other words, the district court made it clear that its calculations were based on the lodestar and specific deductions but did not state the quantification of its calculations.

Although quantification would be helpful in the review process, we find no abuse of discretion on the part of the district court in not specifically setting forth the figures. In this case, the lodestar figure clearly served as the jumping off point and animated the calculations throughout. The district court began with the amount claimed by Black, $ 193,282.84, and then proceeded to throw out those hours for which Black **[*8]** had provided inadequate documentation.

After deducting for inadequate documentation, the district court proceeded to take enumerated deductions for the amounts attributable to the ERISA claim, the amounts claimed for the initial fee application, the motion to compel and the post-trial motions, finally arriving at, in the district court's own words, the "hours properly included in the 'reasonable fee' amount." J.A. at 33. By this route, the district court ultimately arrived at the lodestar, operating on the unstated assumption that the rates claimed were reasonable. n1 Even though the math is not found on the face of the memorandum opinion, the district court closely adhered to the *Hensley* analysis and provided "concise but clear explanation[s] of its reasons." *Hensley*, 461 U.S. at 437. In that *HN3* the calculations of the district court were on sound legal ground, as discussed below, we can discern no useful purpose in requiring the actual figures to be set out.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 On the whole, the prevailing hourly rates were not seriously in dispute. In fact, the practitioner's affidavit submitted by Lojac set the range of rates for an attorney with more than five years experience between $ 150 and $ 250 and less than five years experience between $ 90 and $ 120. J.A. at 393. Black claimed a uniform rate of $ 175 for his attorneys. J.A. at 251.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*9]**

## III.

Black also takes issue with each of the four specific deductions made by the district court. n2 Each shall be addressed in turn.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 To prevent double counting, the district court also reduced the amount claimed to take account for the costs already taxed against Lojac. Black assigns no error for this deduction.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -**A. Inadequate Documentation**

[HN4]Under the system of three-tier review applicable when reviewing a determination on the reasonableness of hours requested, we review the district court's decision as to the adequacy of documentation for clear error. *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990). Black, as the party seeking the fee award, bore the burden of supplying the district court with adequate documentation. *Hensley*, 461 U.S. at 437 ("The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.").

The district court noted that many of the time entries failed to even **[*10]** identify the general subject matter involved, documented with such vague descriptions as "research," "pick-up," "revised form," and "office conference." For example, on March 11, 1992, Black claimed 6.00 hours for research and review of file. J.A. at 605. It is simply impossible to discern whether this research, for which Black claimed $ 1,050, was directed at, say, the age discrimination claims for which Black was a prevailing party or the ERISA claims for which he was not.

Thus, such entries clearly provide little guidance in ascertaining the purpose of the work during the time claimed and do not merit an award. *Hensley*, 461 U.S. at 437 n.12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). Given the apparent paucity of these explanations and having already given Black a second opportunity to provide the necessary documentation, the district court did not commit clear error in deducting for this failing.

## B. Amount Claimed on the ERISA Claim

[HN5]We review de novo whether the district court erred in excluding time **[*11]** from an attorney's fee award because the time was unrelated to the claims on which the party prevailed. *Wooldridge*, 898 F.2d at 1176. Here, the district court held, in essence, that there was no prevailing party on the ERISA claim. In this respect, Black claims that as administrator of his wife's estate, pursuing her ERISA claim against Lojac, he was pursuing claims which were so closely tied to his age discrimination claims that he is entitled to attorney's fees attributable to the ERISA claim as well.

Although Black in his individual capacity prevailed on his age discrimination claims, Black in his capacity as administrator of his wife's estate did not prevail on her ERISA claim. [HN6]The attorney's fee provision itself provides, "The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). His wife's estate, as the actual claimant, did not obtain a judgment against Lojac or otherwise prevail on the ERISA claim. *Farrar v. Hobby*, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). In point of fact, the bifurcated ERISA claim was voluntarily **[*12]** dismissed by Black following trial of his age discrimination claims. That Black was proceeding both on his own behalf and on behalf of his wife does not thereby bring the disparate claims into commonality. *Hensley*, 461 U.S. at 435 (stating that unrelated claims must be treated as if they were tried separately and no fees may be awarded for the unsuccessful claim). The district court thus properly deducted those fees sought for the ERISA claim.

## C. Initial Fee Application, Motion to Compel, and Post-trial Motions

Black contends that the district court erred in excluding from his award the amounts claimed for work on the initial attorney's fee application. Although [HN7]time spent preparing an application for attorney's fees is normally recoverable, *Peppers v. Barry*, 718 F. Supp. 23

(N.D. Ohio 1989), the district court found the initial application to be "woefully insufficient" in that Black merely totaled the number of hours spent from 1991 to 1995 and requested fees in the amount of $ 181,022.75. J.A. at 32.

