## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SCOTT D. DALESANDRO, et al.,
    On behalf of themselves and
all others similarly situated,

        Plaintiffs,

      v.

THE INTERNATIONAL PAPER
COMPANY,

        Defendant.

:  Case No.: C-1-01-109
:
:  Judge Sandra S. Beckwith
:
:
:
:  **PLAINTIFFS' REPLY**
:  **MEMORANDUM IN SUPPORT OF**
:  **THEIR MOTION FOR ATTORNEYS**
:  **FEES, EXPENSES, INTEREST and**
:  **INCENTIVE AWARDS**
:
:  **(Exhibits attached)**

{00008814; 1}

## TABLE OF CONTENTS

Page

SUMMARY……………………………………………………….. 1

ARGUMENT……………………………………………………… 3

I.    INTRODUCTION………………………………………………… 3

                 *Hensley v. Eckerhart,*
                 461 U.S. 424, 437 (1983)…………………………………… 5

II.   THE MANNER OF PAYMENT IS NOT DISPUTED………………………… 5

                 ERISA § 502 (g)(1)…………………………………………… 5

                 29 U.S.C. § 1132 (g)(1)……………………………………… 5

III.  PLAINTIFFS ARE ENTITLED TO ATTORNEYS FEES
      AND EXPENSES UNDER ERISA……………………………………… 5

                 *Secretary of Dep't of Labor v. King,*
                 775 F. 2d 666, 669 (6th Cir. 1985)………………………… 6

                 *Pelchat v. UNUM Life Ins. Co. of America,*
                 2003 U.S. Dist. LEXIS 10709 (N.D. Ohio 2003)………………. 6

                 *Maune v. International Bd. of Elec. Workers,*
                 *Local No. 1, Health and Welfare Fund,*
                 83 F.3d 959, 964 (8th Cir. 1995)…………………………… 6

                 *Garber v. Provident Life and Accident Insur. Co.*
                 1999 U.S. App. LEXIS 11280 (6th Cir. 1999)…………………. 7

IV.   PLAINTIFFS ARE ENTITLED TO THE FEES AND EXPENSES
      INCURRED AT THE ADMINISTRATIVE LEVEL…………………………… 7

                 *Anderson v. Procter & Gamble Co.,*
                 20 F.3d 449 (6th Cir. 2000)………………………………… 9,11,12

                 *Rego v. Westvaco Corp.,*
                 319 F.3d 140 (4th Cir. 2003)……………………………….. 9

- i -

*Fallick v. Nationwide Mutual Ins. Co.,*
162 F.3d 410 (6th Cir. 1998)............................................. 10

*Cann v. Carpenters' Pension Trust Fund,*
989 F.2d 313 (9th Cir. 1993)............................................. 10,11

*Pennsylvania v. Delaware Valley Citizens' Council,*
478 U.S. 546, 559 (1986)................................................... 10,11

*Sullivan v. Hudson,*
490 U.S. 877 (1989)....................................................... 10,11,12

*Peterson v. Continental Casualty Co.,*
282 F.3d 112, 122 (2nd Cir. 2002)..................................... 11

*Parke v. First Reliance Standard Life Insur. Co.,*
2002 U.S. Dist. LEXIS 18762, *35-36 (D. Minn. 2002).......... 11

V.    PLAINTIFFS' COUNSEL'S HOURLY RATES ARE REASONABLE.......... 14

*Hensley v. Eckerhart,*
461 U.S. at 437 (1983)................................................... 14

*Wayne v. Village of Sebring,*
36 F.3d 517, 531-32 (6th Cir. 1994), cert. denied,
514 U.S. 1127 (1995)..................................................... 14

*Blum v. Stenson,*
465 U.S. 886, 897 (1984)................................................. 14

S.Rep.No. 94-1011, 94th Cong., 2d Sess. 6 (1976)................. 14

*Hadix v. Johnson,*
65 F.3d 532, 536 (6th Cir. 1995)..................................... 14

*EEOC v. Anglin,*
2003 U.S. Dist. LEXIS 12852 (M.D. Fla. 2003)................... 19

*Microsoft Corp. v. United Computer Svcs. of N.J.,*
216 F.Supp.2d 383 (D.N.J. 2002)..................................... 19

*Harman v. Lyphomed, Inc.,*
734 F.Supp. 294 (N.D. Ill. 1990)..................................... 19

- ii -

*Missouri v. Jenkins,*
491 U.S. 274 (1989)..................................................... 20

VI.  THE NUMBER OF COMPENSABLE HOURS CLAIMED BY
PLAINTIFFS' COUNSEL IS REASONABLE...................................... 20

    A.  The Court Has Wide Discretion................................................ 20

        *Hensley v. Eckerhart,*
461 U.S. 424 (1983)..................................................... 20

    B.  Quarter-Hour Billing is Permissible............................................ 21

        *Cantrell v. Knoxville Community Development Corp.,*
60 F.3d 1177............................................................ 21

        *Bridgeport Music, Inc. v. Irving Lorenzo dba DJ IRV Music,*
255 F.Supp.2d 795, 801 (M.D. Tenn. 2003)........................ 21

    C.  Plaintiffs' Work Descriptions and Block Billing
are Permissible and Sufficient.................................................. 22

        *Grand Traverse Band of Ottawa and Chippewa Indians v.
Director, Michigan Department of Natural Resources,*
1998 U.S. App. LEXIS 15145 at *20 (6th Cir. 1998)............... 22

        *Hensley v. Eckerhart,*
461 U.S. 424, 437 n. 12 (1983)...................................... 22

        *United States v. Pennsylvania Blue Shield,*
54 F.Supp.2d 410, 415 (M.D. Pa. 1999)............................ 23

        *Sees v. Fagen,*
2002 U.S. Dist. LEXIS 4845 at *8-9 (N.D. Tex. 2002)............ 23

    D.  Plaintiffs Have Not Included Unnecessary Duplicative
or Redundant Billing Entries................................................... 23

    E.  Time Pursuing Disputed Legal Issues Should Not
Be Eliminated or Reduced..................................................... 24

        *Wooldridge v. Marlene Indus. Corp.,*
898 F.2d 1169, 1177 (6th Cir. 1990)............................... 24

- iii -

*Hensley v. Eckerhart,*
461 U.S. at 436 & 440 (1983)........................................ 24,25

F.    Time Spent Preparing the Fee Motion......................................... 26

*Coulter v. Tennessee,*
805 F.2d 146, 151 (6th Cir. 1986)..................................... 26

G.    The Fees and Expenses of Myron A. Wolf Are Reasonable................ 28

H.    Expenses............................................................................ 28

VII.    PLAINTIFFS' COUNSEL ARE ENTITLED TO A MULTIPLIER................ 29

*Hensley v. Eckerhart,*
461 U.S. at 435............................................ 29

*Blum v. Stenson,*
465 U.S. at 897, 899, 901 & 902...................................... 29

*City of Burlington v. Dague,*
505 U.S. 557 (1992)....................................................... 30

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998)........................................ 30

*Bowling v. Pfizer, Inc.,*
922 F.Supp 1261, 1278-1279 (S.D. Ohio 1996),
aff'd, 102 F.3d 777 (6th Cir. 1996).................................. 31

Report of the Third Circuit Task Force,
108 F.R.D. 237, 246-249 (1986)...................................... 31

*Crosby v. Bowater Incorporated Retirement Plan,*
2003 U.S. Dist. LEXIS 8424 at *18 (W.D. Mich 2003)............. 32

*Ford v. Uniroyal Pension Plan,*
154 F.3d 613, 618 (6th Cir. 1998)................................... 32

*In Re Southern Ohio Correctional Facility,*
173 F.R.D. 205, 217 (S.D. Ohio 1997)............................... 32

*Rawlings v. Prudential-Bache Properties, Inc.,*
9 F.R.D. 513, 516 (6th Cir. 1993).................................... 32

- iv -

VIII.    INTEREST.................................................................................... 32

IX.    THE INCENTIVE AWARDS REQUESTED BY
       PLAINTIFFS ARE APPROPRIATE................................................ 33

            *Day v. NLO, Inc.,*
            1995 U.S. Dist. LEXIS 22316 at *4  (S.D. Ohio 1995)............. 34

            *Cook v. Niedert,*
            142 F.3d 1004, 1016 (7th Cir. 1998)...................................... 34-5

X.    CONCLUSION............................................................................... 35

CERTIFICATE OF SERVICE.................................................................. 36

- v -

**SUMMARY**

Defendant opposes the part of Plaintiffs' Motion which seeks to shift Plaintiffs' attorneys' fees and expenses to Defendant pursuant to the ERISA statute. Defendant does <u>not</u> dispute that if the fees and expenses are shifted, the payment thereof is made by Defendant to the Class and becomes part of the Class' damages with their recovery of benefits. Defendant does <u>not</u> dispute that the Class would then pay to class counsel a percentage of the common fund created by the recovery of benefits plus the fees and expenses that were paid into the fund by Defendant (if they were shifted under the statute). Defendant does dispute Plaintiffs' entitlement to certain fees and expenses and challenges the reasonableness of the time and rates submitted by Plaintiffs' counsel.

The Court has wide discretion in making all of these determinations and Defendant's attempts to turn this fee dispute into a second major litigation should be resisted.

