IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT D. DALESANDRO, et al., | : | Case No. C-1-01-109 |
| On behalf of themselves and | : | |
| all others similarly situated, | : | Judge Sandra S. Beckwith |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE INTERNATIONAL PAPER | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

EXHIBITS IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUPPLEMENTAL NOTICE
and
MEMORANDUM IN SUPPORT OF INCLUSION OF VACATION PAY AS DAMAGES

INDEX

EXHIBIT 1        PLAINTIFFS' PROPOSED SUPPLEMENTAL NOTICE

EXHIBIT 2        CHAMPION INTERNATIONAL CORPORATION
                 REORGANIZATION SEVERANCE POLICY #828

EXHIBIT 3        QUESTIONS AND ANSWERS:
                 CHAMPION INTERNATIONAL CORPORATION
                 MERGER WITH INTERNATIONAL PAPER COMPANY,
                 REORGANZIATION SEVERANCE POLICY #828

EXHIBIT 4        FEBRUARY 16, 2001 CLAIM LETTERS FROM SCOTT
                 DALESANDRO AND DIANE NOONAN

EXHIBIT 5        LIST OF CLAIM LETTERS SENT BY OTHER
                 INTERNATIONAL PAPER EMPLOYEES

EXHIBIT 6        MARCH 12, 2001 DETERMINATION OF
                 ADMINISTRATOR, ROBERT FLORIO

EXHIBIT 7          APRIL 19, 2001 AFFIDAVIT OF ROBERT FLORIO

EXHIBIT 8          MAY 2001 LETTERS FROM FLORIO TO DALESANDRO
                   AND NOONAN DENYING CLAIMS FOR BENEFITS
                   UNDER POLICY #828

EXHIBIT 9          LIST OF OTHER MAY 2001 FLORIO LETTERS TO
                   OTHER EMPLOYEES DENYING CLAIMS FOR BENEFITS
                   UNDER POLICY #828

EXHIBIT 10         OCTOBER 8, 2001 MEMORANDUM FROM CHARLES
                   WARNER TO BOB FLORIO AND PAUL KARRE
                   RE: POLICY #828 APPEALS

EXHIBIT 11         DECEMBER 7, 2001 LETTER FROM KARRE TO GROH
                   REAFFIRMING FLORIO'S DENIAL OF BENEFITS
                   UNDER POLICY #828

EXHIBIT 12         LIST OF NOVEMBER AND DECEMBER 2001 LETTERS
                   FROM KARRE TO OTHER INTERNATIONAL PAPER
                   EMPLOYEES AFFIRMING FLORIO'S DENIAL OF
                   BENEFITS UNDER POLICY #828

EXHIBIT 13         INTERNATIONAL PAPER COMPANY VACATION POLICY

EXHIBIT 14         SMART PAPERS VACATION POLICY AND LEWIS DECLARATION

EXHIBIT 15         DEFENDANT'S OBJECTIONS AND RESPONSES TO
                   PLAINTIFFS' INTERROGATORIES AND REQUESTS
                   FOR PRODUCTION OF DOCUMENTS RELATED TO
                   VACATION PAY

EXHIBIT 16         DECLARATION OF THERESA L. GROH

Exhibit I

# PLAINTIFFS' PROPOSED
# SUPPLEMENTAL NOTICE

## COURT ORDERED SUPPLEMENTAL NOTICE:

**YOUR RIGHTS TO VACATION PAY AS PART OF YOUR SEVERANCE BENEFITS DUE TO THE TERMINATION OF YOUR EMPLOYMENT BY INTERNATIONAL PAPER COMPANY**

**Date:** _____

To:     All Class Members in
        *Dalesandro, et al. v. The International Paper Company*
        Case No. C-1-01-109, U.S. District Court, Southern District of Ohio

This Supplemental Notice is sent to you by order of U.S. District Court Judge Sandra S. Beckwith, in the case *Dalesandro, et al. v. The International Paper Company,* and supplements the Court Ordered Notice sent to you previously and dated September 24, 2003. This case involves your entitlement to benefits under Champion International Paper Company Corporation Reorganization Policy #828 ("Policy #828") as a result of International Paper Company's termination of your employment, along with others, at the Hamilton B Street Mill on February 9, 2001. Judge Beckwith has ruled that you are entitled to vacation pay in this case as part of your severance benefits pursuant to Section 7.1 of the Severance Policy #828 which states:

> An Eligible Employee will receive a lump sum [payment for banked vacation, earned but unused vacation, and if eligible to retire (under the provisions of Section 3 or otherwise), accrued vacation.

As of the time of the issuance of this Supplemental Notice, however, International Paper Company has indicated that it intends to exercise its right to appeal Judge Beckwith's ruling and judgment in your favor to the U.S. Federal Court of Appeals for the Sixth Circuit. In the event of an appeal, Judge Beckwith's ruling and judgment will be upheld, modified, or reversed. **THEREFORE, UNTIL THE OUTCOME OF THE APPEAL PROCESS, YOU WILL NOT KNOW THE FINAL STATUS OF YOUR ENTITLEMENT TO ANY SEVERANCE BENEFIT.**

**Read this Notice carefully as it is designed to inform you of your rights in connection with this class action.**

{00009171; 1}

**I.     YOUR VACATION PAY CALCULATION UNDER POLICY #828**

The enclosed **EXHIBIT A** to this Supplemental Notice is **YOUR** personal vacation pay calculation performed by International Paper Company in accordance with Judge Beckwith's ruling.  You have **30 DAYS** from _____ [the date set in BOLD in this Supplemental Notice caption] in which to review this calculation to confirm its accuracy.  In the event you believe that your severance pay calculation is incorrect, you must give notice to International Paper Company within this 30 day period by mailing a written explanation setting forth the basis for your disagreement to:

> Sharon Barger
> International Paper
> 6400 Poplar Avenue
> Memphis, Tennessee 38197

Your vacation pay calculation will be reviewed and resolved in accordance with the procedure as set forth in the following section.

**II.     REVIEW OF YOUR VACATION PAY CALCULATION**

In the event you believe that the vacation pay calculation set forth in **Exhibit A** is incorrect, you must mail a letter that is postmarked by no later than _____ [date calculated based upon adding 30 days to the date in BOLD in this Supplemental Notice caption], explaining the grounds as to why the calculation is incorrect.  Send and address your letter to:

> Sharon Barger
> International Paper
> 6400 Poplar Avenue
> Memphis, Tennessee 38197

By no later than 20 days after the receipt of your letter, International Paper Company will send you return correspondence setting forth a reviewed determination of your severance pay as well as an explanation of the calculation.   In the event you are in disagreement with this

{00009171; 1}

determination, by no later than 15 days from the receipt of International Paper Company's correspondence, you must submit a letter to your Class Attorneys, **Attention: Theresa L. Groh, 700 Walnut Street, Suite 400, Cincinnati, Ohio 45202**, and state the grounds for your disagreement. Your Class Attorneys will review your letter and seek to resolve the disagreement with the attorneys for International Paper Company. In the event your vacation pay amount remains in dispute, then this matter will be brought before Judge Beckwith by your Class Attorneys for a final determination.

