EXHIBIT 1

# CHAMPION INTERNATIONAL CORPORATION

# REORGANIZATION SEVERANCE POLICY #828

1. **Adoption of the Policy.** Champion International Corporation ("Company", as further defined in Section 1.3) hereby adopts the Champion International Corporation Reorganization Severance Policy #828 ("Policy"). The Policy, effective as of the closing date of the Merger, consists of this document and the attached Summary Plan Description (and any amendments thereto) of the Policy, the provisions of which are made a part hereof and incorporated herein by reference.

2. **Purpose of the Policy.** The purpose of the Policy is to provide certain severance and other benefits to employees of the Company whose employment is Terminated as a result of Reorganization. The Policy is an employee benefit plan under Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

3. **Amendment and Termination.** The Company shall have the right to amend and/or terminate the Policy at any time for whatever reasons it may deem appropriate without prior notice, except that, (1) the Pension Enhancement described in Paragraph 3, may not be extended beyond one year and (2) for the one-year period immediately following the Merger, (a) the Policy shall not be terminated, and (b) no amendment will be effective if it would adversely affect the rights, expectancies, or benefits of any Eligible Employee provided by the Policy as in effect as of the closing date of the Merger.

4. **Severability of Provisions.** If any provision of the Policy should be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions of the Policy, and the Policy shall be construed and enforced as if such provision had not been included.

5. **Applicable Laws.** The Policy shall be construed, administered and governed in all respects under and by the laws of the State of Connecticut, except where such laws are preempted by applicable federal legislation.

**IN WITNESS WHEREOF**, the authorized delegate of the Pension and Employee Benefits Committee of Champion International Corporation, on behalf of said Committee, has executed the Policy by signing this document as evidence of its adoption.

Approved: May 26, 2000

*/s/ Paul B. Records*

Paul B. Records

IPD300004

## SUMMARY PLAN DESCRIPTION

## CHAMPION INTERNATIONAL CORPORATION

## REORGANIZATION SEVERANCE POLICY #828

The Policy sets forth certain benefits extended to Eligible Employees whose employment is Terminated during the Policy Period as a result of Reorganization.

### Section 1 Definitions

1.1 **Administrator** is the Company.

1.2 **Cause** is deliberate unacceptable performance of duties, deliberate unsatisfactory performance (Employee refuses to improve unsatisfactory performance), excessive absenteeism, violation of rules, gross negligence, dishonesty, acts in bad faith, fraud and/or insubordination.

1.3 **Company** is Champion International Corporation prior to the Merger (including its United States subsidiaries), and after the Merger **Company** is the corporation that survives the Merger.

1.4 **Credited Service** is an Eligible Employee's period of employment with the Company to and including the date of Termination, but not including years of service that have been taken into account for a prior severance payment from the Company.

1.5 **Earnings** is:

  (a) for a salaried employee, the greater of the annual base salary at the commencement of the Policy Period or the highest annual base salary at any time during the Policy Period; a week's Earnings is determined by dividing such annual base salary by 52;

  (b) for a non-represented hourly employee, the greater of the hourly base rate at the commencement of the Policy Period or the highest hourly base rate at any time during the Policy Period; one week's Earnings is determined by multiplying such hourly base rate by 40.

1.6 **Eligible Employee** is an Employee who is Terminated and who has executed and delivered an effective Release.

1.7 <u>Employee</u> is any non-represented regular or part-time regular salaried or hourly employee of the Company and its domestic subsidiaries except:

  (a) an employee of a foreign subsidiary of the Company; or

  (b) an employee who is a party to one of the 14 executive severance agreements referred to in the Company's Disclosure Letter to the Merger Agreement.

1.8 <u>Merger</u> is the merger between International Paper Company or a subsidiary thereof and Champion International Corporation.

1.9 <u>Policy</u> is this <u>Champion International Corporation Reorganization Severance Policy #828.</u>

1.10 <u>Policy Period</u> is the period from the closing date of the Merger to and including its one-year anniversary.

1.11 <u>Release</u> is the Release and Waiver in a form acceptable to the Company. An effective Release is one that has been executed and delivered and not revoked.

1.12 <u>Reorganization</u> consists of employment action(s) resulting in an Eligible Employee's Termination during the Policy Period.

1.13 <u>Retirement Plan</u> is the <u>Champion International Corporation Salaried Retirement Plan #001</u>, any other Company hourly pension plan and/or any other Company qualified or non-qualified retirement plan in which the Eligible Employee is a member.

