**EXHIBIT 8**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DALESANDRO, *et al.*, <br> Plaintiffs, <br><br> v. <br><br> INTERNATIONAL PAPER COMPANY, <br> Defendant. | CIVIL ACTION NO. C-1-01-109 |

### DECLARATION OF MILTON E. LEWIS

I, Milton E. Lewis, hereby declare as follows:

1. I am Vice President and General Counsel of Smart Papers LLC ("Smart Papers" or the "Company"). I am familiar with the vacation policies and practices of Smart Papers with respect to those salaried employees hired by Smart Papers who formerly worked for International Paper ("IP") at the Hamilton B Street Mill (the "Mill") at the time of the Closing of the Transaction to Sell the assets of the Mill to Smart Papers. The Closing occurred on or about February 9, 2001.

2. In the Asset Purchase Agreement dated December 29, 2000 between Champion International Corporation ("Seller") and Smart Papers, LLC ("Buyer"), Smart Papers agreed to the following:

> "To the extent Seller Employees become Hired Employees of the Buyer (including those employees hired as Temporary Employees), Buyer (x) shall be responsible for all earned but unused vacation for Hired Employees as each such Hired Employee shall have earned under Seller's vacation plan in effect for such Hired Employee as of the Closing (it being understood that a corresponding dollar-for-dollar accrual for such liability shall be made on the Closing Balance Sheet, (y) shall permit all such Hired Employees time off for such vacation days at reasonable times as approved by Buyer's

>managers, and (z) shall pay each such Hired Employee vacation pay for the time taken off at the rate that such Hired Employee would have received as of the day prior to the Closing Date for accrued unused vacation earned prior to the Closing, but not after the Closing; *provided, however,* that the provisions of this Section 4.1(c) shall not affect Buyer's right to establish a new vacation policy for all Hired Employees for vacation timed earned after the Closing."

3. Pursuant to the Asset Purchase Agreement, the salaried employees from IP who were hired by Smart Papers when it purchased the Mill were permitted to carry over to Smart Papers all earned but unused vacation that they had earned under IP's vacation plan in effect as of the Closing. Under Smart Papers' vacation policy, such employees were permitted time off for those vacation days at reasonable times as approved by the Company, and the employees received vacation pay for their time off at the salary such employees would have received as of the day prior to the Closing.

4. The former IP salaried employees who were hired by Smart Papers were encouraged to take their carried over IP vacation by December 31, 2001. However, if Company business precluded such employees from taking their unused IP vacation by December 31, 2001, Smart Papers extended the date for taking such vacation to March 1, 2002. By copy of the Company's vacation policy sent from me to salaried employees dated November 26, 2001, all salaried employees were informed that if they did not take their unused IP vacation by March 1, 2002, it would be forfeited. See Attached November 26, 2001 letter and vacation policy attached thereto.

5. To the best of my knowledge, information, and belief, no former IP salaried employees came forward stating that they were unable to take their unused IP vacation by March 1, 2002. To the best of my knowledge, information, and belief, all former IP salaried employees who were hired by Smart Papers at the time of the sale of the Mill have been paid by Smart

Papers for the earned but unused vacation that they carried over from IP to Smart Papers when the Mill was sold.

6. Smart Papers has produced to International Paper the relevant timesheets for nonexempt salaried employees who were hired by Smart Papers from the former IP workforce. Smart Papers did not require exempt salaried employees to submit timesheets and thus does not have such records.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

_November 26, 2003_
Date

_/s/ Milton E. Lewis_
Milton E. Lewis

1-WA/2084453.2

November 26, 2001

Dear Employee:

When a company's ownership changes (and in our case, when an entirely new company is formed) changes in policy generally result. One such change is the Vacation Policy for Salaried Employees. A number of questions have arisen out of this policy, which is enclosed in its entirety.

Two questions in particular have emerged frequently concerning the Salaried Vacation Policy. I will address them here for clarification purposes:

Q: How do scheduled vacations accrue? Do we earn vacation time during the year preceding the one in which vacation is taken?

A: Under the SMART Papers policy, effective January 1, 2002, vacation time for salaried employees accrues on an ongoing basis during the year in which the vacation is taken. Under former owners, vacation time accrued during the policy year. In other words, if you were employed by Champion in 1999, you would have taken the vacation earned that year in 2000. International Paper continued that policy.

As a salaried SMART Papers employee, you will begin earning vacation for 2002 as of your first day of work in January 2002. If you were formerly employed by Champion or IP, any vacation time that you have taken or will take during 2001 was earned during 2000 as an employee of one or both of those companies.

