IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT D. DALESANDRO and DIANE NOONAN, on behalf of themselves and others, | ) : ) : | |
| Plaintiffs, | ) : | Case No. C-1-01 109 |
| vs. | ) : | Judge Sandra S. Beckwith |
| INTERNATIONAL PAPER COMPANY, | ) : | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS POSITION THAT CLASS MEMBERS HAVE ALREADY BEEN PAID INTERNATIONAL PAPER VACATION BENEFITS**

Plaintiffs do not and cannot dispute that:

(1)  In the Asset Purchase Agreement, Smart Papers agreed "that all [Smart Papers' offers to IP employees] shall provide that all earned but unused vacation of such employees who accept offers of employment from [Smart Papers] shall be honored by [Smart Papers]. Exhibit 3, Section 4.1(a).

(2)  Smart Papers further agreed to "pay each such Hired Employee vacation pay for the time taken off at the rate that such Hired Employee would have received as of the day prior to the Closing date for accrued unused vacation earned prior to Closing." Id.

(3)  IP advised Class Members of Smart Papers' assumption of these vacation benefits before the sale of the Mill. Exhibits 5 and 6.

(4)  Smart Papers acknowledged in writing to Class Members its obligation to pay former IP employees the vacation benefits earned at IP. (Exhibits 7 and 8).

(5)  "All former IP salaried employees who were hired by Smart Papers at the time of the sale of the Mill have been paid by Smart Papers for the earned but unused vacation that they carried over from IP to Smart Papers when

        the Mill was sold." Affidavit of Milton Lewis, Vice President and General Counsel of Smart Papers. (Exhibit 8, ¶ 5).

(6)    The Plan Administrator determined that IP vacation benefits were provided to Class Members by Smart Papers under its agreement with IP. (See, e.g., Exhibit 10 and Administrative Record generally).

(7)    Plaintiffs did not challenge the Plan Administrator's specific determination that IP vacation benefits were paid by Smart Papers and the Court's March 18, 2003 ruling did not consider this issue.

(8)    Plaintiffs did not request vacation benefits in the proposed class notice they submitted to the Court.

Nor can plaintiffs challenge that the "an obligor may effectively delegate performance to another who is willing to perform the delegated duty [and] if the delegate performs the duty, the duty is discharged." Hendrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1278 (10th Cir. 1994); see also Rest.2d of Contracts § 318. The Administrative Record fully supports the Plan Administrator's conclusion that Smart Papers assumed the duty to pay earned but unused IP vacation and in fact paid these amounts. Plaintiffs have offered no evidence in the Administrative Record or elsewhere that would indicate the Plan Administrator acted arbitrarily in determining that Smart Papers honored IP's vacation obligation.

Adams v. Avondale Industries, 905 F.2d 943 (6th Cir. 1990), clearly recognized that a delegatee's assumption and performance of vacation obligations will discharge the original obligor. In Adams, "Trinity never agreed with Avondale to assume Avondale's vacation pay obligations to the plaintiff . . . Furthermore, the Purchase and Sale Agreement provides in no uncertain terms that Trinity did not assume Avondale's obligation to pay . . . any benefits still owing at the time of sale." Id. At 952. In contrast with the facts in Adams, Smart Papers expressly assumed the obligation to pay earned but unused IP vacation, and both IP and Smart

Papers communicated this to Class Members in writing before they accepted employment with Smart Papers.

Class members who accepted employment with Smart Papers knew that the earned but unused IP vacation pay would be paid by Smart Papers, rather than in a lump sum. Their acceptance of Smart Papers' offer and their acceptance of payment by Smart Papers – not withstanding their protests – constitutes a novation, substituted contract and substituted performance. See 18 Ohio Jur. Contracts § 247; Rest.2d Contracts §§ 279a, 280, and 280b. <u>Armstrong v. Diamond Shamrock Corp.</u>, 455 N.E.2d 702 (Ohio Ct. App. 1982); <u>Headrick v. Rockwell Int'l Corp.</u>, 24 F.3d 1272, 1278 (10th Cir. 1994).

Plaintiff's argument rests entirely on the fact that payment was not made to Class Members in a lump sum at the time of the sale. But as explained here and in IP's earlier brief, Class Members' acceptance of Smart Papers' employment offer created a novation, substituted contract and/or substituted performance, in which Class Members knowingly accepted payment of their IP benefits from Smart Papers rather than in a lump sum along with employment with Smart Papers.

Even if the Court were to conclude that no substituted contract was formed, it cannot be disputed that Smart Papers paid these earned but unused vacation benefits under its express written agreement to assume IP's obligation to Class Members for earned but unused vacation. The Purchase Price paid by Smart Papers to IP was reduced under the Asset Purchase Agreement accordingly. (See Def.'s Brief, Exs. 3 and 4.) Smart Papers payment of these benefits was accepted by Class Members, and they cannot claim that IP has any duty to pay them again.

At most, Class Members are like the obligee on a note where the obligor has agreed to pay the principal in a lump sum on February 1. Before the due date, the obligor advises the oblige that a delegatee has agreed to pay the principal, and delegatee does so, but only in periodic payments over one year, rather than in a lump sum on February 1. By accepting payment from delegatee, obligee extinguishes the duty of obligor to pay the principal of the note. At most, obligee has a claim for interest for the delay in payment.

Although payment of vacation benefits may have been delayed (under the Court's ruling of March 18, 2003), payment was unquestionably made and accepted by Class Members throughout 2001 and no later than March 2002. Moreover, during this period Class Members received salary and other benefits from Smart Papers. Under these circumstances, any delay in payment is insubstantial.

