IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SCOTT D. DALESANDRO, et al.,<br>  On behalf of themselves and<br>  all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>THE INTERNATIONAL PAPER<br>COMPANY,<br><br>       Defendant. | Case No. C-1-01-109<br><br>Judge Sandra S. Beckwith<br><br><br><br>PLAINTIFFS' RESPONSE<br>MEMORANDUM IN SUPPORT OF<br>INCLUSION OF VACATION PAY AS<br>DAMAGES and THE ISSUANCE OF<br>SUPPLEMENTAL NOTICE<br><br>(Exhibit attached) |

## MEMORANDUM IN RESPONSE

Defendant has provided no justification for excluding Plaintiffs' claim for vacation pay, or for precluding a supplemental notice to the class to determine the damages figure for the final judgment entry. Instead, Defendant indicates in its Brief that it has already obtained verification of each employee's accrued vacation time as of February 9, 2001 from each employee as part of their exit process;[1] therefore, supplemental notice may not be necessary if Defendant is ordered to produce those documents and figures, which it has refused to do in objecting to Plaintiffs' discovery requests directed to that information.[2]

Vacation pay should be included in the damages calculation in the final judgment entry. First, Defendant is not permitted by ERISA to "discharge its obligation" by trying to pass the vacation pay to Smart Papers. Second, Defendant's arguments based on common and state law theories of contract are precluded by ERISA preemption principles and are without merit even if

---

[1] Defendant's Brief (Doc. #60) at p. 6.
[2] Defendant's response to Plaintiffs' Interrogatory No. 2 (Exh. 15 to Plaintiffs' Motion for Supplemental Notice, Doc. #59).

{00009251; 1}

considered. Third, Defendant's obligation was not fulfilled by Smart Papers. Fourth, there has been no waiver of any argument or entitlement to Section 7.1's vacation pay in this case.

### 1. Defendant May Not Discharge its Obligation Via Smart Papers

Defendant boldly claims in its opening that "IP's obligation to pay 'earned but unused vacation' has already been discharged."[3] In so stating, Defendant acknowledges that it **had** this obligation, **created by** Policy #828, thereby affirming Plaintiffs and this Court's conclusion that Plaintiffs were terminated and are entitled to Policy #828 benefits. Defendant then underscores that conclusion in its responses to Plaintiffs' Interrogatories by stating that the former employees who were not offered employment by Smart Papers[4] "were paid lump sum monetary payments for earned but unused vacation time **pursuant to** Reorganization Severance Policy #828."[5]

The issue in this case, which has already been briefed and decided, is whether Defendant should pay benefits pursuant to its Plan. This action is based upon Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides plan beneficiaries with a cause of action to enforce their rights **under the terms of the plan**. Defendant is in agreement: it has argued at every stage of this case – from moving for a stay, to resisting discovery, to seeking judgment – that the issue is plan interpretation. And Section 7.1 of Policy #828 unambiguously states that Defendant will make a lump sum payment to a terminated employee for accrued vacation time.[6]

---

[3] Defendant's Brief (Doc. #60) at p. 1.
[4] Those employees who were <u>not</u> offered jobs by Smart Papers are <u>not</u> a part of the Class as they <u>did</u> receive Policy #828 benefits, including the vacation benefit.
[5] Defendant's response to Plaintiffs' Interrogatory No. 3 (Exh. 15 to Plaintiffs' Motion for Supplemental Notice, Doc. #59) (emphasis added).
[6] Champion International Corporation Reorganization Severance Policy #828 at Section 7 and 7.1 (Exh. 2 to Plaintiffs' Motion for Supplemental Notice, Doc. #59).

The Plan clearly imposes upon Defendant the obligation is to make a lump sum payment.[7] Defendant admits that "[e]mployees <u>not</u> hired by Smart Papers received their earned but unused IP vacation in a lump sum", but that the Plaintiffs were paid nothing **by IP**, and never received a **lump sum payment**.[8] Defendant explains that the way that it "paid" Plaintiffs was not pursuant to the terms of its own Plan, but that: "Vacation was paid as it was taken during their employment with Smart Papers **in lieu of a lump sum payment by IP**."[9] Therefore, contrary to Defendant's protestations, Plaintiffs are not seeking to impose any "duty to pay these vacation amounts a second time"[10] or for "additional"[11] or "double"[12] payments because, as Defendant admits in its brief, "IP's vacation was not paid in a lump sum"[13] ever.

