IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Scott D. Dalesandro, )
<u>et al.</u>, )
                                 )
          Plaintiffs, ) Case No. C-1-01-109
                                 )
  vs. )
                                 )
International Paper )
Company, )
                                 )
          Defendant. )

<u>O R D E R</u>

       This is matter before the Court on Plaintiffs' motion for Court authorization to mail supplemental notice (Doc. No. 59) and Defendant International Paper Company's motion for judgment of law that class members have already been paid vacation benefits (Doc. No. 60).  For the reasons that follow, Plaintiffs' motion for authorization to mail supplemental notice is not well-taken and is **DENIED**; Defendants' motion for judgment of law is **MOOT**.

       Plaintiffs in the case are a class of former employees of International Paper Company who seek recover of benefits under Severance Policy #828 following the sale of the B Street Mill to Smart Paper.  The question presented by pending pleadings is identifying what benefits Plaintiffs want to recover when the filed this lawsuit, or more precisely, what benefits did Plaintiffs <u>indicate</u> they want to recover when they filed this

lawsuit.  Plaintiffs contend that their lawsuit seeks to recover "severance benefits" in its most generic sense, i.e., everything allegedly provided under the Plan, including payment for earned but unused vacation.  International Paper contends that Plaintiffs' claims for severance benefits are limited to recovery under Section 2 of the Plan, which sets forth a formula for payment of a cash benefit based on years of service with International Paper.  Alternatively, International Paper argues that Plaintiffs have received their vacation benefits under the Plan because Smart Paper assumed International Paper's obligations regarding earned and unused vacation under the asset purchase agreement.  In other words, according to International Paper, Plaintiffs were "paid" for their unused vacation with International Paper because they were able to use accrued vacation after they became employed by Smart Paper.  Notice has already been sent to the class with their individual payment calculations under Section 2 of the Plan.  Plaintiffs now wish to distribute a modified notice which includes a calculation for a payment of earned but unused vacation time.

   Upon review of the complaint and the pleadings, and though it is a close question, the Court disagrees with Plaintiffs' contention that they have always sought recovery of a cash payment for earned but unused vacation in this lawsuit.  Although Plaintiffs argue that throughout the course of the

litigation, they and International Paper have used the terms "severance benefits," "benefits under the Plan," "benefits under Policy #828," and "Policy 828 benefits," interchangeably, it is clear to the Court Plaintiffs' outward actions and statements indicated that, until absent class members raised the issue of vacation pay, this lawsuit was only about recovery of benefits under Section 2 of the Plan.

The complaint alleges that "[t]his action arises out of International Paper's denial of millions of dollars of severance pay benefit benefits to which Plaintiffs are entitled pursuant to The Reorganization Severance Policy #828." Complaint ¶ 1. Although the plan at issue is entitled "Severance Policy," and the complaint also interchangeably uses the terms "severance pay benefits" and "severance benefits," the Court notes that the Plan itself provides for a payment of earned but unused vacation under a section captioned "Miscellaneous Benefits", see Plan § 7.1, whereas payment of benefits based on years of service is provided in Section 2 under the caption, "Severance Benefits." See id. § 2. Thus, although the Plan provides several types of benefits upon termination, Plaintiffs' use of the term "severance benefits" understandably seems to limit the claim for relief to only to Section 2 benefits. Furthermore, in common usage, the term "severance pay" refers to a payment at termination based on years of service, precisely the benefit provided under Section 2,

but typically is not understood to include peripheral benefits, such as vacation pay.  <u>See</u> WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 2081 (1971).

The Court recognizes of course that in most cases, the complaint should be liberally construed in favor of the plaintiff.  Thus, were this issue arising for the first time at an early stage in the litigation, the Court would be inclined to agree with Plaintiffs that use of the term "severance benefits" is broad enough to cover all of the benefits provided by the Plan.  Until recently, however, the course of the proceedings has shown that Plaintiffs only objectively indicated, and thus have only provided fair notice of, an intention to recover Section 2 benefits.  For instance, in arguing in favor of class certification, Plaintiff's argued that:

> The only conceivable variation is that the actual dollar amount of severance pay recovered by each class member will be different since the mathematical formula set forth in Section 2 of the Plan takes into account factors such as years of employment and salary at the time of termination.  Yet, the method for calculating severance pay under the Plan is identical for all class members.

