BARBARA M. LEHMAN

October 3, 2003

Sharon Barger
International Paper
6400 Poplar Ave.
Memphis, Tennessee 38197

Dear Ms. Barger,

I recently received from Theresa Groh, of Murdock Goldenberg Schneider & Groh, the enclosed Severance Pay Calculation Under Policy #828 pursuant to class action lawsuit Dalesandro, et al  v. The International Paper Company.

I believe the calculation to be in error due to the years of service listed.

I was employed by Champion International/International Paper from Jan. 1, 1974 through October 1978 for 4.75 years.  Then I was employed from November 9, 1981 through termination on February 9, 2001 for 19.25 year. This leads to 24 years of service.  The 24, not 19.25, years of service were used for all things before the divestiture, including vacation time, years of service and retirement calculations.  Twenty-four (24) years of service leads to 43 Weeks of Severance. (Ten (10) weeks regular earnings plus twenty-four (24) weeks for each year of Credited Service plus nine (9) weeks for each year over fifteen years.) This will increase my severance amount to $52,344.33.

I request that you please review and resolve this discrepancy.  My daytime phone number is 513-869-5033.

Barbara M. Lehman
6664 Wayne Trace Rd
Somerville Oh 45064

October 3, 2003

Sharon Barger
International Paper
6400 Poplar Ave.
Memphis, Tennessee 38197

Dear Ms. Barger,

      I recently received from Theresa Groh, of Murdock Goldenberg Schneider & Groh, the enclosed Severance Pay Calculation Under Policy #828 pursuant to class action lawsuit Dalesandro, et al v. The International Paper Company.

      I believe the calculation to be in error due to the years of service listed.

      I was employed by Champion International/International Paper from Jan. 1, 1974 through October 1978 for 4.75 years. Then I was employed from November 9, 1981 through termination on February 9, 2001 for 19.25 year. This leads to 24 years of service. The 24, not 19.25, years of service were used for all things before the divestiture, including vacation time, years of service and retirement calculations. Twenty-four (24) years of service leads to 43 Weeks of Severance. (Ten (10) weeks regular earnings plus twenty-four (24) weeks for each year of Credited Service plus nine (9) weeks for each year over fifteen years.) This will increase my severance amount to $52,344.33.

      I request that you please review and resolve this discrepancy. My daytime phone number is 513-869-5033.

Barbara M. Lehman
6664 Wayne Trace Rd
Somerville Oh 45064

RECEIVED OCT 0 8 2003

**Exhibit A to Class Notice**

**Barbara M. Lehman**

### YOUR SEVERANCE PAY CALCULATION UNDER POLICY #828

| Weekly Pay | Years of Service | Age at February 9, 2001 Termination | Weeks of Severance |
|---|---|---|---|
| $1,217.31 | 19.25 | 55 | 33.50 |

**Your #828 Severance Pay Amount:  $40,779.89**

**Your Flex Six Enhancement:**

Since International Paper Company's records indicate that you were age 49 or older and your age and service equaled at least 59 as of February 9, 2001, if the Court of Appeals upholds Judge Beckwith's decision, your monthly benefit under the Retirement Plan will be enhanced as indicated below.  The amounts below reflect the benefits payable on a retirement as of February 9, 2001 and assume that the benefit is received as a single life annuity.

Monthly Benefits Without Flex Six:

| | |
|---|---|
| Monthly life annuity of | $1,443.73 payable at normal retirement date |
| x Early retirement factor | 0.696 |
| = Monthly life annuity of | $1,004.84 payable 2/9/2001 |

Monthly Benefit With Flex Six:

| | |
|---|---|
| Monthly life annuity of | $1,443.72 payable at normal retirement date |
| x Early retirement factor | 0.984 |
| = Monthly life annuity of | $1,420.62 payable 2/9/2001 |

Section 7.4(b) of the Champion Salaried Retirement Plan #0001 and its successor, the Retirement Plan of International Paper Company (the "Retirement Plan"), provides that the "Benefit Commencement Date" of a retiring employee can be any time after age 55 provided that a participant is not employed by Champion (now International Paper Company) or an affiliate or "with respect to a Participant who worked at a divested location, by any purchaser of such location."  It is International Paper Company's position that since Smart Papers, LLC is a purchaser of a divested location under the Retirement Plan, an affected participant cannot start benefits until after the end of your employment with Smart Papers, LLC.  Without Flex Six, the date you can obtain benefits is determined under the terms of the Retirement Plan.  For more information about the Retirement Plan, refer to your Summary Plan Description or contact:

Sharon Barger
International Paper
6400 Poplar Ave
Memphis, Tennessee 38197

{00008540; 4}

October 8, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:
In response to the court ordered Notice of September 24, 2003, we the individual
members are to notify you in writing of discrepancies in the calculation of our severance
pay and severance benefits of Severance Policy 828.

As outlined in the attached letter you miscalculated my year of service compensation.
That number should have been 43 weeks at $ 1217.31 or $52344.33. Also, you left off
other pertinent benefits that were part of the entire 828 package that I am eligible for, that
being vacation pay and 9 months of COBRA coverage.

I am entitled to five (5) weeks of vacation pay, $6086.55.

Also 9 months of Cobra at ($95.63 medical & $25.14 dental per pay) for 18 pay periods
or $2,173.86.

