KEVIN NOBILING

October 21, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis Tennessee  38197

RE:    Delesandro vs. International Paper
       Case no. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms. Barger:

In response to the court notice of Septemebr 24th, 2003 the individual members are to notify you in writing of discrepancies in the calculation of our severance benefits of severance policy 828.

You did calculate my weeks of service correctly however you left off the vacation pay I am entitled to under the plan.  I am entitled to three weeks of vacation pay as outlined under the plan. Three weeks of vacation at $1740.39 per week is $5221.17 owed to me.

This brings the total owed to me from International paper from severance plan 828 to

|  |  |
|---|---|
| 18.67 weeks of severance | $ 32,493.09 |
| 3 Weeks Vacation pay | $  5221.17 |
| **Total** | **$ 37,714.26** |

Sincerely,

Kevin Nobiling

CC:
Murdock, Goldenburg, Schneider, & Groh

**RECEIVED OCT 2 8 2003**



International Place I
6400 Poplar Ave.
Memphis, TN  38197
Phone 901 763 6000

May 25, 2004

Mr. Kevin Nobiling
4740 Imprerial Dr.
Hamilton, OH  45011

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Nobiling:

We are in receipt of your letter dated 10/28/2003, in which you question your entitlement to vacation.  The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits.  Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

DIANE J. NOONAN

October 8, 2003


Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:

In response to the court ordered Notice of September 24, 2003, we the individual members are to notify you in writing of discrepancies in the calculation of our severance pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service and weekly pay correctly. That number 33.88 weeks at $ 892.31 or $30,231.47, however you left off other pertinent benefits that were part of the entire 828 package that I am eligible for, that being vacation pay and 9 months of COBRA coverage.

I am entitled to three (5) weeks of vacation pay, $4161.55

Also 9 months of Cobra at ($95.63 medical & $25.14 dental per pay) for 18 pay periods or $2,173.86.

This brings the total owed to me from International Paper to:

|  |  |
|---|---|
| Salary | $30,231.47 |
| Vacation | $4,161.55 |
| Cobra | $2,173.86 |
| Total | $36,566.88 |


Sincerely,

Diane J. Noonan

ts

Cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT 2 3 2003



INTERNATIONAL PAPER

International Place I
6400 Poplar Ave.
Memphis, TN  38197
Phone 901 763 6000

May 25, 2004

Ms. Diane J. Noonan
260 South Washington Blvd.
Hamilton, OH  45013

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Ms. Noonan:

We are in receipt of your letter dated 10/23/2003, in which you question your entitlement to vacation and/or COBRA.  The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits.  Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

# YUN-LONG PAN

October 15, 2003

Ms Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:

In response to the court ordered Notice of September 24, 2003, we the individual
members are to notify you in writing of discrepancies in the calculation of our severance
pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service and weekly pay correctly. That number
16.51 weeks at $ 1900.00 per week or $31,369.00, however you left off other pertinent
benefits that were part of the entire 828 package that I am eligible for, that being vacation
pay and 9 months of COBRA coverage.

I am entitled to three (3) weeks of vacation pay, $5700.00.

Also 9 months of Cobra at ($95.63 medical & $25.14 dental per pay) for 18 pay periods
or $2,173.86.

This brings the total owed to me from International Paper to:

|          |            |
|----------|------------|
| Salary   | $31,369.00 |
| Vacation | $ 5,700.00 |
| Cobra    | $ 2,173.86 |
| Total    | $39,242.86 |

Sincerely,

Yun-Long Pan

cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT 2 4 2003



INTERNATIONAL **PAPER**

International Place I
6400 Poplar Ave.
Memphis, TN  38197
Phone 901 763 6000

May 25, 2004

Mr. Yun-Long Pan
Smart Papers
601 North B Street
Hamilton, OH  45013

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Pan:

We are in receipt of your letter dated 10/24/2003, in which you question your entitlement to vacation and/or COBRA.  The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits.  Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

# JAMES M. PHILLEY

James M. Philley
5850 Lake Tahoe Court
Fairfield, OH 45014
SSN: 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

October 9, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, TN 38197

Dear Sharon:

I was a former employee of Champion International Corporation's Hamilton Mill, 'B' Street. After the acquisition of Champion by International Paper Company, our location was sold to Sun Capital Partners, and we became known as SMART PAPERS, LLC. Effective the date of sale of this Mill, I was terminated, without cause, by International Paper, effective February 9, 2001. At the time of my termination, there was in effect a severance policy, namely Champion International Corporation Reorganization Severance Policy #828 ("Policy #828"). After several communications with International Paper in regard to my request for payment under the terms of Policy #828, it became painfully obvious that resolution could only be achieved through legal means, and a Class Action lawsuit was filed on my, as well as other affected current and former B Street employees, behalf. The attorneys in this matter are Murdock Goldenberg Schneider & Groh, LPA ("the attorneys").

On or about September 24, 2003, I received an information packet from the attorneys regarding proposed settlement in this suit. Included as a part of this packet was "Exhibit A to Class Notice", which details International Paper's calculation of my severance benefits, should the lawsuit result in a favorable decision for the plaintiffs.

In response to this Exhibit A, I believe that the calculations are incorrect. The following is a much more accurate account of the benefits to which I am entitled under Champion International Corporation Reorganization Policy #828.

1.  The calculations made by International Paper for years of service were 1.07 yrs. As evidenced by the attached documents (email dated October 8, 2003, from Ashleigh M Lindley at IP's Employee Service Center (Exhibit I); a pension calculation worksheet from Champion International Corporation dated February 2, 2000 (Exhibit II); a performance review cover page dated January 2, 2001 (Exhibit III); and a pension calculation worksheet from International Paper dated April 22, 2002 (Exhibit IV)), my date of hire is June 14, 1982. Based on this actual true date of hire, and a termination date of February 9, 2001, I have just over 18.65 years of service. This June 14, 1982 hire date is further supported by the enclosed Exhibit V, Account Statement as of 03-31-2001, from Champion International Corporation Savings Plan, which indicates that I am 100% vested in my account. With a five-year vesting policy, it is obvious that I have more than 1.07 years of service as indicated in your Exhibit A. Additionally, at my time of termination by International Paper, I was entitled to (5) weeks of vacation, which would be highly unlikely should I only have this short a service term.

