IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SCOTT D. DALESANDRO, et al., On behalf of themselves and all others similarly situated, | Case No.: C-1-01-109 |
| | Judge Sandra S. Beckwith |
| Plaintiffs, | |
| v. | PLAINTIFFS' REPLY IN SUPPORT OF THEIR SUPPLEMENTAL MOTION FOR ATTORNEY FEES AND EXPENSES |
| THE INTERNATIONAL PAPER COMPANY, | |
| Defendant. | (Exhibit attached) |

**REPLY MEMORANDUM**

**I. INTRODUCTION**

Plaintiffs' Supplemental Motion for fees and expenses submits:

1) the time and work performed and expenses incurred by Plaintiffs' counsel since their first application for fees through August 18, 2004;[1]

2) an estimate of the total value of the common fund of damages based upon damages evidence developed since the initial motion; this estimate is offered to assist the Court in its consideration of Plaintiffs' Counsel's request for a fee of 25% of that fund; and

3) prejudgment interest calculations to aid the court in fashioning a final judgment entry related to Plaintiffs' motion for prejudgment interest.

---

[1] The initial application (Doc. #45) covers all time up through July 31, 2003; the Supplemental Motion (Doc. #67) covers the time period from August 1, 2003 through August 18, 2004.

{00011204; 1}

The only items preventing this Court from entering final judgment on its March 21, 2003 decision (Doc. #40), and preventing the parties from moving forward on appeal, are the outstanding motions for fees (Doc. #s 45 & 67).

Since the filing of their second fee application which covered the time period through August 18, 2004, Plaintiffs' counsel has continued to perform work and incur expenses in connection with this case: in preparing for and participating in an unsuccessful mediation; in the continued work necessary to brief the outstanding issues related to the attorney fees, expenses and imposition of prejudgment interest; and in the additional work in submitting the Report on Notice to the Class and the request for final judgment entry. Therefore, Plaintiffs request that, rather than filing additional periodic supplements updating the time and expenses that continue to accrue in this case while it remains in the district court, they be granted the right to supplement and provide a full accounting at the conclusion of the case, including any appeal.

## II. REPLY TO DEFENDANT'S OPPOSITION TO THE SUPPLEMENTAL MOTION

### A. Plaintiffs' Time and Expenses Related to Vacation Pay are Recoverable

Defendant first argues that Plaintiffs' claim that vacation benefits should be included as damages is not an ERISA claim, and therefore not subject to ERISA's fee shift provision. This argument must fail, however, as it is based on legal principles and case law that are made inapplicable by the fact that Defendant itself put the payment of vacation benefits into its Severance Policy #828. This is not a case where the employees are incorporating a <u>separate</u> document or language or vacation plan into the severance plan; this is not a case where the employees are characterizing an unmentioned or separate payroll policy as an ERISA benefit. Vacation pay is specifically listed as a "Miscellaneous Benefit" in Defendant's welfare benefits plan.

The ERISA statute states that the term "employee welfare benefit plan" means "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants . . . *vacation benefits*."[2] Employee welfare benefit plans included within the scope of ERISA are those which are "payable only upon the occurrence of a contingency outside the control of the employee.[3] The Sixth Circuit has explained that in determining whether a claim for benefits falls under the ambit of the ERISA framework, it looks to the nature of the plan, whether the plan requires an administrative program, what degree of discretion the employer retains over distribution of the benefits, and whether the employer must "analyze each employee's particular circumstances in light of the appropriate criteria."[4]

Defendant wrote this Plan to make the payment of accrued unpaid vacation time contingent upon the termination of Plaintiffs' employment; Severance Policy #828 was operative only upon the occurrence of that contingency – termination within the one year period of the policy – which was certainly outside the control of Plaintiffs. Further, the record is replete with claims by Defendant that it retained all discretion to determine eligibility, and the Plan Administrator filed an affidavit explaining that he analyzed each employee's eligibility for benefits. Moreover, Defendant itself distinguished vacation pay from a "payroll practice" by including it in its welfare benefit plan. In sum, Defendant made vacation pay an ERISA claim in this case.

