UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


- - -


SCOTT D. DALESANDRO, et al.,    .    CIVIL ACTION NO. C-1-01-109
                                .
          Plaintiffs,           .    Cincinnati, Ohio
                                .
        - v -                   .    Thursday, January 13, 2005
                                .    11:00 a.m.  Conference
INTERNATIONAL PAPER COMPANY,    .
                                .    **In Chambers Telephone**
          Defendant.            .    **Conference**
...............................

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SANDRA S. BECKWITH, CHIEF JUDGE
TRANSCRIPT ORDERED BY:  Grant S. Cowan, Esq.

APPEARANCES:

For the Plaintiffs:    MURDOCK, GOLDENBERG, SCHNEIDER & GROH,
                       L.P.A.
                       BY:  Theresa L. Groh, Esq.
                       and  John C. Murdock, Esq.
                       35 East Seventh Street, Suite 60
                       Cincinnati, Ohio   45202


For the Defendant:     McGUIRE WOODS, LLP
                       BY:  James P. McElligott, Esq.
                       One James Center
                       901 East Cary Street
                       Richmond, VA   23219


                       FROST BROWN TODD, LLC
                       BY:  Grant S. Cowan, Esq.
                       2200 PNC Center
                       201 East Fifth Street
                       Cincinnati, Ohio   45202


Also Present:          Vincent Miraglia, Esq. (Deft's In-house
                        Counsel)


Law Clerk:             Patrick F. Smith, Esq.


Court Reporter:        Mary Ann Ranz

2

1                    THURSDAY, JANUARY 13, 2005

2                    IN CHAMBERS TELECONFERENCE

3          THE COURT:  Hello?

4          MS. GROH:  Good morning, Judge.  This is Teri Groh

5    and John Murdock.

6          MR. McELLIGOTT:  Good morning, Your Honor.  This is

7    Jay McElligott of McGuire Woods, and Vinny Miraglia is also

8    on the line.

9          MR. MIRAGLIA:  Good morning, Your Honor.

10         THE COURT:  Good morning.  Just let me ask you as

11   you speak to identify yourselves so the record is clear.

12   Present here is Grant Cowan and my career law clerk, Pat

13   Smith, who's assigned to this case, and Mary Ann Ranz is

14   taking the record.

15      The purpose of the conference is to help me understand

16   where everybody thinks they are in this case.  And in

17   particular with regard to the issue of Flex Six, it seems to

18   be hanging out without a resolution at this point.  There was

19   a time when we had a telephone conference that was

20   transcribed, and ultimately a transcript was prepared where

21   Mr. McElligott stated with regard to Flex Six, and this is a

22   quote:

23          "With respect to the retirement plan benefits,

24      International Paper has to figure out, Well, okay what do

25      we do with this?  Can we just make the decision?  Is

1    there an additional procedure we have to go through?

2    After looking at the issue, International Paper said,

3    'No, we will pay these amounts if the Court's order is

4    upheld on appeal, and we will put those amounts out

5    there.'"

6    There a few different aspects to this issue.  I'm trying

7  to figure out is there an agreement between counsel that Flex

8  Six eligibility will be a given, assuming that my decision is

9  upheld on appeal?  When would the amount due be calculated?

10  And how do we figure out the amount of the contingent fee if

11  we don't know the amount of Flex Six, or is that something

12  that's not going to be included in the contingent fee?  I

13  think that's generally the situation.

14    Unfortunately, this is somewhat complicated by the fact

15  that this has a foot in two different canoes:  It's a

16  retirement benefit that has been somehow swept into a

17  severance package, and it seems as if it's not due until the

18  employees are actually retired.

19    I know plaintiffs have some expert estimates, and my

20  understanding is defendants disagree not only with the

21  numbers but also with the issue of present entitlement.

22    So, that's a lot of my just shower thoughts on this.

23    (Laughter.)

24        THE COURT:  I'm happy to hear what anybody has to

25  say that will help me get a grip on this.

