UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SCOTT D. DALESANDRO and DIANNE
NOONAN, on behalf of themselves and
Others,

    Plaintiffs,

Vs.

INTERNATIONAL PAPER COMPANY,

    Defendant

Case No. C-1-01 109

Judge Sandra S. Beckwith

### AFFIDAVIT OF JOHN E. THARP

NOW COMES John E. Tharp, who being duly sworn, deposes and says:

1. I am currently employed by International Paper Company ("IP") in the position of Benefits Planner. I became an employee of IP upon the merger of IP and Champion International Corporation ("Champion"). I was employed by Champion in its Benefits Department from March 1977 until the effective date of Champion's merger with IP.

2. I have a BS Degree in Mathematics from Xavier University.

3. Before my employment with Champion, I was employed for 5 years at the Cowan Actuarial Company in Cincinnati, Ohio as an Actuarial Student/Technician. I have a total of 32 years in Benefits Administration (Pensions and Savings), Benefits Administration Management and Benefits Planning.

4. My duties for IP and Champion over this period have included serving as an internal consultant who helps determine the design of benefit plans, helps determine the appropriate cost and funding of these benefit plans, and assists in benefit plan transitions due to acquisitions or sales of facilities or companies. I have helped keep the plans updated with the current law and regulations and also current with what is available in the marketplace. I assist

Employee Relations in the negotiation of plans with the unions and also work with outside consultants on benefits issues.

5. Through my work with Champion and International Paper, I am familiar with the Champion Salaried Retirement Plan #001 (the "Retirement Plan"), with the "Flex Six Benefit," and with the Champion International Corporation Reorganization Severance Policy #828.

6. The Champion International Corporation Reorganization Severance Policy #828 – Page 4, Section 3 Refers to Pension Enhancement (Flex 6) with respect to the Retirement Plan as follows:

> "If an Eligible Employee has attained age 49 as of the date of Termination and the Eligible Employee's age plus years of service equal at least 59, the Eligible Employee's pension benefit from the Retirement Plan shall be enhanced by crediting the Eligible Employee with the most beneficial combination of an additional six (6) years of age and/or service credit under the Retirement Plan for early or normal retirement."

7. In order to be eligible for the Flex Six Benefit under Severance Policy #828, the participant must have met the age 49 and the combination age plus service (equaling 59) requirements as of the date of termination. If eligible, the pension benefit is calculated by adding a total of six years to age and/or service at the time of termination to determine the combination that produces the greatest pension amount. Years are added in whole numbers, (0+6 or 1+5 or 2+4 or 3+3 or 4+2 or 5+1 or 6+0) or, if applicable, years and months are added to get to an exact age 55 or an exact age 62 with any balance added to service. The calculation assumes retirement at separation from employment and determines the greatest benefit with that commencement date. Average Earnings are determined under normal plan provisions as of termination date.

8. Based on my experience and understanding, the Flex Six benefit would not be available to persons who continue working for the purchaser of a Company facility or business.

9. Section 7.4(b) of the Retirement Plan provides that Plan Participants "who worked at a divested location" have as their "Benefit Commencement Date" the Normal Retirement Age (age 65), unless they are "not employed . . . by any purchaser of such location." (Exhibit A attached hereto). The 1998 January Summary Plan Description for the Retirement Plan, which was issued to all participants in January 1998 explained this to Retirement Plan Participants on page 7-25 under the section titled "Situations Affecting Your Plan Benefits": "If you continued employment with a purchaser of any Champion operation after a sale, payments can not commence until after the date you leave employment with a purchaser or age 65, if sooner." (Exhibit B attached hereto). This "blocking provision" has been uniformly applied in circumstances where a facility has been sold.

The foregoing is true and correct to the best of my knowledge and belief.

_____     \_\_February 9, 2005_____
John E. Tharp                                            Date

The foregoing Affidavit of John E. Tharp was sworn and subscribed before me this 9th day of February, 2005.



