IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **SCOTT D. DALESANDRO, et al.,** | : | Case No.: C-1-01-109 |
| On behalf of themselves and | : | |
| all others similarly situated, | : | Judge Sandra S. Beckwith |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| **THE INTERNATIONAL PAPER** | : | |
| **COMPANY,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM REGARDING**
**FLEX SIX PENSION ENHANCEMENT BENEFITS**

**I. Introduction**

In the January 13, 2005 conference with the parties, the Court shared several points and requested further briefing on certain questions relating to the benefits found in Section 3 of Policy #828, referred to as the Flex Six Pension Enhancement Benefits. This name reflects the benefit that is provided: an enhancement to the amount of pension benefits an employee will receive from a credit of an additional six years of age and/or service.

The Court has already ruled that the Class members are entitled to the severance benefits provided in Section 2 of Policy #828 because they were terminated on February 9, 2001. Twenty class members also meet the requirements set forth in Section 3 for the Flex Six pension enhancement: they had attained age 49 as of the date of termination (February 9, 2001) and their age plus years of service equaled at least 59.[1]

---

[1] Plaintiffs believe the parties are in agreement as to who is eligible for the Section 3 pension enhancement benefit of Policy #828.

## II. Overview and Context

A brief overview of the procedural history and the context of how the Flex Six issues developed in this case will be helpful. Plaintiffs also offer this context to respond to the timeliness issues raised by Defendant.

### A. Defendant's Calculations Related to Flex Six Benefits

The Court will recall that Notice of this Court's March 21, 2003 decision was sent to all class members in September 2003; and that each Notice included an Exhibit A which was prepared by Defendant and explained the amount of benefits due to the employee if the Court's ruling was not altered on appeal.[2] <u>All</u> class members received an Exhibit A which showed the years of service and salary figures Defendant used to calculate that employee's benefits pursuant to Section 2 of Policy #828. The Exhibit A's for <u>some</u> of those class members also showed how Defendant calculated the Flex Six enhancement to that employee's pension pursuant to Section 3 of Policy #828.

All class members were given the opportunity to review and challenge or correct Defendant's figures and calculations – for both the severance benefits and the Flex Six pension enhancement benefit. As explained in Plaintiffs' Report and Reply in Support (Doc. #s 68 & 83), the employees followed the Court-ordered procedure and many sent letters within the 30 day period to notify Defendant of mistakes in start dates, years of service totals, salary levels, etc. relating to the calculations.[3] Class Counsel also reviewed Defendant's calculations to ensure that Defendant did not omit any class member who was qualified for the Flex Six pension enhancement.

---

[2] See Plaintiffs' Report and exhibits thereto (Doc. # 68).
[3] Id.

However, Defendant did not comply with the Notice procedure and, despite repeated demands by Class Counsel, did not respond to the employees within the 20 day period proscribed by the Notice procedure but, instead, took up to 7 to eleven months to respond (and as late as September 200**4**, one year after its responses were due).[4] Some of these corrections resulted in adding class members who had been erroneously omitted from Flex Six consideration.

During the time the Notice was being sent and the class members were seeking corrections, the parties were briefing Plaintiffs' initial application for attorney fees (between August and October 2003). Plaintiffs then supplemented that initial fee application briefing in August 2004 to update the hours and fees and costs incurred in the year while the original motion was pending.[5] So, at the same time as Defendant is finally providing corrected information on the Flex Six benefits (information that was in the sole possession of Defendant) in mid to late 2004, Plaintiffs were filing their supplemental fee application; Plaintiffs were also then able to file a Report intended to assist the Court in fashioning a final judgment entry and used the information Defendant had recently provided to **estimate** the value of the enhancement those certain class members would realize as a direct result of this lawsuit. Therefore, any objections Defendant has related to the timeliness and manner of presentation of these Flex Six issues are

---

[4] Id.

[5] Defendant has accused Class Counsel of "increasing the costs of attorneys' fees incurred in this action by their continuing unnecessary and duplicative filings and requests" and claims that Class Counsel is "penalizing" the Class "as their potential recovery continues to be affected and reduced by the claims of the attorneys against the common fund." Defendant's Response to Plaintiffs' Motion for Hearing (Doc. # 84 at pp.1-2) (filed in response to Plaintiffs' motion for a hearing which was filed after the case was transferred and Plaintiffs believed a hearing might assist a judge new to the case). All of the substantial work Class Counsel has performed and continues to perform, including the supplemental fee motion, has been **on behalf of the Class. A**s this Court is well aware, that time may be factored into a lodestar payment, but that would only **increase** the recovery to the Class since that amount is paid by Defendant **to** the **Class**; the amount of work Class Counsel performs does not penalize the class or reduce the amount of their potential recovery – Defendant's accusations only highlight the purpose of the fee shift statute and support the basis for Plaintiffs' Motion that the Court order a shifting of the fee to Defendant.

