UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SCOTT D. DALESANDRO and DIANNE NOONAN, on behalf of themselves and the certified Class,<br>　　　　　Plaintiffs,<br><br>　　　　v.<br><br>INTERNATIONAL PAPER COMPANY,<br><br>　　　　Defendant | Case No. C-1-01-109<br><br>Judge Sandra S. Beckwith<br><br>JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(Exhibits A - E attached) |

## MOTION

Plaintiffs Scott Dalesandro and Diane Noonan, on behalf of themselves and the certified Class move for preliminary approval of the Class Action Settlement achieved in this action. Defendant International Paper Company has agreed to the terms of the settlement and joins in this Motion. The legal and factual bases supporting this Motion are more fully set forth in the following Memorandum in Support. A proposed Order Granting Preliminary Approval of Class Action Settlement is attached hereto as Exhibit A, and has been sent by electronic mail to the Court.

{00013193; 2}

# MEMORANDUM IN SUPPORT

I. STATEMENT OF THE CASE .................................................................................. 2

    A.    The Parties' Claims and Defenses ............................................................. 2

    B.    The Certified Class .................................................................................... 5

    C.    Status of the Litigation Prior to Proposed Settlement .............................. 6

    D.    Settlement Negotiations ............................................................................. 7

    E.    Terms of the Proposed Settlement ............................................................ 7

        1.    *Relief to the Settlement Class* ...................................................... 8

        2.    *Conditional Approval of Attorneys' Fees, Costs, and Incentive Payments to the Named Plaintiffs* ................................................ 9

II. LEGAL ANALYSIS SUPPORTING PRELIMINARY APPROVAL ................. 10

    A.    The Standards Governing Approval of Class Action Settlements ....... 10

    B.    The Proposed Settlement Agreement Should be Approved Because it is Fair, Reasonable and Adequate .......................................... 10

        1.    *The Likelihood of Success Balanced Against the Amount and Form of Relief Offered by the Proposed Settlement Agreement Weigh in Favor of Approving the Settlement* ......................................... 11

        2.    *The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of Approving the Settlement* ......................................... 13

        3.    *The Stage of Proceedings and Amount of Case Work Completed Weigh in Favor of Approving the Settlement* ......................................... 13

        4.    *The Judgment of Experienced Trial Counsel Weigh in Favor of Approving the Settlement* ......................................... 14

        5.    *The Nature of the Settlement Negotiations Weighs in Favor of Approving the Settlement* ......................................... 15

        6.    *The Public Interest Weighs in Favor of Approving the Settlement* ......................................... 15

    C.    The Proposed Notice Satisfies Due Process Requirements and is the Best Notice Practicable Under the Circumstances ......................... 15

III. CONCLUSION ........................................................................................................ 18

I.  **STATEMENT OF THE CASE**

   A. **The Parties' Claims and Defenses**

Plaintiffs and the Class consist of 149 former employees of the International Paper Company who brought ERISA claims related to Champion International Corporation Reorganization Severance Policy #828. The parties disputed Plaintiffs' entitlement to and recovery of: Section 2 Severance Benefits, Section 3 Pension Enhancement benefits, Section 7 Vacation Pay benefits, prejudgment interest, attorneys' fees, litigation costs, and incentive payments. The Court has considered and ruled on all issues and entered final judgment on July 8, 2005 (Doc. #97). Plaintiffs and Defendant have initiated separate appeals of different aspects of the District Court's rulings in the United States Court of Appeals for the Sixth Circuit.

Defendant has denied and continues to deny all claims made with respect to the alleged facts and causes of action asserted in the lawsuit.[1] Defendant has asserted throughout this litigation and the settlement and mediation process that if the litigation and appeals continue, it intends to rely upon the following primary defenses and arguments:

   1. If the Sixth Circuit Court of Appeals reverses the District Court with respect to the principal issues, plaintiffs will recover nothing. The Sixth Circuit will review the District Court's rulings *de novo*, but will review the Plan Administrator's decision using the abuse of discretion standard.

