UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SCOTT D. DALESANDRO and DIANNE NOONAN, on behalf of themselves and the certified Class,<br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>INTERNATIONAL PAPER COMPANY,<br><br>　　　　　Defendant | :<br>:<br>:　Case No. C-1-01-109<br>:<br>:<br>:　Judge Sandra S. Beckwith<br>:<br>:　JOINT MOTION FOR<br>:　FINAL APPROVAL<br>:　OF CLASS ACTION<br>:　SETTLEMENT<br>:<br>:　(Proposed Orders attached) |

## MOTION

Plaintiffs Scott Dalesandro and Diane Noonan, on behalf of themselves and the certified Class, and Defendant International Paper Company move for final approval of this class action settlement and for Judgment of Dismissal pursuant to this Court's September 23, 2005 Order Granting Preliminary Approval to Class Action Settlement (Doc. #104). The legal and factual bases supporting this Joint Motion are fully set forth in the Joint Motion for Preliminary Approval of Class Action Settlement (Doc. #102) and the following Memorandum. A proposed Order Granting Final Approval to Class Action Settlement is attached hereto as Exhibit A; a proposed Order Entering Judgment of Dismissal is attached hereto as Exhibit B; both proposed orders have been sent by electronic mail to the Court.

{00013563; 1}　　　　　　　　　　　　　　　1

**MEMORANDUM**

I. **STATEMENT OF THE CASE**

   A. **The Parties' Claims and Defenses**

Plaintiffs and the Class consist of 149 former employees of the International Paper Company who brought ERISA claims related to Champion International Corporation Reorganization Severance Policy #828. The parties disputed Plaintiffs' entitlement to and recovery of: Section 2 Severance Benefits, Section 3 Pension Enhancement benefits, Section 7 Vacation Pay benefits, prejudgment interest, attorneys' fees, litigation costs, and incentive payments. The Court considered and ruled on all issues and entered final judgment on July 8, 2005 (Doc. #97). Plaintiffs and Defendant initiated separate appeals of different aspects of the District Court's rulings in the United States Court of Appeals for the Sixth Circuit, and the Circuit Court has remanded the appeals to the District Court for the purpose of determining whether a fair, reasonable and adequate settlement can be effectuated (Doc. #106).

Defendant has denied and continues to deny all claims made with respect to the alleged facts and causes of action asserted in the lawsuit.[1] Defendant has asserted throughout this litigation and the settlement and mediation process that if the litigation and appeals continue, it intends to rely upon the following primary defenses and arguments set forth in the Joint Motion for Preliminary Approval (Doc. #102 at pp. 2- 4).

Defendant agreed to settle the litigation on the terms and conditions set forth in the Settlement Agreement to avoid the burden, expense, and uncertainty of continuing the litigation; to avoid the diversion of its resources and personnel required by continuing the litigation; and to put to rest all claims that have been brought or asserted in the litigation which are based upon any of

---

[1] *Settlement Agreement ("Agreement")*, attached as Exhibit B to the Joint Motion for Preliminary Approval (Doc. # 102).

the facts, circumstances or conduct alleged.[2] Defense counsel analyzed and evaluated the merits of the claims made against the International Paper Company, the merits of the pending appeals, and the impact of this settlement on Defendant. Defense counsel considered that Plaintiffs have appealed certain portions of the Court's final judgment and recognize that Defendant might be held to be liable to pay additional compensation to Plaintiffs and the Class Members if Plaintiffs prevail in their appeal. Based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the litigation, if not settled now, might result in significant liability for the Defendant, Defense counsel determined that it is desirable and beneficial that the litigation be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.[3]

Plaintiffs' Counsel also analyzed and evaluated the merits of the claims made against Defendant, the merits of the pending appeals, and the impact of this settlement on Plaintiffs and the Class Members.[4] Plaintiffs' Counsel considered that Defendant has appealed the Court's final judgment and recognize that Plaintiffs and the Class Members might not receive any benefit or consideration for the claims asserted in the litigation if Defendant prevails in its appeal. Based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks and expense of continued litigation, including the possibility that the litigation, if not settled now, might not result in _any_ recovery whatsoever for the Plaintiffs or Class Members, or might result in a recovery which is not as valuable or beneficial as this settlement, and that resolution and payments would not occur for years, Plaintiffs' Counsel determined that the terms and