Having reviewed the initial application, we conclude that the district court did not err in excluding this time. *Wooldridge*, 898 F.2d at 1176. In terms of establishing **[*13]** the prevailing hourly rate for the Nashville area, the application was adequate. The fatal shortcoming, however, was in Exhibits 1, 2 and 3. J.A. at 254-56. Providing nothing more than a global summary of the amounts claimed, these three one-page documents shed no light whatsoever on what the general subject matter of the time expenditures was. *Hensley*, 461 U.S. at 437 n.12. Under these circumstances, the district court properly denied fees for the "shoddy nature" of the first application.

Likewise, the district court properly denied fees for Black's motion to compel the production of Lojac's billing statements. Undoubtedly, where the issue of the reasonableness of the time expended is fully joined, the amount of time spent by the opposing party is a relevant benchmark as to the amount of time reasonably required. *Mitroff v. Xomox Corp.*, 631 F. Supp. 25, 28 (S.D. Ohio 1985). In the matter at bar, however, the motion to compel was entirely unreasonable at that time given that Black had simply failed to provide Lojac or the district court with the means by which to make an informed assessment of the reasonableness of the time claimed. A global summary reveals very little. Black's **[*14]** efforts would have been more productively directed to adequately documenting his own fee request. The time spent on the motion to compel being unreasonably expended, no corresponding fees were in order. *Hensley*, 461 U.S. at 434.

Finally, the time spent on the post-trial motions suffers from the same problem. Black's motion for additur was not time reasonably spent because the rule of *Dimick*, 293 U.S. at 482, $^{HN8}$forbids additur in federal court as an increase by the court of something never in the verdict. Similarly, the time spent on the motion for a new trial on damages was not reasonably spent in that there was no showing that the alleged errors were prejudicial or that failure to grant a new trial would deprive Black of substantial justice. Indeed, the district court concluded that the sole reason for the motions was Black's dissatisfaction with the $ 16,000 jury verdict. J.A. at 33. Simply put, $^{HN9}$the district court correctly found the post-trial motions to be unfounded "efforts to enhance a low damage award." J.A. at 33. Fees for such services were properly denied.

## D. The Appeal

$^{HN10}$Recovery for the additional time spent on appeal may be had where the appellant prevailing **[*15]** party is successful in his assignments of error on appeal. *Cf. Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994). Given our disposition of this appeal, we conclude that the additional time spent on the appeal phase of the litigation was not time reasonably expended and thus does not merit a fee award. *Hensley*, 461 U.S. at 434. A request for attorney's fees should not result in "second major litigation" as here. *Hensley*, 461 U.S. at 437.

## IV.

In challenging the district court's reduction of attorney's fees for Black's limited success, Black contends that the district court erroneously overemphasized the results obtained without considering factors such as the time required because of defense counsel's litigation tactics. Citing the public policy rationale underlying the fee-shifting provisions, Black maintains the district court erred.

$^{HN11}$Although it is true that there is no strict rule of proportionality, *Wooldridge*, 898 F.2d at

1177 (citing _City of Riverside v. Rivera_, 477 U.S. 561, 91 L. Ed. 2d 466, 106 S. Ct. 2686 (1986)), a district court is vested with broad discretion to reduce a fee award based upon the "results obtained" by the prevailing party. **[*16]** _Hensley_, 461 U.S. at 434-37. As the Court has stated,

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment . . . .

_Hensley_, 461 U.S. at 436-37.

In its opinion, the district court acknowledged that "placing too great an emphasis on the actual verdict amount would discourage attorneys from taking cases involving low damages but significant statutory violations . . . ." J.A. at 28. It is clear that the district court's equitable judgment was guided not by a strict rule of proportionality but by the fact that Black obtained limited success. Specifically, the jury found that Lojac had not "willfully discriminated" against Black and Black did not achieve the full relief sought as the jury awarded back pay only, comprising the entire verdict of $ 16,000. The district court acted well within its discretion in reducing the award on this basis.

**V.**

In light of the principle that _HN12_ "the amount of the fee, of course, must be determined **[*17]** on the facts of each case," the district court here acted well within its discretion in this fee dispute which was fast becoming, in essence, a round of "second major litigation." _Hensley_, 461 U.S. at 429, 437. There was no abuse of discretion in the district court's adherence to the _Hensley_ analysis without specifically stating the figures behind its legally sound reasoning. All of the deductions were proper and there was substantial justification for the reduction of the award to take account of the limited success achieved. Accordingly, we **AFFIRM.**

Service: **Get by LEXSEE®**
Citation: **1997 us app lexis 17205**
View: Full
Date/Time: Monday, September 15, 2003 - 11:43 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
* Click on any _Shepard's_ signal to _Shepardize®_ that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.