Plaintiffs are entitled to the payment of their attorneys' fees and expenses by Defendant pursuant to ERISA §502(g)(1), 29 U.S.C. §1132(g)(1), and Defendant has admitted so much in its previous representations to the Court. A finding of bad faith on the part of Defendant is not a prerequisite to the shifting of an ERISA fee; however, there is sufficient evidence in the record that Defendant did act in bad faith, despite the fact that it refused to allow any discovery relating to that issue. A shifting of the fees and expenses also serves the important purpose of deterrence.

As a part of the fee that is shifted to Defendant, Plaintiffs are entitled to compensation for their counsel's time and expenses incurred while the case proceeded through the administrative process. First, the litigation was properly commenced when the Complaint was filed without pursuing a futile administrative process, and benefits were denied by the plan administrator making the litigation unavoidable. Second, Defendant is responsible for creating the necessity for the fees and expenses incurred during the administrative process by moving to stay the case and

by confining the Court's review to the administrative record. Third, the Court maintained

jurisdiction of this case while it proceeded through the administrative process. And fourth, none

of the legal work performed while the case proceeded through the administrative process related

solely to the making of Plaintiffs' administrative claims for benefits, but rather all such work was

relevant and necessary to argue the merits of the case to this Court and to preserve the record for

this and the circuit court.

Plaintiffs' counsel's hourly rates are reasonable based upon the prevailing market rate in

the Cincinnati area, the complexity of the case, and their customary billing rates. The number of

hours is reasonable and the time was necessary to achieve ultimate complete relief, and the hours

are supported by substantial evidence in the record. Plaintiffs' counsel's time records, including

quarter-hour billing, the detail and accuracy of the descriptions in the block entries, and the

entries reflecting some duplication are permissible. The time records are sufficient to enable the

Court to review the reasonableness of the hours expended and the nature of the work performed.

The evidence reflects careful billing judgment by Plaintiffs' counsel and no time reflecting

unnecessary duplication, or work that took less than fifteen minutes is included; also much time

was omitted. No time should be reduced or eliminated or for the reason that fees were incurred on

issues and motions on which Plaintiffs did not prevail as Plaintiffs pursued one claim only -- for

the recovery of benefits -- and all work contributed to the ultimate achievement of complete, not

partial, relief. Further, the time submitted by co-counsel Wolf, who had and maintained the

relationship with the clients, should not be reduced, nor should any time that was dedicated to

preparing the Fee Motion, or the evidence related thereto, be reduced to any artificial percentage

of time.

Plaintiffs' request for a multiplier is appropriate since the recovery in this case resulted in the creation of a common fund that benefited an entire class of employees. An upward adjustment is appropriate due to the exceptional success and results in this case, and is supported by ample evidence submitted by Plaintiffs. A multiplier is necessary to provide fair compensation to Plaintiffs and to ensure the remedial purpose of ERISA: a full recovery of benefits and to put the employees in the position they would have been in but for Defendant's wrongful withholding of those benefits. Further, a 1.5 multiplier is reasonable and appropriate to ensure fair compensation and full relief.

Plaintiffs are also entitled to prejudgment interest which should be calculated according to the federal post-judgment interest statute, using February 17, 2001 as the day benefits were due to Plaintiffs as the relevant time for calculating the average weekly rate.

Incentive awards are permitted in ERISA cases and Plaintiffs' request for incentive awards of $10,000 to each of the named Plaintiffs is appropriate in this case. Further, any payment of incentive awards will not be made by Defendant, but will be made by the Class to the representatives out of the common fund of damages recovered by the Class.

Accordingly, Plaintiffs' counsel respectfully request this Court to grant and approve their requests for fees, expenses, interest, and incentive awards as set forth in their Motion.

## ARGUMENT

### I. Introduction

This is an ERISA class action that has been fully adjudicated to its finality on every issue, including disputes relating to administrative exhaustion, discovery, the standard of review, class action elements and, most importantly, the merits. This case involves a myriad of facts, complicated and divergent statutory and case law, class action components, and was litigated

against a sophisticated and unyielding Defendant. And while Plaintiffs have not won every argument, they have researched, briefed and hurdled every obstacle to obtain a complete judgment for the most employees and in the most expeditious manner possible. Contrary to Defendant's assertions that too much time was spent prosecuting this case, Plaintiffs' counsel moved for judgment and for class-wide relief at the earliest opportunity based solely on the record as it existed without discovery. This class action was prosecuted primarily by only two attorneys; it has spanned almost three years. The 1683 hours submitted by Plaintiffs' counsel is not only reasonable, but reflects an unusual efficiency of effort.

Defendant now argues that the time and effort spent by Plaintiffs' counsel was unjustified which contradicts its staunch assertions earlier in this action, prior to the ruling on the motions for judgment, that Plaintiffs were waging an uphill battle that could not possibly be won. Defendant repeatedly contended that the law, on every issue, was so clear, and so clearly against Plaintiffs, that Plaintiffs lacked even cogent arguments to advance, much less a chance to prevail. It is incongruent for Defendant to now diminish that time and work which has resulted in a comprehensive victory for an entire class of employees. But in so doing, Defendant only underscores the actual difficulty, risk and novelty of this case and Plaintiffs' efforts, thereby justifying the fees requested.

Plaintiffs submit that they have met their burden of establishing the reasonableness of the fees requested and have provided substantial evidence to support the nature and amount of the work and the rates charged. As evidenced by Defendant's Response in Opposition to the fee application, the case can be made that its own counsel have spent more time and billed for more work than Plaintiffs' counsel can approach in this case; Defendant's line-by-line, item-by-item challenges to Plaintiffs' submission is exactly the approach the Supreme Court has cautioned

against: "A request for attorney's fees should not result in a second major litigation."[1] The court has wide discretion in determining the amount of the fee award and Plaintiffs submit that the following in reply to each objection supports the reasonableness of the fees requested.

## II. The Manner of Payment is Not Disputed

Defendant does not dispute the manner of the payment of fees and expenses.[2] Defendant agrees that Plaintiffs' counsel may seek to shift a portion of the fee to Defendant to pay to the Class pursuant to the ERISA statute,[3] and it does not dispute that the Class would then pay its counsel a percentage of the common fund comprising their recovery of damages plus the shifted fee.

## III. Plaintiffs are Entitled to Attorneys Fees and Expenses Under ERISA

Plaintiffs' counsel are duty-bound to make every effort to maximize the recovery for the Class, and to move for fees and costs to be paid by Defendant pursuant the ERISA fee shift statute.  In fact, Defendant's argument that the fees should not be shifted comes as a complete surprise as it is a *complete reversal* of its representation to the Court that it does NOT dispute that Plaintiffs are entitled to fees and expenses.  James McElligott, on behalf of Defendant International Paper, made this unmistakably clear to the Court and Plaintiffs' counsel on June 20, 2003:

---

[1] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).
[2] Defendant disputes the amount and type of the fees and expenses requested.
[3] ERISA §502(g)(1), 29 U.S.C. §1132(g)(1).

I think we've tried to make it clear to Terri and John that *we are not contesting their entitlement to attorneys' fees* in the – in the case. *We recognize as the case stands now they would ordinarily be entitled to attorneys' fees.*[4]

If [Defendant's position] is wrong, *International Paper wants to do the right thing, including reasonable attorneys' fees* and reasonable prejudgment interest."[5]

Mr. McElligott was only recognizing that the Court had determined that the plan administrator ignored the plain meaning of the Plan's unambiguous language, and that the administrator's conclusion that the terminated employees who received subsequent employment were ineligible for severance benefits was unsupported by any language in the Plan.[6] In short, the Court ruled that Defendant was culpable. This finding alone is sufficient basis to shift Plaintiffs' fees and costs to Defendant.

But Defendant now contends that the fees should not be shifted because it did not act in bad faith. A finding of bad faith is not, however, a prerequisite to shift ERISA fees. The first of the "*King*" factors is culpability **or** bad faith.[7] Notwithstanding that distinction, and in light of Defendant shielding itself from all discovery which could have proven bad faith, there is still factual and legal support to conclude that Defendant did act in bad faith, and to conclude that there would be a deterrent effect of shifting fees in this case for the reasons set forth in Plaintiffs' Motion for Fees.

---

[4] Transcript of June 20, 2003 telephone conference with the Court, attached as Exhibit 1 at p. 9 (emphasis added).
[5] Id. at p. 17 (emphasis added).
[6] Amended Order dated March 20, 2003 (Doc. #40) at pp. 14-16, 21.
[7] *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985); *Pelchat v. UNUM Life Insur. Co. of America*, 2003 U.S. Dist. LEXIS 10709 (N.D. Ohio 2003), attached to Plaintiffs' Fee Motion (Doc. #45) at Exhibit 13; see also, *Maune v. International Bd. of Elec. Workers, Local No. 1, Health and Welfare Fund*, 83 F.3d 959, 964 (8th Cir. 1995) (a plan beneficiary who succeeds in an ERISA action should recover attorney fees unless the unsuccessful party proves that special circumstances would render an award unjust, and the absence of bad faith is not a special circumstance).