It is important that you promptly review and verify the calculation in **Exhibit A** within the provided 30 days. This is because on a later date Judge Beckwith will issue a binding order that will finalize and fix the amount of your vacation and other severance pay.


## III.    GETTING MORE INFORMATION

This legal action, captioned *Dalesandro, et al. v. The International Paper Company*, Case No. C-1-01-109, exists on file with and is a matter of public record in the U.S. District Court for the Southern District of Ohio, 324 Potter Stewart U.S. Courthouse, 100 E. Fifth Street, Cincinnati, Ohio 45202. You are welcome to contact your Class Attorneys at 513-345-8291, and ask for Theresa Groh, Esq. with any questions. You are also welcome to write or fax your Class Attorneys, Attention: Theresa Groh, Esq. to Murdock, Goldenberg, Schneider & Groh, L.P.A., 700 Walnut Street, Suite 400, Cincinnati, Ohio 45202; Fax Number (513) 345-8294.

{00009171; 1}

Exhibit 2

# CHAMPION INTERNATIONAL CORPORATION REORGANIZATION SEVERANCE POLICY #828

## CHAMPION INTERNATIONAL CORPORATION

## REORGANIZATION SEVERANCE POLICY #828

1.     Adoption of the Policy. Champion International Corporation ("Company", as further defined in Section 1.3) hereby adopts the Champion International Corporation Reorganization Severance Policy #828 ("Policy"). The Policy, effective as of the closing date of the Merger, consists of this document and the attached Summary Plan Description (and any amendments thereto) of the Policy, the provisions of which are made a part hereof and incorporated herein by reference.

2.     Purpose of the Policy.  The purpose of the Policy is to provide certain severance and other benefits to employees of the Company whose employment is Terminated as a result of Reorganization. The Policy is an employee benefit plan under Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

3.     Amendment and Termination. The Company shall have the right to amend and/or terminate the Policy at any time for whatever reasons it may deem appropriate without prior notice, except that, (1) the Pension Enhancement described in Paragraph 3, may not be extended beyond one year and (2) for the one-year period immediately following the Merger, (a) the Policy shall not be terminated, and (b) no amendment will be effective if it would adversely affect the rights, expectancies, or benefits of any Eligible Employee provided by the Policy as in effect as of the closing date of the Merger.

4.     Severability of Provisions.  If any provision of the Policy should be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions of the Policy, and the Policy shall be construed and enforced as if such provision had not been included.

5.     Applicable Laws.  The Policy shall be construed, administered and governed in all respects under and by the laws of the State of Connecticut, except where such laws are preempted by applicable federal legislation.

IN WITNESS WHEREOF, the authorized delegate of the Pension and Employee Benefits Committee of Champion International Corporation, on behalf of said Committee, has executed the Policy by signing this document as evidence of its adoption.

Approved: ___May 26, 2000___

_Paul B. Records_

Paul B. Records

05/25/00 4:45 PM

# SUMMARY PLAN DESCRIPTION

## CHAMPION INTERNATIONAL CORPORATION

## REORGANIZATION SEVERANCE POLICY #828

The Policy sets forth certain benefits extended to Eligible Employees whose employment is Terminated during the Policy Period as a result of Reorganization.

## Section 1 Definitions

1.1    Administrator is the Company.

1.2    Cause is deliberate unacceptable performance of duties, deliberate unsatisfactory performance (Employee refuses to improve unsatisfactory performance), excessive absenteeism, violation of rules, gross negligence, dishonesty, acts in bad faith, fraud and/or insubordination.

1.3    Company is Champion International Corporation prior to the Merger (including its United States subsidiaries), and after the Merger Company is the corporation that survives the Merger.

1.4    Credited Service is an Eligible Employee's period of employment with the Company to and including the date of Termination, but not including years of service that have been taken into account for a prior severance payment from the Company.

1.5    Earnings is:

    (a)    for a salaried employee, the greater of the annual base salary at the commencement of the Policy Period or the highest annual base salary at any time during the Policy Period; a week's Earnings is determined by dividing such annual base salary by 52;

    (b)    for a non-represented hourly employee, the greater of the hourly base rate at the commencement of the Policy Period or the highest hourly base rate at any time during the Policy Period; one week's Earnings is determined by multiplying such hourly base rate by 40.

1.6    Eligible Employee is an Employee who is Terminated and who has executed and delivered an effective Release.

1.7 <u>Employee</u> is any non-represented regular or part-time regular salaried or hourly employee of the Company and its domestic subsidiaries except:

    (a)    an employee of a foreign subsidiary of the Company; or

    (b)    an employee who is a party to one of the 14 executive severance agreements referred to in the Company's Disclosure Letter to the Merger Agreement.

1.8 <u>Merger</u> is the merger between International Paper Company or a subsidiary thereof and Champion International Corporation.

1.9 <u>Policy</u> is this <u>Champion International Corporation Reorganization Severance Policy #828.</u>

1.10 <u>Policy Period</u> is the period from the closing date of the Merger to and including its one-year anniversary.

1.11 <u>Release</u> is the Release and Waiver in a form acceptable to the Company.  An effective Release is one that has been executed and delivered and not revoked.

1.12 <u>Reorganization</u> consists of employment action(s) resulting in an Eligible Employee's Termination during the Policy Period.

1.13 <u>Retirement Plan</u> is the <u>Champion International Corporation Salaried Retirement Plan #001,</u> any other Company hourly pension plan and/or any other Company qualified or non-qualified retirement plan in which the Eligible Employee is a member.

1.14 <u>Terminated or Termination</u> is either:

    (a)    a termination by the Company of the employment of an Employee for any reason other than Cause, disability (subject to Section 6 hereof), or death, which Termination occurs within the Policy Period.  Subject to (b) below, it shall not be deemed a termination of employment if after the Merger the Employee is transferred to the employment of International Paper Company or a subsidiary thereof; or

    (b)    a termination during the Policy Period by an Employee of his or her employment under the following circumstances:

        (i)    during the Policy Period there is either a reduction in the Employee's Earnings or a relocation of an Employee's principal place of employment other than to the Borough of Manhattan in the City of New York, New York (if the Employee's principal place of employment immediately prior to the Policy Period is Stamford, Connecticut) or to any other location that is not more than thirty-five (35) miles by automobile from the location of the Employee's principal place of employment immediately prior to the Policy Period; provided that a relocation of an Employee's principal place of employment from a foreign assignment to the Employee's home location will not be deemed a Termination; and

(ii)    the Employee elects to terminate his or her employment upon not less than thirty (30) calendar days' advance written notice to the Company given within not more than thirty (30) calendar days after the earlier of either receipt by the Employee of written notice of such reduction or relocation, or the date on which the first payment of the reduced Earnings is received by the Employee or the date on which the relocation of the Employee's principal place of employment becomes effective.