1.14 <u>Terminated or Termination</u> is either:

  (a) a termination by the Company of the employment of an Employee for any reason other than Cause, disability (subject to Section 6 hereof), or death, which Termination occurs within the Policy Period. Subject to (b) below, it shall not be deemed a termination of employment if after the Merger the Employee is transferred to the employment of International Paper Company or a subsidiary thereof; or

  (b) a termination during the Policy Period by an Employee of his or her employment under the following circumstances:

    (i) during the Policy Period there is either a reduction in the Employee's Earnings or a relocation of an Employee's principal place of employment other than to the Borough of Manhattan in the City of New York, New York (if the Employee's principal place of employment immediately prior to the Policy Period is Stamford, Connecticut) or to any other location that is not more than thirty-five (35) miles by automobile from the location of the Employee's principal place of employment immediately prior to the Policy Period; provided that a relocation of an Employee's principal place of employment from a foreign assignment to the Employee's home location will not be deemed a Termination; and

(ii) the Employee elects to terminate his or her employment upon not less than thirty (30) calendar days' advance written notice to the Company given within not more than thirty (30) calendar days after the earlier of either receipt by the Employee of written notice of such reduction or relocation, or the date on which the first payment of the reduced Earnings is received by the Employee or the date on which the relocation of the Employee's principal place of employment becomes effective.

### Section 2 Severance Benefits

An Eligible Employee shall be entitled to receive a severance benefit equal to the greater of an amount payable pursuant to any other severance or termination pay plan or arrangement of the Company (excluding retention pay letters) or the following:

(a) ten (10) weeks' Earnings; plus

(b) one (1) week's (or partial week's) Earnings for each year (or partial year) of Credited Service; plus

(c) one (1) week's (or partial week's) Earnings for each year (or partial year) of Credited Service over fifteen (15) years.

The payment described in this paragraph shall not exceed 78 weeks' Earnings.

### Section 3 Pension Enhancement

If an Eligible Employee has attained age 49 as of the date of Termination and the Eligible Employee's age plus years of service equal at least 59, the Eligible Employee's pension benefit from the Retirement Plan shall be enhanced by crediting the Eligible Employee with the most beneficial combination of an additional six (6) years of age and/or service credit under the Retirement Plan for early or normal retirement. As part of such enhanced benefit the Eligible Employee shall be entitled to post retirement death benefits, life insurance and medical plan coverage.

### Section 4 COBRA

An Eligible Employee who elects COBRA coverage shall have the COBRA medical and dental premium payments waived until the earlier to occur of (i) the last day of the ninth month following Termination, or (ii) the date the Eligible Employee ceases to be eligible for COBRA coverage.

### Section 5 Form of Payment

(a) **Normal Form of Payment**

The severance benefit will be paid according to the applicable pay schedule until the total amount of the severance benefit is received.

(b) **Optional Form of Payment**

In lieu of the normal form of payment, at the Company's option and upon the Eligible Employee's request prior to the commencement of the severance benefit payments, the severance benefit may be paid in a lump sum payment.

### Section 6 Disability

If an Eligible Employee who was an active employee of the Company on or after January 1, 1995 is receiving or claiming benefits pursuant to workers' compensation law(s), Social Security disability law(s) or a disability plan of the Company during the Policy Period, benefits pursuant to Section 2, Section 3 and Section 7 will not be paid unless and until the Eligible Employee is released by an independent medical examiner or other physician to return to such employee's regular job duties within the Policy Period.

### Section 7 Miscellaneous Benefits

7.1 **Vacation Pay**

An Eligible Employee will receive a lump sum payment for banked vacation, earned but unused vacation and, if eligible to retire (under the provisions of Section 3 or otherwise), accrued vacation.

7.2 **Retirement Plan or an Hourly Pension Plan Payout**

An Eligible Employee not eligible to retire pursuant to the terms of the Retirement Plan who becomes a terminated vested participant pursuant to the Retirement Plan will receive in a lump sum the actuarial equivalent of such terminated participant's vested benefit determined under the Retirement Plan if such benefit has a present value of $5,000 or less.

7.3 **Employee and Family Assistance Program (EAP)**

An Eligible Employee will have EAP coverage extended for a maximum of five (5) visits provided that, if the Eligible Employee has not already commenced visits, the first visit occurs within the six-month period following such Eligible Employee's Termination.

7.4   Financial/Retirement Planning

Financial or retirement planning assistance will be available to the Eligible Employee, as described in separate documents.

7.5   Outplacement Assistance

An Eligible Employee will be provided outplacement assistance in seeking new employment after Termination, as described in separate documents.

Section 8 Release, Time of Payment

(a)   Eligibility for benefits under the Policy are conditioned upon the Eligible Employee's execution and delivery and non-revocation of an effective Release.

(b)   Payments due pursuant to Section 2 of the Policy shall be paid following the later of the date the Eligible Employee delivers an effective Release or the Termination date, provided that payments made under Section 5(a) will be made on normal payroll dates and the lump sum payment under Section 5(b) will be made within eight (8) days.