Under the Asset Purchase Agreement SMART Papers was created as a new business this past February. No vacation time of any kind was carried over from Champion or IP. Vacation eligibility for all salaried employees began in February 2002 under your new 2002 policy, the policy does not permit the "carry over" of any vacation days, except on an employee-by-employee basis as approved by the CEO or COO. For vacation year 2001, if vacation carryover will be permitted, if company business necessitates the employee be at work, and if the employee is unable to use his or her vacation days for that reason. In this case, the carry-over vacation is to be taken by March 1, 2002. Please note this is a one-time-only basis.

As a salaried employee, can I carry over any vacation time, or take pay in lieu?

As stated above, salaried employees will not be eligible to carry over vacation time, or to take pay in lieu, except as approved by the CEO or COO. For vacation year 2001, if vacation carryover will be permitted, if company business necessitates the employee be at work, and if the employee is unable to use his or her vacation time for that reason. In this case, the carry-over vacation is to be taken by March 1, 2002. Please note this is a one-time-only basis.

Yes, even though the employee has not individually earned all four weeks of vacation eligibility, the policy will approve vacation requests during the vacation year. However, if the employee retires prior to the end of their vacation year, the company must be reimbursed for vacation used but not earned, on a prorated basis.

If you have further questions, the enclosed policy should answer them in detail.

Sincerely,

Mark D. Lewis
Vice President and General Counsel

Attachment to Declaration of M. Lewis

11/30/01 LETTER - Pg. ②

# VACATION

### Eligibility

Active salaried or salaried nonexempt employees are eligible for vacation based on their length of service with Smart Papers LLC, effective January 1, 2002. Vacation will be accrued during the year in which it is to be used. Salaried employees will not accrue vacation in calendar year 2001.

### Vacation Accruals

The number of weeks of vacation an employee may accrue begins on the first day of work effective January, 2002. Accrual is based on the whole month which is 1/12th of the vacation eligibility in the year in which it is to be taken. The following table summarizes the Smart Papers vacation schedule. [Employees who formerly worked for International Paper B Street Mill as of the Closing of the Transaction to sell the assets of the mill to Smart Papers LLC will be granted service credit for vacation eligibility up to the maximum of four (4) weeks commencing in calendar year 2002.]:

| Length of Continuous Service | Length of Vacation |
|---|---|
| 1 year, but less than 2 years | 1 week |
| 2 years of service but less than 8 years | 2 weeks |
| 8 years of service but less than 15 years | 3 weeks |
| more than 15 years | 4 weeks |

Employees hired before July 1, will be entitled to one (1) week of vacation during the year in which they are hired after they have completed six (6) months of employment. Employees hired on or after July 1, will not be entitled to any vacation during the calendar year in which they are hired, but will be entitled to one (1) week of vacation after they have completed six (6) months of employment.

Notwithstanding the above, employees hired by Smart Papers who worked for International Paper B Street Mill as of the Closing of the Transaction to sell the assets of the Mill to Smart Papers, shall retain all earned but unused vacation in calendar year 2000, that they earned under International Paper's vacation plan in effect as of the Closing. Such employees shall be permitted time off for those vacation days at reasonable times during calendar year 2001 as approved by Smart Papers' management. These employees shall receive vacation pay for such time off at the rate they would have received as of the day prior to Closing for accrued unused vacation earned prior to but not separate and apart from the Smart Papers' vacation policy and should be used prior to December 31, 2001. However, any unused vacation retained by former employees of

11/26/01 LETTER - Pg. (5)

International Paper must be taken by March 1, 2002, or the unused vacation will be forfeited. The Smart Papers' vacation policy described in the other paragraphs of this section governs earned vacation time which will become effective as of January 1, 2002.

Vacation pay does not count as hours worked for overtime calculation.

Non-Accumulation – Non-Accrual

Neither vacations nor vacation pay shall carryover from one calendar year to the next, except as approved by the CEO or COO.

It should be noted that vacation is an accrued benefit earned through continuing employment, and entitlement to vacation pay is conditioned upon active employment. Employees who leave Smart Papers before they are eligible to retire, will be entitled to receive pay for any earned but unused vacation that they are eligible to receive in that calendar year.

If an employee retires or dies, that employee or his/her beneficiary will receive pay for any earned but unused vacation due in the current year.

PAY PERIOD

The pay period for salaried and non-exempt employees will be on a bi-weekly basis, but can be changed by the company at any time with reasonable notice. Direct deposit is available to employees who wish to take advantage of this service. Direct Deposit may be required at the discretion of the company.