The severance benefits under Section 2 of Policy 828 are clearly distinguishable from the benefits under Section 7, including the vacation benefits under Section 7.1. Smart Papers did <u>not</u> assume the obligation to pay severance benefits to former IP employees it hired.[1] Smart Papers <u>did</u> assume the obligation to pay vacation benefits to these employees. As set forth in Defendant's Brief, this obligation has been discharged and Plaintiffs are not entitled to any further benefit. In addition, severance benefits are distinguishable from vacation benefits because an employee who rejected an offer of employment from Smart Papers at the same or higher salary was <u>not</u> eligible for severance pursuant to the Plan Administrator's interpretation,

---

[1] To the contrary, Smart Papers agreed to assume part of the obligation to pay severance to former IP employees <u>not hired</u> if it failed to hire the Target Number under the Asset Purchase Agreement because the failure to offer employment to an employee triggered IP's severance obligations. See Ex. E to Def.'s Brief, pp. 18-22, Section 4.1(f).

but <u>was</u> eligible for a lump sum payout of earned but unused vacation benefits. These benefits are clearly not equivalent and should not be treated as such.

<u>Class Members Did Not Lose Any IP Vacation Benefits</u>

Plaintiffs argue that Plaintiffs "lost" benefits because they took vacation earned in 2000 in 2001 but did not concurrently earn or accrue from Smart Papers any additional vacation in 2001 to be taken in 2002. Instead, Smart Papers implemented a new policy that provided effective January 1, 2002 that vacation would be earned in the same calendar year instead of the preceding year. This argument fails to assist Plaintiff's claim. Plaintiffs did not "lose" any vacation benefits through this change, because the change in the accrual process did not affect their total vacation entitlement for 2002 in any manner. Although vacation accrued at a rate of $1/12^{th}$ of an employee's vacation eligibility per month, Smart Papers also made clear that any or all vacation could be taken at any time during the year even though the employee has not technically accrued or earned all vacation eligibility at that time. (See Ex. 8, p. 4 and Ex. 9, p.1.) Therefore, just as under the IP policy, effective January 1, 2002, Smart Papers' employees were entitled to take any or all of their vacation for that calendar year. Only if an employee resigned or terminated having exceeded their accrued vacation to date would he or she feel any detriment to this change, and Plaintiffs have not identified any Class Member who has suffered any such consequence.

Regardless of this hypothetical possibility, Plaintiff's argument also fails because Smart Papers' employees were not entitled to specific vacation benefits after 2001 under Policy 828. Plaintiff's were entitled to IP vacation benefits earned but unused as of the sale of the Hamilton B Street Mill on February 9, 2001, but they had no entitlement to any vacation benefit from

Smart Papers. These IP vacation benefits were earned during calendar year 2000. Class members received these benefits during their employment with Smart Papers in 2001 (or in a lump sum if not hired by Smart Papers) and are not entitled to anything further.

### Class Members Could Have and Would Have Received a Lump Sum Vacation Payout If They Had Not Been Employed by Smart Papers

Plaintiffs argue that IP should have given Class Members the choice to take a position with Smart Papers or to take their lump sum vacation pay. Plaintiffs had exactly that choice. Unlike severance benefits, Plaintiffs did not forfeit earned but unused vacation benefits by failing to apply for employment or by turning down employment with Smart Papers. (See Ex. 2 to IP's Brief, Resp. 3.) Any former IP employee could have pursued other employment, taken their lump sum payout of vacation from IP, and negotiated or received vacation from a new employer, just as they seek in their Motion. IP did not impose any conditions that prevented them from doing this. IP advised all employees prior to the sale, however, that if they accepted employment with Smart Papers, their earned but unused vacation benefits would continue and be honored and paid by Smart Papers. (See Exs. 5 and 6 to IP's Brief.) Each Class Member has received these benefits. (See Ex. 8 to IP's Brief, ¶ 5.)

Plaintiffs also argue that under IP's reasoning, IP would have denied a lump sum vacation payout to former IP employees if they took a job with any other employer following their termination from IP. This argument is baseless and untrue. As stated above, any employee who chose not to go to work for Smart Papers was eligible to receive a lump sum payout of their earned but unused vacation. IP negotiated and obtained agreement from Smart Papers to honor vacation benefits for former IP employees for the employees' benefit, and to

facilitate the sale of the Mill as an ongoing concern. IP clearly had no such negotiation power or purpose regarding any other employer and Plaintiff's assertion that IP would have denied vacation benefits to employees continuing employment at any other employer is incongruous and incorrect.

## Conclusion

For the reasons stated in Defendant's Briefs, International Paper respectfully requests that Plaintiffs' Motion for Supplemental Notice be denied, and that the Court find that International Paper has been relieved of any further duty to pay vacation benefits to Class Members.

Respectfully submitted,

INTERNATIONAL PAPER CO.

By: s / Michael Roberts
**COUNSEL FOR DEFENDANT
INTERNATIONAL PAPER CO.**
Michael A. Roberts (OH Bar No. 0047129)
Graydon Head & Ritchey, LLP
1900 5th 3rd Center
511 Walnut Street
Cincinnati, Ohio 45202
(513) 629-2799
(513) 651-3836 – fax
email:mroberts@graydon.com

W. Carter Younger (VSB 01147)
(Admitted Pro Hac Vice)
James P. McElligott, Jr. (VSB 014109)
(Admitted Pro Hac Vice)
McGuireWoods LLP
One James Center
Richmond, VA  23219
(804) 775-4363

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December 2003, a true and complete copy of this document was delivered via electronic service to Counsel for Plaintiff, Theresa L. Groh, Esq., and John C. Murdock at Murdock, Goldenberg, Schneider & Groh, L.P.A., 700 Walnut Street, Suite 400, Cincinnati, Ohio, 45202.

By: s / Michael Roberts