It is not within Defendant's province to (once again) depart from its own Plan and unilaterally determine how it can avoid the monetary payment it expressly promised to make by assigning or selling or transferring that severance policy obligation to one (but not all) subsequent employer(s).[14]

Defendant cannot escape its obligation under Policy #828 merely by giving "express written notice to class members"[15] that it has tried to do so. There is no language in the Plan that informs the employees that any benefit thereunder may or will be delegated to a subsequent employer. Rather, Policy #828 clearly informs the employees that they will receive a lump sum payment for their accrued vacation, by IP, if they are terminated before June 20, 2001.

---

[7] Id.
[8] Id.; Defendant's Brief (Doc. #60) at p. 1.
[9] Defendant's response to Plaintiffs' Interrogatory No. 7 (Exh. 15 to Plaintiffs' Motion for Supplemental Notice, Doc. #59) (emphasis added).
[10] Defendant's Brief (Doc. #60) at p. 2 (emphasis added).
[11] Id. at pp. 8 & 9.
[12] Id. at p. 15.
[13] Id. at p. 12.
[14] Defendant's response to Plaintiffs' Interrogatory No. 6 (Exh. 15 to Plaintiffs' Motion for Supplemental Notice, Doc. #59).
[15] Id. at pp. 2 & 5

It is irrelevant that "IP clearly advised IP employees in writing that if they accepted an offer from Smart Papers, they would be paid their earned but unused vacation"[16] because the employees HAD NO CHOICE – they were also told that if they did NOT accept an offered job from Smart Papers, they would receive NO Policy #828 benefits.[17] Further, Smart Papers was never going to make any lump sum payment to the Plaintiffs for accrued vacation time and Defendant has offered no evidence that the obligation to make any monetary lump sum payment was assumed by Smart Papers. Rather, the employees were told, "any unused vacation you had with IP can be taken as vacation with Smart Papers."[18]

As discussed in Plaintiffs' Motion (Doc. #59), the benefits under Severance Policy #828, an employee welfare plan within the meaning of the statute, vested on February 9, 2001 pursuant to the Plan's express terms. The court can easily ascertain the parties' intent by looking to the written terms of the Plan which control the determination of whether the benefits are vested.[19] The Court has already considered the evidence and the arguments on this point, and has concluded that Policy #828 is unambiguous in guaranteeing certain welfare benefits, including the monetary payment for earned vacation, and that Plaintiffs' entitlement to those benefits vested upon their termination on February 9, 2001 since their termination occurred within the one year period that the benefits were guaranteed.[20]

---

[16] Id. at pp. 1, 5 & 10.
[17] Exhibit 1 hereto (2-9-01 e-mail from IP to employees with attached Q&A's) (Administrative Record #IPD 300974-975).
[18] Defendant's Brief (Doc. #60) at p. 5, and Exhibit 5 thereto.
[19] *Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1005 (6th Cir. 1993); *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1297-98 (6th Cir. 1991); *Musto v. American Gen. Corp.*, 861 F.2d 897, 910 (6th Cir. 1988), cert. denied, 490 U.S. 1020 (1989); *In Re White Farm Equip. Co.*, 788 F.2d 1186, 1193 (6th Cir. 1986).
[20] Amended Order dated March 21, 2003 (Doc. #40).

ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefits plans and to protect contractually defined benefits.[21] "[P]arties may themselves set out by agreement or private design, as set out in the plan documents, whether retiree welfare benefits vest or whether they may be terminated."[22] This serves the important purpose of "insuring against the possibility that the employee's expectations of the benefit would be defeated by an unanticipated amendment of a welfare plan..."[23] Here, Defendant expressly stated in Policy #828 that the benefits "shall not be terminated" and "no amendment will be effective if it would adversely affect the rights, expectancies, or benefits" of Plaintiffs within the one year window of time between June 20, 2001 and June 20, 2002.[24]

The Plan informed the employees that, if they were terminated in a precise window of time and no longer worked for International Paper, they would get certain lump sum monetary payments in hand. Those Policy #828 benefits are and always have been the damages in this case. Had Defendant fulfilled its obligations under Policy #828, the employees would have been able to make their own decisions about working for Smart Papers, working for another company locally or elsewhere, or retiring from employment all together – decisions Policy #828 told them they would be able to make if they were terminated by International Paper before June 20, 2001.