<u>See</u> Doc. No. 29 (Plaintiffs' motion for class certification), at 41 n.204.  Later in their brief, Plaintiffs argued that class members were not required to file administrative claims for severance pay, and thus should not be excluded from the class, because pursuant to Section 8, International Paper was obliged to pay Section 2 benefits automatically upon termination of

employment.  See id. at 44-45.  Plaintiffs then argued that class certification was appropriate under Rule 23(b)(3) because "the class claims are identical in every aspect except for the 'mechanical' calculation of severance pay-which can be calculated for each class member by using the formula in Section 2 of the Plan."  Id. at 52-53 (emphasis in original).  During a telephone conference with the Court regarding the form of the proposed class notice, most of the discussion centered on the exhibit with the calculation of benefits, with International Paper stating without objection that "this is really sort of a straightforward matter of calculating the benefits, sort of what your last salary was, what your years of service was, and to a certain extent, what your age is[.]" See Doc. No. 42, Transcript at 6.  No discussion was had regarding calculation or notice regarding payment of earned but unused vacation.  Indeed, the proposed notice to the class actually submitted to the Court only provides a calculation of benefits consistent with Section 2 of the Plan. See Doc. No. 43, Ex. 1.  Finally, the Court notes that Plaintiffs' application for attorney's fees is based on their success in obtaining Section 2 benefits for the class, which they describe as "the maximum amount of damages" they reasonably could have been expected to recover," without any reference to recovery of vacation pay.  See Doc. No. 45, at 10; Doc. No. 45. Ex. 8.

Despite the apparent breadth of the claims for severance benefits in the complaint, as shown by the factors just mentioned, Plaintiffs' subsequent conduct in this case, unambiguously indicated that their claims were limited to recovery of Section 2 benefits. Nothing in any of their statements or conduct before the Court indicates otherwise or shows an intention to recover vacation pay in this lawsuit. Plaintiffs, in fact, manifested exactly the opposite intention. Had they truly believed they were attempting recover vacation pay in this lawsuit, Plaintiffs surely would have raised this issue during the initial discussions with International Paper about the form of the notice. The fact that no objection was raised about the benefits calculations until absent class members, who were not involved in the preparation or filing of the lawsuit, protested confirms that the named Plaintiffs did not intend to recover vacation pay benefits. Therefore, Plaintiffs could not have reasonably put International Paper on notice that a claim for recovery of vacation pay was included in this lawsuit.

To allow Plaintiffs to amend the notice to include a calculation of vacation pay benefits at this point would be to allow Plaintiffs to amend the complaint at a very late stage in the proceedings. Given that Plaintiffs have had ample opportunity to clarify their pleadings prior to issuance of the notice to the class, an amendment of the complaint at this time

would be unfairly prejudicial to International Paper, and therefore, will not be permitted.  See Thiokol Corp. v. Department of Treasury, 987 F.2d 376, 383 (6th Cir. 1993)("In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given.")(internal quotation marks omitted).  Accordingly, Plaintiffs' motion for authorization to mail supplemental notice to the class is not well-taken and is **DENIED**.

Given that the Court has determined that Plaintiffs have not raised claims for recovery of vacation pay under the Plan, it need not decide whether the asset purchase agreement with Smart Paper satisfied Plaintiffs' alleged entitlement to recover vacation pay.  Therefore, International Paper's motion for judgment of law on this issue is **MOOT**.  To be clear, the Court has decided only that Plaintiffs have not properly raised claims for recovery of vacation pay in this lawsuit.  The Court makes no determination whether or not Plaintiffs, or others, are entitled to vacation pay under Policy #828.  Similarly, the Court makes no determination whether Smart Paper assumed and satisfied International Paper's alleged obligation to pay benefits based on

earned but unused vacation pay.  Those issues, we suppose, will have to be decided in another case.

      **IT IS SO ORDERED**

Date January 13, 2004           s/Sandra S. Beckwith
                                        Sandra S. Beckwith
                                  United States District Judge