This brings the total owed to me from International Paper to:

| | |
|---|---|
| Salary | $52344.33 |
| Vacation | $ 6086.55 |
| Cobra | $ 2173.86 |
| Total | $60604.74 |

Sincerely,

Barbara Lehman
6664 Wayne Trace Rd
Somerville, Ohio 45064

Cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT 2 0 2003



International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Barbara M. Lehman
6664 Wayne Trace Road
Somerville, Ohio 45064

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Ms. Lehman,

We are in receipt of your letters dated October 3, 2003, and October 9, 2003 in which you question the years of service used for the calculation of possible severance benefits payable under Champion International Corporation Reorganization Severance Policy #828 ("the Plan") as well as entitlement to vacation pay and reimbursement for COBRA coverage.  The following will explain the results of our research.

A review of your records indicates a previous period of Champion service should have been included in your estimated severance calculation.  A corrected Exhibit A is enclosed.

In your letter, you also question your years of service used for your retirement calculation.  Your benefit was calculated using 23.96 years of credited service.  This does include your previous period of employment with the company, therefore there will be no change in your retirement calculation.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits.  Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage, which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,


Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

/slb
Encl.
CC:  File

**Exhibit A**
**Barbara M. Lehman**

Severance Calculation

| Weekly Pay | Years of Service | Age at February 9, 2001 Termination | Weeks of Severance |
|---|---|---|---|
| $1,217.31 | 25 | 55 | 50 |

#828 Severance Pay:   $60,865.50

Flex Six Enhancement:

Because you were age 49 or older and your age and service equaled at least 59 as of February 9, 2001, if the court's ruling that you are entitled to benefits is upheld following appeals, your monthly benefit under the Retirement Plan will be enhanced as follows. The amounts below reflect the benefits calculated as of February 9, 2001, on a single life annuity basis.

Monthly Benefits Without Flex Six:

| | |
|---|---|
| Monthly life annuity of | $1,443.73 payable at normal retirement date |
| X Early retirement factor | 0.696 |
| = Monthly life annuity of | $1,004.84 payable 2/9/2001 (subject to the blocking provision) |

Monthly Benefit with Flex Six:

| | |
|---|---|
| Monthly life annuity of | $1,443.72 payable at normal retirement date |
| X Early retirement factor | 0.984 |
| = Monthly life annuity of | $1,420.62 payable 2/9/2001 (subject to the blocking provision) |

Section 7.4(b) of the Champion Salaried Retirement Plan #001 and its successor, the Retirement Plan of International Paper Company, provides that the "Benefit Commencement Date" of a retiring employee can be any time after age 55 provided that a participant is not employed by Champion (now IP) or an affiliate or "with respect to a Participant who worked at a divested location, by any purchaser of such location". Because Smart Papers is a purchaser of a divested location under the Retirement Plan, an affected participant cannot start benefits until terminating employment with Smart Papers. This blocking provision applies whether or not you receive the Flex Six benefits. For more information about the Retirement Plan, refer to your Summary Plan Description or contact the Employee Service Center at 1 (888) ESC-2YOU.

MATT LEWIS

October 13, 2003


Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:
In response to the court ordered Notice of September 24, 2003, we the individual members are to notify you in writing of discrepancies in the calculation of our severance pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service and weekly pay correctly. That number 21.74 weeks at $ 1,809.62 per week or $39,341.14, however you left off other pertinent benefits that were part of the entire 828 package that I am eligible for, that being vacation pay and 9 months of COBRA coverage.

I am entitled to four (4) weeks of vacation pay at $1,809.62 per week.

Also Cobra paid at $507.

This brings the total owed to me from International Paper to:

| | | |
|---|---|---|
| Salary | $39,341.14 | |
| Vacation | $ 7,238.48 | |
| Cobra | $ 507.00 | |
| **Total** | **$47,086.62** | |


Sincerely,

Matt Lewis
Matt Lewis


Cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT 2 0 2003



International Place I
6400 Poplar Ave.
Memphis, TN  38197
Phone 901 763 6000

May 25, 2004

Mr. Matt Lewis
6451 Willow Brooke Dr.
Hamilton, OH  45011

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Lewis:

We are in receipt of your letter dated 10/20/2003, in which you question your entitlement to vacation and/or COBRA.  The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

MIKE LOPANE

Mike Lopane
6131 Cherry Lane Farm Dr
West Chester OH 45069

October 23, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:     Dalesandro, vs International Paper
        Case No. C-1-01-109
        US District Court, Southern District of Ohio

Dear Ms Barger:

In response to the court ordered Notice of September 24, 2003, we the individual members are to notify you in writing of discrepancies in the calculation of our severance pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service and weekly pay correctly. That number 7.62 weeks at $1275.00 or $22,465.5, however you left off other pertinent benefits that were part of the entire 828 package that I am eligible for, that being vacation pay and 9 months of COBRA coverage.

I am entitled to three (3) weeks of vacation pay, $3,825.00

Also 9 months of Cobra at ($95.63 medical & $25.14 dental per pay) for 18 pay periods or $2,173.86.