Under Policy #828, I am entitled to "the following:

(a)     ten weeks' earnings; plus

(b)     one (1) week's (or partial week's) Earnings for each year (or partial year) of Credited Service; plus

(c).    one (1) week's (or partial week's) Earnings for each year (or partial year) of Credited Service over fifteen (15) years."

RECEIVED OCT 1 6 2003

● Page 2                                                                    October 9, 2003

Policy #828's definition of credited service is as follows:

"Credited Service is an Eligible Employee's period of employment with the Company to and including the date of Termination, but not including years of service that have been taken into account for a prior severance payment from the Company."

Under these guidelines, I am entitled to (10) weeks' earnings plus (18.65) weeks' earnings plus (3.65) weeks' earnings, for a total of (32.3) weeks' earnings.

2.  Section 7 of Policy #828 states that "An Eligible Employee will receive a lump sum payment for banked vacation, earned but unused vacation, and....". Under International Papers' policy, vacation was earned during the year prior to which it was to be taken. As such, I earned my five weeks' vacation entitlement for 2001 during 2000. At the time of my termination by International paper, I had not used any of this five weeks of vacation. As such, my benefits under Policy #828 also include a lump sum payment equivalent to five (5) weeks' earnings.

Totaling the above benefits as calculated using the correct hire date of June 14, 1982, yields a **total benefit due me under Policy #828 of 37.3 weeks' earnings**. I believe that the Weekly Pay as shown on your Exhibit A ($1346.16) is correct. These facts result in a **net payment to me by International Paper of $50,211.77**. Please correct your records so there will be no further confusion in this regard.

The above figure represents benefits payable to me as of February 9, 2001. Any interest and/or penalties will be based on this figure, and added to the total due me under Policy #828.

You may issue a check at your earliest convenience for the amount shown above, plus any interest and/or penalties as required by law or otherwise.

Sincerely,

*James M. Philley - 10/9/03*

James M. Philley
Class Member

# EXHIBIT I

**Philley, Jim**

| | |
|---|---|
| **From:** | Ashleigh M Lindley [Ashleigh.Lindley@ipaper.com] |
| **Sent:** | Wednesday, October 08, 2003 11:24 AM |
| **To:** | Philley, Jim |
| **Subject:** | Hire date |

Mr. Jim here is your date of hire for future reference.


DOH:  06/14/1982
DOT:  02/09/2001


If you need any other information please call.

Waynesbridge Drive
Hamilton, Ohio 45020

EXHIBIT II


**Champion**
Champion International Corporation

February 2, 2000

James M. Philley
5850 Lake Tahoe Court
Fairfield, OH 45014

RE: Vested Entitlement
    SSN 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

Dear Mr. Philley,

This is in reply to your request for information concerning your monthly pension benefit with Champion.

The enclosed represents what you can receive at the commencement date(s) you have requested.

When you are interested in receiving all the forms and information necessary to begin your pension benefit, complete a Request for Pension Information form and return to this office.

If you have any questions, please call our Customer Service Group at 513 868-5441 or 513 868-5599.

Sincerely,

Benefits Services
Retirement and Life Group

/kks

cc: file

encl.

Jennifer for McQuery
*82- 351-0234

CHAMPION SALARIED PENSION CALCULATION
RETIREMENT CALCULATION WORKSHEET

M. PHILLEY
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
001A

```
Retirement Date:    07/01/2015
Termination Date:   01/17/2000
Preparation Date:   02/01/2000
Prepared By:        0051
```

CALCULATION DATA
----------------
-------------------------------- PERSONAL --------------------------------------

```
Birth Date:          06/09/1960      Normal Retirement Date:   07/01/2025
Spouse's Birth Date: 09/04/1959      Age at Retirement:           55.00000
Hire Date:           06/14/1982      Soc. Sec. Benefit:     $    1,479.00
Vesting Service:     17.25000        Minimum Benefit:       $
Credited Service:    17.30000        Prior Plan Offset:     $        0.00
```

-------------------------- FINAL AVERAGE EARNINGS -------------------------------

```
Total Earnings : $    312,433.12          2000    $6,416.67
Monthly Average: $      5,207.22          1999   $67,729.19
Annual Average:  $     62,486.64          1998   $64,754.16
                                          1997   $61,512.42
                                          1996   $57,949.92
                                          1995   $54,070.76
```

---------------- DETERMINATION OF MONTHLY RETIREMENT BENEFIT --------------------

```
A.  .01667 X   17.30000      X        5,207.22        =        1,501.72

PLUS:

B.  .00500 X    0.00000      X        5,207.22        =            0.00

LESS:                        Social Security
                                 OFFSET
C  .01667 X    17.30000      X        1,479.00        =          426.53

D. PRIOR PLAN OFFSET                                  =            0.00

E. TOTAL                                              =        1,075.19

MONTHLY BENEFIT PAYABLE AT 07/01/2015
        (GREATER OF E OR PRIOR PLAN MINIMUM)          =        1,075.19

Reduction for Early Retirement (    0.50000)          =          537.60
        Grandfathered Factor (      1.00000)

Monthly Benefit Payable At 07/01/2015                 =          537.60
```

This calculation assumes that you work until the termination date selected.
In addition, no projection is made for your Final Average Earnings.

CHAMPION INTERNATIONAL CORPORATION
OPTIONAL FORMS OF RETIREMENT BENEFITS

M. PHILLEY
Security Number: 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

Plan Number: 001A
Retirement Date: 07/01/2015
Date Prepared: 02/01/2000

Benefits Payable:

| To retiree | To Contingent Annuitant | |
|---|---|---|
| 537.60 | N/A | SINGLE LIFE ANNUITY - You will receive a payment for your lifetime, payments stop at your death. |
| | | CONTINGENT ANNUITANT ANNUITY OPTIONS - You will receive a monthly benefit during your lifetime and guarantee that the contingent annuitant you designate will receive a selected percentage of that benefit for their lifetime after your death. |
| $    483.84 | $    241.92 | 50% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| $    456.96 | $    342.72 | 75% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| $    430.08 | $    430.08 | 100% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| | | LIFE-TERM CERTAIN ANNUITY OPTIONS - This option provides you with a monthly benefit for your lifetime.  If you die within the selected guaranteed period, your named beneficiary will continue to receive the same monthly amount for the balance of the period.  If you live longer than the guaranteed period, payments stop at your death. |
| $    526.85 | | 5 YEAR CERTAIN |
| $    499.97 | | 10 YEAR CERTAIN |
| $    467.71 | | 15 YEAR CERTAIN |
| $    435.46 | | 20 YEAR CERTAIN |
| $         to | | LEVEL INCOME OPTION - This option pays a larger benefit to age 62 and a benefit after age 62, reduced to account for social security.  Payments stop at your death. |
| $    thereafter | | |
| $    0.00 to | | LEVEL INCOME OPTION - This option pays a larger benefit to age 65 and a benefit after age 65, reduced to account for social security.  Payments stop at your death. |
| $    0.00 thereafter | | |
| $    494.59 | | FULL CASH REFUND ANNUITY - This option provides you with a monthly benefit for lifetime with a guarantee that if you die before receiving payments equal to the total annuity value, your named beneficiary will receive the difference in a lump sum.  If you die after the monthly payments exceed the annuity value, payments stop at your death. |
| ANNUITY VALUE $    67984.90 | | |

If you are not married, the single life annuity is the basic form of retirement benefit under the plan.

If you are married, the joint & surviving spouse annuity is the basic form of retirement benefit under the plan and is payable in the amounts shown under the 50% contingent annuitant option above.

```
                    CHAMPION SALARIED PENSION CALCULATION
                    RETIREMENT CALCULATION WORKSHEET

Name:  JAMES M. PHILLEY
Soc Sec No.:  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                Retirement Date:    07/01/2022
Plan No. 001A                            Termination Date:   01/17/2000
                                         Preparation Date:   02/01/2000
                                         Prepared By:        0051

                            CALCULATION DATA
                            ----------------
------------------------------- PERSONAL --------------------------------------

Birth Date:          06/09/1960    Normal Retirement Date:   07/01/2025
Spouse's Birth Date: 09/04/1959    Age at Retirement:          62.00000
Hire Date:           06/14/1982    Soc. Sec. Benefit:     $  1,479.00
Vesting Service:        17.25000   Minimum Benefit:       $
Credited Service:       17.30000   Prior Plan Offset:     $      0.00

-------------------------- FINAL AVERAGE EARNINGS ------------------------------

Total Earnings : $    312,433.12      2000    $6,416.67
Monthly Average: $      5,207.22      1999   $67,729.19
Annual Average:  $     62,486.64      1998   $64,754.16
                                      1997   $61,512.42
                                      1996   $57,949.92
                                      1995   $54,070.76

--------------- DETERMINATION OF MONTHLY RETIREMENT BENEFIT --------------------
```

_32.8 @ 55_                                              _2843_

```
A.  .01667 X    17.30000    X         5,207.22      =        1,501.72

PLUS:

B.  .00500 X    0.00000     X         5,207.22      =            0.00

LESS:
                              Social Security
                                 OFFSET                      808
C  .01667 X     17.30000    X      1,479.00         =          426.53

D. PRIOR PLAN OFFSET                               =            0.00

E. TOTAL                                           =        1,075.19   2035

MONTHLY BENEFIT PAYABLE AT 07/01/2022
        (GREATER OF E OR PRIOR PLAN MINIMUM)       =        1,075.19

Reduction for Early Retirement (    0.80000)       =          215.04
        Grandfathered Factor (      1.00000)

Monthly Benefit Payable At 07/01/2022              =          860.15   1628


This calculation assumes that you work until the termination date selected.
In addition, no projection is made for your Final Average Earnings.
```

CHAMPION INTERNATIONAL CORPORATION
OPTIONAL FORMS OF RETIREMENT BENEFITS

me: JAMES M. PHILLEY
cial Security Number: 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

Plan Number: 001A
Retirement Date: 07/01/2022
Date Prepared: 02/01/2000

Monthly Benefits Payable:

| To retiree | | To Contingent Annuitant | | |
|---|---|---|---|---|
| 860.15 | | N/A | | SINGLE LIFE ANNUITY - You will receive a payment for your lifetime, payments stop at your death. |
| | | | | CONTINGENT ANNUITANT ANNUITY OPTIONS - You will receive a monthly benefit during your lifetime and guarantee that the contingent annuitant you designate will receive a selected percentage of that benefit for their lifetime after your death. |
| $ 774.14 | $ | 387.07 | | 50% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| $ 731.13 | $ | 548.35 | | 75% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| $ 688.12 | $ | 688.12 | | 100% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| | | | | LIFE-TERM CERTAIN ANNUITY OPTIONS - This option provides you with a monthly benefit for your lifetime. If you die within the selected guaranteed period, your named beneficiary will continue to receive the same monthly amount for the balance of the period. If you live longer than the guaranteed period, payments stop at your death. |
| $ 842.95 | | | | 5 YEAR CERTAIN |
| $ 799.94 | | | | 10 YEAR CERTAIN |
| $ 748.33 | | | | 15 YEAR CERTAIN |
| $ 696.72 | | | | 20 YEAR CERTAIN |
| $ | to | | | LEVEL INCOME OPTION - This option pays a larger benefit to age 62 and a benefit after age 62, reduced to account for social |
| $ | thereafter | | | security. Payments stop at your death. |
| $ 1916.22 | to 07/01/2025 | | | LEVEL INCOME OPTION - This option pays a larger benefit to age 65 and a benefit after age 65, reduced to account for social |
| $ 437.22 | thereafter | | | security. Payments stop at your death. |
| $ 791.34 | | | | FULL CASH REFUND ANNUITY - This option provides you with a monthly benefit for lifetime with a guarantee that if you die before receiving payments equal to the total annuity value, your named beneficiary will receive the difference in a lump sum. If you die after the monthly payments exceed the annuity value, payments stop at your death. |

ANNUITY VALUE
$   95622.88

If you are not married, the single life annuity is the basic form of retirement benefit under the plan.

If you are married, the joint & surviving spouse annuity is the basic form of retirement benefit under the plan and is payable in the amounts shown under the 50% contingent annuitant option above.