Defendant next argues that even if the promise to pay vacation benefits is an ERISA claim, Plaintiffs' counsel are not entitled to the fees and expenses related to pursuing those

---

[2] 29 USC §1002(1)(A).
[3] *Massachusetts v. Morash*, 490 U.S. 107, 115-116 (1989), citing 40 Fed. Reg. 24642 (1975).
[4] *Cassidy v. AKZO Nobel Salt, Inc.*, 308 F.3d 613, 616 (6th Cir. 2002), citing *Swinney v. General Motors Corp.*, 46 F.3d 512, 517 (6th Cir. 1995), and *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11-12 (1987), and *Sherrod v. General Motors Corp.*, 33 F.3d 636, 638-39 (6th Cir. 1994).

damages because the Court ruled against them on that issue. This argument slices the fee shift requirements too thinly. All of Plaintiffs' time and work to include the vacation pay benefit as part of the Policy #828 benefits recovered in this case, and to include vacation pay in the calculation of damages, was reasonable at the time the work was performed. Section 7 of Policy #828, entitled Miscellaneous Benefits, included a provision that Defendant will make a lump sum payment to a terminated employee for accrued vacation time; Defendant made no monetary payment to Plaintiffs for their accrued vacation and hindsight should not be used to criticize the time spent on this issue even though Plaintiffs did not prevail.

The Sixth Circuit has explained that the approach advocated by Defendant is an "overly stringent standard to use when awarding fees", and that "[t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved."[5] Further, legal work performed on a claim in a case is only "unrelated" if it could be raised in a separate lawsuit.[6] "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit ... the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee."[7]

Plaintiffs pursued one claim: an ERISA claim for benefits under Policy #828. This is not a case where the plaintiffs pursued several alternative claims based on different facts and separate legal theories and only partially prevailed. Therefore, a reduction of that part of Plaintiffs' requested fee that involved work urging the Court to include the value of lost vacation pay as part of Plaintiffs' damages is not justified.

---

[5] *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).
[6] *Id.* at 435.
[7] *Id.* at 435 & 440.

### B. Plaintiffs' Time and Expenses Related to the Economists' Calculations are Recoverable

Plaintiffs had no choice but to turn to an economist to calculate damages which Defendant refused to calculate.[8] Defendant still refuses to provide any calculations on the pension benefits.[9] Moreover, Defendant does not dispute that it flagrantly ignored the Court-ordered procedure set forth in the Notice requiring it to respond to employees who wrote to International Paper questioning the damages calculations; and Defendant ignored Plaintiffs' counsel's repeated requests for pension calculations and for copies of any International Paper responses to employees about its damages calculations.[10]

Defendant provided the language and figures related to the pension benefit in attachments to the Notice which was sent to each of the employees *who qualified for the pension as of February 9, 2001 when they were terminated.*[11] **Defendant's** figures used the *termination date of February 9, 2001,* and Defendant told those qualified employees those pension enhancement figures would apply if Plaintiffs prevail in this lawsuit after any appeal.[12]

The economist used **Defendant's** pension enhancement figures, and calculated the past due benefits for those employees who should have been able to take early retirement and start receiving their monthly pension payments on March 1, 2001.[13] The economist then calculated the future monthly pension payments based on the life expectancy of each qualified employee

---

[8] The economist's report and its underlying data was filed under seal with Plaintiffs Report (Doc. # 68) as Exhibit 2, Attachment G.
[9] Defendant's Response (Doc. #72) at pp.5-7.
[10] Plaintiffs' Report on Notice (Doc. #68), Groh Dec., Exhibit 2, Attachment C.
[11] See the copies of the Notices that contained **Defendant's** pension calculations and which were sent to the employees who qualified for the enhanced pension benefits, filed under seal with Plaintiffs' Report (Doc. # 68), Groh Dec., Exhibit 2, Attachment E.
[12] Id.
[13] Economist Report, filed under seal with Plaintiffs Report (Doc. # 68), Groh Dec., Exhibit 2, Attachment G.

and reduced those amounts to present value.[14] The bases for the report and the underlying data are standard and the published tables are attached to the report; the methodology is simple, not proprietary, and set forth and explained in detail.[15]