4

1          MR. McELLIGOTT:  This is Mr. McElligott.  We can

2    file an additional, specific brief on this, Your Honor, but I

3    will try to explain our position.  As I said -- and this is

4    reflected in the notice that the parties agreed upon and sent

5    to the -- sent to the Class Members.  Although International

6    Paper respectfully disagrees that there is any entitlement to

7    Flex Six with respect to these individuals, the -- as we

8    represented to the Court before, on the issue of eligibility

9    based on termination, we -- if the Court's decision is upheld

10   on appeal, if there is an appeal or it becomes final,

11   International Paper will honor the eligibility of those folks

12   for Flex Six.  However -- and this is also pointed out in the

13   notice that went to the Class Members -- the Flex Six

14   benefits has a specific blocking provision in it, and this

15   was communicated to all these folks in the summary plan

16   description for the plan that says if they continue

17   employment with a purchaser of any Champion operation after a

18   sale, payments cannot commence until after the date you leave

19   employment with a purchaser, or age 65 if sooner.

20        So, to the extent that Class Members are still working

21   for the purchaser, even though the Court has ruled that they

22   are eligible for Flex Six payments, they cannot get those

23   payments until they leave employment with that purchaser, and

24   that is a specific provision in the plan.

25        Now, that was never briefed to the Court because it was

1    never an issue in any of the merits of the case and it wasn't

2    an issue, and for those reasons we don't think it's a basis

3    for attorneys' fees, because plaintiffs have not had to do

4    anything with respect to that issue.  They simply briefed the

5    issue of the -- whether this was a termination with respect

6    to the plan.  And after that, International Paper made the

7    decision that if -- if, in fact, it was ultimately determined

8    that those individuals were entitled to these severance

9    benefits, then those persons who would otherwise have been

10   eligible for the Flex Six -- and the Court understands it's

11   an age and service standard -- those individuals would be

12   treated as eligible.  They're only eligible consistent with

13   the terms of the plan.  They don't get more.

14       Now, that's just one of the reasons why the letter that

15   plaintiffs submitted isn't a valid basis for determining the

16   worth of that benefit.  But again, as the Court knows, we

17   objected to that because there is no -- there hasn't been any

18   discovery or leave for discovery or cross-examination or

19   qualification or even any ability for us to determine what he

20   was looking at.  But, we know that to the extent these

21   individuals are still working for the purchaser, they're not

22   entitled to anything yet.

23            MS. GROH:  Your Honor --

24            MR. McELLIGOTT:  That I hope -- that, in a nutshell,

25   is where we are.  And, Your Honor, we are happy to submit

6

1   additional papers on the issue, if the Court would find that

2   helpful.

3          MS. GROH:  Your Honor, this is -- this is Teri Groh

4   on behalf of the plaintiffs.  And I apologize if you wanted

5   us to appear before you.  I was told it was a phone

6   conference, and I apologize if our appearance there is -- or

7   our appearance by phone is inappropriate.

8          THE COURT:  No, not at all.  I think we had

9   anticipated everyone would appear by phone, but Mr. Cowan was

10  in the neighborhood and decided to stop in, in person, and I

11  didn't think that was a problem, so he is here alive, in

12  person.

13         MR. COWAN:  I apologize, Teri.  In the cases we have

14  worked before -- I know we have a case before Judge

15  Beckwith -- local counsel appeared in person, and I assumed

16  local counsel would be showing up in person.  I thought you

17  were going to be here as well, quite frankly.  I apologize if

18  I showed up somewhere where I wasn't supposed to.

19         MS. GROH:  I just wanted to make sure I was where I

20  was supposed to be.

21         THE COURT:  Yes.

22         MS. GROH:  Your Honor, to respond to what

23  Mr. McElligott has put forth, it's a difficult situation for

24  these employees for you -- or for IP to say to these

25  employees, "You're not entitled to any of our pension

7

1  enhancements because you're still working, but you have to

2  keep working because you're not entitled because we sold the

3  mill and we require you to keep working with this subsequent

4  employer even though the subsequent employer's not related to

5  IP at all."  It is really the crux of the case that you dealt

6  with a long time ago, and you ruled that IP terminated these

7  employees.

8      And so, our position is IP -- these employees were

9  terminated by International Paper at that time in February

10  and March.  They should have been able to start receiving

11  their pension benefits, the few individuals who qualified

12  then.

13      We have asked defendant for months, and now more than a

14  year, "Please provide us information on this pension

15  enhancement, how it's valued," and they've given us nothing.