\_\_\_\_M. Michelle Byrd_____
Notary Public

MY COMMISSION EXPIRES:
October 19, 2008

My Commission Expires: _____

# EXHIBIT A

Case 1:01-cv-00109-SSB    Document 91-2    Filed 02/09/2005    Page 4 of 9

# CHAMPION INTERNATIONAL CORPORATION

## SALARIED RETIREMENT PLAN #001

(As Amended and Restated Effective as of January 1, 1989)

(10/11/94)

EXHIBIT A

(1) by 1/180 for each of the first 60 months and 1/360 for each of the next 60 months by which his Benefit Commencement Date precedes his Normal Retirement Date; and

(2) pursuant to the following schedule for any period or periods, after August 22, 1984, during which the Participant is covered by the Preretirement Survivor Annuity:

| Participant's Age | Reduction for Each Month of Coverage |
|---|---|
| less than 35 | 0% |
| at least 35 but less than 45 | 1/12 of .1% |
| at least 45 but less than 55 | 1/12 of .2% |
| at least 55 but less than 65 | 1/12 of .5% |
| 65 or older | 0% |

(b) The "Benefit Commencement Date" of a Participant to whom (a) above applies shall be his Normal Retirement Date; provided however, if a Participant is not employed by the Employer or any of its subsidiary or affiliated corporations or, with respect to a Participant who worked at a divested location, by any purchaser of such location, then, subject to Section 8.5, he may elect as his Benefit Commencement Date the first day of any month, not later than his Normal Retirement Date, which coincides with or follows his attainment of age 55.

7.5 **Effect of Reemployment**. If, in any calendar month subsequent to the commencement of benefit payments, a Participant is reemployed in section 203(a)(3)(B) service, as defined in Labor Regulation §2530.203-3, and if such benefits are not being paid under an insurance or annuity contract which precludes a refund to the Plan of suspended payments, then, subject to the

7 - 4


EXHIBIT
Page 2 of A

# EXHIBIT B

NOV-05-2004  11:26       INTERNATIONAL PAPER                901 374 8480    P.02



**SALARIED EMPLOYEES**

**January 1998**

# Summary

PAGE 2/3 * RCVD AT 11/5/2004 12:13:58 PM [Eastern Standard Time] * SVR:RIGHTFAX/6 * DNIS:2111 * CSID:901 374 8480 * DURATION (mm-ss):01-18

EXHIBIT B

NOV-05-2004 11:26      INTERNATIONAL PAPER                901 374 8480      P.03

## SITUATIONS AFFECTING YOUR PLAN BENEFITS

Champion's Salaried Retirement Plan is designed to provide you with a monthly income after you retire. But some situations could affect your plan benefits.

- No benefits are payable if you leave Champion permanently for any reason before you are vested (see page 7-2).

- If you don't notify Champion when you plan to retire or leave, payments will begin only after your application for benefits is received and approved.

- If you don't keep your most recent address on file and Champion can't locate you, benefit payments may be delayed.

- If you continued employment with a purchaser of any Champion operation after a sale, payments can not commence until after the date you leave employment with a purchaser or age 65, if sooner.

- If it is determined that you deceptively or fraudulently received disability payments, or if your disability payments cease due to ineligibility during any period of incarceration, service will not be credited for such periods.

### Assignment of Benefits

Your retirement benefits belong to you and may not be sold, assigned, transferred, pledged, or garnisheed, under most circumstances.

If you become divorced or separated, certain court orders could require that part of your benefit be paid to someone else—your spouse or children, for example. This is known as a Qualified Domestic Relations Order (QDRO). As soon as you're aware of any court proceedings which may affect your Retirement benefit, contact your local Benefits Representative.

If you (or your beneficiary) are unable to care for your own (or your beneficiary's) affairs, any payments due may be paid to someone who is authorized to conduct your (or your beneficiary's) affairs. This may be a relative or a court-appointed guardian.

*Rev. January 1998*                                7-25                                                *Salaried*

PAGE 3/3 * RCVD AT 11/5/2004 12:13:58 PM [Eastern Standard Time] * SVR:RIGHTFAX/6 * DNIS:2111 * CSID:901 374 8480 * DURATION (mm-ss):01-18   TOTAL P.03