{00011626; 1}    3

the result of its own flagrant disregard of the Court-ordered Notice procedure and of Class Counsel's attempts to obtain the necessary information.

Plaintiffs believed this estimation would assist the Court in its consideration of their fee application and in entering a final judgment. Significantly, Plaintiffs attempted to value the enhancement to assist the Court in considering the payment of attorney fees from the Class <u>out</u> of the common fund, and did not seek to increase the fee that would shift to Defendant to pay <u>into</u> the common fund (which is strictly a lodestar amount with modest multiplier and not tied to the amount of the Class' recovery).

### B. The Class' Entitlement to Flex Six Benefits has Always Been a Part of the Merits and Attorney Fees Applications in this Case

There is no dispute, nor has there ever been a dispute, that the Flex Six benefit is a part of Policy #828. Defendant has acknowledged that fact throughout this case, most notably in the Notice sent to the Class, in its representations to the Court in conferences, and in its most recent brief. The only Flex Six "issues" that arose in the later phase of this litigation came to light in Plaintiffs' attempts to value the Flex Six benefits and to obtain a final judgment entry. Moreover, the recovery of Flex Six benefits, by the few employees who qualify, has always been considered a part of the damages recovered by the Class and, as such, a part of the common fund which has always been a basis for Class Counsel's fee application.

It is unclear from Defendant's memorandum whether its position is that Flex Six benefits have not been **at** issue at all in the case, or whether certain Flex Six issues should be reserved for another time. Defendant simply states that, "There has been no need for adjudication of this issue."[6] It is also unclear if Defendant is taking the position that the Court should not make any

---

[6] Defendant's Brief Regarding Flex Six Benefits (Doc. #91) at p. 4.

ruling whatsoever relating to Flex Six benefits, or only that the Court should not make a valuation ruling on those benefits.

Plaintiffs' position is that Flex Six benefits have been **at** issue from the outset of this case, just as Policy #828 has been at issue; and that Flex Six benefits have been **an** issue since the Court's March 21, 2003 decision only to the extent the parties have not agreed on when and how those benefits should be paid and valued.[7]  However, Plaintiffs are withdrawing their request that the Court order any past due or future payment of pension benefits, and withdraw their request that the value of Flex Six be considered as part of the common fund in the context of Plaintiffs' fee applications (see Section III below). Accordingly, Plaintiffs submit that the Court need not and should not make any determination or ruling as to a valuation of the Flex Six benefits or as to whom and how those benefits should be paid.

It is also Plaintiffs' position that the Court **should** make a determination that the Flex Six pension enhancement benefits are included as a part of the recovery in this case. Plaintiffs maintain that but for this litigation, approximately twenty employees would not have received the credit of six additional years of age and/or service (provided in Section 3 of Policy #828) to use for early or normal retirement. Contrary to Defendant's argument that there has been no need for adjudication of this issue and that it was not an issue in the merits stage of this case, it is undisputed that if the Class' entitlement to Policy #828 benefits was not adjudicated to a conclusion in their favor, then the Flex Six pension enhancement provision contained therein would not be applied to any member of the Class. Those additional six years have substantial value which is of record; Defendant itself supplied the dollar figures in the Notices that were sent to the qualifying employees. Defendant has represented to Plaintiffs and to the Court that it will

---

[7] Another issue that corresponds to when the Flex Six benefits are paid is how pre- or post judgment interest should attach to any payment. Based upon Plaintiffs' withdrawal of that relief as explained in Section III of this Memorandum, that issue has been rendered moot.

honor this enhancement "unless the Court's ruling on the merits is altered on appeal"[8] and, therefore, it always has been and remains a valuable part of the recovery in this case.

Plaintiffs further contend that it is inequitable for Defendant to withhold <u>all</u> Policy #828 benefits, as it has done for four years now, thereby making it a financial hardship (if not impossibility) for these employees to leave their Smart Papers jobs and to, at the same time, require them to quit their jobs in order to receive benefits. That inequity is only magnified by the fact that, from the beginning and now for more than four years, Defendant has refused to pay any Policy #828 benefits, meaning that these employees must quit jobs before they are eligible for the <u>chance</u> to receive benefits that Defendant has waged a full scale battle against paying. We now know that certain of these employees could have satisfied that prerequisite had they been paid their Policy #828 Section 2 severance benefits when they were terminated by Defendant in February 2001 by choosing either: 1) to retire instead of taking a job with Smart Papers or, 2) to leave Smart Papers at any time during these past four years. But the reality is that Defendant denied them the first choice in February 2001 by requiring they take jobs with Smart Papers, and has denied them the second choice by withholding payment of any Policy #828 benefits.