   2. The District Court's interpretation of "employment action" is contrary to the meaning of "employment action" and "Termination," contrary to other Plan language and contrary to Section 10 of the Plan under which "[t]he Administrator has the authority, responsibility, and discretion to determine all questions of eligibility and status and has the right to interpret the provisions of the Policy" and "[a]ny determination by the Administrator final and conclusive."

   3. The Administrator denied the severance claims based on Plan language providing that severance is awarded only to "Eligible Employees" who suffer an "employment action" in a "Reorganization" that results in their "Termination" during the "Policy Period." Under the "arbitrary and capricious"

---

[1] *Settlement Agreement ("Agreement")*, p.2, attached as Exhibit B.

standard, the Administrator's interpretation must be upheld so long as it is reasonable.

    4.    The Administrator's determination that Plaintiffs were not "Terminated as a result of Reorganization" is reasonable and consistent with the express language of the Policy. The Plan does not award benefits simply because employment "Terminated" during the "Policy Period, but only in circumstances of *employment action(s) resulting in an Eligible Employee's Termination* during the Policy Period." The District Court's conclusion that "employment action" means "Termination" misinterprets "employment action and "Termination," which are plainly not synonyms.

    5.    The Administrator interpreted "employment action" as "*connoting an adverse action*" and that an employee hired by the purchaser did not suffer an "employment action" under the severance plan. By concluding that "employment action" means "Termination" the District Court disregarded plan language that severance is for "employees of the Company whose employment is *Terminated as a result of Reorganization*" and defines "Reorganization" to limit severance to "*employment action(s) resulting in an Eligible Employee's Termination* during the Policy Period."

    6.    Interpreting the "employment action" requires interpreting the plan language as a whole. *Perez v. Aetna Life Ins. Co., 150 F.3d 550, (6th Cir. 1998) (en banc)*. The Administrator's interpretation and rejection of plaintiffs' "windfall" interpretation, is consistent with court decisions that treat severance as an unemployment benefit and not a bonus that employees receive in addition to continued employment. *Easterly v. Philips Elecs. N. Am. Corp.*, No. 00-6498, 2002 U.S. App. LEXIS 11644 (6th Cir., June 10, 2002) (unpublished); *Adcock v. Firestone Tire & Rubber Co.*, 822 F.2d 623 (6th Cir. 1987); *Douglas v. Bendix Corp.*, 837 F.2d 475 (6th Cir. 1988); *Lesman v. Ramsburg Corp.*, 911 F.2d 732 (6th Cir. 1990); *Garavuso v. Shoe Corps. of N. Am. Indus., Inc.*, 709 F. Supp. 1423 (S.D. Ohio), *aff'd*, 892 F.2d 79 (1989). The Administrator's interpretation of "employment action" follows the general view that the sale of a facility does not trigger severance unless the employee suffers the actual loss of a job.

    7.    The District Court also erred in basing its conclusion on the absence of Plan language addressing the sale of a facility and the fact that a different severance policy contained sales language. Unlike the other plan cited by the District Court, Policy 828 was expressly adopted in contemplation of the worldwide merger between International Paper and Champion. The Policy addressed only "employment actions" in the Reorganization of the merged companies during the one-year period following the merger.

    8.    The District Court also erred in concluding that persons who had not made claims for severance could be awarded severance. Under Section 11.3 of the Policy, "[f]ailure to file a claim within such one-year period shall completely discharge the Policy and the Company of liability and shall bar any

and all actions in connection with such claims for payment or other action." Thus, failing to file a claim within one year cuts off participant status, ERISA standing, and any entitlement to benefits. *Firestone v. Bruch*, 489 U.S. 101, 117-18 (1989); *Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir.), *cert. denied* 516 U.S. 823 (1995); *Teagardner v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947 (6th Cir. 1990). Section 11.3 of the Policy extinguishes any otherwise colorable claim that is not filed in writing under Section 11 within one year. *Mitchell v. First Unum Life Ins. Co.*, 65 F. Supp. 2d 686 (S.D. Ohio 1998).

        9.     Rule 23 of the Federal Rules of Civil Procedure cannot contradict the plain language of Policy Section 11.3. Under the Rules Enabling Act, the Federal Rules cannot "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999). The Administrator's interpretation of Section 11.3 is clearly reasonable.