---

[2] *Id.*
[3] *Id.*
[4] *Id.* at p.3.

conditions of the Settlement Agreement are fair, reasonable and adequate, and that this settlement is in the best interests of the Plaintiffs and Class Members.[5]

### B. The Certified Class

The Court previously certified this case as a class action by order of March 21, 2003 (Doc. #40). The Class the Court has certified is:

> All participants under Champion International Corporation Reorganization Severance Policy #828 who were employed by International Paper Company at the Hamilton B Street Mill and who were terminated without cause on February 9, 2001 as a result of the sale of the Mill to Smart Paper, and who were denied severance benefits under Severance Policy #828.[6]

### C. Status of the Litigation Prior to Proposed Settlement

The history and nature of this litigation, the settlement negotiations and the terms of the resultant settlement agreement are fully set forth in the Joint Motion for Preliminary Approval (Doc. #102 at pp. 6-10), and are incorporated herein by reference.

## II. LEGAL ANALYSIS SUPPORTING PRELIMINARY APPROVAL

### A. The Standards Governing Approval of Class Action Settlements

A class action may not be settled without approval of the Court. Fed.R.Civ.P. 23 (e); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-621 (1997). Since this Court has already analyzed the specifications of Rule 23 and concluded that class certification is appropriate in this case, the safeguards of the class-qualifying criteria have been satisfied. The Court must now determine whether the proposed terms of the settlement are "fair, adequate and reasonable." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). District courts must "appraise the

---

[5] *Id.*
[6] A complete list of all Class Members, as determined by the Court and agreed by the parties, is attached as Exhibit C to the Joint Motion for Preliminary Approval (Doc. #102).

reasonableness of particular class-action settlements on a case-by-case basis, in light of all the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).

### B. The Proposed Settlement Agreement Should be Approved Because it is Fair, Reasonable and Adequate

The Sixth Circuit has explained that a class action settlement must be fair, reasonable, and adequate to the class as a whole in order to receive court approval. *Vukovich*, 720 F.2d at 921; see also *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000); and *Bronson v. Board of Education of the City School District of the City of Cincinnati*, 604 F.Supp. 68 (S.D. Ohio 1984). When making this determination, the Court should consider: (1) the Plaintiffs' likelihood of success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the public interest; and (7) objections raised by class members. *Id.* While these considerations are helpful as a guide, "[a] class action settlement cannot be measured precisely against any particular set of factors" and the relevance of these factors "will vary from case to case." *Levell*, 191 F.R.D. at 550.

Moreover, it is not appropriate to "withhold approval simply because the benefits accrued from the [agreement] are not what a successful plaintiff would have received in a fully litigated case." *Id.* A settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed." *Bronson*, 604 F.Supp. at 74 (quoting *Vukovich*, 720 F.2d at 922). Thus, it is well settled that "class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class." *Id.*

### *1.   The Likelihood of Success Balanced Against the Amount and Form of Relief Offered by the Proposed Settlement Agreement Weigh in Favor of Approving the Settlement.*

Plaintiffs and Defendant recognize that the viability of the Plaintiffs' claims and the likelihood that they will recover a full or even significant recovery is unpredictable, even assuming the propriety of class certification. Defendant has identified a number of obstacles to Plaintiffs' ultimate success. These include, but are not limited to, the following:

- As discussed in more detail above, if the Sixth Circuit Court of Appeals reverses the District Court with respect to the principal issues, plaintiffs will recover nothing. The Sixth Circuit will review the District Court's rulings *de novo*, but will review the Plan Administrator's decision using the abuse of discretion standard.

- The District Court's interpretation of "employment action" will be challenged on appeal to the Sixth Circuit. Section 10 of the Plan gives the Administrator "authority, responsibility, and discretion to determine all questions of eligibility and status and [] the right to interpret the provisions of the Policy." A "determination by the Administrator [is] final and conclusive" under the Plan.