Defendant's reliance on *Garber v. Provident Life and Accident Insur. Co.*[8] to refute that fees can be shifted in the absence of bad faith is misplaced. The *Garber* plaintiff made a claim for death benefits after an employee died in an airplane crash in connection with a business trip. The court declined to shift the fees despite finding that the defendant's interpretation of the plan was unreasonable, because the plan was vague and ambiguous and therefore subject to various interpretations due to the absence of definitions for key terms. In contrast, International Paper ignored the plain meaning of Policy #828's <u>unambiguous</u> language, and disregarded the Plan's clear provisions that made the payment of benefits contingent upon "termination" as that term <u>was</u> defined in the Plan.[9]

The evidence and the Court's ruling support the conclusion Plaintiffs' fees and expenses should be shifted to Defendant pursuant to the statute for the reason that it was culpable in unreasonably denying benefits; further support for the shift is that Defendant also acted in bad faith and that the shifting of fees in this case would serve a deterrent purpose.

## IV. Plaintiffs are Entitled to the Fees and Expenses Incurred at the Administrative Level

While Defendant asserts that it is "remarkable" that Plaintiffs' do not address their request for fees incurred at the administrative level, what is truly remarkable, however, is that <u>Defendant</u> <u>created</u> the necessity for those exact fees and costs in the first place. Instead of proceeding with the litigation at the outset and allowing this Court to review Policy #828, Defendant chose instead to immediately move for a stay, a strategy which resulted in the wasting of a year in an utterly futile administrative process. It was Defendant who forced Plaintiffs and their counsel to proceed through two levels of "administrative" reviews by International Paper employees after

---

[8] *Garber v. Provident Life and Accident Insur. Co.*, 1999 U.S. App. LEXIS 11280 (6th Cir. 1999) (attached to Defendant's Response in Opposition to Fee Motion, Doc. #49, at Ex. 1).
[9] Amended Order dated March 20, 2003 (Doc. #40) at pp. 14-16, 21.

the company had preemptively denied (and would again deny) Plaintiffs' claims for Policy #828

benefits before the lawsuit was even filed.  Defendant created Plaintiffs' need for counsel, and

the fees and costs incurred, during this period because it asserted from the beginning that ONLY

the evidence that was developed at the administrative level could be submitted to the district

court.  Therefore, Defendant in effect mandated Plaintiffs to actually "litigate" all issues at the

administrative level to preserve the record in the event the Court agreed with Defendant to limit

its review.

Instead, the courts that have denied fees at the administrative level have reasoned that

attorneys are not necessary to make administrative claims for benefits; those cases, however,

allow discovery and the presentation of the case to the court in a summary judgment fashion –

exactly what Plaintiffs in this case advocated.[10]  In those cases, the plaintiffs' attorneys can

provide representation and protect the employees' rights by developing the evidence and record

in the district court.  In contrast, this Defendant's design was to deny discovery and due process

at the administrative level, to control and limit what went into the administrative record, and then

to confine the Court's review to that record.  And so it is indeed remarkable that Defendant now

argues that Plaintiffs had no need for counsel during that entire process.  These procedural facts

alone distinguish this case from all those cited and relied upon by Defendant.

The Court will recall that when Defendant moved the Court to stay the litigation,

Plaintiffs maintained that no administrative interpretation of the Plan was needed.  But

Defendant disagreed and argued that facts and a record had to be established at the

administrative level to assist the court.[11]  Now, Defendant is seeking to avoid paying fees and

---

[10] See the authorities and discussion in Plaintiff's Opposition to Defendant's Motion for Judgment (Doc. #29).

[11] Defendant's Motion for Stay (Doc. #10) at p. 6, and Defendant's Reply in Support of Motion to Stay (Doc. #12) at p. 9 ("Plaintiffs claim that no interpretation is needed, but this is refuted by the interpretive authority granted by the Plan, [the administrator]'s approach in assessing claims, and the diversity of conclusions rendered by courts in

costs, and conveniently minimizes the administrative process and urges that this case has always been about only a basic interpretation of the Plan.[12]

The main case relied upon by Defendant, *Anderson v. Procter & Gamble Co.,[13]* is readily distinguishable: there, the plaintiff recovered benefits in the administrative proceedings and the matter never resulted in litigation. The plaintiff then sought $5250 for the fees incurred in pursuing the one claim for benefits in the administrative hearings. The Court denied the request for fees because the plaintiff did not file a civil action under 29 U.S.C. §1132(a) to recover benefits, but filed only to recover fees for the legal work in making her administrative claims.[14] Contrary to the *Dalesandro* plaintiffs, Anderson did not require attorneys to file a civil action to pursue her rights under her plan since she received benefits at the administrative level.

This is also true of the plaintiff in another distinguishable case relied upon by Defendant, *Rego v. Westvaco Corp.,[15]* in which the court denied fees because benefits were awarded at the administrative level making litigation unnecessary. Most importantly, Rego did even attempt to recover benefits at the administrative level before he filed his lawsuit. Since the administrator did award him benefits, that administrative process could not be found to be futile and, for that reason, there was no exception to the exhaustion requirement to justify his filing of the lawsuit. Contrary to the case at hand, the Rego litigation could and should have been avoided and, therefore, fees were denied.

The concept that fees for work done at the administrative level should not be paid in cases where the benefits are awarded at the administrative level, such as in *Anderson* and *Rego*, is

---

similar cases" and "[A]lthough Plaintiffs claim that the 'record is already established', the Plan Administrator has not yet had the opportunity to obtain and consider [various] facts...")

[12] Defendant's Response in Opposition to Fee Motion (Doc. #49) at p. 3 & 7 ("International Paper has always contended that the case turned on the Court's interpretation of the Plan language..." and "[T]his case involved only interpretation of specific policy language under a single severance plan.")

[13] *Anderson v. Procter & Gamble Co.,* 20 F.3d 449 (6th Cir. 2000).

[14] *Id.* at 452.

[15] *Rego v. Westvaco Corp.,* 319 F.3d 140 (4th Cir. 2003).

inapplicable to this case where Plaintiffs were denied benefits, could not avoid litigation, and had

the evidence and law to support proceeding to court under the futility exception to ERISA's

exhaustion requirement.[16]  In fact, had Defendant accepted the fact that pursuing administrative

remedies was futile in this case,[17] it could have saved exactly the time and money it now objects to

paying.

In fact, it is settled that the ERISA statute does not preclude the shifting of fees and

expenses incurred at the administrative level.  Even *Anderson* rejected the faulty reasoning of

*Cann v. Carpenters' Pension Trust Fund,*[18] another case relied upon by Defendant, explaining

that the use of the term "action" in the ERISA statutory provision authorizing attorney fees does

not indicate that Congress intended that it apply only to judicial and not administrative

proceedings.[19]

The United States Supreme Court has made it clear that attorney fees for work done by

counsel in administrative proceedings can be shifted to the unsuccessful party.  Both

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*[20] and *Sullivan v. Hudson*[21]

involved federal fee shift statutes; the Supreme Court held that the fact that the legal work did

not occur in the context of "traditional judicial litigation" does not preclude an award of fees,

that an award of such compensation was entirely within the "zone of discretion" afforded the

district court,[22] and that "administrative proceedings may be so intimately connected with the

---

[16] *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410 (6th Cir. (1998); see also the authorities cited in Plaintiffs' Opposition to Defendant's Motion to Stay (Doc. #11).
[17] Defendant has recognized that the Sixth Circuit does excuse exhaustion when resorting to the plan's administrative procedure would simply be futile.  See Defendant's Motion to Stay (Doc. #10) at p. 7.
[18] *Cann v. Carpenters' Pension Trust Fund*, 989 F.2d 313 (9th Cir. 1993).
[19] *Anderson*, 220 F.3d at 453, citing *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 559 (1986).
[20] *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986).
[21] *Sullivan v. Hudson*, 490 U.S. 877 (1989).
[22] *Pennsylvania*, 478 U.S. at 560-561.

judicial proceedings as to be considered a part of the "civil action" for purposes of a fee

award."[23]

Pennsylvania and Sullivan were not followed by the court in Anderson because they were

not ERISA cases, but Anderson is factually distinguishable as explained above, and other circuit

and federal courts have very recently applied the Supreme Court's reasoning in Sullivan and

Pennsylvania to ERISA fee requests. The Second Circuit specifically addressed the ERISA fees

and costs incurred during an administrative proceeding ordered by the Court:

> [O]nce a court of law has assumed jurisdiction over a suit, all costs incurred may
> be shifted by a court to one party. The fact that a court orders additional fact
> finding or proceedings to occur at the administrative level does not alter the fact
> that those proceedings are part of the "action" as defined by ERISA. Where the
> administrative proceedings are ordered by the district court and where that court
> retains jurisdiction over the action during the pendency of the administrative
> proceedings, we hold that ERISA authorizes the award of associated costs.[24]

Also, Parke v. First Reliance Standard Life Insur. Co.[25] concluded that the ERISA plaintiff was

entitled to the fees and costs incurred for work performed during the administrative process prior

to the start of the litigation. The Parke court criticized the reasoning of Anderson and Cann and

found that the policy considerations influencing the Supreme Court decisions in Pennsylvania

and Sullivan, while they involved fee shift statutes other than ERISA, "apply in equal measure in

this ERISA action."[26]

Thus, the cases that deny compensation for fees incurred at the administrative level

before litigation is filed and when the district court does not have jurisdiction, are inapplicable

here. The same is true where a lawsuit is filed only to recover fees for administrative work

which resulted in an award of benefits at the administrative level and where no litigation was

---

[23] Sullivan, 490 U.S. at 892.
[24] Peterson v. Continental Casualty Co., 282 F.3d 112, 122 (2nd Cir. 2002).
[25] Parke v. First Reliance Standard Life Insur. Co., 2002 U.S. Dist. LEXIS 18762, *35-36 (D. Minn. 2002), attached
as Exhibit 2.
[26] Id. at *35-36.

commenced, are inapplicable to this case. Unlike those cases, when this litigation was

commenced, this Court retained jurisdiction during the administrative process.