## Section 2 Severance Benefits

An Eligible Employee shall be entitled to receive a severance benefit equal to the greater of an amount payable pursuant to any other severance or termination pay plan or arrangement of the Company (excluding retention pay letters) or the following:

(a)    ten (10) weeks' Earnings; plus

(b)    one (1) week's (or partial week's) Earnings for each year (or partial year) of Credited Service; plus

(c)    one (1) week's (or partial week's) Earnings for each year (or partial year) of Credited Service over fifteen (15) years.

The payment described in this paragraph shall not exceed 78 weeks' Earnings.

## Section 3 Pension Enhancement

If an Eligible Employee has attained age 49 as of the date of Termination and the Eligible Employee's age plus years of service equal at least 59, the Eligible Employee's pension benefit from the Retirement Plan shall be enhanced by crediting the Eligible Employee with the most beneficial combination of an additional six (6) years of age and/or service credit under the Retirement Plan for early or normal retirement. As part of such enhanced benefit the Eligible Employee shall be entitled to post retirement death benefits, life insurance and medical plan coverage.

## Section 4 COBRA

An Eligible Employee who elects COBRA coverage shall have the COBRA medical and dental premium payments waived until the earlier to occur of (i) the last day of the ninth month following Termination, or (ii) the date the Eligible Employee ceases to be eligible for COBRA coverage.

05/25/00 4:45 PM

Section 5 Form of Payment

(a)    Normal Form of Payment

The severance benefit will be paid according to the applicable pay schedule until the total amount of the severance benefit is received.

(b)    Optional Form of Payment

In lieu of the normal form of payment, at the Company's option and upon the Eligible Employee's request prior to the commencement of the severance benefit payments, the severance benefit may be paid in a lump sum payment.

Section 6 Disability

If an Eligible Employee who was an active employee of the Company on or after January 1, 1995 is receiving or claiming benefits pursuant to workers' compensation law(s), Social Security disability law(s) or a disability plan of the Company during the Policy Period, benefits pursuant to Section 2, Section 3 and Section 7 will not be paid unless and until the Eligible Employee is released by an independent medical examiner or other physician to return to such employee's regular job duties within the Policy Period.

Section 7 Miscellaneous Benefits

7.1    Vacation Pay

An Eligible Employee will receive a lump sum payment for banked vacation, earned but unused vacation and, if eligible to retire (under the provisions of Section 3 or otherwise), accrued vacation.

7.2    Retirement Plan or an Hourly Pension Plan Payout

An Eligible Employee not eligible to retire pursuant to the terms of the Retirement Plan who becomes a terminated vested participant pursuant to the Retirement Plan will receive in a lump sum the actuarial equivalent of such terminated participant's vested benefit determined under the Retirement Plan if such benefit has a present value of $5,000 or less.

7.3    Employee and Family Assistance Program (EAP)

An Eligible Employee will have EAP coverage extended for a maximum of five (5) visits provided that, if the Eligible Employee has not already commenced visits, the first visit occurs within the six-month period following such Eligible Employee's Termination.

05/25/00 4:45 PM

7.4     <u>Financial/Retirement Planning</u>

Financial or retirement planning assistance will be available to the Eligible Employee, as described in separate documents.

7.5     <u>Outplacement Assistance</u>

An Eligible Employee will be provided outplacement assistance in seeking new employment after Termination, as described in separate documents.

<u>Section 8 Release, Time of Payment</u>

(a)     Eligibility for benefits under the Policy are conditioned upon the Eligible Employee's execution and delivery and non-revocation of an effective Release.

(b)     Payments due pursuant to Section 2 of the Policy shall be paid following the later of the date the Eligible Employee delivers an effective Release or the Termination date, provided that payments made under Section 5(a) will be made on normal payroll dates and the lump sum payment under Section 5(b) will be made within eight (8) days.

<u>Section 9 Amendment and Termination</u>

The Company shall have the right to amend and/or terminate the Policy at any time for whatever reasons it may deem appropriate without prior notice, except that, for the one-year period immediately following the Merger, (a) the Policy shall not be terminated, and (b) no amendment will be effective if it would adversely affect the rights, expectancies, or benefits of any Eligible Employee provided by the Policy as in effect as of the closing of the Merger.

<u>Section 10 Administration and Interpretation</u>

The Administrator has the authority, responsibility and discretion to determine all questions of eligibility and status and has the right to interpret the provisions of the Policy. Any determination by the Administrator shall be final and conclusive.

<u>Section 11 Claims Procedure</u>

11.1    <u>Claims</u>

(a)     In the event that a benefit has not been paid under the Policy in whole or in part, the person claiming such payment may apply for payment either individually or through a representative by writing to the Director - Benefits Administration, Champion International Corporation, Knightsbridge Drive, Hamilton, Ohio 45020.

(b)     The claim will be reviewed within 30 days of the filing of the claim. If the claim is wholly or partially denied the person claiming payment will receive in writing:

    (i)      specific reasons for denial;

    (ii)     specific reference to Policy provision on which the denial is based;

    (iii)    description of additional information needed before the claim can be processed; and

    (iv)    list of steps to be taken if the denial of the claim is to be reviewed.

**11.2    Appeal**

If the claim has been denied (or if no response from Director - Benefits Administration is received within 30 days), the person claiming payment has the right to request a review of the denied claim, to review pertinent documents and to submit any comments in writing. The request for review of the denied claim shall be submitted to the Vice President - Employee Benefits at the address set forth in Section 12.1(a) within 60 days of receipt of the claim denial (or within 90 days of filing of the claim if no response from the Director of Benefits was received). The request for review of the denied claim will be considered and ruled upon within 30 days of the filing of such request.

**11.3    Limitation Period**

Any claim for payment or such other action under the Policy must be made as set forth in this Section 11 and must be made within one year after the occurrence of the event for which the claim is made. Failure to file the claim within such one-year period shall completely discharge the Policy and the Company of liability and shall bar any and all actions in connection with such claim for payment or other action.

**Section 12 General Policy Information**

**12.1    Policy Sponsor and Administrator**

(a)     The Company is the sponsor of the Policy. The Administrator is the Company. The Administrator can be reached at:

Vice President - Employee Benefits
Champion International Corporation
One Champion Plaza
Stamford, CT  06921

The telephone number is (203) 358-7056.

(b)    Policy documents are available for review at the local Human Resources Department.  Most day-to-day questions can be answered by the Human Resources representative.

12.2    Plan Identification

(a)    The official name of the Policy is the Champion International Corporation Reorganization Severance Policy #828.

(b)    The Employer Identification Number is        7390 and the Plan Number is #828.

12.3    Funding

Benefits are paid out of the Company's general assets with respect to the severance benefits and its retirement plans with respect to the pension enhancement.

12.4    Financial Records

The Policy's financial records are kept by the Administrator.

12.5    Agent for Service of Legal Process

Service of legal process in connection with this Policy shall be delivered to:

Senior Associate Counsel, Human Resources
Champion International Corporation
One Champion Plaza
Stamford, CT  06921

Service also may be made on the Administrator.