Section 9 Amendment and Termination

The Company shall have the right to amend and/or terminate the Policy at any time for whatever reasons it may deem appropriate without prior notice, except that, for the one-year period immediately following the Merger, (a) the Policy shall not be terminated, and (b) no amendment will be effective if it would adversely affect the rights, expectancies, or benefits of any Eligible Employee provided by the Policy as in effect as of the closing of the Merger.

Section 10 Administration and Interpretation

The Administrator has the authority, responsibility and discretion to determine all questions of eligibility and status and has the right to interpret the provisions of the Policy. Any determination by the Administrator shall be final and conclusive.

Section 11 Claims Procedure

11.1   Claims

(a)   In the event that a benefit has not been paid under the Policy in whole or in part, the person claiming such payment may apply for payment either individually or through a representative by writing to the Director - Benefits Administration, Champion International Corporation, Knightsbridge Drive, Hamilton, Ohio 45020.

(b) The claim will be reviewed within 30 days of the filing of the claim. If the claim is wholly or partially denied the person claiming payment will receive in writing:

  (i) specific reasons for denial;

  (ii) specific reference to Policy provision on which the denial is based;

  (iii) description of additional information needed before the claim can be processed; and

  (iv) list of steps to be taken if the denial of the claim is to be reviewed.

## 11.2 Appeal

If the claim has been denied (or if no response from Director - Benefits Administration is received within 30 days), the person claiming payment has the right to request a review of the denied claim, to review pertinent documents and to submit any comments in writing. The request for review of the denied claim shall be submitted to the Vice President - Employee Benefits at the address set forth in Section 12.1(a) within 60 days of receipt of the claim denial (or within 90 days of filing of the claim if no response from the Director of Benefits was received). The request for review of the denied claim will be considered and ruled upon within 30 days of the filing of such request.

## 11.3 Limitation Period

Any claim for payment or such other action under the Policy must be made as set forth in this Section 11 and must be made within one year after the occurrence of the event for which the claim is made. Failure to file the claim within such one-year period shall completely discharge the Policy and the Company of liability and shall bar any and all actions in connection with such claim for payment or other action.

## Section 12 General Policy Information

### 12.1 Policy Sponsor and Administrator

(a) The Company is the sponsor of the Policy. The Administrator is the Company. The Administrator can be reached at:

Vice President - Employee Benefits
Champion International Corporation
One Champion Plaza
Stamford, CT 06921

The telephone number is (203) 358-7056.

(b) Policy documents are available for review at the local Human Resources Department. Most day-to-day questions can be answered by the Human Resources representative.

12.2 <u>Plan Identification</u>

(a) The official name of the Policy is the <u>Champion International Corporation Reorganization Severance Policy #828.</u>

(b) The Employer Identification Number is 13-1427390 and the Plan Number is #828.

12.3 <u>Funding</u>

Benefits are paid out of the Company's general assets with respect to the severance benefits and its retirement plans with respect to the pension enhancement.

12.4 <u>Financial Records</u>

The Policy's financial records are kept by the Administrator.

12.5 <u>Agent for Service of Legal Process</u>

Service of legal process in connection with this Policy shall be delivered to:

Senior Associate Counsel, Human Resources
Champion International Corporation
One Champion Plaza
Stamford, CT 06921

Service also may be made on the Administrator.

<u>Section 13 ERISA Rights</u>

13.1 <u>Legal Rights and Protection</u>

ERISA requires that an employee be informed of rights and protections as a plan participant (for ERISA purposes the Policy is considered a plan).

13.2 <u>Examination of Documents</u>

ERISA provides that each participant be entitled to examine on any business day during normal working hours all pertinent plan documents, contracts, collective bargaining agreements and copies of all documents filed for the plan with the United States Department of Labor. These documents can be examined and/or obtained without charge at the local Human Resources Department or at the Corporate Benefits Department located at One Champion Plaza, Stamford, Connecticut, 06921 or by writing to the Vice President - Employee Benefits at the same address.

13.3 <u>Fiduciaries</u>

The individuals who are responsible for the operation and administration of any employee benefit plan such as the Policy are called "fiduciaries". These fiduciaries will continue to operate and administer the plan in a reasonable and prudent manner with the exclusive interests of the employee and other participants in mind.

### 13.4 Other Rights

(a) In the unlikely event that there is reason to believe that an employee has been prevented from asserting the rights outlined herein, or that the fiduciaries have misused their trust, an employee is urged to write to the Vice President - Benefits. An employee also has the right to seek assistance from the United States Department of Labor, or such employee can file suit in state or federal court (if a claim for benefits is denied in whole or in part). If a suit is filed, the court will decide who should pay court costs and legal fees.

(b) Although the Company does not contemplate that it will ever be necessary to resort to governmental or judicial bodies to enforce the right of an employee, the employee's employment status with the Company will not be adversely affected in any manner if such action is taken.

**The above is a "Summary Plan Description" of the Policy.**