The Sixth Circuit has explained that employers must fulfill the obligations they undertake in written benefits plans and are held to promises they make in their [Summary Plan Descriptions]."[25] Employees like the Plaintiffs "count on them to provide an accurate picture of

---

[21] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989), citing 29 U.S.C. § 1001, and citing *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983), and citing *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985).
[22] *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 949 (6th Cir. 1990), cert denied 498 U.S. 984 (1990), citing *In re White Farm Equipment Co.*, 788 F.2d 1186, 1193 (6th Cir. 1986).
[23] *Massachusetts v. Morash*, 490 U.S. 107, 109 (1989).
[24] Exh. 1, Par. 3 (p. 1); Section 9 (p. 6).
[25] *Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243, 247, 249 (6th Cir. 1996), cert. denied, 519 U.S. 1059 (1997), citing *Edwards v. State Farm*, 851 F.2d 134, 136 (6th Cir. 1988).

their current benefits situation, as well as for information which will allow them to make intelligent decisions about their future benefits needs."[26] In making decisions about where and how long to work, employees like the Plaintiffs rely on the promises made to them, particularly when those promises are in writing.[27] The United States Supreme Court has explained, "ERISA does, however, seek to ensure that employees will not be left emptyhanded once employers have guaranteed them certain benefits."[28]

### 2. Defendant's Contract Arguments are Preempted and Without Merit

Defendant argues several contractual theories (third party beneficiary, delegation, assumption, substitution, novation) to support its evasion of the clear language in its own Plan, citing several sections of the Restatement of Contracts and Ohio Jurisprudence. First, these arguments are preempted by the federal statute and do not, therefore, warrant consideration. Second, these arguments are factually flawed and without merit even if considered. And third, Defendant cites only two inapplicable cases and provides no other case in which vacation pay was a specified benefit in a severance plan which guaranteed a lump sum payment upon termination; the unique facts of this case and this Plan control and make irrelevant the cases relied upon by Defendant.

#### a. ERISA Preempts State Law Claims

ERISA subjects to federal regulation plans providing employees with fringe benefits and is a comprehensive statute designed to promote the interests of employees in employee benefit plans.[29] To assure that the regulation of employee welfare benefits would remain an area of

---

[26] *Id.*
[27] *Id.*
[28] *Lockheed Corp. V. Spink*, 517 U.S. 882, 887 (1996).
[29] *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510 (1981).

exclusive federal concern, Congress passed § 514(a) of ERISA, 29 U.S.C §1144(a), known as the "preemption provision" which reads:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

The Supreme Court has specifically found that in passing § 514(a) it was Congress' intent:

> To ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.[30]

The Act does not, however, specify whether every policy to provide vacation benefits falls within its ambit.[31] The Supreme Court has explained that the distinguishing feature is that employee welfare benefit plans included within the scope of ERISA are those which are "payable only upon the occurrence of a contingency outside the control of the employee."[32]

> Thus, for example, plans to pay employees severance benefits, which are payable only upon termination of employment, are employee benefits plans within the meaning of the Act. ... The reference to vacation payments [in the Act] should be understood to include within the scope of ERISA those vacation benefits funds, analogous to other welfare benefits, in which either the employee's right to a benefit is contingent upon some future occurrence or the employee bears a risk different from his ordinary employment risk.[33]

The Sixth Circuit has recently explained that it looks to the nature of the plan, whether the plan requires an administrative program, what degree of discretion the employer retains over

---

[30] *New York State Conf. Of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656-57 (1995), quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).
[31] *Massachusetts v. Morash*, 490 U.S. 107, 114 (1989).
[32] *Id.* at 115-116, citing 40 Fed. Reg. 24642 (1975)
[33] *Id.* at 116.

distribution of the benefits, and whether the employer must "analyze each employee's particular circumstances in light of the appropriate criteria" to determine benefits."[34]

Here, Plaintiffs are making their claims pursuant to Severance Policy #828 which was operative only upon the occurrence of a contingency – termination within the one year period of the policy – which was certainly outside the control of Plaintiffs. Further, the record is replete with the administrative requirements imposed upon Plaintiffs and this Court,[35] the repeated claim that Defendant retained all discretion to determine eligibility,[36] and the Plan Administrator filed an affidavit explaining his role of analyzing each employee's eligibility for benefits.[37]

Although federal courts apply "general rules" of contract law as part of the federal common law, state law is not controlling authority.[38] The parties to an ERISA plan may define the terms and conditions under which benefits are made available,[39] and the application of these terms and conditions is controlled by federal and not state law.[40] In this case, Defendant decided to include vacation benefits in its severance plan and, as an employee welfare plan under ERISA, it is controlled by federal law.