This brings the total owed to me from International Paper to:

| | |
|---|---|
| Salary | $22,465.50 |
| Vacation | $ 3,825.00 |
| Cobra | $ 2,173.86 |
| Total | $28,464.36 |

Sincerely,

Mike Lopane

Cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT 2 8 2003



**INTERNATIONAL PAPER**

International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Mr. Michael Lopane
6131 Cherry Lane Farm Dr.
West Chester, OH  45069

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Lopane:

We are in receipt of your letter dated 10/28/2003, in which you question your entitlement to vacation and/or COBRA.  The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

MARY LOUDEN

October 20, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:
In response to the court ordered Notice of September 24, 2003, we the individual
members are to notify you in writing of discrepancies in the calculation of our severance
pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service at 13.52 correctly, however my weekly pay
should be at $987.58.  (My bimonthly rate was $2139.75.)  Therefore 13.52 weeks at
$987.58 is $13,352.08.

Also, you left off other pertinent benefits that were part of the entire 828 package that
I am eligible for, that being vacation pay and 9 months of COBRA coverage.

I am entitled to two (2) weeks of vacation pay, $1,975.16.

Also 9 months of Cobra at ($95.63 medical & $25.14 dental per pay) for 18 pay periods
or $2,173.86.

This brings the total owed to me from International Paper to:

| | | |
|---|---|---|
| Salary | $13,352.08 |
| Vacation | $1,975.16 |
| Cobra | $2,173.86 |
| Total | $17,501.10 |

Sincerely,

Mary Louden

Cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT 2 4 2003



International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Ms. Mary C. Louden
7312 Bernard Avenue
Cincinnati, OH 45231

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Ms. Louden:

We are in receipt of your letter dated 10/24/2003, in which you question your entitlement to vacation and/or COBRA. The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale. Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers. Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later. As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper. When you obtained comparable coverage, you eligibility for COBRA ended. Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator



International Place I
6400 Poplar Ave.
Memphis, TN  38197
Phone 901 763 6000

**CORRECTION**

Ms. Mary C. Louden
7312 Bernard Avenue
Cincinnati, OH  45231

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Ms. Louden:

We are in receipt of your letter dated 10/24/2003, in which you question the amount of the earnings used for the calculation of possible severance benefits payable under Champion International Corporation Reorganization Severance Policy #828 ("the Plan") and your entitlement to vacation and/or COBRA.  The following will explain the results of our research.

A review of payroll records indicates you were paid on a semi-monthly basis.  Your semi-monthly pay was $2,054.17, or $49,300.08 annually, which, according to the plan is $948.08 per week for severance.

As a result of our findings, no change will be made to the estimated severance benefit quoted in our previous communication.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits.  Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

CURTIS W. MARCUS

October 8, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:

In response to the court ordered Notice of September 24, 2003, we the individual members are to notify you in writing of discrepancies in the calculation of our severance pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service and weekly pay correctly. That number Eleven (11) weeks at $ 7,986.00, however you left off other pertinent benefits that were part of the entire 828 package that I am eligible for, that being vacation pay and 9 months of COBRA coverage.

I am entitled to two (2) weeks of vacation pay, $1,452.00.

Also 9 months of Cobra at ($95.63 medical & $25.14 dental per pay) for 18 pay periods or $2,173.86.

This brings the total owed to me from International Paper to:

| | |
|---|---|
| Salary | $7,986.00 |
| Vacation | $1,452.00 |
| Cobra | $2,173.86 |
| Total | $11,671.86 |

Sincerely,

Curtis W. Marcus
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

Cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT 2 8 2003
RECEIVED OCT 2 8 2003

REUSABLE

UPS Reusable Letter. Use twice, then recycle.

Place Labels in This Space

Options: ☒ UPS Tracking Label and your address label
☒ UPS Air Shipping Document
☒ UPS Worldwide Waybill

♻ 100% Recycled Fiber
(80% Post-Consumer Content)

The Next Day Air Letter is to be used for document shipments only.
There is no limit on weight or the number of pages you may enclose.
Do not send cash or cash equivalent.

Call 1-800-PICK-UPS (1-800-742-5877) or visit our Web site at www.ups.com



Route
HQ Mail-1
Delivery Point
M-15
BARGER, SHARON          10/27/03
TP                      10:08:18
Pkg/Bill #
1Z77V3330102231113

CURTIS MARCUS                    LTR       1 OF 1
(513)863-8073
THE UPS STORE #4318
675N- DEIS DRIVE
FAIRFIELD OH 45014

SHIP SHARON BARGER
TO: INTERNATIONAL PAPER
6400 POPLAR AVE

MEMPHIS  TN 38197-0198

 TN 384 9-03

UPS NEXT DAY AIR                         1
TRACKING #: 1Z 77V 333 01 0223 1113



BILLING: P/P

REF #1: 14937773

ISH 3.30 E2044 23.0A 07/2003

   International Shipping Notes – Certain commodities may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited. For shipping please, call 1-800-782-7892.  
United Parcel Service, Louisville, KY

REUSABLE LET



International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Mr. Curtis Marcus
4667 Matthew Place
Fairfield, OH 45014

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Marcus:

We are in receipt of your letter dated 10/28/2003, in which you question your entitlement to vacation and/or COBRA. The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale. Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers. Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later. As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper. When you obtained comparable coverage, you eligibility for COBRA ended. Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

**JEFF MARTIN**

Jeff Martin
309 Walthan Court
Hamilton, Ohio 45013
Phone: 513-863-7908

October 21, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, et al. v. The International Paper Company
        Case No. C-1-01-109
        US District Court, Southern District of Ohio

Dear Ms Barger:

In response to the court ordered Notice of September 24, 2003, we the individual members are to notify you in writing of discrepancies in the calculation of our severance pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service and weekly pay correctly. That number is 39.30 weeks at $1,657.70 or $65,147.61. However, you left off other pertinent benefits that were part of the entire 828 package that I am eligible for, that being banked vacation pay.