EXHIBIT III

STRICTLY CONFIDENTIAL
CHAMPION INTERNATIONAL
HAMILTON MILL
EMU DEPARTMENTS PERFORMANCE REVIEW

---

**Name:** James M. Philley                                          **Date:** January 2, 2001

**Title:** Reliability Engineer (Mechanical) – Utilities   **Yrs. In Position:** 1   **Hire Date:** 6/14/82

**Principal Responsibilities:**
Provide assistance and technical support required to solve operating and maintenance problems; identify opportunities for improvement and implement action plans to ensure resolution and continuous improvement. The Reliability Engineer will handle all aspects of maintenance projects in the area; coordinate outside contractor activities in the area; development preventive/predictive maintenance schedules; provide solutions to repetitive equipment failures and develop/implement changes for process improvements.

---

I. **Review of Performance:**
Evaluate the performance of this employee. List accomplishments, strengths and areas in which results were not up to desired standards. Compare accomplishments with individual goals and department objectives that were set during the previous review period and performance expectations.

- **Strengths/Accomplishments:**
  - Successful completion of the following Capital Projects:
    - Replacement of No. 6 Generator Air Coolers
    - Replacement of the Top Blowdown Heat Exchanger tube bundle
    - Replacement of No. 4 Zeolite Tank (upgraded tank material)
    - Replacement of the liner in the Emergency Catch Basin at the WTP
    - Installation of a new PRV bypass around No. 6 Turbine
  - Participation on NOx team, investigating various options for NOx control
  - Initiation of Phases of a Project paperwork on the following:
    - Purchase and install new 18# safety relief valve
    - Replace Nos. 1 – 2 – 3 Zeolite Tanks
  - Coordination of outside contractors during annual overhaul of No. 10 Boiler
  - Documentation of Maintenance activities, ASME Code R-1 (repairs) and U-1 (manufacturing) reports
  - Development of system schematics, used for training and trouble-shooting
  - Took lead role in initiating Mill-wide steam and condensate system inspection and repair program through use of SECO
  - Developed lockout documentation for use during 10 Boiler outages; developed and documented pump inspection/element replacement procedures and checklist for inspection documentation.
  - Coordinated numerous piping repairs (outside contractor) required on various equipment, making material upgrades and/or system modifications as warranted to increase equipment reliability and ease of maintenance (new trap installations, ACM removal, double-valve upgrades, etc.)
  - Developed simplified training documents for electronic purchase requisitions, blanket order releases, and work request entry (for use in the HERM system).
  - Re-sized impeller for use in 100# Mill water supply pumps, resulting in decreased valve maintenance, increased pump life and reduced horsepower (est. $15,000/year saved)
  - Re-installed 10.5 MW field in No. 6 Generator, required extensive balance and alignment efforts
  - NDE readings obtained on various equipment, ASME Code calculations performed to determine minimum thickness requirement, evaluation of existing equipment and repair/replacement options
  - Developed Maintenance budget

EXHIBIT IV



INTERNATIONAL ⬆ PAPER

Employee Service Center
P.O. Box 1001
Memphis, TN  38101

April 22, 2002

Mr. James M. Philley
5850 Lake Tahoe Ct.
Fairfield, OH 45014

Dear Mr. Philley:

This is in reply to your request for information concerning your pension benefit with International Paper.

The enclosed represents the benefits you are eligible to receive at the commencement dates requested.

We cannot accept pension election forms more than 90 days prior to their effective date.

Please contact our office when you are interested in receiving all the forms and information necessary to commence your pension benefit.

If you have any questions, please feel free to contact the Employee Service Center at 1-888-372-2968.

Sincerely,

International Paper
Employee Service Center
Memphis, TN
1-888-372-2968

SSN:  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

SALARIED PENSION CALCULATION
RETIREMENT CALCULATION WORKSHEET

Name:  JAMES M. PHILLEY
Soc Sec No.:  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
Plan No. 001A

Retirement Date:    07/01/2020
Termination Date:   02/09/2001
Preparation Date:   04/23/2002
Prepared By:        0088

CALCULATION DATA
----------------
-------------------------------    PERSONAL    -------------------------------------

Birth Date:            06/09/1960
Spouse's Birth Date:   09/04/1959
Hire Date:             06/14/1982
Vesting Service:       18.32000
Credited Service:      18.33000

Normal Retirement Date:    07/01/2025
Age at Retirement:            60.00000
Soc. Sec. Benefit:      $    1,531.00
Minimum Benefit:        $
Prior Plan Offset:      $        0.00

-------------------------    FINAL AVERAGE EARNINGS    -------------------------------

Total Earnings : $      323,896.32
Monthly Average: $        5,398.27
Annual Average:  $       64,779.24

| 2001 | $7,717.95 |
| 2000 | $70,583.41 |
| 1999 | $67,729.19 |
| 1998 | $64,754.16 |
| 1997 | $61,512.42 |
| 1996 | $51,599.19 |

--------------    DETERMINATION OF MONTHLY RETIREMENT BENEFIT    -----------------------

A.  .01667 X    18.33000    X        5,398.27    =        1,649.50

PLUS:

B.  .00500 X    0.00000    X        5,398.27    =            0.00

LESS:                            Social Security
                                     OFFSET
C  .01667 X    18.33000    X        1,531.00    =          467.81

D. PRIOR PLAN OFFSET                            =            0.00

E. TOTAL                                        =        1,181.69

MONTHLY BENEFIT PAYABLE AT 07/01/2020
        (GREATER OF E OR PRIOR PLAN MINIMUM)    =        1,181.69

Reduction for Early Retirement (    0.66667)    =          393.89
        Grandfathered Factor (    1.00000)

Monthly Benefit Payable At 07/01/2020           =          748.94

This calculation assumes that you work until the termination date selected.
In addition, no projection is made for your Final Average Earnings.