Defendant had adequate time and opportunity over the past year while the fees issues have been pending to respond to the employees and Plaintiffs' counsel's requests for pension enhancement calculations, but it chose not to do so. Defendant also had adequate time and opportunity to respond to this economist report, which was filed and served on August 20, 2004, and Defendant could have submitted its own evidence or specific challenges to assist this Court and Plaintiffs in valuing this benefit, but it chose not to do so. Defendant complains that "it has not had an opportunity to review, analyze, or refute, or to depose the economists", yet it has had the report for nearly three months, the report uses Defendant's own figures, includes all the data used, and explains the method of the calculation for each employee. Moreover, Defendant never made any request for any information related to this economist report and never asked to take any deposition testimony.[16]

Accordingly, the time and expenses related to the economist report submitted by Plaintiffs are recoverable as they were made necessary by Defendant, are reasonable, are supported by the record, and are helpful in estimating the total value of the common fund from which attorney fees are being requested.

---

[14] Id.
[15] Id.
[16] Groh Dec. attached hereto as Exhibit 1.

### C. The Value of the Enhanced Value of the Pension Benefit Recovered in this Action Should be Included as Damages in the Common Fund

But for Defendant's wrongful denial of Policy #828 benefits to the Class upon their termination on February 9, 2001, the employees who qualified for early retirement, pursuant to the terms of the Flex Six provision of the Severance Plan #828 and the Retirement Plan #001, could have begun their payment of pension benefits on March 1, 2001. However, Defendant has refused to pay any pension benefits until the employee ends his or her employment with the purchaser of the Mill, Smart Papers. This refusal ignores the key fact that the class members' employment with Smart Papers was forced upon them, depriving them of the choice to receive their severance and pension benefits due to them under Policy #828 instead of taking a position with Smart Papers.

Defendant relies on an arguments <u>it already lost</u>: that the employees are not entitled to benefits because they were subsequently hired by the purchaser (Smart Papers), and that their entitlement to Policy #828 benefits is dependent upon the status of their employment with that purchaser. To the contrary, no member of the class who has qualified for early retirement <u>from International Paper</u> should have to wait until he or she retires from Smart Papers to receive their <u>International Paper</u> benefits. A former International Paper employee's subsequent or current employment with Smart Papers is wholly irrelevant to Defendant's obligation to pay benefits pursuant to its own Policy #828 upon terminating that employee. This Court agreed and ruled that Plaintiffs were terminated by Defendant effective February 9, 2001 and that they are entitled to the severance and pension benefits in Policy #828.[17]

---

[17] Amended Order (Doc. #40 at 15-16 & 21).

Therefore, the class members who qualify for their pension benefits were entitled to have those pension payments begin on March 1, 2001 after their February 9, 2001 termination; their present employment with Smart Papers is irrelevant to their entitlement to, or the timing of, their receipt of monthly pension benefits; and they should not have to wait until they leave their employment with Smart Papers to receive those benefits.

This Court has already ruled and explained why Defendant's position, which is the faulty premise upon which its objections are based, is wrong. It is irrelevant that Defendant "has at all times taken the position" and that "this position is clearly stated in the Class Notice" because it is merely a "position"; further, it is not a position with which Plaintiffs ever agreed, and one that the Court has rejected. The Court considered Defendant's theory and ruled that Plaintiffs were terminated and were entitled to the benefits they would have received under Policy #828 without regard to any subsequent employment.

Therefore, payment of the past due, not future, pension benefits IS currently owing and due. A breach HAS occurred. The amounts due since March 1, 2001 CAN be determined with a measure of certainty and are not "guesstimates" as described by Defendant. The payment of these benefits is NOT dependent upon ANY other factors as claimed by Defendant since the only controlling factor has already occurred – the employees were terminated by International Paper.

Since Defendant would not, and still will not, calculate the value of the enhanced pension benefits recovered in this action, Plaintiffs had no choice but to retain economists to <u>estimate</u> that value. Plaintiffs have never offered these figures or calculations as anything but an estimate for the purpose of assisting the Court in its consideration of Plaintiffs' motion for approval of a 25% contingency fee award from the Class. Precise damages calculation will be performed in the pay out stage of this litigation. It is also notable that this estimate in no way affects what Plaintiffs

seek from Defendant, on behalf of the Class, in the lodestar plus multiplier fee payment pursuant to ERISA's fee shift statute; it is only a way to estimate the value of the common fund so that the Court can consider the 25% fee sought by Plaintiffs' counsel.