16  We had to go to our own expert.  And what our expert looked

17  at -- when Jay says he doesn't know what the expert looked at

18  and he hasn't been able to depose them, it's of record.

19  Defendant never asked to depose Dr. Rosen after we submitted

20  his report.  And Dr. Rosen looked only at the information

21  that defendants provided.  We used defendant's figures and

22  did our best to try to come up with a figure that would put a

23  value on what the enhancement to the pension to these certain

24  individuals would be that was won in this litigation by

25  reason of plaintiffs winning entitlement to policy number 828

1  benefits.  828 benefits were not going to be given to these

2  employees but for this lawsuit and of prevailing.

3     So, we want to take the value of that Flex Six provision

4  in 828, we want to figure out what that value is, so that

5  later when these people are paid, they'll be paid a certain

6  sum and a past lump sum, a sum we say they are presently

7  entitled to, and there'll be future payments.  We think we

8  can reduce those figures.  We have reduced those figures to a

9  present value.  You add that into the common fund, that's the

10  value of what the plaintiffs recovered here.  And we, the

11  plaintiffs, are asking the Court to award us an attorney fee

12  that is 25 percent of that common fund.  A lot of the number

13  crunching can happen later when the administrator of the

14  settlement figures out what everybody -- what every employee

15  is entitled to for severance benefits under Section 2, and

16  what the certain individuals who qualify for the pension

17  benefits for the enhancement under Section 3.  And then each

18  of those employees, if the Court awards a percentage of the

19  common fund attorney fee, will pay their pro rata share of

20  the attorney fee.

21        MR. McELLIGOTT:  If Your Honor please, this is

22  Mr. McElligott again.  We have -- there is no mystery about

23  how the amounts are calculated and we have given that

24  information to Teri.  It is a matter of flexible combination

25  of adding age and severance.

9

1      We have given the formula and identified the person who

2  does the calculation.  But, Your Honor, the point is, and

3  this is -- this is not something the Court can rewrite.  The

4  plan says that if you continue employment with a purchaser of

5  any Champion operation after a sale, cannot -- payments

6  cannot commence until after the date you leave employment

7  with the purchaser, or age 65 if sooner.  Teri says that's

8  unfair.  That is an express part of the Flex Six payment.

9  All these individuals knew that.  They had a copy of the

10  summary plan description.  Teri's known it.  It was

11  communicated more than a year ago to the Class Members and

12  the Class.  This is that provision.  And the way that

13  people's actual amounts would be determined is if, in fact,

14  they are eligible for Flex Six and if they leave employment

15  with the purchaser, they can apply for this benefit.

16          MS. GROH:  What's missing here, though, is they

17  could have left employment if they were given their benefits,

18  as the Court has ruled they should have been.  They could

19  have.  And they can't because they have not been paid their

20  benefits.  So, you cannot punish these employees and say,

21  "Because you haven't left, even though we are not paying

22  benefits, you can't receive benefit."

23          MR. McELLIGOTT:  Your Honor please, again this is

24  Mr. McElligott.  That's the -- this, Your Honor, was one of

25  the reasons why International Paper believed that there was

1  no entitlement to 828 under these circumstances, because the

2  whole system, the whole scheme, the whole approach of

3  Champion and International Paper has been to not provide

4  severance benefits in these circumstances.  And International

5  Paper didn't believe that these people were entitled to any

6  of these provisions.

7      Now, the Court made a point in its decision of taking a

8  different settlement plan and noting, "Well, there is an

9  express provision dealing with the sale."  Well, the Flex Six

10  has an express provision dealing with the sale, and Teri and

11  the -- and the Court can't ignore it.

12      And again, this is an issue that -- with respect to the

13  merits of what these individuals are entitled to -- ought not

14  be addressed on a motion for attorney fees.  I mean, I agree

15  with the Court's analysis early on, in part, talking about a

16  foot in two canoes.  But ERISA is very clear that the Court

17  is -- enforces terms of the plan as written.  These

18  individuals aren't being punished because they've made a

19  decision to continue working.

20      And again, what I've read before, I quoted out of the

21  summary plan description issued in January 1998 before the

22  terms of the plan -- so this isn't something that came about

23  recently; this has been in that plan for years -- that if you

24  continue with a purchaser, you do not get Flex Six benefits

25  until you leave the employ of that purchaser, and nothing in

 1  any of these provisions overrides that.