### III. Plaintiffs Withdraw Requests

Notwithstanding the inequities described above, and based upon Defendant's representation that it will not deny qualifying class members the pension enhancement provided by Section 3 of Policy #828, Plaintiffs recognize the impracticalities and evidentiary problems with trying to value an enhancement to a benefit that is tied to future and various payments pursuant to a separate benefits plan (the Retirement Plan). Therefore, Plaintiffs withdraw their request that the Court include the value of the Section 3 Flex Six pension enhancement in any calculation of attorney fees. Plaintiffs also recognize that this Court should not order any

---

[8] Defendant's Brief Regarding Flex Six Benefits (Doc. #91) at pp. 4 & 6.

payment of past due pension benefits to any employee currently working for Smart Papers, and should not order any future payment of benefits governed by a separate retirement plan. Therefore, Plaintiffs withdraw their requests for such an order to the extent those requests relate to pension payments, including their requests for pre- and/or post-judgment interest on the payment of any pension benefits to any class member.

While the Flex Six enhancement to pension benefits is a significant and valuable element of the damages won in this case, the fluid and contingent nature of its payment require assumptions in its valuation. The Court was correct in identifying the problems in valuating a benefits (pension) payment that has not been made to any class member, and will not be made even when the Court's ruling is affirmed on appeal. For the same reason, although the pension enhancement <u>will</u> be a benefit realized by certain class members in the future, no matter how close or far, Class Counsel withdraw their request that the value of Flex Six pension enhancement benefit be a factor in any determination of attorney fees to be paid out of the common fund.

### IV.    Plaintiffs Maintain Their Request for Determination of Eligibility

Plaintiffs do maintain, however, that their entitlement to the Flex Six enhanced pension benefit should be included in the final judgment entry, and respectfully request the Court to find that the additional six (6) years of age and/or service credit given in Section 3 of Policy #828 should be applied and factored into any later determination of eligibility for pension benefits under the Retirement Plan. Such a finding, without a valuation, would not interfere with the retirement plan's administrative claims procedure; instead it would clarify for and aid that administrator and the class members in this case (who may later be claimants in that

administrative procedure) by specifying that the additional six years of credit were part of the recovery in this case.

Moreover, this request is consistent with Defendant's representation that, "unless the Court's ruling on eligibility for severance benefits is altered on appeal, the International Paper Retirement Plan will not contest eligibility of class members who met the age and service requirement for Flex Six benefits, subject to the provisions of the Pension Plan."[9]  Therefore, Defendant should not dispute the inclusion of this finding in the final judgment entry.

### V. Conclusion

In conclusion, Plaintiffs and Class Counsel withdraw their requests that the Court:

- make or adopt any valuation of the Flex Six pension enhancement benefits found in Section 3 of Policy #828; and

- order any payment of pension benefits to the Class; and

- impose any pre- or post judgment interest on any payments of pension benefits to the Class; and

- consider any or all of the above to be a part of the common fund of damages in ruling on their applications for attorney fees.

Plaintiffs maintain their request that the Court include a finding that Class members are entitled to the Flex Six pension enhancement and to the additional six years of age and/or service credit as set forth in Section 3 of Policy #828 when they make a claim for their pension benefits.

Based upon the foregoing, Plaintiffs and Class Counsel respectfully request the Court to enter Final Judgment incorporating its March 21, 2003 decision (Doc. #40) and finding,

---

[9] Id.

concluding and ordering the items below as amended to reflect the exclusion of Flex Six pension enhancement benefits:

1) The Class is defined as all persons employed by International Paper Company at the Hamilton B Street Mill who were terminated without cause on February 9, 2001 and who were denied benefits under Champion International Paper Corporation Reorganization Severance Policy #828.

2) The form and manner of Notice to the class members, and Plaintiffs' dissemination of the same, was the best notice practicable under the circumstances and complies in all respects with Rule 23.

3) Defendant wrongfully denied Plaintiffs and each class member the severance benefits provided by Section 2 and Section 3 of the Champion International Paper Corporation Reorganization Severance Policy #828.

4) Defendant shall pay as damages the full amount of each class member's severance benefits under Section 2 of the Champion International Paper Corporation Reorganization Severance Policy #828 in the amounts as calculated by Defendant and corrected by the employees (set forth in Doc. # 68 at sealed Exhibit 2 at Attachment D).

5) The Class is entitled to the additional six (6) years of age and/or service credit provided by Section 3 of the Champion International Paper Corporation Reorganization Severance Policy #828 for the purpose of determining eligibility for pension benefits; the Court specifically makes no decision as to the value the Flex Six benefit and has not considered the value of this benefit in its ruling on attorney fees.

6) The payment of prejudgment interest to the Class is appropriate and shall be paid by Defendant to the Class as damages at the rate of 4.72%[10] from February 17, 2001[11] to the date of the Final Judgment Entry on the full amount of severance benefits under Section 2 of Policy #828 which were wrongfully withheld.