        10.    Self-funded plans are to be enforced as written, and employers are free to design plans under which the benefits are subject to performance of some condition, such as the filing of a timely claim. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 81 (1983); *Alessi v. Raybestos-Manhatten, Inc.*, 451 U.S. 504, 511 (1981). Moreover, no Non-filers can credibly claim to have any excuse for failing to comply with Section 11.3. They all received copies of Policy 828. Non-filers cannot claim to have "relied" on the lawsuit filed by Plaintiffs. In fact, more than 100 of their fellow salaried employees filed timely claims under Section 11.3.

Nevertheless, without admitting or conceding any liability or damages, Defendant has agreed to settle the litigation on the terms and conditions set forth in the Settlement Agreement to avoid the burden, expense, and uncertainty of continuing the litigation; to avoid the diversion of its resources and personnel required by continuing the litigation; and to put to rest all claims that have been brought or asserted in the litigation which are based upon any of the facts, circumstances or conduct alleged.[2] Defense counsel has analyzed and evaluated the merits of the claims made against the International Paper Company, the merits of the pending appeals, and the impact of this settlement on Defendant. Defense counsel are aware that Plaintiffs have appealed certain portions of the Court's final judgment and recognize that Defendant might be held to be liable to pay additional compensation to Plaintiffs and the Class Members if Plaintiffs prevail in their appeal.

---

[2] *Id.*

Based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the litigation, if not settled now, might result in significant liability for the Defendant, Defense counsel has determined that it is desirable and beneficial that the litigation be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.[3]

Plaintiffs' Counsel have also analyzed and evaluated the merits of the claims made against Defendant, the merits of the pending appeals, and the impact of this settlement on Plaintiffs and the Class Members.[4] Plaintiffs' Counsel are aware that Defendant has appealed the Court's final judgment and recognize that Plaintiffs and the Class Members might not receive any benefit or consideration for the claims asserted in the litigation if Defendant prevails in its appeal. Based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks and expense of continued litigation, including the possibility that the litigation, if not settled now, might not result in <u>any</u> recovery whatsoever for the Plaintiffs or Class Members, or might result in a recovery which is not as valuable or beneficial as this settlement, and that resolution and payments would not occur for years, Plaintiffs' Counsel have determined that the terms and conditions of the Settlement Agreement are fair, reasonable and adequate, and that this settlement is in the best interests of the Plaintiffs and Class Members.[5]

### B. The Certified Class

The Court has previously certified this case as a class action by order of March 21, 2003 (Doc. #40). The Class the Court has certified is:

---

[3] *Id.*
[4] *Id.* at p.3.
[5] *Id.*

{00013193; 2}                        5

> All participants under Champion International Corporation Reorganization Severance Policy #828 who were employed by International Paper Company at the Hamilton B Street Mill and who were terminated without cause on February 9, 2001 as a result of the sale of the Mill to Smart Paper, and who were denied severance benefits under Severance Policy #828.

A complete list of all Class Members, as determined by the Court and agreed by the parties, is attached as Exhibit C hereto.

### C.     Status of the Litigation Prior to Proposed Settlement

A review of the docket history shows that this case has been extensively litigated and vigorously contested on every issue. The case was filed in February 2001, and the parties immediately contended with the issue of whether the case should be stayed for more work at the administrative level. The parties spent a year in the administrative claims process disputing what should and should not be included in the administrative record, including several discovery disputes and arguments about the type of procedural device the Court should use in deciding the merits of the case, all of which were eventually briefed and decided by the Court. The Plaintiffs moved for class certification which was opposed by Defendant on several points. Both parties filed extensive briefs moving for judgment on the Administrative Record; Plaintiffs' moving papers also included various other arguments for alternative forms of relief or procedural orders. The parties then filed more briefs opposing the other's motions for judgment, et al.

The tortured history of the case did not end with the issuance of the Court's opinion on the foregoing cross-motions, but instead took on issues concerning notice and communication with class members, whether vacation pay was recoverable, whether attorneys' fees and litigation costs should be shifted to Defendant and in what amount. The complex issue of how Class Counsel should be paid in a statutory fee shift class action NOT in the context of a settlement (at that time) was also briefed, as were the issues of pre - and post- judgment interest in terms of rates and accrual dates, and incentive awards to the named Plaintiffs.