- The Court of Appeals may conclude that the Administrator's determination that Plaintiffs were not "Terminated as a result of Reorganization" is reasonable and consistent with the express language of the Policy. The Plan provides that benefits are awarded in circumstances of "*employment action(s) resulting in an Eligible Employee's Termination* during the Policy Period." The Court of Appeals may disagree with the District Court's conclusion that "employment action" means "Termination," and agree with International Paper "employment action" connotes an "adverse action" and that an employee hired by the purchaser did not suffer an "employment action" under the severance plan. Several court decisions have treated severance as an unemployment benefit and not a "windfall" that employees receive in addition to continued employment. *Easterly v. Philips Elecs. N. Am. Corp.,* No. 00-6498, 2002 U.S. App. LEXIS 11644 (6th Cir., June 10, 2002) (unpublished); *Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623 (6th Cir. 1987); *Douglas v. Bendix Corp.,* 837 F.2d 475 (6th Cir. 1988); *Lesman v. Ramsburg Corp.,* 911 F.2d 732 (6th Cir. 1990); *Garavuso v. Shoe Corps. of N. Am. Indus., Inc.,* 709 F. Supp. 1423 (S.D. Ohio), *aff'd,* 892 F.2d 79 (1989).

- The Court of Appeals may also agree with International Paper and strictly interpret Section 11.3 of the Policy under which, "[f]ailure to file a claim within such one-year period shall completely discharge the Policy and the

>Company of liability and shall bar any and all actions in connection with such claims for payment or other action." If so, persons who failed to file timely claims for benefits could not receive any severance payments.

Thus, Defendant had potentially strong legal and factual defenses that meant that a zero recovery for the Plaintiffs and the Class was a real possibility.

Even if Plaintiffs and the Class were to prevail as to liability, damages significantly in excess of the $3,670,000.00 Settlement Amount are not likely. As shown by the Court's final judgment and as indicated in the parties' submission of the value of the Section 2 severance benefits (Doc. #s 97 & 95 respectively), a reasonable estimate of the value of those benefits if Plaintiffs succeeded as to liability and damages on appeal is $4,203,760.32, not factoring in any prejudgment interest, or award for attorneys' fees and costs which may or may not be upheld by the Court of Appeals. Therefore, the $3,670,000.00 Settlement Amount, standing alone, represents more than 87% of the value of the Section 2 benefits and is fair, reasonable and adequate.

Moreover, Plaintiffs' counsel have achieved additional benefits for certain Class Members above and beyond the $3,670,000.00 in that those who are eligible will receive the "Flex Six" enhancement to their pension when they retire (provided by Section 3 of Policy #828) is preserved in the Settlement Agreement. Significantly, Plaintiffs' counsel are making no claim for any attorneys' fees related to the value of that benefit since it occurs in the future.

Accordingly, the substantial relief obtained by Class Counsel weighs in favor of approving the settlement.

> 2.  ***The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of Approving the Settlement.***

The second factor for the Court to consider is the complexity, expense, and likely duration of litigation. This factor also favors approval of the proposed Settlement Agreement. It

is apparent that the winding of this litigation through the appellate process and possibly beyond on a remand would continue far into the future. The prospect of such a complex and time consuming course weighs in favor of settlement.

3. ***The Stage of Proceedings and Amount of Case Work Completed Weigh in Favor of Approving the Settlement.***

When reviewing the proposed Settlement Agreement, the Court should also consider the stage of the current litigation. Although discovery beyond the Administrative Record was not permitted in this case, a great deal of investigation, fact development, and informal and formal exchanges of information were completed, such that a voluminous record was created. As discussed above, this case has been hard fought through every stage and over every issue, and has spanned nearly five years. Therefore, the Court should defer to the judgment of counsel. See, *Bronson*, 604 F.Supp. at 73. The proposed Settlement Agreement is the product of a lengthy negotiation process and the involvement of an experienced and well-respected independent mediator. As a result, this factor counsels in favor of approval of the proposed Settlement Agreement.