Federal courts fully recognize that fees incurred at the administrative level after a

complaint is filed in court are recoverable under the statute. The *Anderson* court carefully noted

the difference between fees incurred while exhausting administrative remedies **pre**-litigation and

the important considerations of allowing for fees incurred at the administrative level **after**

litigation is commenced:

> [I]n light of the mandatory nature of the administrative proceedings and their
> close relationship in law and in fact to the issues before the District Court on
> judicial review, denying fees for administrative proceedings subsequent to
> litigation would create an incentive for attorneys to abandon claimants after
> judicial remand, a result that runs directly counter to long established ethical
> canons of the legal profession.[27]

In the case at bar, the Court had jurisdiction when the Complaint was properly filed on

February 22, 2001; Defendant never moved to dismiss the litigation, but did convince the Court

to order the case to proceed through the administrative process "to assemble a factual record

which will assist the court."[28] Therefore, all fees and costs incurred at the administrative level

were incurred in direct relation to filing and prosecuting the civil action in this court.

Most importantly, as discussed above, <u>none</u> of the legal work performed while the case

was proceeding through the administrative process related <u>solely</u> to the making of the

administrative claims. Rather, the legal work performed during this time was necessary to

properly preserve several issues for the district and circuit courts, none of this work was simply

or solely for making the claims at the administrative level – the type of ERISA work for which

fees have been denied. At the time, and without the benefit of hindsight, any one of the many

issues pursued by Plaintiffs during the administrative process could have been resolved in

---

[27] *Id.* at 454, citing *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989).
[28] Defendant's Motion to Stay (Doc. #10) at p. 6.

Plaintiffs' favor by the district court, could have been determinative of the rights of the Plaintiffs, and may have been the basis for appeal to the Sixth Circuit court had Plaintiffs not prevailed. For instance, Plaintiffs' efforts to obtain discovery sought to protect the Plaintiffs' due process rights, and could have been allowed as relevant to the determination of whether the administrator acted in bad faith or had a conflict of interest or bias, whether the denial was arbitrary and capricious, or whether similarly situated employees suffered disparate treatment. Those efforts cannot now be deemed to be unrelated to the litigation or unnecessary and noncompensable.[29] Rather, had Plaintiffs' counsel neglected to make those legal arguments and to pursue that discovery, which many cases in the Sixth Circuit have recognized as highly relevant,[30] and did nothing for one year while the Plaintiffs and their fellow employees jumped through the hoops of what class counsel knew would be a futile administrative process,[31] knowing that Defendant intended to limit the Court's review to that administrative record, their conduct would have been a study in legal incompetence.

Even if the Court disallowed compensation for the work performed during the administrative process, which for the above reasons it should not, Defendant's calculation of the time period and fees incurred during this stage are incorrect. Defendant begins the time period on the date it filed its Motion to Stay and ends it on the date of the Court's Order lifting the stay. However, Plaintiffs' work to oppose the Motion for Stay is compensable as it was not work expended in the administrative proceedings but in the context of the judicial proceedings. Therefore, the administrative time period began when the Court entered its Order granting the Stay. Also, the end of the administrative time period ends on the date of the final letter from

---

[29] See discussion in section VI (E) below.
[30] See, Plaintiffs Motion to Compel Discovery on the Merits (Doc #27) and Plaintiffs' Reply in Support of their Motion to Compel (Doc. #33).
[31] See, Plaintiffs' Opposition to Defendant's Motion to Stay (Doc. #11).

International Paper denying the administrative appeals.[32] Therefore, the administrative time period runs from April 27, 2001 (Court Order of Stay)[33] to December 7, 2001 (Letter from Defendant rejecting all appeals and affirming the denial of benefits)[34] during which 124.5 hours was spent trying to develop the record for the district and circuit courts as well as to convince the administrator to allow benefits.

## V. Plaintiffs' Counsel's Hourly Rates are Reasonable

It is well established that the court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney.[35] Plaintiffs' counsel do not dispute Defendant's premise and authority that the reasonableness of their hourly rates is determined by the "community market rule" and calculated according to the prevailing rates necessary to attract competent counsel who are readily available locally;[36] courts look to the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[37] Plaintiffs' evidence satisfies that standard.

Plaintiffs have cited the cases in this Circuit where courts have recently approved rates comparable and higher to those requested in this case.[38] This specific case has been reviewed by an experienced local class action lawyer with extensive experience representing plaintiffs in complex and class action and ERISA litigation, Richard S. Wayne, who has personal knowledge of Ms. Groh's reputation, skill and accomplishments, and he concluded that her rate is within the range of

---

[32] Despite the indisputable fact that the administrative procedure ended on December 7, 2001, Defendant uses a date more than one month later which is the time it took to get a formal entry on the record reflecting that finality.
[33] Doc. #13.
[34] Karre letter is attached as Exhibit 13 to Plaintiffs' brief in opposition to Defendant's motion for judgment (Doc. #29).
[35] *Hensley*, 461 U.S. at 437; *Wayne v. Village of Sebring*, 36 F.3d 517, 531-32 (6th Cir. 1994), cert. denied, 514 U.S.1127 (1995).
[36] *Blum v. Stenson*, 465 U.S. 886, 897 (1984), quoting S.Rep.No. 94-1011, 94th Cong., 2d Sess. 6 (1976); *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995).
[37] *Blum*, 465 U.S. at 896 n. 11.
[38] Plaintiffs' Fee Motion (Doc. #45) at p. 9.

comparable attorneys in this area and field of law.[39]  Another experienced local litigator, Carl J.

Stich, Jr., who has represented both plaintiffs and defendants in complex civil litigation, and who

has personal knowledge and direct experience working with both Ms. Groh and Mr. Murdock,

concluded that the rates charged by each in this case were well within the range.[40]  Both Mssrs.

Wayne and Stich testified that the rates charged by both Ms. Groh and Mr. Murdock are reasonable

and well within the range of comparable attorneys in this geographical area and field of law.[41]

The only admissible evidence provided by Defendant is the affidavit of Jack Fuchs, the

prototype of a big firm, ERISA employer defense an attorney whose affidavit indicates that he

has never represented plaintiffs in a class action, or in an ERISA case, or in any other complex

litigation.[42]  Mr. Fuchs lacks the unique experience and perspective needed to offer any opinions

related to the plaintiff complex litigation bar.  The only other "evidence" submitted by Defendant

is a totally inapplicable, unhelpful, irrelevant and inadmissible "2001 Economics of Law Practice

Survey" from the Ohio Bar Association.[43]

Mr. Fuchs offers only a narrow view from the vantage point of a large law firm of

approximately 360 attorneys with offices in Brussels, Belgium and Washington, D.C. in addition

to its offices across Ohio.  Plaintiffs' evidence, on the other hand, includes the testimony and

opinions of Mr. Stich who has experience representing both plaintiffs and defendants at Dinsmore

& Shohl and White Getgey & Meyer;[44] and from Mr. Wayne, who has represented plaintiffs in

many ERISA cases and class actions.[45]  Therefore, the evidence submitted by Plaintiffs' is more

objective, balanced and relevant, and should be weighted accordingly.

---

[39] Wayne Declaration, Exhibit 4 to Plaintiffs' Fee Motion (Doc. #45).
[40] Stich Declaration, Exhibit 5 to Plaintiffs' Fee Motion (Doc. #45).
[41] Wayne and Stich Declarations, Exhibits 4 & 5 to Plaintiffs' Fee Motion (Doc. #45).
[42] Fuchs affidavit, Exhibit 3 to Defendant' Response in Opposition (Doc. #49).
[43] The bar association survey, Exhibit 2 to Defendant's Response in Opposition (Doc. #49) is inadmissible hearsay.
[44] Stich Declaration, Exhibit 5 to Plaintiffs' Fee Motion (Doc. #45).
[45] Wayne Declaration, Exhibit 4 to Plaintiffs' Fee Motion (Doc. #45).

Mr. Fuchs' opinions and the bar association survey are based on inapplicable assumptions which are steeped in the different world of defense-oriented fee-for-services representations, such as a corporate defendant in an ERISA case, where there is a monthly payment for services.[46] No doubt, the large law firms and the local market are busting at the seams with attorneys who are qualified and will handle ERISA litigation for a corporate client that pays the bills for hourly work. This is not the case at all in the plaintiff complex civil litigation bar. Such a wide availability of skilled and willing lawyers is not, however, the reality for individual plaintiffs who need successful and skillful lawyers to represent them on a contingency basis and, in this ERISA case, be able to prosecute their case in federal court as a class action.