Section 13 ERISA Rights

13.1    Legal Rights and Protection

ERISA requires that an employee be informed of rights and protections as a plan participant (for ERISA purposes the Policy is considered a plan).

13.2    Examination of Documents

ERISA provides that each participant be entitled to examine on any business day during normal working hours all pertinent plan documents, contracts, collective bargaining agreements and copies of all documents filed for the plan with the United States Department of Labor.  These documents can be examined and/or obtained without charge at the local Human Resources Department or at the Corporate Benefits Department located at One Champion Plaza, Stamford, Connecticut, 06921 or by writing to the Vice President - Employee Benefits at the same address.

13.3    Fiduciaries

- 8 -

Exhibit 3

# QUESTIONS AND ANSWERS:
# CHAMPION INTERNATIONAL CORPORATION
# MERGER WITH INTERNATIONAL PAPER
# COMPANY, REORGANIZATION SEVERANCE
# POLICY #828

# Champion International Corporation
# Merger with International Paper Company

## Reorganization Severance Policy #828

## Questions and Answers

The following questions and answers are directed to non-represented salaried and hourly Champion employees affected by the merger between Champion and International Paper. These employees will be covered under the Reorganization Severance Policy #828.

The answers are based on the official legal documents that are available for review. If there are disagreements between these answers and the legal documents, the legal documents always govern.

05/25/00 5:26 PM

IPD300262

1

# Reorganization Severance Policy #828
## Questions / Answers

**Question:**     Who is eligible for severance?

**Answer:**     Under the established Reorganization Severance Policy #828, in conjunction with the International Paper/Champion merger, all non-represented salaried and hourly Champion employees are eligible for severance benefits as the result of one of the following:
- termination (without cause) of employment within one year from the closing date of the merger
- a reduction in earnings
- relocation of the principal place of employment to any other location more than 35 miles away (other than to Manhattan from Stamford)

Excluded from this policy are employees of foreign subsidiaries of the company and employees who are party to a specific executive severance agreement disclosed in the merger agreement.

**Question:**     Can I volunteer to take the severance?

**Answer:**     No. However, if your principal work location is changed or your salary/hourly base rate is reduced, you have the right to terminate your employment by giving written notice to the company within 30 calendar days after you receive notice of relocation or reduction in your base rate.

**Question:**     How long will this severance policy last?

**Answer:**     The policy period will last for one year from the actual closing date of the merger to and including its one-year anniversary.

**Question:**     How will I know if I have a job with International Paper?

**Answer:**     An Integration Team has been formed to review all areas of the new company as part of the reorganization process. Job re-assignments and job eliminations will occur as part of this process. Affected employees will be notified as soon as possible of any such changes.

IPD300263

2

**Question:**    **What is the severance benefit?**

**Answer:**    Eligible employees will be entitled to an amount equal to:
- ten weeks' earnings; plus
- one week's (or partial week's) earnings for each year (or partial year) of credited service; plus
- one week's (or partial week's) earnings for each year (or partial year) of credited service over fifteen years

The maximum payment is 78 weeks' earnings.


**Question:**    **How will severance be paid?**

**Answer:**    Severance will be paid on the normal payroll dates. As an alternative, before the severance begins, you can choose to receive a lump sum payment. You will not be considered an active employee for any reason while severance payments are being made.


**Question:**    **Is there a pension enhancement, what is it, and who qualifies to receive it?**

**Answer:**    There is a pension enhancement that will allow eligible employees who are age 49 or older, <u>and</u> whose age plus years of service equal 59 or greater, to receive an enhanced retirement benefit. The pension enhancement is referred to as "Flex 6".


**Question:**    **What is "Flex 6?"**

**Answer:**    "Flex 6" refers to the calculation for the pension enhancement. An eligible employee's pension benefit from the retirement plan can be enhanced by giving the employee the most beneficial combination of additional years of age and/or service that equals six. With this credit, the employee can receive a greater retirement benefit. Examples of how this would work will be made available, and your individual calculation will be provided to you (if you are eligible) as part of the communications process.

IPD300264

**Question:**  How are years of credited service determined?

**Answer:**  Years of service under this policy is based on the total employment time, but not including years of service that have been taken into account for a prior severance payment, with Champion plus any service with International Paper from the closing date of the merger to the employee's termination date.

**Question:**  Do I have to sign a waiver to receive the severance benefits?

**Answer:**  Yes. While signing the "General Release and Waiver" is completely your decision, you must sign a waiver to receive severance benefits.

**Question:**  I am under age 55, but eligible for the "Flex 6". Will I also be eligible for retiree medical coverage?

**Answer:**  Yes, provided you meet the minimum age of 55 and service of 10 years after application of "Flex 6". But you can also qualify for nine months of COBRA coverage (medical and dental) paid by the company as part of the severance plan, before you elect retiree medical coverage.

**Question:**  I am not eligible for retiree medical coverage. Will COBRA coverage be available?

**Answer:**  If you are eligible for the severance benefit and you sign a waiver, your COBRA coverage (medical and dental) will be paid by the company for up to nine months. You can elect to continue coverage at your own expense for up to nine additional months. This coverage is subject to all COBRA terms and conditions.

**Question:**  I am not eligible to retire, the Flex 6 provision does not apply to me, and I have more than 5 but less than 10 years' service. If my employment is terminated during the policy period, what will my status be relative to retirement benefits?

**Answer:**  You will be considered a terminated vested employee and will be eligible for a retirement benefit when you reach age 65. Employees who have 10 or more years of vested service prior to termination can elect to begin receiving a reduced retirement benefit as early as age 55.

IPD300265

4

**Question:** If I am out of work on workers' compensation, temporary or long term disability when the closing takes place for the merger, will I receive severance benefits if I otherwise qualify?

**Answer:** If you were an active employee on or after January 1, 1995, and are released to return to your regular job duties under the provisions of the disability plan(s) within the policy period, and you otherwise are eligible for severance benefits, those benefits will be available to you.

**Question:** If I am terminated, will I be eligible for Unemployment Compensation?

**Answer:** The decision for Unemployment Compensation rests solely with the state where you are employed.

**Question:** If I am using the Educational Reimbursement program at the time of the closing of the merger, will I still be eligible for reimbursement?

**Answer:** If you are attending an approved course or approved program at the time of the closing of the merger, you will be reimbursed for expenses incurred during that school term, even if your employment terminates prior to the completion of the school term. Any outstanding reimbursement loan will remain in effect until the end of that school term, as well, and repayment made through the regular procedures.

**Question:** If my employment is terminated under this policy, will I still be eligible to receive my vacation pay for that year?

**Answer:** You will receive a lump sum payment for banked vacation, earned but unused vacation and, if eligible to retire, accrued vacation.

**Question:** If I am eligible for early retirement due to the "Flex-6" provision, will I also be eligible for accrued vacation if my employment is terminated?