### b. Defendant's Contract Arguments are Factually Flawed

Defendant's contract arguments fail even if they are considered because they are all based on the same faulty premises: that Plaintiffs chose or agreed or consented or freely

---

[34] *Cassidy v. AKZO Nobel Salt, Inc.*, 308 F.3d 613, 616 (6th Cir. 2002), citing *Swinney v. General Motors Corp.*, 46 F.3d 512, 517 (6th Cir. 1995), and *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11-12 (1987), and *Sherrod v. General Motors Corp.*, 33 F.3d 636, 638-39 (6th Cir. 1994).
[35] See the Defendants' Answer (Doc. #8) at nearly every paragraph referencing the administrative process, and Defendants' Briefs seeking a stay (Doc. #s 10 &12).
[36] See, Defendant's briefs related to its Motion for Judgment (Doc. #s 23 & 30) and the determinations of the Plan Administrator Florio and Paul Karre (Exs. 6, 8 & 11 to Plaintiffs' Motion for Supplemental Notice, Doc. #59).
[37] Florio Affidavit dated 4-19-03 at ¶ 9: "I will decide each claim based on Plan language and the relevant facts concerning the employment of each claimant." (Exh. 7 to Plaintiffs' Motion for Supplemental Notice, Doc. #59).
[38] See, *Cassidy*, 308 F.3d at 615.
[39] *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 735 (1985); *Shaw, supra*, 463 U.S. at 91.
[40] See, *Richland Hospital, Inc. v. Ralyon*, 33 Ohio St.3d 87, 92 (1987) (alternative contract rationale was preempted based on inconsistency with federal ERISA law, noting that there were "no cases in the federal common law of ERISA that recognized contract principles").

accepted the novation or substitution or delegation or assumption by Smart Papers; and that Plaintiffs received payment for their vacation. Had Plaintiffs been given the opportunity to receive their Policy #828 lump sum payment from Defendant OR take a job with Smart Papers (and transfer their vacation time to that new employer), there could be an argument that Plaintiffs "accepted" "agreed" or "consented" to the latter. However, Plaintiffs were told that they would be denied Policy #828 benefits if they were offered a job by Smart Papers, so the choice was not theirs to make. No acceptance, consent or agreement can be engrafted onto these facts to provide the critical bases necessary to impose these contractual principles on Plaintiffs.

Defendant makes an entirely new and unsupported assertion in its brief: that the employees had a choice and could have turned down a Smart Papers job and gotten a lump sum payout of all unused vacation.[41] However, not only is the record void of any evidence to support this contention, Defendant's own brief and the record actually contradicts it:

➢ Defendant, on page 5 of its brief, cites to Q&A's which appeared in a Mill newsletter dated January 22, 2001 where IP told the Plaintiffs **only** that: "If hired by Smart Papers, any unused vacation you had with IP can be taken as vacation with Smart Papers."[42] The employees are never told they may take a lump sum payment.

➢ Defendant's an e-mail dated just after midnight on February 9, 2001, the day the employees were terminated, attached Q&A's which told the Plaintiffs:

1) that they were "**not** entitled to benefits under Severance Policy 828" if they did not accept a job offered by Smart Papers at the same base salary; and

2) that they were "**not** entitled to benefits under Severance Policy 828" if they did accept an offer from Smart Papers.[43]

---

[41] Id. at p. 13.
[42] Id. at p. 5, citing the Q&A's in a newsletter attached thereto at Exhibit 5.
[43] Exhibit 1 attached hereto (Administrative Record # IPD 300974-975) and previously submitted as an exhibit to Plaintiffs' Opposition to the Stay, Doc. #11.

{00009251;1}                                    9

> IP's vacation policy and interrogatory answers only state that the employees are entitled to their vacation, not any pay for that unused vacation.[44] In contrast, Policy #828 states that they are entitled to receive a lump sum payment for that unused vacation time.