I am entitled to five (5) weeks of earned but unused vacation pay resulting from the year 2000, for a lump sum of $8,288.50.

I am not entitled to any COBRA medical or dental premiums refund.

This brings the total owed to me from International Paper to:

| | |
|---|---|
| Salary | $65,147.61 |
| Vacation | $ 8,288.50 |
| Cobra | $ 0.00 |
| Total | $73,436.11 |

Sincerely,

Jeff Martin
Class Member

Xc:
Theresa L. Groh, Esq. - Murdock, Goldenberg, Schneider & Groh, L.P.A.

RECEIVED OCT 2 4 2003



International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Mr. Jeffrey L. Martin
309 Walthan Court
Hamilton, OH 45013

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Martin:

We are in receipt of your letter dated 10/24/2003, in which you question your entitlement to vacation. The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale. Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers. Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later. As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper. When you obtained comparable coverage, you eligibility for COBRA ended. Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

THOMAS J. McALPIN, IV

October 8, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:

In response to the court ordered Notice of September 24, 2003, we the individual
members are to notify you in writing of discrepancies in the calculation of our severance
pay and severance benefits of Severance Policy 828.

You did indeed calculate my weekly pay correctly. However, the Years of Service is
incorrect. That number is 4 Years. Therefore 14 weeks at $ 1194.24 or $16,719.36.
Also, other pertinent benefits of the entire 828 package which I am eligible for were left
off the September 24, 2003 letter. These include vacation pay and 9 months of COBRA
coverage.

I am entitled to three (3) weeks of vacation pay, $3582.72.

Also 9 months of Cobra at ($22.95 medical & $11.22 dental per pay) for 18 pay periods
or $615.06.

This brings the total owed to me from International Paper to:

| | |
|---|---|
| Salary | $16,719.36 |
| Vacation | $3582.72 |
| Cobra | $615.06 |
| Total | $20,917.14 |

Sincerely,

Thomas J. McAlpin IV
4291 Dry Run Drive
Hamilton, Ohio 45013

xc: Theresa L. Groh, Esq.
Murdock, Goldenberg, Schneider
&Groh, L.P.A.
700 Walnut Street
Suite 400
Cincinnati, Ohio 45202

RECEIVED OCT 1 4 2003



International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Mr. Thomas McAlpin
4291 Dry Run Drive
Hamilton, OH 45013

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. McAlpin:

We are in receipt of your letter dated 10/14/2003, in which you question your entitlement to vacation and/or COBRA. The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale. Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers. Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later. As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper. When you obtained comparable coverage, you eligibility for COBRA ended. Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

JOHN E. McCOLLUM

October 9, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs. International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms. Barger:
In response to the court ordered Notice of September 24, 2003, we the individual
members are to notify you in writing of discrepancies in the calculation of our severance
pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service and weekly pay correctly. That number is
31.24 weeks at $1,457.70, or $45,538.55, however you left off other pertinent benefits
that were specifically part of the entire 828 package, that I am eligible for. Those items
are Vacation Pay (Section 7.1) and COBRA coverage (Section 4, ii).

Vacation Pay: With 18 years of service, I am entitled to five (5) weeks of vacation pay.
5 weeks unused vacation @ $1,457.70/week, or $7,288.50.

COBRA coverage: The total amount I paid for COBRA coverage from the date of my
Termination until I was no longer eligible for COBRA coverage is  $573.75.

This brings the total amount owed to me from International Paper to:

| | |
|---|---|
| Salary | $45,538.55 |
| Vacation | $ 7,288.50 |
| COBRA | $    573.75 |
| Total Severance | $53,400.80 |

Sincerely,

John E. McCollum

CC:
Murdock, Goldenberg, Schneider & Groh

RECEIVED OCT 1 4 2003



International Place I
6400 Poplar Ave.
Memphis, TN  38197
Phone 901 763 6000

May 25, 2004

Mr John E McCollum
6798 Summer Stone Ct.
Hamilton, OH  45011

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr McCollum:

We are in receipt of your letter dated 10/14/2003, in which you question your entitlement to vacation and/or COBRA.  The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits.  Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,


Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

MICHAEL L. MEYER

October 14, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:     Dalesandro, vs International Paper
        Case No. C-1-01-109
        US District Court, Southern District of Ohio

Dear Ms Barger:

In response to the court ordered Notice of September 24, 2003, we the individual
members are to notify you in writing of any discrepancies in the calculation of our
severance pay and severance benefits related to the Champion International
Reorganization Severance Policy #828.  Therefore I, as one of the members of the class,
am notifying you in writing of the following discrepancies in the calculation of my
severance pay and benefits:

### Item #1 – Weekly Pay

Attached to this letter is exhibit #1, a copy of my pay stub for the pay period
1/1/01-1/15/01.  At the bottom of the stub you will see my gross pay for this two-
week period is listed as $3,238.69, which works out to a weekly salary of
$1619.34 as opposed to the weekly salary of $1357.70 claimed by International
Paper(see exhibit #2).