08991

*EXHIBIT V*

# Champion International Corporation
## Savings Plan

Account Statement as of 03-31-2001

## ACCOUNT SUMMARY

JAMES M. PHILLEY
5850 LAKE TAHOE COURT
FAIRFIELD, OH 45014-4427

| Participant Information | |
|---|---|
| International Paper Stock Equivalent | 14.6136 |
| International Paper Stock Share Price | 36.0800 |
| Social Security Number | 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 |

## Account At A Glance

Account Activity by Contribution type for the period 01-01-2001 to 03-31-2001

| Sources | Beginning Balance | Contributions/ Credits | Distributions/ Debits | Investment Results | Ending Balance | Vested Percent | Vested Balance |
|---|---|---|---|---|---|---|---|
| Employee Before-Tax | 122,319.46 | 1,157.69 | 0.00 | (17,101.79) | 106,375.36 | 100% | 106,375.36 |
| Employee After-Tax | 7,540.02 | 385.89 | 0.00 | (1,121.55) | 6,804.36 | 100% | 6,804.36 |
| Company Match | 39,038.40 | 8,044.42 | (7,624.42) | (6,004.38) | 33,454.02 | 100% | 33,454.02 |
| TRASOP | 1,391.29 | 0.00 | | (147.44) | 1,243.85 | 100% | 1,243.85 |
| TOTAL | 170,289.17 | 9,588.00 | (7,624.42) | (24,375.16) | 147,877.59 | N/A | 147,877.59 |



## Contribution Information as of 04-03-2001

| | |
|---|---|
| Before-tax Contribution Percentage: | 15.0% |
| Post-1986 After-tax Contributions: | 8,228.87 |

## Investment of Future Contributions as of 04-03-2001

| Fund Name | After-tax | Company Match | Employee Before-Tax |
|---|---|---|---|
| Barclays Equity Indx | 40.00 | | 40.00 |
| Extended Equity Mkt | 20.00 | | 20.00 |
| ACI Ultra-IST | 40.00 | | 40.00 |
| Int'l Paper - Non Tr | | 100.00 | |
| TOTAL | 100.00% | 100.00% | 100.00% |



If you have questions about your plan, contact
J.P. Morgan/American Century® Retirement Plan Services at P.O. Box 419784, Kansas City MO 64141
Visit our Web site at www.retireonline.com or call 1-800-323-6334

Champion International Corporation
290460046 PHILLEY, JAMES M.     129403
CCSA      01-01-2001     03-31-2001

3



International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

James M. Philley
5850 Lake Tahoe Court
Fairfield, Ohio 45014

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Philley,

We are in receipt of your letter dated October 9, 2003, in which you question the years of service used for the calculation of possible severance benefits payable under Champion International Corporation Reorganization Severance Policy #828 ("the Plan") as well as entitlement to vacation pay. The following will explain the results of our research.

A review of your records indicates a previous period of Champion service should have been included in your estimated severance calculation. A corrected Exhibit A is enclosed.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale. Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

Cordially,


Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

/slb

Encl.

CC: File

# Exhibit A
**James M. Philley**

<u>Severance Calculation</u>

|            |                  | Age at<br>February 9, 2001 |                   |
|------------|------------------|----------------------------|-------------------|
| <u>Weekly Pay</u> | <u>Years of Service</u> | <u>Termination</u> | <u>Weeks of Severance</u> |
| $1346.16   | 19               | 40                         | 38                |

#828 Severance Pay:   $51,154.08

HOCUTT PHILLIPS

Copy For Sharon Barger

 **"hocutt phillips"**
**<hocutt7@hotmail.co**
**m>**

11/04/2003 03:07 PM

To: sharon.barger@lpaper.com
cc:
Subject: Hocutt Phillips

**<?xml:namespace prefix="v" /><?xml:namespace prefix="o" />**
**Dear Sharon,**

**I received the calculations associated with the severance under policy #828.**

**I have a questions, as follows:**

**The severance is calculated based on 2.41 years of service. My question is why this calculation was not based on my total Champion service. I worked for Champion from 1974 until Champion sold the Pasadena facility in 1987 I returned to Champion in 1998 until my termination when International Paper sold the Hamilton facility. It was also my understanding that in the sales agreement with Simpson to purchase the Pasadena facility, that prior service for Champion and Simpson was combined as one and that it could be interpreted that my return to Champion would also include the years I worked with Simpson, from the point of years of service. In the event that is not the case, my question would still be should my years of service with Champion from 1974 to 1987 be combined with my years of service from 1998 to 2001 or a total of 15.41 years.**

**Can you please respond via e-mail that you have received this request for information. I realize that you are extremely busy and it will probably be several days before I get an answer to the question but I just need a confirmation that you received the request as the package of information sent to me requires me to respond by Nov. 6,2003.**

**Thank you for your help.**

**Sincerely,**
**Hocutt Phillips**

**Hocutt Phillips**
**Phone 919-544-4729**
**Cell 919-961-5740**
**E-mail** hocutt7@hotmail.com

RECEIVED NOV 0 5 2003

**Copy For Sharon Barger**



**Sharon Barger**
11/04/2003 04:01 PM

To: "hocutt phillips" <hocutt7@hotmail.com>
cc:
Subject: Re: Hocutt Phillips

Mr. Phillips,

I have received your inquiry and will look into your employment history. You will receive a response via US Postal mail as soon as possible.

Thank you.


Sharon L. Barger
Benefits Consultant
901-419-7714
Internal Extension - 27714
901-419-7723 (FAX)

CONFIDENTIALITY NOTICE
This e-mail is intended for the sole use of the individual(s) to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, duplication, or distribution of this transmission by someone other than the intended addressee or its designated agent is strictly prohibited. If you receive this e-mail in error, please notify me by replying to this e-mail and deleting this e-mail immediately.

"hocutt phillips" <hocutt7@hotmail.com>



"hocutt phillips"
<hocutt7@hotmail.com>

11/04/2003 03:07 PM

To: sharon.barger@Ipaper.com
cc:
Subject: Hocutt Phillips


<?xml:namespace prefix="v" /><?xml:namespace prefix="o" />
**Dear Sharon,**

**I received the calculations associated with the severance under policy #828.**

**I have a questions, as follows:**

**The severance is calculated based on 2.41 years of service. My question is why this calculation was not based on my total Champion service. I worked for Champion from 1974 until Champion sold the Pasadena facility in 1987 I returned to Champion in 1998 until my termination when International Paper sold the Hamilton facility. It was also my understanding that in the sales agreement with Simpson to purchase the Pasadena facility, that prior service for Champion and Simpson was combined as one and that it could be interpreted that my return to Champion would also include the years I worked with Simpson, from the point of years of service. In the event that is not the case, my question would still be should my years of service with Champion from 1974 to 1987 be combined with my years of service from 1998 to 2001 or a total of 15.41 years.**

**Copy For Sharon Barger**

**Can you please respond via e-mail that you have received this request for information. I realize that you are extremely busy and it will probably be several days before I get an answer to the question but I just need a confirmation that you received the request as the package of information sent to me requires me to respond by Nov. 6,2003.**

**Thank you for your help.**

**Sincerely,**
**Hocutt Phillips**

**Hocutt Phillips**
**Phone 919-544-4729**
**Cell 919-961-5740**
**E-mail hocutt7@hotmail.com**

September 16, 2004

Hocutt Phillips

**SENT VIA EMAIL TO hocutt7@hotmail.com**

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Phillips,

We are in receipt of your email dated November 4, 2003, in which you question the years of service used for the calculation of possible severance benefits payable under Champion International Corporation Reorganization Severance Policy #828 ("the Plan"). The following will explain the results of our research.