The value of the pension enhancement provided by Section 3 of Policy #828 and the opportunity to retire early and receive those pension payments beginning March 1, 2001 should be included as damages recovered in this lawsuit. Plaintiffs' entitlement to those enhanced pension benefits should be included in the final judgment entry; and the value of those enhanced pension benefits should be included in the Common Fund of damages recovered in this action and considered in the context of an award of attorney fees as a percentage of the common fund.

### D. Plaintiffs' Request for a 1.5 Multiplier Should be Granted

Plaintiffs respectfully submit they are entitled to a 1.5 multiplier to the lodestar amount to be paid by Defendant pursuant to the fee shift statute for the same reasons set forth in their initial and reply briefs related to their first motion for fees and expenses (Doc. #s 45 & 53).

### E. Plaintiffs' Request for the Payment of Their Expenses by Defendant Pursuant to the Fee Shift Statute Should be Granted

In their Supplemental Motion, Plaintiffs request payment from Defendant pursuant to ERISA's fee shift statute for the additional expenses incurred from August 1, 2003 through August 18, 2004 which total $7,559.39. These expenses are reasonable and were necessarily incurred in connection with moving the case forward; to issuing notice; to responding to the class members' objections to their benefits calculations; to seeking fees, expenses, interest, and incentive awards, and to submitting the evidence and arguments necessary for the Court to enter final judgment. Plaintiffs respectfully submit they are entitled to recover these expenses from

Defendant on the same basis as set forth above and in their initial papers related to their original motion for fees and expenses (Doc. #s 45 & 53).

### F. Plaintiffs' Motion for Prejudgment Interest Should be Granted

There is no federal prejudgment interest statute, and the parties have agreed that it should be calculated according to the federal post-judgment statute, 28 U.S.C. §1961, which states in pertinent part (italics added):

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from *the date of the entry of the judgment,* at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding *the date of the judgment.*
>
> (b) Interest shall be computed daily to the date of payment . . . and shall be compounded annually.

Since we are applying the **post**-judgment interest statute to calculate **pre**-judgment interest, we must substitute the above italicized language relating to the dates in the statute's formula: instead of calculating interest from "the date of the entry of judgment", we logically substitute "the date the benefits were due and payable"; instead of using the rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding "the date of the judgment", we substitute "the date the benefits were due and payable." This is consistent with the statute and the purpose of imposing prejudgment interest since it results in the rate at which those benefits could have been invested by the employee but for the wrongful withholding of that money by Defendant, and is the rate at which Defendant was able to invest the amount it wrongfully withheld.

This is exactly how Plaintiffs arrived at each rate (for the payment of both the severance and pension benefits) which was submitted in their Supplemental Motion for fees (Doc. #67) and

Report on Notice for Final Judgment Entry (Doc. #68). It is an objective calculation based on a clear statutory formula and on public information "as published by the Board of Governors of the Federal Reserve System." Plaintiffs' economist provided this published information and the resulting rates for the two different benefits the Court has ruled are recoverable in this action. According to **the very terms of Defendant's own Policy #828**, the Section 2 Severance Benefits were due and payable on February 17, 2001, and the Section 3 Pension Benefits were due and payable on March 1, 2001.[18]

Each rate was what it was on those dates according to the public information published by the Board of Governors of the Federal Reserve System, regardless of who performs the calculation. There is no "lengthy analysis", nor is it "speculative" or "unsupported" or "deficient" or "inadmissible" or "self-serving" as argued by Defendant. Significantly, Defendant offers no other rationale or calculation or economist opinion establishing how or why either rate should be anything other than 4.72% for the Section 2 Severance Benefits, and 4.69% for the Section 3 Pension Benefits.