 2      Now, we're -- again, International Papers' position has

 3  been that these individuals aren't even entitled to that.

 4  But, if the Court says they are entitled to 828, then we're

 5  saying, "All right.  For eligibility purposes, these

 6  individuals can be -- collect the Flex Six benefits, but only

 7  in accord with the terms of that benefit," because again

 8  that's the -- that is the express term.  And Teri's had that

 9  language for more than a year.

10          MS. GROH:  Your Honor -- Your Honor, I do have the

11  language.  I do not quarrel with the language.  I quarrel

12  with the application of it in this case, given the Court's

13  ruling.  The Court's ruling is entirely consistent with 828.

14  It applies 828 the way it should have been.  And what should

15  have happened is these employees could have decided after

16  they were terminated by IP, after they get their severance

17  benefits because they were severed, whether they wanted to go

18  work with the purchaser or not with their severance benefits

19  in hand.  If they do, no, they don't get their pension yet.

20  If they decide no, they do not want to go work with the

21  purchaser, then they get their pension benefits then.  It's a

22  decision that these employees were not given.  They were told

23  they had to go work with the subsequent employer, and now

24  they're held hostage not only with their severance benefits

25  but with the pension enhancement that four years ago they

1  could have decided to start recovering.

2       MR. McELLIGOTT:  And again, Your Honor, I'll only

3  say that the terms in Flex Six were communicated to these

4  individuals.

5       THE COURT:  Could you repeat that?

6       MR. McELLIGOTT:  The terms of the Flex Six with this

7  blocking -- The Flex Six has been a program that has been out

8  there and has been used in other circumstances, Your Honor.

9  Those terms were included in summary plan descriptions and

10  have been out there and have been applied by the company for

11  several years, and what I was reading from was from the

12  January 1998 plan.

13    Your Honor --

14       THE COURT:  Who is speaking?

15       MR. McELLIGOTT:  I'm sorry.  This is Mr. McElligott

16  again.  I apologize.  I would request, Your Honor, that to

17  the extent Teri and John are asking for a ruling that the

18  Court override the language of the Flex Six plan, we would

19  definitely like to brief this issue.

20       MS. GROH:  And, Your Honor, we would oppose any

21  additional briefing.  All of the issues are before the Court;

22  the record has been made.  The defendant has had the

23  opportunity and not taken advantage of providing us or the

24  Court with any information for more than a year now.  The

25  Court ruled in March of '03 that plaintiffs were entitled to

1  these benefits.  We tried then to brief and submit the issue

2  of attorneys' fees that we could go up to the Sixth Circuit

3  with all issues complete.  We sit here in January of '05, and

4  the fact that International Paper is asking for more briefing

5  on this is -- the plaintiffs -- we can't accept that.

6      MR. McELLIGOTT:  If Your Honor please, this is

7  Mr. McElligott.  The attorneys' fees issues were briefed in

8  October and none of these issues were raised.  This Flex Six

9  issue was raised last August.  We objected to it and we did

10 not ask for -- well, we asked for discovery if the Court was

11 going to consider that.

12     But we did not -- based on our experience with the

13 vacation issue, which the Court may recall in that case the

14 Court did not want discovery -- it was my understanding that

15 we just couldn't start taking depositions, absent leave of

16 Court.  But in our papers we objected to this submission and

17 asked leave that in the event the Court wants to hear it,

18 that we be given leave to submit additional factual

19 information on this.

20     MS. GROH:  Well, now, I might be confused as the

21 Court because I thought the defendant said after looking at

22 the issue they will pay and they'll put the amounts out

23 there, and that was, I'm certain, more than a year ago.  And

24 so I don't -- I don't know what else defendant needs to do.

25     MR. McELLIGOTT:  And, Your Honor, that -- what --

1   what I said -- excuse me, this is Mr. McElligott.  What I

2   said, Your Honor, was that we -- if the -- if the Court -- if

3   the Court's Order becomes final and not subject to -- and we

4   don't go forward with an appeal, we will honor eligibility

5   for Flex Six.  At the same time that we said that, and we

6   said that in the notice that went to the Class Members, Your

7   Honor -- we also very specifically pointed out this blocking

8   provision, and there was no objection by the plaintiffs.