7) The payment of post-judgment interest[12] to the Class is appropriate and shall be paid by Defendant to the Class as damages according to 28 U.S.C. §1961(a) from the date of the Final Judgment Entry to the date of full payment of all severance benefits under Section 2 of Policy #828 to all class members.

8) The shifting of the payment of attorney fees to the Defendant pursuant to 29 U.S.C. § 1132(g)(1) is appropriate; Defendant shall pay to the Class the lodestar amount plus a 1.5 multiplier for a total of $902,481.38 through August 18, 2004; this payment is fair, reasonable and warranted; this amount of attorney fees shall be considered a part of the damages recovered by the Class; and the Class is permitted to make a supplemental submission for attorney fees, calculated according to the same lodestar rate with enhancement formula, for work performed in this case after August 18, 2004.

---

[10] Calculated according to 28 U.S.C. §1961(a).

[11] The prejudgment interest on the full amount of Section 2 benefits accrues on February 17, 2001 pursuant to the Severance Plan which states that the entire sum will be paid eight days after termination (Doc. # 68, Exh. 4 at Section 8(b)). The interest rate should be based upon the average Treasury yield for the calendar week preceding that payment due date since that is the interest rate at which those benefits could have been invested by the employee but for the wrongful withholding of that money by Defendant. This accrual date and this method of calculating the rate mirror the purpose and language of the post-judgment interest statute as adjusted to apply to pre-judgment interest. See also, Plaintiffs' Supplemental Motion for Attorney Fees and Expenses (Doc. # 67 at pp. 5-7).

[12] The parties agree on the accrual date (date of the Final Judgment Entry) and method of calculating the rate of post-judgment interest since the statute is clear and controls.

9) The shifting of the payment of expenses to the Defendant pursuant to 29 U.S.C. § 1132(g)(1) is appropriate; Defendant shall pay to the Class the litigation related expenses requested by Plaintiffs which total 12,874.79 for expenses incurred through August 18, 2004; this payment is fair, reasonable and warranted; this amount of expenses shall be considered a part of the damages recovered by the Class; and the Class is permitted to make a supplemental submission for expenses incurred in this case after August 18, 2004.

10) Class counsel shall be paid their attorney fees and expenses from the Class pursuant to their contingency fee contracts with the class representatives and the common fund doctrine; a payment of 25% of the aggregate value of the common fund, which consists of the Section 2 benefits wrongfully withheld, the court-ordered attorney fees with lodestar multiplier and expenses paid to the Class by Defendant, pre- and post-judgment interest on the Section 2 Severance Benefits wrongfully withheld, and court costs; and this payment fairly compensates counsel for their work and results, and protects the interests of the Class to the greatest extent possible.

11) Incentive awards to the two class representatives are appropriate; and the amount of Ten Thousand ($10,000) to each is fair, reasonable, and warranted and shall be paid to Scott Dalesandro and Diane Noonan from the common fund of damages recovered by the Class.

12) Accordingly, payments shall be made as follows: Defendant shall pay into the common fund the attorney fees, expenses and interest as set forth herein; then Plaintiffs' counsel shall be paid 25% of the aggregate value of the common fund;

next, Plaintiffs' counsel shall be reimbursed from the common fund for the expenses they advanced; then the Class shall pay from the common fund the two incentive awards to the class representatives; last, the common fund shall be distributed to each class member according to his or her pro rata share of the common fund as established by the amount of Section 2 severance benefits wrongfully withheld.

13)  The court costs of this litigation shall be paid by Defendant.

14)   There is no just reason for delay in the entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

                                        Respectfully submitted,

                                        s/Theresa L. Groh
                                        Theresa L. Groh, Esq. (0029806)
                                        John C. Murdock, Esq. (0063749)
                                        Murdock Goldenberg Schneider & Groh, L.P.A.
                                        35 E.7th Street, Suite 600
                                        Cincinnati, Ohio  45202
                                        Telephone:  (513) 345-8291
                                        Facsimile:  (513) 345-8294
                                        **Trial Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

       I hereby certify that on February 21, 2005 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Grant Spencer Cowan, Esq., Frost Brown Todd, LLC, 2200 PNC Center, 201 East Fifth Street, Cincinnati, Ohio 45202-5715 and Mildred Bennett Wells, Esq., McGuire Woods, LLP, One James Center, 901 East Cary Street, Richmond, VA  23219-4030, and I hereby certify that I have mailed the document by United States Postal Service to the following non CM/ECF participants: W. Carter Younger, Esq. and James P. McElligott, Esq., McGuire Woods, LLP, One James Center, 901 East Cary Street, Richmond, VA  23219-4030.

                                        s/Theresa L. Groh
                                        Theresa L. Groh