In sum, this case was fully litigated at the District Court level and was in the process of being prepared for appeals of various complex and novel legal issues. The parties have preserved their rights to pursue those appeals in the event this settlement is not approved or is otherwise unable to be consummated.

**D. Settlement Negotiations**

In September 2004, the parties retained Charles Farnsworth, a highly-respected attorney and mediator from Oakland, California to facilitate a potential resolution of the case.[6] The nine hour mediation occurred on October 14, 2004 in Cincinnati, Ohio. At the beginning of the mediation, Plaintiffs and Defendant fully disclosed their assessments of the litigation during a joint meeting that included the mediator.[7] Accordingly, each party was afforded the opportunity to fully assess the strengths and weaknesses of each other's claims, defenses and evidentiary materials.[8] Following the joint session, the parties departed and Mr. Farnsworth began a series of separate meetings.[9] Though contentious at times, the parties spent the entire day attempting to reach agreement on a resolution, but failed.[10]

In July 2005, after the Court issued its final ruling and entered final judgment and the parties began preparing their appeals, counsel renewed their efforts toward a negotiated resolution. Over the next several weeks the parties negotiated at arms length the precise language and specific terms of the Settlement Agreement which is attached as Exhibit B.[11]

**E. Terms of The Proposed Settlement**

This Settlement Agreement is the result of extensive and vigorously contested negotiations on the part of Class Counsel and Defendant's counsel, all of whom have substantial

---

[6] *Groh Declaration*, ¶ 4, attached as Exhibit D.
[7] *Id.* at ¶ 5.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at ¶ 7.

experience in litigating class actions involving similar claims. A summary of the resulting terms are that Defendant will pay $3,670,000.00 into a settlement fund to be used to pay the Class Members in exchange for a release of their claims; Plaintiffs' attorneys' fees, litigation costs, and any incentive awards to the named Plaintiffs will also be paid from this settlement fund; and Defendant will pay for all administrative costs associated with implementing the terms of the settlement. [12]

### 1.  *Relief to the Settlement Class*

Each Class Member's Settlement Distribution Payment will be calculated by multiplying each Class Member's individual severance calculation (as set forth in the severance calculations filed by Defendant on June 30, 2005 and entered on July 5, 2005 (Doc. #95) by a Settlement Discount. The Settlement Discount is calculated by dividing $4,203,760.32 (the total amount of the judgment for the severance claims of all Class Members) into the Settlement Amount of $3,670,000.00 *after* deductions for Plaintiffs' attorney fees, costs, and incentive payments to the named Plaintiffs. For example, if following Final Court Approval, Plaintiffs' counsel are paid $900,000 in attorneys fees and $25,000 in litigation costs, and the named Plaintiffs are paid a total of $20,000 in incentive awards, a total of $945,000.00 shall be deducted from the $3,670,000 Settlement Amount, and the numerator of the Settlement Discount will be $2,725,000. The Settlement Discount in that example will be 0.6482, which is $2,725,000 divided by $4,203,760.32. In that example, each Class Member's Settlement Distribution Payment will be calculated by multiplying 0.6482 times each Class Member's individual severance calculation set forth in Doc. # 95. In no event will the Defendant pay out more than $3,670,000.00 for the total of: 1) all Settlement Distribution Payments to Class Members, 2) Plaintiffs' attorneys' fees, 3) Plaintiffs' litigation costs, and 4) incentive awards.

---

[12] *Agreement* at p. 6.

If, following 45 days after Final Court Approval, actual Settlement Distribution Payments made together with any court-approved attorneys' fees, costs, and incentive awards do not total $3,670,000.00, then any unpaid or unclaimed or returned amounts ("Remaining Funds") shall be distributed by Defendant on a pro rata basis to all of the Class Members who properly returned Releases for compensation. No pro rata distribution of Remaining Funds will be required if the total amount of those funds is less than $2,500 in which event those funds shall be paid by Defendant to The United Way of Butler County.