4. ***The Judgment of Experienced Trial Counsel Weigh in Favor of Approving the Settlement.***

The next factor for consideration is the professional judgment of the experienced trial counsel participating in this litigation. When considering a proposed settlement, the Court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Vukovich*, 720 F.2d at 922-923. Moreover, the deference afforded counsel should correspond to the amount of case work completed and the character of the evidence uncovered. See, *Id.* at 923.

As set forth above, the proposed Settlement Agreement was reached after substantial case work, and after extensive negotiations involving competent and experienced counsel for the parties, as well as the use of an experienced mediator. After carefully weighing all the evidence in the voluminous record, as well as the potential results on appeal, Defendant's counsel and Class Counsel have determined that the proposed settlement is clearly in the best interests of their clients. Therefore, the informed judgment of both Plaintiffs' and Defendant's counsel are entitled to great deference. This factor again militates in favor of approval of the Settlement Agreement.

### 5. *The Nature of the Settlement Negotiations Weighs in Favor of Approving the Settlement.*

The Court must also consider whether the agreement is the product of arms-length rather than collusive bargaining. *Bronson*, 604 F.Supp. 73. As discussed above, the parties' settlement negotiations have been extensive and have taken place at arms' length, without collusion, and have fully preserved the integrity of the adversarial process. The use of an independent and experienced mediator is further evidence of the integrity of the process. In that regard, this factor weighs in favor of approving the proposed Settlement Agreement.

### 6. *The Public Interest Weighs in Favor of Approving the Settlement.*

The public interest generally favors the resolution of litigation through compromise. The Sixth Circuit has noted that "settlement agreements should ... be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before overburdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute." *Stotts v. Memphis Fire Dept.*, 679 F.2d 541, 555, n.11 (6th Cir. 1982), rev'd on other grounds, 467 U.S. 561 (1984); see also *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th

Cir. 1981), vacated on other grounds and modified, 670 F.2d 71 (6th Cir. 1982) (recognizing that "the law generally favors and encourages the settlement of class actions"). In this case, the proposed class action settlement is in the best interests of the Class Members and the public and should be approved.

### C. The Notice Satisfies Due Process Requirements and is the Best Notice Practicable Under the Circumstances.

Finally, under Rule 23(e), the court must "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed.R.Civ.P. 23 (e)(1)(B). The notice provided to Class Members must be the "best notice practical under the circumstances" and allow members of the class "a full and fair opportunity to consider the proposed [settlement] and develop a response." *Bronson,* 604 F.Supp. at 72 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) and *Vukovich*, 623 F.2d at 921); see also *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 160 (S.D. Ohio 1992), appeal dismissed without opinion, 995 F.2d 1066 (6th Cir. 1993). This has been held to mean that "settlement notices need only describe the terms of the settlement generally." *In re Milken & Assocs. Sec. Litigation*, 150 F.R.D. 46, 52 (S.D.N.Y. 1993) (citations omitted). Moreover, notice that is mailed to each Class Member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen*, 417 U.S. 156, 176 (1974) (Rule 23 (c)(2) requires that individual notice be sent to all Class Members who can be identified with reasonable effort in class actions maintained under subdivision (b)(3)).

The form and the manner of the Class Notice, including the individualized calculation forms and Release form, were negotiated and agreed upon by all counsel. The Notice explained to each Class Members their rights and obligations to participate in the settlement and/or to object to the settlement. The Notice along with the agreed form of the Exhibit indicating the anticipated calculations for each individual Class Member's recovery, and the agreed form of the

Release (collectively, the "Notice Materials") was approved by the Court in the Order Granting Preliminary Approval (Doc. #104), and a revised Notice clarifying certain points was also approved by the Court (Notation Order dated September 27, 2005).