Defendant also makes many generic and indefensible assumptions that the reasonableness of an attorney's rate is lock step correlated to the size of the law firms providing the legal services. According to Defendant's logic, Mr. Fuchs and the bar association survey, the particular skill and specialization of an attorney are meaningless, the complexity of a specific case and nature of the defense mounted are irrelevant, and the only determining factors are whether you own the firm or are an associate, work in the suburbs or downtown, or work in a firm with 6 or 360 attorneys.[47] Defendant's position and Mr. Fuch's opinion that the nature of work performed by Plaintiffs' counsel and the rates charged for that work are unreasonable, are the result of formulas that have no basis in law or in logic, and are based upon a survey that does

---

[46] Fuchs affidavit, Exhibit 3 to Defendant's Response in Opposition (Doc. #49).
[47] Id. and OSBA survey, Exhibit 2 to Defendant's Response in Opposition (Doc. #49).

not account for or factor in specific information relevant to this case and these Plaintiffs'

lawyers. [48]

Moreover, Defendant and Mr. Fuchs ignore the exceptional class action and litigation

success the two primary Plaintiffs' attorneys have achieved;[49] instead they advance their own

general view that an attorney who has practiced nine years, or clerked for a federal judge for four

years instead of "practicing", do not fit into their broad charts and formulaic categories. Mr.

Fuchs has no experience with and does not know either of the two primary Plaintiffs' attorneys,

contrasted with Mssrs. Stich and Wayne who have based their opinions not on meaningless

statistics and inapplicable surveys, but on their own personal knowledge of these specific

attorneys, their own experience in representing plaintiffs and in ERISA cases, and a review of

the time and work in this particular case.[50]

This class action was prosecuted primarily by only two attorneys, [51] who are two of four

owners of a small boutique plaintiffs litigation law firm; there is only one other partner and only

one other associate in the firm who practice in the field of civil litigation.[52] Defendant criticizes

Plaintiffs' counsel's experience and rates, complaining that it should not have to pay for their

"excessive hours" spent climbing a "learning curve". Defendant tries to use the fact that this suit

was filed without first pursuing administrative remedies as an example of why Plaintiffs' counsel

are unskilled, unlearned and not worth their requested fees. But rather, the reality is that

Plaintiffs' counsel's deliberate decision and strategy to file this class action without pursuing

---

[48] The survey acknowledges that the specialty of complex civil and class action litigation on behalf of plaintiffs is not even listed as a "Primary Field of Law" among those included in the survey. Exhibit 2 to Defendant's Response in Opposition to Fee Motion (Doc. #49) at p. 7.
[49] See the profiles of Plaintiffs' counsel at Exhibit 24 to Plaintiffs' Motion to Certify Class Action (Doc. #29); Mr. Fuchs' conclusions as to Plaintiffs' counsel's experience is based only upon his search of the PACER database for the Southern District of Ohio, see Fuchs affidavit, Exhibit 2 at Par. 14.
[50] See, Wayne & Stich Declarations attached as Exhibits 4 & 5 to Plaintiffs' Fee Motion (Doc. #45).
[51] The hours submitted by attorneys Groh and Murdock constitute 83% of the total hours submitted in Fee Motion, see, Exhibit 1 to the Groh Declaration attached to the Fee Motion (Doc. #45).
[52] Murdock Declaration, Exhibit 2 to Plaintiffs' Fee Motion (Doc. #45).

what the record has established to be <u>futile</u> administrative remedies, demonstrated a keen understanding of the most intricate issues in ERISA law and the means by which the litigation could be expedited.[53] Defendant's "learning curve" protests are without merit.

Defendant also objects to "partners" researching and drafting motions and memoranda, claiming that those are such routine tasks that never justify any high level of experience or skill. This is nothing more than arrogant invective. Perhaps this is true in the environment where Mr. Fuchs operates, where there is incentive to bill clients for multiple hours amassed by various inexperienced associates despite the fact that it would be far more efficient for a higher-level attorney to do the work. Defendant's premise is flawed as a general rule, and the specific complexity and size of this case proves its faulty application. Further, such a proposition defies reality. Many smaller firms and many plaintiffs' litigation firms are comprised of attorneys who actually share in the owning and management of the firm and provide all of the legal work as "partners". To accept that those "partners" should be limited in their work on their cases because they have too much experience is illogical. To accept Defendant's objections would mean that none of the owners of a small law firm should ever do any research or motion work solely because they have been practicing too long, regardless of the fact that they are the litigators in the firm. The reality is that in a small plaintiffs law firm such as Plaintiffs' firm, thorough legal research is a critical task for many reasons, including the analysis of whether a case merits the firm's commitment of precious lawyer and financial resources, judging the chances of success due to the contingency of payment, and determining whether the firm can provide a high quality of legal services to the client. Defendant's position that legal research is "a task customarily

---

[53] The fact that Par. 7 of the Complaint reflects the decision and reasoning to forego the administrative process indicates a careful analysis of this issue; further, the quality of the complaint, especially given the short time frame in which it was researched, drafted and filed, and the fact that no part of it included state law claims or was ever the subject of a motion to dismiss or to amend, militates against Defendant's "learning curve" grievance.

performed by associates and not requiring a higher level of expertise or experience"[54] and that

drafting motions and responses to the motions in this case should have been done by the one

litigation associate reflects an elitist attitude which ignores the practical considerations and the

superior efficiencies of plaintiffs' class action/complex litigation and small firm management.

During the span of this case, there were only two non-owner "associate" litigators in

Plaintiffs' counsel's law firm, and at different times - only in the first and last few months of this

case; moreover, the limited experience of each does not support Defendant's criticism of their

limited use at their lower rates in this case.[55] The few cases cited by Defendant[56] are

inapplicable for the reason that they comment on when associates should be used to conduct

routine research or routine tasks; Defendant's portrayal of the research and motion and briefing

work in this case to be the equivalent of "painting a farmer's barn" is a shameful and arrogant

low blow in its ad hominem attack and is not helpful to the court's analysis. Of course, the cheap

insults defy Defendant's earlier position that this was an impossibly difficult case for Plaintiffs to

win.

Further, there are many inefficiencies which were avoided (to which Defendant would no

doubt have objected) by having less lower level attorneys involved; there were no charges for the

drafting and review of internal memoranda or for meetings and supervisory reviews; many if not

all of the time-consuming aspects of larger firms and wide use of associates were eliminated

from the billing due to level of the two primary attorneys who were responsible for 83% of the

time spent in this case. As the time records indicate, those two attorneys divided the work

between them according to that which related to the merits and to the class action issues, with

---

[54] Defendant's Response in Opposition to Fee Motion (Doc. #49) at p. 12.
[55] See McGrath and Naylor Declarations attached to Plaintiff's Notice of Filing (Doc. #46).
[56] *EEOC v. Anglin*, 2003 U.S.Dist. LEXIS 12852 (M.D.Fla. 2003), attached to Defendant's Response in Opposition (Doc. #49) at Exhibit 5; *Microsoft Corp. v. United Computer Svcs. of N.J.*, 216 F.Supp.2d 383 (D.N.J. 2002); and *Harman v. Lyphomed, Inc.*, 734 F.Supp. 294 (N.D.Ill. 1990).

very little overlap or duplication. The time entries do, of course, include meetings where case-wide strategy and significant decision-making was warranted, but those entries are minimal.

It is significant that later in its Response in Opposition, Defendant lists all of the factors that should be included in determining the reasonableness of the hours and rates, such as: the contingency risk, the novelty and complexity of the issues, the quality of the representation, and the disproportionate effect that the litigation has on a small law practice. While Defendant argues those are not factors to consider a multiplier of the lodestar, it does acknowledge that those factors are should be reflected in Plaintiffs' counsel's rates and number of hours.[57]

Plaintiffs have submitted substantial and compelling evidence to support their requested rates and those rates are reasonable for the type of litigation and legal services involved in this case.[58] Accordingly no reduction in any rate is warranted.

## VI. The Number of Compensable Hours Claimed by Plaintiffs' Counsel is Reasonable

### A. The Court has Wide Discretion

The court has wide discretion in determining the reasonableness of the hours submitted by a prevailing party and in examining any objections to the amount and character of the time submitted.[59] The evidence must be sufficiently detailed to enable the Court to review the reasonableness of the hours expended and counsel "is not required to record in great detail how each minute of his time was expended", but need only "identify the general subject matter of his time expenditures."[60]

---

[57] See Defendant's Response in Opposition (Doc. #49) at pp. 21-25.
[58] Plaintiffs are also entitled to recover attorneys' fees for the time expended by Stephanie Vaaler, a paralegal, as the rate of $85 per hour is reasonable in this community and area of the law. *Missouri v. Jenkins*, 491 U.S. 274 (1989); see also, October 21, 2003 Declaration of Richard Wayne, attached hereto as Exhibit 3.
[59] *Hensley*, 461 U.S. 424 (1983).
[60] *Id.* at 437 n. 12.