**Answer:** Yes.

IPD 300266

5

**Question:**    **What other benefits are included with this policy?**

Answer:    Eligible employees will have EAP coverage extended for a maximum of five visits provided the first visit occurs within six months after termination. Financial education or counseling will be available in various forms depending on your location and the eligible employee's particular needs. Outplacement assistance will be provided to eligible employees seeking new employment. Further information will be provided as soon as practicable.

IPD300267

Exhibit 4

# FEBRUARY 16, 2001 CLAIM LETTERS FROM SCOTT DALESANDRO AND DIANE NOONAN

Scott D. Dalesandro
3465 Lakebrook Court
Hamilton, Ohio 45011
S.S.#:      5845
Phone: (513) 894-8436

February 16, 2001

**RECEIVED**
FEB 1 9 2001
**LEGAL DEPT. HR**

Joyce Marguiliese
Senior Council - IP Employee Relations
6400 Poplar Street
Memphis, TN 38101

Dear Attorney Marguiliese:

This is a claim for payment for benefits extended to terminated employees as stated in Champion International Corporation Reorganization Severance Policy #828.  (Summary Plan Description is attached).

In June 2000, Champion International and International Paper merged.  As a result of the merger, I became an employee of International Paper at the Hamilton B Street Complex in Hamilton, Ohio. On February 10, 2001, I was terminated by International Paper without cause.

I am sending this letter for immediate payment of the severance benefits granted under the <u>Summary Plan Description</u> of the <u>Champion International Corporation Reorganization Severance Policy #828 Documentation</u>.  The policy provides certain severance and other benefits extended to Eligible employees whose employment is Terminated during the policy period as a result of Reorganization.

I am a "non-represented regular salaried employee of the Company", (See Section 1.7) and I was terminated without cause as listed in Section 1.2

Based upon the foregoing, I am filing the following claims:

- I am requesting payment for ten (10) weeks regular earnings plus three (3) weeks earnings for each year of Credited Service. This is a total thirteen (13)  weeks earnings at my weekly rate of $1,423.08.  (Section 2)
- I am requesting payment of continuation of medical and dental benefits under COBRA for the period until I am no longer Cobra eligible not to exceed nine (9) months.  (Section 4)
- I am requesting payment in lump sum in lieu of normal payment (Section 5b)
- I am requesting three (3) weeks earned but unused vacation resulting from year 2000. (Section 7.1)
- I am willing to execute and deliver a non-revocable waiver and effective release.  (Section 8)

IPD300093

This comes to a total equal to sixteen (16) weeks of pay at a rate of $1,423.08 weekly or $22,769.28 not including extended COBRA payments.

Please notify me in writing immediately as to 1) when the above benefits will be paid; 2) the specific reasons why any payment of any benefit is denied; and 3) when and before whom will I be given the opportunity for a full and fair review by the Plan's fiduciary.

If I do not receive a response in writing within ten (10) day of the date of this letter, I will assume the company does not intend to pay those benefits, or to provide any reasons for the denial of the same, or to provide any opportunity for a review of the same.

Sincerely,

Scott D. Dalesandro

cc:    Mark Lehman
       Director - Benefits
       Champion International
       Knightsbridge Drive
       Hamilton, Ohio 45020

Enclosed:

- Summary Plan Description - Champion International Corporation Reorganization Severance Policy #828
- Termination Letter from International Paper

IPD300094

Diane J. Noonan
260 South Washington Blvd.
Hamilton, Ohio 45013
S.S.#:          8181
Phone: (513) 868-9219

February 16, 2001

Joyce Marguiliese
Senior Council - IP Employee Relations
6400 Poplar Street
Memphis, TN 38101

Dear Attorney Marguiliese:

This is a claim for payment for benefits extended to terminated employees as stated in Champion
International Corporation Reorganization Severance Policy #828.  (Summary Plan Description is
attached).

In June 2000, Champion International and International Paper merged.  As a result of the merger,
I became an employee of International Paper at the Hamilton B Street Complex in Hamilton, Ohio.
On February 10, 2001, I was terminated by International Paper without cause.

I am sending this letter for immediate payment of the severance benefits granted under the Summary
Plan Description of the Champion International Corporation Reorganization Severance Policy #828
Documentation.  The policy provides certain severance and other benefits extended to Eligible
employees whose employment is Terminated during the policy period as a result of Reorganization.

I am a "non-represented regular salaried employee of the Company", (See Section 1.7) and I was
terminated without cause as listed in Section 1.2

Based upon the foregoing, I am filing the following claims:

- I am requesting payment for ten (10) weeks regular earnings plus twenty (20) weeks earnings
  for each year of Credited Service plus five (5) weeks earnings for each year of Credited
  Service over fifteen (15) years. This is a total twenty-five (25)  weeks earnings at my weekly
  rate of $892.00.  (Section 2)
- I am requesting payment of continuation of medical and dental benefits under COBRA for
  the period until I am no longer Cobra eligible not to exceed nine (9) months.  (Section 4)
- I am requesting payment in lump sum in lieu of normal payment (Section 5b)
- I am requesting five (5) weeks earned but unused vacation resulting from year 2000.
  (Section 7.1)
- I am willing to execute and deliver a non-revocable waiver and effective release.  (Section

IPD300100

This comes to a total equal to forty (40) weeks of pay at a rate of $892.00 weekly or $35,692.00 not including extended COBRA payments.

Please notify me in writing immediately as to 1) when the above benefits will be paid; 2) the specific reasons why any payment of any benefit is denied; and 3) when and before whom will I be given the opportunity for a full and fair review by the Plan's fiduciary.

If I do not receive a response in writing within ten (10) day of the date of this letter, I will assume the company does not intend to pay those benefits, or to provide any reasons for the denial of the same, or to provide any opportunity for a review of the same.

Sincerely,

Diane J. Noonan

cc:     Mark Lehman
        Director - Benefits
        Champion International
        Knightsbridge Drive
        Hamilton, Ohio 45020

Enclosed:

- Summary Plan Description - Champion International Corporation Reorganization Severance Policy #828
- Termination Letter from International Paper