There is no evidence to support Defendant's contention, on page 13 of its brief, that Plaintiffs had a choice and could have turned down a Smart Papers job and gotten a lump sum payout of all earned but unused vacation. Thus, Plaintiffs never made a choice because they were never given a choice. Plaintiffs could not have agreed or consented or freely accepted the "contractual" terms now espoused by Defendant.

### c. *Headrick* and *Armstrong* are Neither Controlling or Persuasive

Defendant cites only two inapplicable cases and provides no other case in which vacation pay was a specified benefit in a severance plan which guaranteed a lump sum payment upon termination. The unique facts of this case and this Plan control and make irrelevant the cases relied upon by Defendant.

The *Headrick*[45] case cited by Defendant is a Tenth Circuit decision in which the severance plan, unlike Policy #828, contained specific language providing severance pay upon the satisfaction of certain conditions which were **not** met; thus, the plaintiffs in *Headrick*, unlike the *Dalesandro* Plaintiffs, were **not** entitled to any benefits under their plan. More importantly, the claim for vacation pay in *Headrick* was not made pursuant to any provision for the same in the severance plan, but was based upon the Colorado Wage Claim Act; therefore, the court's analysis of the claim for vacation pay under contract principles was not conducted in the context of an ERISA claim as we have in the case at bar. Accordingly, Defendant's reliance on

---

[44] Defendant's responses to Plaintiffs' Interrogatory Nos. 2 & 7 at Exhibit 15 to Plaintiffs Motion for Supplemental Notice (Doc. #59).
[45] *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272 (10th Cir. 1994).

*Headrick* for any proposition that this Court should resort to state contract law to decide an ERISA issue is misplaced and clearly erroneous.

The *Armstrong* [46] case cited by Defendant is even more attenuated. *Armstrong* was a state case in which no claim in was brought pursuant to or considered or decided under ERISA. Thus, Defendant's reliance on *Armstrong* for any proposition that this Court should resort to state contract law in this ERISA case is misplaced and clearly erroneous. Moreover, *Armstrong* is factually distinguishable in that the plaintiffs were given the choice whether to retain their employment with the defendant or to transfer to the other company, and those who transferred did so voluntarily; it was undisputed that the employees were never terminated and none were told they would be terminated if they did not accept positions at the other company; and unlike Plaintiffs in the case at bar, those who transferred in *Armstrong* did not lose any vacation benefits and were in the same position after as they would have been in before the job change.

Neither case provides any controlling or persuasive authority for this Court to apply state law contract principles to achieve a result inconsistent with the controlling and preemptive principles of ERISA law.

Moreover, although the Sixth Circuit in *Adams* [47] applied state law to defendant's refusal to pay accrued vacation benefits, the vacation benefits in *Adams* did **not** arise from their inclusion in a severance plan as did the vacation benefits in the case at bar. Rather, the *Adams* vacation benefits had vested according to the terms of a separate vacation plan. Therefore, the court proceeded with a state contract law analysis pursuant to the principles set forth in *Morash* discussed above.

---

[46] *Armstrong v. Diamond Shamrock Corp.*, 7 Ohio App.3d 296 (Cuyahoga, 1982).
[47] *Adams v. Avondale Industries, Inc.*, 905 F.2d 943 (6th Cir. 1990).

### 3. Defendant's Obligation was not Fulfilled by Smart Papers

Smart Papers did not perform IP's obligation because it never made any lump sum payments, but only gave Plaintiff the opportunity to take that vacation time in the following twelve months; if the employees did not take their time, they could not carry that time over.[48] There is no evidence that the employees would be paid a lump monetary sum for any time. As explained in Plaintiffs' Motion (Doc. #59), paying these employees the vacation time they accrued with International Paper in the time preceding their termination on February 9, 2001 does not result in a windfall or double recovery because the employees worked the entire year of 2001 for Smart Papers without earning any vacation.

### 4. Plaintiffs Have Not Waived Their Lump Sum Payments for Accrued Vacation

Severance Policy #828 is Defendant's plan. Defendant drafted this Plan; Defendant decided to offer this Plan to the employees at the Hamilton B Street Mill when it merged with Champion; Defendant chose to apply this Plan when it sold the mill to Smart Papers. Policy #828 is a severance plan. All benefits provided therein are "severance benefits" for the reason that they are benefits to be provided a terminated employee. This severance plan provides for different types of benefits, among which is vacation pay.