### Item #2 – Vacation Pay

At the time of my severance, I had not used any of the 5 weeks of vacation to
which I was entitled by my 21 years of service.  Therefore I am claiming an
additional 5 weeks of severance pay in lieu of this unused vacation.

### Item #3 – Cobra Payments

In the period following my severance from International Paper, I paid out $504.90
in payroll deductions to Smart Papers LLC for Cobra medical coverage(see
exhibit #3).  Therefore I am claiming this amount of money for the Cobra
payments following my termination.

### Item #4 – Pension Enhancement

At the time of my severance from International Paper, I was age 49 and had a
total 21.7 years of service with Champion International and International
Paper(see exhibit 2).  Since my age is greater than or equal to 49 years and my
combination of age and years of service is greater than or equal to 59 I therefore
qualify for the plan #828 pension enhancement.  This enhancement entitles me to

**RECEIVED OCT 2 0 2003**

early retirement, post retirement death benefits, post retirement life insurance, and post retirement medical plan coverage.

**Item #5 – Financial Planning/Retirement Planning**
Since I will be eligible for early retirement due to the pension enhancement as mentioned in Item #4, I will require the financial/retirement planning assistance outlined on page 6 of the "Summary Plan Description" of plan #828.

In summary, the various benefits owed to me by International Paper are as follows:

**Monetary Benefits**

|   |   |   |
|---|---|---|
|   | 10.0 | wks earnings base severance |
|   | 21.7 | wks earnings for 21.7 yrs of service |
|   | 6.7 | wks earnings for each yr of service over 15 yrs |
| + | 5.0 | wks earnings for 5 wks of unused vacation |
| = | 43.4 | total wks of earnings |

=   43.4   total wks of earnings X $1,619.34/wk salary = $70,279.36

|   |   |   |
|---|---|---|
|   | $58,924.18 | severance earnings |
| + | $504.90 | cobra payments |
| = | $59,429.08 |   |

**Other Benefits**
Pension enhancement consisting of:
- Early retirement
- Post retirement death benefits
- Post retirement life insurance
- Post retirement medical plan coverage

Financial/retirement planning assistance

Sincerely,

*Michael L. Meyer*

Michael L. Meyer

**Murdock**, Goldenberg, Schneider & Groh

Champion International Corporation    Knightsbridge  Hamilton, Ohio   45020

| | | DATE | 01-12-2001 |
|---|---|---|---|
| | | NO. | 10001211 |
| | | AMOUNT | |

| FINANCIAL INSTITUTION | DESCRIPTION | ACCOUNT NUMBER | AMOUNT |
|---|---|---|---|
| CHACO CREDIT UNION | DIR DEP SAV | 158720 | 1,464.46 |

*Exhibit #1*

```
CC 5A MMHA 5430 4600 M0001  C297047786
MICHAEL LOUIS MEYER
782 IMPALA PLACE
HAMILTON          OH 45013
```

## PAYROLL DEPOSIT ADVICE ONLY - NON NEGOTIABLE

STATEMENT OF EARNINGS AND DEDUCTIONS          RETAIN FOR YOUR RECORDS

INTERNATIONAL PAPER  (CC-5A) MEYER, MICHAEL LOUIS
CC5A
C297047786

| DESCRIPTION | RATE | HOURS | EARNINGS | YEAR TO DATE | | TAXES/DEDUCTIONS | YEAR TO DATE |
|---|---|---|---|---|---|---|---|
| REGULAR EARNING | | 8666 | 294167 | 294167 | FEDERAL TAX | 31636 | 31636 |
| BENEFIT $'S-1 | | | 7752 | 7752 | SOCIAL SEC TAX | 17974 | 17974 |
| BENEFIT $'S-2 | | | 21950 | 21950 | MEDICARE TAX | 4204 | 4204 |
| | | | | | OHIO | 11412 | 11412 |
| | | | | | HAMILTON | 6038 | 6038 |
| | | | | | LTD | 2589 | 2589 |
| | | | | | GROUP LIFE | 913 | 913 |
| | | | | | SAL SAV LOAN 1 | 25840 | 25840 |
| | | | | | PRETAX DENTAL | 3050 | 3050 |
| | | | | | PRTAX GRP LIFE | 500 | 500 |
| | | | | | PRTAX SLRY SAV | 17650 | 17650 |
| | | | | | PRTAX HTH CARE | 2917 | 2917 |
| | | | | | PRTAX OCMED | 27500 | 27500 |
| | | | | | UNITED WAY | 200 | 200 |
| | | | | | CHACO C/U | 25000 | 25000 |
| | | | | | DIR DEP SAV | 146446 | 146446 |

SEE BACK FOR IMPORTANT MESSAGE

*Earnings for 2 week period*

| | EARNINGS | TAXES | DEDUCTIONS | NET PAY | PAY PERIOD | SEQUENCE NUMBER | AMOUNT OF DEPOSIT |
|---|---|---|---|---|---|---|---|
| CURRENT | 323869 - | 71264 - | 106159 = | 146446 | BEGIN 01-01-01 | 10001211 | 146446 |
| YEAR TO DATE | 323869 - | 71264 - | 106159 = | 146446 | END 01-15-01 | | |