A review of your records indicates a previous period of Champion service should have been included in your estimated severance calculation. A corrected Exhibit A is enclosed. Only your years of service with Champion International can be included in the severance calculation, therefore your years of service with Simpson Paper is excluded.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

/slb

Encl.

CC:  File

**Flex6 Calculation for EDWARD H PHILLIPS**
Social Security Number 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

## Employee Data

Social Security Number: 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
Name: EDWARD H PHILLIPS
Date of Birth: 05/12/1949
Date of Hire: 10/14/1974
Marital Status: M
Spouse's Date of Birth: 06/30/1951
Last Date of Hire: 05/29/1986
Location Code: 002HAOH
Current Annual Base Pay Amount: $103,000.08
Date of Termination: 02/09/2001
Credited Service: 14.79000
Vesting Service: 14.66000
Monthly Final Average Pay: $8,327.92
Current Monthly Social Security: $1,584.00
Flex 6 Monthly Social Security: $1,191.00
Age 62 Monthly SS for Level Income: $1,191.00
Age 65 Monthly SS for Level Income: $1,474.00

## Processing Notes

Prepared By: swp   09/13/2004
WARNING: Check service entries. Credited Service and Vesting Service differ by at least 0.1 years.
WARNING: Vesting Service differs from time elapsed between Date of Hire and Date of Termination. Check Vesting Service.

## SUMMARY OF SEVERANCE AND PENSION

**Basic Demographic Information**

| | | | |
|---|---|---|---|
| Age at retirement | 51.75 | EDWARD H PHILLIPS |
| Credited service at termination for pension | 14.79 | Name |
| Vesting service at termination for pension | 14.66 | |
| Service from last hire date for severance | 14.70 | |
| Annual base pay at termination for severance | $ 103,000 | 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 |
| 5-year final average earnings for pension | $ 8,328 | Social Security Number |
| Assumed social security without Flex 6 enhancement | $ 1,584 * | |
| Assumed social security with Flex 6 enhancement | $ 1,191 ** | |

**Severance**

| | |
|---|---|
| Weeks of severance | 24.70 |
| Single sum severance payment | **$ 48,925** |

**Pension**

Without Flex 6

| | | |
|---|---|---|
| Monthly life annuity of | $ 1,662.71 | payable at normal retirement date |
| x Early retirement factor | 0.500 | |
| = Monthly life annuity of | **$ 831.36** | payable when you turn age 55 |

| | |
|---|---|
| Eligible for Flex 6? | *YES* |

| | |
|---|---|
| Optimum combination | ***Age plus 5 and Service plus 1*** |

With Flex 6

| | | |
|---|---|---|
| Monthly life annuity of | $ 1,878.58 | payable at age 65 |
| x Early retirement factor | 0.748 | |
| = Monthly life annuity of | **$ 1,405.18** | payable immediately |

| | |
|---|---|
| Adjusted age of | 56.75 |
| Adjusted credited service of | 15.79 |
| Adjusted vesting service of | 15.66 |

\* with level future earnings if not currently retirement eligible; zero future earnings if currently retirement eligible

\** with zero future earnings if Flex 6 eligible

Preparation Date: 09/13/2004
Prepared By: swp

## TOTAL PENSION BENEFIT CALCULATION WITH FLEX 6 ENHANCEMENTS

| | | | |
|---|---|---|---|
| Name | EDWARD H PHILLIPS | Retirement Date | 03/01/2001 |
| Social Security Number | 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 | Termination Date | 02/09/2001 |
| Plan Number | 001A | Preparation Date | 09/13/2004 |
| | | Prepared By | swp |

### CALCULATION DATA

| | | | |
|---|---|---|---|
| Birth Date | 05/12/1949 | Normal Retirement Date | |
| Spouse's Birth Date | 06/30/1951 | without Flex 6 | 06/01/2014 |
| Hire Date | 10/14/1974 | Age at Retirement | 51.75000 |
| Vesting Service with Flex 6 | 15.66000 | Soc. Sec. Benefit with Flex 6 | $1,191.00 |
| Credited Service with Flex 6 | 15.79000 | | |

Monthly Final Average Earnings (from before Flex 6 calculation sheet)          $8,327.92

### DETERMINATION OF MONTHLY RETIREMENT BENEFIT

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| A. .01667 | x | 15.79000 | x | $8,327.92 | = | | $ | 2,192.07 |
| PLUS: | | | | | | | | |
| B. .00500 | x | 0.00000 | x | $8,327.92 | = | | $ | - |
| LESS: | | | | | | | | |
| C. .01667 | x | 15.79000 | x | $1,191.00 | = | | $ | 313.49 |
| D. TOTAL | | | | | | | $ | 1,878.58 |

| | | | |
|---|---|---|---|
| MONTHLY BENEFIT PAYABLE AT | 06/01/2014 | $ | 1,878.58 |
| Reduction for Early Retirement with Flex 6 | 0.74800 | $ | 473.40 |
| MONTHLY BENEFIT PAYABLE AT | 03/01/2001 | $ | 1,405.18 |

This calculation assumes that you work until the termination date selected.
In addition, no projection is made for your Final Average Earnings

Your optimum Flex 6 combination is: Age plus 5 and Service plus 1.