Defendant's additional objections to Plaintiffs' request for prejudgment interest on the Section 3 Pension Benefits totally miss the mark:

First, Defendant misstates that Plaintiffs are requesting prejudgment interest "on the estimated future pension benefits." This statement is incorrect; Plaintiffs have only moved for the imposition of prejudgment interest on the **past-due** pension benefits – those pension payments that the few employees who qualified for early retirement or partial pensions based on their

---

[18] The prejudgment interest on the full amount of <u>Section 2 Severance Benefits</u> accrues on February 17, 2001 pursuant to the Severance Plan which states that the entire sum will be paid eight days after termination. Plaintiffs' Report (Doc. #68) at Exhibit 4, Section 8(b). Prejudgment interest should accrue on the amount of past due <u>Section 3 Pension Benefits</u> that a qualified employee would have received starting on March 1, 2001 pursuant to the Retirement Plan which states that monthly payments of pension benefits will start on the first day of the next month following the retirement. Plaintiffs' Report at Exhibit 5, Salaried Retirement Plan #001, Section 7(b).

number of years of service could have received from March 1, 2001 after their February 9, 2001 termination. Plaintiffs have moved for prejudgment interest on all monthly pension payments those employees could have started receiving from March 1, 2001 until the date final judgment is entered; the federal post-judgment statute would then apply to all of the pension benefits Defendant does not make from the date of that judgment entry to the date Defendant starts making those monthly pension payments.

Second, Defendant merely repeats the argument it already lost as discussed in Section C above: that the employees are not entitled to benefits because they were subsequently hired by the purchaser of their mill. No member of the class who qualifies for early retirement should have to wait until he or she retires from Smart Papers, as that subsequent employment is wholly irrelevant to Defendant's obligation to pay benefits pursuant to its own Policy #828 upon terminating these employees on February 9, 2001. This Court has already ruled and explained why Defendant's position, which is the faulty premise upon which its objections are based, is wrong.

Therefore, payment of the past due, not future, pension benefits is currently owing and due. A breach has occurred and the amounts due since March 1, 2001 can be determined with a measure of certainty. Accordingly, prejudgment interest should be imposed on all past due Policy #828 benefits – Section 3 Pension Benefits and Section 2 Severance Benefits alike.

## III.  CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request the Court to grant their initial and supplemental motions for attorney fees and expenses and prejudgment interest and incentive awards (Doc. #s 45 & 67), and to grant them permission to supplement their motions with a full

accounting of any additional time and expenses at the conclusion of the case, including any appeal.

                Respectfully submitted,

                s/Theresa L. Groh
                Theresa L. Groh, Esq. (0029806)
                John C. Murdock, Esq. (0063749)
                Murdock Goldenberg Schneider & Groh, L.P.A.
                700 Walnut Street, Suite 400
                Cincinnati, Ohio 45202-2011
                Telephone: (513) 345-8291
                Facsimile: (513) 345-8294

                **Trial Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2004 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Grant S. Cowan, Esq., Frost Brown Todd LLC, 2200 PNC Center, 201 East Fifth Street, Cincinnati, Ohio 45202-4182; and I hereby certify that I have mailed the document via U.S. First Class Mail to the following non CM/ECF participants: W. Carter Younger, Esq. and James P. McElligott, Esq., McGuire Woods, LLP, One James Center, 901 East Cary Street, Richmond, VA 23219-4030.

                s/Theresa L. Groh
                Theresa L. Groh

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SCOTT D. DALESANDRO, et al., On behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE INTERNATIONAL PAPER COMPANY, <br><br> Defendant. | Case No.: C-1-01-109 <br><br> Judge Sandra S. Beckwith |

### DECLARATION OF THERESA L. GROH

I, Theresa L. Groh, under penalty of perjury pursuant to 28 U.S.C. 1746, declare as follows:

1. I never received any request from any person, including anyone on behalf of Defendant International Paper Company, for any information related to the economist report which I filed and served on August 20, 2004 in this action.

2. I never received any request from any person, including anyone on behalf of Defendant International Paper Company, to take any depositions, or to perpetuate the testimony of any person in any other manner, related to the economist report which I filed and served on August 20, 2004 in this action.

So declared this 15th day of November 2004, Cincinnati, Ohio.

_____
Theresa L. Groh

{00010477; 1}