9   They didn't raise that issue.  They didn't suggest that

10  somehow the blocking provision should be written out of the

11  retirement plan.  That -- in fact, I don't think there's ever

12  been a suggestion that the blocking provision be written out

13  of the plan until this phone conversation this morning.

14          MS. GROH:  And, Mr. McElligott, I respectfully

15  submit that your memory is just wrong on that because when we

16  talked about the notice, we agreed that the language in the

17  notice would read, "It is defendant's position that," because

18  we did dispute that and we were willing to put in the notice

19  that that was defendant's position.  We never conceded that

20  point.

21          MR. McELLIGOTT:  Well, Your Honor, whether --

22  whether they concede it or not, my point is they never asked

23  the Court to override that submission in the plan and Teri's

24  had that plan language.  And my only point is if -- if Your

25  Honor is considering or plaintiffs are requesting that the

1  Court override plan language in the retirement plan, we would

2  request the opportunity to file a brief in opposition.

3         MS. GROH:  Okay, then I can make it easy, Your

4  Honor.  Plaintiffs are not requesting the Court to override

5  the language.  What we are -- Our position has been

6  consistent from the filing of the Complaint in this case, and

7  that is but for the wrongful denial of 828 benefits upon IP

8  terminating these employees in February '01, these employees

9  would have been entitled to these pension enhancements,

10 certain individuals would have been eligible at that time,

11 and they should have been able to decide not to go work for

12 the purchaser so they would have been able to decide to

13 trigger the pension plan as written and they would have been

14 entitled to start receiving their pension benefits at that

15 time.

16        MR. McELLIGOTT:  Well -- Mr. McElligott again, Your

17 Honor.  I don't -- I don't understand the basis for

18 plaintiffs being able to say they could trigger a benefit

19 that is contrary to the terms of the plan.  The plan states

20 that these individuals are not entitled to these benefits

21 while they continue working for the purchaser.

22        MS. GROH:  Our position is but for the wrongful

23 denial of those benefits, they could have and may have, would

24 have, decided not to go work for the purchaser, thereby

25 becoming eligible, according to the terms of your plan.

1    THE COURT:  Okay.  Ms. Groh, if I understand you

2  correctly, what you're saying is, the plaintiffs'

3  interpretation of the severance package at the time of the

4  purchase by Smart Papers was not that they would have the

5  option not to accept employment with Smart Papers and could

6  retire with the enhanced Flex Six benefits, and so they have

7  been harmed or damaged by not having that option available to

8  them at the time of the purchase.  Is that correct?

9    MS. GROH:  That is correct, Your Honor, and I would

10  think that the defendant would have to agree with that.

11    MR. McELLIGOTT:  We do not agree, Your Honor.

12  Again, the limitations on Flex Six were communicated in

13  writing and these -- there can't be any claim that these

14  people were denied something.  They made a decision to work

15  for the purchaser.

16    MS. GROH:  And, Your Honor, I'll rely -- I'll rely

17  on the record.  These people were not given a choice.  And if

18  you go back to what IP gave to these employees, it's the core

19  of the case.

20    MR. McELLIGOTT:  And, Your Honor -- again, this is

21  Mr. McElligott.  International Paper believed that persons

22  who continued working in similar jobs in that same plant were

23  not terminated, were not entitled to these benefits.  That

24  was the reason they did not -- these individuals were not

25  entitled to any of these benefits in International Paper's

1  mind.  But, even if they had been entitled to these, they

2  were not entitled to Flex Six while they were working for the

3  purchaser.

4          THE COURT:  Okay.  Well, I guess, Ms. Groh, I'm

5  troubled by two parts of your argument.  I don't know how we

6  measure this.  It isn't like a lost business opportunity.  At

7  any point today plaintiffs could retire from Smart Papers and

8  they would be, assuming our judgment is upheld on appeal,

9  entitled to the Flex Six benefits.  So, I don't know that

10 there's a measure of damages or that there even, in fact, are

11 damages here.  That's obviously troubling to me, and I really

12 don't feel that we have adequate briefing on the issue,

13 witness our discussion this morning.

14     I would be inclined to ask for a full, thoughtful

15 briefing from each side on the issues.  I know you're anxious

16 to move ahead and have this finalized, but at this point I

17 think there are too many unanswered questions.