2.   *Conditional Approval of Attorneys' Fees, Costs, and Incentive Payments to the Named Plaintiffs*

As discussed above, the deduction of attorneys' fees, costs, and incentive payments is necessary to determine the amount that individual class members will recover. Therefore, Plaintiffs' Counsel petition the Court to resolve any objections made by class members at the Final Fairness Hearing and to now conditionally approve the payment of attorneys' fees not to exceed 25% in total of the $3,670,000.00 Settlement Amount, and the reimbursement of litigation costs not to exceed $25,000 in total, subject to any objections. Plaintiffs' Counsel rely upon the record already developed and briefed with regard to their fees (Doc. #s 45, 46, 53, 54, 67, 82), including the recently filed argument and evidence (Doc. #98) supporting their 25% fee request. Defendant does not object to Plaintiffs' Counsel's petition so long as the attorneys' fees and cost amount do not exceed these agreed amounts. Any such payments will be deducted from the $3,670,000.00 Settlement Amount before the Plaintiffs and the Class Members' claims are paid.

Plaintiffs' Counsel also petition the Court to approve incentive payments to the two named Plaintiffs, Scott Dalesandro and Dianne Noonan, in addition to their Settlement Distribution Payments, subject to any objections made by class members to be resolved at the

Final Fairness Hearing. Plaintiffs rely upon the record as it has already been developed and briefed on this issue (see the same Doc #s referenced above in connection with the briefing on the fees). Defendant will not object to such incentive payments so long as the combined total does not exceed $20,000. Any incentive payments will be deducted from the $3,670,000.00 Settlement Amount before the Plaintiffs and Class Members' claims are paid.

## II.   LEGAL ANALYSIS SUPPORTING PRELIMINARY APPROVAL

### A.   The Standards Governing Approval of Class Action Settlements

A class action may not be settled without approval of the Court. Fed.R.Civ.P. 23 (e); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-621 (1997). Since this Court has already analyzed the specifications of Rule 23 and concluded that class certification is appropriate in this case, the safeguards of the class-qualifying criteria have been satisfied. The Court must now determine whether the proposed terms of the settlement are "fair, adequate and reasonable." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). District courts must "appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of all the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).

### B.   The Proposed Settlement Agreement Should be Approved Because it is Fair, Reasonable and Adequate

The Sixth Circuit has explained that a class action settlement must be fair, reasonable, and adequate to the class as a whole in order to receive court approval. *Vukovich*, 720 F.2d at 921; see also *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000); and *Bronson v. Board of Education of the City School District of the City of Cincinnati*, 604 F.Supp. 68 (S.D. Ohio 1984). When making this determination, the Court should consider: (1) the Plaintiffs' likelihood of success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3)

the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the public interest; and (7) objections raised by class members. *Id.* While these considerations are helpful as a guide, "[a] class action settlement cannot be measured precisely against any particular set of factors" and the relevance of these factors "will vary from case to case." *Levell*, 191 F.R.D. at 550.

Moreover, it is not appropriate to "withhold approval simply because the benefits accrued from the [agreement] are not what a successful plaintiff would have received in a fully litigated case." *Id.* A settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed." *Bronson*, 604 F.Supp. at 74 (quoting *Vukovich*, 720 F.2d at 922). Thus, it is well settled that "class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class." *Id.*

> 1. ***The Likelihood of Success Balanced Against the Amount and Form of Relief Offered by the Proposed Settlement Agreement Weigh in Favor of Approving the Settlement.***

Plaintiffs and Defendant recognize that the viability of the Plaintiffs' claims and the likelihood that they will recover a full or even significant recovery is unpredictable, even assuming the propriety of class certification. Defendant has identified a number of obstacles to Plaintiffs' ultimate success. These include, but are not limited to, the following:

- As discussed in more detail above, if the Sixth Circuit Court of Appeals reverses the District Court with respect to the principal issues, plaintiffs will recover nothing. The Sixth Circuit will review the District Court's rulings *de novo*, but will review the Plan Administrator's decision using the abuse of discretion standard.