On September 27, 2005, Class counsel mailed a copy of the Notice Materials by First Class U.S. Mail to the last known address of each Class Member as that information appeared in Defendant's employment records and in Plaintiffs' Counsel's records; those records and Class Member addresses have been updated from time to time when Class Members have contacted them with address changes in the years that this litigation has been pending.[7] Subsequent sets of the Notice Materials were sent to a updated addresses when the original Notice Materials were returned as undeliverable; the subsequent addresses were determined through the exercise of reasonable diligence utilizing the Class Representatives and/or other Class Members, and a National Change of Address database, and various phone calls to people with relevant information.[8] Some class members have questioned the amounts of their individual distribution estimates and adjustments have been made.[9] These adjustments, along with any made necessary by the Court's final calculation of attorney's fees and incentive payments will be reflected in the final distribution amounts for each class member.[10]

To receive their Settlement Distribution Payment, a Class Member must execute a Release which is required under the terms of the Champion International Corporation Reorganization Severance Policy #828 as a condition of obtaining severance benefits. The final due date for submitting executed Releases shall be 45 days following the date of the Final Court

---

[7] Exhibit C, *Groh Declaration*.
[8] *Id.*
[9] A Notice of Manual Filing of Amended Severance Calculations (amending those provided in Doc. #94) is filed under seal separately this same date.
[10] The exact amounts of the final Settlement Distribution Payments for each Class Member will be determined after the expiration of the deadline to return Releases and will be set forth in Defendant's Final Report and Accounting.

Approval and must bear a postmark indicating that it was mailed on or before such deadline date. As an extra safeguard to ensure that Class Members have every opportunity to receive and return their Notice Materials, the parties will send a reminder notice to, and Plaintiffs' counsel may contact, those Class Members who have not submitted executed Releases by the thirtieth (30th) day following the date of the Final Court Approval.

Therefore, the Notice Plan executed in this case provided the best notice practical under the circumstances and provided Class Members a full and fair opportunity to consider the terms of the proposed Agreement and make a fully informed decision on whether to participate and/or to object to the settlement.

**D. Report on the Notice**

On September 27, 2005, Class Counsel mailed a copy of the Notice Materials to all Class Members. The Notice explained that a Class Member could object to the terms of the settlement and the Notice set forth in detail the manner and form required for such an objection (Notice, Section 5). Any objection was required to be made in writing, filed with the Court, and mailed to Class Counsel and to counsel for Defendant (Id.). The Notice also explained that a Class Member could appear at the fairness hearing on November 16, 2005 in person or by his or her own attorney, and that any attorney so hired was required to file and mail a copy of that appearance to Class Counsel and to counsel for Defendant before November 1, 2005 (Id.).

As of the date of this filing:

1) no attorneys have filed an appearance, and neither Class Counsel nor counsel for Defendant has received any such appearance in the mail;

2) no person has filed any objections to the settlement, and neither Class Counsel nor counsel for Defendant has received any such objections in the mail; and

3) 100 Class Members have already returned signed Releases to Class Counsel, well before the earliest possible deadline of January 30, 2006.[11]

### III. CONCLUSION

Based upon the foregoing, Plaintiffs and Defendant respectfully move the Court for an order granting final approval to this class action settlement.

Dated: November 9, 2005

Respectfully submitted,

| | |
|---|---|
| /s/ Theresa L. Groh<br>Theresa L. Groh (0029806)<br>John C. Murdock (0063749)<br>MURDOCK GOLDENBERG SCHNEIDER<br>  & GROH, LPA<br>35 East Seventh Street, Suite 600<br>Cincinnati, Ohio  45202-2446<br>Phone:  513-345-8291<br>Fax:      513-345-8294<br><br>**Attorneys for Plaintiffs and<br>the Certified Class** | /s/ Grant S. Cowan<br>Grant S. Cowan (0029667)<br>FROST BROWN TODD LLC<br>2200 PNC Center<br>201 East Fifth Street<br>Cincinnati, Ohio 45202-4182<br>Phone: 513-651-6800<br>Fax:  513- 651-6981<br><br>W. Carter Younger (VSB #01147)<br>(Admitted Pro Hac Vice)<br>James P. McElligott, Jr. (VSB #14109)<br>MCGUIRE WOODS LLP<br>One James Center<br>Richmond, Virginia  23219<br>Phone:  804-775-4363<br>Fax:  804-698-2214<br><br>**Attorneys for Defendant** |

---

[11] Id.; January 30, 2006 would be the earliest deadline for a Class Member to return his or her Release if the Court enters and Order on November 16, 2005 and there is no appeal.