As discussed above, Plaintiffs' counsel have submitted abundant evidence, including an objective review of the file and the time entries, to support the nature and amount of the work they performed in this difficult case.[61] Among the all the factors supporting the hours submitted are: the complexity of ERISA law, the difficulty of the developing law in Sixth Circuit in particular, the defenses available to employers and plan administrators, the particular facts and Plan at issue in this case, and the class action aspects which magnified the risk and complexity of the case.[62] A review of the factual and legal issues presented in this case, and of the briefs and other work product prepared by Plaintiffs' counsel, establish the reasonableness and necessity of the time billed and the work performed.[63]

### B.  Quarter-Hour Billing is Permissible

The Sixth Circuit has not accepted Defendant's assertion that fifteen minute incremental time keeping is impermissible.  As long as the court can "articulate a fair explanation for the fee award and the fees are not so high as to constitute an unmistakable windfall", quarter-hour billing is not a reason to discount the fee.[64]  It has been recently recognized that "it is common practice in many law firms to bill in quarter-hour increments" and the court should not reduce the fee on that basis without proof that "such a billing practice is unreasonable in the local market."[65] The two cases cited by Defendant do not hold that quarter-billing is impermissible, but only that a court may reduce a fee based on entries that are so vague or otherwise indicate an inaccurate statement of time by "rounding up" in large time increments.

---

[61] See, Wayne & Stich Declarations attached as Exhibits 4 & 5 to Plaintiffs' Fee Motion (Doc. #45).
[62] Wayne Declaration, Exhibit 4 to Plaintiffs' Fee Motion (Doc. #45).
[63] Id.
[64] *Cantrell v. Knoxville Community Development Corp.*, 60 F.3d 1177 in the Appendix Opinion at section III (6th Cir. 1995).
[65] See, Wayne Declaration dated October 21 and attached hereto as Exhibit 3; *Bridgeport Music, Inc. v. Irving Lorenzo dba DJ IRV Music*, 255 F.Supp.2d 795, 801 (M.D.Tenn 2003).

Defendant's objection is that Plaintiffs' counsel have "padded" their time by submitting

quarter-hour entries. Each billing attorney, however, has sworn to the validity of the listing of the

time and work performed and, specifically, that they included only that work which was essential

to the case and omitted a considerable amount of time spent conferencing with each other;

further, counsel omitted tasks of less than fifteen minutes.[66] There is no evidence and should be

no inference that counsel "padded" their time in any way or that any time was "rounded up".

The time has been reviewed by a highly experience plaintiffs ERISA class action lawyer who has

testified that all work for which time has been submitted was necessary and reasonable in this

case.[67]   Moreover, the argument that Plaintiffs' counsel have "padded" their time is an

accusation that they have supplied something other than an accurate recordation of time actually

spent on this case, a charge wholly unsupported by the record and one with which Plaintiffs'

counsel take serious issue as an accusation that they committed perjury or fraud upon the Court.

Plaintiffs' counsel stand by their submission and deny that any entry is "padded" or "rounded

up".  Defendant's request that the time be reduced by an across-the-board percentage is

unsupported by any evidence and should be rejected.

### C. Plaintiffs' Work Descriptions and Block Billing are Permissible and Sufficient

The Sixth Circuit does not require that each task be detailed with the precision suggested

by Defendant; counsel "is of course not required to record in great detail how each **minute** of his

time was expended, it is enough that counsel identify the general subject matter of his time

expenditures."[68] There is no authority that "block billing" is an impermissible technique that

---

[66] Groh and Murdock Declarations, Exhibits 1 & 2 to Plaintiffs' Fee Motion (Doc. #45).
[67] Wayne Declaration, Exhibit 4 to Plaintiffs' Fee Motion (Doc. #45).
[68] *Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Michigan Department of Natural Resources*, 1998 U.S. App. LEXIS 15145 at *20 (6th Cir. 1998) attached as Exhibit 4, citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12 (1983).

mandates reduction, even in the jurisdictions that recognize it. Rather, courts should "look at the entire block, comparing the listed activities and the time spent, and determine whether the hours reasonably correlate to all of the activities performed."[69] Further, counsel should be permitted to protect the attorney-client and work product privileges which could otherwise be nullified if excessively detailed descriptions were required. Plaintiffs' time entries are not so vague and deficient that the Court cannot assess the reasonableness of the time and, therefore, such time should not be reduced or rejected for the reason it was listed in a block entry. If the Court disagrees, however, Plaintiffs submit that the more equitable vehicle by which to remedy any deficiency is to permit Plaintiffs' counsel to provide more detailed time entries *in camera*.

### D. Plaintiffs have not Included Unnecessary Duplicative or Redundant Billing Entries

Multiple attorneys did research and investigate and meet at various critical times in this case, especially in the initial days when long hours were spent researching the law and facts to decide whether to undertake the representation, whether a class action was justified, whether there were sufficient legal and factual grounds to file suit rather than pursuing futile administrative remedies,[70] and how the facts and ERISA statute and class allegations should be framed in the Complaint.[71] Not only does the success or failure of a small law firm often depend on these initial decisions, but the reputation and integrity of the attorneys are also at stake, as

---

[69] *United States v. Pennsylvania Blue Shield,* 54 F.Supp.2d 410, 415 (M.D.Pa. 1999); see also, *Sees v. Fagen,* 2002 U.S. Dist. LEXIS 4845 at *8-9 (N.D.Tex. 2002) attached as Exhibit 5 (employing the technique suggested in *Pennsylvania Blue Shield* and finding no basis on which to reduce the plaintiffs' total claimed hours for "block billing.")

[70] The fact that Par. 7 of the Complaint addresses the decision and reasoning to forego the administrative process indicates a careful analysis of this issue; this point also militates against Defendant's criticism that Plaintiffs' counsel demonstrated "a lack of knowledge" regarding the administrative exhaustion procedure.

[71] The Class Action Complaint was filed on February 22, 2001, was never the subject of a motion to dismiss or an amendment, and the days which Defendant claims contain duplicative entries are February 16, 17 and 19, 2001, the days immediately preceding that filing.

well as the hopes and rights of the clients. To commit less time and resources at this phase would be irresponsible.

The time records show that other times in which two attorneys conferenced were to address key motions and briefs and when critical strategic decisions had to be made. Defendant is not credible when it maintains that this class action should and could have been litigated as expeditiously and with the same results with less than the two attorneys who primarily provided the representation, and with less than the minimal time they spent in conference with each other. Also, the attorneys have testified that most of the time they spent meeting and discussing the case has not been included.[72] There is no evidence of unnecessary duplication or redundancy and no time should be eliminated or reduced.

### E. Time Pursuing Disputed Legal Issues Should not be Eliminated or Reduced

Hindsight should not be used to criticize the time spent on issues and motions on which Plaintiffs did not prevail; this is an "overly stringent standard to use when awarding fees."[73]

> The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.[74]

"The most critical factor is the degree of success obtained."[75] The Supreme Court has explained that the district court has discretion and should not reduce fees for time that was "expended in pursuit of"[76] or "in any way contributed to the ultimate results achieved."[77] A claim or legal work performed on a case is only "unrelated" if they could be raised in separate lawsuits.[78]

---

[72] Groh and Murdock Declarations, Exhibits 1 & 2 to Plaintiffs' Fee Motion (Doc. #45).
[73] *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).
[74] *Id.*
[75] *Hensley*, 461 U.S. at 436 & 440.
[76] *Id.* at 435.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation ... the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit ... the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee. The result is what matters.[79]

Plaintiffs pursued one claim: their claim for benefits under policy #828 and ERISA. Plaintiffs did not achieve only limited success necessitating a carving out of time on unsuccessful causes of action, but rather achieved complete relief. Plaintiffs did not "fail to prevail on claims that were unrelated to the claim on which they succeeded."[80] This was not a case where the plaintiffs pursued several alternative claims based on different facts and separate legal theories against different defendants and only partially prevailed to justify reducing the fee for the lost claim.

Plaintiffs no choice but to pursue several issues and to file discovery and other motions and memoranda related to that one claim; and those facets of the case arose after Defendant moved for a stay, forced them to submit all their evidence at the administrative level, and made clear it would argue to confine the district court's review to only that developed at the administrative level. The case law is divided and the facts compelling to provide sufficient legal and factual bases for Plaintiffs to: 1) oppose the stay based upon the futility of administrative exhaustion, 2) pursue discovery to ensure a full an fair review by the Plan Administrator, 3) pursue discovery to convince the administrator to award benefits, 4) pursue discovery to protect plaintiffs rights to due process, 5) pursue discovery to establish that the Administrator had a conflict of interest and bias, 6) pursue discovery to establish that a denial was erroneous or was arbitrary or capricious, 7) pursue discovery to show disparate treatment of similarly situated

---

[77] *Id.* at 432.
[78] *Id.* at 435.
[79] *Id.* at 435 & 440.
[80] *Id.* at 434.

employees, 8) pursue discovery to develop and protect the record for both the District and Circuit courts, and to 9) pursue discovery of third party Smart Papers when International Paper denied the same.

"[T]he legal work performed in the efforts to convince the Plan administrator to award benefits at the administrative level, after Defendant forced a stay of the litigation pending that administrative process, was necessary and intimately connected to the presentation of Plaintiffs' case to the District Court."[81]  All of these efforts were necessary and expended in pursuit of the ultimate and complete relief of obtaining Policy #828 benefits.  Therefore, no time dedicated to these issues should be reduced.