IPD300101

Exhibit 5

# LIST OF CLAIM LETTERS SENT BY OTHER INTERNATIONAL PAPER EMPLOYEES

## EMPLOYEES' CLAIMS FOR VACATION PAY
## FOUND IN THE ADMINISTRATIVE RECORD
## LISTED BY BATES #

| Bates # | Employee Name |
|---|---|
| IPD300093-94 | Dalesandro, Scott |
| IPD300095-96 | Dempsey, Janet |
| IPD300097 | Hobbs, Jennifer |
| IPD30009-99 | Keating, Joseph |
| IPD3001-00-101 | Noonan, Diane |
| IPD300102-103 | Theobald, Donna |
| IPD300104 | Smith, Julie |
| IPD300361-62 | Adams, Dennis |
| IPD300368-69 | Ahner, Richard |
| IPD300374-75 | Allen, Mike |
| IPD300377-78 | Allen, Sharon |
| IPD300380-81 | Anderson, Wes |
| IPD300383 | Androski, Bret |
| IPD300387-88 | Angst, Andrea |
| IPD300399-400 | Betz, Jeff |
| IPD300403-04 | Bieker, David |
| IPD300407-408 | Bokeno, Thomas |
| IPD300410-11 | Bowling, Mary |
| IPD300413-14 | Brandenburg, Arch |
| IPD300416-17 | Brisebois, David |
| IPD300420 | Brockman-Jester, Deborah |
| IPD300421-22 | Brockway, Anita |
| IPD300424 | Bruce, Raleigh |
| IPD300431 | Bryant, Joel |
| IPD300434 | Buchanan, Bob |
| IPD300436-37 | Bunn, Cheryl |
| IPD300440-442 | Burns, Brenda |
| IPD300447-48 | Cagle, Russel |
| IPD300449 | Campbell, Donald |
| IPD300451 | Carpenter., Susan |
| IPD300454 | Cathers, Carla |
| IPD300462-63 | Croucher |
| IPD300474-75 | Dixon, Terrence |
| IPD300476 | Dunn, Richard |
| IPD300477 | Elliott, Gary |
| IPD300479-80 | Etter, Nancy |
| IPD300482-483 | Fasse, Brett |
| IPD300485-86 | Fields, Theresa |
| IPD300488-89 | Forsythe, Martin |
| IPD300491 | Geist, Garth |
| IPD300493 | Getz, Walter |

| | |
|---|---|
| IPD300496-96 | Glaab, Michael |
| IPD300499-500 | Grantz, James |
| IPD300506-07 | Hardesty, Kenneth |
| IPD300513-14 | Hendershoot, Waymond |
| IPD300516-17 | Hensley, Jewel |
| IPD300523 | Hofferberth, Todd |
| IPD300524 | Hofferberth, Todd |
| IPD300525-56 | Ivey, Richard |
| IPD300530 | Jester, Ralph |
| IPD300536-38 | Jones, Thomas |
| IPD300541-42 | Kaup, Kenneth |
| IPD300546-47 | Kidd, Pam |
| IPD300548-49 | Knobeloch Plenz, Sandy |
| IPD300551 | Lacey, Deborah |
| IPD300553 | Laslo, Christina |
| IPD300558 | Lopane, Michael |
| IPD300560 | Loudon, Mary |
| IPD300565 | Marcus, Curtis |
| IPD300571-72 | Martin, Jeffrey |
| IPD300574 | McAlpin, Thomas |
| IPD300579-81 | Meyer, Michael |
| IPD300584-85 | Miller, Adam |
| IPD300591-92 | Murray, Alexis |
| IPD300593-94 | Neumann, Joanne |
| IPD300598-99 | Peace, June |
| IPD300602-03 | Peacock, Gary |
| IPD300608-09 | Philley, James |
| IPD300614-15 | Ramsey, Henry |
| IPD300618-19 | Reiff, Faye |
| IPD300624-25 | Rice, John |
| IPD300630-31 | Rose, Debra |
| IPD300649-50 | Santamaria, John |
| IPD300654 | Schindler, Lawrence |
| IPD300656 | Sicking, Brian |
| IPD300657-59 | Sloneker, Suzanne |
| IPD300662 | Smith, Julie |
| IPD300666 | Sowders, Hope |
| IPD300669 | Spears, Karen |
| IPD300674 | Stanifer, Charles |
| IPD300676 | St. Pierre, Felix |
| IPD300678-79 | Taylor, James |
| IPD300686 | Thomas, Manoj |
| IPD300689 | Truster, Jonathon |
| IPD300697-98 | Von Bargen, Charles |
| IPD300701-02 | Weiser, Thomas |
| IPD300706 | Welks, Dawn |

| | |
|---|---|
| IPD300709 | Wilburn, Renee |
| IPD300711 | Wilhelm, Patricia |
| IPD300716-17 | Wocher, C. Thomas |
| IPD300719-20 | Wulker, David |
| IPD300729-30 | Yiznitsky, Kenneth |
| IPD300731-32 | Young, Christian |
| IPD300734-35 | Zeek, Daniel |

Exhibit 6

# MARCH 12, 2001 DETERMINATION OF ADMINISTRATOR, ROBERT FLORIO

## DETERMINATION OF ADMINISTRATOR

### Sale of Hamilton B Street Mill

Robert Florio, acting as Administrator of Champion International Corporation Reorganization Severance Policy #828, makes the following determination. This determination is made under the authority of the Administrator to "determine all questions of eligibility" and "to interpret the provisions of the Policy" as provided in Section 10 of Champion International Corporation Reorganization Severance Policy #828 ("Policy 828").

### Background

International Paper Corporation ("IP") has entered into a contract for the sale of the Hamilton B Street mill (the "Mill"). The Mill was a facility of Champion International Corporation ("Champion") which has been merged into IP.

The contract for sale of the Mill provides that the buyer, Smart Papers, LLC (the "Buyer") will make offers of employment to certain of the current employees at the Mill. Other employees at the Mill will not be offered employment by the Buyer.

IP has requested that the Administrator determine the application of Policy 828 to employees of the Mill in connection with the sale. This request was made to allow communication with employees as to their benefits under Policy 828.

The Administrator understands that IP has communicated with employees about the potential application of Policy 828. These statements were made prior to the appointment of the Administrator. Therefore, the Administrator is making this determination without regard to the prior statements made to employees of the Mill, although the Administrator believes that the determination is consistent with the prior communications.

### Considerations

The Administrator has evaluated the terms of Policy 828 and the underlying rationale for Policy 828. The Administrator has also consulted with counsel about the interpretation of Policy 828 as applied to the sale of the Mill.

The stated purpose of Policy 828 is to provide severance and other benefits to employees whose "employment is Terminated as a result of Reorganization". Policy 828, Section 2. Under Policy 828, "Reorganization" has a specific definition as follows.

"Reorganization consists of employment action(s) resulting in an Eligible Employee's Termination during the Policy Period". Policy 828, SPD Section 1.12.

IPD300271

For a "Reorganization" to occur that triggers the application of Policy 828, there are two elements. First, the employee must suffer an "employment action". Second, there must be a Termination.

The phrase, "employment action", is not defined in Policy 828. Therefore, the term must be interpreted in light of the purposes of Policy 828 and ordinary usage. In ordinary usage, "employment action" carries the connotation of an action by an employer that has an adverse effect on an employee. If the employee is able to continue in the same position under the same working conditions, there is no adverse effect on the employee. This interpretation of the term is consistent with the purpose of Policy 828 to protect employees who are adversely affected by a change in their employment.

The second element is a "Termination" must occur. It is clear that Policy 828 was not intended to cover every situation in which an employee ceases to work for the Company after the Merger. The definition of "Termination" requires a "termination by the Company of the employment of an Employee". Policy 828, SPD Section 1.14(a). The definition also includes an example of how Policy 828 is to be interpreted. The SPD notes that a transfer to another subsidiary of International Paper Company is not a Termination (unless it involves a relocation of the principal place of employment). Policy 828, SPD Section 1.14(a).