It is illogical and disingenuous for Defendant to argue that vacation pay is NOT a severance benefit and therefore not a part of this case. It was the Defendant which put the vacation pay section into its own severance policy. Defendant's position in opposing the inclusion of vacation pay as part of the Severance Policy #828 benefits (to which Plaintiffs have

---

[48] Declaration of Milton E. Lewis and November 26, 2001 letter and attachments thereto, explaining Smart Papers' vacation policy (Exh. 14 to Plaintiffs' Motion for Supplemental Notice, Doc. #59).

already been found to be entitled) is grounded on the same type of word games it has unsuccessfully played in this case:

> ➤ First, despite repeatedly claiming that "the Plan speaks for itself" in its Answer[49] Defendant's later position developed into a tortured justification of the various ways the Plan Administrator to read terms into and out of the Plan;
>
> ➤ Second, it obtained a stay by arguing that the company's denial of benefits and the reasons therefore which were published in its Q&A's and in memos from its legal department, were merely "informal employee communications"[50] and were not denials of benefits since they did not come (yet) from the Plan Administrator, a vice president of the company;[51]
>
> ➤ Then, Defendant litigated this entire case based on the untenable position that it did not really "terminate" its employees, but rather "the employees ceased being employed by IP."[52]

Now, Defendant urges the Court to entirely eliminate Section 7 of Severance Policy #828 for the reasons that: 1) the word "severance" was not used in the title of Section 7, and 2) Plaintiffs did not single out and specify those vacation benefits but instead referred to them generally as "severance benefits." Now, Defendant argues that the transfer of vacation time to a new employer satisfies and means the same thing as the Plan's provision promising a "lump sum payment" for the vacation time. These interpretations are just as unreasonable, if not more so, than Defendant's previous spins on its own Plan which the Court has already found to be unreasonable.

---

[49] Defendant's Answer (Doc. #8) at ¶¶ 2, 21, 22, 27 & 30.
[50] Id. at ¶¶ 8 & 43.
[51] Defendant's Reply in Support of Motion for Stay (Doc. #12).
[52] See, Defendant's Answer (Doc. #8) at ¶¶ 3, 12, 14, 29, 36, 39 & 43; see also, Defendant's Motion for Judgment (Doc. #23) and Reply in Support (Doc. #30) attempting to avoid the plain meaning of "terminate".

Moreover, when it moved for judgment on the Administrative Record earlier in the case, Defendant specifically listed vacation pay as a benefit under Policy #828:

> D. <u>The Severance Policy Provides Benefits to Terminated Employees</u>
> The Policy provides a series of benefits to assist employees terminated from their employment, including:
> 1. <u>Severance Benefits</u> …
> 2. <u>Pension Enhancement</u> …
> 3. <u>COBRA</u> …
> 4. ***<u>Vacation Pay</u>*** … [53]

When Defendant provided calculations for the Notice, it did include the benefits listed in numbers 1 and 2 above, but omitted number 4. If Defendant's argument is to be taken at face value, and this case has always been about **only** the benefits listed at number 1, then why did it acknowledge and calculate the additional category listed in number 2? The answer is that Defendant has always known and accepted that this case includes more than just the benefits entitled "severance benefits" - it includes **all** the Severance Policy #828 benefits.

Plaintiffs, like Defendant, have interchangeably referred to the benefits sought in this case as "severance benefits", "benefits under the Plan", "benefits under Policy #828", and "Policy #828 benefits." But Plaintiffs never, expressly or impliedly, confined the benefits sought to those set forth in <u>only</u> Section 2 of the Plan; nor did they waive their right to the benefits provided for in Section 7 of the Plan merely because that section does not have the title "Severance" in its heading. Nor has Defendant ever indicated that its repeated use of the phrase "benefits under the Plan" was restricted to only certain portions of the Plan.