FC1137

Exhibit #2

## Exhibit A to Class Notice

### Michael L. Meyer

### YOUR SEVERANCE PAY CALCULATION UNDER POLICY #828

| Weekly Pay | Years of Service | Age at February 9, 2001 Termination | Weeks of Severance |
|---|---|---|---|
| $1,357.70 | 21.70 | 49 | 38.40 |

vs $1619.34 calculated from pay stub - see item #1

correct

correct

+5 weeks unused vacation - see item #2

**Your #828 Severance Pay Amount: $52,135.68**

{00008567; 1}

*Exhibit #3*

*printout of email from Ted Hillberg, Smart Papers LLC*

**Meyer, Mike**

**From:** Hillberg, Ted
**Sent:** Friday, October 10, 2003 2:44 PM
**To:** Meyer, Mike
**Subject:** Cobra payments

| | PAYDATE | CHK# | DED AMT |
|---|---|---|---|
| MEYER, MICHAEL LOUIS | 5/4/2001 | 00180054 | |
| MEYER, MICHAEL LOUIS | 5/18/2001 | 00204056 | 84.15 |
| MEYER, MICHAEL LOUIS | 6/1/2001 | 00220058 | 84.15 |
| MEYER, MICHAEL LOUIS | 6/15/2001 | 00244007 | 84.15 |
| MEYER, MICHAEL LOUIS | 6/29/2001 | 00260060 | 84.15 |
| MEYER, MICHAEL LOUIS | 7/13/2001 | 00280059 | 84.15 |
| **MEYER, MICHAEL LOUIS Total** | | | 84.15 |
| | | | **504.90** |

10/10/03



International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Michael L. Meyer
782 Impala Place
Hamilton, Ohio 45013

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Meyer,

We are in receipt of your letter dated October 14, 2003, in which you question the amount of the earnings used for the calculation of possible severance benefits payable under Champion International Corporation Reorganization Severance Policy #828 ("the Plan") as well as entitlement to vacation pay, reimbursement for COBRA coverage and pension enhancement. The following will explain the results of our research.

A review of payroll records indicates you were paid on a semi-monthly basis. The check stub that you provided in your correspondence was for the pay period of January 1 through January 15, which is a semi-monthly not a bi-weekly pay period. Your semi-monthly pay was $2,941.67, or $70,600.08 annually, which, according to the plan is $1,357.70 per week for severance.

As a result of our findings, no change will be made to the estimated severance benefit quoted in our previous communication.

Regarding pension, I have enclosed updated pension information reflecting your eligibility for the enhanced pension benefit as provided in the Plan.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale. Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers. Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later. As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper. When you obtained comparable coverage, you eligibility for COBRA ended. Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,


Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

/slb

Encl.

CC: File

**Flex6 Calculation for Mike Meyer**
**Social Security Number 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**

## Employee Data

Social Security Number: 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
Name: Mike Meyer
Date of Birth: 01/29/1952
Date of Hire: 05/29/1979
Marital Status: M
Spouse's Date of Birth: 11/20/1956
Last Date of Hire: 05/29/1979
Location Code: 002HAOH
Current Annual Base Pay Amount: $70,600.08
Date of Termination: 02/09/2001
Credited Service: 21.71000
Vesting Service: 21.69000
Monthly Final Average Pay: $5,364.80
Current Monthly Social Security: $1,602.00
Flex 6 Monthly Social Security: $1,299.00
Age 62 Monthly SS for Level Income: $1,299.00
Age 65 Monthly SS for Level Income: $1,608.00

## Processing Notes

Prepared By: swp  11/07/2003

## SUMMARY OF SEVERANCE AND PENSION

**Basic Demographic Information**

| | | | |
|---|---|---|---|
| Age at retirement | | 49.08 | Mike Meyer |
| Credited service at termination for pension | | 21.71 | Name |
| Vesting service at termination for pension | | 21.69 | |
| Service from last hire date for severance | | 21.70 | |
| Annual base pay at termination for severance | $ | 70,600 | 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 |
| 5-year final average earnings for pension | $ | 5,365 | Social Security Number |
| Assumed social security without Flex 6 enhancement | $ | 1,602 * | |
| Assumed social security with Flex 6 enhancement | $ | 1,299 ** | |

**Severance**

| | | |
|---|---|---|
| Weeks of severance | | 38.40 |
| Single sum severance payment | **$** | **52,135** |

**Pension**

Without Flex 6

| | | | |
|---|---|---|---|
| Monthly life annuity of | $ | 1,361.78 | payable at normal retirement date |
| x Early retirement factor | | 0.500 | |
| = Monthly life annuity of | **$** | **680.89** | payable when you turn age 55 |

| | | |
|---|---|---|
| Eligible for Flex 6? | | *YES* |

| | | |
|---|---|---|
| Optimum combination | | *Age plus 6 and Service plus 0* |

With Flex 6

| | | | |
|---|---|---|---|
| Monthly life annuity of | $ | 1,471.43 | payable at age 65 |
| x Early retirement factor | | 0.668 | |
| = Monthly life annuity of | **$** | **982.92** | payable immediately |

| | | |
|---|---|---|
| Adjusted age of | | 55.08 |
| Adjusted credited service of | | 21.71 |
| Adjusted vesting service of | | 21.69 |

  * with level future earnings if not currently retirement eligible; zero future earnings if currently retirement eligible
** with zero future earnings if Flex 6 eligible