SALARIED RETIREMENT PLAN
OPTIONAL FORMS OF RETIREMENT BENEFITS

Name: EDWARD H PHILLIPS                    Plan Number: 001A
Social Security Number:     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      Retirement Date: 03/01/2001
                                           Date Prepared: 09/13/2004

Monthly Benefit Payable

| To retiree | To Contingent Annuitant | |
|---|---|---|
| $1,405.18 | N/A | SINGLE LIFE ANNUITY - You will receive a payment for your lifetime, payments stop at your death. |
| | | CONTINGENT ANNUITANT ANNUITY OPTIONS - You will receive a monthly benefit during your lifetime and guarantee that the contingent annuitant you designate will receive a selected percentage of that benefit for their lifetime after your death. |
| $1,264.66 | $632.33 | 50% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| $1,194.40 | $895.80 | 75% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| $1,124.14 | $1,124.14 | 100% CONTINGENT ANNUITANT/JOINT & SURVIVING SPOUSE |
| | | LIFE-TERM CERTAIN ANNUITY OPTIONS - This option provides you with a monthly benefit for your lifetime. If you die within the selected guaranteed period, your named beneficiary will continue to receive the same monthly amount for the balance of the period. If you live longer than the guaranteed period, payments stop at your death. |
| $1,377.08 | | 5 YEAR CERTAIN |
| $1,306.82 | | 10 YEAR CERTAIN |
| $1,222.51 | | 15 YEAR CERTAIN |
| $1,138.20 | | 20 YEAR CERTAIN |
| $1,838.74 | to 06/01/2011 | LEVEL INCOME OPTION - This option pays a larger benefit to age 62 and a benefit after age 62, reduced to account for social security. |
| $647.74 | thereafter | Payments stop at your death. |
| $1,788.33 | to 06/01/2014 | LEVEL INCOME OPTION - This option pays a larger benefit to age 65 and a benefit after age 65, reduced to account for social security. |
| $314.33 | thereafter | Payments stop at your death. |
| $1,292.77 | | FULL CASH REFUND ANNUITY - This option provides you with a monthly benefit for lifetime with a guarantee that if you die before receiving payments equal to the total annuity value, your named beneficiary will receive the difference in a lump sum. If you die after the monthly payments exceed the annuity value, payments stop at your death. |

ANNUITY VALUE
$185,986.11

If you are not married, the single life annuity is the basic form of retirement benefit under the plan.

If you are married, the joint & surviving spouse annuity is the basic form of retirement benefit under the plan and is payable in the amounts shown under the 50% contingent annuitant option above.

**SCHEDULE OF DEATH BENEFIT AFTER RETIREMENT**

| | | | |
|---|---|---|---|
| Name | EDWARD H PHILLIPS | Retirement Date | 03/01/2001 |
| Social Security Number | 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 | Hire Date | 10/14/1974 |
| Plan Number | 001A | Birth Date | 05/12/1949 |
| | | Date Prepared | 09/13/2004 |

**DEATH BENEFITS AFTER RETIREMENT**

| Amount | From | To |
|---|---|---|
| $5,000.00 | 03/01/2001 | Thereafter |

HENRY E. RAMSEY, JR.

October 13, 2003


Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:
*In response to the court ordered Notice of September 24, 2003, we the individual*
members are to notify you in writing of discrepancies in the calculation of our severance
pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service and weekly pay correctly. That number
27.96 weeks at $ 967.31 or $27,045.99, however you left off other pertinent benefits that
were part of the entire 828 package that I am eligible for, that being vacation pay and 9
months of COBRA coverage.

I am entitled to five (5) weeks of vacation pay, $4836.55.

Also 9 months of Cobra for 18 pay periods or $ 573.75.

This brings the total owed to me from International Paper to:

| | | |
|---|---|---|
| Salary | $27045.99 |
| Vacation | $ 4836.55 |
| Cobra | $  573.75 |
| Total | $32456.29 |


Sincerely,

*Henry E Ramsey, JR*

Henry E. Ramsey, Jr.


Cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT 1 6 2003



International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Mr. Henry E. Ramsey
1289 Landis Lane
Cincinnati, OH  45231

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Ramsey:

We are in receipt of your letter dated 10/16/2003, in which you question your entitlement to
vacation and/or COBRA.  The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill,
the asset purchase agreement required Smart Papers to honor earned and accrued vacation for
the employees it retained following the sale.  Because you were retained by Smart Papers,
Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with
information related to their COBRA benefits at the time of the sale to Smart Papers.  Under
COBRA, continuation coverage must be elected within 60 days after your coverage ends or you
are notified of your eligibility for continuation coverage, whichever is later.  As the time for
electing COBRA coverage has long past, you are no longer eligible for COBRA benefits.
Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you
became eligible for Smart Paper's coverage which was comparable to the coverage provided by
International Paper.  When you obtained comparable coverage, you eligibility for COBRA
ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.


Cordially,




Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

FAYE J. REIFF

Faye Reiff
115 Arbor Glen Court
Maineville, Ohio  45039

October 24, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:

In response to the court ordered Notice of September 24, 2003, we the individual
members are to notify you in writing of discrepancies in the calculation of our severance
pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service and weekly pay correctly. That number
11.97 weeks at $ 1,057.70 per week or $12,660.67, however you left off other pertinent
benefits that were part of the entire 828 package that I am eligible for, that being vacation
pay and 9 months of COBRA coverage.

I am entitled to three (2) weeks of vacation pay, $2,115.40.

Also 9 months of Cobra at ($95.63 medical & $25.14 dental per pay) for 18 pay periods
or $2,173.86.

This brings the total owed to me from International Paper to:

| | | |
|---|---|---|
| Salary | $12,660.67 |
| Vacation | $ 2,115.40 |
| Cobra | $ 2,173.86 |
| Total | $16,949.93 |

Sincerely,

Faye J. Reiff

P.S.  I did not receive prompt notification because my address has changed.  My old
address is 71-C Rough Way, Lebanon, Ohio  45036.  Please record my new address.

Cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT 2 8 2003



International Place I
6400 Poplar Ave.
Memphis, TN  38197
Phone 901 763 6000

May 25, 2004

Ms. Faye J. Reiff
71-C Rough Way
Lebanon, OH  45036

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Ms. Reiff:

We are in receipt of your letter dated 10/28/2003, in which you question your entitlement to vacation and/or COBRA.  The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits.  Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

JOHN R. RICE

October 10, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:    Dalesandro, vs International Paper
       Case No. C-1-01-109
       US District Court, Southern District of Ohio

Dear Ms Barger:
In response to the court ordered Notice of September 24, 2003, we the individual
members are to notify you in writing of discrepancies in the calculation of our severance
pay and severance benefits of Severance Policy 828.

You did indeed calculate my weeks of service and weekly pay correctly. That number
56.34 weeks at $ 1,271.16 or $71,617.16, however you left off other pertinent benefits
that were part of the entire 828 package that I am eligible for, that being vacation pay and
9 months of COBRA coverage.

I am entitled to three (6) weeks of vacation pay, $7,626.96

Also 9 months of Cobra at ($95.63 medical & $25.14 dental per pay) for 18 pay periods
or $2,173.86.

This brings the total owed to me from International Paper to:

| | |
|---|---|
| Salary | $71,617.16 |
| Vacation | $7,626.96 |
| Cobra | $2,173.86 |
| Total | $81,417.98 |

Sincerely,

*John R. Rice*

John R. Rice

Cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT ' 6 2003



International Place I
6400 Poplar Ave.
Memphis, TN  38197
Phone 901 763 6000

May 25, 2004

Mr. John R. Rice
22 Mary Jane Drive
Hamilton, OH  45013

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Rice:

We are in receipt of your letter dated 10/16/2003, in which you question your entitlement to vacation and/or COBRA.  The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale.  Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers.  Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later.  As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper.  When you obtained comparable coverage, you eligibility for COBRA ended.  Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

TERRY RIGABAR

RECEIVED

OCT 0 6 2003

BENEFITS ADM.

October 3, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee  38197

Dear Ms. Barger;

I am sending you this letter as a result of receiving a court ordered notice regarding the Dalesandro, et al. v.The International Paper Company case and the severance pay calculations under policy #828.  Let this letter serve as notice that I do not agree with the calculations that were performed.

According to the policy I should be eligible for 10 weeks plus 1 week's earnings for each year of credited service.  This would amount to the 12.64 weeks of severance in the calculation. However, the policy also states that "An eligible employee will receive a lump sum payment for banked vacation, earned but unused vacation and, if eligible to retire accrued vacation."  This would amount to three (3) weeks.  I believe that my severance calculation should be based on 15.64 weeks and not the 12.64 weeks used.  Therefore the calculation should read 1,338.47 times 15.64 weeks for a total of $20,933.67.

I would also like to make a correction to my home address for all future correspondence.  My current address is:

Terry Rigabar
7683 Park Avenue
Lowville, NY  13367
Phone:  (315) 376-6497

Please let me know if you need any further information from me.

Sincerely

Terry Rigabar



International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Mr. Terry Rigabar
7683 Park Ave.
Lowville, NY 13367

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Mr. Rigabar:

We are in receipt of your letter dated 10/6/2003, in which you question your entitlement to vacation. The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale. Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers. Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later. As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper. When you obtained comparable coverage, you eligibility for COBRA ended. Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator

DEBRA A. ROSE-COMBS

October 18, 2003

Sharon Barger
International Paper
6400 Poplar Avenue
Memphis, Tennessee 38197

Re:     Dalesandro, vs International Paper
        Case No. C-1-01-109
        US District Court, Southern District of Ohio

Dear Ms Barger:

In response to the court ordered Notice of October 2, 2003, we the individual members are to notify you in writing of discrepancies in the calculation of our severance pay and severance benefits of Severance Policy 828.

My weeks of service and weekly pay are calculated correctly. That number is 47.96 weeks at $ 775.00/week or $37,169.00, however you left off other pertinent benefits that were part of the entire 828 package that I am eligible for, that being vacation pay of six (6) weeks and nine (9) months of COBRA coverage.

I am entitled to six (6) weeks of vacation pay, at $775.00/week or $4,650.00.

Also nine (9) months of Cobra at ($95.63 medical & $25.14 dental per pay) for eighteen (18) pay periods or $2,173.86.

This brings the total owed to me from International Paper to:

|           |            |
|-----------|------------|
| Salary    | $37,169.00 |
| Vacation  | $4,650.00  |
| Cobra     | $2,173.86  |
| Total     | $43,992.86 |

Sincerely,

Debra A. (Rose) Combs

Cc:
Murdock,Goldenberg,Schneider & Groh

RECEIVED OCT 2 4 2003

# INTERNATIONAL ⊕ PAPER

International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

May 25, 2004

Ms. Debra A. Rose-Combs
821 Ridgelawn Ave.
Hamilton, OH 45013

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Ms. Rose-Combs:

We are in receipt of your letter dated 10/24/2003, in which you question your entitlement to vacation and/or COBRA. The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale. Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers. Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later. As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper. When you obtained comparable coverage, you eligibility for COBRA ended. Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator



INTERNATIONAL PAPER

International Place I
6400 Poplar Ave.
Memphis, TN 38197
Phone 901 763 6000

June 11, 2004

Ms. Debra A. Rose-Combs
20 Holmes Ct.
Hamilton, OH 45013

Re: Champion International Corporation Reorganization Severance Policy #828

Dear Ms. Rose-Combs:

We are in receipt of your letter dated 10/24/2003, in which you question your entitlement to vacation and/or COBRA. The following will explain the results of our research.

With regard to your request for vacation pay, when Smart Papers purchased the Hamilton Mill, the asset purchase agreement required Smart Papers to honor earned and accrued vacation for the employees it retained following the sale. Because you were retained by Smart Papers, Smart Papers was required to provide you with your earned and accrued vacation.

With regard to your claim for COBRA benefits, all Hamilton Mill employees were provided with information related to their COBRA benefits at the time of the sale to Smart Papers. Under COBRA, continuation coverage must be elected within 60 days after your coverage ends or you are notified of your eligibility for continuation coverage, whichever is later. As the time for electing COBRA coverage has long past, you are no longer eligible for COBRA benefits. Furthermore, because you were hired by Smart Papers on or about February 9, 2001, you became eligible for Smart Paper's coverage which was comparable to the coverage provided by International Paper. When you obtained comparable coverage, you eligibility for COBRA ended. Thus, you are not currently eligible for COBRA benefits from International Paper.

Cordially,

Sharon L. Barger
Benefits Consultant, Employee Benefits
Office of the Plan Administrator