18          MS. GROH:  Your Honor, this is -- this is Teri Groh

19 again.  If I may just ask you to reconsider this.  All the

20 Court has to do -- all we've asked the Court to do is to

21 determine certain things for final judgment entry and to

22 determine how to award attorneys' fees.  We do not need to

23 get to a precise figure on the value of any pension

24 enhancement because of all the variabilities, and I don't

25 know that we ever would.  All we could do is just take the

 1  information and reduce it to present value.

 2      For the Court to put a final judgment entry on in this

 3  case, all the Court has to do is to find consistent with its

 4  original ruling the plaintiffs were terminated and they

 5  should have been given the choice to not work with the

 6  purchaser and to be able to get their severance benefits and

 7  enhancements.  But for the wrongful withholding of the

 8  benefits, they would have been eligible as of that date.

 9  That is what our economist has done.  And the Court can enter

10  a final judgment entry that is consistent with the Order that

11  the Court entered in March of '03, that plaintiffs are

12  entitled to the things we set out:  Entitled to severance

13  benefits; entitled to the pension enhancements if they were

14  eligible at the time of termination; and that attorney fees

15  can be awarded based on -- we've asked for 25 percent of the

16  value of all of those benefits, which -- which will be a

17  number certain after we go up on appeal and we come back and

18  we administer the settlement.  I think Mr. McElligott even

19  said that the only -- the only reason he would ask for

20  briefing is if plaintiffs' position is we are asking the

21  Court to write that language out of the pension plan, and we

22  are not.

23          MR. McELLIGOTT:  Well, Your Honor, they are -- if --

24  excuse me.  This is Mr. McElligott.  If they're asking the

25  Court to determine the amount of money that these people get

1  from the pension plan --

2          MS. GROH:  We are not, Your Honor.  We are asking

3  that the Court find they're eligible, that it's part of the

4  damages, that it's 828, that it was wrongfully withheld, that

5  plaintiffs are due this amount, and that attorney fees can be

6  based on that common fund.

7          MR. McELLIGOTT:  If Your Honor please, this sounds

8  like the vacation argument.  Now Teri is suggesting, I think

9  for the first time, that Flex Six benefits were wrongfully

10  withheld and people were denied a choice.  Of course, we know

11  they weren't denied a choice, but this is a free country and

12  they can do what they want to do.  And they were certainly on

13  notice of the terms of the Flex Six and have been on notice

14  of the terms of Flex Six for more than a year with counsel

15  advising them.  But that is precisely the impression I have,

16  Your Honor:  That plaintiff is asking that Flex Six damages

17  -- Flex Six "damages" be assessed.  All that the Court can

18  say at this point is, "We think these people are entitled to

19  the terms of the Flex Six, whatever they may be, because

20  they've been terminated."  And there has been no other issue

21  briefed before the Court.  There has been no claim made with

22  respect to any Flex Six benefits, which has its own

23  administrative procedure.  Though with respect to individual

24  amounts, it's a matter of calculating people's -- first

25  determining whether they're still working for the purchaser

1  and then seeing the impact on their years of service and age.

2      I think the issue has to be briefed, Your Honor, and --

3  because otherwise there's going to be this free-floating

4  question of what -- what this Court's ruling is.  I think all

5  this Court has done -- and, frankly, it wasn't even this

6  Court because it was never a controversy.  International

7  Paper said, after the Court's initial ruling, "We are going

8  to treat these folks as eligible for Flex Six, consistent

9  with the terms," which were clearly -- which have been

10  clearly communicated to all these folks.  I mean, we want to

11  be able to brief this issue.

12      MS. GROH:  Your Honor, it seems to me defendant's

13  now changed its argument three times in this phone conference

14  and it's directly contrary to what you read to us from the

15  record at the very beginning of this phone conference.

16      MR. McELLIGOTT:  I haven't changed one bit, Your

17  Honor.

18      THE COURT:  Well, I have another issue.  Ms. Groh,

19  you say, "Well, if it comes back from the Court of Appeals

20  and the Court of Appeals upholds our position, then we can

21  calculate Flex Six."  But if some of your clients are still

22  working at Smart Papers and are not yet entitled to Flex Six,

23  then we don't have all the information we need to calculate

24  the number even then, plus I think we have a problem with

25  trying to literally roll back the clock.