- The District Court's interpretation of "employment action" will be challenged on appeal to the Sixth Circuit. Section 10 of the Plan gives the Administrator "authority, responsibility, and discretion to

determine all questions of eligibility and status and [] the right to interpret the provisions of the Policy." A "determination by the Administrator [is] final and conclusive" under the Plan.

- The Court of Appeals may conclude that the Administrator's determination that Plaintiffs were not "Terminated as a result of Reorganization" is reasonable and consistent with the express language of the Policy. The Plan provides that benefits are awarded in circumstances of "*employment action(s) resulting in an Eligible Employee's Termination* during the Policy Period." The Court of Appeals may disagree with the District Court's conclusion that "employment action" means "Termination," and agree with International Paper "employment action" connotes an "adverse action" and that an employee hired by the purchaser did not suffer an "employment action" under the severance plan. Several court decisions have treated severance as an unemployment benefit and not a "windfall" that employees receive in addition to continued employment. *Easterly v. Philips Elecs. N. Am. Corp.,* No. 00-6498, 2002 U.S. App. LEXIS 11644 (6th Cir., June 10, 2002) (unpublished); *Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623 (6th Cir. 1987); *Douglas v. Bendix Corp.,* 837 F.2d 475 (6th Cir. 1988); *Lesman v. Ramsburg Corp.,* 911 F.2d 732 (6th Cir. 1990); *Garavuso v. Shoe Corps. of N. Am. Indus., Inc.,* 709 F. Supp. 1423 (S.D. Ohio), *aff'd,* 892 F.2d 79 (1989).

- The Court of Appeals may also agree with International Paper and strictly interpret Section 11.3 of the Policy under which, "[f]ailure to file a claim within such one-year period shall completely discharge the Policy and the Company of liability and shall bar any and all actions in connection with such claims for payment or other action." If so, persons who failed to file timely claims for benefits could not receive any severance payments.

Thus, Defendant had potentially strong legal and factual defenses that meant that a zero recovery for the Plaintiffs and the Class was a real possibility.

Even if Plaintiffs and the Class were to prevail as to liability, damages significantly in excess of the $3,670,000.00 Settlement Amount are not likely. As shown by the Court's final judgment and as indicated in the parties' submission of the value of the Section 2 severance benefits (Doc. #s 97 & 95 respectively), a reasonable estimate of the value of those benefits if Plaintiffs succeeded as to liability and damages on appeal is $4,203,760.32, not factoring in any

prejudgment interest, or award for attorneys' fees and costs which may or may not be upheld by the Court of Appeals. Therefore, the $3,670,000.00 Settlement Amount, standing alone, represents more than 87% of the value of the Section 2 benefits and is fair, reasonable and adequate.

Moreover, Plaintiffs' counsel have achieved additional benefits for certain Class Members above and beyond the $3,670,000.00 in that those who are eligible will receive the "Flex Six" enhancement to their pension when they retire (provided by Section 3 of Policy #828) is preserved in the Settlement Agreement. Significantly, Plaintiffs' counsel are making no claim for any attorneys' fees related to the value of that benefit since it occurs in the future.

Accordingly, the substantial relief obtained by Class Counsel weighs in favor of approving the settlement.

### 2. *The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of Approving the Settlement.*

The second factor for the Court to consider is the complexity, expense, and likely duration of litigation. This factor also favors approval of the proposed Settlement Agreement. It is apparent that the winding of this litigation through the appellate process and possibly beyond on a remand would continue far into the future. The prospect of such a complex and time consuming course weighs in favor of settlement.

### 3. *The Stage of Proceedings and Amount of Case Work Completed Weigh in Favor of Approving the Settlement.*

When reviewing the proposed Settlement Agreement, the Court should also consider the stage of the current litigation. Although discovery beyond the Administrative Record was not permitted in this case, a great deal of investigation, fact development, and informal and formal exchanges of information were completed, such that a voluminous record was created. As

discussed above, this case has been hard fought through every stage and over every issue, and has spanned nearly five years. Therefore, the Court should defer to the judgment of counsel. See, *Bronson*, 604 F.Supp. at 73. The proposed Settlement Agreement is the product of a lengthy negotiation process and the involvement of an experienced and well-respected independent mediator. As a result, this factor counsels in favor of approval of the proposed Settlement Agreement.