### F. Time Spent Preparing the Fee Motion

Defendant claims that Plaintiffs, as a matter of law, cannot submit time in excess of 3% of their total hours billed for hours spent preparing the fee petition, citing *Coulter v. Tennessee*.[82] *Coulter* did not, however, establish a blanket legal standard and even recognized that circumstances could warrant an increase in the percentage it applied in that "simple" case which was "tried in less than half a day," and was "decided from the bench."[83]  Significantly, the low percentage was levied out of the expressed concern that compensation from the attorney fee case would encourage protracted litigation.[84]  None of those considerations are applicable here[85], and there is no better evidence of that fact than the obvious time and effort that Defendant has expended its extensive and detailed opposition to Plaintiffs' fee request.

---

[81] Wayne Declaration, Exhibit 4 to Plaintiffs' Fee Motion (Doc. #45).
[82] *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir.1986).
[83] *Id*. at 148.
[84] *Id*. at 151.
[85] See Groh Declaration, Exhibit 1 to Fee Motion (Doc. #45)(despite three offers by Plaintiffs to explore settlement, early before dispositive motions were decided and after, and despite the significant exposure Defendant faced in a judgment for damages, interest, attorney fees and expenses in excess of $5 million, Defendant declined and made no attempts to negotiate.)

On one hand, Defendant acknowledges that Plaintiffs' counsel must exercise billing judgment and then, on the other, it objects that they spent too much time doing so. Defendant consistently maintained Plaintiffs could not win this case, and have waged war on every issue, while actually creating most, and yet it argues that Plaintiffs' fee application should have been completed in 30 hours.[86] Defendant complains that the 1683 hours is excessive, and yet its argument against the time it took to prepare the fee application only proves that the hours spent on the main case were a fraction of what would ordinarily be expected. If this case had, like many complex pieces of litigation, mounted thousands of hours of time, Plaintiffs' time for this fee motion would not be questioned. If the main case took 2,000 to 3,000 to 4,000 hours, the time to prepare the fee application would constitute a smaller percentage; but Plaintiffs should not be punished for their efficiency of effort in the case on the merits. Defendant substantially weakens its credibility with the greed indicated by its inconsistent objections.

Further, the factual and evidentiary burdens attendant to a fee application are only a small part of the task in a case where unique issues mandate a thorough analysis of the evolving case law and the manner by which the Plaintiffs and their class counsel seek to be compensated: this case involves a fee shift statute in class action which was resolved by judgment rather than by a settlement; therefore, it was necessary to research and articulate a combination of mechanisms which would appropriately utilize and follow fee shift principles and common fund principles to chart out exactly how payment should be ordered.

Plaintiffs' counsel has an obligation to the Class to maximize the class' recovery of damages and fees and costs by pursuing a payment of fees and costs by the Defendant. Additionally, plaintiffs' counsel has the obligation to provide justification to the Court, which is

---

[86] This is the result of applying 3% to the reduced figure Defendant claims should be the hours expended on the main case.

responsible for protecting the Class, for the percentage fee they are seeking the Class to pay out of the common fund. While the two concepts and mechanisms are not in conflict, they impact each other and must be integrated. Therefore, the nature and posture of this case and its resolution required an analysis and provision of factual and legal support far beyond that required in the typical fee application.

### G. The Fees and Expenses of Myron A. Wolf are Reasonable

Myron Wolf has been an important lawyer on this case; his practice and office are in Hamilton, Ohio where Defendant's paper mill is located and the community where plaintiffs live and work.[87] Mr. Wolf was originally approached by the Plaintiff Diane Noonan for representation, and he is responsible for obtaining lawyers who are experienced in complex litigation and class actions to work with him on this case.[88] As is evidenced by his time submission,[89] he was involved at key times and stayed informed to be able to advise the clients and other employees. Rather than billing for duplicative or excessive time, Mr. Wolf has only submitted 75.25 hours at his ordinary rate and has omitted time which reflected less than fifteen minutes of work, including meetings and short phone conferences.[90]

### H. Expenses

Plaintiffs' counsel agree with Defendant that the expense items to which it has objected[91] should not be shifted to Defendant pursuant to the federal statute, but should instead be a part of the expenses paid by the Class. Plaintiffs' counsel do not concede, however, that the ten cents

---

[87] Wolf Declaration, Exhibit 3 to Plaintiffs' Fee Motion (Doc. #45).
[88] Groh, Murdock and Wolf Declarations, Exhibits 1, 2 & 3 to Plaintiffs' Fee Motion (Doc. #45).
[89] Doc. #46.
[90] Id. and Wolf Declaration, Exhibit 3 to Plaintiffs' Fee Motion (Doc. #45).
[91] Defendant objects to paying the following expenses: mileage and travel expenses ($80.52), facsimile costs ($53.40), federal express charges ($203.68), long distance phone charges ($15.28), and the Burke & Rosen bill ($500.00).

per page charge for photocopies is unreasonable, and maintain that charge is well within, if not below the range of 12 –14 –20 cents customarily charged by reproduction companies and law firms in the Cincinnati area.[92] The five cents per page suggested by Defendant is unreasonably low in light of the cost of equipment, paper, ink, supplies and labor involved in document reproduction.[93]

## VII.    Plaintiffs' Counsel are Entitled to a Multiplier

The analysis of the amount of fee to shift to the losing party does not end with a calculation of the straight lodestar amount.  While the contingency risk, the novelty and complexity of the issues, the quality of the representation, and the disproportionate effect that the litigation has on a small law practice may not be decisive factors in multiplying a lodestar, Plaintiffs have submitted substantial evidence that satisfies the controlling standard set by the United States Supreme Court.

The Supreme Court recognizes that an enhanced award may be appropriate "in some cases of exceptional success" and has specifically rejected any rule that an upward adjustment to an attorney's fee is never appropriate under a fee shift statute.[94] The *Blum* Court denied a multiplier for the repeated reason that the record in that case did not provide any evidence that an upward adjustment was justified or "necessary to provide fair and reasonable compensation."[95]

Plaintiffs' success in this case is complete and truly exceptional.  Even the Defendant is hard-pressed to disagree given its vigorous defense and strong insistence that such a result was impossible.  Plaintiffs have provided substantial evidence that enhancement of the lodestar is justified and necessary.  Richard Wayne, an experienced ERISA class action lawyer, has

---

[92] See Hillmann affidavit, attached as Exhibit 6.
[93] Id.
[94] *Hensley,* 461 U.S. at 435; *Blum,* 465 U.S. at 897.
[95] *Blum*, 465 U.S. at 899, 901 & 902.

submitted a sworn Declaration that explains why a multiplier is justified in this case based upon the exceptional result, and the significant fact that Plaintiffs prosecuted the case to protect the rights and benefits of an entire class.[96]  This Declaration also explains how and why an upward adjustment of the lodestar is necessary to provide full and fair compensation. "[A]n award of fees that is limited to a straight lodestar amount, with no enhancement ...would not fairly compensate class counsel for the risks taken, the work done and the result they achieved."[97]

An award of a straight lodestar fee with no multiplier may be fair and appropriate when there are only a few employees whose total recovery may not justify an attorney undertaking the representation without the prospect of being paid for his or her time, since a percentage agreement would not yield a sufficient fee.  However, where there is additional work and effort put forth to represent and benefit a class of plaintiffs, counsel should be entitled to a percentage of that fund rather than the same hourly rate he or she would have made in representing just the few employees.[98]

Defendant's reliance on *City of Burlington v. Dague*[99] and its progeny is misplaced because Plaintiffs are not seeking a multiplier based on strictly on the contingency risk of the representation.  Further, the policy considerations in *Dague* do not apply in common fund cases, and the award of benefits under Policy #828 has, in effect, created a common fund in this case.

Multipliers are appropriate in cases that are initiated under ERISA and settled with the creation of a common fund,[100] just as in other cases which have resulted in a common fund.[101] Plaintiffs' Fee Motion discusses common fund cases to provide examples of the multiplier

---

[96] Wayne Declaration, Exhibit 4 to Plaintiffs' Fee Motion (Doc. #45).
[97] Id. at Par.10.
[98] See Wayne Declaration, Exhibit 4 to Plaintiffs' Fee Motion (Doc. #45).
[99] *City of Burlington v. Dague,* 505 U.S. 557 (1992).
[100] See, *Cook v. Niedert,* 142 F.3d 1004 (7th Cir. 1998).
[101] See the authorities cited in Plaintiffs' Fee Motion (Doc. #45) at pp. 11-15; 19-23.

amounts used and as support for the enhancement of a lodestar rate where there is a common fund and benefit to a number of people, such as the class of employees in this case.

An award of a straight lodestar with no multiplier in this case where a common fund arises via a successful judgment on the merits, rather than a settlement, creates the illogical result of penalizing class counsel for fully litigating the case to judgment, obtaining a maximum recovery, and then proceeding through an appeal, instead of compromising and settling the claims for a lesser amount. If, in the alternative, this action settled, it would create a "common fund" from which class counsel would seek fees in an amount ranging between 25-40%. To ignore the reality that this judgment also creates a "common fund" that benefits all salaried employees in the exact same way as a settlement common fund is to place a punitive emphasis on form over substance. This would operate to dissuade rather than encourage any plaintiffs' counsel from seeking to protect the rights of a large number of equally injured persons in a class, rather than individual clients, and also creates a perverse financial incentive to settle class actions at a lesser value, as opposed to seeking a full recovery for the class on the merits.