The Administrator notes that the definitions of Reorganization and Termination are only in a summary plan description. A summary plan description may not contain all of the terms of a plan. As with any summary plan description, there may be a need to interpret the plan on matters that are not specifically dealt with in the plan or summary plan description. The sale of the Mill with an offer of continued employment from the buyer is a matter that is not specifically dealt with in Policy 828 or the SPD. Therefore it is an appropriate subject of interpretation by the Administrator.

Determination

Based on this analysis, the Administrator makes the following determinations with respect to Policy 828 as it applies to the sale of the Mill:

1.      The sale of the Mill is an event that may trigger the application of Policy 828 to employees at the Mill.

2.      If an employee at the Mill does not receive an offer of continued employment from the Buyer, the employee will be entitled to benefits under Policy 828.

3.      If an employee at the Mill receives an offer of continued employment from the Buyer at the same or higher salary as previously paid by Champion and accepts the offer, there is not an "employment action" with respect to the employee. Therefore, the employee will not be eligible for benefits under Policy 828.

IPD300272

4.      If an employee receives an offer of employment as described in paragraph 3 and the employee chooses not to accept the offer of employment from the Buyer, the termination of employment would be a voluntary termination by the employee for purposes of Policy 828. The employee is not entitled to severance after a voluntary termination (except in limited circumstances not applicable to this situation). Therefore, the employee will not be eligible for benefits under Policy 828.

5.      If an employee at the Mill receives an offer of continued employment from the Buyer at a lower salary than previously paid by Champion or which requires relocation (based on a thirty-five mile standard), the employee will be eligible for benefits under Policy 828 if the employee does not accept the job with the Buyer.

Dated:  March 12, 2001

Robert Florio
Administrator of the Champion
International Corporation
Reorganization Severance Policy #828

\\TAX\81897.2

IPD300273

3

Exhibit 7

# APRIL 19, 2001 AFFIDAVIT OF ROBERT FLORIO

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SCOTT D. DALESANDRO and DIANE    :
NOONAN, on behalf of themselves and others,   :
                       :
    Plaintiffs,            :
                       :     Case No. C-1-01 109
    vs.              :
                       :     Judge Sandra S. Beckwith
INTERNATIONAL PAPER COMPANY,    :
                       :
    Defendant.         :

## AFFIDAVIT OF ROBERT FLORIO

1. My name is Robert Florio and I am employed by International Paper Company ("IP"), the Defendant in this matter, as Director, Employee Benefits. As Director, Employee Benefits, I am responsible for overseeing the Company's various employee benefit plans, including plan design, plan interpretation, and compliance with certain company employee benefit plans.

2. In connection with my duties as Director, Employee Benefits, I have been delegated certain administrative authority under the Champion International Corporation Reorganization Severance Policy #828 (the "Plan") (attached as Exhibit 1 to the Complaint), which was adopted by Champion International Corporation ("Champion") and assumed by IP following its merger with Champion on June 20, 2000. This authority was delegated to me on February 21, 2001, pursuant to a formal resolution signed by the Vice President, Corporate Secretary of IP.

3. As provided by the Plan and IP's delegation, I have full and complete "authority, responsibility and discretion to determine all questions of eligibility and status" and "the right to interpret the provisions" of the Plan on the initial review of all claims under Section 11.1 of the Plan (similar to Champion's Director – Benefits Administration before the merger). In the event that any claims are denied (which has not occurred), IP will delegate full and complete authority



for any appeals under Section 11.2 of the Plan to a separate appeals authority (similar to Champion's Vice President – Employee Benefits before the merger).

4.  As provided in the Plan, all claims under the Plan must be made as set forth in Section 11 of the Plan, which, therefore, requires all such claims to be first reviewed and determined by me and then, if denied, reviewed and determined by the separate appeals authority.

5.  By letters dated February 16, 2001, Plaintiffs submitted claims for benefits under the Plan claiming that they were terminated under the Plan as a result of IP's February 9, 2001 sale of the Hamilton B Street Mill (the "Hamilton Mill") to Smart Papers LLC.  These claims have been forwarded to me for my review.

6.  On March 16, 2001, I wrote to Plaintiffs notifying them of my receipt and initial review of their claims, and informing them that I had not yet made a determination and that their claims had not been denied or approved.  In accordance with Section 11.2 of the Plan, I anticipate that I will have made a decision within 90 days of the filing of their claims and, in the event that I deny them, the appeals authority will then receive and exercise full authority on an appeal, if any.

7.  As part of my review of Plaintiffs' claims and any other claims under the Plan, I have engaged the independent outside counsel of the law firm of Porter Wright Morris & Arthur LLP in Columbus, Ohio.

8.  It has come to my attention that a member of IP's legal department drafted a "Questions and Answers" document that was distributed to Plan participants before the sale of the Hamilton Mill in an effort to address certain hypothetical questions on Plan benefits.  This memorandum was not drafted by me or anyone who may serve as the separate appeals authority, nor does it indicate any conclusion by me or the appeals authority as to the merits of any claim under Section 11 of the Plan.  IP's legal department will provide no legal counsel to me or the appeals

authority in any review of claims under the Plan, and all determinations under the Plan will be made independent of any opinion that may have been expressed by IP's legal department in the "Questions and Answers" document.

9.   As described above, I am in the process of reviewing relevant claims under the Plan, including those of Plaintiffs, and will decide each claim based on Plan language and the relevant facts concerning the employment of each claimant.   These facts may include: 1) facts about employment offers from Smart Papers, 2) relative positions and pay, 3) current employment status, and 4) other pertinent facts, if any, presented by the claimant.

10. The fact that Plan benefits have not been paid to certain Plan participants as of the date of this affidavit does not serve as a determination under Section 11 of the Plan.

11. I, Robert Florio, swear under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing statement is true and correct and is made on the basis of my personal knowledge.


_____                    DATE:  _4/19/01_
ROBERT FLORIO


STATE OF _Tennessee_

COUNTY OF _Shelby_

Personally appeared the above-named Robert Florio who swore that the execution of this document is his own free act and deed this _19th_ day of April, 2001.


_____
Notary Public

My commission expires: _March 1 2002_

3

Exhibit 8

# MAY 2001 LETTERS FROM FLORIO TO DALESANDRO AND NOONAN DENYING CLAIMS FOR BENEFITS UNDER POLICY #828

# INTERNATIONAL (A) PAPER

May 15, 2001

Mr. Scott D. Dalesandro
3465 Lakebrook Court
Hamilton, OH 45011

Re:    Claim under Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Dalesandro:

I have received and reviewed your claim for benefits under Champion International Corporation's Reorganization Severance Policy #828 (the "Policy" or the "Plan").

Section 10 of the Policy gives the Plan's Administrator authority, responsibility, and discretion to interpret the Policy and to determine all questions of eligibility and status. I have reviewed the details of the sale of the Hamilton B Street Mill to Smart Papers, LLC. I have also been advised that you were offered and accepted a position to continue employment at the Hamilton Mill at the same or higher salary. Based on these and other facts, I have made the following determination on the application of the Policy to your claim.