For the reasons set forth in Plaintiffs' Motion (Doc. #59), these damages are not "belatedly asserted" or foreclosed,[54] but have been a part of this case from the beginning and have been considered and ruled upon by the Court. No final judgment has been entered and

---

[53] Defendant's Motion for Judgment (Doc. #23) at p. 9 (italicized bolded emphasis added).
[54] Defendant's Brief (Doc. #60) at pp. 1 & 15.

there is no procedural bar to the inclusion of these damages. Now is the time to fully adjudicate all aspects of this case. This is a damages issue which was brought to attention of defense counsel and Court as soon as the employees objected to the calculations of damages which were provided in the September 24, 2003 Court Ordered Notice. Even if Plaintiffs are faulted for failing to include the vacation pay in that first Notice, such failure is not reason to foreclose and eliminate that element of damages at this stage. Indeed, had Plaintiffs identified the issue a few months ago, before that Notice was issued, this same dispute would have arisen and this same briefing and decision would be required. The procedural facts and the record do not support a finding of a waiver; and the short delay does not justify the harsh result of foreclosure or the avoidance of a full adjudication on the merits.

Defendant has objected to Plaintiffs' Interrogatory requesting it to provide the amount of vacation time each class member had accrued as of their termination on February 9, 2001,[55] but Defendant is the entity that has all of the information readily available to make those calculations; Defendant admits it has verification information form each class member in the form of IP's Exit Administrative Process form on which each employee indicated and verified the amount of unused vacation he/she had accrued up to the date of their termination.[56] Therefore, Defendant should be ordered to produce that documentation and information to the Court and to Plaintiffs forthwith so that the vacation pay damages under Section 7.1 can be included in the final judgment entry.

---

[55] Defendant's Response to Plaintiffs' Interrogatory No. 2 (Exh. 15 to Plaintiffs' Motion for Supplemental Notice, Doc. #59).
[56] Defendant's Brief (Doc. #60) at p. 6, and Exhibit 6 thereto.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully move the Court to: 1) Order Defendant to provide the calculations of each class member's earned and unused vacation time that employee had accrued as of February 9, 2001, and 2) to approve the Supplemental Notice attached to Plaintiffs' Motion to be mailed to all class members forthwith, so that the Court can determine the complete and accurate damage figure to be included in the Final Judgment Entry.

Respectfully submitted,

s/Theresa L. Groh
Theresa L. Groh (0029806)
John C. Murdock (0063749)
Murdock Goldenberg Schneider & Groh, L.P.A.
700 Walnut Street, Suite 400
Cincinnati, Ohio  45202-2011
Telephone:  (513) 345-8291
Facsimile:  (513) 345-8294
**Trial Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Michael Roberts, Esq., Graydon, Head & Ritchey LLP, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202, and I hereby certify that I have mailed the document by United States Postal Service to the following non CM/ECF participants: W. Carter Younger, Esq. and James P. McElligott, Esq., McGuire Woods, LLP, One James Center, 901 East Cary Street, Richmond, VA  23219-4030.

s/Theresa L. Groh
Theresa L. Groh

# Exhibit 1

Annetta Johnson
02/09/2001 12:15 AM

To: HA-Salaried
cc:
Subject: Severance #828

Attached is a file with the frequently asked questions and answers regarding Sevrance Policy #828. These answers were provided by the Legal Department of International Paper.



Severance 828 Q&A2.8.01.dc

IPD300974

# Questions and Answers for Severance #828

1. Q. If I am a salaried employee and am offered a job by Smart Papers at the same base salary as I am currently earning and do not accept it, will I receive benefits under Severance Policy 828?

    A. If you are a salaried employee who is offered a position with Smart Papers at the same base salary as you are currently earning, you are not entitled to benefits under Severance Policy 828.

2. Q. If I am a salaried employee and am offered a position with Smart Papers at a lower base salary than I am currently earning and do not accept it, will I be eligible for Severance Policy 828?

    A. If you are a salaried employee and are offered a position with Smart Papers at a lower base salary than the one you are currently earning, you are entitled to turn it down without forfeiting your benefits under Severance Policy 828.

3. Q. If I am offered a position with Smart Papers at a lower base salary than I am currently earning, and accept the offer, will I be entitled to Severance Policy 828?

    A. Employees who accept offers from Smart Papers are not entitled to benefits under Severance Policy 828.

4. Q. If an employee is not offered employment because the employee has failed the drug test, will the employee be eligible for severance from IP?

    A. If a salaried or an hourly employee is not offered employment due to failure of the drug test, the employee will remain eligible for severance. Employee Assistance services also will be available.

IPD300975