Preparation Date: 11/07/2003
Prepared By: swp

## TOTAL PENSION BENEFIT CALCULATION WITH FLEX 6 ENHANCEMENTS

| | | | |
|---|---|---|---|
| Name | Mike Meyer | Retirement Date | 03/01/2001 |
| Social Security Number | 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 | Termination Date | 02/09/2001 |
| Plan Number | 001A | Preparation Date | 11/07/2003 |
| | | Prepared By | swp |

### CALCULATION DATA

| | | | |
|---|---|---|---|
| Birth Date | 01/29/1952 | Normal Retirement Date | |
| Spouse's Birth Date | 11/20/1956 | without Flex 6 | 02/01/2017 |
| Hire Date | 05/29/1979 | Age at Retirement | 49.08333 |
| Vesting Service with Flex 6 | 21.69000 | Soc. Sec. Benefit with Flex 6 | $1,299.00 |
| Credited Service with Flex 6 | 21.71000 | | |

Monthly Final Average Earnings (from before Flex 6 calculation sheet)        $5,364.80

### DETERMINATION OF MONTHLY RETIREMENT BENEFIT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| A. .01667 | x | 21.71000 | x | $5,364.80 | = | $ | 1,941.55 |

PLUS:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| B. .00500 | x | 0.00000 | x | $5,364.80 | = | $ | - |

LESS:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| C. .01667 | x | 21.71000 | x | $1,299.00 | = | $ | 470.12 |
| D. TOTAL | | | | | | $ | 1,471.43 |

| | | | |
|---|---|---|---|
| MONTHLY BENEFIT PAYABLE AT | 02/01/2017 | $ | 1,471.43 |
| Reduction for Early Retirement with Flex 6 | 0.66800 | $ | 488.51 |
| MONTHLY BENEFIT PAYABLE AT | 03/01/2001 | $ | 982.92 |

This calculation assumes that you work until the termination date selected.
In addition, no projection is made for your Final Average Earnings

Your optimum Flex 6 combination is: Age plus 6 and Service plus 0.

SALARIED RETIREMENT PLAN
OPTIONAL FORMS OF RETIREMENT BENEFITS

Name: Mike Meyer
Social Security Number:      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

Plan Number: 001A
Retirement Date: 03/01/2001
Date Prepared: 11/07/2003

Monthly Benefit Payable

| To retiree | To Contingent Annuitant | |
|---|---|---|
| $982.92 | N/A | SINGLE LIFE ANNUITY - You will receive a payment for your lifetime, payments stop at your death. |
| | | CONTINGENT ANNUITANT ANNUITY OPTIONS - You will receive a monthly benefit during your lifetime and guarantee that the contingent annuitant you designate will receive a selected percentage of that benefit for their lifetime after your death. |
| $884.63 | $442.32 | 50% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| $835.48 | $626.61 | 75% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| $786.34 | $786.34 | 100% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| | | LIFE-TERM CERTAIN ANNUITY OPTIONS - This option provides you with a monthly benefit for your lifetime.  If you die within the selected guaranteed period, your named beneficiary will continue to receive the same monthly amount for the balance of the period.  If you live longer than the guaranteed period, payments stop at your death. |
| $963.26 | | 5 YEAR CERTAIN |
| $914.12 | | 10 YEAR CERTAIN |
| $855.14 | | 15 YEAR CERTAIN |
| $796.17 | | 20 YEAR CERTAIN |
| $1,355.25 | to 02/01/2014 | LEVEL INCOME OPTION - This option pays a larger benefit to age 62 and a benefit after age 62, reduced to account for social security. |
| $56.25 | thereafter | Payments stop at your death. |
| $1,235.81 | to 02/01/2017 | LEVEL INCOME OPTION - This option pays a larger benefit to age 65 and a benefit after age 65, reduced to account for social security. |
| $0.00 | thereafter | Payments stop at your death. |
| $904.29 | | FULL CASH REFUND ANNUITY - This option provides you with a monthly benefit for lifetime with a guarantee that if you die before receiving payments equal to the total annuity value, your named beneficiary will receive the difference in a lump sum.  If you die after the monthly payments exceed the annuity value, payments stop at your death. |

ANNUITY VALUE
$134,420.87

If you are not married, the single life annuity is the basic form of retirement benefit under the plan.

If you are married, the joint & surviving spouse annuity is the basic form of retirement benefit under the plan and is payable in the amounts shown under the 50% contingent annuitant option above.

## SCHEDULE OF DEATH BENEFIT AFTER RETIREMENT

| | | | |
|---|---|---|---|
| Name | Mike Meyer | Retirement Date | 03/01/2001 |
| Social Security Number | 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 | Hire Date | 05/29/1979 |
| Plan Number | 001A | Birth Date | 01/29/1952 |
| | | Date Prepared | 11/07/2003 |

### DEATH BENEFITS AFTER RETIREMENT

| Amount | From | To |
|---|---|---|
| $5,000.00 | 03/01/2001 | Thereafter |

ADAM W. MILLER

October 14, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:

In response to the court ordered Notice of September 24, 2003, we the individual members are to notify you in writing of discrepancies in the calculation of our severance pay and severance benefits of Severance Policy 828.

You did indeed calculate my weekly pay correctly. The Years of Service is correct. That number is 4.65 Years. Therefore 14.65 weeks at $ 1,298.08 or $19,016.88 . Also, other pertinent benefits of the entire 828 package which I am eligible for were left off the September 24, 2003 letter. This includes vacation pay.