1    Isn't it somewhat speculative as to whether any of the

2    plaintiffs would have refused employment with Smart Papers,

3    assuming that this whole package was as you and we have

4    determined it to be?  You know, you're going to do 20/20

5    hindsight:  "If I had to do it all over now, knowing what I

6    know now, I would make a different decision."

7         MS. GROH:  No, Your Honor, I don't think so.  I

8    think what we have to focus on is eligibility.  They were

9    eligible to start receiving their pension, those who were

10   eligible -- and they're only a handful -- when they were

11   terminated, and that's all we need -- that's all that we need

12   to do.  The reducing the number to present value for the

13   future payments, yes, economists can do that.  Calculating

14   the amount that when they were terminated and they became

15   eligible, they'd start receiving that, we can calculate that.

16        MR. McELLIGOTT:  Your Honor, this is coming up in

17   the context of an attorney's fees motion, not in the context

18   of what the liabilities are.  So, the -- if -- if the Court

19   wants to get a valuation of Flex Six for attorneys' fees

20   purposes, we would like the opportunity to cross-examine

21   plaintiffs' economist and have him properly qualified as an

22   expert, if he can be.  But I don't even think he has the

23   information to be able to determine that.  And Teri seems to

24   be saying on the one hand none of these people are entitled

25   to anything because they're still working for the purchaser,

1   but somehow that this -- this has been a big value to them.

2   I mean, it can't be both.  Whatever way it is, Your Honor, I

3   think we need additional briefs if the Court is going to, you

4   know, walk down this road with respect to Flex Six.

5           THE COURT:  Well, correct me if I'm wrong,

6   Mr. McElligott.  My understanding, at least in part, that

7   your argument is you have two different provisions.  You've

8   got a provision in the severance package we interpreted as to

9   what "termination" means, and then you have a provision that

10  is in Flex Six which you've referred to as the "blocking

11  provision" which redefines "termination" for purposes of the

12  Flex Six plan, so that we're not talking about two identical

13  definitions of termination.

14          MR. McELLIGOTT:  Well, and it -- it does, Your

15  Honor.  I mean, the flex -- the Flex Six plan does not focus

16  on termination from Champion.  It says if you continue

17  employment with a purchaser of any Champion operation after a

18  sale, payments cannot commence until after the date you leave

19  employment with a purchaser, or age 65 if sooner.

20      So, the Flex Six benefit specifically limits the amount

21  of benefit that people can obtain following the sale, and

22  that is a part of the plan as Flex Six.  And again, any

23  Champion employee who is eligible for Flex Six has the same

24  dilemma:  That if they -- that they could get the benefit of

25  the Flex Six only by leaving the employment of the purchaser.

1    I mean, that is the -- the -- sort of the -- the retirement

2    aspect of it:  If you're continuing to work with the

3    purchaser after the sale, you're not entitled to Flex Six.

4            THE COURT:  Well, the other issue, too, is -- that

5    we thought about here -- is the Flex Six benefit is payable

6    from the retirement plan, not the severance plan, which then

7    raises the ERISA issues about administrative remedies and

8    having the retirement plan administrator rule on eligibility.

9        This is kind of a quagmire here.  The more I look, the

10   more issues I see -- all of which leads me to think I would

11   really like to know what you each would posit as your

12   positions and how the retirement plan and the severance plan

13   or package interface.  It all begins to look to me, at least

14   preliminarily, as if this claim is premature.

15       But, I'd like to see a very quick turnaround on a

16   briefing schedule.  And I realize this has all come up in the

17   context of an attorney fee application, but sometimes you

18   realize that a case is incompletely resolved in some peculiar

19   contexts, and I think that's what happened here.

20           MS. GROH:  Your Honor, if that is your decision, we

21   will certainly provide whatever we can.  On behalf of the

22   plaintiffs, I would ask that defendant put forth its

23   position, since we've been asking for that, and I obviously

24   don't understand it, and then allow us time to respond.

25           MR. McELLIGOTT:  I'm happy to do that, Your Honor.

1  Could -- could -- just because my schedule is somewhat

2  committed over the next two weeks, could we possibly have

3  three weeks from today to file our brief?

4        THE COURT:  That would be February the 9th or 10th

5  or 11th.

6        MR. McELLIGOTT:  Well, it's not due -- Why don't we

7  do February the 9th?

8        THE COURT:  Is that agreeable, Ms. --

9        MR. McELLIGOTT:  I should check with Grant.  How

10  does that work with your schedule, Grant?

11        MR. COWAN:  That's fine, thanks.

12        THE COURT:  All right.

13        MR. COWAN:  Can I just ask one question, though?

14        THE COURT:  Sure.

15        MR. COWAN:  And this is really directed to Jay, as

16  well as the Court.

17     Jay, were you envisioning doing any additional discovery?

18  By that I specifically mean anything with respect to the

19  expert?

20        MR. McELLIGOTT:  Frankly, Your Honor, with the

21  Court's admonition of a quick briefing schedule, I think

22  rather than undertaking discovery, we will simply perhaps

23  submit some affidavits for the Court to consider, and to the

24  extent there are factual disputes about the value.  And,

25  frankly, I think Your Honor is going to be very clear there

1   is no entitlement to this benefit until they leave

2   employment.  The economist's analysis is totally off the

3   mark.

4           MR. COWAN:  That's fine.  I just wanted to make sure

5   that we had enough time to do whatever we need to do.

6           MR. McELLIGOTT:  I think in terms of the Court's --

7   I mean, I would be very concerned, Your Honor, if I thought

8   the Court was calculating entering judgment based on that

9   gentleman's letter.

10      My -- my understanding is, and I think the thrust of what

11  Teri is saying, and I think the Court's view is, we're not

12  trying to enter judgment on a specific amount; rather, to

13  outline for the Court our views on where/how Flex Six fits

14  and how the issue -- how these issues would be appropriately

15  addressed, and I think that should be laid out in writing.

16          THE COURT:  All right.  Ms. Groh, how much time do

17  you think you would need to respond?

18          MS. GROH:  Your Honor, I think a week to ten days

19  would be sufficient.  Ten days.  I don't know what the 19th

20  falls on.

21          THE COURT:  The 19th is Saturday.  How about

22  February 21st?  That's Monday.

23          MS. GROH:  Thank you.

24          MR. McELLIGOTT:  And, Your Honor, may we have a

25  quick reply?

1          THE COURT:  Okay.  Just check the calendar here.

2   How about March, say, 2nd or 3rd, 4th?

3          MR. McELLIGOTT:  Let me just double-check my

4   calendar so I'm a little better informed here.  March 4th,

5   that Friday, would be wonderful, Your Honor.

6          THE COURT:  Okay.

7          MR. McELLIGOTT:  It won't be wonderful, but it will

8   be feasible.

9          THE COURT:  All right.  March the 4th.  And if we

10  think we need some illumination with an oral hearing, we can

11  either do it over the phone or arrange for in person.  I

12  suppose it's conceivable, but not probable, we might even

13  have the expert in for live testimony and then thereby avoid

14  the problem of delay with discovery.  But we'll just see how

15  it plays out.  And we'll talk before we do anything rash,

16  like set a hearing.

17     Are we pretty much all on board and know what is required

18  of us?

19          MR. McELLIGOTT:  This is Mr. McElligott again, Your

20  Honor.  Just to confirm:  Our brief is due February 9th; Teri

21  and John's reply will be February 21st; and our response to

22  that will be Friday, March 4th?

23          THE COURT:  Right.  We'll put on a quick Order that

24  -- so you'll have something in writing to threaten your

25  associates and paralegals with.

1        (Laughter.)

2             MR. McELLIGOTT:  Nothing -- nothing works in that

3    regard.

4             THE COURT:  Okay.  If there isn't anything else that

5    we need to resolve at this point, we'll just look forward to

6    receiving your papers.

7             MR. McELLIGOTT:  Thank you, Your Honor.

8             MS. GROH:  Thank you, Your Honor.

9             MR. MURDOCK:  Thank you, Your Honor.

10            THE COURT:  Thank you.            (11:49 a.m.)

11                           -   -   -

12                    PROCEEDINGS CONCLUDED

13                           -   -   -

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

   I, Mary Ann Ranz, the undersigned, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


s/Mary Ann Ranz
Official Court Reporter