### 4. *The Judgment of Experienced Trial Counsel Weigh in Favor of Approving the Settlement.*

The next factor for consideration is the professional judgment of the experienced trial counsel participating in this litigation. When considering a proposed settlement, the Court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Vukovich,* 720 F.2d at 922-923. Moreover, the deference afforded counsel should correspond to the amount of case work completed and the character of the evidence uncovered. See, *Id.* at 923.

As set forth above, the proposed Settlement Agreement was reached after substantial case work, and after extensive negotiations involving competent and experienced counsel for the parties, as well as the use of an experienced mediator. After carefully weighing all the evidence in the voluminous record, as well as the potential results on appeal, Defendant's counsel and Class Counsel have determined that the proposed settlement is clearly in the best interests of their clients. Therefore, the informed judgment of both Plaintiffs' and Defendant's counsel are entitled to great deference. This factor again militates in favor of approval of the Settlement Agreement.

5. *The Nature of the Settlement Negotiations Weighs in Favor of Approving the Settlement.*

The Court must also consider whether the agreement is the product of arms-length rather than collusive bargaining. *Bronson*, 604 F.Supp. 73. As discussed above, the parties' settlement negotiations have been extensive and have taken place at arms' length, without collusion, and have fully preserved the integrity of the adversarial process. The use of an independent and experienced mediator is further evidence of the integrity of the process. In that regard, this factor weighs in favor of approving the proposed Settlement Agreement.

6. *The Public Interest Weighs in Favor of Approving the Settlement.*

The public interest generally favors the resolution of litigation through compromise. The Sixth Circuit has noted that "settlement agreements should ... be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before overburdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute." *Stotts v. Memphis Fire Dept.*, 679 F.2d 541, 555, n.11 (6th Cir. 1982), rev'd on other grounds, 467 U.S. 561 (1984); see also *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), vacated on other grounds and modified, 670 F.2d 71 (6th Cir. 1982) (recognizing that "the law generally favors and encourages the settlement of class actions"). In this case, the proposed class action settlement is in the best interests of the Class Members and the public and should be approved.

C. **The Proposed Notice Satisfies Due Process Requirements and is the Best Notice Practicable Under the Circumstances.**

Finally, under Rule 23(e), the court must "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed.R.Civ.P. 23 (e)(1)(B). The

{00013193; 2}                                    15

notice provided to Class Members must be the "best notice practical under the circumstances" and allow members of the class "a full and fair opportunity to consider the proposed [settlement] and develop a response." *Bronson,* 604 F.Supp. at 72 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) and *Vukovich*, 623 F.2d at 921); see also *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 160 (S.D. Ohio 1992), appeal dismissed without opinion, 995 F.2d 1066 (6th Cir. 1993). This has been held to mean that "settlement notices need only describe the terms of the settlement generally." *In re Milken & Assocs. Sec. Litigation*, 150 F.R.D. 46, 52 (S.D.N.Y. 1993) (citations omitted). Moreover, notice that is mailed to each Class Member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen*, 417 U.S. 156, 176 (1974) (Rule 23 (c)(2) requires that individual notice be sent to all Class Members who can be identified with reasonable effort in class actions maintained under subdivision (b)(3)).

The form and the manner of the Class Notice, including the individualized calculation forms and Release form, have also been negotiated and agreed upon by all counsel. Most significantly, Notice has been sent to these Class Members twice before in this litigation resulting in successful notice to all Class Members.[13] The Notice along with the agreed form of the Exhibit indicating the calculations for each individual Class Member's recovery, and the agreed form of the Release (collectively, the "Notice Materials") proposed by the parties are attached as Exhibit E.

The parties propose that, upon the entry of an Order Granting Preliminary Approval approving the form of the Notice, the parties shall notify Class Members of their rights and obligations to participate in the settlement and/or to object to the settlement. The parties will effectuate that notice by mailing a copy of the Notice Materials to the last known address of each Class Member as that information appears in Defendant's employment records and in Plaintiffs'

---

[13] *Groh Declaration* at ¶ 8.

Counsel's records; those records and Class Member addresses have been updated from time to time when Class Members have contacted them with address changes in the years that this litigation has been pending.[14] Thus, the identification and addresses of the Class Members are the best available as proven by the successful effectuation of notice to these same Class Members at previous points in this litigation. The Notice Materials will be sent by First Class U.S. Mail, and the cost of sending the Notice Materials shall be paid by Defendant.[15]

Plaintiffs' Counsel shall complete the mailing of the Notice Materials to the Class Members no later than ten (10) days from the date of the Order Granting Preliminary Approval. Upon the return of any undeliverable Notice Materials by the postal service, a second set of the Notice Materials will be sent to a subsequent address if one can be located through the exercise of reasonable diligence utilizing the Class Representatives and/or other Class Members and/or a National Change of Address database.

To receive their Settlement Distribution Payment, a Class Member must execute a Release, in the form set forth in Exhibit E, which is required under the terms of the Champion International Corporation Reorganization Severance Policy #828 as a condition of obtaining severance benefits. The final due date for submitting executed Releases shall be 45 days following the date of the Final Court Approval and must bear a postmark indicating that it was mailed on or before such deadline date. As an extra safeguard to ensure that Class Members have every opportunity to receive and return their Notice Materials, the parties will send a reminder notice to, and Plaintiffs' counsel may contact, those Class Members who have not submitted executed Releases by the thirtieth (30th) day following the date of the Final Court Approval.

---

[14] *Id.*
[15] *Agreement* at p. 6.

The foregoing notice plan provides the best notice practical under the circumstances and will provide Class Members a full and fair opportunity to consider the terms of the proposed Agreement and make a fully informed decision on whether to participate and/or to object to the settlement.

### III. CONCLUSION

Based upon the foregoing, Plaintiffs and Defendant respectfully move the Court for an order preliminarily approving this Class Action Settlement, including the form and manner of Notice, as submitted. The parties further request this Court to set a Final Fairness Hearing for final approval as soon as practicable.

Dated: September 19, 2005

Respectfully submitted,

| /s/ Theresa L. Groh | /s/ Grant S. Cowan |
|---|---|
| Theresa L. Groh (0029806) | Grant S. Cowan (0029667) |
| John C. Murdock (0063749) | FROST BROWN TODD LLC |
| MURDOCK GOLDENBERG SCHNEIDER & GROH, LPA | 2200 PNC Center |
| 35 East Seventh Street, Suite 600 | 201 East Fifth Street |
| Cincinnati, Ohio 45202-2446 | Cincinnati, Ohio 45202-4182 |
| Phone: 513-345-8291 | Phone: 513-651-6800 |
| Fax: 513-345-8294 | Fax: 513-651-6981 |
| | |
| **Attorneys for Plaintiffs and the Certified Class** | W. Carter Younger (VSB #01147) (Admitted Pro Hac Vice) |
| | James P. McElligott, Jr. (VSB #14109) |
| | MCGUIRE WOODS LLP |
| | One James Center |
| | Richmond, Virginia 23219 |
| | Phone: 804-775-4363 |
| | Fax: 804-698-2214 |
| | |
| | **Attorneys for Defendant** |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SCOTT D. DALESANDRO and DIANNE : 
NOONAN, on behalf of themselves and :
the certified Class,                              :    Case No. C-1-01-109
                    Plaintiffs,                   :
                                                           :
         v.                                             :    Judge Sandra S. Beckwith
                                                           :
INTERNATIONAL PAPER COMPANY, :   EXHIBITS TO
                                                           :   JOINT MOTION FOR
          Defendant                              :   PRELIMINARY APPROVAL
                                                           :   OF CLASS ACTION
                                                           :   SETTLEMENT
                                    Exhibits

A : Proposed Order Granting Preliminary Approval of Class Action Settlement

B: Proposed Settlement Agreement

C: List of Class Members

D: Declaration of Theresa L. Groh

E: Proposed Notice Materials
   - Notice
   - Individualized Calculation forms
   - Release

{00013194; 1}