Moreover, a multiplier of 1.5 is proper in order to fairly compensate Plaintiffs' counsel for efficient work rather than basing counsel's compensation solely on the number of hours worked. To limit counsel's fee to a strict lodestar amount would ignore their expeditious work in obtaining an early judgment and the maximum results in the minimum of time.[102]

Defendant should pay the requested lodestar amount plus a 1.5 multiplier for the same reasons the fee is shifted to Defendant in the first place: to protect the interests of the Class in receiving as much of their wrongfully withheld benefits as is fairly possible. By multiplying the

---

[102] See the criticism of the lodestar analysis in *Bowling v. Pfizer, Inc.*, 922 F.Supp. 1261, 1278-1279 (S.D. Ohio 1996), aff'd, 102 F.3d 777 (6th Cir. 1996), citing the Report of the Third Circuit Task Force, 108 F.R.D. 237, 246-249 (1986) (Among the deficiencies of the lodestar approach are that it has led to: "abuses such as encouraging lawyers to spend excessive hours engaging in duplicative and unjustified work, inflating their 'normal' billing rate, and including fictitious hours;" and it "creates a disincentive for the early settlement of cases."

lodestar amount and increasing the amount of fees the Defendant pays, the Court fulfills its duty to protect the interests of the Class in recovering as close to their full benefits as is fairly possible. An award of attorneys' fees and costs to the Plaintiffs should be in an amount that fairly compensates them and comports with their legitimate expectations of a complete recovery of benefits,[103] as the remedial goal of ERISA is to place the Plaintiffs in the position they would have been in but for the wrongful withholding of benefits.[104] A multiplier reduces the amount of the fees they pay to their attorneys out of the common fund; places the burden of paying attorneys' fees on the party whose wrongful conduct caused the litigation; and ensures that class counsel are fairly compensated for the amount of work done as well as the results achieved.[105]

## VIII. Interest

Defendant has not argued any reason to deny the award of prejudgment interest and concedes that the district court has discretion to do so. For the reasons set forth in Plaintiffs' Motion for Fees, prejudgment interest should be awarded in this case. The parties agree that both pre- and post judgment interest should be calculated according to the federal post-judgment statute, 28 U.S.C. §1961(a), since there is no federal prejudgment statute, but disagree as to how those two rates should be calculated.

Defendant argues that the post-judgment rate, which is calculated from and based upon the judgment date, should also be the pre-judgment rate. Plaintiffs agree that the post-judgment rate should be calculated from the date of entry of judgment (an entry which will occur in the future after the instant motion is decided and Plaintiffs damages are identified), and at a rate

---

[103] See *Crosby v. Bowater Incorporated, Inc.*, 262 F.Supp.2d 804, 812 (W.D. Mich. 2003).
[104] *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998).
[105] *In Re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), citing *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.R.D. 513, 516 (6th Cir. 1993).

equal to a weekly average for the calendar week preceding the date of judgment.[106] Plaintiffs, however, submit that the pre-judgment interest rate should reflect the weekly average over the period when such severance should have been paid, rather than the average preceding the date of judgment.[107]

The parties disagree as to <u>when</u> benefits were payable to Plaintiffs. Defendant cites to Section 11 of the Plan to say that the Plaintiffs were required to "make claims" and proceed through the administrative claims and appeals route to recover benefits, which would delay their entitlement to payment until June 26, 2001, but there are no such prerequisites in Section 11 or elsewhere in Policy #828.[108] The plain language of the Plan states that the time of payment will be within eight days of the termination date[109] and there is no requirement that employees have to "file claims" to receive those benefits; the only reference to any filing of any claim is "[I]n the event that a benefit has not been paid under the Policy".[110] Once again, Defendant's position is contrary to the clear language of its own Plan. Therefore, the date benefits were due to Plaintiffs was February 17, 2001, eight days after their termination date (February 9, 2001) as stated in the Plan, and the prejudgment interest rate should be calculated using February 17, 2001 as the date benefits should have been paid.

## IX.    The Incentive Awards Requested by Plaintiffs are Appropriate

Defendant admits that it has no real basis to challenge payment of incentive awards to class representatives Dalesandro and Noonan as any award would come from the recovery it

---

[106] 28 U.S.C. §1961(a).

[107] It is unclear whether Defendant disagrees with the time period used to calculate the weekly average for prejudgment interest as it states that "the Court should look to the appropriate prejudgment interest rate based in interest rates in effect at the time of judgment *or an average rate over the period when such severance would have been paid.*" Defendant's Response in Opposition to Fee Motion (Doc. #49) at p. 28 (emphasis added).

[108] Policy #828 is attached as Exhibit 7.

[109] Id. at Sections 5 & 8.

[110] Id. at Section 11.

already owes the class, not out of its pocket.[111] Yet, Defendant is simply unable to resist sniping at the request -- even if to do so, it has to hatch the false proposition that incentive awards are a *per se* improper under ERISA.[112]

At the outset, Defendant demonstrates a fundamental misunderstanding of the purpose of incentive awards in class actions as it confuses the wholly distinct power of this Court to grant these awards to successful class representatives in recognition of their service and benefit to the class **with** that of obtaining relief under ERISA. Simply put, incentive awards to class representatives Dalesandro and Noonan do not constitute relief under ERISA. Rather, the request is based upon the established power of this Court to recognize the service of these representative for pursuing this action not merely for themselves, but for shouldering the substantial burden and responsibilities of acting as fiduciaries who championed and protected the interests of 149 fellow employee-class members, resulting in a full recovery on their behalf.

This Court in *Day v. NLO* recognized the appropriateness of incentive awards for representatives "who have been able to effect substantial relief for the classes they represent."[113] In stark contrast to Defendant's absurd assertion that incentive awards are an impermissible form of relief under ERISA, the Court in *Day v. NLO, Inc.* instructed that incentive awards are a litigation expense -- not relief.[114]

That Defendant even challenges the authority of this Court to grant incentive awards in ERISA class actions demonstrates its lack of candor with the Court. Specifically, in *Cook v.*

---

[111] Defendant states "[t]his request does not implicate any additional benefits requested or due from International Paper above actual Policy #828 benefits, but instead are amounts to be deducted pro rata from the recovery of individual class members." Defendant's Response in Opposition (Doc. #49) at 29.
[112] *Id.*
[113] *Day v. NLO, Inc.*, 1995 U.S. Dist. LEXIS 22316 at *4 (S.D. Ohio 1995), attached as Exhibit 8 (see decision at *4-*9 for analysis and application of the awards).
[114] *Id.* at *7.

*Niedert*,[115] authority that Defendant cites and relies upon elsewhere in its opposition memorandum,[116] the Seventh Circuit found that incentive awards are fully allowable in ERISA class actions, and then proceeded to uphold a $25,000 incentive award to the class representative. In rejecting the arguments of the defendant, the Seventh Circuit recognized that named plaintiffs in class actions are "an essential ingredient of any class action", and in deciding whether an award is warranted "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which a class is benefited from those actions and the amount of time and effort the plaintiff expended in pursuing the litigation."[117]

Here, class representatives Noonan and Dalesandro are deserving of the requested award of $10,000 each.[118] As detailed in the request for incentive awards, they fully and diligently championed and protected the interests of the entire class, and in executing these duties they each devoted approximately 175 hours up to the present stage in this litigation. This dedicated service directly resulted in a full recovery for 149 fellow employees -- a substantial benefit to the class by any measure.[119]

Accordingly, the incentive awards are fully warranted and appropriate as requested.

## X. Conclusion

Plaintiffs' counsel exercised billing judgment and excluded from their fee application excessive, and unnecessarily redundant and otherwise unnecessary hours. They have provided sufficient evidence that their rates are reasonable based upon the prevailing market rate in the Cincinnati area, the complexity of this case, and their customary billing rates. They have

---

[115] *Cook*, 142 F.3d at 1016.
[116] See Defendant's response in Opposition (Doc. #49) at 24-25.
[117] *Cook*, 142 F.3d at 1016.
[118] Plaintiffs' Fee Motion (Doc. #45) at 26.
[119] Plaintiffs' Fee Motion (Doc. #45) at 26-27, and at Exhibits 6 and 7 attached thereto.

submitted sufficient evidence that the amount and nature of the work performed was reasonable and necessary in this case, and their time records are sufficiently detailed to enable the Court to review the reasonableness of the hours expended and work performed.  Based upon the foregoing, Plaintiffs' counsel respectfully request this Court to grant and approve their requests for fees, expenses, interest, and incentive awards as set forth in their Motion.

Respectfully submitted,

s/Theresa L. Groh
Theresa L. Groh (0029806)
John C. Murdock (0063749)
Murdock Goldenberg Schneider & Groh, L.P.A.
700 Walnut Street, Suite 400
Cincinnati, Ohio  45202-2011
Telephone:  (513) 345-8291
Facsimile:  (513) 345-8294
Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Michael Roberts, Esq., Graydon, Head & Ritchey LLP, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio  45202, and I hereby certify that I have mailed the document  by overnight mail service to the following non CM/ECF participants: W. Carter Younger, Esq. and James P. McElligott, Esq., McGuire Woods, LLP, One James Center, 901 East Cary Street, Richmond, VA  23219-4030.

s/Theresa L. Groh
Theresa L. Groh