The stated purpose of the Policy is to provide severance and other benefits to employees whose "employment is Terminated as a result of Reorganization." (Policy 828, Section 2). "Reorganization" and "Termination" are defined terms under the Plan. A Reorganization consists of "employment action(s) resulting in an Eligible Employee's Termination during the Policy Period." While the phrase "employment action" is not expressly defined in the Policy, read in context the term connotes an action by an employer having the specific adverse effect of terminating the employee's employment. Employees who are able to continue their employment at substantially the same salary suffer no such adverse action and, accordingly, neither the plain language nor the purpose of Policy 828 provides for payment of severance benefits to such employees.

The Plan's definition of "Termination" also demonstrates an intent to exclude employees who retain their employment following a merger or asset sale. Subpart (a), which applies to terminations by the Company, provides that "it shall not be deemed a termination of employment if after the Merger the Employee is transferred to the employment of International Paper Company or a subsidiary thereof..." (SPD Section 1.14 (a)). While the Plan does not address subsequent corporate transactions during the policy period, by expressly excluding employees who obtained employment with International Paper as a result of the merger that gave rise to the creation of the Plan, the summary plan description shows that the Plan's purpose is to compensate employees for an expected period of unemployment or other adverse employment consequence, not to provide benefits to employees suffering only a change in the identity of their employer but no loss of continued employment.

IPD300106

Other Plan provisions lead to this conclusion as well. As part of the sale of the business as a "going concern," a substantial majority of non-union employees were offered (and almost all accepted) employment with Smart Papers. Yet the Plan provides Outplacement Assistance benefits to covered employees. Employees accepting continued employment in full-time positions at the Hamilton Mill, however, have no need for such services. (SPD, Section 7.5). The Plan also provides for continued Employee and Family Assistance Program coverage for covered employees, presumably to help such employees cope with the stress of unemployment. Of course, employees who suffer no loss in continued employment are unlikely to require such assistance.

Additionally, the Plan provides for a lump-sum payment for banked, earned, and accrued vacation. (SPD, Section 7.1). When Smart Papers purchased the Hamilton Mill as a "going concern," however, the purchase agreement required Smart Papers to honor earned and accrued vacation for employees it retained following the sale. Providing benefits under Policy 828 to such employees would thus result in a windfall payment inconsistent with the Plan's purpose to provide benefits only to the extent of loss of continued employment at the Mill. Finally, the Plan provides for financial and retirement planning assistance, which International Paper and Champion have generally only provided to employees suffering loss of continued employment.

For all the reasons discussed above, because you received and accepted an employment offer from Smart Papers to continue working at the same or higher salary, you are not entitled to receive benefits under Policy 828. This conclusion is consistent with the past practices of both Champion International and International Paper in not providing severance benefits under the circumstances presented by your claim.

The Policy provides you with the right to request a review of this denied claim, to review pertinent documents and to submit any comments in writing. Any request must be submitted within 60 days of your receipt of this letter to:

> Paul Karre
> Vice President, Human Resources
> International Paper
> 6400 Poplar Ave.
> Memphis, TN 38197

Sincerely,

Robert Florio
Director, Employee Benefits

IPD300107



**INTERNATIONAL PAPER**

May 18, 2001

Ms. Diane J Noonan
260 South Washinton Blvd
Hamilton, OH 45013

Re: Claim under Champion International Corporation Reorganization Severance Policy #828

Dear Ms. Noonan:

I have received and reviewed your claim for benefits under Champion International Corporation's Reorganization Severance Policy #828 (the "Policy" or the "Plan").

Section 10 of the Policy gives the Plan's Administrator authority, responsibility, and discretion to interpret the Policy and to determine all questions of eligibility and status. I have reviewed the details of the sale of the Hamilton B Street Mill to Smart Papers, LLC. I have also been advised that you were offered and accepted a position to continue employment at the Hamilton Mill at the same or higher salary. Based on these and other facts, I have made the following determination on the application of the Policy to your claim.

The stated purpose of the Policy is to provide severance and other benefits to employees whose "employment is Terminated as a result of Reorganization." (Policy 828, Section 2). "Reorganization" and "Termination" are defined terms under the Plan. A Reorganization consists of "employment action(s) resulting in an Eligible Employee's Termination during the Policy Period." While the phrase "employment action" is not expressly defined in the Policy, read in context the term connotes an action by an employer having the specific adverse effect of terminating the employee's employment. Employees who are able to continue their employment at substantially the same salary suffer no such adverse action and, accordingly, neither the plain language nor the purpose of Policy 828 provides for payment of severance benefits to such employees.

The Plan's definition of "Termination" also demonstrates an intent to exclude employees who retain their employment following a merger or asset sale. Subpart (a), which applies to terminations by the Company, provides that "it shall not be deemed a termination of employment if after the Merger the Employee is transferred to the employment of International Paper Company or a subsidiary thereof..." (SPD Section 1.14 (a)). While the Plan does not address subsequent corporate transactions during the policy period, by expressly excluding employees who obtained employment with International Paper as a result of the merger that gave rise to the creation of the Plan, the summary plan description shows that the Plan's purpose is to compensate employees for an expected period of unemployment or other adverse employment consequence, not to provide benefits to employees suffering only a change in the identity of their employer but no loss of continued employment.

IPD301395

Other Plan provisions lead to this conclusion as well. As part of the sale of the business as a "going concern," a substantial majority of non-union employees were offered (and almost all accepted) employment with Smart Papers. Yet the Plan provides Outplacement Assistance benefits to covered employees. Employees accepting continued employment in full-time positions at the Hamilton Mill, however, have no need for such services. (SPD, Section 7.5). The Plan also provides for continued Employee and Family Assistance Program coverage for covered employees, presumably to help such employees cope with the stress of unemployment. Of course, employees who suffer no loss in continued employment are unlikely to require such assistance.

Additionally, the Plan provides for a lump-sum payment for banked, earned, and accrued vacation. (SPD, Section 7.1). When Smart Papers purchased the Hamilton Mill as a "going concern," however, the purchase agreement required Smart Papers to honor earned and accrued vacation for employees it retained following the sale. Providing benefits under Policy 828 to such employees would thus result in a windfall payment inconsistent with the Plan's purpose to provide benefits only to the extent of loss of continued employment at the Mill. Finally, the Plan provides for financial and retirement planning assistance, which International Paper and Champion have generally only provided to employees suffering loss of continued employment.

For all the reasons discussed above, because you received and accepted an employment offer from Smart Papers to continue working at the same or higher salary, you are not entitled to receive benefits under Policy 828. This conclusion is consistent with the past practices of both Champion International and International Paper in not providing severance benefits under the circumstances presented by your claim.

The Policy provides you with the right to request a review of this denied claim, to review pertinent documents and to submit any comments in writing. Any request must be submitted within 60 days of your receipt of this letter to:

>Paul Karre
>Vice President, Human Resources
>International Paper
>6400 Poplar Ave.
>Memphis, TN  38197

Sincerely,


Robert Florio
Director, Employee Benefits

IPD301396