I am entitled to three (3) weeks of vacation pay, $3894.24

This brings the total owed to me from International Paper to:

|          |            |
|----------|------------|
| Salary   | $19,016.88 |
| Vacation | $3,894.24  |
| Total    | $22,911.12 |

Sincerely,

Adam W Miller
50 Brighton Court
Springboro, Ohio 45066

xc: Theresa L. Groh, Esq.
Murdock, Goldenberg, Schneider
&Groh, L.P.A.
700 Walnut Street
Suite 400
Cincinnati, Ohio 45202

RECEIVED OCT 1 6 2003



International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Mr. Adam W. Miller
50 Brighton Court
Springboro, OH 45066

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Miller:

We are in receipt of your letter dated 10/16/2003, in which you question your entitlement to vacation and/or COBRA. The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale. Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers. Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later. As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper. When you obtained comparable coverage, you eligibility for COBRA ended. Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

JEFF MILLER

October 8, 2003


Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:
In response to the court ordered Notice of September 24, 2003, we the individual
members are to notify you in writing of discrepancies in the calculation of our severance
pay and severance benefits of Severance Policy 828.

You did not calculate my weeks of service correctly. The correct service dates are
8/16/88 to 2/9/2001. This equals 12.49 years of service. The years of service equals
22.49 weeks of benefits under the Severance Policy 828. That number of weeks at $
1355.77 per week equals $30491.27, however you left off other pertinent benefits that
were part of the entire 828 package that I am eligible for, that being vacation pay and 9
months of COBRA coverage.

I am entitled to four (4) weeks of vacation pay, $5423.08.

Also 4 months of Cobra at ($95.63 medical per pay) for 6 pay periods or $573.75.

This brings the total owed to me from International Paper to:

| | |
|---|---|
| Salary | $30491.27 |
| Vacation | $5423.08 |
| Cobra | $573.75 |
| Total | $36488.10 |


Sincerely,

*Jeff Miller*
Jeff Miller


Cc:
Murdock,Goldenberg,Schneider & Groh


RECEIVED OCT 2 8 2003



INTERNATIONAL PAPER

International Place I
6400 Poplar Ave.
Memphis, TN  38197
Phone 901 763 6000

May 25, 2004

Jeff Miller
2481 Millville Avenue
Hamilton, Ohio 45013

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Miller,

We are in receipt of your letter dated October 8, 2003, in which you question the years of service used for the calculation of possible severance benefits payable under Champion International Corporation Reorganization Severance Policy #828 ("the Plan") as well as entitlement to vacation pay and reimbursement for COBRA coverage.  The following will explain the results of our research.

A review of your records indicates a previous period of Champion service should have been included in your estimated severance calculation.  A corrected Exhibit A is enclosed.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits.  Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,


Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

/slb

Encl.

CC: File

# Exhibit A
## Jeffery A. Miller

Severance Calculation

| Weekly Pay | Years of Service | Age at February 9, 2001 Termination | Weeks of Severance |
|---|---|---|---|
| $1355.77 | 13 | 32 | 26 |

#828 Severance Pay:    $35,250.02

ALEXIS MURRAY

October 1, 2003

**RECEIVED**

**OCT 0 6 2003**

**BENEFITS ADM.**

Ms. Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, TN 38197

Dear Ms Barger:

RE:    Dalesandro, et al. v. The International Paper Company
       Case No. C-1-01-109
       U.S. District Court, Southern District of Ohio

I recently received a calculation of my severance pay benefits (see attached document) under the Policy #828 program from the attorneys representing Dalesandro et al in the above referenced class action lawsuit.

Although I do not disagree with the weekly pay rate which was used to calculate my severance amount, I did want to point out that I had three (3) weeks of earned unused vacation at the time of my severance, and under section 7 of the #828 Policy (Miscellaneous Benefits) I am entitled to a lump sum payment for this unused vacation in the amount of $3285.60, bringing my total severance amount to $16,548.48.

I would appreciate it greatly if you could review my particular situation and make any necessary adjustments to the severance pay amount I would receive, should the judge's ruling on this situation be upheld after the appeal by International Paper.

Thank you for your attention to this matter.

Sincerely,

Alexis Murray
Alexis Murray
SS#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

My current (and new) address:

7841 Eastern Avenue
Wyndmoor, PA 19038

**Exhibit A to Class Notice**

**Alexis A. Murray**

<u>YOUR SEVERANCE PAY CALCULATION UNDER POLICY #828</u>

| <u>Weekly Pay</u> | <u>Years of Service</u> | Age at<br>February 9, 2001<br><u>Termination</u> | <u>Weeks of Severance</u> |
|---|---|---|---|
| $1,095.20 | 2.11 | 29 | 12.11 |

**Your #828 Severance Pay Amount:  $13,262.88**



**INTERNATIONAL Ⓐ PAPER**

International Place I
6400 Poplar Ave.
Memphis, TN  38197
Phone 901 763 6000

May 25, 2004

Ms. Alexis Murray
7841 Eastern Ave
Wyndmoor, PA  19038

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Ms. Murray:

We are in receipt of your letter dated 10/6/2003, in which you question your entitlement to vacation and/or COBRA.  The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits.  Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator